**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

MARY STOUMBOS, on behalf of herself and all others similarly situated,
4208 Bardoz Ct.
Antioch, CA 94531

Plaintiff,

vs.

VISA INC., VISA U.S.A. INC., VISA INTERNATIONAL SERVICE ASSOCIATION, and PLUS SYSTEM, INC.
595 Market Street
San Francisco, CA 94105-2802

and

MASTERCARD INCORPORATED and MASTERCARD INTERNATIONAL INCORPORATED d/b/a Mastercard Worldwide
2000 Purchase Street
Purchase, NY 10577

Defendants.

Case No. 1:11-cv-01882-ABJ

**CORRECTED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, by her attorneys, brings this civil action on behalf of herself and others similarly situated against the above named Defendants and, demanding a trial by jury, complains and alleges as follows:

## I. JURISDICTION AND VENUE

1. Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages, injunctive relief, and the costs of this suit, including reasonable attorneys' fees, for injuries sustained by Plaintiff and the Class as a result of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. In the alternative, Plaintiff also brings this action under California Bus. & Prof. Code §§ l6700 *et seq.* and Cal. Bus.

& Prof. Code §§ 17200 *et seq.*, as well as the antitrust, unfair competition and/or consumer protection laws of the "Indirect Purchaser States," as that term is defined below.

2. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1337, and by the Clayton Act, 15 U.S.C. §§ 15(a) and 27. The Court also has diversity jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, which *inter alia*, amends 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, any member of a class of plaintiffs is a citizen of a state different from any defendant and the aggregated amount in controversy exceeds five million dollars ($5,000,000.00) exclusive of interests and costs. 28 U.S.C. §§ 1332(d)(2) and (6).

3. The interstate commerce described in this Complaint is carried on, in part, within this District. Venue is proper in this District pursuant to the provisions of 15 U.S.C. § 22 and 28 U.S.C. § 1391. Each of the Defendants resides in, transacts or transacted business in, maintains offices or is found within, and a substantial part of the acts or omissions complained of took place within, this District. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1367 and 1332.

## II. DEFINITIONS

4. As used herein, the term "ATM" is an acronym for automated teller machine, which is an electronic banking outlet that allows customers to complete basic transactions, such as cash withdrawal, without the aid of a branch representative or teller.

5. As used herein, the term "Independent ATM" refers to an ATM that is not owned by Visa, MasterCard or any of their member banks.

6. As used herein, the term "PIN-debit card" refers to a card with a PIN number that may be used to effectuate transactions at ATMs.

7. As used herein, the term "ATM Services" refers to services available to consumers at an ATM, including services such as withdrawing funds, depositing funds, ascertaining balances and other account information.

8. As used herein, the term "ATM Access Fee" refers to the fee that is set by the ATM owner and charged by the ATM to a customer in conjunction with the provision of ATM Services.

9. As used herein, the term "Class Period" means October 1, 2007 to the present.

10. As used herein, the term "Indirect Purchaser States" refers to states that allow recovery of damages by indirect purchasers pursuant to state antitrust, unfair competition and/or consumer protection laws, as set forth in the second and third claims for relief, *infra*.

## III. THE PARTIES

11. Plaintiff Mary Stoumbos is a resident of the State of California. Stoumbos has paid several ATM Access Fees in connection with transactions that occurred at Independent ATMs during the Class Period.

12. Defendant VISA INC. is a publicly traded Delaware corporation with its principal place of business in San Francisco, California.

13. Defendant VISA U.S.A. INC. is a Delaware corporation with its principal place of business in San Francisco, California and is owned and controlled by Visa Inc.

14. Defendant VISA INTERNATIONAL SERVICE ASSOCIATION is a Delaware corporation with its principal place of business in San Francisco, California and is owned and controlled by Visa Inc.

15. Defendant PLUS SYSTEM, INC. is a Delaware corporation with its principal place of business in San Francisco, California and is owned and controlled by Visa Inc.

16. Defendants VISA INC., VISA U.S.A. INC., VISA INTERNATIONAL SERVICE ASSOCIATION, and PLUS SYSTEM, INC. are collectively referred to herein as "Visa."

17. Defendant MASTERCARD INCORPORATED is a publicly traded Delaware corporation with its principal place of business in Purchase, New York.

18. Defendant MASTERCARD INTERNATIONAL INCORPORATED is a Delaware non-stock (membership) corporation with its principal place of business in Purchase,

New York and is owned and controlled by MasterCard Incorporated. MasterCard International Incorporated consists of more than 23,000 member banks worldwide and is the principal operating subsidiary of MasterCard Incorporated. MasterCard International Incorporated operates the MasterCard, Maestro and Cirrus ATM networks.

19. MASTERCARD INCORPORATED and MASTERCARD INTERNATIONAL INCORPORATED are collectively referred to herein as "MasterCard."

## IV. NON-PARTY CO-CONSPIRATORS

20. The genesis of the conspiracy described herein can be traced to when Defendants were jointly owned and operated by most of the retail banks in the United States. During that time, many of the rules and operating regulations of Visa and MasterCard were established and/or agreed to by the banks themselves. On March 18, 2008, Visa, Inc. became a publicly held corporation. MasterCard Inc. became a publicly held corporation on May 24, 2006.

21. Even with this shift to public ownership, banks continue to hold non-equity membership interests in Defendants' subsidiaries, and the largest among them also hold equity interests and seats on the Defendants' boards of directors. Defendants continue to refer to their bank customers as "members" of Visa and MasterCard and continue to operate principally for the benefit of their member banks. The unreasonable restraints of trade in this case are horizontal agreements among Visa, MasterCard and their member banks to adopt, adhere to, and enforce rules and operating regulations that require ATMs to grant most-favored-nation ("MFN") treatment with respect to the ATM Access Fees charged for Visa and MasterCard network transactions. The MFN rules, in effect, set a floor level to the ATM Access Fees below which ATM owners are not permitted to charge. These restraints originated in the rules of the former bankcard associations. Certain Visa and MasterCard issuing banks have ceded power and authority to Visa and MasterCard to design, implement, and enforce a horizontal price-fixing restraint in which they are knowing participants. In short, the violation in this case is a horizontal agreement among Visa, MasterCard, and some or all of the banks that issue Visa- or MasterCard-branded payment cards. Owners of Independent ATMs are unwilling co-

conspirators to the illegal agreements. Due to economic pressures, Independent ATM owners are forced to adhere to Visa and MasterCard's rules that result in the fixing of supra-competitive ATM Access Fees. Independent ATMs that choose to facilitate Visa and MasterCard customer transactions must agree to abide by Visa and MasterCard's MFN rules regarding ATM Access Fees, and by so doing they join in the conspiracy, albeit unwillingly. Plaintiff and the Class (as defined below) are direct purchasers under the federal antitrust laws, because the ATM Access Fees are assessed directly to the consumer at the level at which the prices are fixed, and because the Independent ATM owners are unwilling co-conspirators in the anticompetitive agreements. In the alternative, Plaintiff and the Class are indirect purchasers and have standing to pursue injunctive relief under the federal antitrust laws, and damages claims under the state antitrust laws alleged in this Complaint.

## V. CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action on behalf of herself, and on behalf of all others similarly situated. Plaintiff seeks to represent the following class (the "Class") pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure:

> All persons in the United States who were charged an ATM Access Fee at an Independent ATM during the relevant Class Period.

23. Subject to additional information obtained through further investigation and discovery, the foregoing Class definition may be expanded or narrowed by amendment or amended complaint.

24. This action has been brought and may properly be maintained as a class action, pursuant to the provisions of the Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the Class:

a. Numerosity: Members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains tens of thousands and perhaps millions of members. The precise number of Class members is unknown to Plaintiff. Throughout the period covered by this

Complaint, Defendants and their co-conspirators participated in the ATM Services industry throughout the United States.

b. Existence and Predominance of Common Questions of Fact and Law: Common questions of fact and law exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common factual and legal questions include:

i. whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain or stabilize the prices of, or allocate the market for, ATM Access Fees;

ii. whether the combination or conspiracy caused ATM Access Fees to be higher than they would have been in the absence of Defendants' conduct;

iii. the operative time period of Defendants' combination or conspiracy;

iv. whether Defendants' conduct caused antitrust injury to Plaintiff and the members of the Class;

v. the appropriate measure of the amount of damages suffered by the Class;

vi. whether Defendants' conduct violates Section 1 of the Sherman Act;

vii. whether Defendants' conduct violates the antitrust, unfair competition, and consumer protection laws of the states as alleged below; and

viii. the appropriate nature of class-wide equitable relief.

c. Typicality: Plaintiff's claims are typical of the claims of the Class because Plaintiff directly incurred a supra-competitive ATM Access Fee from unwilling co-conspirator Independent ATMs during the Class Period, as did each member of the Class. Furthermore,

Plaintiff and all members of the Class sustained monetary injury arising out of Defendants' wrongful conduct.

d. Adequacy: Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class that she seeks to represent; she has retained counsel competent and highly experienced in complex class action litigation; and intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately represented by Plaintiff and her counsel.

e. Superiority: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for individual members of the Class to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## VI. TRADE AND INTERSTATE COMMERCE

25. Defendants' PIN debit payment cards, issued by the nation's banks and other depository institutions, are utilized in an enormous volume of ATM transactions involving a substantial dollar amount of commerce and are marketed, sold and used in the flow of interstate commerce. Visa provides ATM network services for cards branded with the Visa, Visa Electron, Interlink, and PLUS service marks at ATMs and terminals connected to the Visa, PLUS, and Interlink networks. In 2007, U.S. cardholders used Visa's PIN-based platform to access $395 billion in cash. As of September 30, 2010, there were 397 million Visa debit cards in circulation.

26. MasterCard provides ATM network services for cards branded with the MasterCard, Maestro or Cirrus service marks at ATMs and terminals participating in the MasterCard Worldwide Network. Excluding Cirrus- and Maestro-branded cards, cardholders used MasterCard-branded cards to access $202 billion in cash in the U.S. in 2007. As of September 30, 2010, there were 123 million MasterCard debit cards in circulation.

## VII. FACTUAL BACKGROUND

27. ATM transactions are initiated by use of a PIN-debit card. Holders of PIN-debit cards are able to use ATMs owned by banks as well as Independent ATMs. When a consumer uses their PIN-debit card at an ATM, they may be charged an ATM Access Fee for the right to certain ATM Services, such as withdrawing cash from that ATM. The ATM Access Fee is set by the owner of the ATM and the fee is added to the amount withdrawn by the customer and is charged directly to the customer's account.[1]

28. The vast majority of PIN-debit cards used for ATM transactions are Visa- or MasterCard-branded bank account-linked PIN-debit cards. As Visa states on page 17 of its Form 10-K filed with the U.S. Securities and Exchange Commission for the fiscal year ended September 30, 2010, "[i]n the debit card market segment, Visa and MasterCard are the primary global brands." Some ATM transactions using Visa- and MasterCard-branded PIN-debit cards may be completed over alternative networks designed originally for electronic funds transfers ("ETFs"). Visa- and MasterCard-branded cards that offer access to an alternative PIN-debit network indicate as much on the reverse side of the card, which bears a service mark belonging to the alternative network, such as STAR, NYCE Payment Network LLC, ACCEL/Exchange Network, Credit Union 24, CO-OP Financial Services, Shazam Inc., Jeanie, or TransFund.

29. All operators of ATMs who accept Visa- or MasterCard-branded PIN-debit cards are required to have access to the Visa and MasterCard networks. Card-issuing U.S. banks have access to those networks by virtue of their membership with Visa and/or MasterCard.

---

[1] An additional fee (a "foreign ATM fee") may also be assessed by the financial institution that issued the card, but this fee is not relevant to the allegations in this Complaint.

Independent ATM owners, however, must be sponsored by a "sponsoring financial institution," or must affiliate with a sponsored entity; i.e., Visa and/or MasterCard member banks that specialize in providing Independent ATM owners access to the Visa and MasterCard PIN-based networks.

30. Visa and MasterCard abuse their market dominance by forcing ATM operators, through the use of MFN clauses, to charge an ATM Access Fee for all ATM transactions, irrespective of the network, that is no less than the amount charged at that ATM for a Visa or MasterCard network transaction.

31. The Visa Plus System, Inc. Operating Regulations set forth the following restraint on the exercise of discretion by ATM operators to charge an access fee they deem commercially appropriate:

> **4.10A Imposition of Access Fee**
>
> An ATM Acquirer may impose an Access Fee if:
>
> - It imposes an Access Fee on all other Financial Transactions through other shared networks at the same ATM;
> - The Access Fee is not greater than the Access Fee amount on all other Interchange Transactions through other shared networks at the same ATM . . . .

32. Similarly, MasterCard's Cirrus Worldwide Operating Rules (September 15, 2010) applicable to the United States Region (Chapter 20) set forth the same restraint on the exercise of discretion by ATM operators to set access fees as they deem commercially appropriate:

> **7.13.1.2 Non-Discrimination Regarding ATM Access Fees**
>
> An Acquirer must not charge an ATM Access Fee in connection with a Transaction that is greater than the amount of any ATM Access Fee charged by that Acquirer in connection with the transactions of any other network accepted at that terminal.

33. Visa, MasterCard and their co-conspirator banks have misused their market dominance to fix the access fee for any transaction at a given ATM or terminal to be no less than the amount charged at that ATM or terminal for a Visa or MasterCard transaction, irrespective of

whether the transaction is actually completed over Visa or MasterCard's PIN-debit network and without regard to any actual or potential cost saving to the ATM operator of using one of the alternative PIN-based networks. Plaintiff and the Class are harmed by this practice, as they are forced to pay supra-competitive ATM Access Fees regardless of whether they are using a Visa, MasterCard, or other network for the transaction.

## VIII. HARM TO COMPETITION

34. The foregoing provisions (hereinafter, the "ATM restraints") suppress competition among PIN-based payment networks that compete with Visa and MasterCard's networks by implementing a uniform horizontal agreement to fix ATM Access Fees in a manner that ensures that the ATM Access Fee for a transaction carried over a competing network is not less than the ATM Access Fee charged for a transaction carried over Visa or MasterCard's network. The ATM restraints operate to prohibit discounting by competing ATM operators to reflect the variability of costs of using competing networks. The ATM restraints, therefore, effectuate horizontal price fixing that is unlawful *per se*.

35. The ATM restraints harm competition in numerous ways that affect Independent ATM operators, independent ATM transacting networks (ATM networks not operated by Visa or MasterCard), and ultimately the consumer.

36. The ATM restraints deprive separately owned, and in other respects autonomous profit-making businesses—Independent ATM operators—of the power to make decisions on output or price that deviate from the agreed upon rules. By eliminating or severely restricting independent decision-making by ATM operators, the ATM restraints establish a non-competitive price-setting arrangement that prohibits discounting, and prevents Independent ATM operators from setting profit-maximizing prices and from other pricing behavior characteristic of a competitive market. Independent ATM operators may not offer a discount or any other benefit to persuade consumers to complete their transactions over competing, lower cost PIN-based networks, nor may an Independent ATM operator offer a rebate that might circumvent the fixed

ATM Access Fee that complies with the Defendants' rules. By restricting their ability to attract customers to lower cost ATM Services through lower prices, the ATM restraints put a competitive straightjacket on Independent ATM operators.

37. The anticompetitive MFN agreements affect the independent ATM transacting networks by deterring Independent ATMs from steering transactions to networks other than those owned or controlled by Defendants, which, in turn, hinders the growth and development of more efficient, lower cost competing ATM networks. Absent these agreements, independent ATM transacting networks would be able to compete with the Visa and MasterCard networks by offering lower ATM Access Fees than those charged in the Visa and MasterCard networks. However, the ATM restraints make it virtually impossible for these independent networks to be profitable outside the Visa and MasterCard networks.

38. Consumers are injured by the ATM restraints because they are forced to pay higher ATM Access Fees than they otherwise would if there were competition in the market. The ATM restraints, as explained above, have restricted the opportunity for Independent ATMs and independent ATM networks to develop outside the Visa and MasterCard networks, resulting in higher ATM Access Fees paid *directly* by the consumer.

39. The ATM restraints result in supra-competitive ATM Access Fees and artificially constrain growth in ATM deployment. But for the ATM restraints, retail prices for ATM Services would be lower, the quantity of ATM Services demanded would be greater, and economic output would increase.

40. In a reasonably competitive market, ATM operators would set ATM Access Fees at a level reflecting the cost of obtaining the network services and other inputs necessary to complete the transaction. ATM operators would set ATM Access Fees lower for transactions routed through lower-cost ATM networks relative to ATM Access Fees for transactions routed through higher-cost networks. Competition between ATM operators would pass these lower costs on to Plaintiffs. However, the ATM restraints fix and maintain ATM Access Fees at the same level irrespective of which network completes the transaction or what those services

actually cost. By preventing ATM operators from charging an ATM Access Fee that reflects the lower cost of competing networks, the ATM restraints shelter the Defendants from natural and beneficial price competition that otherwise would be exerted by the other participants in the market. By preventing ATM operators from passing on cost savings to consumers in the form of lower prices, signaling the availability of more efficient, higher quality, or lower priced services, Visa and MasterCard escape the competitive discipline that would otherwise be brought to bear on them by competing PIN-based networks.

41. Because the ATM restraints break the essential economic link that would exist in a reasonably competitive market between the price a consumer is charged for a service and the cost to the retailer of providing it, they extinguish the incentive of cardholders to demand, and providers of ATM Services to provide, lower-cost, more efficient services. By disrupting the ordinary give and take of the marketplace, the ATM restraints suppress competition with rival networks at the point of the transaction, where ATM operators interact directly with consumers. Alternative PIN-debit networks are less costly. The ATM restraints prevent ATM customers from obtaining a discount or benefit for completing a transaction over a network that is less costly to the ATM operator, so consumers cannot realize the savings of using a lower cost and more efficient network. Therefore, the ability of lower cost competing networks to grow and compete effectively is thereby hindered, and the economic savings to consumers is prevented, causing antitrust injury.

## IX. RELEVANT MARKETS

42. Because this Complaint alleges *per se* violations of the antitrust laws, no relevant market definitions are necessary. In the alternative, the relevant market definitions are as follows:

### A. Relevant Product Market

43. The relevant product market is the market for ATM Services. No cost-effective alternative to ATM Services exists and there are few substitutes. Accordingly, a sufficient number of PIN-debit cardholders would not switch away from ATMs to make a small but

significant price increase in those services unprofitable. The market for ATM Services is a separate and distinct relevant product market for the purposes of 15 U.S.C. § 1.

**B. Relevant Geographic Market**

44. The relevant geographic market is the United States and all its territories.

## X. DEFENDANTS' MARKET POWER

45. Visa and MasterCard directly wield market power in the relevant market because Visa and MasterCard PIN-debit cards account for the overwhelming majority of PIN-debit cards issued in the United States. Visa and MasterCard implement and enforce the ATM restraints and require compliance with them in their contracts, agreements, rules and undertakings with member banks, which, in turn, secure compliance by their customers and suppliers. Visa and MasterCard directly exercise their market power through these arrangements to suppress interbrand competition in the relevant market.

46. Defendants' direct exercise of market power constrains all of the participants in the ATM industry, from member banks that own ATMs to Independent ATM owners, to processors and technology providers (including the administrators of ATM Access Fees), to sponsoring financial institutions and sponsored entities. Defendants actively monitor and vigorously enforce the ATM restraints and participants in the ATM Services market must accept and agree to the ATM restraints as a condition of transacting business over Defendants' PIN-based networks. Parties that do not adhere to the ATM restraints are penalized or denied access to the network.

47. Visa and MasterCard maintain their market power in light of the insurmountable barriers to entry faced by a potential competitor that might seek to achieve comparable consumer acceptance of its PIN-debit card, while at the same time the ATM restraints effectively foreclose competitive ATM networks from competing to carry a larger share of ATM transactions.

## VIOLATIONS ALLEGED

## FIRST CLAIM FOR RELIEF

**(Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1)**

48. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

49. The defendants have combined, conspired and/or contracted to restrain interstate trade in violations of Section 1 of the Sherman Act, 15 U.S.C. §1, and Section 4 of the Clayton Act, 15 U.S.C. § 15, by engaging in a horizontal agreement in restraint of trade.

50. In furtherance of the conspiracy, each of the defendants has committed overt acts, including, *inter alia*, fixing, maintaining and/or stabilizing prices of ATM Access Fees at Independent ATMs in the United States.

51. Plaintiffs and the members of the Class, therefore, have been injured and financially damaged in their respective businesses and property in an amount to be determined according to proof and are entitled to recover threefold the damages sustained pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, and are entitled to an injunction preventing and restraining the violations alleged herein.

52. The conduct of the defendants constitutes a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

## SECOND CLAIM FOR RELIEF

**(Violation of State Antitrust and Unfair Competition Laws)**

53. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

54. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Alabama Code §§ 8-10-1 *et seq.*

55. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Arizona Revised Stat. §§ 44-1401 *et seq.*

56. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of California Bus. & Prof. Code §§ l6700 *et seq.* and Cal. Bus. & Prof. Code §§ 17200 *et seq.*

57. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4502 *et seq.*

58. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1 *et seq.*

59. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101 *et seq.*

60. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10 §§ 1101 *et seq.*

61. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws. Ann. §§ 445.772 *et seq.*

62. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.51 *et seq.*

63. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-1 *et seq.*

64. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Nebraska Rev. Stat. §§ 59-801 *et seq.*

65. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A *et seq.*

66. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-l *et seq.*

67. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-l *et seq.*

68. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01 *et seq.*

69. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Oregon Rev. Stat. §§ 646.705 *et seq.*

70. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of the Pennsylvania common law.

71. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1-3.1 *et seq.*

72. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101 *et seq.*

73. By reason of the foregoing, defendants have entered into agreements in of trade in violation of Vermont Stat. Ann. 9 §§ 2453 *et seq.*

74. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of West Virginia §§ 47-18-1 *et seq.*

75. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ l33.01 *et seq.*

76. Class Members in each of the states listed above paid supra-competitive, inflated ATM Access Fees. As a direct and proximate result of Defendants' unlawful conduct, such members of the Class have been injured in their business and property in that they paid more ATM Access Fees than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## **THIRD CLAIM FOR RELIEF**

### **(Violation of State Consumer Protection and Unfair Competition Laws)**

77. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

78. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

79. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. §§ 45.50.471 *et seq.*

80. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code §§ 4-88-101 *et seq.*

81. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of California Bus. & Prof. Code §§ 17200 *et seq.*

82. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code §§ 28-3901 *et seq.*

83. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. §§ 501.201 *et seq.*

84. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. §§ 480-1 *et seq.*

85. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code §§ 48-601 *et seq.*

86. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kansas Stat. §§ 50-623 *et seq.*

87. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Maine Rev. Stat. §§ 207 *et seq.*

88. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. Laws Ann. ch. 93A, §§ 1 *et seq.*

89. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Montana Code §§ 30-14-101 *et seq.*

90. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nebraska Rev. Stat. §§ 59-1601 *et seq.*

91. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Hampshire Stat. §§ 358-A:1 *et seq.*

92. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. §§ 57-12-1 *et seq.*

93. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New York Gen. Bus. Law §§ 349 *et seq.*

94. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. §§ 75-1.1 *et seq.*

95. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Oregon Rev. Stat. §§ 646.605 *et seq.*

96. Defendants have engaged in unfair competition or unfair or deceptive acts or violation of Rhode Island Gen. Laws. §§ 6-13.1-1 *et seq.*

97. Defendants have engaged in unfair competition or unfair or deceptive acts or violation of South Carolina Code Laws §§ 39-5-10 *et seq.*

98. Defendants have engaged in unfair competition or unfair or deceptive acts or violation of Utah Code §§ 13-11-1 *et seq.*

99. Defendants have engaged in unfair competition or unfair or deceptive acts or violation of 9 Vermont §§ 2451 *et seq.*

100. Defendants have engaged in unfair competition or unfair or deceptive acts or violation of West Virginia Code §§ 46A-6-101 *et seq.*

101. Defendants have engaged in unfair competition or unfair or deceptive acts or violation of Wyoming Stat. § 40-12-105.

102. Class Members in the states listed above paid supra-competitive, artificially high ATM Access Fees. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the members of the Class have been injured in their business and property in that they paid more ATM Access Fees than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

A. That the Court determine that the Sherman Act, state antitrust law, and state consumer protection and/or unfair competition law claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure;

B. That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

a. A restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in the First Claim for Relief;

b. An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust laws identified herein; and

c. Violations of the state consumer protection and unfair competition laws identified herein.

C. That Plaintiff and the Class recover damages, as provided by federal and state antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with such laws;

D. That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose effect.

E. That Plaintiff and members of the Class be awarded pre- and post-judgment interest, and that that interest be awarded at the highest legal rate from and after the date of service of the initial Complaint in this action;

F. That Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

G. That Plaintiff and members of the Class have such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the members of the Class, hereby demand trial by jury on all issues so triable.

DATED: December 1, 2011

Respectfully submitted,

By:__/s Richard M. Volin______________

Douglas G. Thompson (D.C. Bar # 172387)
dthompson@finkelsteinthompson.com
Richard M. Volin (D.C. Bar # 457292)
rvolin@finkelsteinthompson.com
Michael G. McLellan (D.C. Bar # 489217)
mmclellan@finkelsteinthompson.com
Thomas M. Gottschlich (D.C. Bar #1002378)
tgottschlich@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
James Place
1077 30th Street, N.W.
Suite 150
Washington, D.C. 20007
Telephone: 202-337-8000
Facsimile: 202-337-8090