**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDREW MACKMIN, et al.,<br>Plaintiffs,<br>v.<br>VISA INC., et al.,<br>Defendants. | No. 1:11-cv-01831 (ABJ)<br>Electronically Filed<br>Oral Argument Requested |
| MARY STOUMBOS,<br>Plaintiff,<br>v.<br>VISA INC., et al.,<br>Defendants. | No. 1:11-cv-01882 (ABJ)<br>Electronically Filed<br>Oral Argument Requested |
| NATIONAL ATM COUNCIL, INC., et al.,<br>Plaintiffs,<br>v.<br>VISA INC., et al.,<br>Defendants. | No. 1:11-cv-01803 (ABJ)<br>Electronically Filed<br>Oral Argument Requested |

**VISA AND MASTERCARD DEFENDANTS' MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants Visa Inc., Visa U.S.A. Inc., Visa International Service Association, and Plus System, Inc. (collectively "Visa"), and defendants MasterCard Incorporated and MasterCard International Incorporated d/b/a MasterCard Worldwide (collectively "MasterCard"), respectfully submit this motion to

dismiss the operative complaints in three related cases: (1) the First Amended Class Action Complaint filed on January 10, 2012 in *Mackmin, et al. v. Visa Inc., et al.*, No. 1:11-cv-01831, formerly captioned *Bartron, et al. v. Visa Inc., et al.*; (2) the Corrected Class Action Complaint filed on December 10, 2011 in *Stoumbos v. Visa Inc., et al.*, No. 1:11-cv-01882; and (3) the First Amended Class Action Complaint filed on January 10, 2012 in *National ATM Council, et al. v. Visa Inc., et al.*, No. 1:11-cv-01803. The grounds for this motion are set forth in the accompanying memorandum of points and authorities. Visa and MasterCard respectfully request oral argument on this motion to dismiss.

January 30, 2012

Respectfully submitted,

/s/ Mark R. Merley
Mark R. Merley (D.C. Bar No. 375866)
Matthew A. Eisenstein (D.C. Bar No. 476577)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Tel: 202-942-5000
Fax: 202-942-5999

*Attorneys for Defendants Visa Inc., Visa U.S.A. Inc., Visa International Service Association, and Plus System, Inc.*

/s/ Kenneth A. Gallo
Kenneth A. Gallo (D.C. Bar No. 371253)
PAUL WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Tel: (202) 223-7400
Fax: (202) 223-7420

Andrew C. Finch (D.C. Bar No. 494992)
Gary R. Carney
PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

*Attorneys for Defendants MasterCard Incorporated and MasterCard International Incorporated*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 30, 2012, I caused the foregoing Visa and MasterCard Defendants' Motion to Dismiss and Proposed Order to be filed using the Court's CM/ECF system, which will send e-mail notification of such filing to counsel of record.

/s/ Matthew A. Eisenstein
Matthew A. Eisenstein

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDREW MACKMIN, et al.,<br>Plaintiffs,<br>v.<br>VISA INC., et al.,<br>Defendants. | No. 1:11-cv-01831 (ABJ)<br>Electronically Filed<br>Oral Argument Requested |
| MARY STOUMBOS,<br>Plaintiff,<br>v.<br>VISA INC., et al.,<br>Defendants. | No. 1:11-cv-01882 (ABJ)<br>Electronically Filed<br>Oral Argument Requested |
| NATIONAL ATM COUNCIL, INC., et al.,<br>Plaintiffs,<br>v.<br>VISA INC., et al.,<br>Defendants. | No. 1:11-cv-01803 (ABJ)<br>Electronically Filed<br>Oral Argument Requested |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>VISA AND MASTERCARD DEFENDANTS' MOTION TO DISMISS</u>**

January 30, 2012

# TABLE OF CONTENTS

Page


PRELIMINARY STATEMENT ........ 1

PLAINTIFFS' COMPLAINT ALLEGATIONS ........ 3

ARGUMENT ........ 7

I. PLAINTIFFS ALLEGE NO FACTS THAT COULD ESTABLISH A CONSPIRACY TO RESTRAIN TRADE IN VIOLATION OF SHERMAN ACT SECTION ONE ........ 8

A. That Banks Allegedly Are Members of Visa or MasterCard and Follow Its Network Rules Could Not Establish a Conspiracy to Restrain Trade ........ 9

B. That Bank Employees Sometimes Served on the Boards of, or That Banks Held Unspecified Equity Interests in, Visa or MasterCard Could Not Establish a Conspiracy to Restrain Trade ........ 11

C. Plaintiffs Allege No Basis for Any Conspiracy to Restrain Trade Under the *American Needle* Decision ........ 12

II. PLAINTIFFS ALLEGE NO FACTS THAT COULD ESTABLISH ANTITRUST INJURY ........ 14

A. The Challenged Visa and MasterCard Rules Do Not Result in Antitrust Injury ........ 14

B. Plaintiffs Allege No Facts That Could Show Injury Flowing from the Challenged Visa and MasterCard Rules ........ 17

III. PLAINTIFFS ALLEGE NO FACTS THAT COULD ESTABLISH A VIOLATION OF DISTRICT OF COLUMBIA OR STATE STATUTES ........ 19

A. Plaintiffs State No Claim Under District of Columbia or State Antitrust Statutes for the Same Reasons That They State No Claim Under Federal Antitrust Law ........ 19

B. Plaintiffs Allege No Deceptive or Unfair Conduct That Could State a Claim Under District of Columbia or State Consumer Protection or Unfair Competition Statutes ........ 22

CONCLUSION ........ 24

## TABLE OF AUTHORITIES

Page

**Federal Cases**


* *AD/SAT, A Division of Skylight, Inc. v. Associated Press*, 181 F.3d 216 (2d Cir. 1999) ........ 10–11

*American Airlines v. Christensen*, 967 F.2d 410 (10th Cir. 1992) ........ 10

* *American Needle, Inc. v. National Football League*, 130 S. Ct. 2201 (2010) ........ 13

*Asa Accugrade, Inc. v. American Numismatic Association*, 370 F. Supp. 2d 213 (D.D.C. 2005) ........ 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 7

*Association of Retail Travel Agents, Ltd. v. Air Transport Association of America*, 635 F. Supp. 534 (D.D.C. 1986) ........ 10, 18–19

* *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990) ........ 14–15

* *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 7–9

*Bell v. Fur Breeders Agricultural Cooperative*, 348 F.3d 1224 (10th Cir. 2003) ........ 11

* *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 65 F.3d 1406 (7th Cir. 1995) ........ 15–16

*Brown v. Visa U.S.A., Inc.*, 674 F. Supp. 249 (N.D. Ill. 1987) ........ 19

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ........ 14, 16

* *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984) ........ 11, 13

*Davric Maine Corp. v. Rancourt*, 216 F.3d 143 (1st Cir. 2000) ........ 20

Page

* *Dial A Car, Inc. v. Transportation, Inc.*,
884 F. Supp. 584 (D.D.C. 1995),
*aff'd*, 82 F.3d 484 (D.C. Cir. 1996) .......... 8, 14–15, 18

* *Federal Prescription Service, Inc. v. American Pharmaceutical Association*,
663 F.2d 253 (D.C. Cir. 1981) .......... 9–10

*Fresh Made, Inc. v. Lifeway Foods, Inc.*,
2002 WL 31246922 (E.D. Pa. Aug. 9, 2002) .......... 21

*Futurevision Cable System of Wiggins, Inc. v. Multivision Cable TV Corp.*,
789 F. Supp. 760 (S.D. Miss. 1992),
*aff'd without opinion*, 986 F.2d 1418 (5th Cir. 1993) .......... 20

*Garabis v. Unknown Officers of Metropolitan Police*,
— F. Supp. 2d —, 2011 WL 5042379 (D.D.C. Oct. 25, 2011) .......... 7

*In re Insurance Brokerage Antitrust Litigation*,
618 F.3d 300 (3d Cir. 2010) .......... 9

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*,
2008 WL 5082872 (E.D.N.Y. Nov. 25, 2008) .......... 12

*Kartell v. Blue Shield of Massachusetts, Inc.*,
749 F.2d 922 (1st Cir. 1984) .......... 17

* *Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) .......... 10–11

*Marshall v. Planz*,
13 F. Supp. 2d 1231 (M.D. Ala. 1998) .......... 20

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
465 U.S. 752 (1984) .......... 11

* *Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island*,
692 F. Supp. 52 (D. R.I. 1988),
*aff'd*, 883 F.2d 1101 (1st Cir. 1989) .......... 16

*Okusami v. Psychiatric Institute of Washington, Inc.*,
959 F.2d 1062 (D.C. Cir. 1992) .......... 8

*PSKS, Inc. v. Leegin Creative Leather Products, Inc.*,
615 F.3d 412 (5th Cir. 2010) .......... 9

Page

*Rothery Storage & Van Co. v. Atlas Van Lines*,
792 F.2d 210 (D.C. Cir. 1986) .......... 12

*Southern Pacific Communications Co. v. AT&T*,
556 F. Supp. 825 (D.D.C. 1982) .......... 15

* *SouthTrust Corp. v. Plus System, Inc.*,
913 F. Supp. 1517 (N.D. Ala. 1995) .......... 17

* *Tennessean Truckstop, Inc. v. NTS, Inc.*,
875 F.2d 86 (6th Cir. 1989) .......... 16

*TRI, Inc. v. Boise Cascade Office Products., Inc.*,
315 F.3d 915 (8th Cir. 2003) .......... 20

*Viazis v. American Association of Orthodontists*,
314 F.3d 758 (5th Cir. 2002) .......... 10

*Vermont Mobile Home Owners' Association v. Lapierre*,
94 F. Supp. 2d 519 (D. Vt. 2000) .......... 20

*WAKA LLC v. DC Kickball*,
517 F. Supp. 2d 245 (D.D.C. 2007) .......... 12

**Federal Statutes and Rules**

Federal Rule of Civil Procedure 12 .......... 1, 7

Sherman Act Section 1, 15 U.S.C. § 1 .......... *passim*

**State Cases**

*Amodeo, D.C. v. Conservcare, LLC*,
2009 WL 736656 (Tenn. Ct. App. Mar. 20, 2009) .......... 21

*Austin v. Stokes-Craven Holding Corp.*,
691 S.E.2d 135 (S.C. 2010) .......... 23

*Beckler v. Visa U.S.A., Inc.*,
2004 WL 2115144 (N.D. Dist. Ct. Aug. 23, 2004) .......... 21

*Bennett v. Visa U.S.A., Inc.*,
198 S.W.3d 747 (Tenn. Ct. App. 2006) .......... 21

Page

*Bergstrom v. Noah*,
974 P.2d 520 (Kan. 1999) .......... 20

*Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris USA Inc.*,
818 N.E.2d 1140 (N.Y. 2004) .......... 23

*CEI Engineering Associates v. Elder Construction Co.*,
306 S.W.3d 447 (Ark. Ct. App. 2009) .......... 22

*Davis v. Four Seasons Hotel Ltd.*,
228 P.3d 303 (Haw. 2010) .......... 22, 23

*Eichenseer v. Madison-Dane County Tavern League, Inc.*,
748 N.W.2d 154 (Wis. 2008) .......... 21

*Goldman v. Loubella Extendables*,
283 N.W.2d 695 (Mich. Ct. App. 1979) .......... 21

*Gossels v. Fleet National Bank*,
902 N.E.2d 370 (Mass. 2009) .......... 22, 23

*Hair Excitement, Inc. v. L'Oreal U.S.A., Inc.*,
965 A.2d 1032 (N.H. 2009) .......... 22–23

*Herrig v. Herrig*,
844 P.2d 487 (Wyo. 1992) .......... 23

*Ianelli v. United States Bank*,
996 A.2d 722 (Vt. 2010) .......... 23

*Kenai Chrysler Center, Inc. v. Denison*,
167 P.3d 1240 (Alaska 2007) .......... 22

*Levine v. Blue Shield of California*,
189 Cal. App. 4th 1117 (2010) .......... 22

*Marin County Board of Realtors, Inc. v. Palsson*,
549 P.2d 833 (Cal. 1976) .......... 20

*McAdoo Contractors, Inc. v. Harris*,
439 S.W.2d 594 (Tenn. 1969) .......... 21

*Olsen v. University of Phoenix*,
244 P.3d 388 (Utah Ct. App. 2010) .......... 23

Page

*Park v. Ford Motor Co.*,
844 A.2d 687 (R.I. 2004) .......... 23

*Rathgeber v. James Hemenway, Inc.*,
69 P.3d 710 (Or. 2003) .......... 23

*Reichold Chemicals, Inc. v. Goel*,
555 S.E.2d 281 (N.C. Ct. App. 2001) .......... 21

*Rohrer v. Knudson*,
203 P.3d 759 (Mont. 2009) .......... 22, 24

*Snowder v. District of Columbia*,
949 A.2d 590 (D.C. 2008) .......... 22

*State v. Commerce Commercial Leasing, LLC*,
946 So.2d 1253 (Fla. Dist. Ct. App. 2007) .......... 22

*State ex rel. Stenberg v. Consumer's Choice Foods, Inc.*,
755 N.W.2d 583 (Neb. 2008) .......... 22, 24

*Taylor v. McNichols*,
243 P.3d 642 (Idaho 2010) .......... 22

*Truong v. Allstate Insurance Co.*,
227 P.3d 73 (N.M. 2010) .......... 23

*Unruh v. Purina Mills, LLC*,
221 P.3d 1130 (Kan. 2009) .......... 22

*Voss v. Woodmaster of Maine, Inc.*,
2005 WL 2804826 (Me. Super. Ct. Aug. 12, 2005) .......... 22

*Walker v. Fleetwood Homes of North Carolina, Inc.*,
653 S.E.2d 393 (N.C. 2007) .......... 23–24

*White v. Wyeth*,
705 S.E.2d 828 (W. Va. 2010) .......... 23

*X.L.O. Concrete Corp. v. Rivergate Corp.*,
634 N.E.2d 158 (N.Y. 1994) .......... 20

Page

**State Statutes and Rules**

Alaska Statutes §§ 45.50.471, *et seq.* .......... 22

Arkansas Code Annotated §§ 4-88-101, *et seq.* .......... 22

Arizona Revised Statutes § 44-1412 .......... 20

California Business & Professions Code §§ 17200, *et seq.* .......... 22

D.C. Code §§ 28-3901, *et seq.* .......... 22

Florida Statutes §§ 501.201, *et seq.* .......... 22

Hawaii Revised Statutes §§ 480-1, *et seq.* .......... 22

Hawaii Revised Statutes § 480-3 .......... 20

Idaho Code Annotated §§ 48-601, *et seq.* .......... 22

740 Illinois Compiled Statutes 10/11 .......... 20

Iowa Code § 553.2 .......... 20

Kansas Statutes Annotated §§ 50-623, *et seq.* .......... 22

Maine Revised Statutes tit. 5, §§ 207, *et seq.* .......... 22

Massachusetts General Laws ch. 93A, § 1, *et seq.* .......... 22

Missouri Revised Statutes § 407.020 .......... 22

Missouri Code of State Regulations, tit. 15, §§ 60-7.010, *et seq.* .......... 22

Montana Code Annotated §§ 30-14-103, *et seq.* .......... 22

Nebraska Revised Statutes § 59-829 .......... 20

Nebraska Revised Statutes §§ 59-1602, *et seq.* .......... 22

Nevada Revised Statutes § 598A.050 .......... 20

New Hampshire Revised Statutes Annotated § 356:14 .......... 20

New Hampshire Revised Statutes Annotated §§ 358-A:2, *et seq.* .......... 22

Page

New Mexico Statutes Annotated § 57-1-15 .......... 20

New Mexico Statutes Annotated §§ 57-12-1, *et seq.* .......... 23

New York General Business Law §§ 349, *et seq.* .......... 23

North Carolina General Statutes §§ 75-1.1, *et seq.* .......... 23

Oregon Revised Statutes §§ 646.605, *et seq.* .......... 23

Oregon Revised Statutes § 646.715(2) .......... 20

Rhode Island General Laws §§ 6-13.1-1, *et seq.* .......... 23

South Carolina Code Annotated §§ 39-5-10, *et seq.* .......... 23

South Dakota Codified Laws § 37-1-22 .......... 20

Utah Code Annotated §§ 13-11-1, *et seq.* .......... 23

Utah Code Annotated § 76-10-926 .......... 20

Vermont Statutes Annotated tit. 9, §§ 2451, *et seq.* .......... 23

Tennessee Code Annotated § 47-25-101 .......... 21

West Virginia Code §§ 46A-6-101, *et seq.* .......... 23

West Virginia Code § 47-18-16 .......... 20

Wyoming Statutes Annotated §§ 40-12-105, *et seq.* .......... 23

## PRELIMINARY STATEMENT

Defendants Visa Inc., Visa U.S.A. Inc., Visa International Service Association, and Plus System, Inc. (collectively "Visa"), and defendants MasterCard Incorporated and MasterCard International Incorporated d/b/a MasterCard Worldwide (collectively "MasterCard"), respectfully submit this memorandum in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the operative complaints in three related cases: (1) the First Amended Class Action Complaint filed on January 10, 2012, in *Mackmin, et al. v. Visa Inc., et al.*, No. 1:11-cv-01831, formerly captioned *Bartron, et al. v. Visa Inc., et al.* (the "*Mackmin* Compl."); (2) the Corrected Class Action Complaint filed on December 1, 2011, in *Stoumbos v. Visa Inc., et al.*, No. 1:11-cv-01882 (the "*Stoumbos* Compl."); and (3) the First Amended Class Action Complaint filed on January 10, 2012, in *National ATM Council, et al. v. Visa Inc., et al.*, No. 1:11-cv-01803 (the "*NAC* Compl."). A fourth related case, *Genese v. Visa Inc., et al.*, No. 1:11-cv-01838, was voluntarily dismissed on January 11, 2012.[1]

The plaintiffs in *Mackmin* and *Stoumbos* are consumers who pay "access fees" to ATM operators for cash withdrawals and other transactions made at ATMs not operated by the banks at which the consumers have accounts. The plaintiffs in *National ATM Council* are non-bank ATM operators and a trade association of such ATM operators. All plaintiffs allege that Visa's Plus ATM network and MasterCard's Cirrus ATM network each have a rule that prevents ATM operators from charging higher access fees to consumers for transactions routed over its respective network rather than other ATM networks. All plaintiffs claim that those rules violate federal antitrust law under Section 1 of the Sherman Act, and the consumer plaintiffs also claim

[1] The banks named as defendants in *Mackmin* are likewise moving to dismiss the claims against them and have filed a separate memorandum in support of their motion. The grounds for dismissal set forth in the banks' memorandum also apply to plaintiffs' claims against Visa and MasterCard.

those rules violate certain District of Columbia and state antitrust, consumer protection, and unfair competition statutes.

Plaintiffs fail to state a claim against Visa or MasterCard for several, independent reasons. First, plaintiffs allege no facts that could establish a conspiracy to restrain trade, which is a necessary element of any claim under Section 1 of the Sherman Act. The facts that plaintiffs allege — that banks are members of Visa or MasterCard ATM networks and follow their rules, that bank employees sometimes served as directors on the Visa or MasterCard boards, and that banks held unspecified equity interests in Visa or MasterCard — are insufficient as a matter of law to establish a conspiracy to restrain trade.

Second, plaintiffs allege no facts that could establish that the challenged Visa or MasterCard ATM network rules resulted in "antitrust injury." To obtain relief under federal antitrust law, a plaintiff must allege antitrust injury — i.e., an injury of the type that the antitrust laws were intended to prevent and that flows from competition-reducing conduct. The rules challenged here prevent ATM operators from charging *higher* access fees to consumers for transactions processed over the Visa or MasterCard ATM networks, which does not result in an injury of the type that the antitrust laws were designed to prevent.

Plaintiffs theorize that those network rules prevent ATM operators from discounting access fees to persuade consumers to choose to complete their transactions over other, supposedly lower cost ATM networks, and that the rules thereby restrain inter-network competition. But plaintiffs allege no facts to support that theory. Plaintiffs do not allege that a consumer has the power to select the ATM network over which the ATM owner completes the consumer's ATM transaction, such that discounting access fees could persuade a consumer to process a transaction over a particular ATM network. Plaintiffs thus allege no facts from which

they could prove any reduction in competition — or any injury — flowing from the challenged ATM network rules.

Third, plaintiffs fail to state a claim under District of Columbia and state antitrust statutes for the same reasons that they fail to state a claim under federal antitrust law. Plaintiffs also fail to allege anything deceptive or unfair about the challenged Visa or MasterCard rules that could state a claim under District of Columbia or state consumer protection or unfair competition statutes.

**PLAINTIFFS' COMPLAINT ALLEGATIONS**

Plaintiffs in these actions are five individual consumers who allegedly paid access fees for ATM transactions, as well as several non-bank entities that operate ATMs and a trade association of such ATM operators. *Mackmin* Compl. ¶¶ 12-15; *Stoumbos* Compl. ¶ 11; *NAC* Compl. ¶¶ 7-21. An "access fee" is a fee that a consumer pays to a bank or non-bank ATM operator for conducting an ATM transaction when the ATM operator is not the bank at which the consumer has an account. *Mackmin* Compl. ¶¶ 56-59; *Stoumbos* Compl. ¶ 27; *NAC* Compl. ¶ 37. The consumer also may separately pay a "foreign ATM fee" for that transaction to the bank at which the consumer has an account. *Mackmin* Compl. ¶¶ 56-59; *Stoumbos* Compl. ¶ 27; *NAC* Compl. ¶ 37.

Defendants Visa and MasterCard have been publicly held corporations since their respective initial public offerings ("IPOs") on March 18, 2008 and May 24, 2006. *Mackmin* Compl. ¶ 44; *Stoumbos* Compl. ¶ 20; *NAC* Compl. ¶ 30. Before their IPOs, Visa and MasterCard allegedly were associations comprised of, and owned by, their respective U.S. bank members. *Mackmin* Compl. ¶ 44; *Stoumbos* Compl. ¶ 20; *NAC* Compl. ¶ 30. Plaintiffs allege that after the IPOs, the banks continue to hold non-equity membership interests in Visa and MasterCard subsidiaries, and that the largest banks hold equity interests in Visa or MasterCard and seats on

the Visa or MasterCard boards of directors. *Mackmin* Compl. ¶ 44; *Stoumbos* Compl. ¶ 21; *NAC* Compl. ¶ 30. The *Mackmin* complaint also names certain of those banks as defendants. *Mackmin* Compl. ¶¶ 28-43.

Visa and MasterCard each have an ATM network, which bank and non-bank ATM operators may use to connect to the bank where a consumer has an account in order to process the consumer's cash withdrawal or other ATM transactions. *See Mackmin* Compl. ¶¶ 50-51, 57-58, 63-64; *Stoumbos* Compl. ¶¶ 25-26, 29; *NAC* Compl. ¶¶ 33-34, 39. The Visa Plus ATM network and the MasterCard Cirrus ATM network compete with many different ATM networks — including STAR, NYCE, ACCEL/Exchange, Credit Union 24, CO-OP, Shazam, Transfund, and others — in providing ATM transaction processing services to ATM operators. *See Mackmin* Compl. ¶ 66; *Stoumbos* Compl. ¶ 28; *NAC* Compl. ¶ 38.

Visa's Plus ATM network and MasterCard's Cirrus ATM network each have adopted rules that apply to ATM operators (or "acquirers") that choose to join and process ATM transactions over its network. Each network's rules include a provision that bars ATM owners from charging a consumer a higher access fee for processing the consumer's ATM transaction over its network rather than over a different ATM network. *Mackmin* Compl. ¶¶ 69-70; *Stoumbos* Compl. ¶¶ 31-32; *NAC* Compl. ¶¶ 41-42. Specifically, plaintiffs allege that Visa's Plus network Operating Regulation 4.10A provides that

> An ATM Acquirer may impose an Access Fee if:
>
> It imposes an Access Fee on all other Financial Transactions through other shared networks at the same ATM;
>
> The Access Fee is not greater than the Access Fee amount on all other Interchange Transactions through other shared networks at the same ATM . . . .

*Mackmin* Compl. ¶ 69; *Stoumbos* Compl. ¶ 31; *NAC* Compl. ¶ 41. Plaintiffs also allege that

MasterCard's Cirrus network Worldwide Operating Rule 7.13.1.2 provides that

> An Acquirer must not charge an ATM Access Fee in connection with a Transaction that is greater than the amount of any ATM Access Fee charged by that Acquirer in connection with the transactions of any other network accepted at that terminal.

*Mackmin* Compl. ¶ 70; *Stoumbos* Compl. ¶ 32; *NAC* Compl. ¶ 42. Plaintiffs complain that those ATM access fee rules operate as a "restraint on the exercise of discretion" by ATM operators to charge consumers an access fee that the ATM operators "deem commercially appropriate." *Mackmin* Compl. ¶¶ 69-70; *Stoumbos* Compl. ¶¶ 31-32; *NAC* Compl. ¶¶ 41-42.

Plaintiffs assert that the network rules are the product of "horizontal" agreements among bank members of Visa's Plus ATM network and Visa, and among bank members of MasterCard's Cirrus ATM network and MasterCard, to fix ATM access fees. *See Mackmin* Compl. ¶ 72 ("horizontal agreements among the Bank Defendants and the Bank Co-Conspirators to adhere to rules and operating regulations that require ATM Access Fees to be fixed at a certain level"); *Stoumbos* Compl. ¶ 34 (each network's rule "implement[s] a uniform horizontal agreement to fix ATM Access Fees"); *NAC* Compl.¶ 43 (each network's rule "implement[s] and enforc[es] a uniform horizontal agreement among U.S. banks to fix ATM access fees").

Plaintiffs claim that because of the ATM access fee rules of Visa's Plus network and MasterCard's Cirrus network, ATM operators are not able to "offer discounts or any other benefit or inducement to persuade consumers to complete their transactions over competing, lower cost [ATM] networks . . . ." *Mackmin* Compl. ¶ 75; *see also Stoumbos* Compl. ¶ 36 (same); *NAC* Compl. ¶ 45 (same). Plaintiffs do not allege that consumers have the power to select the ATM network over which their ATM transactions are completed, whether in response to discounts or other benefits ATM owners might provide or otherwise. *See Mackmin* Compl. ¶¶ 74-80; *Stoumbos* Compl. ¶¶ 34-41; *NAC* Compl. ¶¶ 43-49. The consumer plaintiffs

nevertheless claim that the alleged inability of ATM owners to offer discounts or other benefits leads consumers to pay "supra-competitive prices for ATM Access Fees" to ATM owners. *Mackmin* Compl. ¶ 76; *see also Stoumbos* Compl. ¶ 38 (consumers "pay higher ATM Access Fees"). The non-bank ATM operator plaintiffs claim that their alleged inability to offer discounts "prevents ATM operators from setting profit-maximizing prices." *NAC* Compl. ¶ 45.

Each of plaintiffs' complaints asserts a conspiracy to restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. *Mackmin* Compl. ¶¶ 106-111; *Stoumbos* Compl. ¶¶ 48-52; *NAC* Compl. ¶¶ 64-68. The consumer plaintiffs in *Mackmin* and *Stoumbos* also assert claims for violations of antitrust, consumer protection, and unfair competition laws of the District of Columbia and various states. *Mackmin* Compl. ¶¶ 112-152; *Stoumbos* Compl. ¶¶ 53-102. All of the plaintiffs seek, among other things, treble damages and an injunction eliminating or barring enforcement of the ATM access fee rules of Visa's Plus network and MasterCard's Cirrus network. *See* Requests for Relief in *Mackmin*, *Stoumbos*, and *NAC* Compls.

The consumer plaintiffs seek to represent nationwide classes of all individuals and entities that, on or after October 1, 2007, "paid an ATM Access Fee" either "directly to any Bank Defendant or Bank Co-Conspirator" or indirectly to "any Visa and MasterCard Member Bank" (*Mackmin* Compl. ¶¶ 89, 97), or that "were charged an ATM Access Fee at an Independent ATM" (*Stoumbos* Compl. ¶ 22). Plaintiffs in *Mackmin* also seek to represent subclasses of consumers resident in the District of Columbia and twenty-nine states who "paid an ATM Access Fee . . . to any Member Bank" of Visa or MasterCard on or after October 1, 2007. *Mackmin* Compl. ¶ 98. The non-bank ATM operator plaintiffs seek to represent a nationwide class of "[a]ll non-bank operators of ATM terminals . . . that have adhered to the defendants' ATM restraints in transactions that they have completed at any time on or after October 1, 2007." *NAC* Compl. ¶ 57.

**ARGUMENT**

This Court recently articulated the standards applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) as follows:

> "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 129 S. Ct. at 1949. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.
>
> . . .
>
> A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.* [at 1949], quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*

*Garabis v. Unknown Officers of Metro. Police*, — F. Supp. 2d —, 2011 WL 5042379, at *2 (D.D.C. Oct. 25, 2011) (Jackson, J.).

Plaintiffs fail to meet that pleading standard in these cases, for several independent reasons. None of the plaintiffs alleges facts that could establish either (1) the conspiracy to restrain trade among banks and Visa, or banks and MasterCard, necessary for plaintiffs to prove a violation of Sherman Act Section 1, or (2) the antitrust injury necessary for plaintiffs to obtain relief under federal antitrust law. The *Mackmin* and *Stoumbos* plaintiffs fail to state a claim under District of Columbia and state antitrust statutes for the same reasons, and also allege nothing deceptive or unfair about the challenged network ATM rules that could violate District of Columbia or state consumer protection or unfair competition statutes. Plaintiffs' complaints therefore should be dismissed.

## I. PLAINTIFFS ALLEGE NO FACTS THAT COULD ESTABLISH A CONSPIRACY TO RESTRAIN TRADE IN VIOLATION OF SHERMAN ACT SECTION ONE

Section 1 of the Sherman Act requires a plaintiff to prove a "contract, combination . . . or conspiracy, in restraint of trade." 15 U.S.C. § 1. The Supreme Court has established that Section 1 thus requires a plaintiff to allege conduct that "invests" the defendants' alleged behavior "with a plausible suggestion of conspiracy" to restrain trade. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007). The complaint must allege "enough factual matter (taken as true) to suggest that an agreement was made" and "that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Id.* at 556-57. Numerous decisions in this Circuit have granted motions to dismiss Sherman Act Section 1 claims for failure to allege such facts. *See, e.g.*, *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1064-66 (D.C. Cir. 1992); *Asa Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213, 216 (D.D.C. 2005); *Dial A Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584, 588 (D.D.C. 1995), *aff'd on other grounds*, 82 F.3d 484 (D.C. Cir. 1996).

Plaintiffs admit that since their respective IPOs, Visa and MasterCard have been publicly held corporations. *See Mackmin* Compl. ¶ 44; *Stoumbos* Compl. ¶ 20; *NAC* Compl. ¶ 30. Plaintiffs nevertheless assert that Visa's enforcement of its Plus network's ATM access fee rule is the product of a conspiracy to fix ATM access fees among competing banks and Visa, and that MasterCard's enforcement of its Cirrus network's ATM access fee rule is the product of a conspiracy to fix ATM access fees among competing banks and MasterCard. None of the facts that plaintiffs allege could establish any such conspiracy under Sherman Act Section 1.[2]

---

[2] Plaintiffs do not allege an "inter-network" conspiracy between Visa and MasterCard. Nor could they, when the complaints do not "raise[ ] a suggestion of a preceding agreement" between Visa and

*(footnote continued on next page)*

### A. That Banks Allegedly Are Members of Visa or MasterCard and Follow Its Network Rules Could Not Establish a Conspiracy to Restrain Trade

First, plaintiffs allege that after the Visa and MasterCard IPOs, "banks continue to hold non-equity membership interests" in Visa and MasterCard subsidiaries, and that Visa and MasterCard "continue to refer to their bank customers as 'members.'" *Mackmin* Compl. ¶¶ 44-45; *NAC* Compl. ¶ 30; *see also Stoumbos* Compl. ¶ 21 (same). Plaintiffs further allege that the banks "adhere to" the challenged Visa and MasterCard ATM access fee rules, which plaintiffs say "originated in the rules of the former bankcard associations" agreed to by the banks, before Visa and MasterCard became publicly held corporations following their IPOs. *Mackmin* Compl.¶ ¶ 44-45; *Stoumbos* Compl. ¶¶ 20-21; *NAC* Compl. ¶¶ 30-31.

Courts repeatedly have held, however, that merely being a member of an association and following its rules is insufficient — as a matter of law — to establish that the members of the association conspired horizontally among themselves and with the association to restrain trade. To adequately plead such a horizontal "hub and spoke" conspiracy, a plaintiff must allege facts that could establish an agreement among competing members of the association — a "wheel" or "rim" — and not just "spoke" agreements between individual members and the association. *See, e.g.*, *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 420 (5th Cir. 2010) (affirming dismissal of Section 1 claim because plaintiffs alleged "no wheel and therefore no hub-and-spoke conspiracy"); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 327 (3d Cir. 2010) (same).

In *Federal Prescription Service, Inc. v. American Pharmaceutical Association*, 663 F.2d 253 (D.C. Cir. 1981), the D.C. Circuit rejected a Sherman Act Section 1 claim of horizontal

---

*(footnote continued from previous page)*
MasterCard, as opposed to "merely parallel conduct that could just as well be independent action" by each network. *Twombly*, 550 U.S. at 557.

conspiracy based on pharmaceutical associations' membership in the American Pharmaceutical Association. The D.C. Circuit held that "[m]ere membership in associations is not enough to establish participation in a conspiracy with other members of those associations, much less in a conspiracy between those associations and yet another association." *Id.* at 265; *see also Ass'n of Retail Travel Agents, Ltd. v. Air Transp. Ass'n of Am.*, 635 F. Supp. 534, 536 (D.D.C. 1986) ("mere membership in a trade association does not give rise to an inference of conspiracy").

The Ninth Circuit has applied this same reasoning to dismiss claims that banks conspired with Visa and MasterCard. In *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008), merchants alleged that banks, by virtue of their membership in Visa and MasterCard, "knowingly, intentionally and actively" conspired to enforce Visa and MasterCard network rules that allegedly fixed interchange fees as the minimum fee that banks would charge merchants on payment card transactions. *Id.* at 1048. The Ninth Circuit affirmed the dismissal of that claim. It held that "merely charging, adopting or following the fees set by a Consortium is insufficient as a matter of law to constitute a violation of Section 1 of the Sherman Act." *Id.* The Ninth Circuit reasoned that "membership in an association does not render an association's members automatically liable" under antitrust law for the association's activities. *Id.* Other Circuit Courts of Appeals have reached the same conclusion.[3]

Nor does plaintiffs' allegation that Visa and MasterCard each "operate principally for the benefit of their member banks" (*Mackmin* Compl.¶ 45; *Stoumbos* Compl. ¶ 21; *NAC* Compl.

---

[3] *See, e.g.*, *Viazis v. Am. Ass'n of Orthodontists*, 314 F.3d 758, 764 (5th Cir. 2002) (an association "is not by its nature a 'walking conspiracy,' its every denial of some benefit amounting to an unreasonable restraint of trade") (internal quotation omitted); *AD/SAT, A Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999) ("every action by a trade association is not concerted action by the association's members"); *Am. Airlines v. Christensen*, 967 F.2d 410, 413-14 (10th Cir. 1992) ("the mere fact that [an airline's mileage program] members accepted [its] terms does not generate the kind of concerted action needed to violate Section 1").

¶ 30), require a different conclusion. There is nothing conspiratorial about making business decisions that benefit one's customers; such decisions do not tend to exclude the possibility of independent action and thus could not establish a conspiracy to restrain trade in violation of Sherman Act Section 1. *See, e.g.*, *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 762-64 (1984).

**B. That Bank Employees Sometimes Served on the Boards of, or That Banks Held Unspecified Equity Interests in, Visa or MasterCard Could Not Establish a Conspiracy to Restrain Trade**

Second, plaintiffs allege that after the Visa and MasterCard IPOs, the "largest" banks continue to hold "seats on the . . . boards of directors" of, and "equity interests" in, Visa and MasterCard. *Mackmin* Compl. ¶ 44; *Stoumbos* Compl. ¶ 21; *NAC* Compl. ¶ 30. But plaintiffs plead no facts regarding the extent of those board seats or equity holdings currently or at any time. *See Mackmin* Compl. ¶ 44; *Stoumbos* Compl. ¶ 21; *NAC* Compl. ¶ 30. Plaintiffs thus allege no basis upon which such conduct could establish a conspiracy to restrain trade.

Service on a corporation's board is insufficient as a matter of law to establish an antitrust conspiracy. As the Supreme Court has concluded, "[t]he officers of a single firm are not separate economic actors pursuing separate economic interests," and so "officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984). The Ninth Circuit accordingly has concluded that banks' "participation on the [Visa] association's board is not enough by itself" to establish an antitrust conspiracy. *Kendall*, 518 F.3d at 1048; *see also, e.g.*, *Bell v. Fur Breeders Agric. Coop.*, 348 F.3d 1224, 1234 (10th Cir. 2003) ("Section 1 of the Sherman Act was not intended to cover officers or board members when they are formulating or carrying out . . . managerial policy") (internal quotation omitted); *AD/SAT*, 181 F.3d at 237 (that newspaper president "was chairman of the board of the AP during the development, approval, and

implementation" of the challenged AP conduct "does not support the inference that the [newspaper] joined in" AP's allegedly unlawful conduct); *WAKA LLC v. DC Kickball*, 517 F. Supp. 2d 245, 250 (D.D.C. 2007) ("an organization cannot conspire with its own officers nor can officers within one organization conspire to restrain trade for purposes of Section 1 of the Sherman Antitrust Act").[4]

That banks held unspecified equity interests in Visa or MasterCard likewise could not prove that they conspired regarding the access fee rules of Visa's Plus ATM network or MasterCard's Cirrus ATM network. The mere possession of stock or similar equity interests in a corporation cannot establish that the stockholders conspired among themselves to restrain trade with respect to conduct in which the corporation engages. *Cf. In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 2008 WL 5082872, at *10 (E.D.N.Y. Nov. 25, 2008) (dismissing claim that MasterCard member banks possessed sufficient control over MasterCard after its IPO to impose anticompetitive rules by virtue of the banks' equity interests in MasterCard).

### C. Plaintiffs Allege No Basis for Any Conspiracy to Restrain Trade Under the *American Needle* Decision

Third, plaintiffs theorize that banks "have ceded power and authority to" Visa and MasterCard "to design, implement, and enforce" their respective Plus and Cirrus network ATM access fee rules. *Mackmin* Compl. ¶ 45; *Stoumbos* Compl. ¶ 21; *NAC* Compl. ¶ 31. Those

---

[4] The D.C. Circuit's decision in *Rothery Storage & Van Co. v. Atlas Van Lines*, 792 F.2d 210 (D.C. Cir. 1986), is not to the contrary. There, the D.C. Circuit stated, in dicta, that a decision made by a van line's board of directors might be subject to scrutiny under Section 1 of the Sherman Act when nine members of its eleven-member board were "actual or potential competitors" of the van line. *Id.* at 215. In contrast, plaintiffs here do not and cannot assert that any of the allegedly conspiring banks are actual or potential ATM network competitors of Visa or MasterCard.

allegations appear to be a misguided effort to assert an antitrust conspiracy based on the Supreme Court's decision in *American Needle, Inc. v. National Football League*, 130 S. Ct. 2201 (2010).

In that case, the Supreme Court considered whether an agreement by the NFL teams to license their independently owned team trademarks under common, exclusive terms through the NFL constituted concerted action under Sherman Act Section 1. The Supreme Court explained that whether a decision of a jointly owned entity, like the NFL, constitutes concerted action under Section 1 depends on whether the decision "'depriv[es] the marketplace of independent centers of decisionmaking,'" and "therefore of actual or potential competition." *Id.* at 2212 (quoting *Copperweld*, 467 U.S. at 769). According to the Supreme Court, each individual football team was an independent competitor in a market for team trademark licenses, and a decision by the teams to cede their individual trademark licensing rights to the NFL deprived the marketplace of those independent decisionmakers. *Id.* at 2212-13.

That is not the situation in this case. Whereas in *American Needle* each NFL team independently owned the licensing rights to its own individual team logo that it ceded to the league, plaintiffs here do not allege that any bank ever independently had the authority to determine Plus or Cirrus ATM network access fee rules, which the bank could have ceded to Visa and MasterCard. In fact, plaintiffs do not — and cannot — allege that any entity other than Visa or MasterCard has had the right or ability to establish access fee rules for transactions conducted over Visa's Plus network or MasterCard's Cirrus network. Because no bank allegedly ever had any independent network rulemaking power that it could cede to Visa or MasterCard, plaintiffs' allegations could not plead a conspiracy to restrain trade under *American Needle*.

* * *

In short, because plaintiffs allege no facts that could establish a horizontal agreement among banks and Visa to enforce the ATM access fee rule of Visa's Plus network, or among

banks and MasterCard to enforce the ATM access fee rule of MasterCard's Cirrus network, plaintiffs fail to plead the conspiracy to restrain trade that is necessary for their claims under Sherman Act Section 1. Plaintiffs' Sherman Act Section 1 claims therefore should be dismissed.

## II. PLAINTIFFS ALLEGE NO FACTS THAT COULD ESTABLISH ANTITRUST INJURY

Plaintiffs' Sherman Act Section 1 claims also fail as a pleading matter for a second, independent reason: plaintiffs fail to allege antitrust injury. To obtain relief under federal antitrust law, a plaintiff must plead and prove "antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The antitrust injury requirement ensures that a plaintiff can recover only if its injury "stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) (emphasis in original).

Here, the challenged ATM access fee rules prevent ATM operators only from charging consumers *higher* access fees for transactions completed over the Plus or Cirrus networks instead of other ATM networks. That does not result in an injury of the type that the antitrust laws were intended to prevent. Nor do plaintiffs allege facts that could establish injury flowing from the rules.

### A. The Challenged Visa and MasterCard Rules Do Not Result in Antitrust Injury

A practice that results in lower prices to consumers generally does not result in antitrust injury actionable under Sherman Act Section 1. The Supreme Court has held that "[l]ow prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition" and "cannot give rise to antitrust injury." *Atl. Richfield*, 495 U.S. at 340; *see also Dial A Car*, 884 F. Supp. at 591 (dismissing claim for lack of antitrust

injury because "[d]efendants' conduct may have resulted in *lower* prices and *more* competition in the market; it has not resulted in *higher* prices and *less* competition") (emphasis in original); *So. Pac. Commc'ns Co. v. AT&T*, 556 F. Supp. 825, 1015 (D.D.C. 1982) (rejecting federal antitrust claims after trial based on absence of antitrust injury, where evidence showed that the challenged practice resulted in prices that "were too low rather than too high").

Here, the challenged ATM access fee rules prevent ATM owners from charging higher prices to consumers when processing their transactions over Visa's Plus network or MasterCard's Cirrus network. As plaintiffs themselves allege, Visa's Plus network requires the access fee that an ATM operator charges a consumer for processing a transaction through the Plus network be "not greater than the Access Fee amount on . . . [t]ransactions through other shared networks at the same ATM." *Mackmin* Compl. ¶ 69; *Stoumbos* Compl. ¶ 31; *NAC* Compl. ¶ 41. Similarly, MasterCard's Cirrus network requires that an ATM operator "not charge an ATM Access Fee in connection with a Transaction that is greater than the amount of any ATM Access Fee charged . . . in connection with the transactions of any other network accepted at that terminal." *Mackmin* Compl. ¶ 70; *Stoumbos* Compl. ¶ 32; *NAC* Compl. ¶ 42. Those rules do not prevent an ATM operator from lowering access fees for transactions processed over Plus, Cirrus, or any other competing ATM network; they merely prohibit imposing greater access fees on consumers whose transactions are completed over the Plus or Cirrus networks.

Courts have concluded that "most favored nations" rules like the ATM access fee rules at issue here, which ensure that buyers pay only the lowest price charged for competing services, are not the type of conduct that the antitrust laws are intended to prevent. As the Seventh Circuit held in *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 65 F.3d 1406 (7th Cir. 1995):

> "Most favored nations" clauses are standard devices by which buyers try to bargain for low prices, by getting the seller to agree to treat them as favorably as any of their other customers . . . and that is the sort of conduct that the antitrust laws seek to encourage. It is not price-fixing.

*Id.* at 1415. In *Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island*, 692 F. Supp. 52 (D.R.I. 1988), *aff'd*, 883 F.2d 1101 (1st Cir. 1989), the district court similarly concluded that "it would seem silly to argue that a policy to pay the same amount for the same services is anticompetitive, even on the part of one who has market power," since that "is what competition should be all about." 692 F. Supp. at 71. On appeal, the First Circuit affirmed that such conduct is "legitimate competitive activity of a sort that is favored — not prohibited — by the antitrust laws" because "a policy of insisting on a supplier's lowest price . . . tends to further competition on the merits." 883 F.2d at 1102, 1110.[5]

Indeed, courts repeatedly have dismissed antitrust challenges to payment network rules that — like the Visa and MasterCard ATM access fee rules challenged in this case — prevent surcharges that would increase the price to consumers who use the network's services. In *Tennessean Truckstop, Inc. v. NTS, Inc.*, 875 F.2d 86 (6th Cir. 1989), a truckstop owner claimed that NTS's policy prohibiting truckstop owners from charging consumers using NTS credit cards more than 105% of the prices paid by cash customers violated federal antitrust law. *Id.* at 87-90. The Sixth Circuit affirmed the dismissal of that claim on a motion to dismiss. *Id.* The court reasoned that "[t]he credit card surcharge cap is obviously a proconsumer device, and if it has cost [the truckstop] some profit, the 'injury' is not 'of the type that the antitrust laws were designed to prevent.'" *Id.* at 90 (quoting *Brunswick*, 429 U.S. at 489).

---

[5] For the same reasons, as set forth in the memorandum in support of the bank defendants' motion to dismiss, plaintiffs have no basis to pursue their claims as per se violations of Sherman Act Section 1.

In *SouthTrust Corp. v. Plus System, Inc.*, 913 F. Supp. 1517 (N.D. Ala. 1995), the district court applied that same reasoning to grant summary judgment dismissing an antitrust challenge to a former rule of the Plus network, which prohibited ATM operators from charging *any* access fee to a consumer for an ATM transaction not made at the consumer's bank and processed over the Plus network. *Id.* at 1520. The court held that Plus's ban on charging an access fee did not result in an antitrust injury, since it "poses no identifiable threat of injury to competition"; rather, it "enhances consumer welfare by limiting prices consumers will pay . . . and restricting the ability of [bank ATM operators] to opportunistically profit." *Id.* at 1522; *see also, e.g.*, *Kartell v. Blue Shield of Mass., Inc.*, 749 F.2d 922, 931 (1st Cir. 1984) (Breyer, J.) (Blue Cross agreements prohibiting doctors from surcharging its insured consumers beyond Blue Cross's reimbursement payments did not unreasonably restrain trade, since "the Congress that enacted the Sherman Act saw it as a way of protecting consumers against prices that were too *high*, not too low") (emphasis in original).

As in those cases, the Visa and MasterCard ATM access fee rules challenged here simply prevent ATM operators from imposing higher access fees on consumers whose transactions are completed over the Plus or Cirrus networks rather than other ATM networks. Those rules do not result in antitrust injury to the consumer or non-bank ATM operator plaintiffs for which relief can be obtained under federal antitrust law.

### B. Plaintiffs Allege No Facts That Could Show Injury Flowing from The Challenged Visa or MasterCard Rules

Nor do plaintiffs allege any facts that could show they suffered antitrust injury flowing from the challenged ATM access fee rules of Visa and MasterCard. Plaintiffs theorize that those rules prevent ATM owners from offering "discounts or any other benefit or inducement to persuade consumers to complete their transactions over competing, lower cost [ATM]

networks," and thereby restrain inter-network competition. *Mackmin* Compl. ¶ 75; *see also Stoumbos* Compl. ¶ 36 (same); *NAC* Compl. ¶ 45 (same). But nothing in the access fee rules prohibits ATM owners from providing discounted ATM access fees for transactions completed over competing networks. The rules require only that those same discounts also be provided to consumers whose ATM transactions are completed over Visa's Plus ATM network or MasterCard's Cirrus ATM network, so that the fees to consumers for those transactions are not greater than for transactions processed over other networks.

Moreover, plaintiffs allege no facts that could support their theory that access fee discounts or other benefits would have persuaded consumers to complete ATM transactions over supposedly lower cost ATM networks. Plaintiffs do not allege that a consumer, when withdrawing cash or conducting other transactions at an ATM, has the power to select the ATM network over which the ATM transaction is completed. *See Mackmin* Compl. ¶¶ 74-80; *Stoumbos* Compl. ¶¶ 34-41; *NAC* Compl. ¶¶ 43-49. In the absence of such power — which plaintiffs do not and cannot allege — any discount or benefit that ATM owners theoretically might provide could not persuade consumers to select supposedly lower cost ATM networks to complete their transactions, and therefore could not improve inter-network competition in the manner that plaintiffs theorize. Plaintiffs thus fail to allege any basis for antitrust injury — or, indeed, any injury-in-fact at all — flowing from the challenged Visa or MasterCard ATM access fee rules.

Courts have dismissed claims for lack of antitrust injury when, as here, the plaintiff alleges no facts that could establish injury flowing from anticompetitive conduct. *See, e.g.*, *Dial A Car*, 82 F.3d at 486 (affirming dismissal of antitrust claim because plaintiff "pleaded no facts that would show that [defendants'] conduct was anticompetitive"); *Ass'n of Retail Travel Agents*, 635 F. Supp. at 537 (granting motion to dismiss because "[a]bsent factually supported allegations

of anticompetitive effect," the plaintiff's claim "fails to state a claim under section 1 of the Sherman Act and must be dismissed"); *Brown v. Visa U.S.A., Inc.*, 674 F. Supp. 249, 252 (N.D. Ill. 1987) (granting motion to dismiss complaint against Visa because "[a]llegations as to a hypothetical anticompetitive effect are not enough to sustain this complaint").

In sum, the challenged ATM access fee rules on their face prevent consumers from paying higher prices, and plaintiffs allege no facts that could support their theory that the rules restrain inter-brand competition by preventing ATM operators from steering consumers to purportedly lower cost networks through discounting or other means. Plaintiffs fail to plead the antitrust injury necessary for them to obtain relief under federal antitrust law, and their Sherman Act Section 1 claims therefore should be dismissed.

## III. PLAINTIFFS ALLEGE NO FACTS THAT COULD ESTABLISH A VIOLATION OF DISTRICT OF COLUMBIA OR STATE STATUTES

Finally, plaintiffs in the *Mackmin* and *Stoumbos* actions contend that the ATM access fee rules of Visa's Plus network and MasterCard's Cirrus network also violate certain antitrust, consumer protection, and unfair competition statutes of the District of Columbia and various states. *Mackmin* Compl. ¶¶ 112-152; *Stoumbos* Compl. ¶¶ 53-102. Plaintiffs fail to state a claim under those antitrust statutes for the same reasons as under federal antitrust law. Plaintiffs also plead no facts that could show the challenged network ATM access fee rules are deceptive or unfair, which would be necessary for plaintiffs to state a claim under the consumer protection or unfair competition statutes.

### A. Plaintiffs State No Claim Under District of Columbia or State Antitrust Statutes for the Same Reasons That They State No Claim Under Federal Antitrust Law

With one exception, the *Mackmin* and *Stoumbos* plaintiffs sue under antitrust statutes of the District of Columbia and various states that are construed in accordance with federal

interpretations of the Sherman Act. *See Mackmin* Compl. ¶¶ 112-138; *Stoumbos* Compl. ¶¶ 53-76. For example, the District of Columbia's Antitrust Act provides that "a court of competent jurisdiction may use as a guide interpretations given by federal courts to comparable antitrust statutes." D.C. Code § 28-4515.[6] Plaintiffs thus fail to state a claim under those

[6] *Accord* Ariz. Rev. Stat. § 44-1412 ("[i]t is the intent of the legislature that in construing this article, the courts may use as a guide interpretations given by the federal courts to comparable federal antitrust statutes"); Haw. Rev. Stat. § 480-3 ("[t]his chapter shall be construed in accordance with judicial interpretations of similar federal antitrust statutes"); 740 Ill. Comp. Stat. 10/11 ("[w]hen the wording of this Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide to construing this Act"); Iowa Code § 553.2 (Iowa antitrust statute "shall be construed to complement and be harmonized with the applied laws of the United States which have the same or similar purpose . . . [and] to achieve uniform application of the state and federal laws prohibiting restraints of economic activity and monopolistic practices"); Neb. Rev. Stat. § 59-829 (when the language of the state antitrust provisions are "the same as or similar to the language of a federal antitrust law," the Nebraska courts "shall follow the construction given to the federal law by the federal courts"); Nev. Rev. Stat. § 598A.050 ("[t]he provisions of this chapter shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes"); N.H. Rev. Stat. Ann. § 356:14 ("the courts may be guided by interpretations of the United States' antitrust laws"); N.M. Stat. Ann. § 57-1-15 ("[u]nless otherwise provided . . . the Antitrust Act shall be construed in harmony with judicial interpretations of the federal antitrust laws"); Or. Rev. Stat. § 646.715(2) ("[t]he decisions of federal courts in construction of federal law relating to the same subject shall be persuasive authority"); S.D. Codified Laws § 37-1-22 ("in construing this chapter, the courts may use as a guide interpretations given by the federal or state courts to comparable antitrust statutes"); Utah Code Ann. § 76-10-926 (courts "will be guided by interpretations given by the federal courts to comparable federal antitrust statutes"); W. Va. Code § 47-18-16 (state antitrust law "shall be construed liberally and in harmony with ruling judicial interpretations of comparable federal antitrust statutes"); *see also TRI, Inc. v. Boise Cascade Office Prods., Inc.*, 315 F.3d 915, 919 & n.2 (8th Cir. 2003) (affirming dismissal of federal and Minnesota antitrust law claims because Minnesota's law is "interpreted consistently with the federal antitrust laws"); *Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 148 n.7 (1st Cir. 2000) ("Maine antitrust statutes parallel the Sherman Act and are analyzed pursuant to federal antitrust doctrine") (internal quotations omitted); *X.L.O. Concrete Corp. v. Rivergate Corp.*, 634 N.E.2d 158, 161 (N.Y. 1994) (New York's antitrust law "having been modelled on the Federal Sherman Act of 1890, should generally be construed in light of Federal precedent . . .") (internal quotation omitted); *Vt. Mobile Home Owners' Ass'n v. Lapierre*, 94 F. Supp. 2d 519, 523 (D. Vt. 2000) (applying the same analysis to Sherman Act and Vermont state law tying claims because they "provid[e] the same protections"); *Marshall v. Planz*, 13 F. Supp. 2d 1231, 1246 (M.D. Ala. 1998) (granting summary judgment on claims under Alabama antitrust statute as well as Sherman Act because "Alabama courts interpret this provision in accordance with federal antitrust law"); *Futurevision Cable Sys. of Wiggins, Inc. v. Multivision Cable TV Corp.*, 789 F. Supp. 760, 780 (S.D. Miss. 1992) (dismissing alleged violations of state antitrust law because of dismissal of federal antitrust claims), *aff'd without opinion*, 986 F.2d 1418 (5th Cir. 1993); *Marin Cnty. Bd. of Realtors, Inc. v. Palsson*, 549 P.2d 833, 835 (Cal. 1976) ("federal cases interpreting the Sherman Act are applicable to problems arising under [California's] Cartwright Act"); *Bergstrom v. Noah*, 974 P.2d 520, 531 (Kan. 1999) (finding that federal cases are persuasive authority for interpreting Kansas antitrust law);

*(footnote continued on next page)*

antitrust statutes for the same reasons discussed above with respect to their claims under federal antitrust law.

The sole exception is the Tennessee Trade Practices Act, which differs from federal antitrust law in that it prohibits only anticompetitive conduct involving the sale of "articles." Tenn. Code Ann. § 47-25-101. Courts accordingly have dismissed Tennessee state antitrust law claims that allege restraints of trade in services rather than the sale of tangible articles or commodities. *See McAdoo Contractors, Inc. v. Harris*, 439 S.W.2d 594, 597 (Tenn. 1969); *Amodeo, D.C. v. Conservcare, LLC*, 2009 WL 736656, at *5 (Tenn. Ct. App. Mar. 20, 2009); *Bennett v. Visa U.S.A., Inc.*, 198 S.W.3d 747, 751 (Tenn. Ct. App. 2006). Because the ATM access fee rules that plaintiffs challenge in this case apply to the sale of ATM services rather than any tangible good, plaintiffs fail to state a claim under the Tennessee Trade Practices Act.

All of the *Mackmin* and *Stoumbos* plaintiffs' claims under District of Columbia and state antitrust statutes therefore should be dismissed.

---

*(footnote continued from previous page)*
*Goldman v. Loubella Extendables*, 283 N.W.2d 695, 699 (Mich. Ct. App. 1979) ("[f]ederal court interpretations of the Sherman Act are persuasive authority as to the meaning of the Michigan [antitrust] act"); *Reichold Chems., Inc. v. Goel*, 555 S.E.2d 281, 293 (N.C. Ct. App. 2001) ("[f]ederal decisions may provide guidance in determining the scope and meaning of" North Carolina's antitrust statute) (internal quotations omitted); *Beckler v. Visa U.S.A., Inc.*, 2004 WL 2115144, at *2 (N.D. Dist. Ct. Aug. 23, 2004) (applying federal antitrust precedent to dismiss North Dakota antitrust law claim); *Fresh Made, Inc. v. Lifeway Foods, Inc.*, 2002 WL 31246922, at *9 (E.D. Pa. Aug. 9, 2002) (finding that the Sherman Act embodies common law antitrust doctrines, and therefore dismissing Pennsylvania state restraint of trade claim for the same reasons that warranted dismissal of the Sherman Act claim); *Eichenseer v. Madison-Dane Cnty. Tavern League, Inc.*, 748 N.W.2d 154, 174 n.23 (Wis. 2008) ("[w]e have previously stated that Wis. Stat. § 133.01 was intended as a reenactment of the first two sections of the [Sherman Act]" and so "[t]he question of what acts constitute a combination or conspiracy in restraint of trade under the Sherman Act is controlled by federal court decisions").

### B. Plaintiffs Allege No Deceptive or Unfair Conduct That Could State a Claim Under District of Columbia or State Consumer Protection or Unfair Competition Statutes

The state consumer protection and unfair competition statutes under which the *Mackmin* and *Stoumbos* plaintiffs assert claims all require that a defendant act "fraudulently," "deceptively," "unconscionably," "unfairly," or "unlawfully."[7] Yet plaintiffs offer nothing but

[7] Statutes requiring one or more of these elements include: The Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471, *et seq.*, *see Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1255 (Alaska 2007) (prima facie case under the statute requires proof of an unfair practice with the tendency to deceive); The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, *et seq.*, *see CEI Eng'g Assocs. v. Elder Constr. Co.*, 306 S.W.3d 447, 453 (Ark. Ct. App. 2009) (in order to state a claim for a deceptive trade practice, plaintiff must allege facts showing unconscionable, false, or deceptive act); The California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, *see Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1136-37 (2010) (statute requires a plaintiff to show the defendant's business practice was "fraudulent, unlawful, or unfair"); The D.C. Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq.*, *see Snowder v. District of Columbia*, 949 A.2d 590, 598-99 (D.C. 2008) (describing specific "unlawful" deceptive practices under the Act); Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*, *see State v. Commerce Comm'l Leasing LLC*, 946 So.2d 1253, 1258 (Fla. Dist. Ct. App. 2007) (under the statute a plaintiff must allege "acts or practices likely to deceive a consumer acting reasonably under the circumstances"); Haw. Rev. Stat. §§ 480-1, *et seq.*, *see Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303, 318 (Haw. 2010) (statute requires that defendant's unfair conduct be "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"); The Idaho Consumer Protection Act, Idaho Code Ann. §§ 48-601, *et seq.*, *see Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010) (statute only permits recovery for actions deemed unfair or deceptive); The Kansas Unfair Trade and Consumer Protection Act, Kan. Stat. Ann. §§ 50-623, *et seq.*, *see Unruh v. Purina Mills, LLC*, 221 P.3d 1130, 1139 (Kan. 2009) (statute defines specific unlawful deceptive practices); The Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5, §§ 207, *et seq.*, *see Voss v. Woodmaster of Me., Inc.*, 2005 WL 2804826, at *5 (Me. Super. Ct. Aug. 12, 2005) (holding that the defendant's actions do not "rise[ ] to the level of unfairness required by the UTPA"); The Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 1, *et seq.*, *see Gossels v. Fleet Nat'l Bank*, 902 N.E.2d 370, 378 (Mass. 2009) (statute requires a showing of unfairness, i.e., immoral, unethical, oppressive, or unscrupulous conduct); Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.020 (prohibiting any "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, [or] unfair practice" in connection with the sale or advertisement of any merchandise), and Missouri Code of State Regulations, tit. 15, §§ 60-7.010, *et seq.*; Montana's Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code Ann. §§ 30-14-103, *et seq.*, *see Rohrer v. Knudson*, 203 P.3d 759, 764 n.3 (Mont. 2009) ("the MPCA declares both unfair and deceptive acts or practices unlawful"); Nebraska's Consumer Protection Act, Neb. Rev. Stat. §§ 59-1602, *et seq.*, *see State ex. rel. Stenberg v. Consumer's Choice Foods, Inc.*, 755 N.W.2d 583, 590-91 (Neb. 2008) (statute requires plaintiff to prove that the practice was unfair); New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358-A:2, *et seq.*, *see Hair Excitement, Inc. v. L'Oreal U.S.A., Inc.*, 965 A.2d 1032, 1038 (N.H. 2009) (statute requires deceptive acts that would attain "a level of rascality that would raise an eyebrow of someone inured to the rough and

*(footnote continued on next page)*

conclusory assertions of such conduct, which are inadequate to state a claim. *See Mackmin* Compl. ¶¶ 67-80, 139-152; *Stoumbos* Compl. ¶¶ 34-41, 77-102.

Plaintiffs allege no facts that could show that the challenged Visa or MasterCard ATM access fee rules are misleading, or that Visa or MasterCard should have made any disclosures to consumers or non-bank ATM operators with respect to those rules. *See Mackmin* Compl. ¶¶ 67-80, 139-152; *Stoumbos* Compl. ¶¶ 34-41, 77-102. Moreover, courts in this context construe "unfair" conduct to mean immoral, unethical, oppressive, or unscrupulous conduct.[8]

---

*(footnote continued from previous page)*
tumble of the world of commerce") (internal quotation omitted); The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1, *et seq.*, *see Truong v. Allstate Ins. Co.*, 227 P.3d 73, 80 (N.M. 2010) (the statute provides relief for "unfair, deceptive, and unconscionable trade practices"); New York's General Business Law, N.Y. Gen. Bus. Law §§ 349, *et seq.*, *see Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1143 (N.Y. 2004) (statute requires plaintiff to allege "a deceptive act or practice directed toward consumers . . ."); The North Carolina Consumer Protection Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.*, *see Walker v. Fleetwood Homes of N.C., Inc.*, 653 S.E.2d 393, 399 (N.C. 2007) (plaintiff must show unfair or deceptive act or practice to establish a claim under the statute); The Oregon Unlawful Trade Practices Act, Or. Rev. Stat. §§ 646.605, *et seq.*, *see Rathgeber v. James Hemenway, Inc.*, 69 P.3d 710, 712-14 (Or. 2003) (holding that statute applies to specific unlawful practices and concluding that plaintiffs failed to prove a violation for lack of evidence of willful misrepresentation); The Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*, *see Park v. Ford Motor Co.*, 844 A.2d 687, 692 (R.I. 2004) (statute allows recovery for specified "unfair" or "deceptive" acts); South Carolina's Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*, *see Austin v. Stokes-Craven Holding Corp.*, 691 S.E.2d 135, 149 (S.C. 2010) (statute requires plaintiff to show an unfair or deceptive act); The Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1, *et seq.*, *see Olsen v. Univ. of Phoenix*, 244 P.3d 388, 390 (Utah Ct. App. 2010) (affirming grant of summary judgment for defendant under the statute where no "deceptive" conduct was established); Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 §§ 2451, *et seq.*, *see Ianelli v. U.S. Bank*, 996 A.2d 722, 726 (Vt. 2010) (holding plaintiff's claim fails at the summary judgment stage under the statute where there was no evidence of a "representation, practice, or omission by the [defendant] that was likely to mislead consumers"); The West Virginia Consumer Protection Act, W. Va. Code §§ 46A-6-101, *et seq.*, *see White v. Wyeth*, 705 S.E.2d 828, 837 (W. Va. 2010) (statute requires plaintiffs to allege unfair or deceptive acts or practices); The Wyoming Consumer Protection Act, Wyo. Stat. Ann. §§ 40-12-105, *et seq.*, *see Herrig v. Herrig*, 844 P.2d 487, 495 (Wyo. 1992) (statute is designed to protect consumers from "unscrupulous and fraudulent marketing practices").

[8] *See, e.g.*, *Davis*, 228 P.3d at 318 (holding, under Hawaii Revised Statutes §§ 480-1, *et seq.*, that conduct is unfair when "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers"); *Gossels*, 902 N.E.2d at 378 (reversing judgment under Massachusetts unfair trade practice statute because defendant's conduct was not within the penumbra of an established concept of unfairness and was not
*(footnote continued on next page)*

Plaintiffs allege no such conduct by Visa or MasterCard in connection with their respective ATM access fee rules. *See Mackmin* Compl. ¶¶ 67-80, 139-152; *Stoumbos* Compl. ¶¶ 34-41, 77-102. Finally, plaintiffs allege no facts that could show Visa or MasterCard acted "unlawfully" under federal or state law, for the reasons explained above.

The *Mackmin* and *Stoumbos* plaintiffs thus fail to allege any facts that could state a violation of District of Columbia or state consumer protection or unfair competition statutes. Those claims also should be dismissed.

## CONCLUSION

For the foregoing reasons, plaintiffs' complaints should be dismissed in their entirety with prejudice.

January 30, 2012

Respectfully submitted,

/s/ Mark R. Merley

Mark R. Merley (D.C. Bar No. 375866)
Matthew A. Eisenstein (D.C. Bar No. 476577)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Tel: 202-942-5000
Fax: 202-942-5999

*Attorneys for Defendants Visa Inc., Visa U.S.A. Inc., Visa International Service Association, and Plus System, Inc.*

*(footnote continued from previous page)*
immoral, unethical, oppressive, or unscrupulous); *Rohrer*, 203 P.3d at 764 (defining unfair conduct, under Montana Code Ann., §§ 30-14-103, *et seq.*, as conduct that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"); *State ex rel. Stenberg*, 755 N.W.2d at 590-91 (same under Nebraska's Consumer Protection Act, Neb. Rev. Stat. §§ 59-1602, *et seq.*); *Walker*, 653 S.E.2d at 399 ("[a] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers") (internal quotations omitted).

/s/ Kenneth A. Gallo
Kenneth A. Gallo (D.C. Bar No. 371253)
PAUL WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, D.C. 20006
Tel: (202) 223-7400
Fax: (202) 223-7420

Andrew C. Finch (D.C. Bar No. 494992)
Gary R. Carney
PAUL WEISS RIFKIND WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

*Attorneys for Defendants MasterCard Incorporated and MasterCard International Incorporated*

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 30, 2012, I caused the foregoing Memorandum of Points and Authorities in Support of Visa and MasterCard Defendants' Motion to Dismiss to be filed using the Court's CM/ECF system, which will send e-mail notification of such filing to counsel of record.

/s/ Matthew A. Eisenstein
Matthew A. Eisenstein