**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDREW MACKMIN, et al.,<br>Plaintiffs,<br>v.<br>VISA INC., et al.,<br>Defendants. | No. 1:11-cv-01831 (ABJ)<br>Electronically Filed<br>Oral Argument Requested |
| MARY STOUMBOS,<br>Plaintiff,<br>v.<br>VISA INC., et al.,<br>Defendants. | No. 1:11-cv-01882 (ABJ)<br>Electronically Filed<br>Oral Argument Requested |
| NATIONAL ATM COUNCIL, INC., et al.,<br>Plaintiffs,<br>v.<br>VISA INC., et al.,<br>Defendants. | No. 1:11-cv-01803 (ABJ)<br>Electronically Filed<br>Oral Argument Requested |

**SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS**

September 4, 2012

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................ii

I. PRIVATE ANTITRUST PLAINTIFFS MUST ALLEGE FACTS SUFFICIENT TO ESTABLISH AN INJURY-IN-FACT....................................................1

II. PRIVATE ANTITRUST PLAINTIFFS MUST ALLEGE FACTS SUFFICIENT TO ESTABLISH THAT THEY SUFFERED ACTUAL, ECONOMIC INJURY AS A RESULT OF A VIOLATION OF THE ANTITRUST LAWS ..................................3

III. PLAINTIFFS' COMPLAINTS FAIL TO ALLEGE SUFFICIENT FACTS TO ESTABLISH THAT PLAINTIFFS SUFFERED ECONOMIC INJURY-IN-FACT .........4

CONCLUSION.........................................................................................................................8

# TABLE OF AUTHORITIES

**Federal Cases** Page


** Andrx Pharm., Inc. v. Biovail Corp. Int'l,*
256 F.3d 799 (D.C. Cir. 2001)....1, 2

*Arista Records LLC v. Lime Group LLC,*
532 F. Supp. 2d 556 (S.D.N.Y. 2007)....3

** Ass'n of Intercollegiate Athletics v. Nat'l Collegiate Athletics Ass'n,*
735 F.2d 577 (D.C. Cir. 1984)....4

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
459 U.S. 519 (1983)....2

*Blue Shield of Va. v. McCready,*
457 U.S. 465 (1982)....4

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
429 U.S. 477 (1977)....1, 2

** Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n,*
663 F.2d 253 (D.C. Cir. 1981)....2, 3

*Illinois Brick Co. v. Illinois,*
431 U.S. 720 (1977)....2

** J. Truett Payne Co. v. Chrysler Motors Corp.,*
451 U.S. 557 (1981)....3

*Kroger Co. v. Sanofi-Aventis,*
701 F. Supp. 2d 938 (S.D. Ohio 2010)....3

*Mazanderan v. Indep. Taxi Owners' Ass'n, Inc.,*
700 F. Supp. 588 (D.D.C. 1988)....4

*Ross v. Bank of America, N.A. (USA),*
524 F.3d 217 (2d Cir. 2008)....7

*So. Pac. Commc'ns Co. v. AT&T Co.,*
556 F. Supp. 825 (D.D.C. 1982)....4

** Sprint Nextel Corp. v. AT&T Corp.,*
821 F. Supp. 2d 308 (D.D.C. 2011)....2, 3

**Federal Statutes**

15 U.S.C. § 15(a) .......... 1, 2, 3, 4

15 U.S.C. § 26.......... 1

Pursuant to this Court's Minute Orders of August 29, 2012, all defendants jointly submit this supplemental brief to respond to the Court's questions and in further support of their motions to dismiss. For the reasons set forth below, none of the operative complaints alleges facts sufficient to establish injury-in-fact or standing.

## I. PRIVATE ANTITRUST PLAINTIFFS MUST ALLEGE FACTS SUFFICIENT TO ESTABLISH AN INJURY-IN-FACT

The Court first asked the parties to address "what must plaintiffs in a private antitrust action allege to establish standing to bring the action," and, in particular, whether a plaintiff must "allege sufficient facts that would support a finding that the plaintiff has suffered an injury in fact." To establish standing in a private antitrust action, a plaintiff must allege several elements, including facts sufficient to establish that the plaintiff suffered an injury-in-fact.

Section 4 of the Clayton Act provides a treble damages remedy only to a "person who shall be *injured in his business or property* by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a) (emphasis added). The Supreme Court has concluded that this provision "makes awards available only to injured parties." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 485 (1977).[1]

Accordingly, "[a]n antitrust plaintiff must establish an injury-in-fact or a threatened injury-in-fact caused by the defendant's alleged wrongdoing." *Andrx Pharm., Inc. v. Biovail*

[1] Similarly, Section 16 of the Clayton Act allows injunctive relief to be provided only to a person facing "threatened *loss or damage* by a violation of antitrust laws." 15 U.S.C. § 26 (emphasis added). The distinction between injury-in-fact and threatened injury-in-fact is immaterial here. Plaintiffs do not allege any "threat" of injury, but rather seek treble damages and injunctive relief based exclusively on the allegation that they "have been injured in their business and property" by Visa's and MasterCard's respective ATM access fee rules. *NAC* Compl. ¶ 67; *see also Mackmin* Compl. ¶ 109 (alleging plaintiffs "have been monetarily injured"); *Stoumbos* Compl. ¶ 51 (alleging plaintiffs "have been injured and financially damaged in their respective businesses and property").

*Corp. Int'l*, 256 F.3d 799, 806 (D.C. Cir. 2001) (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 (1983)); *see also id.* ("As in any civil action for damages, the plaintiff in a private antitrust lawsuit must show that the defendant's illegal conduct caused its injury."); *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 663 F.2d 253, 268 (D.C. Cir. 1981) ("[T]he fact of injury must be certainly proved.") (internal quotation marks omitted). As defendants detail in their primary briefs, a plaintiff also must prove that its injury constitutes an "antitrust injury," meaning "the kind of injury the antitrust laws were intended to prevent; it must 'flow from that which makes defendants' acts unlawful.'" *Andrx Pharm.*, 256 F.3d at 806 (quoting *Brunswick*, 429 U.S. at 489) (alterations omitted); 01/30/12 Visa and MasterCard Defs.' Mem., at 14-19; 01/30/12 Bank Defs.' Mem., at 18-22.[2]

In light of these principles, at the pleading stage, "[t]he plaintiff's first step is to plead an injury-in-fact or, in a suit for equitable relief, a threatened injury-in-fact to business or property." *Andrx Pharm.*, 256 F.3d at 806; *see also Sprint Nextel Corp. v. AT&T Corp.*, 821 F. Supp. 2d 308, 315 (D.D.C. 2011) (Huvelle, J.) ("[A]ssessing antitrust injury at the pleadings stage of [an antitrust] suit requires two distinct inquiries. First, does plaintiff's complaint allege . . . injury-in-fact? Second, does the threatened injury result from an anticompetitive aspect of defendant's proposed conduct, *i.e.*, that which would make the transaction illegal under the antitrust laws?"). Courts in this District and others have dismissed private antitrust claims when a plaintiff fails to

---

[2] "Additional factors to be considered in determining whether the plaintiff has 'antitrust standing' include: the directness of the injury, whether the claim for damages is 'speculative,' the existence of more direct victims, the potential for duplicative recovery and the complexity of apportioning damages." *Andrx Pharms., Inc.*, 256 F.3d at 806 (citing *Associated Gen. Contractors*, 459 U.S. at 542-45). Furthermore, the Supreme Court has held that indirect purchasers of an allegedly supra-competitively priced good or service cannot recover treble damages under Section 4 of the Clayton Act. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745-46 (1977).

meet this threshold pleading requirement. *See, e.g.*, *Sprint Nextel Corp.*, 821 F. Supp. 2d at 331; *Kroger Co. v. Sanofi-Aventis*, 701 F. Supp. 2d 938, 954-59 (S.D. Ohio 2010); *Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 568-70 (S.D.N.Y. 2007).

## II. PRIVATE ANTITRUST PLAINTIFFS MUST ALLEGE FACTS SUFFICIENT TO ESTABLISH THAT THEY SUFFERED ACTUAL, ECONOMIC INJURY AS A RESULT OF A VIOLATION OF THE ANTITRUST LAWS

The Court next asked: "Even if a complaint properly alleges anticompetitive conduct that restrains competition in violation of the antitrust laws, is there also a requirement that the plaintiff must have suffered an actual, economic injury? Or is an allegation that consumer choice has been restricted enough?" The answer to the first question is "yes," and the answer to the second question is "no": merely pleading an antitrust violation or a restriction of consumer choice, without sufficient facts to establish an actual, economic injury to the plaintiff, is insufficient to state a private antitrust claim.

First, a plaintiff must plead not only an antitrust violation, but also an injury to the plaintiff that results from the alleged violation. As the Supreme Court has concluded, Section 4 of the Clayton Act is a "remedial statute" that requires the plaintiff to "prove more than a violation of [the antitrust laws], since such proof establishes only that injury *may* result." *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562 (1981) (emphasis in original); *see also id.* ("[P]roof of a violation does not mean that a [plaintiff] has been actually 'injured' within the meaning of § 4."). Thus, "even if there has been a violation of the [antitrust laws], [plaintiff] is not excused from its burden of proving antitrust injury and damages." *Id.* at 568.

The D.C. Circuit accordingly has held that, in a private antitrust action, "the plaintiff must prove not only an antitrust violation but the causal link between the violation and an injury to his business or property." *Fed. Prescription Serv.*, 663 F.2d at 268; *see also id.* (reversing a judgment for plaintiff where it "failed to show that [defendant's] activities, even if unprivileged

antitrust violations, have caused it injury in fact"); *Mazanderan v. Indep. Taxi Owners' Ass'n, Inc.*, 700 F. Supp. 588, 590 n.7 (D.D.C. 1988) ("Because plaintiff has not alleged specific individual injury, the Court does not need to reach the question of whether [defendant's] official practices violate the antitrust laws.").

Second, Section 4 of the Clayton Act requires that the injury a plaintiff must have suffered be one to its "business or property" — *i.e.*, an economic injury. 15 U.S.C. § 15(a); *see Blue Shield of Va. v. McCready*, 457 U.S. 465, 475 n.11 (1982) ("§ 4 plainly focuses on tangible economic injury"). Even assuming that an antitrust violation occurred, a plaintiff still must prove that the offense "in fact caused economic injury." *Ass'n of Intercollegiate Athletics v. Nat'l Collegiate Athletics Ass'n*, 735 F.2d 577, 586 (D.C. Cir. 1984); *So. Pac. Commc'ns Co. v. AT&T Co.*, 556 F. Supp. 825, 1058 (D.D.C. 1982) ("An essential element for the recovery of antitrust damages is proof that the plaintiff suffered economic injury and that the injury resulted directly from defendant's challenged conduct."). Accordingly, plaintiffs here cannot state a claim based solely on a restriction on consumer choice, absent factual allegations establishing an actual, economic injury to plaintiffs.

## III. PLAINTIFFS' COMPLAINTS FAIL TO ALLEGE SUFFICIENT FACTS TO ESTABLISH THAT PLAINTIFFS SUFFERED ECONOMIC INJURY-IN-FACT

Finally, the Court asked, under the "the test for the sufficiency of the standing/injury-in-fact allegations, . . . how do these particular complaints satisfy or fall short of that test?" Based on the tests for the sufficiency of allegations described in the preceding sections, none of the operative complaints alleges facts sufficient to support a finding that either the consumer or ATM operator plaintiffs have suffered an injury-in-fact as a result of the defendants' alleged wrongdoing. That is because all of the plaintiffs do not allege any facts to establish that (1) consumers have the ability to choose the ATM network over which their ATM transactions

are routed, such that consumers could be persuaded to choose alternative networks through discounted ATM transaction fees, (2) there are "lower cost" ATM networks, *or* (3) ATM operators do not already route ATM transactions over any hypothetical "lowest cost" ATM network.

All plaintiffs' claims of injury are predicated on the assertion that, but for Visa's and MasterCard's ATM access fee rules, ATM operators would "offer discounts or [some] other benefit or inducement to persuade consumers to complete their transactions over competing, lower cost PIN-based networks." *Mackmin* Compl. ¶ 75; *see also Stoumbos* Compl. ¶ 36 ("ATM operators may not offer a discount or any other benefit to persuade consumers to complete their transactions over competing, lower cost PIN-based networks, nor may an Independent ATM operator offer a rebate . . . ."); *NAC* Compl. ¶ 45 ("ATM operators may not offer a discount or any other benefit to persuade consumers to complete their transactions over competing PIN-based networks that offer lower costs or better terms, nor may an ATM operator offer a rebate . . . ."). The *consumer plaintiffs* claim that the inability of ATM operators to use discounts to persuade consumers to complete ATM transactions over a lower cost network leads consumers to pay "supra-competitive prices for ATM Access Fees" to ATM operators. *Mackmin* Compl. ¶ 76; *see Stoumbos* Compl. ¶ 38 (consumers "pay higher ATM Access Fees"). The *ATM operator plaintiffs* claim that their inability to offer discounts to persuade consumers "prevents [them] from setting profit-maximizing prices" and leads them to pay "artificially high network fees" to Visa and MasterCard. *NAC* Compl. ¶¶ 45, 46. Plaintiffs, however, fail to plead facts that could establish either of these theories of injury-in-fact.

To begin with, no plaintiff alleges facts that could establish that consumers, when withdrawing cash or conducting another transaction at an ATM, have the ability to choose the ATM network over which their transactions are completed, whether in response to discounts

offered by ATM operators or otherwise. Indeed, the consumer plaintiffs do not even allege that their own ATM cards can access multiple ATM networks. Absent an ability by consumers to choose the ATM network over which a transaction is completed — which plaintiffs do not and cannot allege — a plaintiff could not be persuaded to choose a "lower cost" ATM network by any hypothetical discount or rebate that ATM operators might provide "but for" the challenged Visa and MasterCard rules. Plaintiffs thus fail to allege facts that could support their theories of injury, and so fail to allege facts sufficient to state an injury-in-fact.

Furthermore, no plaintiff alleges facts that could establish that there are "lower cost" ATM networks than Visa or MasterCard. The consumer plaintiffs in *Mackmin* allege that the only costs or fees associated with an ATM transaction are paid by consumers and ATM card issuers — not ATM operators — and that two of those fees (the "ATM Access Fee" and the "Interchange Fee") are paid *to ATM operators*. *Mackmin* Compl. ¶ 59. The ATM operator plaintiffs assert in a conclusory fashion that they pay "artificially high network fees" (*NAC* Compl. ¶ 46), but neither bring a legal challenge to such fees nor allege any facts describing such fees, including facts showing that such fees are lower on other ATM networks than on the Visa or MasterCard network. Plaintiffs' failure to allege any facts supporting the assertion that there are "lower cost" networks provides a further basis for dismissing their complaints for lack of injury-in-fact.

Even if plaintiffs' allegations regarding the existence of "lower cost" networks were sufficient, plaintiffs fail to allege that ATM transactions are not already being routed to the "lowest cost" network enabled by a consumer's ATM card. Plaintiffs' core theory of injury — that ATM operators would use discounted access fees to persuade consumers to choose "lower cost" ATM networks — cannot state a claim if ATM transactions *already* are routed to the "lowest cost" network available. The consumer plaintiffs' complaints contain no allegations

whatsoever regarding how ATM transactions currently are routed, or by whom. And the ATM operator plaintiffs contend that "[i]f a card inserted in an ATM is enabled for more than one network, *the ATM operator's processor can choose* which network to use to complete the transaction," and that the processor "customarily routes the transaction to *the network with the lower cost* to the ATM Operator." *NAC* Opp'n at 3 (emphases added). For this reason as well, plaintiffs fail to allege facts to establish that they could use discounting to persuade consumers to choose a "lower cost" ATM network.

Plaintiffs' pleading deficiencies distinguish this case from other cases on which plaintiffs may seek to rely. For example, in *Ross v. Bank of America, N.A. (USA)*, 524 F.3d 217 (2d Cir. 2008), credit cardholders alleged that card issuers conspired to impose mandatory arbitration clauses in card agreements with consumers, in violation of the antitrust laws. The Second Circuit held the consumers adequately pleaded injury-in-fact because they alleged that, as a result of the alleged card issuer conspiracy, the consumers were deprived of any meaningful choice over dispute resolution procedures, which diminished the economic value of their cards. *Id.* at 222-24. In contrast, plaintiffs here allege no facts showing that cardholders had any choice over the ATM network used to complete their transactions, of which the cardholders could have been deprived by the Visa or MasterCard ATM access fee rules. Nor do plaintiffs allege that any hypothetical deprivation of choice resulted in an economic injury, since plaintiffs allege no facts that could show there were lower cost ATM networks than Visa or MasterCard, or that ATM transactions were not already being routed over the lowest cost ATM network. Plaintiffs here fail to allege an injury-in-fact, and their complaints thus should be dismissed.

**CONCLUSION**

For the foregoing reasons, as well as those set forth in defendants' opening and reply briefs, plaintiffs' complaints should be dismissed in their entirety with prejudice, and without leave to replead.

September 4, 2012

Respectfully submitted,

/s/ Mark R. Merley
Mark R. Merley (D.C. Bar No. 375866)
Matthew A. Eisenstein (D.C. Bar No. 476577)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Tel: 202-942-5000
Fax: 202-942-5999

*Attorneys for Defendants Visa Inc., Visa U.S.A. Inc., Visa International Service Association, and Plus System, Inc.*

/s/ Kenneth A. Gallo
Kenneth A. Gallo (D.C. Bar No. 371253)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Tel: (202) 223-7400
Fax: (202) 223-7420

Andrew C. Finch (D.C. Bar No. 494992)
Gary R. Carney
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

*Attorneys for Defendants MasterCard Incorporated and MasterCard International Incorporated*

/s/ Peter E. Greene
Peter E. Greene (D.C. Bar No. 305607)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
Tel.: 212-735-3620
Fax: 917-777-3620
Email: peter.greene@skadden.com

*Attorney for Defendants Chase Bank USA, N.A., JPMorgan Chase & Co., and JP Morgan Chase Bank, N.A.*

/s/ Robert A. Salerno
Robert A. Salerno (D.C. Bar No. 430464)
Ana-Maria Ignat (D.C. Bar No. 496192)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-1888
Tel.: (202) 887-1500
Fax: (202) 887-0763
Email: rsalerno@mofo.com
aignat@mofo.com

Mark P. Ladner (admitted *pro hac vice*)
Michael B. Miller (admitted *pro hac vice*)
Adam J. Heintz (admission pending)
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104-0050
Tel: (212) 468-8000
Fax: (212) 468-7900
Email: mladner@mofo.com
mbmiller@mofo.com
aheintz@mofo.com

*Attorneys for Defendants Bank of America, N.A., NB Holdings Corporation, and Bank of America Corporation*

/s/ William F. Cavanaugh, Jr.

William F. Cavanaugh, Jr. (admitted *pro hac vice*)
Sarah E. Zgliniec (admitted *pro hac vice*)
Gloria C. Phares (D.C. Bar No. 229294)
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel.: (212) 336-2000
Fax: (212) 336-2222
Email: wfcavanaugh@pbwt.com
sezgliniec@pbwt.com
gcphares@pbwt.com

*Attorneys for Defendants Wells Fargo & Company and Wells Fargo Bank, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 4, 2012, I caused the foregoing Supplemental Brief in Support of Defendants' Motion to Dismiss to be filed using the Court's CM/ECF system, which will send e-mail notification of such filing to counsel of record.

/s/ Matthew A. Eisenstein
Matthew A. Eisenstein