**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MACKMIN, et al.,<br><br>*Plaintiffs*,<br><br>vs.<br><br>VISA INC., et al.,<br><br>*Defendants*. | No. 11-cv-01831 (ABJ) |
| STOUMBOS, et al.,<br><br>*Plaintiff*,<br><br>vs.<br><br>VISA INC., et al.,<br><br>*Defendants*. | No. 1:11-cv-01882 (ABJ) |

**CONSUMER PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW**

Consumer Plaintiffs[1] respectfully submit this Supplemental Memorandum of Law in response to the Court's Minute Order dated August 29, 2012, which requested the parties submit additional information pertaining to a private antitrust plaintiffs' pleading obligations with respect to antitrust injury.

## I. Introduction

In light of the Court's inquiry, Plaintiffs believe it would be helpful to summarize the injury they have alleged to themselves and the putative classes. Consumer Plaintiffs withdrew money from automatic teller machines ("ATMs") not owned by their banks and paid an "ATM Access fee" for doing so. Stoumbus ¶ 11; Mackmin ¶¶ 12-15. Plaintiffs allege that ATM Access

[1] Plaintiffs in *Mackmin v. Visa, Inc.* (11-1831) and *Stoumbus v. Visa, Inc.* (11-1882) (collectively, "Consumer Plaintiffs") are responding jointly to reduce the burden on the Court to the extent possible. Citations to the *Mackmin* complaint are in the form "Mackmin ¶ __." Citations to the Stoumbus complaint are in the form "Stoumbus ¶ __."

Fees are artificially high because of rules prohibiting ATM operators from charging lower ATM Access Fees for transactions processed through lower-cost networks than those processed through the Network Defendants. Stoumbus ¶¶ 31, 32; Mackmin ¶¶ 69, 70. Payment of inflated prices is a classic form of antitrust injury, conferring standing under the antitrust laws: "consumers who pay a higher price for goods purchased for personal use as a result of antitrust violations sustain an injury in their 'business or property' within the meaning of § 4 of the Clayton Act." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 334 (1979); *see also Sprint Nextel Corp. v. AT & T Inc.*, CIV.A. 11-1600 ESH, 2011 WL 5188081, at *6 (D.D.C. Nov. 2, 2011) ("[H]arm to consumers by way of increased prices is the type of injury the antitrust laws were designed to prevent."). Indeed, Defendants effectively require ATM Operators to charge uniform prices for all transactions and prevent differential pricing or discounting. Stoumbus ¶ 34; Mackmin ¶ 73. This uniformity exists despite the fact that – as the Network Defendants acknowledge – an ATM operator's processor "customarily routes the transaction to the network with the lowest cost to the ATM operator." Visa/MasterCard Reply at 14. ATM operators are already capable of enabling price competition for lower ATM Access Fees. It is only Defendants' express, *per se* illegal agreement that thwarts competition and results in prices higher than would prevail without the anticompetitive agreement. The Supreme Court has long recognized such overcharges as the definition of antitrust injury and damages. *See Chattanooga Foundry & Pipe Works v. Atlanta*, 203 U.S. 390, 396 (1906) (Holmes, J.) (affirming damages award based on "the difference between the price paid and the market or fair price that the city would have had to pay under natural conditions had the combination been out of the way.").

Consumer Plaintiffs further explain, "[b]ut for the ATM restraints . . . prices for ATM Services would be lower, the quantity of ATM Services demanded would be greater, and

economic output would increase." Stoumbus ¶ 39; Mackmin ¶ 76. Prices would be lower not just for the Network Defendants' competitor networks, but for Network Defendants' networks as well. This is so because the competition that would exist in a world without the challenged restraints would lead to "pricing behavior characteristic of a competitive market[.]" Stoumbus ¶ 36; Mackmin ¶ 74. "Basic economic principles concerning the downward pressure on price created by competition are so well established that . . . this issue is effectively off the table." *U.S. Futures Exch. LLC v. Bd. of Trade of City of Chicago*, 04 C 6756, 2012 WL 3155150 (N.D. Ill. Aug. 3, 2012). Thus, in this case, the relationship between consumer choice and lower prices is direct: when consumers have access to alternatives, competition naturally operates to lower prices. *Id.*

In a competitive market, competition would lead ATM Operators to "set ATM Access Fees at a level reflecting the cost of obtaining the network services and other inputs necessary to complete the transaction," Stoumbus ¶ 40; Mackmin ¶ 77, would restore the "essential economic link . . . between the price a consumer is charged for a service and the cost to the retailer of providing it," Stoumbus ¶ 41; Mackmin ¶ 79, and would restore the "initiative of cardholders to demand, and providers of ATM Services to provide, lower-cost, more efficient services." *Id.* In sum, Plaintiffs have sufficiently alleged the anticompetitive nature of Defendants' *per se* illegal agreement, and they have adequately alleged antitrust injury and standing sufficient to challenge the restraints.

## II. What Must Plaintiffs In A Private Antitrust Action Allege To Establish Standing To Bring The Action?

In an antitrust case, Plaintiffs must plead two elements to establish standing. ***First***, plaintiffs must plead the defendant caused "'an injury-in-fact" to the plaintiffs' business or property. *City of Moundridge, KS v. Exxon Mobil Corp*, 471 F. Supp. 2d 20, 30 (D.D.C. 2007)

(quoting *Andrx Pharm., Inc. v. Biovail Corp. Int'l.*, 256 F.3d 799, 806 (D.C.Cir.2001)). This does not require a plaintiff to allege a specific ***amount*** of damage: the "burden of proving the fact of damage . . . is satisfied by [ ] proof of some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage." *Andrx*, 256 F.3d at 806. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

***Second***, the injury-in-fact alleged must be "antitrust injury," which is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Andrx Pharmaceuticals, Inc*., 256 F.3d at 812. This means that the injury-in-fact must "'reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.'" *City of Moundridge*, 471 F. Supp. 2d at 30. Where Plaintiffs plead a per se antitrust violation, they do not have to allege an *actual* anticompetitive effect on the market, only that they suffered loss as a result of an anticompetitive aspect of the illegal agreement. *Pace Elecs., Inc. v. Canon Computer Sys*., 213 F.3d 118, 124 (3d Cir. 2000) (citing *Atlantic Richfield Co. v. USA Petroleum Co*., 495 U.S. 328 (1990)). One such injury is injury stemming from conduct that "'impairs the ability of the market to advance social welfare by ensuring the provision of desired goods and services to consumers at a price approximating the marginal cost of providing them.'" *Glen Holly Entm't, Inc. v. Tektronix, Inc*., 352 F.3d 367, 376 (9th Cir. 2003) (quoting *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 459 (1986)). The question of antitrust injury "is not typically resolved through motions to dismiss." *Schuylkill Energy Res. v. Pa. Power & Light Co*., 113 F.3d 405, 417 (3d Cir. 1997).[2]

---

[2] Courts also consider whether a particular plaintiff's injury is directly related to the antitrust violation when assessing that plaintiff's standing. *See City of Moundridge*, 471 F. Supp. 2d at 30. However, Defendants do not

## III. <u>Even If A Complaint Properly Alleges Anticompetitive Conduct That Restrains Competition In Violation Of The Antitrust Laws, Is There Also A Requirement That The Plaintiff Must Have Suffered An Actual, Economic Injury? Or Is An Allegation That Consumer Choice Has Been Restricted Enough?</u>

Because the Sherman Act requires injury to "business or property" to support a claim for damages, a plaintiff must have suffered economic injury to have standing to bring such a claim. *Cf. Johnson v. Greater Se. Cmty. Hosp. Corp*., 951 F.2d 1268, 1274 (D.C. Cir. 1991). As described above, "consumers who pay a higher price for goods purchased for personal use as a result of antitrust violations sustain an injury in their 'business or property' within the meaning of § 4 of the Clayton Act." *Reiter*, 442 U.S. at 334. Consumer plaintiffs plainly allege that they paid higher ATM Access Fees than they would have absent the antitrust violations at issue, *see* § I, *supra*, and accordingly allege the necessary injuries to establish their standing.

While an "allegation that consumer choice has been restricted," standing alone, might be insufficient to support an antitrust claim, courts also generally recognize that such deprivation almost invariably ***economically*** injures consumers. *See, e.g. Ross v. Bank of Am., N.A.(USA)*, 524 F.3d 217, 223 (2d Cir. 2008) (noting collusive insertion of mandatory arbitration clauses "depriv[ed] the cardholders of meaningful choice in the area of credit card services" resulting in "objectively less valuable cards than would otherwise have been the case.").[3] But Plaintiffs do not allege a mere reduction in consumer choice here: rather, as set forth in the preceding paragraph, Plaintiffs specifically allege they paid higher prices for ATM Access Fees than they would have absent the restraints and therefore properly allege an injury to their "business or property." *Reiter*, 442 U.S. at 334.

---

challenge Plaintiffs' standing on these grounds, and, regardless, Consumer Plaintiffs' submissions properly allege such a relationship.

[3] *See also Glen Holly Entm't*, 343 F.3d at 1010-1011 (plaintiff "no longer had a viable choice between market alternatives").

## IV. What Is The Test For The Sufficiency Of The Standing/ Injury-In-Fact Allegations, And How Do These Particular Complaints Satisfy Or Fall Short Of That Test?

### a. Standing Allegations Need Not Be Pled With Specificity

A complaint adequately pleads a plaintiff's antitrust standing if it contains sufficient allegations to provide fair notice under F.R.C.P. 8(a)'s liberal pleading standards. *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010). This does not impose any "heightened pleading standard" on allegations of antitrust standing, nor does it impose a "probability requirement" at the pleading stage. *Id.* Rather, a plaintiff merely must allege "*some* damage resulting from the unlawful behavior." *Roxane Laboratories, Inc. v. SmithKline Beecham Corp.*, CIV.A. 09-CV-1638, 2010 WL 331704 (E.D. Pa. Jan. 26, 2010) (emphasis in original).

At the pleading stage, then, allegations that "cardholders have been subjected to suppressed competition" suffice to show the requisite injury in fact, *Ross*, 524 F.3d at 223 as do allegations that a plaintiff is "forced to pay higher prices . . . than a competitive market would allow." *City of Moundridge*, 471 F. Supp. 2d at 31; *see also Arnold Chevrolet LLC v. Tribune Co.*, 418 F. Supp. 2d 172, 181 (E.D.N.Y. 2006) (allegations of "direct injury resulting from Defendants' actions in the form of being charged higher prices as a result of reduced competition" sufficient); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007) ("[A]llegations that plaintiff consumers have paid higher prices for goods purchased for personal use due to defendants' conduct have satisfied [the injury-in-fact] element.").

b. **<u>The Consumer Plaintiffs Adequately Plead Injury-in-Fact and Antitrust Injury</u>**

Both sets of consumer plaintiffs adequately plead both "injury in fact" and antitrust injury and, accordingly, adequately allege standing to bring this case. Each alleges he or she paid ATM Access Fees, *see* Stoumbos ¶ 11, Mackmin ¶¶ 12-15, and each alleges Defendants' anticompetitive conduct artificially inflated those fees.

As described above, Plaintiffs repeatedly allege that by preventing ATM Operators from offering consumers lower prices or discounts for using competing networks, Defendants create artificially inflated, supra-competitive ATM Access Fees. *See* § I, *supra*. Indeed, in the absence of the price restraints imposed by the Visa/MC agreements with the ATM Operators, ATM Operators would have an economic incentive to set ATM Access Fees at levels reflecting the competitive costs of obtaining the network service from competing network providers – as they have expressly and repeatedly asserted in their own suit against Defendants – and plaintiffs would accordingly pay lower prices. *See* ATM Operators Complaint at ¶ 1, 44, 45, 48, 49. As set forth above, such allegations are generally held to support a plaintiffs' standing. *See City of Moundridge*, 471 F. Supp. 2d at 31; *Arnold Chevrolet*, 418 F. Supp. 2d at 181; *Dynamic Random Access Memory*, 516 F. Supp. 2d at 1084; *In re Nine W. Shoes Antitrust Litig*., 80 F. Supp. 2d 181, 190 (S.D.N.Y. 2000) (allegations plaintiffs paid higher prices "than they would have paid in the absence of the conspiracy" and "[d]efendants conduct 'reduced overall competition' in the market and caused plaintiffs' 'injury to their business and property'" are sufficient).

Similarly, Plaintiffs additionally allege injury-in-fact and antitrust injury by alleging that, absent the restraints, competition would operate to reduce ATM Access Fees. *See* § I, *supra*. "[C]ustomers are the intended beneficiaries of competition, and . . . customers are presumptively those injured by its unlawful elimination." *Glen Holly Entm't*, 352 F.3d at 378; *cf id.*

("Consumers in the market where trade is allegedly restrained are presumptively the proper plaintiffs to allege antitrust injury."); *Adams*, 828 F.2d at 27 ("[D]ecreased competition will almost invariably harm consumers.").

## V. Conclusion

Plaintiffs allege that they purchased ATM services at prices which were inflated as a result of Defendants' imposition of the challenged ATM restraints. Their allegations fully satisfy the requirements of injury-in-fact and antitrust injury, and they are entitled to test their claims in discovery. The Court should deny Defendants' motions to dismiss in their entirety.

DATED: September 4, 2012 Respectfully submitted,

By: /s Douglas G. Thompson
Douglas G. Thompson (D.C. Bar # 172387)
dthompson@finkelsteinthompson.com
Richard M. Volin (D.C. Bar # 457292)
rvolin@finkelsteinthompson.com
Michael G. McLellan (D.C. Bar # 489217)
mmclellan@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
James Place
1077 30th Street, N.W.
Suite 150
Washington, D.C. 20007
Telephone: 202-337-8000
Facsimile: 202-337-8090

*Counsel for Plaintiff Stoumbos*

Craig L. Briskin (D.C. Bar #980841)
cbriskin@findjustice.com
**MEHRI & SKALET, PLLC**
1250 Connecticut Avenue NW, Suite 300
Washington, DC 20036
Telephone: 202-822-5100
Facsimile: 202-822-4997

Steve W. Berman
George W. Sampson

**HAGENS BERMAN SOBOL SHAPIRO LLP**
steve@hbsslaw.com
george@hbsslaw.com
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: (206) 623-7292
Fax: (206) 623-0594

Bernard Persky
**LABATON SUCHAROW LLP**
bpersky@labaton.com
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 883-7058

*Counsel for Plaintiffs Mackmin, Inglis, Osborn and Epseland*