**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARY STOUMBOS,<br>Plaintiffs,<br>v.<br>VISA INC., *et al*.,<br>Defendants. | No. 1:11-cv-01882 (ABJ) |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Pursuant to FRCP 15(a). Plaintiff seeks to amend her complaint to cure the deficiencies identified by this Court in its Memorandum Opinion ("Opinion"), and to provide additional facts and allegations derived from further factual investigation. The Proposed Second Amended Class Action Complaint ("Proposed Amended Complaint") is attached as Exhibit A.

## I. INTRODUCTION AND FACTUAL BACKGROUND

As this Court's Opinion noted, this action (and the other coordinated cases) arises out of an alleged combination and contract in restraint of trade artificially inflating the price of fees ("ATM Access Fees") charged at automatic teller machines ("ATMs"). Plaintiff alleges Defendants and other unnamed parties artificially inflated those fees through a horizontal agreement effectively setting a floor price on ATM Access Fees, thereby violating federal and state antitrust laws. These agreements are embodied in certain rules promulgated and enforced by Visa and MasterCard ("ATM Restraints") that prevent ATM operators from charging less for transactions processed through independent networks than they charge for transactions processed through either Visa or MasterCard's network. Plaintiff in this and the other coordinated cases

each seek to represent different classes: The proposed class in the *National ATM Council* case consists of non-bank operators of ATM terminals. The *Mackmin* case brings claims on behalf of a putative class of consumers paying ATM Access Fees at bank-owned ATMs. *Stoumbos*, in turn, seeks to represent consumers charged a fee at an "Independent ATM" (i.e., an ATM not owned by Visa, MasterCard or any of their member banks).

Each plaintiff group listed above filed consolidated amended complaints in late 2011, and Defendants challenged those complaints via motion to dismiss shortly thereafter. This Court granted those Motions on February 13, 2013, on two grounds. First, the Court held Plaintiffs "allege[d] insufficient facts to support the allegations that plaintiffs suffered any injury." Opinion at 3. Second, the Court held Plaintiffs had "not set forth sufficient facts to support their claim that there was a horizontal conspiracy." *Id.* With respect to the consumer plaintiffs' antitrust injury, the Court found Plaintiffs did not properly allege the specific cost savings that would exist without the alleged restraints, *see* Opinion at 18-19, 21-23, and, additionally, that Plaintiffs' complaints lacked details describing the specific injuries the named plaintiffs suffered. *Id.* at 21-22. With respect to Plaintiff's conspiracy allegations, the Court found Plaintiffs' factual allegations concerning the member banks' former ownership of the Visa and MasterCard networks was insufficient to demonstrate horizontal agreement, Opinion at 33-35. The Court went on to hold that Plaintiffs did not provide sufficient allegations to plead a "hub and spoke" conspiracy, and that Plaintiffs failed to allege Visa and MasterCard "joined together independent centers of decision making," and thereby did not plead agreement under *American Needle, Inc. v. National Football League*, 130 S.Ct. 2201 (2010).

While this Court dismissed Plaintiffs' complaints, it explicitly did so without prejudice. It went on to emphasize that it had "not concluded that plaintiffs could never make factual

allegations to support their claims; it simply rules that plaintiffs have not done so here." Opinion at 38. Because Plaintiffs believed they could correct the deficiencies the Court identified, they moved the Court (pursuant to F.R.C.P. 59(e)) requesting the Court set April 15, 2013 as a date certain by which they could amend their complaints and, additionally, requesting the Court modify its order to state it dismissed Plaintiffs' complaints, as opposed to their cases. *See* Docket # 29. While that motion still remains pending before this Court, Plaintiff tenders this Motion to request the Court accept the attached amended complaint for filing. If this Court accepts it, Plaintiff contemplates that Defendants will challenge the Proposed Amended Complaint through full briefing on a motion to dismiss.

## II. STANDARDS OF LAW

F.R.C.P. 15(a) allows a party to amend a pleading "by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Rule 15(a) accordingly allows "'maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.'" *Belizan v. Hershon*, 434 F.3d 579, 584 (D.C. Cir. 2006) (citations omitted). In accordance with this precept, Rule 15(a) creates a presumption in favor of granting a request to file an amended pleading. *Whitehead v. Deutch*, No. 96-420, 1997 U.S. Dist. LEXIS 22793, at *9 (D.D.C. 1997) (mem). When parties disagree over the propriety of filing an amended complaint, it is "axiomatic that the party opposing an amendment has the burden of establishing that leave to amend would be futile." *Hines v. City of Albany*, No. 1:06-CV-01517, 2008 WL 366020, at *2 (N.D.N.Y. Feb. 8, 2008); *see also Kelly v. Barreto*, No. 05-0900, 2006 WL 2568443, at *3 (D.D.C. Sep. 5, 2006) (granting leave to amend in light of "the defendant's failure to demonstrate that . . . amendment would be futile."). "It is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as undue delay, bad faith

or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (citations omitted).

## III. THERE HAS BEEN NO UNDUE DELAY, BAD FAITH, DILIATORY MOTIVE, OR REPEATED FAILURE TO CURE DEFICIENCIES.

The amended complaint for which Plaintiff seeks leave would represent the first such amendment following the Court's initial dismissal. There has been no "undue delay, bad faith or dilatory motive . . . [or] repeated failure to cure deficiencies by [previous] amendments. *Firestone*, 76 F.3d at 1208. As such, forth the reasons set forth in greater detail below, the Court should grant this Motion. *Id.*

### A. There Is No Undue Delay, Bad Faith, or Dilatory Motive

Showing "undue delay" requires a party opposing amendment to "'show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely.'" *In re Vitamins Antitrust Litig.*, 217 F.R.D. 30, 32 (D.D.C. 2003) (citations omitted). Similarly, "undue prejudice" occurs only when amendment "would unduly prejudice [defendant's] legal strategy or their ability to present evidence." *City of Moundridge v. Exxon Mobil Corp*., 250 F.R.D. 1, 7 (D.D.C. 2008). Given the early stage of this litigation and the prompt nature of Plaintiff's request to amend, Defendants cannot make either showing. *See Clark v. Feder Semo & Bard, P.C.*, 560 F. Supp. 2d 1, 4 (D.D.C. 2008) (no prejudice because "Rule 26(a) disclosures have not yet been provided, and no discovery has been taken."). This lack of delay (and concomitant lack of prejudice) similarly militates against any finding of bad faith or dilatory motive, and in favor of amendment. *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006) ("With respect to bad faith, courts generally consider the length of the delay between the latest pleading and the amendment sought.").

Because "[t]he most important factor the Court must consider when deciding whether to grant a motion for leave to amend is the possibility of prejudice to the opposing party," this Court should permit the requested amendment. *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006).

### B. Plaintiff Has Not Failed to Cure Deficiencies by Prior Amendment

Plaintiff has never previously amended the complaint to rectify the infirmities identified in the Opinion, and, accordingly, has not failed to cure deficiencies by prior amendment. *Cf. Johnson v. Dist. of Columbia Gov't, 03-7142*, 2004 WL 758958, at *1 (D.C. Cir. Apr. 7, 2004) (denying leave to amend proper when "at least four prior amendments that failed to cure the complaint's deficiencies").

## IV. AMENDMENT WOULD NOT BE FUTILE

This Court's Opinion indicated that amendment would not be futile, emphasizing that it "has not concluded that plaintiffs could never make factual allegations to support their claims; it simply rules that plaintiffs have not done so here." Opinion at 38. This ruling was well in accordance with the law of this circuit. To demonstrate futility, Defendants must "persuade the Court that the information is irrelevant and thus that inclusion of it in an amended consolidated complaint would be an exercise in futility." *In re Sunrise Sr. Living, Inc. Derivative Litig.*, 550 F. Supp. 2d 1, 7-8 (D.D.C. 2008). Plaintiff's Proposed Amended Complaint specifically addresses the deficiencies the Court identified in the initial Complaint, and the complaint warrants testing through full motion to dismiss briefing. *Id.* (leave to amend appropriate when it is "not apparent that amending the consolidated complaint in this case would be futile."). This does not require this Court to conclude definitively that Plaintiff will survive such a motion, only that she should be permitted the opportunity to try. *Hourani v. Mirtchev*, 282 F.R.D. 278, 280 (D.D.C. 2012) ("Without concluding whether Plaintiffs' proposed amended complaint will

ultimately survive a motion to dismiss, the Court cannot find—at this stage—that granting Plaintiffs leave to file a first amended complaint would be futile.").

**A. Antitrust Injury/Injury in Fact**

Plaintiff's Proposed Amended Complaint directly addresses both of the deficiencies the Court found regarding injury-in-fact, insofar as they properly alleged (1) that "the access fees charged by the ATM operators were actually inflated" and (2) that Plaintiffs "were personally affected by those circumstances." Opinion at 18.

**1. The Access Fees Charged by the ATM Operators Were Actually Inflated**

This Court's Opinion faulted Plaintiffs' original complaints for failing to explain "whether or how the network utilized affects the ATM operator's costs," and, similarly, for failing to discuss "what the ATM operator's costs are, and whether they change if the operator uses a Visa or MasterCard network or an alternative network." Opinion at 29. The Court then detailed these failings, observing "there are no facts alleged to show that there *is* any 'variability of costs of using competing networks.'" *Id.* at 21 (citations omitted, emphasis in original). Plaintiff addresses this failing by setting forth facts concerning the nature of ATM interchange fees, and how the variability of net interchange affects ATM's pricing decisions, both in a competitive market, and in the alleged restrained market. Plaintiff further explains how termination of the alleged restraints would result in savings to the customers in the "but-for world."

**2. Plaintiff Suffered Antitrust Injury**

Plaintiff also now pleads the specific nature of the individual injuries she suffered. Plaintiff supplies more specific information regarding withdrawals she has made at foreign ATMs, and for which she was charged access fees.

### B. Combinations in Restraint of Trade

Plaintiff also now pleads additional details concerning the combination in restraint of trade alleged.

First, with respect to Visa and MasterCard's member banks' former ownership of the networks, Plaintiff's Proposed Amended Complaint adds information pertaining to the nature of that ownership and the horizontal agreement created thereby. Specifically, Plaintiff's Proposed Amended Complaint substantially expands on the history and nature of the ATM Access Fees, in allegations designed to more fulsomely describe the history and nature of the restraints at issue, *see* ¶¶ 27-42, and goes on to describe the critical role Visa and MasterCard's member banks played in both formulating that restraint and ensuring its continued existence. *Id.*

Second, with respect to Plaintiff's "hub and spoke" allegations, Plaintiff adds allegations describing a "hub and spoke" conspiracy, where combinations in which Visa and MasterCard are the two hubs and horizontally competing ATM owners are the rims. ¶ 53. The complaint describes why it would not be in the independent self-interest of any one Independent ATM Operator to enter into the written contract that creates the restraint, *id.* & ¶ 55, and goes on to describe a combination between Independent ATM Operators and Visa (and, separately, Mastercard) whereby Visa and MasterCard use their dominant market positions to impose a horizontal pricing restraint upon the Independent ATM Operators that forms the rim of the wheel. *Id.* at ¶ 55; *see also Dickson v. Microsoft Corp.*, 309 F.3d 193, 205 (4th Cir. 2002) (noting the "'combination or conspiracy' element of a section 1 violation is not negated by the fact that one or more of the co-conspirators acted unwillingly, reluctantly, or only in response to coercion.'").

## V. CONCLUSION

Plaintiff's motion for leave to amend easily satisfies the low burden applied to such motions. *Belizan*, 434 F.3d at 584. Plaintiff has filed it promptly and without undue delay, it will cause Defendants no undue prejudice, and it is the first request for amendment following this Court's Opinion. Because Defendants cannot meet their burden of demonstrating amendment would be futile, this Court should grant leave to amend and permit to test Plaintiff's Proposed Amended Complaints through full 12(b)(6) briefing.

Dated: April 15, 2013

Respectfully submitted,

By: *_/s/ Michael G. McLellan_*

Michael G. McLellan (D.C. Bar # 489217)
mmclellan@finkelsteinthompson.com
Douglas G. Thompson (D.C. Bar # 172387)
dthompson@finkelsteinthompson.com
FINKELSTEIN THOMPSON LLP
James Place
1077 30th Street, N.W., Suite 150
Washington, D.C. 20007
Telephone: 202-337-8000
Facsimile: 202-337-8090

*Counsel for Plaintiff Stoumbos*