# Exhibit C

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION | MDL Docket No. 1869<br>Misc. No. 07-489 (PLF/AK/JMF) |
| This document relates to:<br><br>DIRECT PURCHASER CASES | |

**RULE 26(f) STIPULATION AND [PROPOSED] ORDER**
**REGARDING DISCOVERY PROTOCOLS**

WHEREAS, the above consolidated actions, brought by the Direct Purchaser Plaintiffs ("Plaintiffs") against defendants CSX Transportation, Inc. ("CSXT"), BNSF Railway Company ("BNSF"), Norfolk Southern Railway Company ("NS"), and Union Pacific Railroad Company ("UP") (collectively "Defendants"), are pending before this Court.

WHEREAS, the parties recognize that certain documents and electronically stored information ("ESI") are relevant to the parties' claims and defenses in these actions and the parties have engaged in discussions regarding the identification and production of such documents and ESI:

NOW, THEREFORE, IT IS HEREBY STIPULATED BY AND BETWEEN THE PARTIES, THROUGH THEIR RESPECTIVE COUNSEL, AS FOLLOWS:

**I. PRODUCTION FORMAT OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

A. **Paper Documents**. The parties will produce paper documents according to the following protocol:

1. Except as provided in Section I.A.3, all paper documents shall be produced as TIFF images with a cross-referenced load file, according to the specifications set forth in Section I.B. hereto. The TIFF images will be accompanied by an optical character recognition ("OCR") text file, to the extent OCR text can be generated for each paper document. The producing and receiving parties agree to split the cost of generating OCR versions of the TIFF images.

2. Defendants reserve the right to search for and review paper documents (except those identified as including or containing handwritten text or that otherwise cannot be OCRed), for which OCR text has been generated, by the application of search terms, agreed upon by the parties or ordered by the Court, in accordance with the protocol for the application of search terms to non-database ESI set forth herein. Paper documents identified as including or containing handwritten text or that otherwise cannot be OCRed will be manually reviewed for responsiveness and privilege. Any Defendant that intends to apply search terms to OCR text associated with paper documents, for the purpose of searching for and reviewing documents in response to propounded

Case 1:07-mc-00489-PLF-GMH Document 310 Filed 10/05/09 Page 3 of 29

discovery requests, will notify Plaintiffs of its intention prior to doing so. Plaintiffs object to the application of search terms to OCR text associated with paper documents and reserve the right to seek relief from the Court should any Defendant intend to apply search terms to OCR text associated with paper documents. The following protocol will apply to any objection asserted by Plaintiffs:

a. Plaintiffs will have two business days to assert an objection upon notice from a Defendant of its intention to search for paper documents by using search terms. Upon receipt of an objection from Plaintiffs, that Defendant will meet and confer with Plaintiffs in an attempt to resolve the dispute.

b. Within three business days of a timely asserted objection, if the parties are unable to resolve the dispute, the parties will submit the objection to the Court for expedited resolution. An opening brief from each side must be filed no later than 6:00 p.m. Eastern Time on the third business day after a timely asserted objection, and each brief will be limited to no more than ten pages in length. Each side will be permitted a reply brief, which must be filed no later than 6:00 p.m. Eastern Time on the third business day after the filing of the parties' opening briefs, and each brief will be limited to no more than five pages in length. The parties

will request the Court to rule upon the dispute in an expedited fashion.

c. If the Defendant chooses to proceed using the disputed approach to reviewing paper documents before the issue is resolved by the Court, the Defendant's use of the disputed approach will be without prejudice to Plaintiffs' seeking relief on the issue and the Defendant may not mention that fact in its brief or otherwise use that fact to support its position.

3. The parties reserve the right to make available for inspection pursuant to Federal Rule of Civil Produce 34 paper documents responsive to Request No. 51 from Plaintiffs' Second Request for Production and future discovery requests that may be served.

B. **Non-Database ESI**. The parties will produce non-database ESI according to the following protocol:

1. Except as provided in Section I.C. herein, all non-database ESI shall be produced in TIFF format. All TIFF formatted documents will be single page, black and white, Group 4 TIFF at 300 X 300 dpi resolution and 8½ X 11 inch page size, except for documents requiring different resolution or page size.

2. A unitization file, in standard format (*e.g.*, Opticon, Summation DII, or the like) showing the Bates number of each page, the

appropriate unitization of the documents and the entire family range, will accompany each TIFF document.

3. The parties and their respective vendors shall coordinate regarding the specifics of the load file formatting.

4. An extracted searchable full text file version will be produced for each electronic document. Each extracted full text version will be named according to the first Bates number of the corresponding electronic document.

5. Each TIFF version of an electronic document will be created directly from the corresponding native file.

6. For spreadsheet files (*e.g.*, Microsoft Excel), the TIFF versions shall include all hidden rows, cells, worksheets as well as any headers or footers associated with the spreadsheet file.

7. The following metadata fields associated with each electronic document will be produced, to the extent they exist as electronic metadata associated with the original electronic documents. No party will have any obligation to manually generate information to populate these fields.

   a. For CSXT, BN and NS, which operate on Microsoft Outlook platforms, the following fields (to the extent they exist) will be produced:

      (i) MSFILE_AUTHOR

      (ii) MSFILE_CREATIONTIME

(iii) MSFILE_LAST_SAVED_BY

(iv) MSFILE_LASTSAVETIME

(v) MSFILE_REVISION_NUMBER

(vi) MSFILE_SUBJECT

(vii) MSFILE_TITLE

(viii) OL_ATTACHMENTS_COUNT

(ix) OL_BCC

(x) OL_CC

(xi) OL_CONVERSATION_KEY

(xii) OL_CONVERSATIONINDEX

(xiii) OL_CREATIONTIME

(xiv) OL_CREATOR_NAME

(xv) OL_DELIVER_TIME

(xvi) OL_FOLDERPATH

(xvii) OL_IMPORTANCE

(xviii) OL_PSTFILENAME

(xix) OL_RECEIVEDTIME

(xx) OL_RECIPIENTS

(xxi) OL_SENDER_EMAIL_ADDRESS

Case 1:07-mc-00489-PLF-GMH Document 310 Filed 10/05/09 Page 7 of 29

(xxii) OL_SENDERNAME

(xxiii) OL_SENT

(xxiv) OL_SENTON

(xxv) OL_SENTONBEHALFOFNAME

(xxvi) OL_SUBJECT

(xxvii) OL_UNREAD

(xxviii) BEGBATES

(xxix) ENDBATES

(xxx) BEGATTACH

(xxxi) ENDATTACH

b. For UP, which operates on a Lotus Notes platform, the following fields will be produced:

(i) MSFILE_AUTHOR

(ii) MSFILE_CREATIONTIME

(iii) MSFILE_LAST_SAVED_BY

(iv) MSFILE_LASTSAVETIME

(v) MSFILE_REVISION_NUMBER

(vi) MSFILE_SUBJECT

(vii) MSFILE_TITLE

(viii) ATTACH_SIZE

(ix) ATTACHMENT_COUNT

(x) BCC

(xi) CC

(xii) CREATOR_NAME

(xiii) RECIPIENTS

(xiv) SENDER_EMAIL_ADDRESS

(xv) SENDERNAME

(xvi) SMTP_ADDRESS

(xvii) SUBJECT

(xviii) BEGBATES

(xix) ENDBATES

(xx) BEGATTACH

(xxi) ENDATTACH

(xxii) DATE_SENT

(xxiii) TIME_SENT

c. For UP, which has accessible instant messaging ESI, the following fields will be produced, to the extent they exist: (a) author; (b) recipients; (c) date sent; (d) time sent; and (e) the full text of the messages sent or received.

Case 1:07-mc-00489-PLF-GMH Document 310 Filed 10/05/09 Page 9 of 29

d. For Plaintiffs, the above-listed MS, OL, Lotus Notes and other fields will be produced for each Plaintiff using one or more of the corresponding applications, to the extent each of those fields exists as electronic metadata associated with the original electronic documents. For any Plaintiff operating on a different platform, the parties will meet and confer on the metadata fields to be produced by that Plaintiff, with the expectation that each such Plaintiff will produce similar fields to the extent they exist as electronic metadata associated with the original electronic documents.

8. If a document has another file embedded in it, (*e.g.*, a PowerPoint presentation that has a spreadsheet embedded in it), the receiving party may request that the embedded file be produced as standalone file pursuant to the following protocol:

a. The receiving party shall provide a list referencing, by Bates numbers, files it believes are embedded in another document.

b. The producing party shall have 10 days to produce the requested embedded files as standalone files, or respond in writing why it will not produce the requested files. A party will have no obligation to produce any embedded file as a standalone file if the embedded file was not processed as a

standalone file through the normal processes of the producing party's vendor.

c. All embedded files produced under this procedure shall be produced subject to the same requirements set forth in Section I above. Load files for such embedded files shall refer to the parent document in which the file was embedded.

d. The parties will not object to the authenticity or admissibility of an embedded document so produced on grounds relating to the process used to produce the embedded document. All other objections shall be preserved, including but not limited to completeness.

9. One or more of the parties may incur costs associated with programming required to extract certain of the metadata fields. Each party agrees to bear up to $20,000 of its own programming costs associated with the extraction and production of such metadata fields. Each party reserves its right to seek cost-sharing or cost-shifting from opposing parties should such costs exceed $20,000 for that individual Plaintiff or Defendant. A party shall notify opposing parties of its intention to seek cost-sharing or cost-shifting before incurring costs in excess of $20,000.

**C. Production of Native Files**

1. The parties agree that documents will be produced in the imaged format as set forth in Section I.B. hereto and that no requesting party may request or seek to compel the production of ESI in native format on a wholesale basis, although the producing party retains the option to produce ESI in native file format.

2. Subsequent to the production of the imaged documents, however, and according to the following protocol, a receiving party may request for good cause from a producing party that certain imaged files be produced in native format because the files are difficult to read in an imaged form:

   a. The receiving party shall provide a list of Bates numbers of the imaged documents sought to be produced in native file format.

   b. The producing party shall have 10 days to produce the native files, or it may object to the demand as unreasonable as follows:

      (i) Within 10 days of receiving a request to produce native files, the producing party will respond in writing, setting forth its objection(s) to the production of the requested native format files.

      (ii) The parties will meet and confer regarding the request and corresponding objection(s), and if the

parties are unable to agree as to the production of the requested files in native format within 10 days of submission of the responding party's objection(s), the parties will submit the matter to the Court.

3. Any produced native files will be assigned a unique file name or identifier and a hash value.

## II. DE-DUPLICATION

### A. De-duplication

1. Parties may de-duplicate globally within their own productions only.

2. Each party will disclose the methodology it used to de-duplicate (*e.g.*, MD5 Hashing, SHA-1).

3. The parties agree that an email that includes content in the "bcc" or other blind copy field shall **not** be treated as a duplicate of an email that does not include content in the "bcc" or other blind copy field, even if all remaining content in the email is identical.

### B. Near De-duplication

1. The parties agree that the use of near-de-duplication protocols can reduce the cost of the review and production of ESI.

2. Parties are not required to use near-de-duplication protocols, but, if they choose to do so, the producing party shall disclose to the

receiving party the near-de-duping protocol intended to be used prior to employing such protocol.

3. Within three days of being notified of the near-de-duping protocol a producing party wishes to use, a receiving party shall have the right to object to the use of such protocol.

4. If a receiving party objects to the proposed use of a near de-duping protocol, the parties will then meet and confer regarding the near-de-duping protocol, and if the parties are unable to agree about the use of the near-de-duping protocol within five days of submission of the receiving party's objection(s), the parties will submit the matter to the Court.

**C. Email Threads**

1. Defendants UP and CSXT have requested Plaintiffs' agreement that, for purposes of production of ESI in this case, e-mail messages (with or without attachments) may be produced only as part of an e-mail chain, even though they were transmitted by themselves or as part of a shorter e-mail chain, provided that any email chain that is forwarded with a previous email in the chain deleted or modified will be identified and produced as a separate document along with a copy of the undeleted chain.

   a. Plaintiffs and UP have met and conferred about the process by which, *inter alia*, UP intends to identify and produce e-mail threads and attachments thereto. Based on UP's

Case 1:07-mc-00489-PLF-GMH Document 310 Filed 10/05/09 Page 14 of 29

representations, Plaintiffs agree that UP may produce e-mail messages only as part of an e-mail chain, as described above, provided that:

(i) UP will make reasonable efforts to correct any errors that occur as part of its efforts to produce e-mail chains, as described above, including but not limited to incomplete production of attachments; and

(ii) if any issues arise from UP's production of e-mail chains, even if not strictly production "errors," UP and Plaintiffs will meet and confer in good faith to resolve or address such issues.

b. If CSXT wishes to proceed with the production of e-mail messages only as part of an e-mail chain, as described above, Plaintiffs and CSXT will meet and confer to attempt to resolve the issue. If CSXT and Plaintiffs cannot resolve the issue, the parties may seek relief from the Court.

2. E-mails (with or without attachments) may be introduced into evidence as separate documents (i) without other e-mails or attachments in the e-mail chain or (ii) with other e-mails or attachments in the chain redacted:

a. without an objection based on authenticity or admissibility on the grounds that the e-mails or attachments have been

removed from an e-mail chain in the process of producing ESI; and

b. without prejudice to an objection based on Federal Rule of Evidence 106 that additional documents or e-mails should be admitted in evidence as the remainder of or related writings or recorded statements.

3. The parties reserve all other objections to the admissibility of documents and ESI.

## III. IDENTIFICATION OF RESPONSIVE DOCUMENTS AND ESI

A. Plaintiffs and each Defendant have agreed on a custodian protocol. Set forth in Exhibit A is the full list of Defendant custodians whose hard copy documents and ESI the parties have agreed will be searched for responsiveness to Plaintiffs' document requests, subject to Defendants' objections to the document requests. Set forth in Exhibit B is the list of Defendants' custodians whose hard copy documents and ESI the parties agreed would be searched for responsiveness to Plaintiffs' document requests, subject to Defendants' objections to the document requests, during the "first wave" of discovery, to be substantially completed by October 31, 2009. Defendants will produce documents from the remainder of the agreed-upon list of custodians on a rolling basis commencing in November 2009.

B. Defendants shall utilize the agreed-upon search terms, set forth in Exhibit C, as a means of limiting the volume of documents and ESI to be reviewed

for responsiveness to discovery requests propounded by Plaintiffs. If any Plaintiff decides to apply search terms to identify ESI to be reviewed for responsiveness to discovery requests propounded by Defendants, such Plaintiff shall utilize search terms agreed-upon with Defendants and apply such search terms to the ESI of agreed-upon custodians.

C. Queries will be run against all ESI collected from agreed-upon custodians, including emails and their attachments. If a query returns an email or an attachment to an email, both the email and any attachment(s) will be reviewed and produced, if responsive and non-privileged, and subject to the parties' objections to discovery requests and any agreements reached in the parties' meet-and-confer process.

D. All queries will be run in a non-case sensitive manner, except as provided in the agreed-upon search terms or otherwise agreed to by the parties.

E. Hyphenation of terms will not affect search results (*e.g.*, a query for “all inclusive index” will return “all-inclusive index” and vice versa).

F. If the search syntax required by the tool being used is different from the search syntax provided in the attached Exhibit C or in any agreed-upon search terms to be applied to any Plaintiff’s ESI, the actual syntax used for the search and the tool used will be identified to the requesting party prior to conducting the search.

G. Subject to the parties’ agreement, or Court Order, regarding the scope of Plaintiffs’ or Defendants’ document requests, the agreed-upon search terms shall be used to identify ESI that will be reviewed for

responsiveness to Plaintiffs' or Defendants' discovery requests, and produced if responsive and non-privileged subject to and without waiver of a party's objections to the opposing parties' discovery requests and to any agreements reached in the parties' meet-and-confer process.

H. With respect to ESI, and for those of Plaintiffs' or Defendants' Document Requests that the parties have agreed (or the Court has ordered) can be addressed by using search terms, (i) a party's obligation to conduct a reasonable search for documents in response to propounded discovery requests shall be deemed to be satisfied by reviewing documents that are captured by utilizing the agreed-upon search terms to be applied to ESI from agreed-upon custodians; and (ii) a party shall have no obligation to produce any documents, except as otherwise agreed to in writing by the parties, that are not either (a) captured by one or more of the agreed-upon search terms to be applied to ESI of agreed-upon custodians and identified as non-privileged and responsive to a specific propounded discovery request or (b) otherwise identified by the party as non-privileged and responsive to a specific propounded discovery request.

I. With respect to ESI, the fact that a document is captured by application of agreed-upon search terms to the ESI from agreed-upon custodians does not mean that such document is responsive to any propounded discovery request or otherwise relevant to this litigation. Propounded discovery requests shall govern the scope of documents to be produced, subject to

Case 1:07-mc-00489-PLF-GMH Document 310 Filed 10/05/09 Page 18 of 29

the parties' objections and any agreements reached in the parties' meet-and-confer process.

J. The parties will review textual PDF and TIFF files (including textual PDF and TIFF files stored within RAR or ZIP files) and scanned or faxed textual files in another format, if the party regularly scans documents or receives electronic copies of facsimiles in another format in the ordinary course of business, that are collected from agreed-upon custodians and identified by the parties' respective vendors as files that cannot be programmatically searched by the application of agreed-upon search terms.[1] If such documents are voluminous, Defendants reserve the right to search for and review such documents for which OCR text has been generated by the application of search terms, agreed upon by the parties or ordered by the Court, in accordance with the protocol for the application of search terms to non-database ESI set forth herein. Any Defendant that intends to apply search terms to OCR text associated with such documents, for the purpose of searching for and reviewing documents in response to propounded discovery requests, will notify Plaintiffs of its intention prior to doing so. Plaintiffs object to the application of search terms to OCR text associated with non-searchable documents. The following protocol will apply to any objection asserted by Plaintiffs:

a. Plaintiffs will have two business days to assert an objection upon notice from a Defendant. Upon receipt of an

[1] The parties will endeavor to apply search term queries to the ESI contained within RAR and ZIP files.

objection from Plaintiffs, that Defendant will meet and confer with Plaintiffs in an attempt to resolve the dispute.

b. Within three business days of a timely asserted objection, if the parties are unable to resolve the dispute, the parties will submit the objection to the Court for expedited resolution. An opening brief from each side must be filed no later than 6:00 p.m. Eastern Time on the third business day after a timely asserted objection, and each brief will be limited to no more than ten pages in length. Each side will be permitted a reply brief, which must be filed no later than 6:00 p.m. Eastern Time on the third business day after the filing of the parties' opening briefs, and each brief will be limited to no more than five pages in length. The parties will request the Court to rule upon the dispute in an expedited fashion.

c. If the Defendant chooses to proceed using the disputed approach to reviewing the documents before the issue is resolved by the Court, the Defendant's use of the disputed approach will be without prejudice to Plaintiffs' seeking relief on the issue and the Defendant may not mention that fact in its brief or otherwise use that fact to support its position.

K. If any party seeks to modify agreed-upon search terms (*e.g.*, due to limitations of an electronic discovery vendor's tools), that party will notify the opposing parties prior to any modification.

1. Within three days of being notified of any proposed modified search terms, an opposing party shall have the right to object to the use of such search terms.

2. The parties will then meet and confer regarding the proposed modified search terms, and if the parties are unable to agree about the use of the search terms within five days of submission of the opposing party's objection(s), the parties will submit the matter to the Court.

L. The parties will make reasonable efforts to identify any potentially relevant ESI that is password protected or encrypted and undertake to remove those passwords in order that the search terms can be run against that ESI and it can be reviewed. If a party's efforts are unsuccessful, that party shall identify the file(s) at issue to the receiving party. The parties are not required to provide information on passwords obtained or the manner with which password-protected or encrypted files were made accessible.

M. As a general matter, the parties are obligated to produce responsive, non-privileged documents and ESI generated or created between May 1, 2001, and May 14, 2007, with the following exceptions:

1. Defendants are obligated to produce responsive documents and ESI generated or created in the period of January 1, 2000, to April 30, 2001, that (1) will be relied upon by Defendants at trial; (2) is likely to be given to an expert for review; or (3) that would otherwise pertain, relate to, or evidence (a) discussions pertaining to the imposition of (or changes to) fuel surcharge methodologies, policies, formulas, or levels in that period of time, whether imposed or not; or (b) the actual imposition of such fuel surcharge methodologies, policies, formulas, or levels.

2. The parties have agreed that the May 14, 2007 end-date referenced in this paragraph does not apply to certain categories of transactional data that Defendants shall produce for the period through to December 31, 2008.

## IV. CLAIMS OF PRIVILEGE

The parties agree that isolation, review, redaction and logging of privileged communications can be costly and time-consuming. To limit the cost of a privilege review and make document production more efficient, the parties have agreed to adopt the following protocol with respect to handling responsive documents that may include privileged information:

A. The parties may use the following protocol to isolate and log electronic documents and their attachments involving in-house counsel, provided that each party (i) takes reasonable efforts to ensure that automatically-generated language in in-house counsel communications (such as

disclaimers automatically inserted as email footers) will not cause the filter to screen communications on the basis that the search terms listed at Section IV.A.2 appear only in the automatically-generated language, and (ii) discloses in advance to the receiving party the efforts to be used, including disclosing any additional search terms to be applied in order to identify in-house counsel communications containing automatically-generated language that includes one or more of the terms listed at Section IV.A.2:

1. Parties wishing to use the protocol will disclose to each other the names and full business titles of in-house counsel employed by the parties during the period January 1, 2000, through May 14, 2007.

2. The following search terms will be applied to ESI in which one or more names of a party's in-house counsel appears anywhere in the document, including associated metadata, to isolate potentially privileged communications:

   a. "defense strategy"

   b. "joint defense"

   c. "work product"

   d. "work-product"

   e. attorney near5 client

   f. advice near3 (counsel or lawyer* or attorney*)

   g. affidavit*

h. deposition*

i. privilege*

j. declaration*

3. A log of the documents resulting from the electronic privilege search will be generated from the following metadata fields to the extent they exist as electronic metadata associated with the original electronic documents, and the producing party shall promptly produce such logs to the receiving party(ies):

a. MSFILE_AUTHOR

b. MSFILE_CREATIONTIME

c. MSFILE_SUBJECT

d. OL/LN_SENDERNAME

e. OL/LN_RECIPIENTS

f. OL/LN_CC

g. OL/LN_BCC

h. OL/LN_SUBJECT

i. OL/LN_SENT

j. OL/LN_RECEIVEDTIME

4. For any party operating on a platform other than Microsoft Outlook or Lotus Notes, the parties will meet and confer on the metadata fields to be used by that party in generating a log of the

documents resulting from the electronic privilege search, with the expectation that each such party will use similar fields to those set forth in Section IV.A.3. to the extent they exist as electronic metadata associated with the original electronic documents.

5. With respect to the MSFILE_SUBJECT or OL_SUBJECT field or a corresponding field from another platform (e.g., Lotus Notes), the parties may substitute a description of the communication where the content of these fields may reveal privileged information. In the logs referenced in the above sub-paragraph 3, the producing party shall identify each instance in which it has modified the content of the MSFILE_SUBJECT or OL_SUBJECT field or a corresponding field from another platform (e.g., Lotus Notes).

6. The documents identified from the above-described search need not be reviewed before being logged and withheld from production, or at any time thereafter except as required by IV.A.7.

7. Should a receiving party in good faith have reason to believe a particular entry on the metadata-generated log does not reflect a privileged document, the receiving party may request and the producing party will generate a privilege log for that entry in compliance with Fed. R. Civ. P. 26(b)(5).

B. The parties may use the following protocol to isolate and log electronic documents and their attachments involving outside counsel:

Case 1:07-mc-00489-PLF-GMH Document 310 Filed 10/05/09 Page 25 of 29

1. Each party may search the text of electronic documents and any associated metadata fields for names of outside counsel who were retained by the party to provided legal services at any point between January 1, 2000 and May 14, 2007.

2. The parties will not be required to disclose the names of outside counsel to be included in the search, except to the extent any of the names appear in the log for those documents captured by the search.

3. The documents resulting from the above-described search shall be logged in the same manner as described in section IV.A.3-5, and such logs shall be promptly produced by the producing party to the receiving party(ies).

4. The documents identified from the above-described search need not be reviewed before being logged and withheld from production, or at any time thereafter except as required by IV.B.5.

5. Should a party in good faith have reason to believe a particular entry on the metadata-generated privilege log does not reflect a privileged document, the receiving party may request and the producing party will generate a privilege log for that entry in compliance with Fed. R. Civ. P. 26(b)(5).

C. To the extent documents are not identified and logged pursuant to Sections IV.A. or B., yet contain privileged materials or information, the producing

party shall generate a privilege log for each such document in compliance with Fed. R. Civ. P. 26(b)(5).

**V. PRODUCTION OF DATA**

The Defendants will produce transactional data responsive to Request No. 6 from the Direct Purchaser Plaintiffs' Second Request for Production and to the Direct Purchaser Plaintiffs' Third Request for Production in accordance with agreements reached in the parties' meet and confer process, the Court's July 28, 2009 Order, or any other applicable order entered by the Court.

[Continued on next page]

## VI. PRESERVATION AND PROTECTIVE ORDERS

A preservation order (Exhibit D) was adopted by this Court on January 31, 2008. The preservation order had previously been entered by the United States District Court for New Jersey, a transferor court, on July 16, 2007. A protective order (Exhibit E) was entered in this case on January 29, 2009 and amended on April 20, 2009.

Dated: October 5, 2009 Respectfully submitted:

/s/ Michael D. Hausfeld
Michael D. Hausfeld
William P. Butterfield
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: mhausfeld@hausfeldllp.com

Steig D. Olson
HAUSFELD LLP
11 Broadway, Suite 615
New York, NY 10004
Telephone: (212) 830-9850
Facsimile: (212) 480-8560
Email: solson@hausfeldllp.com

/s/Stephen R. Neuwirth_____
Stephen R. Neuwirth
Daniel Brockett
Marc L. Greenwald
Sami H. Rashid
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email:
stephenneuwirth@quinnemanuel.com

***Interim Co-Lead Counsel for Direct Purchaser Plaintiffs***

Case 1:07-mc-00489-PLF-GMH Document 310 Filed 10/05/09 Page 28 of 29

/s/ Richard J. Favretto
Richard J. Favretto
Gary A. Winters
Michael E. Lackey, Jr.
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006

***Attorneys for Defendant BNSF Railway Company***

/s/ Richard McMillan, Jr.
Richard McMillan, Jr.
Kent A. Gardiner
Kathryn D. Kirmayer
David D. Cross
John L. Cuddihy
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

***Attorneys for Defendant CSX Transportation, Inc.***

/s/ John M. Nannes
John M. Nannes (D.C. Bar #195966)
Tara L. Reinhart (D.C. Bar #462106)
Sean M. Tepe
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005

***Attorneys for Defendant Norfolk Southern Railway Company***

/s/_Alan M. Wiseman
Alan M. Wiseman
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Tyrone R. Childress
David G. Meyer
HOWREY LLP
550 South Hope Street, Suite 110
Los Angeles, CA 90071

***Attorneys for Defendant Union Pacific Railroad Company***

**ORDER**

GOOD CAUSE APPEARING THEREFOR, IT IS SO ORDERED:

Dated: ________________ ____________________________
Hon. John M. Facciola, M.J.