UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARY STOUMBOS, On Behalf of Herself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VISA INC., VISA U.S.A. INC., VISA INTERNATIONAL SERVICE ASSOCIATION, and PLUS SYSTEM, INC.; and MASTERCARD INCORPORATED and MASTERCARD INTERNATIONAL INCORPORATED d/b/a MASTERCARD WORLDWIDE,<br><br>Defendants. | No. 1:11-cv-01882-RJL |

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR THE APPOINTMENT OF FINKELSTEIN THOMPSON LLP AND LOVELL STEWART HALEBIAN JACOBSON LLP AS CO-LEAD COUNSEL FOR THE INDEPENDENT ATM CONSUMER CLASS**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................ 1

II. BACKGROUND ........................................ 2

III. ARGUMENTS ........................................ 3

a. Standards of Law ........................................ 3

b. Rule 23(g)(1)(A)(i): Proposed Co-Lead Counsel's Work In Identifying Claims in the Litigation ........................................ 4

c. Rule 23(g)(1)(A)(ii): Proposed Counsel's Extensive Experience in Handling Class Actions, Other Complex Litigation, and the Types of Claims Asserted in This Action ..... 4

i. Finkelstein Thompson LLP ........................................ 5

ii. Lovell Stewart ........................................ 8

d. Rule 23(g)(1)(A)(iii): Proposed Co-Lead Counsel Possess Extensive Knowledge of the Applicable Law ........................................ 9

e. Rule 23(g)(1)(A)(iv): The Resources That Counsel Will Commit to Representing the Class ........................................ 9

f. Additional Considerations Support The Appointment Of Proposed Counsel. .................. 10

IV. CONCLUSION ........................................ 11

TABLE OF AUTHORITIES

Cases

*In re Aluminum Warehousing Antitrust Litigation*¸ Case No. 13-md-02481-KBF (S.D.N.Y.) 6, 11

*In re Domestic Drywall Antitrust Litig.*, No. MDL No. 2437, 2015 U.S. Dist. LEXIS 110665 (E.D. Pa. 2015)....5, 10, 11

*In re Facebook, Inc. IPO Sec. & Derivative Litig*., No. MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015) ....1, 8

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26 (S.D.N.Y. 2012)....4, 8, 11

*Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ....7

*Steele v. United States*, 2015 U.S. Dist. LEXIS 85018 (D.D.C. 2015)....3, 9, 10

*Simplot v. Strobl*, 474 U.S. 1006 (1985) ....8

*Strobl v. New York Mercantile Exch*., 582 F. Supp. 770 (S.D.N.Y. 1984) ....8

Federal Rules

Fed. R. Civ. P. 23....3

Federal Rule of Civil Procedure 23(g) ....1, 4

Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv)....4, 9

Fed. R. Civ. P. 23(g)(1)(B)....4, 10

Fed. R. Civ. P. 23(g)(2)....1, 3

Fed. R. Civ. P. 23(g)(3)....3

## I. INTRODUCTION AND SUMMARY

Of the three cases pending before this Court challenging Visa and MasterCard's ATM fee restraints, ("ATM Restraints"), this action ("*Stombous* action") is the only one seeking certification of a class of ATM consumers paying artificially inflated fees at independent ATMs, *i.e.* an ATM not owned by Visa, MasterCard, or any of their member banks. Accordingly, pursuant to Federal Rule of Civil Procedure 23(g), Plaintiff Mary Stoumbos respectfully submits this memorandum in support of the unopposed motion for appointment of Finkelstein Thompson LLP ("Finkelstein Thompson") and Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart") as Co-Lead Counsel for a putative class of Independent ATM Consumers.

Such appointment is eminently appropriate, as Proposed Co-Lead Counsel are "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). Proposed Co-Lead Counsel have a wealth of experience in class actions generally and antitrust class actions specifically. Each firm began leading complex class actions decades ago, and has a proven record of success in doing so. Each has the requisite skills, knowledge, and resources to serve independently as lead counsel; there is no question that they can do so combined. Indeed, Proposed Co-Lead Counsel have a history of producing excellent results when working together as co-leads in other cases. S*ee, e.g. In re Natural Gas Commodity Litig.*, No. 03cv6186 (S.D.N.Y.) (over $100 million recovery); *In re Facebook, Inc. IPO Sec. & Derivative Litig*., No. MDL No. 12-2389 (S.D.N.Y.) ($26.5 million recovery).

Equally of note, Proposed Co-Lead Counsel commonly litigates cases where multiple related cases proceed alongside one another, and are used to coordinating the efforts of plaintiffs with disparate individual interests. Here, where Proposed Co-Lead Counsel seek to press claims alongside separate classes of bank-owned ATM consumers and of ATM Operators, this

experience should lead to the effective joint prosecution of the cases, to the benefit of all parties to the proceedings and to the Court.

The significant effort Proposed Co-Lead Counsel has invested in this action thus far shows their commitment. Finkelstein Thompson filed this case in 2011, and has assiduously pursued it since – briefing both a motion to dismiss and a motion for leave to amend, and joining forces with the other cases in a successful joint appeal of the orders dismissing their claims. These specific efforts, coupled with Proposed Co-Lead Counsel's experience and skill, more than satisfy the requirements for appointment. If this Court grants the present motion, Proposed Co-Lead Counsel will prosecute the claims of Independent ATM Consumers with the skill, professionalism, and efficiency that class deserves.

## II. <u>BACKGROUND</u>

This case challenges certain restraints ("ATM Restraints") contained in VISA and MasterCard's rules barring ATM operators from charging less for transactions processed through independent networks than for those processed through either Visa or MasterCard's network. Like the other coordinated cases, the *Stombous* action alleges the ATM Restraints constitute a horizontal agreement that artificially inflates ATM access fees by effectively setting a floor price on the amount independent ATM operators may charge in access fees, thereby violating the federal and state antitrust laws.

While Stombous and her counsel have voluntarily coordinated efforts with the two other related actions pending before this Court, the classes alleged in each case are materially different. *Mackmin, et al. v. Visa Inc., et al.*, No. 1:11-cv-1831 presses claims on behalf of a putative class of consumers charging fees charged at ATMs owned by banks that are members of the Visa and/or Mastercard networks. The other related case – *Nat'l ATM Council, Inc., et al. v. Visa.*

*Inc., et al.*, No. 11-cv-1803 (D.D.C.) – seeks certification of a class of Independent ATM operators, and alleges the ATM Restraints preclude them from charging lower prices to consumers of those ATMs, *i.e.* members of the *Stombous* class. Neither case includes the claims pressed in the *Stombous* action.

This Court previously appointed Co-Lead counsel in the *Mackmin* action and in the *Nat'l ATM Council* action. Through this motion, Stombous asks the Court to do the same here.

## III. ARGUMENT

### a. Standards of Law

Under Federal Rule of Civil Procedure 23(g)(3), the Court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Interim appointment "protect[s] the interests of the putative class," Fed. R. Civ. P. 23 advisory committee notes to 2003 amendment, by "clarify[ing] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Manual for Complex Litigation (Fourth)* §21.11 (2004) ("*Manual*").

Fed. R. Civ. P. 23(g)(3), "which outlines the factors a court must consider when appointing class counsel, applies equally to the appointment of interim class counsel before certification." *Steele v. United States*, 2015 U.S. Dist. LEXIS 85018, at*7 (D.D.C. 2015). Under these standards, the Court is required to appoint interim class counsel who are "best able to represent the interests of the class," Fed. R. Civ. P. 23(g)(2), and to consider four factors when making this determination:

1. The work counsel has done in identifying or investigating potential claims in the action;

2. Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
3. Counsel's knowledge of the applicable law; and
4. The resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). Additionally, courts may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B).

Consideration of each of these factors shows Proposed Co-Lead Counsel easily qualifies to lead this case.

**b. Rule 23(g)(1)(A)(i): Proposed Co-Lead Counsel's Work In Identifying Claims in the Litigation**

Finkelstein Thompson LLP filed this case in 2011 to recover overcharges paid by a putative class of consumers of independent ATM machines, and this case is the sole case seeking such recovery. Accordingly, Finkelstein Thompson investigated claims on behalf of a class not otherwise represented and filed an action preserving those claims. In the years since, the firm has extensively developed those claims without the benefit of formal discovery, including consulting with economists. Proposed Counsel accordingly satisfy the first prong of the Rule 23(g) test. *See In re Facebook, Inc.*, 288 F.R.D. 26, 44 (S.D.N.Y. 2012) (23(g)(1)(A)(i) satisfied when "the firms have already performed work in identifying, investigating, developing and preserving the . . . claims.")

**c. Rule 23(g)(1)(A)(ii): Proposed Counsel's Extensive Experience in Handling Class Actions, Other Complex Litigation, and the Types of Claims Asserted in This Action**

Proposed Co-Lead Counsel each possesses extensive experience in class actions, complex litigation, and antitrust litigation, and are eminently capable of handling the duties of

this litigation. Collectively, the firms have locations in (among others) both Washington, D.C. and New York, locations of both the Court and of some of Defendants' counsel, thus limiting travel-related costs.

**i. Finkelstein Thompson LLP**

Founded in 1977, Finkelstein Thompson LLP focuses on the nationwide prosecution of complex class action litigation, and has led antitrust class actions on behalf of individual and business clients for over twenty years. *See* Ex. 1 (firm resume). It currently serves in leadership positions in multiple antitrust class actions, including:

- *In re Domestic Drywall Antitrust Litig.*, MDL No. 2437 (E.D. Pa.): In this case, Finkelstein Thompson is one of three court-appointed co-lead counsel for a nationwide putative class of indirect purchasers of drywall seeking to recover overcharges from an alleged price fixing conspiracy. Thus far, Finkelstein Thompson and its co-counsel have negotiated $10.5 million in settlements from two defendants, *see In re Domestic Drywall Antitrust Litig.*, No. MDL No. 2437, 2015 U.S. Dist. LEXIS 110665, at *3 (E.D. Pa. Aug. 20, 2015), and defeated summary judgment motions filed by four of the five remaining defendants. *In re Domestic Drywall Antitrust Litig.*, No. MDL No. 2437, 2016 U.S. Dist. LEXIS 19487, at *17 (E.D. Pa. Feb. 18, 2016).
- *Kamakahi v. American Society of Reproductive Medicine, et al.*, No. 11cv1781 (N.D. Cal.): In this case, Finkelstein Thompson is one of two court-appointed co-lead counsel for a nationwide class of women donating eggs for reproductive purposes alleging the compensation they received was artificially suppressed by an anticompetitive agreement coordinated through two professional organizations. Following five years of litigation

and partial class certification, Finkelstein Thompson's clients moved for preliminary approval of a settlement on January 29, 2016.

- *In re Aluminum Warehousing Antitrust Litigation*¸ Case No. 13-md-02481-KBF (S.D.N.Y.): In this case, Finkelstein Thompson serves as co-lead counsel for a class of consumer end-users of products containing aluminum seeking to recover overcharges resulting from an alleged scheme to inflate the price of aluminum by limiting the supply available to the market.

Attorneys from the firm have served in leadership roles in numerous other antitrust cases over the years.[1] Moreover, the firm has been at the forefront of large-scale electronic discovery efforts in MDL actions for well over a decade, acting as co-lead counsel and co-chair of discovery in *In re Microsoft Corp. Antitrust Litigation*, MDL No. 1332 (D. Md.), a massive antitrust case filed in 2000 and alleging unlawful monopolization of the market for personal computer operating systems and certain software products. Since then, Finkelstein Thompson's attorneys have coordinated discovery efforts in numerous multi-state antitrust cases.[2]

---

[1] Exemplar leadership positions include: *In re Reformulated Gasoline (RFG) Antitrust & Patent Litig*., 05-1681 (C.D. Cal.) (co-lead counsel; antitrust violations in reformulated gasoline market); *Conroy v. 3m Corp.*, *et al.*, No. 00cv2810 (N.D. Cal.) (co-lead counsel; monopolization and vertical restraints of trade of 3M adhesive tape products); *Rodriguez v. W. Pub. Corp.*, 05cv3222 (N.D. Cal.) (co-class counsel; market division and monopoly claims in the exam preparation market); *In re Relafen Antitrust Litig.*, Master File No. 01-2222 (D. Mass.) (executive committee; unlawful monopolization in market for drug Relafen); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, MDL No. 1486 (N.D. Cal.) (executive committee; indirect purchaser action premised on price fixing in DRAM market); and *In re Modafinil Antitrust Litig.*, MDL 1797 (E.D. Pa.) (executive committee; alleging violations of federal antitrust law by delaying the launch of generic drugs).

[2] *See In re Digital Music Antitrust Litig.*, No. 06-1780 (S.D.N.Y.) (co-chair of discovery committee); *In re Intel Corp. Microprocessor Antitrust Litig.*, MDL No. 05-1717 (D. Del.) (third party discovery committee); *In re Relafen Antitrust Litig.*, No. 01-12239-WGY (D. Mass.) (executive committee); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL No. 1532 (D. Me.) (organized large-scale discovery); *In re Online DVD Rental Litig.,* MDL No. 09-

The firm's attorneys have also served in leadership positions in many other complex class actions outside of the antitrust field,[3] and courts regularly praise it for its class action expertise, quality work, and professionalism.[4] Recently, Judge Sweet of the Southern District of New York appointed Finkelstein Thompson, together with proposed co-lead counsel Lovell Stewart, as co-lead counsel for negligence class claims against NASDAQ in consolidated proceedings arising out of the botched Facebook IPO, acknowledging the firm possessed the necessary "experience

---

2029 (N.D. Cal.) (managed document, data, and deposition discovery for critical third party); *In re Ins. Brokerage Antitrust Litig.*, MDL No. 04-1663 (D.N.J.) (managed discovery for three critical parties); *In re Webkinz Antitrust Litig.*, MDL 1987 (N.D. Cal.) (discovery committee).

[3] Exemplar leadership positions include: *In re Natural Gas Commodity Litig.*, No. 03cv6186 (S.D.N.Y.) (co-lead counsel in commodities manipulation case with many similarities to an antitrust case); *In re Prudential Sec. Litig.*, MDL No. 1005 (S.D.N.Y.) (executive committee member and co chair of settlement committee in securities class action); *In re PaineWebber Sec. Litig.*, No. 94cv8547 (S.D.N.Y) (executive committee member in securities case); *Rudolph vs. UT Starcom, et al.*, No. 3:07-CV-04578-SI (N.D. Cal.) (sole lead counsel in a securities fraud class action); *In re Countrywide Fin. Corp. Customer Data Sec.*, MDL No. 1998 (W.D. Ky.) (co-lead counsel in data breach consumer class action case); *Schulte v. Fifth Third Bank*, No. 1:09-cv-06655 (N.D. Ill.) (co-lead counsel challenging bank overdraft fees as result of re-sequencing debit card transactions from highest to lowest order to maximize overdraft fee revenue); *Freeland v. Iridium World Commc'ns, Ltd.*, No. 99cv1002 (D.D.C.) (liaison counsel and executive committee member in securities fraud class action); *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203 (E.D. Pa.) (co-chair of the non-PMC litigation group prosecuting claims not initially advanced by the Plaintiffs' Management Committee); *In re Heartland Payment Sys. Inc. Customer Data Security Breach Litig.*, MDL No. 2046 (S.D. Tex.) (co-lead counsel in consumer class action); *In re Facebook PPC Advertising Litig.*, No. C 09-03043 JF (N.D. Cal.) (co-lead counsel in case alleging "click fraud"); *In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.*, MDL No. 1871 (E.D. Pa.) (plaintiffs' steering committee and co-chair of the class action sub-committee); and *In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, MDL No. 2226 (E.D. Ky.) (plaintiffs' steering committee).

[4] *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (acknowledging "that counsel had considerable experience in litigating antitrust matters, class actions, and other complex litigation"); *In re Interbank Funding Corp. Sec. Litig.*, No. 02-1490 (D.D.C.) (stating Finkelstein Thompson "skillfully, efficiently, and zealously represented the class, and . . . worked relentlessly throughout the course of the case"); *Freeland v. Iridium World Commc'ns*, No. CR 99-1002 (D.D.C.) (commending Finkelstein Thompson and co-counsel: "[a]ll of the attorneys in this case have done an outstanding job, and I really appreciate the quality of the work we had in our chambers as a result of this case.").

in leadership positions in complex class actions in antitrust, securities commodities and other complex economic cases and resources to advance the litigation." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 44 (S.D.N.Y. 2012). In that case, Proposed Co-Lead Counsel ultimately negotiated a $26.5 million settlement. In his opinion approving the settlement, Judge Sweet observed the settled actions "represent[ed] the first of their kind against a national securities exchange for losses resulting from trading in a listed security as a result of technical systems issues." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668, at *28-29 (S.D.N.Y. Nov. 9, 2015).

**ii. Lovell Stewart**

Lovell Stewart attorneys have extensive experience with antitrust claims, having first successfully tried competition claims during 1979-1980 and antitrust claims during 1983. See Ex. 2 (firm resume); *Strobl v. New York Mercantile Exch.*, 582 F. Supp. 770 (S.D.N.Y. 1984), *aff'd*, 768 F.2d 22 (2d Cir. 1985), *cert. denied sub nom., Simplot v. Strobl*, 474 U.S. 1006 (1985). The Firm has since successfully handled numerous antitrust class actions including what was, at the time, the largest antitrust class action antitrust settlement in the history of the US antitrust laws. *In re Nasdaq Market Makers Antitrust Litigation*, M.D.L. No. 123 (S.D.N.Y.)).

In successfully prosecuting numerous antitrust class actions, including successful trial work, the Firm has developed substantial resources including proprietary documentary search software and the financial wherewithal to advance substantial costs (including more than $2 million in at least one prior case). If selected as interim class counsel, the firm is prepared to advance such costs and devote its significant resources to this action as well. Lovell Stewart's senior partner, Christopher Lovell, who has repeatedly tried antitrust cases and argued such cases

in various Court of Appeals and, (one time) the US Supreme Court will be personally working on and supervising the Firm's efforts in this case if Lovell Stewart is appointed.

**d. Rule 23(g)(1)(A)(iii): Proposed Co-Lead Counsel Possess Extensive Knowledge of the Applicable Law**

As the above discussion demonstrates, Proposed Co-Lead Counsel's established track record of litigating cases arising under antitrust laws supplements its broad general knowledge of the procedural law governing class action litigation. The firms regularly litigate complex actions alleging monopolization, price fixing, and other anticompetitive practices under both federal and state law. Their focus on complex class actions, coupled with its many years of experience, easily satisfy the third Rule 23(g) factor. *See Steele v. United States*, 2015 U.S. Dist. LEXIS 85018 (D.D.C. 2015) (Fed. R. Civ. P. 23(g)(1)(A)(iii) satisfied where "both groups of attorneys appear to have a strong command of the applicable law.")

**e. Rule 23(g)(1)(A)(iv): The Resources That Counsel Will Commit to Representing the Class**

Finkelstein Thompson's track record of effective prosecution of complex class actions reflects its willingness to commit the resources and time necessary to effectively prosecute this case. Indeed, the firm regularly prosecutes cases lasting many years and requiring significant commitment.[5] Finkelstein Thompson fully expects that similarly extensive resources will be required in this case, and the firm is prepared to invest those resources on behalf of the Class. Indeed, it has done just that in the years since it filed this case.

---

[5] *See, e.g., Freeland v. Iridium World Communications, Ltd., et al.*, Case No. 99-1002 (D.D.C) (nine years of litigation leading to $43.1 million settlement); *In re Natural Gas Commodity Litig.*, Case No. 03-616 (S.D.N.Y.) (four years of litigation leading to final approval of over $100 million in settlements); *Heliotrope Gen., Inc. v. Sumitomo Corp., et al.*, Case No. 701679 (Cal. Super- San Diego) (over six years of litigation leading to approval of over $100 million in settlements).

Similarly, Lovell Stewart has more than ample resources – economic and otherwise – to litigate this case. For example, Lovell Stewart has previously advanced almost $3 million in expenses in *In re IPO Sec. Litig*., No. 21 MC 92 (S.D.N.Y.) (SAS), which litigation was settled for $584 million. The court should accordingly be "satisfied that both groups of attorneys have significant resources that they are willing to commit to representing the putative class." *Steele v. United States*, 2015 U.S. Dist. LEXIS 85018 (D.D.C. 2015).

**f. Additional Considerations Support The Appointment Of Proposed Counsel.**

While the Federal Rules of Civil Procedure establish mandatory criteria for the Court to consider in making a leadership appointment, it also permits the Court to "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In these cases, proposed interim counsel for three separate classes will need to work closely with each other to coordinate discovery, motions practice, and other matters of common interest. Thus far in this litigation, Finkelstein Thompson has sought to work cooperatively with counsel for the other putative classes to advance this litigation. In particular, it worked closely with the other counsel during the appellate process, both in drafting the briefs and in preparing for the oral argument, thereby successfully reversing the earlier dismissal and permitting these cases to proceed.

In this regard, Proposed Co-Lead Counsel has a long history of working cooperatively in coordinated proceedings involving multiple plaintiff groups. For example, in *In re Domestic Drywall Antitrust Litig.*, MDL No. 2437 (E.D. Pa.), Finkelstein Thompson is prosecuting claims on behalf of indirect purchasers of drywall alongside a putative class of direct purchasers and a separate group of individual homebuilders. In approving settlements with two defendants, Judge Balyson observed that "[t]o their credit, counsel are working together in document analysis, and

depositions, and this, of course, is expected and reasonable to provide maximum efficiency in the prosecution of these cases so that maximum recovery can be generated." *In re Domestic Drywall Antitrust Litig*., No. MDL No. 2437, 2015 U.S. Dist. LEXIS 110665, at *19 (E.D. Pa. Aug. 20, 2015). Similarly, in *In re Aluminum Warehousing Antitrust Litigation*¸ Case No. 13-md-02481-KBF (S.D.N.Y.), Finkelstein Thompson and its co-counsel represent one of three putative classes whose claims are being pursued in that consolidated MDL; Lovell Stewart represent another. And, in *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 44 (S.D.N.Y. 2012), both Proposed Co-Lead Counsel firms successfully represented a class of Facebook investors alleging negligence claims against NASDAQ in an MDL also containing two separate securities fraud actions as well as related derivative actions.

Proposed Co-Lead Counsel also have longstanding relationships with some of the attorneys in both the Bank-Owned consumer case and in the ATM Operators case, and has sought to work cooperatively and collectively with both plaintiff groups. It intends to make every effort to continue these cooperative efforts going forward, to the ultimate benefit of all parties, as well as the Court.

## IV. CONCLUSION

Given the extensive experience of Proposed Co-Lead Counsel, as well as the efforts they have already expended in this case, Proposed Co-Lead Counsel easily qualify to be appointed as interim class counsel for the putative class they have diligently represented since 2011. This Court should so appoint them, and permit these cases to proceed.

Dated: March 18, 2016

Respectfully submitted,

/s/ Michael G. McLellan

Michael G. McLellan (D.C. Bar # 489217)
mmclellan@finkelsteinthompson.com
Douglas G. Thompson (D.C. Bar # 172387)

dthompson@finkelsteinthompson.com
FINKELSTEIN THOMPSON LLP
James Place
1077 30th Street, N.W., Suite 150
Washington, D.C. 20007
Telephone: 202-337-8000
Facsimile: 202-337-8090

Christopher Lovell (*pro hac vice* forthcoming)
clovell@lshllp.com
Gary S. Jacobson (*pro hac vice* forthcoming)
gsjacobson@lshllp.com
Jody R. Krisiloff (*pro hac vice* forthcoming)
jkrisiloff@lshllp.com
LOVELL STEWART HALEBIAN
JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

*Proposed Interim Class Counsel for the Independent ATM Consumers*