**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDREW MACKMIN, *et al.*,<br><br>*Plaintiffs*,<br>*v.*<br><br>VISA INC., *et al.*,<br><br>*Defendants*. | Civil Action No. 1:11-Cv-1831-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |
| MARY STOUMBOS,<br><br>*Plaintiff*,<br><br>*v.*<br><br>VISA INC., *et al.*,<br><br>*Defendants*. | Civil Action No. 1:11-Cv-1882-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |

**JOINT STATUS REPORT**
**REGARDING DISCOVERY AND CASE MANAGEMENT ISSUES TO DISCUSS AT THE UPCOMING MAY 18 CONFERENCE**

The parties in the two captioned cases respectfully submit the following Joint Status Report[1] regarding discovery and case management issues they wish to discuss with the Court at the upcoming May 18, 2018 discovery management conference.

---

[1] Defendants requested that the Plaintiffs groups in these three cases—*National ATM Council*, *Stoumbos*, and *Mackmin*—coordinate on a single joint status report as a matter of efficiency. The Consumer Plaintiffs (*Stoumbos* and *Mackmin* cases) agreed to a single joint status report. The Plaintiffs in the *National ATM Council* declined, and they have filed a separate report. *See* Dkt No. 125, Case No. 1:11-cv-01803-RJL.

# I. INTRODUCTION

**Consumer Plaintiffs' Position**

As discussed further below, at the May 18 conference, the Consumer Plaintiffs will ask the Court to: (1) establish a deadline for the substantial completion of Defendants' document and data productions;[2] and (2) extend the class certification deadlines by four months to allow the Consumer Plaintiffs an adequate opportunity to review and analyze those document and data productions, conduct necessary further discovery, and properly prepare their respective class certification motions.

Defendants began producing documents collected for this case a few weeks ago,[3] and have represented they will "endeavor" to substantially complete that production by mid-July. To date, Defendants' productions combined consist of a total of 15,350 documents (183,763 pages). With respect to data—critical to the Consumer Plaintiffs' class certification motions and broader merits arguments, *see* 1/12/17 Hrg. Tr. at 35:8-10—Defendants have not yet even begun production. This is despite Consumer Plaintiffs' diligent efforts to obtain basic, but critical, information regarding the data in Defendants' possession, custody, or control.

It is this current status of Defendants' production that forces the Consumer Plaintiffs to seek the Court's assistance with the two requests above. First, it is now apparent that, without interim deadlines for completion of production, there is little certainty as to when Defendants will provide the documents necessary for Plaintiffs' class certification motion. Dates for the substantial completion of document productions are appropriate here, where the discovery parameters are set and the parties are facing important deadlines. Defendants observe that the

2 Consumer Plaintiffs will, of course, abide by the same deadline.

3 The only exception to this are 3,304 documents (out of the 5,623 documents produced in total to date) that Visa and MasterCard provided in 2017 that were reproduction of documents Visa and MasterCard had produced in previous litigations.

Court did not incorporate interim deadlines in its January 2018 Scheduling Order – but the landscape has since changed. Plaintiffs then requested interim deadlines to manage discovery, a concern which the Court addressed by establishing regular discovery conferences. Now, Plaintiffs require interim deadlines to ensure appropriate certainty in planning to file their class certification motions given the current state of discovery. In fact, in arguing against interim deadlines before, Defendants said they were unworkable because "the parties have not yet agreed on custodians and search terms," and therefore "defendants cannot reasonably approximate the volume of documents to be collected and reviewed, let alone approximate how long the production will take to complete." Dkt. No. 131 at 4. Now, with discovery parameters agreed, nothing stands in the way of setting substantial completion of production deadlines.

Second, the current state of Defendants' production has also rendered the class certification motion deadline of September 28 untenable, even *if* Defendants were to commit to a firm July 16, 2018 production deadline. Defendants' own submission highlights the unreasonableness of the current schedule in light of the discovery to date: Consumer Plaintiffs would have to complete the document review, prepare for and take up to thirty depositions (especially with anticipated difficulties in scheduling summer depositions), and analyze the data necessary to model classwide impact within nine weeks. The Consumer Plaintiffs therefore seek a date certain by which Defendants' productions of documents and data will be completed and a slight modification to the class certification briefing schedule to allow the Consumer Plaintiffs sufficient time to prepare their respective motions.

**Defendants' Position**

Plaintiffs' request attempts to re-litigate the scheduling order entered by the Court only three months ago. The Consumer Plaintiffs then argued that the scheduling order should include

interim deadlines, such as a date for the substantial completion of document productions. The Court did not accept Consumer Plaintiffs' proposal. Instead, this Court's January 2018 scheduling order establishes a deadline for the completion of fact discovery but otherwise encourages the parties to cooperate in good faith on the sequencing of discovery without imposing interim deadlines. Defendants have done precisely that and no particularized discovery disputes have been brought before the Court since discovery commenced.

There is no reason to reopen the structure of the scheduling order at this time, and plaintiffs have articulated none. The scope of documents for Defendants to search and review in response to Plaintiffs' discovery requests—based on custodians, non-custodial document sources, and search terms—has been the subject of active negotiations among the parties for many months and have only recently concluded with a series of agreements among the parties. Now that those search parameters are set, Defendants have begun to make rolling productions of custodial documents, and currently are on track to substantially complete document production by July 16 of this year.

Consumer Plaintiffs also are wrong to criticize Defendants as to the pace of data productions. Defendants have provided Plaintiffs with information about the data they are able to produce in response to Plaintiffs' requests, but Plaintiffs have yet to state whether they are willing to accept the kinds of data that certain Defendants have offered to produce. Even so, Defendants have estimated that by July 16 they will be able to produce data from the sources Defendants have identified and offered to produce from. That is five months before the deadline set by this Court to complete fact discovery, and more than two months before Consumer Plaintiffs' deadline to file their opening class certification brief.

Defendants too are concerned about the status of Consumer Plaintiffs' discovery responses, but do not seek to reopen the scheduling order to address those concerns. For example, Consumer Plaintiffs have not yet provided key information sought by the Network Defendants' interrogatories, such as the time periods during which Consumer Plaintiffs possessed ATM cards and descriptions of the ATMs they used. Consumer Plaintiffs also have made improper unilateral redactions to the few documents they produced. Although Consumer Plaintiffs have not been willing to remedy these issues so far, Defendants believe the parties should continue to work to reach resolution without seeking redress from the Court.

Defendants have no objection to a modest extension of the deadlines for class certification and fact discovery, should the Court determine that it is warranted. Indeed, Defendants offered to work toward an agreement with Plaintiffs on their requested extension to avoid unnecessarily burdening the Court. But Defendants saw no need to add to the scheduling order deadlines, such as the substantial completion of document productions, which will only precipitate further discovery disputes. The Consumer Plaintiffs declined Defendants' proposal.

Should the Court decide to extend the deadlines to file class certification briefing, Defendants respectfully submit that the briefing should proceed simultaneously across the three cases—not in the staggered manner plaintiffs apparently contemplate. Staggered briefing would confound the Court's scheduling order, which requires that all Plaintiffs in these related cases seek class certification "on the same schedule." Doc. 118 ¶ 3. A simultaneous briefing schedule delivers obvious efficiencies to the Court and the parties. By contrast, Plaintiffs' staggered approach will lead to overlapping expert reports and briefs; it serves no purpose other than to disguise the inconsistencies in the economic theories of different plaintiffs. At a minimum, the

deadline to file responsive briefs should be triggered by the last date on which the three Plaintiffs groups serves its opening brief.

## II. <u>Status of Defendants' Productions</u>

### <u>Consumer Plaintiffs' Position</u>

The Consumer Plaintiffs served their Requests for Production in April 2017. Since then, they have conducted many rounds of meet and confers, discovery correspondence, and other discussions regarding the scope of Defendants' document and data productions. After extensive negotiations, the parties reached agreement on the scope of Defendants' documents productions at various points from February through April 2018. They are still engaged in some minor negotiations over the scope of some Defendants' data productions, but have largely agreed on the scope of those as well. Defendants suggestion below that they are waiting for Consumer Plaintiffs to respond to certain data production proposals is incorrect. The scope of data production is largely agreed, subject to resolving a few additional questions.[4]

To date, Defendants' productions consist of the following:

*Visa Defendants*: 12,482 documents total produced (121,741 pages), including a reproduction of 2,920 documents (22,339 pages) that Visa had previously produced in other litigations. On March 30, 2018, Visa produced data samples from certain of its transactional and billing databases. The samples were largely indecipherable, however, because Visa failed to provide the manuals needed to decode and interpret the data. Plaintiffs promptly requested those

---

[4] MasterCard's claim that the Consumer Plaintiffs failed to "engage meaningfully" regarding an index listing its data fields "for eight months" dramatically misstates the history. The index MasterCard provided on July 24, 2017 could not be assessed adequately until MasterCard provided additional information, which Plaintiffs promptly and specifically requested on August 17, 2017, and then again on September 22, 2017, November 8, 2017, and December 12, 2017. Despite Plaintiffs' multiple requests, MasterCard doled out responses in slow, incremental fashion over the next several months.

materials, which were not provided in full until yesterday, May 14. Plaintiffs are currently analyzing the contents of Visa's data sample with the assistance of these interpretive materials.

*MasterCard Defendants*: 1,484 documents total produced (45,501 pages), including a reproduction of 384 documents (2,808 pages) that MasterCard had previously produced in other litigations. MasterCard has promised to produce transactional and billing data samples "promptly," but that production has yet to occur.

*Chase Defendants*: 104 documents total produced (7,019 pages). Chase has produced no transactional or billing data, whether in full or samples thereof.

*Bank of America Defendants*: 301 documents total produced (4,605 pages). Bank of America has produced no transactional or billing data, either in full or any samples thereof.

*Wells Fargo Defendants*: 979 documents total produced (4,897 pages). Wells Fargo has produced two samples of its transactional data to Plaintiffs, on March 16 and 23, 2018. However, Wells Fargo did not provide adequate explanations of all the fields included in the produced sample, which prevented a meaningful evaluation of the data. The Consumer Plaintiffs are still attempting to obtain clarifications on certain outstanding issues with the data samples. In addition, requests for other data-related information, including information about Wells Fargo's interchange fee data necessary to the Consumer Plaintiffs' damages modeling, have been pending for months.

**Defendants' Position**

Over the course of multiple meet and confers and informational letters, Defendants promptly answered Plaintiffs' inquiries regarding potential custodians (including requests for information about the roles and responsibilities of dozens of employees going back to 1995) and worked to identify mutually acceptable search terms (which Defendants took the lead in

developing, but then had to wait over a month for Plaintiffs to respond). Defendants ultimately reached agreements with Plaintiffs on custodians and search terms between February and late April 2018. Before those agreements were reached, Defendants could not know the scope of documents they would need to review, much less provide a meaningful estimate of how long it would take to review them.

After the relevant custodian and search term parameters were set, Defendants were able to identify the appropriate documents for collection and review. Defendants began producing documents in late April 2018 and, at Plaintiffs' request, have agreed to continue making productions on a rolling basis.

With respect to data, each Defendant has provided Plaintiffs with information—in narrative form, through sample extracts, or both—about the data it is able to produce in response to Plaintiffs' requests. Plaintiffs have asked for additional, technical details about the data that, in some cases, have proved difficult and time consuming to collect, and, in other cases, simply do not exist. In some circumstances, Plaintiffs have repeated questions that Defendants already addressed in prior correspondence. Plaintiffs have yet to state whether they are willing to accept the kinds of data that certain Defendants have offered to produce, and recently noted that their experts have not provided comments on data proposals that certain Defendants extended months ago.[5]

Although Defendants are still reviewing documents and certain Defendants remain uncertain which data they will be asked to produce, Defendants have proposed a reasonable discovery timeline in good faith—exactly what is expected of parties in litigation—that they will

---

[5] For example, Mastercard sent plaintiffs an index listing the data fields available in Mastercard's transaction databases relevant to the plaintiffs' requests in July 2017; Plaintiffs failed to engage meaningfully with this index for eight months and finally agreed to review a sample report of Mastercard's proposal only last week.

be able to substantially complete their productions of documents, as well as data from the sources Defendants have identified and offered to produce from, by July 16, 2018. Defendants have further agreed to use best efforts to complete their reviews of documents that were initially marked as privileged by the end of July 2018, reducing to two weeks a privilege review process that commonly takes more than a month.[6]

Plaintiffs' demand for court intervention at this juncture is unnecessary and inconsistent with the Court's direction to the parties to amicably resolve discovery disputes.

## III. <u>Status of Plaintiffs' Productions</u>

### <u>Defendants' Position</u>

Despite committing to only a limited production of documents in their RFP responses (which they served in May 2017), the Stoumbos and Mackmin Plaintiffs waited more than ten and seven months, respectively, to produce any documents. To date, Consumer Plaintiffs have produced a total of 338 documents, the vast majority many of which contain significant unilateral "relevance" redactions that obscure information important to this case.[7] In their production of bank statements (which constitutes the bulk of their productions), Consumer Plaintiffs unilaterally redacted all information other than certain ATM transactions they deemed relevant. Defendants first questioned these redactions on February 8, have repeatedly objected to further redactions (including on April 6, April 13, and May 3), and requested that Consumer Plaintiffs provide a basis in law for their decision to impose unilateral redactions for responsiveness. They have not done so, which is not surprising given that "the Federal Rules of Civil Procedure do not grant parties the power to unilaterally redact information on the basis of

---

6 The parties have also issued third-party subpoenas to more than 20 ATM networks and processors. The parties have worked cooperatively to obtain information from these entities regarding surcharging rules in the industry, surcharge and fee data, as well as other relevant information.

7 Stoumbos plaintiff's entire production thus far consists of four pages.

relevance." *Bartholomew* v. *Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 452 (D. Minn. 2011). Unilateral redactions for relevance are especially improper here, where the parties agreed to, and this Court entered, a robust protective order. *See* Case 1:11-cv-01882, Dkt. No. 61.

Consumer Plaintiffs also state that they do not possess any ATM receipts or certain original retention agreements with counsel. Consumer Plaintiffs also have not responded meaningfully to certain interrogatories, including about (1) time periods during which plaintiffs had ATM cards, (2) descriptions of ATMs plaintiffs used, (3) amount of surcharges and fees plaintiffs paid to their banks for ATM transactions, (4) instances in which plaintiffs chose not to complete ATM transactions, (5) factors plaintiffs consider when choosing banks, and (6) descriptions of plaintiffs' deposit accounts (such as the features and services, and the type and amount of fees plaintiffs have paid or been assessed relating to the account).

Defendants intend to continue to discuss these issues with Consumer Plaintiffs.

**Consumer Plaintiffs' Position**

Consumer Plaintiffs agree with Defendants that no issues related to discovery of Consumer Plaintiffs require the Court's attention, but set forth the below by way of background.

Document Production. Consumer Plaintiffs first set forth the scope of their intended document production in their May 2017 responses to Defendants' discovery requests. Defendants failed to raise any concerns with (or even address) this proposed scope for six months (for *Mackmin*)[8] and eight and a half months (for *Stoumbos*). In December 2017, the *Mackmin* Plaintiffs have produced the bulk of their documents. Consumer Plaintiffs produced

---

[8] For example, Bank Defendants did not initiate meet and confer proceedings related to discovery of the *Mackmin* Plaintiffs until November 2017, six months after receipt of Plaintiffs' discovery responses in May 2017. *Mackmin* Plaintiffs responded to Bank Defendants' correspondence within a matter of days in December 2017, and received no further communication until May 2018. Visa and MasterCard initiated meet and confer proceedings in February 2018, nine months after receipt of *Mackmin* Plaintiffs' discovery responses. *Mackmin* Plaintiffs responded in a matter of days, but Defendants did not reply until three months later, in May 2018.

additional documents in April 2018. The *Mackmin* plaintiffs' productions are now substantially complete and the *Stoumbos* plaintiff will substantially complete her production by the proposed production deadline.

Defendants point out two categories of documents the Consumer Plaintiffs have not produced – ATM receipts and the original retention agreements with counsel. These are nonissues. Plaintiffs do not have any receipts in their possession, custody or control. Five months ago, Plaintiffs asked Defendants to identify any information included in an ATM receipt that is not also included in bank statements that Plaintiffs have produced.[9] There has been no response. Nor have Defendants identified the relevance of ATM receipts to Plaintiffs' standing, adequacy or typicality. Further, Plaintiffs have explained to Defendants that one Plaintiff's retainer agreement was misplaced. The earlier 2011 agreement was identical in its terms to the 2013 retainer agreement that Plaintiffs did produce to Defendants.

Redactions of Personal Sensitive Information. The Consumer Plaintiffs' bank statements do not contain "relevance" redactions. Plaintiffs have made these redactions to protect the privacy of their sensitive financial information *not* related to ATMs, such as payments by check. Defendants themselves have indicated they will be redacting or otherwise omitting personal identifying information from the data they produce.

There also is no prejudice caused by Plaintiffs' redactions. Defendants have consistently taken the position that non-ATM transactions are irrelevant and have objected to producing information related to non-ATM transactions. Importantly, Plaintiffs have left unredacted any transactions or fees involving an ATM card or ATM card-facilitated cash withdrawal, such as

[9] As to the *Mackmin* Plaintiffs, whatever information is sought primarily concerns Plaintiffs' bank accounts with Defendants Bank of America and Chase, and thus is already in Defendants' collective possession.

cash-back transactions at the point of sale. In addition, Plaintiffs have produced any reversed transactions, such as credits for ATM fees.

Interrogatory responses. The issues Defendants have raised concerning Plaintiffs' interrogatory responses are either matters that are reflected in Plaintiffs' already produced bank statements pursuant to Federal Rule of Civil Procedure 33(d) or to which Plaintiffs have objected on the basis of relevance, proportionality, or undue burden.

## IV. Plaintiffs' Request to Revise the Scheduling Order

### A. Substantial Completion Deadline for Document and Data Productions

**Consumer Plaintiffs' Position**

In March 2018, Plaintiffs asked Defendants to confirm they would substantially complete their document and data productions by the end of April to ensure Plaintiffs had sufficient time to prepare for the impending class certification deadlines at the end of the summer. Defendants refused. After additional negotiations, Defendants finally represented that they would "endeavor" to substantially complete custodial and non-custodial productions by July 16, 2018 – two and a half months after Plaintiffs' proposed date, which was designed to allow Plaintiffs to file their class certification motions consistent with the schedule ordered by the Court. Defendants also stated they would "endeavor" to produce by mid-July data from already-identified sources. As to the production of non-privileged, responsive documents initially mistakenly withheld on the basis of privilege (*i.e.*, documents that Defendants recognize were erroneously marked privileged on first review), Defendants offered to "use best efforts" to complete the "review" of any such documents by the end of July.

Defendants' assurance that they "have every intention of meeting the timeline they have proffered" is of little comfort when Plaintiffs are faced with hard deadlines for class certification

and other case events. If Defendants feel secure they can meet the July 16 deadline they propose, then there is no reason to oppose having the Court enter those commitments as deadlines. Given the passage of time since Plaintiffs first sought the entry of such deadlines and the status of this litigation, production deadlines are not only appropriate, they are essential to ensure Plaintiffs are not prejudiced.

The Consumer Plaintiffs have tried to resolve this issue without burdening the Court. However, the Defendants' continued refusal to provide dates-certain prejudices by which they will substantially complete their productions Consumer Plaintiffs by injecting the case schedule with uncertainty. For these reasons, the Consumer Plaintiffs respectfully request that the Court establish the following deadlines:

- Substantial completion of document and data productions by July 16, 2018; and
- Production of documents initially, but incorrectly, withheld on privilege grounds by July 31, 2018.

**Defendants' Position**

As Plaintiffs' position above makes clear, Plaintiffs have not contended (and do not contend now) that Defendants' proposed timeline for the production of documents and data is unreasonable. And Defendants have every intention of meeting the timeline they have proffered, which was communicated to Plaintiffs after much examination and deliberation, including with our clients and document review vendors.

In a nutshell, Plaintiffs are simply re-litigating issues that were directly addressed by the Court in February. In the parties' last status report, Plaintiffs argued, as they do here, that the case schedule should include a "deadline for substantial completion of document production." Doc. 117 at 3. Plaintiffs' proposed case schedule included such a deadline. *Id.* Defendants

responded that an overall deadline for completing fact discovery would be sufficient to discourage delay, while giving the parties room to negotiate interim timing and other discovery matters in good faith. *Id.* at 4. Defendants further argued that interim deadlines had the potential to create inconvenience, expense, and burdens on the Court should the parties have disputes over those deadlines. *Id.* Defendants' proposed case schedule did not include a deadline for substantial completion of document production. *Id.* The Court adopted Defendants' proposal on this issue. Doc. 118 ¶ 2.

There is no reason to revisit the Court's prior decision. The discovery process has worked as expected: the parties have cooperated to set parameters for discovery, and Defendants have provided good faith estimates of when productions could be completed once they had sufficient information about agreed custodians and search terms to do so. Plaintiffs' unsupported implication that Defendants will somehow flout the proposed timing absent an order from the Court is an effort to manufacture a dispute where none exists. Consumer Plaintiffs identify no change in circumstances that would warrant reverting from good faith negotiations to Court-imposed interim deadlines—an approach previously considered and rejected by the Court.[10]

**B. Class Certification Deadline**

**<u>Consumer Plaintiffs' Position</u>**

Given the nascent state of Defendants' document and data productions, the current schedule does not provide the Consumer Plaintiffs enough time to reasonably prepare their respective class certification motions even if production is substantially complete by the

[10] If this Court adopts interim deadlines, Defendants request that they apply reciprocally to all parties and that they include a deadline for Plaintiffs to respond with a final, concrete data counter-proposal (using the data fields Defendants have already supplied) well in advance of any deadline for producing data.

requested deadlines. For that reason, Consumer Plaintiffs seek a four month extension of all class certification deadlines.

As the D.C. Circuit has previously observed, class certification is a detailed inquiry that is far from automatic. "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *In re Rail Freight Fuel Surcharge Antitrust Litig*.,725 F.3d 244, 249 (D.C. Cir. 2013) (quoting *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2552 (2011)). Oftentimes, this inquiry resembles an appraisal of the merits, for "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.*

Given this burden, when plaintiffs "lack[] the information to file their motion for class certification, the proper approach [is] to request an extension of time to file their motion." *Gerlich v. U.S. Dep't of Justice*, No. 08-1134, 2010 WL 11595271, at *3 (D.D.C. Apr. 19, 2010); *see also Sakyi v. Estee Lauder Cos*., No. 17-1863, 2018 U.S. Dist. LEXIS 19681, at *8 (D.D.C. February 6, 2018) (noting "the absence of discovery . . . favor[s] granting an extension" of a class certification deadline). Good cause for extending the class certification deadline may be shown when the plaintiffs did not cause the delay, *Mercado v. HFC Collection Ctr.*, No. 3:12-cv-122, 2012 WL 1788163, at *1-2 (M.D. Fla. May 16, 2012), or where the plaintiff has difficulty in obtaining information during discovery. *See Kostmayer Constr., LLC v. Port Pipe & Tube, Inc.*, No. 2:16-2012, 2017 WL 5079181, at *9 (W.D. La. Nov. 1, 2017).

Under the current schedule, Plaintiffs' class certification motion is due September 28, 2018. Even if Defendants produce their documents and data by July 16, 2018 as proposed by the Consumer Plaintiffs, that would allow the Consumer Plaintiffs barely two and a half months to

take up to 30 depositions, analyze substantial amounts of data from Defendants and third parties, prepare the reports necessary to support the Consumer Plaintiffs' motions, *and* write the class certification motion and its ancillary filings.[11]

In order to avoid burdening the Court with more than a year's worth of correspondence with five sets of Defendants, the Consumer Plaintiffs will not fully recount the minutiae of their diligent discovery negotiations. Should it become necessary for this discussion, the written record is clear that the Consumer Plaintiffs have attempted in good faith to reach amicable resolutions and compromises on all major discovery disputes, and, as a result, the Consumer Plaintiffs have not sought Court intervention on any discovery-related issue until now.[12] However, given the current status set forth above, it is in the interest of justice to give Consumer Plaintiffs the extension they request.

Plaintiffs asked Defendants to agree to a reasonable extension to the class certification schedule. While Defendants raised no substantive objections to the request, they indicated they would only agree to an extension if Plaintiffs agreed (1) to request jointly with Defendants that this Court postpone the May 18, 2018 discovery conference to some undetermined future date, and (2) not to seek any definitive deadline for the substantial completion of the parties' productions of documents and data. Because the Consumer Plaintiffs agree with the Court that regular conferences on the state of discovery will ensure this case proceeds to resolution in an expeditious and fair manner, and that the production deadlines requested are necessary and

---

11 That the Operator Plaintiffs believe they can be prepared to move for class certification on a more condensed schedule says nothing about the Consumer Plaintiffs. The Operator Plaintiffs have articulated in their separate submission why they believe their class certification motion should proceed on a different schedule, and the Consumer Plaintiffs take no position on that issue. However, the Consumer Plaintiffs are not bound by how the ATM Operator Plaintiffs intend to approach issues of proof classwide impact, as their class definitions do not overlap.

12 Defendants' unsupported suggestions that Plaintiffs delayed responses during discovery negotiations or caused delays by failing to solicit Plaintiffs' experts' views on data sets are unsubstantiated and wrong. If the Court wishes, the Consumer Plaintiffs are willing to provide the full record belying Defendants' assertions.

proper, the Consumer Plaintiffs could not assent to either condition. Accordingly, Consumer Plaintiffs declined Defendants' proposal and stated they would put this issue on the agenda for the conference.

**Defendants' Position**

Consumer Plaintiffs fail to explain why the time they currently have—which includes two and a half months to review documents as they are produced on a rolling basis and another two and a half months once production is substantially complete before filing their class certification motions—is inadequate.[13] Consumer Plaintiffs note that they could take "up to 30 depositions" in this case, but they do not attempt to show why that number of depositions (that is, treble the number contemplated by the Federal Rules and *all* of the depositions Plaintiffs are entitled to take under the operative scheduling order) is necessary to the class certification inquiry in this matter. The ATM Access Fee Rules at issue in all three cases have been in place since the mid-1990s, and Plaintiffs' experts will have at least 2.5 months with Defendants' transactional data prior to the current class cert motion deadline. *See* Jan. 12, 2017 Status Conf. Tr. at 33:24–34:12.

Consumer Plaintiffs have known of the case schedule since February. If they believed that an earlier production from defendants was necessary to meet their class certification motions deadline, they could have sought less extensive information about potential custodians, responded to search term proposals more quickly, and, at a minimum, indicated whether they would accept the data that Defendants have offered to produce (or at least have already solicited

[13] In February, the Court ordered that Plaintiffs move for class certification within eight months of the scheduling order. Plaintiffs now request an additional four months to move for class certification—for a total of six and a half months *after* Defendants substantially complete their productions in mid-July. The original scheduling order never contemplated this inordinate amount of time post-substantial completion and pre-filing of the class certification motion. If it had, to permit Plaintiffs this amount of time, Defendants would have needed to substantially complete all productions less than one and a half months after the Court issued the scheduling order.

the views of their experts on the adequacy of those proposals). Having chosen to do none of those things, Consumer Plaintiffs cannot now claim that they are unduly prejudiced by timing consequences of their own making.

Moreover, that the Operator Plaintiffs are prepared to move for class certification on Your Honor's current schedule (that is, 2.5 months from substantial completion of Defendants' document and data productions in July) is further evidence that no delay is warranted and that Consumer Plaintiffs' request to extend the class certification deadline has nothing to do with the pace of Defendants' productions. After all, the three plaintiff classes (ATM operators, consumers at bank ATMs, and consumers at independent ATMs) are challenging the same ATM Access Fee Rules and, presumably, would each be presenting alternative scenarios "but-for" the rules in their class certification motions. There is no reason—and none is articulated—why Consumer Plaintiffs need more than twice as much time to accomplish this task. After all, this case has been pending since 2011 and all plaintiffs have surely considered the foundations of their class certification applications.

The authorities Plaintiffs reference to support their request are readily distinguishable and do not favor an extension where, as here, Defendants have diligently cooperated with Plaintiffs and expect to substantially complete their productions months before Plaintiffs' class certification motion is due. *See Sakyi v. Estee Lauder Cos.*, No. 17-1863 (BAH), 2018 WL 746088, at *3 (D.D.C. Feb. 6, 2018) ("absence of discovery"); *Kostmayer Constr., LLC v. Port Pipe & Tube, Inc.*, No. 2:16-2012, 2017 WL 5079181, at *8 (W.D. La. Nov. 1, 2017) (case had been transferred and discovery stayed); *Mercado v. HFC Collection Ctr.*, No. 3:12-cv-122, 2012 WL 1788163, at *1–2 (M.D. Fla. May 16, 2012) (defendant's counsel was unavailable for depositions for over three months). Plaintiffs' request to move the class certification deadline is

simply another bite at arguing that Plaintiffs should not have to move for class certification until all fact discovery is completed—an argument the Court also rejected in the scheduling order and has not adopted in other antitrust class actions. *See* Scheduling Order, Dkt. No. 48, *In re Nifedipine Antitrust Litig.*, MDL No. 1515 (D.D.C.) (Leon, J.) (requiring class certification motion to be filed at least one year before the close of fact discovery); Scheduling Order, Dkt. No. 22, *Dominguez v. UAL Corp.*, Civil Case No. 07-0418 (D.D.C.) (Leon, J.) (requiring, in relatively less complex antitrust case, class certification motion to be filed almost two months before the close of fact discovery).

All that said, in an effort at compromise, Defendants informed Consumer Plaintiffs that Defendants were prepared to agree to some manner of extension of the deadlines for class certification motions and to complete fact discovery, as long as (1) the case schedule otherwise remained the same (*i.e.*, no new interim deadlines were added for the substantial completion of document productions), and (2) the parties would seek to defer the case management conference so they could continue to work together on discovery issues and not burden the Court with premature discovery disputes. Consumer Plaintiffs declined Defendants' proposal.

Should the Court consider an extension of the class certification deadlines, Defendants believe that they should not respond to Plaintiffs' various class certification motions in a staggered fashion. Defendants recently learned that the Operator Plaintiffs intend to file their opening class certification brief on the current filing deadline of September 2018 and expect Defendants to file an opposition brief within 90 days, which means Visa and Mastercard would need to oppose the Operator Plaintiffs' class certification motion before the Consumer Plaintiffs file their opening brief. That approach would create burdens and inefficiencies for the Court (to say nothing of Defendants). The consolidation of these cases was intended to prevent precisely

such inefficiencies, including unnecessarily numerous and overlapping class expert reports and briefing. Staggered class certification briefing would thus flout this Court's scheduling order, which requires that all Plaintiffs file any motion for class certification "on the same schedule," Doc. 118 ¶ 3, and this Court's stated intent to "move simultaneously with the three cases." *See* Nov. 20, 2017 Status Conf. Tr. at 6:19–22; ; s*ee also* Scheduling Order, Dkt. No. 48, *In re Nifedipine Antitrust Litig.*, MDL No. 1515 (D.D.C.) (Leon, J.) ("All motions for class certification must be filed at the same time and on the same schedule.").

Accordingly, Defendants have no objection to the ATM Operators filing their class certification motion earlier than the Consumer Plaintiffs, should they wish to do so, as long as the deadline for Defendants' opposition papers remains the same across all three cases (specifically, 90 days after service of the last class certification motion). Moreover, to the extent this Court adjusts the close of discovery, Defendants respectfully request that it be done in parallel across all three cases.

**<u>Conclusion</u>**

The parties look forward to discussing the above and any other issues the Court deems proper at the May 18, 2018 conference.

Respectfully submitted:

Dated: May 16, 2018

By: *Steve W. Berman*
Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Jennifer Fountain Connolly
(D.C. Bar No. 1019148)
HAGENS BERMAN SOBOL SHAPIRO LLP
1701 Pennsylvania Ave. NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 248-5403
jenniferc@hbsslaw.com

Stephen R. Neuwirth (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
stephenneuwirth@quinnemanuel.com

Adam B. Wolfson (*pro hac vice*)
Viola Trebicka (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
adamwolfson@quinnemanuel.com
violatrebicka@quinnemanuel.com

Michael D. Bonanno
(D.C. Bar No. 998208)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
mikebonanno@quinnemanuel.com

Craig L. Briskin
(D.C. Bar No. 980841)

MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
cbriskin@findjustice.com

*Interim Co-Lead Counsel for Direct Purchaser Consumer Plaintiffs*

Dated: May 16, 2018

By:______*Douglas G. Thompson*______________

Douglas G. Thompson (D.C. Bar # 172387)
dthompson@finkelsteinthompson.com
Michael G. McLellan (D.C. Bar # 489217)
mmclellan@finkelsteinthompson.com
FINKELSTEIN THOMPSON LLP
3201 New Mexico Avenue NW, Suite 395
Washington, D.C. 20016
Telephone: 202-337-8000
Facsimile: 202-337-8090

Christopher Lovell
clovell@lshllp.com
Gary S. Jacobson
gsjacobson@lshllp.com
Jody R. Krisiloff
jkrisiloff@lshllp.com
LOVELL STEWART HALEBIAN JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

*Interim Class Counsel for the Independent ATM Consumers*

Dated: May 16, 2018

By:__________*Mark R. Merley*__________

Mark R. Merley (D.C. Bar No. 375866)
Matthew A. Eisenstein (D.C. Bar No. 476577)
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Tel.: (202) 942-5000
Fax: (202) 942-5999
mark.merley@apks.com
matt.eisenstein@apks.com

*Counsel for Defendants Visa Inc., Visa U.S.A. Inc., Visa International Service Association, and Plus System, Inc.*

Dated: May 16, 2018

By: _________*Kenneth A. Gallo*______________

Kenneth A. Gallo (D.C. Bar No. 371253)
Justin Anderson (D.C. Bar No. 1030572)
Michelle S. Kallen (D.C. Bar No. 1030497)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 223-7300
Fax: (202) 223-7420
kgallo@paulweiss.com

Gary R. Carney (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
Fax: (212) 757-3990
gcarney@paulweiss.com

*Counsel for Defendants Mastercard Incorporated and Mastercard International Incorporated*

Dated: May 16, 2018

By:__________*Michael B. Miller*______
Michael B. Miller (D.C. Bar No. NY0140)
Mark P. Ladner (*pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019-9601
Tel.: (212) 468-8000
Fax: (212) 468-7900
mladner@mofo.com
mbmiller@mofo.com

*Counsel for Defendants Bank of America, National Association; NB Holdings Corporation; and Bank of America Corporation*

Dated: May 16, 2018

By: _______*Peter E. Greene* _____
Peter E. Greene (D.C. Bar No. 305607)
Boris Bershteyn (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
Tel.: (212) 735-3620
Fax: (917) 777-3620
peter.greene@skadden.com

*Counsel for Defendants Chase Bank USA, N.A.; JPMorgan Chase & Co.; and JPMorgan Chase Bank, N.A.*

Dated: May 16, 2018

By:_______*William F. Cavanaugh, Jr.*______
William F. Cavanaugh, Jr. (*pro hac vice*)
Daniel S. Ruzumna (D.C. Bar No. 450040)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel.: (212) 336-2000
Fax: (212) 336-2222
wfcavanaugh@pwbt.com
druzumna@pbwt.com

*Counsel for Defendants Wells Fargo & Company and Wells Fargo Bank, N.A.*