**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ATM COUNCIL, INC., *et al.*,<br><br>*Plaintiff*,<br><br>*v.*<br><br>VISA INC., *et al.*,<br><br>*Defendants*. | Civil Action No. 1:11-Cv-01803-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |
| ANDREW MACKMIN, *et al.*,<br><br>*Plaintiffs*,<br>*v.*<br><br>VISA INC., *et al.*,<br><br>*Defendants*. | Civil Action No. 1:11-Cv-1831-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |
| MARY STOUMBOS,<br><br>*Plaintiff*,<br><br>*v.*<br><br>VISA INC., *et al.*,<br><br>*Defendants*. | Civil Action No. 1:11-Cv-1882-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |

**JOINT STATUS REPORT**
**FOR JULY 16 CONFERENCE**

The parties respectfully submit the following Joint Status Report regarding issues they wish to discuss with the Court at the July 16, 2018 case management conference.[1]

## I. INTRODUCTION

**Consumer Plaintiffs' Position**

Despite Consumer Plaintiffs' diligent efforts, discovery has not progressed at the pace contemplated when the parties last appeared before this Court on May 18, 2018. The bulk of Defendants' "rolling" document productions occurred within the last month. Further, no Defendant has made a complete production of the ATM transaction data—which is critical to the Consumer Plaintiffs' class certification motion. In fact, several Defendants have acknowledged that essential transaction data will not be produced by the Court-ordered substantial completion deadline of July 16, 2018. Third-party data—which is equally essential to the economic models Consumer Plaintiffs' experts intend to develop for class certification—has just begun to trickle in. The parties have received data productions from just six of the 24 third-party ATM networks and processors they collectively subpoenaed.

The pace of data productions is particularly troubling because once Plaintiffs receive party and third-party data, their experts anticipate that it will take at least two months to manipulate the data into a coherent format for use in developing class-certification models. The analysis of such data once harmonized in a proper format will, of course, take additional time. To accommodate this essential process, and to ensure that all parties have a reasonable opportunity to prepare class certification submissions, Consumer Plaintiffs respectfully request that the deadline for class certification motions be extended to January 31, 2019.

[1] The three captioned cases have been coordinated for case management and discovery purposes. *See* Dkt No. 118, Case No. 1:11-cv-01803. As used herein, "Consumer Plaintiffs" refers to Plaintiffs in the *Stoumbos* and *Mackmin* cases. "Operator Plaintiffs" refers to Plaintiffs in the *National ATM Council* case.

Defendants wrongly suggest below that Plaintiffs have never previously indicated that they might need longer than the two-month class certification deadline extension the Court previously agreed to enter. On the contrary, as the parties discussed with the Court, the purpose of setting the upcoming conference after the substantial completion deadline was to assess how much and at what pace Defendants had produced documents and data. More specifically, at the last Gang of 8 conference Consumer Plaintiffs noted their concern that they would not receive adequate data productions from the Defendants, a result that, as set forth below, has now come to pass. Consumer Plaintiffs have also advised Defendants collectively and individually in numerous discovery communications since the last conference that any delays in producing documents and/or data would prejudice Consumer Plaintiffs' ability to timely move for class certification on the current schedule. Accordingly, Consumer Plaintiffs repeatedly urged Defendants to expedite their productions and responses to clarifying questions, but those pleas were regrettably ignored, and Defendants should be not rewarded for those tactics.

The separate issues Defendants raise as to their affirmative discovery do not impact the case schedule and are addressed in full below.

**Operator Plaintiffs' Position**

The ATM Operators and the two network defendants are working cooperatively to complete discovery in the ATM Operators' case in a timely and efficient manner. There are no disputes between the parties in the operators' case which would require intervention by the Court at this time.

**Defendants' Position**

At no point in the weeks leading up to Defendants' receipt of this status report from Consumer Plaintiffs earlier today (the morning of July 13) have Consumer Plaintiffs suggested that the pace of Defendants' document productions would require extending the deadline for

class certification motions until January 31, 2019. At the prior status conference, while no "Court-ordered substantial completion deadline" was set, Defendants provided good faith estimations that they could substantially complete production of documents and data from agreed-upon sources by July 16. Defendants remain on pace with that timeline. Your Honor indicated that the Court would likely entertain an extension of two months — not four months — for Plaintiffs' class certification motions. Nothing has changed since then to warrant a different course.

Since the May 18, 2018 conference, Defendants have made rolling productions and, consistent with the timeline previously presented to Plaintiffs and the Court, are on pace to substantially complete their document production by July 16, 2018. Also, Defendants are on pace to substantially complete production of the transactional data agreed upon by the parties as of the May 18 conference, and certain Defendants continue to negotiate in good faith with Plaintiffs about producing even further data. On the other hand, discovery from Plaintiffs has given rise to at least two issues warranting the Court's attention. First, Consumer Plaintiffs continue to make substantial, unilateral redactions of information from responsive documents based on their views of its relevance. Neither the Federal Rules of Civil Procedure nor the orders governing discovery in these cases permit relevance-based redactions, and this Court's protective order fully protects any confidentiality interests Plaintiffs may have in that information. And these redactions substantially prejudice Defendants, who take a very different view of this information's relevance. Second, in the *Stoumbos* case, class counsel has proposed swapping the sole named plaintiff for an entirely new set of plaintiffs at the eleventh hour, which would prejudice Defendants. Defendants have offered a compromise to mitigate the adverse impact to Defendants, but class counsel has rejected their proposal.

## II. STATUS OF PRODUCTIONS

### A. Defendants' Productions

**Consumer Plaintiffs' Position**

Because this is an antitrust class action, the production of robust and reliable data is indisputably essential. Defendants' data productions, however, have suffered from substantial delays and completeness issues, as outlined below. For example, no Defendant has made a complete production of data and Visa has produced no data at all (beyond samples). Defendants now represent that data productions will nevertheless be substantially complete by July 16, 2018. But the last-minute production of data imposes an enormous burden on Consumer Plaintiffs that was not contemplated by the rolling discovery process underlying this Court's prior Scheduling Order.

In any case, certain Defendants have not committed to produce critical data by the July 16, 2018 deadline for substantial completion. By way of example, Bank of America has committed to produce aggregate data, but not *transactional* data, by July 16, 2018. Similarly, Wells Fargo has refused to commit to the July 16, 2018 deadline with respect to data covering interchange fees, which are essential to the economic analyses Plaintiffs intend to conduct. Through no fault of Plaintiffs, Defendants did not identify these databases until recently. Defendants must bear responsibility for their protracted delay in identifying responsive data sources.

An additional difficulty that affects the speed with which the Consumer Plaintiffs can analyze the data is that each Defendant is producing its ATM data from several sources rather than a single or homogenous source. The data must therefore be harmonized for each Defendant, then among all Defendants, and finally consolidated with separate data that has been subpoenaed from 24 different third-party ATM networks and processors (see *infra*). Having now reviewed

the format and nature of partial data productions from the parties and certain third-parties, Consumer Plaintiffs' experts have been able to assess the scope of this undertaking and anticipate that merely harmonizing the data will take more than 60 days of sustained effort *after* the last production has been completed. Until the harmonization of the data is accomplished, it will not be in a format that would allow for the time- and labor-intensive analyses the experts must perform for class certification.

The pace of Defendants' document productions is similarly inadequate. First, all Defendants have slow-rolled their productions such that 40 percent – and counting – of Defendants' combined productions has been produced in July alone; a majority of the production (by document and page count) has been produced in the month leading up to the substantial completion deadline. In addition, Defendants have stated they intend to make additional productions of non-privileged, responsive documents wrongly withheld on privilege grounds *after* the July 16 deadline.

Further exacerbating the back-loading of all Defendants' productions, the Bank Defendants are substantially behind in their document production even as compared to the productions accomplished by Visa and Mastercard. Visa and Mastercard have produced 25,968 and 46,200 documents respectively, compared to 4,479 (Wells Fargo), 6,655 (Bank of America) and 9,668 (Chase). This disparity suggests that either the Bank Defendants intend to unload the bulk of their productions right at the production deadline, or that there is a deficiency in their collection or review processes that needs to be rectified. Regardless of the reason, either reviewing the Bank Defendants' last-minute productions or conducting a review of those defendants' collection and review processes once discovery is closed will ensure that discussions

regarding their document productions will continue far past the July 16 "substantial completion" deadline.

**Operator Plaintiffs' Position**

The ATM Operators and the network defendants in the ATM Operators' case have been working cooperatively toward the satisfactory fulfillment of defendants' production obligations and there are no issues requiring intervention by the Court at this time.

**Defendants' Position**

Consumer Plaintiffs' "concerns" about the pace of Defendants' productions are unfounded. In accordance with the timeline Defendants proposed prior to the May 18 discovery management conference and discussed with the Court, Defendants have been making rolling document productions to Plaintiffs and will have substantially completed their productions of documents by July 16, 2018. As Defendants previously agreed, they are continuing to use their best efforts to complete, by the end of July 2018, their reviews of documents that were initially marked as privileged.

Although Plaintiffs complain of the size of the Bank Defendants' document productions in comparison to those of the Network Defendants in this Status Report, Plaintiffs' Requests for Production served on the two categories of Defendants, and the search terms that the two categories of Defendants agreed to, are distinct. There is no basis for comparing the volume of production among each category of Defendant. And there is no basis for Plaintiffs to assume that each Defendant would possess any particular volume of documents responsive to Plaintiffs' discovery requests.

Defendants' data productions also have gone according to the plan previously discussed with the Court and Plaintiffs. By the week of July 16, 2018, Defendants will have substantially

completed production of data from the transactional data sources that Defendants had, as of the May 18 conference, identified and offered to produce from. As expected, the data productions have taken significant time and effort to complete, but there has been no "protracted delay" as Consumer Plaintiffs suggest. Visa, for example, provided sample data to Plaintiffs in March; provided supplemental materials in response to Plaintiffs' questions over the next several months; received consent from Plaintiffs to the form of the data to be produced in mid-June; and expects to produce the full data sets the week of July 16. Defendants are following the production timeline discussed with the Court at the last conference. And in their discussion of "critical data" not covered by the target date of July 16, 2018, Consumer Plaintiffs fail to note that when they complained because Wells Fargo does not maintain transaction-level data on interchange fees and other data points that Plaintiffs want, Wells Fargo worked to identify within its many databases aggregated sources for this data and provided samples of this data for Plaintiffs to review. These discussions post-dated the parties agreeing to the July 16 target date for substantial completion of document production, and Plaintiffs have not yet indicated whether the data samples represent data that are useful and acceptable to them.[2] While the timeline for

[2] Plaintiffs' reference to Bank of America's data production is likewise at best misleading. Bank of America offered to produce sample transactional data for months. But Plaintiffs did not propose a sampling methodology until June 18, when they asked for a 1% random sample of all foreign ATM transactions involving Bank of America customers. Bank of America agreed to produce this 1% sample but explained that such a sample would contain hundreds of millions of transaction records and could only be produced in a file format that is difficult to utilize. Plaintiffs responded, however, that they needed only a small sample to assess the relevance of the data. On June 21 the parties agreed on a sampling methodology for the smaller sample requested by Plaintiffs, which would include data for 100 randomly selected Bank of America customers' foreign ATM transactions for the month of April 2018. Bank of America then promptly produced the sample data as a useable Microsoft Excel file on June 29. Today—July 13, one business day before the discovery conference—Plaintiffs demanded that Bank of America produce the entire database of foreign ATM transactions for the more than ten-year class period, which includes an estimated 4 billion records. Although the parties have not had an opportunity to meet-and-confer about this demand, as Bank of America has explained to Plaintiffs, any data production of that size could only be produced in a file format that is difficult to utilize. Against this background, Plaintiffs cannot in good faith claim that Bank of America should have produced this massive amount of transactional data by July 16.

production of this data is contingent upon ongoing negotiations, Defendants will continue their good faith efforts to produce material promptly.

**B. Third-Party Productions**

**Consumer Plaintiffs' Position**

In the first months of 2018, the parties collectively issued 90 subpoenas to 24 different third-party ATM networks and processors. These subpoenas seek, among other materials, data for transactions falling within the Consumer Plaintiffs' class definitions that are not available from any party to the litigation. Consumer Plaintiffs have requested these data because they are essential to the economic models Consumer Plaintiffs are developing to demonstrate, at class certification, the class-wide impact of the restraints being challenged in these cases.

The Consumer Plaintiffs have diligently pursued negotiations with subpoenaed third parties. Although such negotiations have been mostly constructive, third-party data productions have only just begun. Notably, the parameters of third-party data productions have been conducted jointly with all subpoenaing parties, and data samples generally have been timely requested for review by the parties' experts. The coordination of these efforts has minimized burden on third-parties but, through no fault of the Consumer Plaintiffs, it also has slowed the pace at which production parameters can be negotiated and data produced.

As of the date of this filing, only six of the 24 subpoenaed third-parties have produced data, and Consumer Plaintiffs have outstanding requests for supplemental data production from most of those six. The scope of the remaining 18 third-party data productions are being actively negotiated but there is no date certain for the substantial completion of these data productions.

In addition, several third parties likely to possess significant data—NYCE Payments Network, LLC ("NYCE"), Armed Forces Financial Network ("AFFN"), and Fidelity National Information Services, Inc. ("FIS")—have flatly refused to produce any data in response to the

subpoenas. After reaching an impasse in meet-and-confers, Plaintiffs moved on July 11 to compel production from NYCE in the United States District Court for the District of New Jersey (Case No. 18-cv-11518), and will be filing a separate motion as to AFFN and FIS in the coming days. The NYCE motion will be fully submitted August 6, 2018.

**<u>Operator Plaintiffs' Position</u>**

With respect to third-party production in the ATM Operators' case, the ATM Operators endorse and adopt the reports submitted by the consumer plaintiffs and the network defendants.

**<u>Defendants' Position</u>**

The parties continue to work cooperatively to obtain relevant information pursuant to third-party subpoenas, which have been issued to more than 20 entities, including other ATM networks and processors. As stated above, two third-party ATM networks, NYCE and its affiliate AFFN, have refused to produce data based on confidentiality concerns. Noting that Visa and Mastercard are their competitors, they assert that they are "operating in an extremely robust competitive environment." The parties agree that these confidentiality objections are not a reasonable basis to withhold responsive information in light of the Protective Order entered by this Court. The parties will continue to keep the Court informed of efforts to resolve third-party issues.

**C. Consumer Plaintiffs' Productions**

**<u>Defendants' Position</u>**

Since the May 18 conference, Consumer Plaintiffs have not produced any documents except that Plaintiff Osborn produced images of one additional ATM card in his possession on May 23, 2018. Defendants intend to further assess the adequacy of Consumer Plaintiffs' productions once they are complete and will discuss their concerns with Consumer Plaintiffs.

The parties have reached an impasse with respect to Consumer Plaintiffs' unilateral

redactions of bank records, as discussed in Section IV. The parties also have reached an impasse with respect to Plaintiff Stoumbos's refusal to produce any documents, as discussed in Section V.

**<u>Consumer Plaintiffs' Position</u>**

The *Mackmin* Plaintiffs productions are complete. As discussed more fully in the section below pertaining to the *Stoumbos* case, the proposed additional representatives in the *Stoumbos* case will have substantially completed their production by July 16. The *Mackmin* plaintiffs last received a letter from Defendants regarding their productions on May 17, 2018, one day prior to the status conference with the Court. The *Mackmin* Plaintiffs responded on June 12, 2018, and have not received any communications from Defendants addressing Plaintiffs' productions since that time.

Consumer Plaintiffs' position regarding the redaction of Plaintiffs' bank records is discussed in Section IV below.

**D. Operator Plaintiffs' Productions**

**<u>Defendants' Position</u>**

Following the Court's guidance at the May 18 conference, Defendants and Operator Plaintiffs negotiated in good faith and reached agreement on production parameters for Operator Plaintiffs that would minimize their burden while providing Defendants reasonable discovery. With respect to documents, the parties were able to reach agreement on a narrowed set of search terms and custodians on June 6, 2018. This agreement is without prejudice to Defendants seeking additional discoverable information. With respect to data, Operator Plaintiffs provided sample data obtained from one Operator on July 5, 2018. The parties are continuing to work collaboratively to identify the most efficient and effective process for collecting relevant data.

**Operator Plaintiffs' Position**

With respect to the ATM Operators' production in that case, the ATM Operators agree with the status reported by defendants.

## III. PLAINTIFFS' REQUEST TO REVISE THE SCHEDULING ORDER

**Consumer Plaintiffs' Position**

At the May 18 conference, this Court stated that Plaintiffs could assume they had a two-month extension of the class certification deadline, until approximately December 2, 2018. Based on the limited progress Defendants and subpoenaed third-parties have since made in producing documents and particularly data, Plaintiffs respectfully seek an extension of the class certification deadline to January 31, 2019.

As this Court is aware, class certification entails a detailed and fact-intensive inquiry into whether the Rule 23 elements have been met. *See In re Rail Freight Fuel Surcharge Antitrust Litig*., 725 F.3d 244, 249 (D.C. Cir. 2013). Accordingly, when plaintiffs "lack the information to file their motion for class certification, the proper approach [is] to request an extension of time to file their motion." *Gerlich v. U.S. Dep't of Justice*, 2010 WL 11595271, at *3 (D.D.C. Apr. 19, 2010). An extension is warranted and appropriate here.

First, Defendants have only just begun to produce data and will not be producing certain critical data until some unspecified time after the July 16, 2018 deadline. Similarly, despite the parties' diligent collective efforts, data has not been produced by 18 of the 24 third-party ATM networks and processors who have been subpoenaed in these cases. Once these disparate data are finally received, Consumer Plaintiffs' experts anticipate that the process of merely consolidating and harmonizing the data into a format conducive to expert analysis will take at least 60 additional days. This means that even if all data were produced by July 16—and they will not be—Consumer Plaintiffs' experts will not be able to start conducting the time and labor-

intensive review of the data until well into September, just weeks before the current class certification deadline.

Second, Defendants' document productions have also proceeded on a slow course that continues to raise substantial obstacles to the Consumer Plaintiffs' preparation of a class certification motion. The numbers speak for themselves: a combined 40 percent of the productions has been produced in July alone, and the majority of the documents have been produced in the month leading up to the substantial completion deadline. In addition, Defendants intend to make additional productions of non-privileged, responsive documents wrongly withheld on privilege grounds *after* the July 16 deadline. With substantial productions arriving close to the July 16 deadline, and additional productions of unspecified volumes *after* that date, it is virtually impossible for Plaintiffs to complete the document review and prepare for and take up to thirty depositions (while concurrently reviewing/analyzing the transactional data) within the year 2018.

In these circumstances, and particularly given Consumer Plaintiffs' unquestioned diligence in pursuing party and third-party discovery, a modest extension of the class certification deadline to January 31, 2019 is appropriate. The additional time will allow Consumer Plaintiffs and their experts to reasonably prepare class certifications submissions and avoid prejudicing Consumer Plaintiffs for delays that they could not control and did everything to overcome.

**Operator Plaintiffs' Position**

The ATM Operators renew their position that simultaneity in the scheduling of the briefing and hearing on motions for class certification as between the ATM Operators' case and the consumer plaintiffs' cases should not be required. The class size and composition, the supporting evidence and data, and the legal issues as to class certification are materially

different. With respect to the consumer plaintiffs' request for an extension of the class certification deadline, the ATM Operators take no position.

**Defendants' Position**

Prior to the exchange of the status report today, neither Consumer Plaintiffs nor Operator Plaintiffs have suggested to Defendants that Plaintiffs would ask the Court to revisit the direction that the Court gave to the parties at the last conference. The Court rejected Operator Plaintiffs' request for staggered class certification briefing on the basis of judicial efficiency. Specifically, as the parties discussed during the last conference, simultaneous briefing of class certification motions across the coordinated cases is essential to efficient management of the case and staggered briefing will necessarily waste the Court's and the parties' resources. The Court informed Consumer Plaintiffs that they could expect a two-month — but not a four-month — extension of the class certification and discovery schedule. Nothing has changed since the last conference to warrant a different course on either issue. Rather, as detailed above, Defendants have met the timeline for document and agreed-upon data production discussed at that conference. Finally, should the Court extend the current schedule for class certification briefing, Defendants request that all subsequent deadlines be similarly extended to maintain the sequencing established by the Court's prior scheduling order, and Defendants understand that Plaintiffs are not objecting to that course of action.

## IV. CONSUMER PLAINTIFFS' REDACTION OF BANK RECORDS

**Defendants' Position**

Consumer Plaintiffs' productions of bank records contain significant, unilateral redactions of relevant information that are not permitted by the Federal Rules of Civil Procedure or the discovery protocols in these cases. As a general matter, "the Federal Rules of Civil Procedure do not grant parties the power to unilaterally redact information on the basis of

relevance." *Bartholomew* v. *Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 452 (D. Minn. 2011). Rule 5.2 permits partial redactions of a person's identifying information, e.g., a social security number, taxpayer-identification number, or financial-account number. Rule 5.2 does not allow Consumer Plaintiffs to redact entire financial statements. Furthermore, the parties' ESI protocol does not condone relevance-based redactions, instead permitting redactions only when "a claim of privilege or other protection applies." Dkt No. 122, Case No. 1:11-cv-01831, p. 13. Any concerns about privacy or confidentiality are addressed by the protective order in this case, which "protect[s] private and confidential business and trade secret information" by allowing the parties to designate documents Confidential or Highly Confidential. Dkt No. 112, Case No. 1:11-cv-01831, p. 1.

Nevertheless, Consumer Plaintiffs have unilaterally redacted from their bank records any information not directly related to an ATM transaction or other cash withdrawal. Of the 340 produced documents, 96% are statements provided to Consumer Plaintiffs by their respective banks, and 100% of those statements contain extensive redactions. These redactions deprive Defendants of readily available, probative information about (i) opportunities Plaintiffs had to obtain cash from merchants when making debit-card purchases, (ii) Plaintiffs' proximity to their banks' ATMs within a few hours of the time they withdrew cash from other ATMs (as shown by debit-card purchases at nearby merchants, for example), and (iii) fees incurred by Plaintiffs for other financial services, such as cash advances, wire transfers, maintaining a debit account, or currency conversion.

Defendants have repeatedly raised their objections to these redactions with Consumer Plaintiffs and sought to understand Consumer Plaintiffs' claimed basis for applying them. Consumer Plaintiffs maintain that the redacted information is irrelevant and that the redactions

are necessary to protect the privacy of their personal financial information. Their position is unsupported for the reasons above, and has prejudiced Defendants by depriving them of readily accessible, relevant information about Consumer Plaintiffs' cash and banking practices. To be clear, Consumer Plaintiffs will incur no burden in producing these documents without redactions for relevance; if anything, they would be relieved of the burden of redacting large portions of these documents. Consumer Plaintiffs should be directed to remove the redactions from the documents and reproduce them.

**Consumer Plaintiffs' Position**

The Consumer Plaintiffs have not redacted produced bank statements for "relevance." Plaintiffs have made redactions to protect the privacy of their sensitive financial information *not* related to ATMs, such as payments by check. Consumer Plaintiffs have produced all transactions involving an ATM or ATM-card facilitated cash withdrawal. In addition, Plaintiffs have produced any reversed transactions, such as credits for ATM fees.

Nor are Defendants prejudiced by Consumer Plaintiffs' redactions. Defendants have consistently objected to their production of non-ATM transactions, such as "cash advances, wire transfers . . . or currency conversion"— the same discovery they now seek from Consumer Plaintiffs — on relevance grounds. And, in producing their own data, the Bank Defendants have consistently recognized the need to protect sensitive financial information. Moreover, whatever information Defendants seek about "opportunities Plaintiffs had to obtain cash from merchants when making debit-card purchases" cannot be obtained from Consumer Plaintiffs' bank records, which do not specify whether any particular merchant offered cash back. To the extent Defendants require information regarding Plaintiffs' proximity to their banks' ATMs as they

withdrew cash from other ATMs, such information is readily available using the produced statements showing all of Plaintiffs' ATM transactions.

## V. PLAINTIFF STOUMBOS'S REQUEST TO WITHDRAW AND SUBSTITUTE NEW PUTATIVE CLASS REPRESENTATIVES

**Defendants' Position**

On June 26, 2018, three weeks from the deadline for substantial completion of document discovery, counsel for Ms. Stoumbos proposed that four new consumers replace Ms. Stoumbos as class representatives. Ms. Stoumbos has been the sole class representative for the class of persons charged an ATM fee at an independent ATM since October 24, 2011, when this action was first filed. She has been under an obligation to preserve documents since that time, and counsel previously assured Defendants and the Court that she would comply with her discovery obligations by July 16, 2018, the substantial completion date. Under class counsel's proposal, Ms. Stoumbos would be relieved of any obligation to produce documents in this case, and the substitute class representatives would produce whatever documents could be obtained at present from their respective banks' websites. Defendants are concerned that this proposal would deprive them of access to relevant discovery and set an untenable precedent for eleventh-hour substitution of class representatives.

Courts assess requests for voluntary dismissal of class representatives by considering "(1) whether plaintiffs' motion for voluntary dismissal was sought in good faith; and (2) whether the defendants would suffer 'legal prejudice' from a dismissal at this stage in the litigation." *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 304 (D.D.C. 2000). To date, Ms. Stoumbos, who seeks to represent a consumer class in recovering damages from 2007 to the present, has produced four pages of documents. Before receiving counsel's June 26 letter, Defendants were awaiting the production of considerably more material, including additional bank statements and

other relevant documents preserved since Ms. Stoumbos filed her complaint. For example, Defendants expected to receive documents relevant to Ms. Stoumbos choosing an ATM card (including marketing brochures or card comparisons), documents concerning services and other benefits Ms. Stoumbos received as an ATM user, and communications between Ms. Stoumbos and her bank concerning ATM usage.

Counsel's proposal to substitute Ms. Stoumbos with new class representatives who have not been under an obligation to preserve relevant documents will prejudice Defendants. Defendants understand that, unlike Ms. Stoumbos, the proposed new class representatives have not been preserving relevant documents. The only documents the new class representatives may be able to produce are statements available at this time—seven years after this action was commenced—from their online bank accounts. Without additional documents, Defendants will be hindered in their ability to prepare their defenses or assess plaintiffs' ability to satisfy Fed. R. Civ. P. 23 requirements. For instance, information showing the individualized factors that a proposed class representative weighed when selecting a bank, including marketing materials, services, and benefits, could support Defendants' argument that common questions of fact do not predominate over questions affecting only individual members of the purported class. They could likewise demonstrate unique defenses that may make an individual plaintiff an unsuitable class representative.

Accepting counsel's proposal also would endorse eleventh-hour plaintiff substitutions and create perverse incentives. If long-standing class plaintiffs under long-standing document preservation obligations can withdraw and be replaced with substitute representatives under no corresponding obligations, those document preservation obligations would be ephemeral. Furthermore, if those obligations are ever ignored or forgotten, there will be no repercussion—

counsel merely can replace the remiss representative with one under no such duty. Were counsel to voluntarily dismiss Ms. Stoumbos's case and file a new complaint with new class representatives, Ms. Stoumbos's preservation obligations and corresponding prejudice to Defendants would likely be mooted. But the limitations period for the new class action would run from the time of the new filing. By seeking a wholesale replacement of Ms. Stoumbos with new representatives, class counsel wants to have it both ways: toll the statute of limitations as if the case were filed in 2011 but preserve documents as if it were first filed in 2018. That result would not only cause unfair prejudice in this case but set a precedent wide open for abuse in other cases.

Defendants have sought to accommodate Ms. Stoumbos's request in a manner that would alleviate these concerns. Consistent with the practice in similar cases, Defendants proposed that, prior to her withdrawal, counsel provide the discovery from Ms. Stoumbos that counsel has previously represented would be produced by July 16. *See In re Vitamins Antitrust Litig.*, 198 F.R.D. at 305 (requiring class representatives to complete all previously noticed discovery before withdrawing, so as to mitigate injury to defendants). Completing discovery before the substitution of class representatives would alleviate the concerns noted above, by ensuring an ongoing duty to comply with document preservation obligations.

Class counsel declined this proposal. Defendants remain open to a substitution so long as they are not unduly prejudiced as a result.

**Plaintiff Stoumbos' Position**

In the Independent ATM Consumers case, Ms. Stoumbos wishes to withdraw from the case and three other independent ATM consumers wish to take her place – a common occurrence in class actions, and one recently approved by the D.C. Circuit at a stage of the case far later than this one. *See Harrington v. Sessions (In re Brewer)*, 863 F.3d 861, 870 (D.C. Cir. 2017)

(permitting absent class member to intervene on appeal after original representative stipulated to dismiss claims). Each new plaintiff will produce a complete set of bank statements dating back to 2011 (*i.e.* before the filing date of the original *Stoumbos* complaint) and otherwise substantially complete their productions prior to the July 16 deadline for doing so.[3] They do not seek to add new claims or factual allegations other than those directly pertaining to themselves.

The proposed replacement – made in advance of the discovery completion date and months in advance of class certification briefing – prejudices Defendants in no way. However, Defendants have refused consent, instead presenting two unacceptable options: either Ms. Stoumbos should participate in document discovery as a condition of withdrawal, or the new plaintiffs should "voluntarily dismiss Ms. Stoumbos's case and file a new complaint with new class representatives" instead of substituting themselves. The parties have not been able to resolve this dispute, and accordingly agreed to include a description of it in this status report and seek guidance from the Court on how to fully present the issue to it.

As to the first of Defendants' options: Ms. Stoumbos should not be compelled to participate in document discovery as a condition of withdrawal. She desires to withdraw because, given the passage of time since this case was filed, she no longer wishes to bear the burden of litigation, including discovery. This case has proceeded longer than anticipated at filing over 7 years ago, and given her age and health, Ms. Stoumbos no longer wants to present herself as a class representative.

[3] Defendants' claim that "the substitute class representatives would produce whatever documents could be obtained at present from their respective banks' websites" understates matters: to the extent any other documents responsive to Defendants' requests are in the new plaintiffs' possession, custody, or control, they will be produced (subject to the objections already served on Defendants). That said, the bank statements that will be produced will constitute the vast majority of the new plaintiffs' productions, as was the case with the productions already made by the *Mackmin* plaintiffs.

Defendants' claim that requiring discovery under such circumstances is "[c]onsistent with the practice in similar cases" glosses over the relevant point: the cases universally hold that a defendant must articulate legitimate, specific legal prejudice it will suffer before imposing discovery conditions on a putative class representative's withdrawal. *See, e.g. In re Navistar Maxxforce Engines Mktg., Sales Practices & Prods. Liab. Litig.*, No. 14-cv-10318, 2018 U.S. Dist. LEXIS 1873, at *34 (N.D. Ill. Jan. 4, 2018).[4] Significantly, the necessary prejudice does not exist when the discovery bears on the withdrawing plaintiffs' adequacy to represent the class: "when a potential class representative drops out before certification, questions of whether that plaintiff satisfies the requirements of Rule 23(a), such as adequacy, become moot, so if the plaintiff is allowed to withdraw, some other justification for discovery from the plaintiff on those issues must exist." *Id.*

Defendants do not dispute that they must show legal prejudice to justify the requested discovery, and the sole case they cite rejects any contention that the timing of Ms. Stoumbos' request justifies the requested discovery. *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 304 (D.D.C. 2000).[5] Instead, Defendants claim prejudice exists because documents "showing the individualized factors that a proposed class representative weighed when selecting a bank, including marketing materials, services, and benefits" bear on the question of predominance, and that Ms. Stoumbos might possess documents on these issues of a type unavailable elsewhere.[6] But Independent ATM consumers have already confirmed to Defendants that Ms. Stoumbos

---

[4] "While proposed dismissed plaintiffs transparently desire to avoid discovery, imposing a condition on dismissal cannot be justified by their motives alone." *Navistar*, 2018 U.S. Dist. LEXIS 1873, at *34.

[5] "[A]lthough the timing of plaintiffs' Motion does appear suspect, this alone would not warrant a denial of their Motion; the Court must also determine whether defendants would suffer legal prejudice by a voluntary dismissal of certain class plaintiffs at this time." *Vitamins*, 198 F.R.D. at 304.

[6] While Defendants claim that Ms. Stoumbos' preservation obligations may mean she possesses documents not available to the new proposed representatives, this argument necessarily depends on their claim that the requested documents bear relevance to subjects other than Ms. Stoumbos' adequacy to represent the class. Because they do not, their preservation arguments are meaningless.

does not possess any documents that she relied on when selecting her ATM card, so the concern is meritless.

Even if that were not so, Defendants do not explain in any detail how they would use marketing or other materials directed at a single now-absent class member to argue against predominance, nor why they could not adequately make such argument based on the myriad documents already being produced in this action by the replacement representatives or the banks,[7] ATM operators, and consumers that are parties to these consolidated proceedings. Nor is it apparent how they would do so: Ms. Stoumbos' adequacy is no longer at issue, and Defendants have access to data and materials pertaining to millions, if not tens of millions, of individual class member transactions. Thus, "[d]efendants do not explain, beyond conclusory assertions, why they need more information to make their certification arguments," and they have failed to show the necessary prejudice to justify their requested discovery. *Navistar*, 2018 U.S. Dist. LEXIS 1873, at *37.

The *Vitamins* case upon which Defendants rely differs both procedurally and substantively. First, in *Vitamins*, the withdrawing plaintiffs sought to dismiss their claims only after a Special Master ordered them to comply with discovery – an order to which the *Vitamins* plaintiffs filed no objections. 98 F.R.D. at 303.[8] The primary issue before the District Court was thus not whether the withdrawing plaintiffs should be required to comply with discovery, but whether they would be entitled to voluntarily dismiss their claims. *Id.* Second, in *Vitamins*, the Special Master in that case observed that the defendants had articulated clear prejudice that they

---

[7] Two of the three new representatives bank with Chase and Wells Fargo, institutions that are named defendants in the related *Mackmin* case.

[8] Notably, the Special Master rested its decision in part on its finding that "none of those seeking to be excused from responding to discovery has asked to be dismissed as a named party or offered to give up the rights possessed by such parties." *In re Vitamin Antitrust Litig.*, 99-197, 2000 U.S. Dist. LEXIS 20962, at *52 (D.D.C. July 28, 2000).

would suffer if denied the requested discovery, *i.e.* that the withdrawing representatives "likely participated in the investigation that produced [a] class settlement" and may have possessed relevant information on the plaintiffs' fraudulent concealment allegations. *See In re Vitamin Antitrust Litig*., 99-197, 2000 U.S. Dist. LEXIS 20962, at *52 (D.D.C. July 28, 2000). Neither circumstance is present here.

As to Defendants' second point: their proposal that the named plaintiffs should file new cases contradicts the D.C. Circuit's *Harrington* decision, which permitted new plaintiffs to substitute for the named plaintiffs in a case after class certification had been denied and after the original plaintiff dismissed his claims. 863 F.3d at 870. Defendants' preferred course would also be inefficient. *Kamakahi v. Am. Soc'y for Reprod. Med.*, No. 11-cv-01781-JCS, 2015 U.S. Dist. LEXIS 54842, at *14 (N.D. Cal. Apr. 27, 2015) (permitting addition of new representatives when "denying the motion may require all parties—including Defendants—and the Court to participate in a separate parallel or subsequent action."). This is why the weight of authority permits substitution or addition of class representatives: as one court put it, "[s]ubstitution of unnamed class members for named plaintiffs who fall out of the case because of settlement or other reasons is a common and normally an unexceptionable . . . feature of class action litigation." *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006). While Defendants claim that permitting the new plaintiffs to substitute for Ms. Stoumbos instead of filing a new case would deprive them of a statute of limitations defense, substitution would not bar Defendants from raising a statute of limitations defense at certification or summary judgement, and they cite no law holding otherwise. Adding the new plaintiffs to the existing case would be manifestly more efficient than requiring them to file new ones and would not prejudice Defendants.

## **Conclusion**

The parties look forward to discussing the above and any other issues the Court deems proper at the July 16, 2018 conference.

Respectfully submitted:

Dated: July 13, 2018

By: /s/ Steve W. Berman
Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Jennifer Fountain Connolly
(D.C. Bar No. 1019148)
HAGENS BERMAN SOBOL SHAPIRO LLP
1701 Pennsylvania Ave. NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 248-5403
jenniferc@hbsslaw.com

Stephen R. Neuwirth (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
stephenneuwirth@quinnemanuel.com

Adam B. Wolfson (*pro hac vice*)
Viola Trebicka (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
adamwolfson@quinnemanuel.com
violatrebicka@quinnemanuel.com

Craig L. Briskin
(D.C. Bar No. 980841)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Cbriskin@findjustice.com

*Interim Co-Lead Counsel for Direct Purchaser Consumer Plaintiffs*

Dated: July 13, 2018

By: /s/ Douglas G. Thompson

Douglas G. Thompson (D.C. Bar # 172387)
dthompson@finkelsteinthompson.com
Michael G. McLellan (D.C. Bar # 489217)
mmclellan@finkelsteinthompson.com
FINKELSTEIN THOMPSON LLP
3201 New Mexico Avenue NW, Suite 395
Washington, D.C. 20016
Telephone: 202-337-8000
Facsimile: 202-337-8090

Christopher Lovell
clovell@lshllp.com
Gary S. Jacobson
gsjacobson@lshllp.com
Jody R. Krisiloff
jkrisiloff@lshllp.com
LOVELL STEWART HALEBIAN
JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

*Interim Class Counsel for the Independent ATM Consumers*

Dated: July 13, 2018

By: /s/ Jonathan L. Rubin
Jonathan L. Rubin (D.C. Bar No. 353391)
MOGINRUBIN LLP
1615 M Street, NW, Third Floor
Washington, D.C. 20036
Tel: (202) 630-0616
Fax: (877) 247-8586
jrubin@moginrubin.com

Daniel J. Mogin (*pro hac vice*)
Jodie M. Williams (*pro hac vice*)
Jennifer M. Oliver (*pro hac vice*)
MOGINRUBIN LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Tel: (619) 687-6611
Fax: (619) 687-6610
dmogin@moginrubin.com
jwilliams@moginrubin.com
joliver@moginrubin.com

*Counsel for Plaintiffs the National ATM Council, Inc.; ATMs of the South, Inc.; Business Resource Group, Inc.; Just ATMs USA, Inc.; Wash Water Solutions, Inc.; ATM Bankcard Services, Inc.; Selman Telecommunications Investment Group, LLC; Scot Garner d/b/a SJI; Turnkey ATM Solutions, LLC; Trinity Holdings Ltd, Inc.; and T&T Communications, Inc. and Randal N. Bro d/b/a T & B Investments*

Dated: July 13, 2018

By: /s/ Mark R. Merley
Mark R. Merley (D.C. Bar No. 375866)
Matthew A. Eisenstein (D.C. Bar No. 476577)
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Tel.: (202) 942-5000
Fax: (202) 942-5999
mark.merley@arnoldporter.com
matt.eisenstein@arnoldporter.com

*Counsel for Defendants Visa Inc., Visa U.S.A. Inc., Visa International Service Association, and Plus System, Inc.*

Dated: July 13, 2018

By: /s/ Kenneth A. Gallo
Kenneth A. Gallo (D.C. Bar No. 371253)
Justin Anderson (D.C. Bar No. 1030572)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 223-7300
Fax: (202) 223-7420
kgallo@paulweiss.com

Gary R. Carney (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
Fax: (212) 757-3990
gcarney@paulweiss.com

*Counsel for Defendants Mastercard Incorporated and Mastercard International Incorporated*

Dated: July 13, 2018

By: /s/ Michael B. Miller
Michael B. Miller (D.C. Bar No. NY0140)
Mark P. Ladner (*pro hac vice*)
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104-0050
Tel.: (212) 468-8000
Fax: (212) 468-7900
mladner@mofo.com
mbmiller@mofo.com

*Counsel for Defendants Bank of America, National Association; NB Holdings Corporation; and Bank of America Corporation*

Dated: July 13, 2018

By: /s/ Peter E. Greene
Peter E. Greene (D.C. Bar No. 305607)
Boris Bershteyn (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
Tel.: (212) 735-3620
Fax: (917) 777-3620
peter.greene@skadden.com

*Counsel for Defendants Chase Bank USA, N.A.; JPMorgan Chase & Co.; and JPMorgan Chase Bank, N.A.*

Dated: July 13, 2018

By: /s/ William F. Cavanaugh, Jr.
William F. Cavanaugh, Jr. (*pro hac vice*)
Daniel S. Ruzumna (D.C. Bar No. 450040)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel.: (212) 336-2000
Fax: (212) 336-2222
wfcavanaugh@pwbt.com
druzumna@pbwt.com

*Counsel for Defendants Wells Fargo & Company and Wells Fargo Bank, N.A.*