**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ATM COUNCIL, INC., *et al.*,<br><br>*Plaintiff*,<br><br>*v.*<br><br>VISA INC., *et al.*,<br><br>*Defendants*. | Civil Action No. 1:11-Cv-01803-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |
| ANDREW MACKMIN, *et al.*,<br><br>*Plaintiffs*,<br>*v.*<br><br>VISA INC., *et al.*,<br><br>*Defendants*. | Civil Action No. 1:11-Cv-1831-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |
| MARY STOUMBOS,<br><br>*Plaintiff*,<br><br>*v.*<br><br>VISA INC., *et al.*,<br><br>*Defendants*. | Civil Action No. 1:11-Cv-1882-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |

# JOINT STATUS REPORT

## I. STATUS OF PRODUCTIONS

**ATM Operator Plaintiffs' Position**

The ATM Operators respectfully request an enlargement of pages for this Joint Status

Report from three pages to eight pages to permit sufficient space to update the Court on critical outstanding disputes. The ATM Operators have raised two significant issues with Mastercard's data production. First, Mastercard's production includes no data from the years 2007-2010 (the "gap"). This case was filed in October 2011, and the violation period alleged commences in 2007. The data gap includes the period in which Mastercard initiated the conduct that motivated the ATM Operator plaintiffs to commence this litigation. The ATM Operator plaintiffs are in dire need of discovery of this essential data, or a substitute form of proof. Mastercard admits to possession of the data but has not produced it asserting undue burden and incompleteness. Plaintiffs' position is that Mastercard is obligated to produce data for the 2007-2010 time period or to stipulate to the admissibility of a good faith summary or estimate of the missing data's contents.

Second, the Mastercard transaction data for class members (non-bank ATM Operators) and non-class parties (member banks) has in Mastercard's data production been blended together in a single and very large database. The volume of bank ATM transactions is many times the volume of non-bank ATMs. After significant analysis, it became clear that no reliable or accurate methodology exists to separate the data pertaining to the class from the data pertaining to Mastercard's member banks. The parties disagree on which party has the burden of "un-blending" the data. Notably, this "blending" problem also exists in the Visa transactional data, but Visa has agreed voluntarily to provide additional data to assist the ATM Operator plaintiffs in identifying the class-related transactions and ruling out the transactions of non-parties and so-called bank "on us" transactions. Plaintiff's position is that Mastercard is likewise obligated to produce the requested class member data without blending in the unrequested non-class member bank data or to assist the ATM Operators to do so.

The parties held a telephonic meet and confer on December 20, 2018 and discussed possible solutions for these issues without Court intervention. The parties discussed whether stipulated estimates could serve as a substitute for the gap data and Mastercard agreed to investigate the feasibility of producing the gap data and/or provide the specific facts underlying their claims of undue burden and incompleteness. The ATM Operator plaintiffs understood Mastercard to agree to produce billing data for the years 2011-2014. The parties discussed a potential resolution of the "blended data" issue which would involve disclosure of plaintiffs' proposed un-blending methodology followed by Mastercard's agreement to it as admissible substitute evidence. Given the scheduling needs of this litigation, the ATM Operator plaintiffs have noticed a Rule 30(b)(6) deposition of Mastercard to explore topics related to these data disputes but has agreed to defer the deposition and to hold the Notice in abeyance pending progress stemming from further negotiations with Mastercard.

The ATM Operator plaintiffs cannot proceed with their economic analysis without a fulsome set of data or, at least, agreed estimates of what that data shows. It is unlikely that the necessary data—and the necessary economic analysis—will be completed in time to meet the Court's current schedule of April 12, 2019 for the filing of Motions for Class Certification. Nor is it clear when the parties' data and the third-parties' data will be fulsome enough to permit the completion of an accurate and reliable economic model for class certification purposes. Accordingly, the ATM Operator plaintiffs are not prepared to represent with certainty that an extension until June 28, 2019, as the consumer plaintiffs are requesting below, will afford sufficient time for preparation of the class certification proceedings. The ATM Operators suggest that opening class certification briefs should be due no sooner than 5-6 weeks after the data issue is resolved and the currently noticed depositions are completed.

The ATM Operator plaintiffs join the position of the consumer plaintiffs below with regard to third-party discovery. Difficulty in obtaining third-party data is an additional factor casting doubt as to whether an extension to June 24 will provide sufficient time in which to prepare plaintiffs' class certification motions.

The ATM Operator Plaintiffs reject any suggestion that their production of data is has been anything but diligent and timely. In fact, the ATM Operator plaintiffs do not possess or control any of the data being sought by defendants. Rather, the data defendants seek is in the custody and control of the ATM Operators' processors. Despite defendants' characterization, the ATM Operator plaintiffs have accommodated defendants' access to and download of data from the processors, including five WebEx sessions with the defendants covering the 10 representative ATM Operator plaintiffs and involving over 50 hours of attorney time. Similarly, the ATM Operator plaintiffs reject any notion of delay regarding their request for additional data. Defendants' initial production together included nearly 500 GB of data, corresponding to more than 100,000,000 pages of information. Unfamiliar with this data, the ATM Operators proceeded with due haste and diligence to determine the sufficiency of defendants' data production and the additional material that now proves necessary to properly litigate this matter.

**Consumer Plaintiffs' Position**

Until the day this report was due, Consumer Plaintiffs planned to ask the Court for an extension from April 12 to May 24, 2018 to move for class certification. However, earlier today Chase sent the Mackmin Plaintiffs a letter in which it committed to produce four different types of data. While two of the data types will be produced by year's end, one will not be produced until the end of February 2019 and, most importantly, the fourth type of data—a database Chase previously produced but had to withdraw because it contained errors—will not be produced until

early April 2019. Especially given the fact that this data has already been produced with errors, Mackmin Plaintiffs need sufficient time to ensure the data being produced in April 2019 is sufficient for their purposes, and to ask any questions needed to understand the data itself. Given this situation—which Plaintiffs could not have anticipated and only learned of today—Consumer Plaintiffs cannot be in a position to move for class certification by May 24, 2019. Indeed, Mackmin Plaintiffs served a 30(b)(6) deposition notice on Chase containing various data topics, and Mackmin Plaintiffs cannot proceed with this deposition without having the data itself. For that reason, Consumer Plaintiffs will be moving the Court for an extension until June 28, 2019, with a reservation of rights if at that time Plaintiffs still do not have third party data, or if there are substantial issues with any of Chase's four databases. *See* Case No. 11-cv-1831, Dkt No. 148 ¶ 3.

In addition, there are still significant data outstanding from multiple third parties. The most recalcitrant ones—NYCE, FNIS and AFFN—are all related companies represented by the same counsel. Plaintiffs' motion to compel NYCE (*Mackmin v. NYCE*, 18-cv-11517 (D.N.J.) (Waldor, M.J.)) will be transferred to this Court pursuant to Order entered December 4, 2018. Plaintiffs have moved to transfer similar motions against AFFN and FNIS (*Mackmin v. Visa*, 18-mc-00057 (M.D. Fla.) (Sansone, M.J.)). The AFFN/FNIS Court has given AFFN/FNIS until January 16 to file their opposition brief, and their counsel have indicated they intend to request leave to file a 30-page opposition. Since this Court will be hearing the virtually identical NYCE motion, Plaintiffs respectfully suggest that communication with the AFFN/FNIS Court about this Court's preferences may be productive. *See* Fed. R. Civ. P. 45(f) advisory committee note (2013) ("Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions.")

**Defendants' Position**[1]

Defendants do not oppose a reasonable extension of the class certification deadline to a date certain and reserve the right to seek a commensurate extension of time to respond.

Defendants oppose Operator Plaintiffs' request for an open-ended extension of time. It is unwarranted and unnecessary. Operator Plaintiffs claim the filing deadline should be adjourned indefinitely because (i) they would like Mastercard to produce data for a time period longer than previously agreed-upon and (ii) they are having difficulty segregating bank transactions from non-bank transactions in the network-produced data. Both of those issues were the subject of extensive discussions between Mastercard and all three plaintiff groups during the first half of this year, and those discussions concluded with the production of agreed-upon data sets in July 2018. Despite vague indications in previous correspondence that Operator Plaintiffs might need additional data, the two issues raised in this Joint Status Report were first presented to Mastercard in a letter received on the morning of Thanksgiving (less than one month ago), followed by a series of deposition notices two business days later. Notwithstanding Operators Plaintiffs' delay in raising these issues and their inaccurate account above of the December 20 meet and confer, Mastercard will endeavor to resolve these two issues with Operator Plaintiffs outside of Court intervention.

To advance the consensual resolution of Operator Plaintiffs' untimely request to re-open negotiations on the time frame of production, Mastercard is willing to discuss further data productions. No agreement to produce additional data has yet been reached, but Mastercard is hopeful that negotiations will be fruitful. Operator Plaintiffs have yet to explain any basis for their request for certain data, which must be balanced against the burdens imposed by producing

---

[1] Defendants remain mindful of the Court's preference to receive status reports limited to three pages and regret the length of this report. Defendants were unable to persuade Operator Plaintiffs to limit or streamline the issues raised in their sections above.

that data, particularly when the requested data is significantly incomplete (contrary to Operator Plaintiffs' representation that the data is in Mastercard's "possession") and therefore potentially not suited to Operator Plaintiffs' as-yet unexplained purposes.

As for the presence of bank and non-bank transactions in the data Mastercard has provided, that is simply a feature of how the data is generated and stored in the ordinary course of business. Since at least March 2018, Mastercard advised all three plaintiff groups that no field in the database designated certain transactions as "bank" ATM transactions and others as "non-bank" transactions. In a show of good faith, Mastercard proposed a methodology to distinguish between bank and non-bank transactions, but Operator Plaintiffs claim that methodology is "unworkable." Mastercard remains willing to confer about other methods Operator Plaintiffs and their supporting experts might propose for conducting their analysis.

Separately, Operator Plaintiffs' data productions, which continue to trickle in, appear to have significant gaps. A central premise of Operator Plaintiffs' case is that ATM surcharges correlate with "net interchange." However, substantial portions of the Operator Plaintiffs' data productions to date do not cover the time period since this action was commenced, much less the entire class period. These deficiencies frustrate Defendants' ability to test the central hypothesis of Operator Plaintiffs' case – that ATM owners actually alter surcharges based on changes in "net interchange." Operator Plaintiffs' only response is to claim they do not "possess or control" their own data. Defendants will continue to discuss this deficiency with Operator Plaintiffs, including potential remedies for the missing data.

Lastly, with respect to Chase's data productions, Chase has consistently worked in good faith with Consumer Plaintiffs concerning various categories of data they have sought in this litigation. With the exception of the corrected data, all of the data that Chase has yet to produce

comes from new sources beyond those Chase previously agreed to produce (and did produce during the summer of 2018). These new sources of data implicate substantial burdens, including the manual collection of voluminous records that Chase does not otherwise access for business purposes. Notwithstanding these burdens, on November 30, 2018, after substantial investigation into collection costs and methodologies, Chase offered to produce these additional sources of data. Consumer Plaintiffs accepted Chase's offer on December 13, 2018, and today, eight days later, Chase proposed timelines for its production (with the additional data sources being produced by the end of February). Chase makes these clarifications not to establish the basis for any dispute, but to clarify to the Court that Chase has worked (and continues to work) with Consumer Plaintiffs in good faith to respond to their data requests.

## II. DEPOSITIONS

Plaintiffs have noticed 30(b)(6) and fact witness depositions of current and former employees of Defendants. The parties are currently negotiating a protocol under which those depositions will proceed, and will keep the Court apprised of any issues regarding them.

## III. OTHER MATTERS

### A. *Stoumbos* Substitution

The parties in the *Stoumbos* case have agreed that new representative plaintiffs and putative class representatives should be permitted to substitute for Ms. Stoumbos, the current representative, and will shortly file a stipulation effectuating that substitution. The parties do not expect this substitution will affect any scheduling issues in this matter.

Dated: December 21, 2018

By: ______/s/__________________________
Jonathan L. Rubin (D.C. Bar No. 353391)
MOGINRUBIN LLP
1615 M Street, NW, Third Floor
Washington, D.C. 20036
Tel: (202) 630-0616
Fax: (877) 247-8586
jrubin@moginrubin.com

Daniel J. Mogin (*pro hac vice*)
Jodie M. Williams (*pro hac vice*)
Jennifer M. Oliver (*pro hac vice*)
MOGINRUBIN LLP
600 West Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 687-6611
Fax: (619) 687-6610
dmogin@moginrubin.com
jwilliams@moginrubin.com
joliver@moginrubin.com

*Counsel for Plaintiffs the National ATM Council, Inc.; ATMs of the South, Inc.; Business Resource Group, Inc.; Just ATMs USA, Inc.; Wash Water Solutions, Inc.; ATM Bankcard Services, Inc.; Selman Telecommunications Investment Group, LLC; Scot Garner d/b/a SJI; Turnkey ATM Solutions, LLC; Trinity Holdings Ltd, Inc.; and T&T Communications, Inc. and Randal N. Bro d/b/a T & B Investments*

Dated: December 21, 2018

By:______/s/___________________________
Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Jennifer Fountain Connolly
(D.C. Bar No. 1019148)
HAGENS BERMAN SOBOL SHAPIRO LLP
1701 Pennsylvania Ave. NW, Suite 200
Washington, D.C. 20006
Telephone: (202) 248-5403
jenniferc@hbsslaw.com

Stephen R. Neuwirth (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
stephenneuwirth@quinnemanuel.com

Adam B. Wolfson (*pro hac vice*)
Viola Trebicka (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
adamwolfson@quinnemanuel.com
violatrebicka@quinnemanuel.com

Craig L. Briskin
(D.C. Bar No. 980841)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Cbriskin@findjustice.com

*Interim Co-Lead Counsel for Direct Purchaser Consumer Plaintiffs*

Dated: December 21, 2018

By:_____/s/_______________________________
Douglas G. Thompson (D.C. Bar # 172387)
dthompson@finkelsteinthompson.com
Michael G. McLellan (D.C. Bar # 489217)
mmclellan@finkelsteinthompson.com
FINKELSTEIN THOMPSON LLP
3201 New Mexico Avenue NW, Suite 395
Washington, D.C. 20016
Telephone: 202-337-8000
Facsimile: 202-337-8090

Christopher Lovell
clovell@lshllp.com
Gary S. Jacobson
gsjacobson@lshllp.com
Merrick Scott Rayle
mrayle@lshllp.com
LOVELL STEWART HALEBIAN
JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

*Interim Class Counsel for the Independent ATM Consumers*

Dated: December 21, 2018

By:_____/s/______________________________
Mark R. Merley (D.C. Bar No. 375866)
Matthew A. Eisenstein (D.C. Bar No. 476577)
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Tel.: (202) 942-5000
Fax: (202) 942-5999
mark.merley@arnoldporter.com
matt.eisenstein@arnoldporter.com

*Counsel for Defendants Visa Inc., Visa U.S.A. Inc., Visa International Service Association, and Plus System, Inc.*

Dated: December 21, 2018

By: ________/s/_____________________________

Kenneth A. Gallo (D.C. Bar No. 371253)
Justin Anderson (D.C. Bar No. 1030572)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 223-7300
Fax: (202) 223-7420
kgallo@paulweiss.com

Gary R. Carney (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
Fax: (212) 757-3990
gcarney@paulweiss.com

*Counsel for Defendants Mastercard Incorporated and Mastercard International Incorporated*

Dated: December 21, 2018

By:______/s/___________________________

Michael B. Miller (D.C. Bar No. NY0140)
Mark P. Ladner (*pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019-9601
Tel.: (212) 468-8000
Fax: (212) 468-7900
mladner@mofo.com
mbmiller@mofo.com

*Counsel for Defendants Bank of America, National Association; NB Holdings Corporation; and Bank of America Corporation*

Dated: December 21, 2018

By: /s/
Peter E. Greene (D.C. Bar No. 305607)
Boris Bershteyn (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
Tel.: (212) 735-3620
Fax: (917) 777-3620
peter.greene@skadden.com

*Counsel for Defendants Chase Bank USA, N.A.; JPMorgan Chase & Co.; and JPMorgan Chase Bank, N.A.*

Dated: December 21, 2018

By:_______/s/______________________
William F. Cavanaugh, Jr. (*pro hac vice*)
Daniel S. Ruzumna (D.C. Bar No. 450040)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel.: (212) 336-2000
Fax: (212) 336-2222
wfcavanaugh@pwbt.com
druzumna@pbwt.com

*Counsel for Defendants Wells Fargo & Company and Wells Fargo Bank, N.A.*