**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDREW MACKMIN, *et al.*,<br><br>*Plaintiffs*,<br>*v*.<br><br>VISA INC., *et al.*,<br><br>*Defendants*. | Civil Action No. 1:11-Cv-1831-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |
| MARY STOUMBOS,<br><br>*Plaintiff*,<br><br>*v*.<br><br>VISA INC., *et al.*,<br><br>*Defendants*. | Civil Action No. 1:11-Cv-1882-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |

**CONSUMER PLAINTIFFS' MOTION TO EXTEND**
**CLASS CERTIFICATION DEADLINE**

As is common in antitrust class actions such as this, Plaintiffs' respective motions for class certification will rely in no small part on econometric models constructed from, *inter alia*, the Defendants' and third parties' transactional and other ATM-related data. Given this data's central importance, the operative Scheduling Order contemplates that Plaintiffs may seek to extend the current April 12, 2019 class certification deadline if, by December 31, 2018 (*i.e.*, the date of this motion), Plaintiffs "have not received necessary data from third parties in response to plaintiffs' subpoenas." Case No. 11-cv-1831, Dkt. No. 148 at ¶ 3. Unfortunately, such an extension is necessary both for that and other even more pressing reasons. Despite Consumer Plaintiffs' sustained efforts, significant subpoenaed data remains outstanding, substantial portions of it subject to motions to compel that have been pending since July 2018. Moreover, ***Defendants'*** data productions remain incomplete and Plaintiffs have recently learned that certain essential data will not be produced until ***April 2019***, at the earliest.

To afford adequate time to collect and interpret both Defendant and third-party data, Consumer Plaintiffs respectfully request that the Court extend the class certification deadline eleven weeks, to June 28, 2019. No party opposes an extension. In particular, all Defendants but MasterCard have confirmed that they do not object to a June 28, 2019 deadline for class certification motions.[1] MasterCard likewise does not object to "a reasonable extension of the class certification deadline," Case No. 11-cv-1831, Dkt. No. 150 at 6, but was not able to provide its position on the proposed eleven-week extension by the time of this filing. MasterCard intends

[1] These Defendants' non-opposition is conditioned on (a) extending all case deadline by a commensurate amount of time, (b) fixing the same class certification and case deadlines for all Plaintiff groups, and (c) Plaintiffs' willingness to discuss a further extension of the case schedule after Plaintiffs' class certification motions are filed. Consumer Plaintiffs have no objection to these conditions, which are embodied in the Proposed Second Amended Scheduling Order here appended.

to state its position shortly. ATM Operator Plaintiffs also do not oppose an extension and have separately requested that class certification motions be deferred until data issues are resolved. *See id.* at 3.[2] For planning purposes, Consumer Plaintiffs believe that a calendared deadline of June 28, 2019 is preferable, with the understanding that Plaintiffs may seek further relief if there are unanticipated delays in the production of data or information necessary for its interpretation.

## I. A Substantial Number of Defendant and Third-Party Data Productions Remain Outstanding.

In their respective motions for class certification, it will be Plaintiffs' burden to establish that they can demonstrate class members were affected by the challenged competitive restraints ("antitrust impact") via common proof, and that they can calculate the putative classes' damages through similarly common proof. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013); *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 268 (D.D.C. 2002). To carry this burden, both at class certification and during the merits phase of the case, Consumer Plaintiffs intend to proffer, among other things, expert testimony based on econometric models comparing the access fees class members paid in the "real" world against projections of the access fees they would have paid in the absence of the challenged anticompetitive rules (the so-called "but-for" world).

Although Consumer Plaintiffs intend to draw on the entire discovery record, their econometric models will be data driven, as is customary. In particular, the models will be constructed from data showing the fees—including ATM access fees, interchange fees, and network fees—that pass between the participants in foreign ATM transactions. These data were a heavy focus of Plaintiffs' April 2017 document requests. They are likewise the centerpiece of

[2] ATM Operator Plaintiffs have indicated that they intend to submit a separate motion requesting that the Amended Scheduling Order be so modified.

the 25 third-party subpoenas Plaintiffs served on non-party ATM networks, processors, and operators shortly after discovery opened. From the outset of discovery, Consumer Plaintiffs prioritized and diligently pursued these data requests. Despite Consumer Plaintiffs' concerted efforts, however, a significant portion of this requested data remains outstanding from both the Defendants and key third parties.

### A. Outstanding Third-Party Data Productions

Third-party data is fundamental to these cases. This is because Plaintiffs allege that the restraints at issue affected the pricing of transactions routed over ***all*** ATM networks, and not just those operated by Defendants Visa and MasterCard. Visa and MasterCard, however, do not maintain data for affected transactions processed through third-party networks; such data is maintained by third-party networks, processors, and ATM operators that both Plaintiffs and Defendants have subpoenaed.

Although Plaintiffs served their subpoenas in early 2018,[3] eleven of the twenty-five subpoenaed third parties have yet to produce data. *See* Appendix A. Motions to compel are pending against four of those entities—namely, NYCE, AFFN, FNIS and First Data.[4] Plaintiffs filed their motions as to NYCE, AFFN, and FNIS in July 2018, as soon as they reached an impasse in negotiations. By Order dated December 4, 2018, Plaintiffs' fully-briefed NYCE motion was transferred to this Court pursuant to Rule 45(f). *See* Declaration of Jennifer Fountain Connolly ("Connolly Decl.") Ex. B. NYCE is a wholly-owned subsidiary of FNIS and an affiliate of AFFN, and the three related entities are represented by the same counsel. They have

---

[3] The only exception is Cardtronics, which Plaintiffs subpoenaed on September 4, 2018.

[4] *See Mackmin v. NYCE*, 18-cv-11517 (D.N.J.) (NYCE motion); *Mackmin v. Visa*, 18-mc-00057 (M.D. Fla.) (AFFN and FNIS motions); *Mackmin v. Visa*, 18-cv-05067 (N.D. Ga) (First Data motion).

each also raised virtually identical objections to production. For efficiency and to ensure consistent outcomes, Plaintiffs moved on December 19, 2018 to transfer their AFFN and FNIS motions to this Court.[5] The Mackmin Plaintiffs' separate October 2018 motion to compel First Data is being held in abeyance, as First Data recently reengaged in production negotiations that the Mackmin Plaintiffs hope will resolve outstanding disputes.

Of the remaining seven nonproducing third parties, Consumer Plaintiffs have determined that three—Co-Op, EFX and Payment Alliance International ("PAI")—do not have significant responsive data in formats Consumer Plaintiffs can utilize. Consumer Plaintiffs accordingly are no longer seeking data from those third parties. The four remaining third parties withholding data—Pulse, Cardtronics, Vantiv and WorldPay—have indicated some willingness to comply with the subpoenas, and Consumer Plaintiffs are continuing to negotiate with those entities in ongoing attempts to avoid unnecessary motion practice.

In addition, Plaintiffs have requested important supplementation from nine of the fourteen third parties that have produced data—Accel, Allpoint, BOKF, Columbus Data, Elan, Fisrv, Jack Henry, Star, and Switch. *See* Appendix A. The requested supplementation is needed to address significant gaps in those third parties' productions; *e.g.*, omitted fee data, as well as data necessary to determine in which consumer class the different categories of transactions fall. Productions from several third parties are of limited utility without the supplementation Plaintiffs

---

[5] AFFN and FNIS are opposing transfer and have been given until January 16 to submit an opposition, which they have indicated will be over-length at 30 pages. As Consumer Plaintiffs indicated in the December 21, 2018 Joint Status submission, communication with the putative transferor Court may be productive given the substantial overlap between the NYCE motion pending in this Court and the motions pending against its co-represented affiliates. *See* Fed. R. Civ. P. 45(f) advisory committee note (2013) ("Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions.").

are seeking.

For ease of reference, the below chart summarizes the current status of third-party data discovery:




### B. Outstanding Defendant Data Productions

Although Defendants began producing data in July 2018, only Wells Fargo has completed the process as of the date of this motion (and even it did not do so until late November). The remaining Defendants all have significant productions remaining.

***Chase***. The current status of Chase's data production is a particular cause for concern. In August of this year, after months upon months of negotiations and then several more months Chase spent collecting and producing data, the Mackmin Plaintiffs identified certain irregularities in Chase's access fee data and inquired whether they resulted from a production

error. *See* Connolly Decl. ¶ 2. It was not until November 30, ***more than three months later***—and after multiple rounds of inquiry from Plaintiffs, including simple requests for a response—that Chase confirmed an error had indeed occurred. *See id.* Chase further specified on December 21 that it does not believe it can complete a replacement production until ***early April 2019***, roughly eight months after the Mackmin Plaintiffs originally identified the problem. *See id.* Ex. A.

On the date of this submission, and again after months of inquiry, Chase produced outstanding foreign fee and access fee rebate data that are responsive to Plaintiffs' April 2017 production requests. Chase has indicated, however, that a separate production of its backend billing data—an essential source for Chase's interchange and network fees—will not be completed until the end of February 2019. *See id.*

***Visa***. More than a year ago, Consumer Plaintiffs requested data elements distinguishing between Visa transactions conducted at bank and non-bank ATMs. *See id.* ¶ 3. This detail is necessary to sort transactions into the two consumer classes, one of which encompasses bank ATM transactions and the other non-bank (or "independent") transactions. On December 24, 2018, Visa indicated that, although originally omitted from its data productions, its databases contain a field that can be used to segregate transactions in this fashion. *See id*. Visa committed to reproduce the data with the field included, along with a variable to identify certain "on-us" transactions that are not within either class definition. *See id.* While this production is anticipated in early January 2019, Plaintiffs could have commenced that review months ago had this additional data been produced sooner.

***MasterCard***. Although the Class Period begins in 2007, and Plaintiffs requested data productions extending back to that year, MasterCard has to date only produced data spanning

2015-2018 from its billing database and 2011-2018 from its transactional database. *See id.* ¶ 4. MasterCard originally represented that retrieving data outside of those periods was unduly burdensome, but just weeks ago MasterCard expressed an ability to expand its data productions to include earlier periods. However, those negotiations are ongoing. *See id.* The outstanding data from previously-unproduced years are important because they cover a period in which both MasterCard and Visa adopted "new 'tiered' interchange rate reductions," which, Plaintiffs allege, impacted access fee levels across the respective classes. *See* Mackmin SAC ¶¶ 89-90 (Dkt. No. 84). Visa has produced data for this critical period; to date, MasterCard has not.

***Bank of America***. In September 2018, after numerous follow up questions and inquiries, the Mackmin Plaintiffs learned that Bank of America had intentionally excluded certain non-withdrawal data from its prior productions. The Mackmin Plaintiffs promptly notified Bank of America that it must produce the omitted data, which is responsive to the Mackmin Plaintiffs' April 2017 document requests. *See* Connolly Decl. ¶ 5. As of the date of this submission, Bank of America has indicated it is willing to consider producing this data, but has not committed to doing so. As the Mackmin Plaintiffs have explained in discovery correspondence, the omitted data is essential to, *inter alia*, interpret the withdrawal data Bank of America has produced. *See id*.

### C. Outstanding Requests for Data Clarification

The data Defendants and third parties have produced in these cases has rarely been useful upon receipt. As is common in antitrust class actions such as these, and particularly true in this industry where data fields are not standardized, Consumer Plaintiffs have required further clarification as to the fields and variables the data contain, most of which are highly technical and not self-explanatory, in order to simply interpret and deploy the data. Defendants have

requested the same sorts of clarifications with respect to the third-party data productions they have received.

Many of Consumer Plaintiffs' data clarification questions remain outstanding. Most prominently, affiliated third parties Vantiv, Worldpay and Jeanie have refused to address data issues in correspondence, and the Mackmin Plaintiffs have therefore been required to issue a Rule 30(b)(6) deposition notice to obtain the information needed to construe the data and data samples these third parties have produced.[6] The deposition is noticed for January 8, 2019, but the responding parties have yet to confirm their availability. Consumer Plaintiffs have similar clarification questions pending with seven additional third parties. *See* Appendix A.

Defendants, too, have yet to provide information needed to interpret their data. Visa and MasterCard have committed to engage in an open exchange of information, which hopefully will obviate the need for any data-related depositions. But the Bank Defendants in the Mackmin case have all declined to answer numerous data-related inquiries in correspondence. These issues will be the subject of Rule 30(b)(6) depositions scheduled for February 2019. *See* Appendix A.

## II. A Modest Extension of the Class Certification Deadline is Warranted.

Although significant data and clarifying information remain outstanding, this is not the result of any delay on Consumer Plaintiffs' part. Consumer Plaintiffs have spent more than a year aggressively pursuing their data production requests, and have amassed a mountain of correspondence to show for it.[7] By any measure, Consumer Plaintiffs have been diligent, and no

---

[6] Visa and MasterCard have their own pending questions for WorldPay, Vantiv and Jeanie, and have indicated that they will cross-notice the 30(b)(6) deposition.

[7] Consumer Plaintiffs have not burdened the Court with all or even a significant portion of the parties' discovery correspondence involving data issues. The essential facts, including as to what data remain outstanding, are not in dispute. But if this Court wishes to review the correspondence that has led to the current circumstances, Consumer Plaintiffs are more than willing to submit it.

party has suggested otherwise. But negotiating data productions requires a forthright exchange of highly technical information, all of which is possessed by the producing parties. This is an iterative process that takes time, particularly with third parties.

Although Consumer Plaintiffs believe that data productions should have been made in a timelier fashion, there is no need to lay blame at this stage. The inescapable reality is that a wealth of ATM data remains outstanding through no fault of Consumer Plaintiffs, and this data is absolutely essential for class certification proceedings. Just by way of example, among the non-producing third parties are three of the leading ATM networks in the country—NYCE, PULSE and AFFN. Publically available data indicate that these three networks account for a substantial percentage of all ATM transactions.[8] Separately, FNIS—a leading ATM processor against whom Plaintiffs have moved to compel—processes roughly *256 million* ATM transactions annually and has admitted that it maintains seven years of responsive data. *See id*. Ex. D at 2-3. Cardtronics, which also has not produced data yet, is the "world's largest ATM operator," handling more than 2.6 billion ATM transactions in 2017 alone.[9] Outstanding Defendant data is no less substantial. It includes: Chase's corrected access fee data, which, as noted above, Chase claims it cannot produce until April 2019; a reproduction of Visa's AIM database; MasterCard data covering critical pre-2015 time periods; and important Bank of America non-withdrawal data that Plaintiffs only recently learned was being withheld.

Consumer Plaintiffs cannot reasonably construct the econometric models necessary for

---

[8] Although ATM market-share data generally are not publicly available, a published report from the Federal Reserve Bank of Kansas City indicates that, as of 2006, NYCE was the third largest ATM network in terms of transaction volume, Pulse the fifth largest, and AFFN the seventh largest. *See* Connolly Decl. Ex. C at 40.

[9] *See* https://www.cardtronics.com/.

class certification until Defendants produce their data and substantially address pending requests for clarification. Defendants—who do not oppose an extension—do not contend otherwise. Consumer Plaintiffs do not wish to unnecessarily delay class certification proceedings and, in fact, as the parties' most recent status report relates the parties are currently negotiating a deposition schedule. *See* Case No. 11-cv-1831, Dkt No. 150 at 8. Given the pace of discovery, and the data that is outstanding, Consumer Plaintiffs believe that an eleven-week extension of the class certification motion deadline, as well as all subsequent case deadlines, strikes the appropriate balance. Without imposing any conceivable prejudice on Defendants, the extension will ensure that Consumer Plaintiffs are not prejudiced by production delays they have done everything to avoid. Such an extension will also set a reasonably imminent class certification deadline that can continue to motivate third-party engagement and allow for the prompt resolution of Plaintiffs' pending motions to compel.

**CONCLUSION**

For the foregoing reasons, Consumer Plaintiffs respectfully request that their motion to extend the class certification motion deadline to June 28, 2019 be granted, and that the Proposed Second Amended Scheduling Order appended to this motion be so-ordered.

Dated: December 31, 2018

By: /s/ Steve W. Berman
Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Jennifer Fountain Connolly
(D.C. Bar No. 1019148)
HAGENS BERMAN SOBOL SHAPIRO LLP
1701 Pennsylvania Ave. NW, Suite 200
Washington, D.C. 20006
Telephone: (202) 248-5403
jenniferc@hbsslaw.com

Stephen R. Neuwirth (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
stephenneuwirth@quinnemanuel.com

Adam B. Wolfson (*pro hac vice*)
Viola Trebicka (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
adamwolfson@quinnemanuel.com
violatrebicka@quinnemanuel.com

Craig L. Briskin
(D.C. Bar No. 980841)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Cbriskin@findjustice.com

*Interim Co-Lead Counsel for Direct Purchaser Consumer Plaintiffs*

Dated: December 31, 2018

By: /s/ Douglas G. Thompson
Douglas G. Thompson (D.C. Bar # 172387)
dthompson@finkelsteinthompson.com
Michael G. McLellan (D.C. Bar # 489217)
mmclellan@finkelsteinthompson.com
FINKELSTEIN THOMPSON LLP
3201 New Mexico Avenue NW, Suite 395
Washington, D.C. 20016
Telephone: 202-337-8000
Facsimile: 202-337-8090

Christopher Lovell
clovell@lshllp.com
Gary S. Jacobson
gsjacobson@lshllp.com
Merrick Scott Rayle
mrayle@lshllp.com
LOVELL STEWART HALEBIAN
JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

*Interim Class Counsel for the Independent ATM Consumers*

# APPENDIX A

| THIRD-PARTY DATA STATUS | | |
|---|---|---|
| **Third Party** | **Data Production(s)** | **Outstanding** |
| **Accel** | July 11, 2018 | Clarification questions and request for data supplementation pending. |
| **Allpoint** | October 24, 2018 | Clarification questions and request for data supplementation pending. |
| **Armed Forces Financial Network ("AFFN")** | None (beyond sample) | Motion to compel pending as of July 20, 2018; Rule 45(f) transfer motion pending as of December 19, 2018. |
| **BOKF** | February 13, 2018; June 8, 2018; July 27, 2018; July 30, 2018; November 28, 2018 | Clarification questions and request for data supplementation pending. |
| **Cardtronics** | None | Cardtronics has agreed to produce data, but entire production is outstanding. |
| **Columbus Data** | September 9, 2018; December 3, 2018 (corrected prior production). | Clarification questions and request for data supplementation pending. |
| **Co-Op** | None | Nothing currently. Plaintiffs no longer pursuing data from Co-Op. |
| **CU24** | March 13, 2018; April 27, 2018; July 18, 2018; November 9, 2018 | Nothing currently. |
| **Elan** | September 11, 2018 | Clarification questions and request for data supplementation pending. |
| **EFX** | None | Nothing currently. Plaintiffs no longer pursuing data from EFX. |
| **Fidelity National Information Services ("FNIS")** | None | Motion to compel pending as of July 20, 2018; Rule 45(f) transfer motion pending as of December 19, 2018. |
| **First Data** | None | Motion to compel pending as of October 15, 2018; motion in abeyance as parties |

# APPENDIX A

| | | |
|---|---|---|
| **Fiserv** | July 11, 2018; September 14, 2018 | Clarification questions and request for data supplementation pending. |
| **Jack Henry** | July 24, 2018 | Request for data supplementation pending. |
| **Jeanie** | April 26, 2018 | 30(b)(6) deposition on data topics noticed for January 8, 2019 |
| **NYCE** | None | Motion to compel pending as of July 10, 2018; motion transferred to this Court by Order dated December 4, 2018. |
| **MoneyPass** | September 11, 2018 | Nothing currently. |
| **Payment Alliance International ("PAI")** | None | Nothing currently. Plaintiffs no longer pursuing data from PAI. |
| **Publix Super Markets** | March 13, 2018; March 26, 2018; April 23, 2018 | Nothing currently. |
| **Pulse** | None (beyond sample) | Production forthcoming with agreement on parameters as of December 13, 2018. |
| **Shazam** | April 23, 2018 | Nothing currently. |
| **Star** | August 21, 2018 | Clarification questions and request for data supplementation pending. |
| **Switch Commerce** | February 28, 2018; March 26, 2018 | Request for data supplementation pending. |
| **Vantiv** | None (beyond sample) | 30(b)(6) deposition on data topics noticed for January 8, 2019 |
| **Worldpay** | None (beyond sample) | 30(b)(6) deposition on data topics noticed for January 8, 2019 |

## PARTY DATA STATUS

| Party | Data Production(s) | Outstanding |
|---|---|---|
| **Chase** | June 28, 2018; July 10, 2018; July 15, 2018; July 26, 2018 | Backend billing data to be produced by February 28, 2019. Corrected transactional data to be produced in early April 2019. Unanswered data |

# APPENDIX A

| | | |
|---|---|---|
| | | clarification questions subject of 30(b)(6) deposition scheduled for February 26, 2019. |
| **Bank of America** | July 2, 2018; July 10, 2018; August 27, 2018 | Pending request for non-withdrawal data withheld from Bank of America's data productions. Unanswered data clarification questions subject of 30(b)(6) deposition scheduled for February 22, 2019. |
| **Wells Fargo** | July 31, 2018; September 25, 2018; November 21, 2018 | Unanswered data clarification questions subject of 30(b)(6) deposition scheduled for February 12, 2019. |
| **MasterCard** | July 5, 2018; July 24, 2018 | Pending request that MasterCard supplement data production to cover prior years. Unanswered data clarification questions subject of to-be-scheduled 30(b)(6) deposition. |
| **Visa** | July 16, 2018; July 18, 2018; July 30, 2018 | Reproduction of AIM database to include additional fields and variables anticipated early January 2019. Unanswered data clarification questions subject of 30(b)(6) deposition scheduled for February 6, 2019. |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 31, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ Steve W. Berman
Steve Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com