IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANDREW MACKMIN, et al.<br><br>Plaintiffs<br><br>v.<br><br>VISA INC., et al.<br><br>Defendants | ) | Case No. 1:11-CV-1831-RJL |

**FIDELITY NATIONAL INFORMATION SERVICES INC.'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFFS' THIRD PARTY SUBPOENA FOR PRODUCTION OF DOCUMENTS**

Pursuant to Federal Rule of Civil Procedure 45, third party Fidelity National Information Services, Inc. ("FNIS") responds and presents the following objections to the third party document subpoena, dated August 16, 2018 (the "Subpoena"), of plaintiffs Andrew Mackmin and Sam Osborn (collectively "Plaintiffs") as follows. FNIS hereby reserves the right to supplement these responses and objections.

**GENERAL OBJECTIONS AND RESPONSES**

FNIS objects to the Subpoena as not properly directed to FNIS because it seeks information related to the processing of ATM transactions. FNIS responds that, as a parent holding company, it is not an "ATM Transaction Processor" as that term is defined in the Subpoena. FNIS further responds by identifying two of its subsidiaries that process ATM transactions under the FIS™ brand name: (1) Metavante Corporation ("Metavante"); and (2) Fidelity National Card Services, Inc. ("FNCS"). In making the specific objections and responses below, FNIS has interfaced with and is informed by Metavante and FNCS, without admission herein that FNIS has possession, custody, or control over Metavante and FNCS documents, and

reserving all rights, remedies, and legal arguments relating thereto. FNIS incorporates these general objections and responses into each of the specific objections and responses below.

## SPECIFIC OBJECTIONS AND RESPONSES

1. For each quarter during the Relevant Time Period, documents sufficient to show, by ATM Acquirer, ATM (with identifying number for each terminal, any identification of the type of location, and whether the ATM was bank-owned or non-bank-owned), ATM Network used, and transaction type (e.g., On Us Transaction or Foreign ATM Transaction), the following information for Cash Withdrawals for which you served as an ATM Transaction Processor:

   a. Total number of Cash Withdrawals;

   b. Dollar amount of Cash Withdrawals;

   c. ATM Fees, broken down by type (ATM Access Fee, ATM Interchange Fee, Foreign ATM Fee, ATM Switch Fee, ATM Network Fee, etc.);

   d. Revenue you derived or obtained; and

   e. ATM Network Assessments, ATM Network Fees, or any other fees or amounts, broken down by type, you paid or were paid.

**RESPONSE:** FNIS objects that Request No. 1 is overly broad and unduly burdensome because it seeks data related to all cash withdrawal ATM transactions since October 1, 2007. To provide perspective, each year Metavante and FNCS collectively acquire approximately 256 million ATM transactions, across 13 switches. In addition, Metavante and FNCS acquire approximately 944 million Gateway transactions annually, the data for which are intermixed with ATM transactions, for a total of approximately 13.2 billion transactions since October 1, 2007 (i.e., 256 million ATM transactions / yr. + 944 million Gateway transactions / yr. = 1.2 billion transactions / yr. x 11 years = 13.2 billion transactions).

Due to storage constraints, Metavante and FNCS do not have ATM transaction data dating back 11 years. Full transaction records are only kept on the processing switch for a few days, the transaction depository and research system keeps a scrubbed version of the transaction

record for approximately 6 months, and it is then moved to cold storage (microfiche) for a variable amount of time depending upon the switch, with 7 years being the standard.

Even limited to transaction data within the foregoing time periods, gathering this data poses a monumental undertaking because the data would need to be manually pulled from multiple sources (i.e., transaction data, billing data and invoices, and pass-through billing data and invoices), and the data is not set up to tie back to specific cash withdrawals as requested. Moreover, because Metavante and FNCS operate across two unique ATM environments, the process for gathering the data will not be the same. Accordingly, FNIS further objects to this request in that it imposes undue burden that is disproportionate to the needs of the case and far outweighs any likely benefit from the information requested.

Using best estimates, FNIS is informed by Metavante and FNCS that it would take a full-time, dedicated employee approximately 7 days to manually download the data for each quarter requested. Thus, obtaining 7 years of potentially available data would take approximately 1,568 labor hours (7 years x 4 quarters x 7 days x 8 hours = 1,568 hours). At the normal professional service rate of $190/hour, the cost would be $297,920. This amount is exclusive of additional vendor and storage costs and time and costs of attorney review. FNIS understands from Metavante and FNCS that the time and expense to produce this information is very significant and would be taxing on their businesses because they do not have extra personnel to devote to this undertaking.

FNIS further objects that the information sought by this request constitutes trade secret, confidential and/or competitively sensitive information. FNIS is informed by Metavante and FNCS that all of the data requested is not publicly available, is subject to strict internal controls, and would cause tremendous harm if it were disclosed to Metavante's and FNCS' direct

competitors such as Visa DCS and Mastercard. The ATM processing business is a commodity business in that the services provided are generally interchangeable with those provided by others and the key competitive factor is price. FNIS is informed that Metavante and FNCS have grave confidentiality concerns about producing their most competitively sensitive information to third parties to be disclosed in litigations involving their most significant competitors, Visa and MasterCard. If Metavante's and FNCS' data were disclosed, it could be easily used by other ATM processors to take clients away from Metavante and FNCS.

In addition, FNIS is informed that Metavante and FNCS are parties to contracts with financial institutions and ISOs which prohibit them from disclosing customer data. The inadequate protective order entered in this case is insufficient to protect Metavante's and FNCS' trade secret and other confidential information because, among other reasons: (1) it fails to adequately address how Highly Confidential Information will be protected from disclosure at trial to Visa, MasterCard, and indeed, to the general public; (2) it permits counsel to disclose the "general contents" of any Highly Confidential Information to their clients; (3) it does not prohibit any Highly Confidential Information from being marked as an exhibit in depositions of Visa and MasterCard witnesses; (4) if any party to the action elects to challenge Metavante's or FNCS' designation of the information as Highly Confidential, the party may move the District of Columbia district court for redesignation, thus requiring Metavante or FNCS to travel to a district in which they do not reside to defend their designations; and (5) it fails to make it automatic for each party to destroy subpoenaed information marked Highly Confidential Information upon termination of the litigation.

FNIS further objects to this request in that the data requested is included in reports that contain payment card information that is subject to the Payment Card Industry Data Security

Standard ("PCI DSS"). The PCI DSS does not allow entities involved in card processing to deliver cardholder data to third parties, and thus compliance with this request would potentially put Metavante and FNCS in breach of their PCI obligations. The "PCI DSS applies to all entities involved in payment card processing—including merchants, processors, acquirers, issuers, and service providers," which includes Metavante and FNCS. *See* Requirements and Security Assessment Procedures, Version 3.2.1, Payment Card Industry Security Standards Council, p. 7 (May 2018). The PCI DSS contains 13 pages of requirements to protect the type of cardholder information contained in the data and other information requested in this request. There are at least 11 law firms of record in the putative class actions and therefore undoubtedly dozens of attorneys and law firm personnel who would access this confidential information. Presumably, there will be a similar army of designated experts. There has been no showing that any of the law firms or experts comply with the PCI DSS such that cardholder information would be protected. Likewise, there has been no showing that any of the parties, law firms, or experts would agree to indemnify Metavante and FNCS, or post a bond, if Metavante or FNCS were subject to liability for a data breach that exposes or risks exposure of cardholder data. Metavante and FNCS have strict audit and compliance requirements to keep data protected which would be jeopardized by delivering the data to a non-PCI entity.

FNIS further objects to this request to the extent it would require Metavante or FNCS to produce full or partial PAN information beyond the last four digits of payment card numbers, or any other cardholder identifying information of a person, within the meaning of the Fair Credit Reporting Act ("FCRA") or the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), that would violate the rights of third parties, or otherwise expose or tend to expose Metavante or

FNCS to liability under the FCRA, FACTA, or other statutory or common law claims relating to the disclosure of such information.

FNIS further objects to this request because Plaintiffs cannot establish a “substantial need” for Metavante’s and FNCS’ confidential information that outweighs the burden and prejudice to Metavante and FNCS as non-parties. *See, e.g., Fadalla v. Life Auto. Prod Inc.*, 258 F.R.D. 501, 507 (M.D. Fla. 2001) (where trade secret or other confidential information is sought from a non-party, the subpoenaing party must establish a “substantial need for the [information] that cannot be otherwise met without undue hardship.”). Plaintiffs here bear the burden of establishing that the data they request would be not only be “helpful” to their experts’ economic modeling, but also necessary to enable Plaintiffs’ experts to reach their conclusions. As part of this showing, Plaintiffs should also be required to establish that there is commonality between the data sought from FNIS and the data produced by other parties.

FNIS further objects that compliance with this request would expose Metavante and FNCS to significant expense and Rule 45(d)(2)(B)(ii) therefore requires that any such costs be imposed on Plaintiffs.

Subject to the foregoing, FNIS offers to meet and confer with Plaintiffs regarding this request.

2. For each quarter during the Relevant Time Period, documents sufficient to show, by quarter, ATM Acquirer and ATM:

a. Unique identifying number for each ATM;

b. The name, identification number, and type (Bank ATM Operator or Independent ATM Operator) of each ATM Acquirer;

c. Premises type (e.g., bank, supermarket, convenience store);

d. Address;

e. City;

f. State; and

g. ZIP code.

**RESPONSE:** FNIS objects to Request No. 2 on the grounds that it is overly broad, unduly burdensome, and vague. While not entirely clear, this request appears to ask that FNIS provide detailed information identifying each and every ATM for which Metavante and FNCS provided ATM transaction processing services since October 1, 2007.

Due to storage constraints, Metavante and FNCS do not have ATM transaction data dating back 11 years. Full transaction records are only kept on the processing switch for a few days, the transaction depository and research system keeps a scrubbed version of the transaction record for approximately 6 months, and it is then moved to cold storage (microfiche) for a variable amount of time depending upon the switch, with 7 years being the standard.

Even limited to ATM data within the foregoing time periods, gathering this information would be extremely time consuming because it would need to be manually pulled from multiple sources. Moreover, because Metavante and FNCS operate across two unique ATM environments, the process for gathering the data will not be the same. Using best estimates, FNIS is informed by Metavante and FNCS that it would take a full-time, dedicated employee approximately 1 day to manually download the data for each quarter requested. Thus, obtaining 7 years of potentially available data would take approximately 224 labor hours (7 years x 4 quarters x 8 hours = 224 hours). At the normal professional service rate of $190/hour, the cost would be $42,560. This amount is exclusive of additional vendor and storage costs and time and

costs of attorney review. FNIS understands that the time and expense to produce this information is very significant and would be taxing on Metavante and FNCS because they do not have extra personnel to devote to this undertaking.

FNIS further objects that the ATM information sought by this request constitutes trade secret, confidential and/or competitively sensitive information. FNIS is informed by Metavante and FNCS that this information is not publicly available, is subject to strict internal controls, and would cause tremendous harm if it were disclosed to Metavante's and FNCS' direct competitors such as Visa DCS and Mastercard. Metavante and FNCS operate in a highly competitive market and they have grave confidentiality concerns about handing over a customer list of all ATMs they serve because this information could be used to unfairly compete with Metavante and FNCS and negatively impact their businesses.

FNIS further objects that the inadequate protective order entered in this case is insufficient to protect Metavante's and FNCS' trade secret and other confidential information because, among other reasons: (1) it fails to adequately address how Highly Confidential Information will be protected from disclosure at trial to Visa, MasterCard, and indeed, to the general public; (2) it permits counsel to disclose the "general contents" of any Highly Confidential Information to their clients; (3) it does not prohibit any Highly Confidential Information from being marked as an exhibit in depositions of Visa and MasterCard witnesses; (4) if any party to the action elects to challenge Metavante's or FNCS' designation of the information as Highly Confidential, the party may move the District of Columbia district court for redesignation, thus requiring Metavante or FNCS to travel to a district in which they do not reside to defend their designations; and (5) it fails to make it automatic for each party to destroy

subpoenaed information marked Highly Confidential Information upon termination of the litigation.

FNIS further objects to this request because Plaintiffs cannot establish a "substantial need" for Metavante's and FNCS' confidential information that outweighs the burden and prejudice to Metavante and FNCS as non-parties. *See, e.g., Fadalla v. Life Auto. Prod Inc.*, 258 F.R.D. 501, 507 (M.D. Fla. 2001) (where trade secret or other confidential information is sought from a non-party, the subpoenaing party must establish a "substantial need for the [information] that cannot be otherwise met without undue hardship."). Plaintiffs here bear the burden of establishing that the data and information requested would be not only be "helpful" to their experts' economic modeling, but also necessary to enable Plaintiffs' experts to reach their conclusions. As part of this showing, Plaintiffs should also be required to establish that there is commonality between the data sought from FNIS and the data produced by other parties.

FNIS further objects that compliance with this request would expose Metavante and FNCS to significant expense and Rule 45(d)(2)(B)(ii) therefore requires that any such costs be imposed on Plaintiffs.

Subject to the foregoing, FNIS offers to meet and confer with Plaintiffs regarding this request.

3. Any brochures, offers or promotional materials you received from an ATM Network.

**<u>RESPONSE</u>:** FNIS objects to Request No. 3 because it seeks documents already produced to Plaintiffs by the ATM networks Plaintiffs subpoenaed, or which Plaintiffs can obtain from the ATM networks at a lesser burden than from FNIS. FNIS responds that it does not have

any documents responsive to this request and it is informed that Metavante and FNCS also do not have documents responsive to this request. By way of further answer, FNIS is informed by Metavante and FNCS that they do not receive brochures, offers, or promotional materials from ATM networks because the ATM networks contract with financial institutions and ISOs directly, and ATM Transaction Processors only facilitate the routing based on the financial institutions' or ISO's contract.

4. Any studies, analyses, calculations, reports, or presentations concerning competition between or among ATM Networks.

**RESPONSE:** FNIS objects that this Request No. 4 is not properly directed to FNIS because it is not an ATM network. FNIS responds that it does not have any documents responsive to this request and it is informed that Metavante and FNCS also do not have documents responsive to this request.

5. Documents concerning your policies, practices and procedures, or the policies, practices or procedures of any ATM Network, regarding the assessment and collection of ATM Fees.

**RESPONSE:** FNIS objects to Request No. 5 because it seeks documents already produced to Plaintiffs by the ATM networks Plaintiffs subpoenaed, or which can be obtained by Plaintiffs from the ATM networks. FNIS responds that it does not have any documents responsive to this request. FNIS is informed that Metavante and FNCS also do not have any documents responsive to this request because they do not create any policies, practices, and procedure like these in the ATM transaction processing space.

6. All communications with Visa, MasterCard or other ATM Networks concerning or relating to ATM Access Fees or any Access Fee Rule.

**RESPONSE:** FNIS objects to Request No. 6 on the grounds that it is overly broad, unduly burdensome, and vague. FNIS also objects to this request as it seeks information that can be obtained from Defendants Visa and MasterCard at a lesser burden than from FNIS, a third party. FNIS responds that it does not have documents responsive to this request. FNIS is informed that while Metavante and FNCS may have some documents responsive to this request, those communications would be extremely difficult to locate and subject to applicable email retention policies of no more than 2 years.

Even limited to communications within the foregoing time periods, gathering this information would be unduly burdensome. Using best estimates, FNIS is informed by Metavante and FNCS that it would take a full-time, dedicated employee approximately 4 days to locate and produce this information for each quarter requested. Thus, obtaining 2 years of potentially available communications would take approximately 256 labor hours (2 years x 4 quarters x 4 days x 8 hours = 256 hours). At the normal professional service rate of $190/hour, the cost would be $48,640. This amount is exclusive of additional vendor and storage costs and time and costs of attorney review. FNIS understands that the time and expense to produce this information is very significant and would be taxing on Metavante and FNCS because they do not have extra personnel to devote to this undertaking.

FNIS further objects that compliance with this request would expose Metavante and FNCS to significant expense and Rule 45(d)(2)(B)(ii) therefore requires that any such costs be imposed on Plaintiffs.

Subject to the foregoing, FNIS offers to meet and confer with Plaintiffs regarding this request.

7. Documents sufficient to show any contract, subcontract, agreement, or understanding You have with any ATM Card Issuer, ATM Acquirer, Bank ATM Operator, or ATM Network concerning ATM Transactions or ATM Fees.

**RESPONSE:** FNIS objects to Request No. 7 on the grounds that it is overly broad, unduly burdensome, and vague. FNIS responds that it does not have documents responsive to this request. FNIS is informed that Metavante and FNCS have ATM Driving contracts with their financial institution and ISO customers, but that these agreement are highly confidential. As such, FNIS objects that the agreements sought by this request constitute confidential and competitively sensitive information. FNIS is informed by Metavante and FNCS that it would cause tremendous competitive harm if their customer agreements were disclosed to their direct competitors such as Visa DCS and Mastercard. The ATM processing business is a commodity business in that the services provided are generally interchangeable with those provided by others and the key competitive factor is price. FNIS is informed that Metavante and FNCS have grave confidentiality concerns about producing pricing information to third parties to be disclosed in litigations involving their most significant competitors, Visa and MasterCard. If all of Metavante's and FNCS' customer agreements were disclosed, they could be easily used by other ATM processors to take clients away from Metavante and FNCS.

FNIS further objects that the inadequate protective order entered in this case is insufficient to protect Metavante's and FNCS' confidential client information because, among other reasons: (1) it fails to adequately address how Highly Confidential Information will be protected from disclosure at trial to Visa, MasterCard, and indeed, to the general public; (2) it permits counsel to disclose the "general contents" of any Highly Confidential Information to their clients; (3) it does not prohibit any Highly Confidential Information from being marked as an exhibit in depositions of Visa and MasterCard witnesses; (4) if any party to the action elects to challenge Metavante's or FNCS' designation of the information as Highly Confidential, the

party may move the District of Columbia district court for redesignation, thus requiring Metavante or FNCS to travel to a district in which they do not reside to defend their designations; and (5) it fails to make it automatic for each party to destroy subpoenaed information marked Highly Confidential Information upon termination of the litigation.

FNIS further objects to this request because Plaintiffs cannot establish a "substantial need" for Metavante's and FNCS' confidential information that outweighs the burden and prejudice to Metavante and FNCS as non-parties. *See, e.g., Fadalla v. Life Auto. Prod Inc.*, 258 F.R.D. 501, 507 (M.D. Fla. 2001) (where trade secret or other confidential information is sought from a non-party, the subpoenaing party must establish a "substantial need for the [information] that cannot be otherwise met without undue hardship."). Plaintiffs here bear the burden of establishing that the data they request would be not only be "helpful" to their experts' economic modeling, but also necessary to enable Plaintiffs' experts to reach their conclusions. As part of this showing, Plaintiffs should also be required to establish that there is commonality between the data sought from FNIS and the data produced by other parties.

FNIS is informed by Metavante and FNCS that if they were required to fulfil this request, it would take a full time dedicated person approximately 21 days to gather and produce this information. Thus, it would take approximately 168 hours to fulfill this request (21 days x 8 hours = 168 hours). At the normal professional service rate of $190/hour, the cost would be $31,920. This amount is exclusive of additional vendor and storage costs and time and costs of attorney review. FNIS understands that the time and expense to produce this information is very significant and would be taxing on Metavante and FNCS because they do not have extra personnel to devote to this undertaking. Accordingly, FNIS further objects that compliance with

this request would expose Metavante and FNCS to significant expense and Rule 45(d)(2)(B)(ii) therefore requires that any such costs be imposed on Plaintiffs.

Subject to the foregoing, FNIS offers to meet and confer with Plaintiffs regarding this request.

8. Documents sufficient to show Your policies concerning the routing of ATM Transactions, including Documents concerning your ability to route an ATM transaction over an ATM network in order to optimize the revenue or minimize the cost that is generated by that transaction.

**RESPONSE:** FNIS objects to Request No. 8 because it seeks documents already in Plaintiffs' possession or which can be obtained by Plaintiffs from parties to the litigation. FNIS responds that it does not have any documents responsive to this request. FNIS is informed that Metavante and FNCS also do not have documents responsive to this request because they implement routing at the direction of the financial institution / ISO customer. Because the participating ATM networks and priority come from the customer, Metavante and FNCS do not have any policies concerning the routing of ATM transactions.

9. Documents sufficient to show each schedule of ATM Interchange Fees received, directly or indirectly, from any ATM Network.

**RESPONSE:** FNIS objects to Request No. 9 as overly broad and unduly burdensome because it seeks schedules of all ATM Interchange Fees received from any ATM network since October 1, 2007.

FNIS responds that it does not have any documents responsive to this request. FNIS is informed that Metavante and FNCS have this data subject to applicable retention policies of approximately 2 years. Even limited to data within the foregoing time periods, gathering this

data would be unduly burdensome given the billions of transactions processed each year over two unique ATM environments. Using best estimates, FNIS is informed by Metavante and FNCS that it would take a full-time, dedicated employee approximately 4 days to locate and produce this information for each quarter requested. Thus, obtaining 2 years of potentially available communications would take approximately 256 labor hours (2 years x 4 quarters x 4 days x 8 hours = 256 hours). At the normal professional service rate of $190/hour, the cost would be $48,640. This amount is exclusive of additional vendor and storage costs and time and costs of attorney review. FNIS understands that the time and expense to produce this information is very significant and would be taxing on Metavante and FNCS because they do not have extra personnel to devote to this undertaking.

FNIS further objects that the data by this request constitutes confidential and/or competitively sensitive information. FNIS is informed by Metavante and FNCS that this information is not publicly available, is subject to strict internal controls, and would cause competitive harm if it were disclosed.

FNIS further objects that the inadequate protective order entered in this case is insufficient to protect Metavante's and FNCS' confidential information because, among other reasons: (1) it fails to adequately address how Highly Confidential Information will be protected from disclosure at trial to Visa, MasterCard, and indeed, to the general public; (2) it permits counsel to disclose the "general contents" of any Highly Confidential Information to their clients; (3) it does not prohibit any Highly Confidential Information from being marked as an exhibit in depositions of Visa and MasterCard witnesses; (4) if any party to the action elects to challenge Metavante's or FNCS' designation of the information as Highly Confidential, the party may move the District of Columbia district court for redesignation, thus requiring Metavante or

FNCS to travel to a district in which they do not reside to defend their designations; and (5) it fails to make it automatic for each party to destroy subpoenaed information marked Highly Confidential Information upon termination of the litigation.

FNIS further objects to this request because Plaintiffs cannot establish a "substantial need" for Metavante's and FNCS' confidential information that outweighs the burden and prejudice to Metavante and FNCS as non-parties. *See, e.g., Fadalla v. Life Auto. Prod Inc.*, 258 F.R.D. 501, 507 (M.D. Fla. 2001) (where trade secret or other confidential information is sought from a non-party, the subpoenaing party must establish a "substantial need for the [information] that cannot be otherwise met without undue hardship."). Plaintiffs here bear the burden of establishing that the data and information requested would be not only be "helpful" to their experts' economic modeling, but also necessary to enable Plaintiffs' experts to reach their conclusions. As part of this showing, Plaintiffs should also be required to establish that there is commonality between the data sought from FNIS and the data produced by other parties.

FNIS further objects that compliance with this request would expose Metavante and FNCS to significant expense and Rule 45(d)(2)(B)(ii) therefore requires that any such costs be imposed on Plaintiffs.

Subject to the foregoing, FNIS offers to meet and confer with Plaintiffs regarding this request.

10. Documents produced or provided in response to any subpoena or other request issued by any party to This Litigation.

**RESPONSE:** FNIS responds that it does not have any documents responsive to this request.

Dated: October 8, 2018

**FOX ROTHSCHILD LLP**

By: *<u>/s/ Doug P. Hibshman</u>*
Doug P. Hibshman, Esq.
D. DC Bar No. 496255
1030 15th Street, N.W., Suite 380 East
Washington, DC 20005
Telephone: (202) 461-3113
Facsimile: (202) 461-3102
dhibshman@foxrothschild.com

*Attorneys for Fidelity National Information Services, Inc.*

Of Counsel:

Michael Eidel, Esq.
Clair E. Wischusen, Esq.
Fox Rothschild LLP
2700 Kelly Road, Suite 300
Warrington, PA 18976
(215) 345-7500
Telephone: (215) 345-7500
Facsimile: (215) 345-7507
meidel@foxrothschild.com
cwischusen@foxrothschild.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of October 2018, I caused a true and correct copy of the forgoing *Fidelity National Information Services Inc.'s Amended Objections and Responses to Plaintiffs' Third Party Subpoena for Production of Documents* to counsel below via email and first class mail:

Craig Briskin, Esquire
Mehri & Skalet, PLLC
1250 Connecticut Ave., NW, Suite 300
Washington DC, 20036
Cbriskin@Findjustice.com

*Counsel for Plaintiffs*

*/s/ Douglas P. Hibshman*
Douglas P. Hibshman