# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ATM COUNCIL, INC., *et al.*, <br><br>     *Plaintiffs*, <br> v. <br><br> VISA INC., *et al.*, <br><br>     *Defendants*. | Civil Action No. 1:11-cv-01803-RJL |
| LYNNE BARTRON, *et al.*, <br><br>     *Plaintiffs*, <br> v. <br><br> VISA INC., *et al.*, <br><br>     *Defendants*. | Civil Action No. 1:11-cv-01831-RJL |
| PETER BURKE, *et al.*, <br><br>     *Plaintiffs*, <br><br> v. <br><br> VISA INC., *et al.*, <br><br>     *Defendants*. | Civil Action No. 1:11-cv-01882-RJL |

**VISA AND MASTERCARD DEFENDANTS' SUR-REPLY
IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION
AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

*Public Redacted Version*

In their opposition to Plaintiffs' motions for class certification, Defendants showed that none of the three proposed classes can establish class-wide injury with common evidence. That is fatal to their motions. Plaintiffs cannot demonstrate that common questions "predominate" over individual questions. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 624–25 (D.C. Cir. 2019) ("*In re Rail Freight II*"); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252–53 (D.C. Cir. 2013) ("*In re Rail Freight I*").

In their reply papers, each Plaintiff group[1] submits new expert or fact evidence that it claims can show class-wide injury. The Court should disregard that evidence because affirmative evidence cannot be introduced for the first time in reply. *See Patterson v. Johnson*, 391 F. Supp. 2d 140, 142 n.1 (D.D.C. 2005) ("It is well established that this court will not entertain arguments for the first time in a party's reply brief. The same principle applies to newly proffered evidence attached to a reply brief." (internal quotation marks omitted)), *aff'd*, 505 F.3d 1296 (D.C. Cir. 2007).

Even if Plaintiffs' new evidence is considered, it confirms the existence of uninjured members in each proposed class. This conclusion is inescapable. No matter how many ways it is presented, the evidence shows that winnowing uninjured parties out of the proposed classes would require individual inquiries that would devolve into a series of minitrials. It confirms that class certification is inappropriate in these cases.

I.    *Mackmin* **Plaintiffs' New Economic Analyses Confirm the Need for Individual Inquiries into Injury**

*Professor Carlton's Initial Analysis.* In his opening report, the *Mackmin* Plaintiffs' expert, Professor Dennis Carlton, provided ███████████████████████

---

[1] The terms "*Mackmin* Plaintiffs," "*Burke* Plaintiffs," "Operator Plaintiffs," and "Defendants" are defined in Defs.' Mem. of Law in Opp. to Pls.' Mots. for Class Certification and Appointment of Class Representatives and Class Counsel ("Opp.") at 1 n.1.

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████.[2]

Professor Carlton originally sought to ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████████[3]  ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████[5]

In opposition, Defendants explained that analyzing data at ████████████ ATMs alone cannot provide common proof of injury because doing so assumes (without evidence) that ██████████ ███████ is representative of the thousands of bank ATM operators in the United States. Defendants' expert, Professor Glenn Hubbard, applied Professor Carlton's same methodology—

████████████████████████████████████████████████████████████████████████████

██████████████████.[6]  Professor Hubbard found ██████████████████████████████████████████

---

[2]  *See, e.g.*, *Mackmin* Reply at 1–2.
[3]  Carlton Rep. ¶ 83.
[4]  *Id.*
[5]  *Id.* ¶ 108.
[6]  Hubbard Rep. ¶¶ 220–24 & Ex. 18.  ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████



██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████.[7]

In other words, Professor Carlton's ███████████████████████████

██████████████████████████████████████   By looking at

████████████████████, Professor Hubbard found ███████████████████.[8]

    ***Professor Carlton's New Analysis.***  *Mackmin* Plaintiffs attempt to cure this fatal

empirical problem in reply.  Professor Carlton ████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████.[9]  Plaintiffs declare that

██████████████████████████████████████████████████████

████████████████████████.[10]  But the data do not show what Plaintiffs say.

    ***Visa/Plus data over a longer time period continue to demonstrate individual inquiries***

***on injury.***  The Visa/Plus data over a ten-year period (2007–2017) show no statistically

significant, negative correlation between surcharges and net interchange for ████████████ banks

---

██████████████████████████████████████████████████████  *ee id.* n. 445.

[7]  *Id.* ¶ 224 & Ex. 18.

[8]  *Id.* ¶ 256 & Ex. 29.

[9]  *See* Carlton Reply ¶¶ 74–76 (██████████████████████████████); *id.* ¶¶ 87–89

(████████████████████████████████).

[10]  *Mackmin* Reply at 2.

that Professors Carlton and Hubbard studied.[11]  For █████████ surcharges in the Visa/Plus data

did not increase over the entire time period.[12]  By looking at ████████████████████

████████████████████████████████████████████████████.[13]

As the chart below illustrates, surcharges at █████████ ATMs never changed for the span

of the Visa/Plus data.  Those surcharges simply did not respond to the supposedly

"anticompetitive" reductions in net interchange for Cirrus (in 2010) or Visa/Plus (in 2012).[14]

---

[11]  Hubbard Sur-Rebuttal ¶¶ 11–12.  As Professor Hubbard explains, ████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████  *See id.* ¶¶ 16–19.

[12]  *Id.* ¶ 11.

[13]  *Id.* ¶ 16.

[14]  Hubbard Sur-Rebuttal, App. 2.23.  ████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
Carlton Reply ¶ 98. ███████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████  *See* Hubbard Sur-Rebuttal n.10.



Similarly, surcharges at ███████████████████████████ increased *before* the net

interchange reductions in 2010 and 2012, then fell between 2010 and 2011, and have stayed

essentially unchanged since.[15]



---

[15]  Hubbard Sur-Rebuttal, App. 2.33.

In short, no matter what time period they choose, Plaintiffs cannot show with common proof that consumers who paid surcharges only at ATMs operated by ███████████████ ██████████████████ were injured.  There is no evidence that those surcharges were too high *as a result* of net interchange.  Indeed, applying Professor Carlton's own new analysis ███████████████████████████, Professor Hubbard again finds ███████████ uninjured ██████ cardholders.[16]  A similar analysis of consumers with cards from other issuing banks (and there are thousands) would likely reveal uninjured class members of a similar magnitude—and Plaintiffs, who have the burden here, have made no showing to the contrary. The need for tens of thousands of individual inquiries into injury persists even with Plaintiffs' new analysis.

**Mastercard data demonstrate individual inquiries on injury.**  Professor Carlton's analysis of surcharges and net interchange using banks' average net interchange on Mastercard's ATM network, Cirrus, rather than on Visa's ATM network, Visa/Plus, does not alter this conclusion.  Using that data yields no statistically significant relationship between surcharges and net interchange for ████████████ banks Professor Carlton analyzed, which, as Professor Hubbard explains, ██████████████████████████████████████████████ ██████████████████████████[17]

\* \* \*

---

[16]  Hubbard Sur-Rebuttal ¶ 13 ████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

[17]  *Id.* ¶ 23.

*Mackmin* Plaintiffs attempt to avoid this reality—and the need to demonstrate injury with individual inquiries—in three ways. *First*, they brush aside that some banks show no statistically significant correlation between surcharges and net interchange ████████████████ ███████████████████████████████ [18] Even if true, that would merely highlight "a possible problem with [Plaintiffs'] own evidence," because their theory of cardholder injury requires proof that surcharges would have been lower at all bank ATMs. *In re Rail Freight II*, 934 F.3d at 624. A model that yields thousands of uninjured class members—even resulting from "normal prediction error"—cannot support class certification. *See id.*

*Second*, ████████████████████████ Professor Hubbard ████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ █████.[19] Again, if this problem existed, it would be a problem with *Plaintiffs'* proof, since they relied on the same data. It is Plaintiffs' burden to come forward with a model that shows the relationship they claim exists between surcharges and net interchange across all networks and at all bank ATM operators, which they did not do.

Critically, Plaintiffs also are wrong about whether Professors Carlton and Hubbard ████ ██████████████████████████████████████████████████████ ████████████████████████████████████ by using only Visa/Plus data. In the time periods Professors Carlton and Hubbard ████████████████████████████████ ██████████████████████████████████████████████████████

---

[18] *Mackmin* Reply at 13.
[19] *Id.* at 12.

██████████████████████████████████.  Professor Carlton's report shows ████████████

██████████████████████████████████[20]



The problem for Plaintiffs is that, for some banks like ████████████████████████, as

shown in ██████████████████████, surcharges did not increase in response—*i.e.*, the alleged

correlation between net interchange and surcharges did not exist.

*Third*, Plaintiffs try to assume away the need for a model to prove class-wide injury by

asserting that, by 2007 (the beginning of the class period), inflated surcharges were "baked in[]"

at all bank ATMs as a result of the NDRs that Visa and Mastercard adopted in 1996.[21]  But

Plaintiffs have presented no empirical analysis of pre-2007 data to support this assumption.

They have not purported to analyze any relationship between surcharges and net interchange at

---

[20]  *See* Carlton Rep., Table 4 & Fig. 5; *see also* Hubbard Sur-Rebuttal ¶ 22 (explaining ████████

████████████████████████████████████████████████████████

██████████████████████).

[21]  *Mackmin* Reply at 21 (████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████).

any individual bank ATM operator before 2007, let alone all bank operators.  A mere assumption

cannot show class-wide injury.[22]  Nor does anything in the factual record link the dramatic rise in

surcharges between 1996 and 2007 with any changes in the net interchange of Cirrus and

Visa/Plus.[23]  As one of the other Plaintiffs' experts acknowledged: ███████████████

████████████████████████████████████████████████████████

█████████████████████████████████[24]

## II.   The *Burke* Plaintiffs' New Economic Analyses Confirm the Need for Individual Inquiries into Injury

Similar to the *Mackmin* Plaintiffs, the *Burke* Plaintiffs contend that the cardholders in

their putative class were injured because Defendants' NDRs suppressed the net interchange

received by non-bank ATM operators, which led those operators to impose higher ATM

surcharges on cardholders.[25]  Although the *Burke* Plaintiffs originally submitted no empirical

---

[22] *See In re Aluminum Warehousing Antitrust Litig.*, 2020 WL 4218329, at *41–42 (S.D.N.Y July 23, 2020) (relying on *In re Rail Freight II* in holding "[b]road generalizations by market participants . . . cannot, in the absence of a proper chain of expert models, serve as common proof" of injury to hundreds of class members over six years); *Ward v. Apple Inc.*, 2018 WL 934544, at *3 (N.D. Cal. 2018) (rejecting expert's "theories of impact and damages," because "theory alone is not sufficient . . . .  Absent a data-driven model, plaintiffs have failed to meet their burden under Rule 23 to provide a viable method for demonstrating class-wide antitrust injury based on common proof." (internal quotation marks omitted)).

[23]  To the contrary, the facts show ████████████████████████████████████
████████████████████████.  *See* Ex. 150, Deposition of James McAndrews (Dec. 17, 2019) ("McAndrews Dep.") at 341:9–15 ████████████████████████

████████████████████████████████████████████████████████

Exhibits 1–149 are attached to the Szanyi Declaration dated Feb. 18, 2020, and Exhibits 150–153 are attached to the Szanyi Declaration dated Sept. 24, 2020.  And the acquirer fees that Mastercard and Visa introduced in 2005 and 2007, respectively, which reduced net interchange, followed the lead of competitor networks.  *See* Opp. at 19.

[24]  McAndrews Dep. 344:16–345:1; *see also* Lehr Rebuttal Rep. ¶ 5 (explaining that ████████
████████████████████████████████████████████████████████
████████████████████████.

[25]  *See, e.g., Burke* Reply at 6.

analysis to support this theory, their expert, Dr. William Lehr, presented three new analyses in his rebuttal report in response to Professor Hubbard.

But Dr. Lehr's new analyses confirm what Professor Hubbard already found:  some non-bank ATM operators did not show a statistically significant, negative relationship between surcharges and net interchange.[26]  Consumers who paid surcharges at only those operators' ATMs are therefore uninjured, according to Dr. Lehr's own methodologies.  The *Burke* plaintiffs have no way to winnow out—or even identify—those uninjured class members.  Thus, individual inquiries are necessary.

*First*, like Professor Carlton, Dr. Lehr ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[27]
But, also like Professor Carlton, Dr. Lehr's calculations show no statistically significant, negative correlation between surcharges and net interchange for ATM operators he studied—
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[28]  A chart showing data ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮.[29]



---

[26]  Hubbard Rep. ¶ 225 & Ex. 19.
[27]  *See* Lehr Rebuttal ¶ 76.
[28]  Hubbard Sur-Rebuttal ¶ 26.  As with Professor Carlton, Professor Hubbard ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 25, 27–28.
[29]  Hubbard Sur-Rebuttal, App. 3.6.



Plaintiffs cannot show with common proof that consumers who paid surcharges only at ATMs operated by Amer-E-Com Digital Corporation (and other independent ATM operators like it) were injured.

     *Second*, Dr. Lehr now applies a so-called "Granger Causality Test" to the third-party processor's data he used to calculate damages previously.  Looking for a relationship between surcharges and net interchange at non-bank ATMs, Dr. Lehr ultimately concludes that ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮"[30]  But his analysis is flawed:  he performed this test on ***average*** surcharges and net interchange data across all operators, not at the level of individual operators.[31]  Thus, his analysis necessarily obscures differences among operators and does not eliminate the need to determine injury by investigating the practices of the specific non-bank ATM operator(s) whose ATM(s) each putative class member used.[32]

---

[30]  Lehr Rebuttal Rep. ¶ 74 (emphasis in original).
[31]  Hubbard Sur-Rebuttal ¶ 30.  As Professor Hubbard explains, ▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮ *ee id.* ¶¶ 35–36.
[32]  *Id.* ¶ 30 ▮▮▮▮▮

*Third*, Dr. Lehr ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████).[33]

This analysis is a *non sequitur*, because the NDRs challenged in this litigation do not prohibit

that practice.  Analyzing a single ATM operator's surcharge practices also misses the critical

point:  different ATM operators set surcharges in different ways and for different reasons, which

precludes class-wide proof of injury.  And still, Dr. Lehr's analysis of ███████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████.[34]

In other words, consumers who used those ATMs faced higher surcharges on average as a result

of ███████ ability to "differentially surcharge."[35]

The *Burke* Plaintiffs argue that, █████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████[36]  But the law requires a court to resolve expert disputes at the class

---

████████████████████████████████████████████████████
██████████████████

[33]  *See* Lehr Rebuttal ¶¶ 9–17.
[34]  Hubbard Sur-Rebuttal ¶ 40 (" ███████████████████████████████████
████████████████████████████████████████████████
████████████████████████); *see also* Opp. at 41–42.
[35]  *Id.* ¶ 41 (showing that, ████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████).
[36]  *Burke* Reply at 31–32.

certification stage when they concern fundamental defects in a class-wide model of injury. *See*

*Kottaras v. Whole Foods Market, Inc.,* 281 F.R.D. 16, 26 (D.D.C. 2012) ("Neglecting to resolve

disputes between experts [at class certification] amounts to a delegation of judicial power to the

plaintiffs, who can obtain class certification just by hiring a competent expert" (internal

quotations omitted)).[37]  Anything less would deprive Defendants of their rights to defend against

individual claims.

**III.     The Operator Plaintiffs' New Factual Evidence Confirms the Need for Individual**
**Inquiries into Injury**

Operator Plaintiffs purport to represent a class of "independent ATM Operators," whom

they variously refer to in their reply as "independent ATM deployers," "ATM portfolio owners

and operators," or "ISOs and ISO-affiliates."[38]  Defendants' opposition established that a

substantial number of "ATM Operators" did not pay (either directly or indirectly[39]) the acquirer

fees that are the sole source of alleged injury to this putative class.  Determining whether a

particular "ATM Operator" *actually* paid an acquirer fee for a given ATM transaction requires

individualized examination of agreements, understandings, and industry conventions governing

that specific ATM. [40]  Defendants also demonstrated that, given the various contractual

arrangements and entities involved in running a non-bank ATM, the class was not ascertainable.

---

[37] *See also In Rail Freight II*, 934 F.3d at 626 (holding "district courts considering class certification" may not "defer questions about the number and nature of any individualized inquiries that might be necessary to establish liability"); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 56 (1st Cir. 2018) (holding that certifying a class with uninjured members, even if aggregate damages were accurate, "would fly in the face of the core principle that class actions are the aggregation of individual claims").

[38] Operator Reply at 1, 4; *see also NAC* Br. at 1.

[39] As explained in Defendants' opposition brief, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Opp. at 10–11. ▮▮▮▮▮▮▮▮▮ *See NAC* Reply at 5–7.

[40] *See* Opp. at 46–49.

Operator Plaintiffs attempt to address these problems in reply via:  (i) a new declaration from Roger Myers, the founder of a payment processing company, which purports to █████████ ██████████████████████ and (ii) a new report from their industry expert, Dr. James McAndrews, which purports to ████████████████████████████████████████████ ███████████  But this new evidence ██████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████[41]  The new evidence ██████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████.

**Myers Declaration.**  In his new declaration, Mr. Myers purports to ████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████[42]  ████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████.

To illustrate, Mr. Myers asserts that ██████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████[43]  In some cases, however, ████████████████████ ████████████████████████████[44]  Moreover, █████████████████████████████

---

[41]  *Compare NAC* Corrected Mot. at 2 (██████████████████████) *with NAC* Reply at 32 (████████ ████████████████████████).

[42]  Myers 2d Decl. ¶¶ 2–3, 7; *see id.* ¶ 4 ████████████████████████████████████████████ ████████████████████████); *see also, e.g., NAC* Reply at 11 (acknowledging ██████████████████████████████████████████████████████████████████████.

[43]  Myers 2d Decl. ¶ 4(b)–(c).

[44]  *See, e.g.,* Ex. 151, BRGI 30(b)(6) Dep. 150:21–156:20, 246:4–10 ████████████████████████ ████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████.[45]  And, sometimes, ████████████████████████[46]

Mr. Myers's criteria █████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████.

   ***McAndrews Reply Report.***  In his reply report, Dr. McAndrews asserts that—████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████[47]  But the record shows █

█████████████████████████████████████████████████████████

████████████████████████████  For example, some ████████████

█████████████████████████████████████████████████████████

████.[48]  Indeed, some ████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████[49]  Yet again, determining which entity paid any

────────────────────

████████████████████████████████████████ ); Ex. 26, SJI 30(b)(6) Dep.
138:19–139:2 (████████████████████████████████████ ), Ex. 152, SJI
30(b)(6) Dep. 236:18–237:14 & Errata
████████████████████████████

[45] *See* Ex. 152, SJI 30(b)(6) Dep. 168:11–169:20 ████████████████████
████████████████████████

[46] *See* Ex. 151, BRGI 30(b)(6) Dep. 154:3–155:1 ███████████████████
█████████████████████████████

[47] McAndrews Reply ¶¶ 9–14.
[48] *See, e.g.*, Ex. 151, BRGI 30(b)(6) Dep. at 78:8-20 ████████████████
█████████████████████████████

[49] *See id.*; *see also, e.g.*, Ex. 153, Wash Water 30(b)(6) Dep. 186:15–189:14 ████
█████████████████████████████████████
       ); Ex. 2, GAO Report at 11–12.

acquirer fees and has therefore been injured under Plaintiffs' theory requires individualized inquiry.

## CONCLUSION

For all the reasons stated in Defendants' opposition brief and herein, Plaintiffs' motions should be denied.

*Public Redacted Version*

Date:   September 24, 2020                    Respectfully submitted,
        Washington, DC


                                            PAUL, WEISS, RIFKIND, WHARTON &
                                            GARRISON LLP


                                            By: */s/ Justin Anderson*
                                                Kenneth A. Gallo (D.C. Bar No. 371253)
                                                kgallo@paulweiss.com
                                                Justin Anderson (D.C. Bar No. 1030572)
                                                janderson@paulweiss.com
                                                Jessica Anne Morton (D.C. Bar No. 1032316)
                                                jmorton@paulweiss.com
                                                2001 K Street, NW
                                                Washington, DC 20006-1047
                                                Tel. (202) 223-7300
                                                Fax. (202) 223-7420

                                            *Attorneys for Defendants*
                                            MASTERCARD INCORPORATED AND
                                            MASTERCARD INTERNATIONAL
                                            INCORPORATED


                                            ARNOLD & PORTER KAYE SCHOLER LLP


                                            By: */s/ Matthew A. Eisenstein*
                                                Mark R. Merley (D.C. Bar No. 375866)
                                                mark.merley@arnoldporter.com
                                                Matthew A. Eisenstein (D.C. Bar No. 476577)
                                                matt.eisenstein@arnoldporter.com
                                                Rosemary Szanyi (D.C. Bar No. 997859)
                                                rosemary.szanyi@arnoldporter.com
                                                601 Massachusetts Avenue, NW
                                                Washington, DC 20001-3743
                                                Tel. (202) 942-5000
                                                Fax. (202) 942-5999

                                            *Attorneys for Defendants*
                                            VISA INC., VISA U.S.A. INC., VISA
                                            INTERNATIONAL SERVICE ASSOCIATION,
                                            and PLUS SYSTEM, INC.

17