PUBLIC REDACTED VERSION ~~HIGHLY CONFIDENTIAL – PROTECTIVE ORDER~~

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PETER BURKE, *et al.*,

Plaintiff,

v.

VISA INC., *et al.*,

Defendants.

No. 1:11-cv-01882-RJL

# REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

**~~Filed Under Seal~~**

**TABLE OF CONTENTS**


INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Common Issues Predominate as to Class-Wide Injury and Damages .......... 2

A. Dr. Lehr's Methodology [redacted] … .......... 5

.

B. [redacted] .......... 6

C. Dr. Lehr's [redacted] .......... 8

D. Dr. Lehr's Model is Capable of Class-Wide Proof of Injury and Damages and is Supported by Empirical and Econometric Analysis .......... 16

E. Empirical Analysis of [redacted] .......... 20

F. Common Record Evidence Supports Class-Wide Injury… .......... 22

G. The ATM Industry [redacted] .......... 25

H. Dr. Hubbard's Analysis [redacted] … .......... 27

I. Mechanisms Exist to [redacted] .......... 32

J. Expert Disputes [redacted] …32

II. [redacted] …..35

III. The Report of Defendants' Lay Expert Tony Hayes Should be Accorded No Weight .......... 42

IV. The *Burke* Plaintiffs are Adequate Class Representatives .......... 46

V. The State Classes Should be Certified… .......... 47

VI. The 23(b)(2) Injunctive Class Should be Certified… .......... 47

CONCLUSION .......... 49

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Watson*,
10 F.3d 915 (1st Cir. 1993)……………33

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997)……………3

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)……………2

*Andrews v. Metro North Commuter Railroad Co.*,
882 F.2d 705 (2d Cir. 1989)……………44

*Apotex, Inc. v. Cephalon, Inc.*,
321 F.R.D. 220 (E.D. Pa. 2017)……………28

*Atlantic Richfield Co. v. USA Petroleum Co.*,
495 U. S. 328 (1990)……………24

*Bigelow v. RKO Radio Pictures*,
327 U.S. 251 (1964)……………11

*Blackman v. District of Columbia*,
33 F.3d 1088, 1094 (D.C. Cir. 2011)……………49

*Blades v. Monsanto Co.*,
400 F.3d 562 (8th Cir. 2005)……………28

*Borum v. Brentwood Vill., LLC*,
No. 16-1723, 2019 U.S. Dist. LEXIS 97427 (D.D.C. June 11, 2019)……………46

*Bynum v. District of Columbia*,
214 F.R.D. 27 (D.D.C. 2003)……………47

*Campbell v. Nat'l R.R. Passenger Corp.*,
311 F. Supp. 3d 281 (D.D.C. 2018)……………13

*Castro v. Sanofi Pasteur Inc.*,
134 F. Supp. 3d 820 (D.N.J. 2015)……………20

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)……………2, 10, 14, 15

*Dakota Granite Co. v. BNSF Ry. Co.* (*In re Rail Freight Fuel Surcharge Antitrust Litig.*),
934 F.3d 619 (D.C. Cir. 2019)… ....................................................................3, 11, 12

*Damus v. Nielsen*,
313 F. Supp. 3d 317 (D.D.C. 2018)…...................................................................48

*DPWN Holdings (USA) v. United Air Lines*,
No. 11-cv-0564, 2019 WL 1515231 (E.D.N.Y. Feb. 21, 2019)…........................................8

*Eastman Kodak Co. v. S. Photo Materials Co.*,
273 U.S. 359 (1927)…........................................................................................ 10

*Eubanks v. Billington*,
110 F.3d 87 (D.C. Cir. 1997)…...........................................................................11

*Evans v. Wash. Metro. Area Transit* Auth.,
674 F. Supp. 2d 175 (D.D.C. 2009)…...................................................................45

*Exhaust Unlimited, Inc. v. Cintas Corp.*,
223 F.R.D. 506 (S.D. Ill. 2004)…........................................................................28

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 1997)….........................................................................................45

*GTE New Media Servs., Inc. v. Ameritech Corp.*,
21 F. Supp. 2d 27 (D.D.C. 1998)….......................................................................36

*Harris v. Koenig*,
271 F.R.D. 383 (D.D.C. 2010)…..........................................................................46

*Heller v. District of Columbia*,
952 F.Supp.2d 133 (D.D.C. 2013)….....................................................................45

*Hosp. Auth. v. Momenta Pharm.*,
333 F.R.D. 390 (M.D. Tenn. 2019)….....................................................................45

*Howard v. Liquidity Servs., Inc.*,
322 F.R.D. 103 (D.D.C. 2017)…..........................................................................46

*Hoyte v. District of Columbia*,
325 F.R.D. 485 (D.D.C. 2017)…..........................................................................19

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-MD-1175-JG-VVP,
2014 U.S. Dist. LEXIS 180914 (E.D.N.Y. Oct. 15, 2014)….........................................5, 22

*In re Asacol Antitrust Litigation*,
907 F.3d 42 (1st Cir. 2018)… ....................11, 13

*In re Blood Reagents Antitrust Litig.*,
283 F.R.D. 222 (E.D. Pa. 2012)….....................16

*In re Bulk [EXTRUDED] Graphite Products Antitrust Litigation*,
Civ. No. 02-6030 (WHW), 2006 U.S. Dist. LEXIS 16619 (D.N.J. Apr. 4, 2006)…....17, 33

*In re Capacitors Antitrust Litig.*,
Case No. 17-md-02801-JD, 2018 WL 5980139 (N.D. Cal. Nov. 14, 2018)…..................18

*In re Cardizem C.D. Antitrust Litigation,*
200 F.R.D. 326 (E.D. Mich. 2001)… ....................3, 10, 34, 47

*In re Cathode Ray Tube Antitrust Litig.*,
MDL No. 1917, 2013 U.S. Dist. LEXIS 137944 (N.D. Cal., June 20, 2013)…..................5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
308 F.R.D. 606 (N.D. Cal. 2015)… ....................12, 22, 31

*In re Catfish Antitrust Litig.*,
826 F. Supp. 1019 (N.D. Miss. 1993)…....................16

*In re Disposable Contact Lens Antitrust*,
329 F.R.D. 336 (M.D. Fla. 2018)… ....................5, 47

*In re Elec. Books Antitrust Litig.*,
11 MD 2293 (DLC),
2014 U.S. Dist. LEXIS 42537 (S.D.N.Y. Mar. 28, 2014)… ....................10, 11, 30, 34

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices & Antitrust Litig.*,
MDL No: 2785, 2020 U.S. Dist. LEXIS 52092 (D. Kan. Feb. 27, 2020)….................12, 47

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
256 F.R.D. 82 (D. Conn. 2009)…....................9

*In re Fine Paper Antitrust Litig.*,
82 F.R.D. 143 (E.D. Pa. 1979)…....................16

*In re Graphics Processing Units Antitrust Litig.*,
253 F.R.D. 478 (N.D. Cal. 2008)…....................18

*In re High-Tech Employee Antitrust Litig.*,
985 F. Supp. 2d 1167 (N.D. Cal. 2013)…....................22

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2009)…....................................................................................2

*In re Intuniv Antitrust Litig.*,
Civil Action No. 1:16-cv-12653-ADB,
2019 U.S. Dist. LEXIS 162792 (D. Mass. Sep. 24, 2019)…............................................28

*In re Korean Ramen Antitrust Litig.*,
No. 13-cv-04115-WHO, 2017 U.S. Dist. LEXIS 7756 (N.D. Cal. Jan. 19, 2017)… ...........11

*In re Lamictal Direct Purchaser Antitrust Litig.*,
957 F.3d 184 (3d Cir. 2020)… ......................................................................11, 14

*In re Lidoderm Antitrust Litig.*,
No. 14-md-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017)….........................13

*In re Loestrin 24 FE Antitrust Litig.*,
MDL No. 13-2472-WES-PAS,
2019 U.S. Dist. LEXIS 118308 (D.R.I. July 2, 2019)… .............................7, 10, 28, 32, 33

*In re McCormick & Co., Pepper Prods. Marketing & Sales Practices Litig.*,
422 F. Supp. 3d 194 (D.D.C. 2019)…..............................................................................19

*In re Mushroom Direct Purchaser Antitrust Litig.*,
319 F.R.D. 158 (E.D. Pa. Nov. 22, 2016)… ..............................................................17, 18

*In re Mushroom Direct Purchaser Antitrust Litig.*,
No. 06-0620, 2015 U.S. Dist. LEXIS 120892 (E.D. Pa. July 29, 2015)…..........................18

*In re NASDAQ Market-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y. 1996)….....................................................................5, 29

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
933 F.3d 1136 (9th Cir. 2019)….......................................................................................36

*In re Nexium Antitrust Litig.*,
777 F.3d 9, 24 n.20 (1st Cir. 2015)…...................................................................................3

*In re Nifedipine Antitrust Litigation*,
246 F.R.D. 365 (D.D.C. 2007)… .....................................................................7, 12

*In re Optical Disk Drive Antitrust Litig.*,
No. 3:10-md-2143 RS, 2016 U.S. Dist. LEXIS 15899 (N.D. Cal. Feb. 8, 2016)…...3, 7, 17

*In re Packaged Seafood Prods. Antitrust Litig.*,
332 F.R.D. 308 (S.D. Cal. 2019)… ...............................................................11, 30

*In re Petrobras Sec. Litig.*,
862 F.3d 250 (2d Cir. 2017)…..........................................................................19

*In re Pharm. Ind. Average*,
582 F.3d 156 (1st Cir. 2009)…........................................................................10

*In re Polyester Staple Antitrust Litigation*,
MDL DOCKET NO: 3:03CV1516 ALL CASES,
2007 U.S. Dist. LEXIS 52525 (W.D.N.C. July 19, 2007)… ..................................5, 17, 31

*In re Polyurethane Foam Antitrust Litig.*,
314 F.R.D. 226 (N.D. Ohio 2014)…......................................................... *passim*

*In re Processed Egg Prods. Antitrust Litig.*,
312 F.R.D. 171 (E.D. Pa. 2015)….....................................................................17

*In re Qualcomm Antitrust Litigation*,
328 F.R.D. 280 (N.D. Cal. 2018)…............................................................ *passim*

*In re Rail Freight Surcharge Antitrust Litig.*,
292 F. Supp. 3d 14 (D.D.C. 2017)….................................................................13

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
725 F.3d 244 (D.C. Cir. 2013)…...................................................................3, 11

*In re Rezulin Prods. Liability Litig.*,
309 F. Supp.2d 531 (S.D.N.Y. 2004)…..............................................................44

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
Civil Action No. 14-md-02503,
2017 U.S. Dist. LEXIS 170676 (D. Mass. Oct. 16, 2017)…...............................................35

*In re Static Random Access memory (SRAM) Antitrust Litig.*,
264 F.R.D. 603 (N.D. Cal. 2009)…....................................................................18

*In re Syngenta AG MIR 162 Corn Litg.*,
No. 14-md-2591-JWL, 2016 WL 5371856 (D. Kan. Sept. 26, 2016)….............................12

*In re Text Messaging Antitrust Litig.*,
46 F. Supp. 3d 788, 809–810 (N.D. Ill. 2014)…......................................................4

*In Re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 583 (N.D Cal. 2010)… ................................................................ 8, 18, 28, 47

*In re Urethane Antitrust Litig.*,
251 F.R.D. 629 (D. Kan. 2008)….......................................................................29

*In re Visa Check/MasterMoney Antitrust Litig.*,
192 F.R.D. 68 (E.D.N.Y. 2000)… ....20, 34

*J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*,
451 U.S. 557 (1981)….... 10

*Johnson v. District of Columbia*,
248 F.R.D. 46 (D.D.C. 2008)…....11

*Kleen Prods. LLC v. Int'l Paper Co.*,
306 F.R.D. 585 (N.D. Ill. 2015)…....8

*Kleen Prods LLC v. Int'l Paper Co.*,
831 F.3d 919 (7th Cir. 2016)…....9

*Kottaras v. Whole Foods Market, Inc.*,
281 F.R.D. 16 (D.D.C. 2012)…....2

*Laumann v. National Hockey League*,
105 F. Supp. 3d 384 (S.D.N.Y. 2015)…....48

*Laumann v. Nat'l Hockey League*,
117 F. Supp. 3d 299 (S.D.N.Y. 2015)…....4

*LinkCo., Inc. v. Fujitsu, Ltd.*,
No. 00 Civ. 7242 (SAS), 2002 WL 158551 (S.D.N.Y. July 16, 2002)…....44

*Lumco Indus., Inc. v. Jeld-Wen, Inc.*,
171 F.R.D. 168 (E.D. Pa. 1997)…....29

*Manpower, Inc. v. Ins. Co. of Pa.*,
732 F.3d 796 (7th Cir. 2013)…....18

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*,
246 F.R.D. 293 (D.D.C. 2007)…....32

*Murphy Tugboat Co. v. Crowley*,
658 F.2d 1256 (9th Cir. 1981)…....34

*O.A. v. Trump*,
404 F. Supp. 3d 109 (D.D.C. 2019)…....48

*Ohio* v. *American Express Co.*,
138 S. Ct. 2274 (2018)….... 36, 37, 38, 39, 40

*Osborn v. Visa Inc.*,
797 F.3d 1057 (D.C. Cir. 2015)…......................................................................33

*Primavera Familienstifung v. Askin*,
130 F. Supp. 2d 450 (S.D.N.Y. 2001)…............................................................44

*Ramirez v. United States Immigration & Customs Enf't*,
338 F. Supp. 3d 1 (D.D.C. 2018)….....................................................................48

*Richardson v. L'Oreal United States, Inc.*,
991 F. Supp. 2d 181, 203 (D.D.C. 2013)…..........................................................49

*R.I.L-R v. Johnson*,
80 F. Supp. 3d 164 (D.D.C. 2015)….....................................................................48

*Rothe Dev., Inc. v. Dep't of Def.*,
107 F. Supp. 3d 183 (D.D.C. 2015)…...................................................................45

*S.E.C. v. Tourre*,
950 F. Supp. 2d 666 (S.D.N.Y. 2013)…..............................................................44

*Staley v. Gilead Sciences, Inc.*,
Case No. 19-cv-02573-EM, 2020 WL 1032320 (N.D. Cal. Mar. 3, 2020)…......................47

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
282 U.S. 555 (1931)…........................................................................................ 10

*Thorpe v. District of Columbia*,
303 F.R.D. 120 (D.D.C. 2014)…......................................................................... 46

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016)… ...........................................................................9, 10

*United States v. Frazier*,
387 F.3d 1244 (11th Cir. 2004)…......................................................................45

*United States v. Microsoft Corp.*,
253 F.3d 34 (D.C. Cir. 2001).............................................................................33

*United States v. Topco Assocs., Inc.*,
405 U.S. 596 (1972)…........................................................................................ 36

*United Transp. Union v. I.C.C*,
891 F.2d 908 (D.C. Cir. 1989)…........................................................................33

*US Airways, Inc.* v. *Sabre Holdings Corp.*,
938 F.3d 43 (2d Cir. 2019)… ....36, 37

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)… ....3, 48

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
280 F.3d 124 (2d Cir. 2001)… ....16, 34

*Zenith Radio Corp. v. Hazeltine Research Inc.*,
395 U.S. 100 (1969)…. .... 9

**Statutes and Rules**

Fed. R. Civ. P. 23… ....1, 2, 14

Fed R. Evid. 401…....9

Fed R. Evid. 403…....9

Fed. R. Evid. 701…....45

Fed R. Evid 702…....9, 44

Mass. Gen. Laws ch. 93, § 1…....47

**Secondary Sources**

Evans & Schmalensee, [redacted] … .... 39

Robert G. Harris and Lawrence A. Sullivan, [redacted] ....5

Herbert Hovenkamp, FEDERAL ANTITRUST POLICY, THE LAW OF COMPETITION AND ITS PRACTICE (1994)……....5

Hubbard & O'Brien, MICROECONOMICS (7th ed. 2019)…....25

Jean-Charles Rochet and Jean Tirole, [redacted] …....38

Rochet & Tirole, [redacted] …....38

Carl Sagan, [redacted] ....29

Laurence A. Steckman, *et al.*, [redacted] …......................................................................................17

Emilio E. Varanini, [redacted] .........................................................5

**References Used in this Reply**

**References to Briefs**

**Mem**. – Burke Memorandum in Support of Motion for Class Certification, filed September 20, 2019

**Opp.** – Defendants' Memorandum in Opposition to Plaintiffs' Motions for Class Certification, filed February 18, 2020

**References to Expert Reports and Depositions**

**WL, WL Reb. and WL Dep. --** *Burke* Plaintiffs' Expert Dr. William Lehr

**GH and GH Dep**. – Defendants' Expert Dr. Glenn Hubbard

**TH and TH Dep.** – Defendants' Expert Tony Hayes

**JR** -- Joint Report: Primer on ATM Economics by James J. McAndrews, Ph.D. and J. Douglas Zona, Ph.D., National ATM Council, Inc., et al. v. Visa Inc., et al., No. 1:11-cv-01803.

**DZ** -- Expert Report of J. Douglas Zona, Ph.D., National ATM Council, Inc., et al. v. Visa Inc., et al., No. 1:11-cv-01803.

**JM** -- Expert Report of James J. McAndrews, Ph.D., National ATM Council, Inc, et al. v. Visa Inc., et al., No. 1:11-cv-01803.

**DC** and DC Dep. -- *Mackmin* Expert Dennis W. Carlton, Andrew Mackmin, et al. v. Visa Inc., et al., No. 1:11-cv-01831.

**References to Exhibits**

To avoid burdening the record with duplicate copies, exhibits previously filed in connection with the class motions in the coordinated cases are incorporated herein by reference. Exhibit references are designated as follows:

**"App. [no.]"** -- Exhibits attached to the *Burke* Motion for Class Certification filed in No. 1:11-cv-01882 (App. Ex. 1-61) and to this Reply (App. Ex. 62-70)

**"M.Ex. [no.]"** -- Exhibits attached to the Berman Declaration accompanying the *Mackmin* Motion for Class Certification filed in No. 1:11-cv-1831-RJL

**"D.Ex. [no.]"** -- Exhibits attached to the Szanyi Declaration accompanying the Defendants' Opposition to Plaintiffs' Motions for Class Certification filed in No. 1:11-cv-01882-RJL, No. 1:11-cv-01803-RJL, and No. 1:11-cv-01831-RJL

## INTRODUCTION

Defendants' Opposition to class certification is limited.[1] They contest only (1) whether common issues predominate under Rule 23(b)(3) solely as to antitrust impact and calculation of damages (but not as to the price-fixing conspiracy and antitrust liability), (2) whether a two-sided market analysis is required to show common impact, (3) the adequacy of the *Burke* class representatives under Rule 23(a)(4), (4) whether the class is administratively feasible, (5) the appropriateness of an injunctive class under Rule 23(b)(2), and (6) whether the state classes should be certified We address the predominance issues in Part I, the two-sided market issues in Part II and the other issues in parts IV – VI. Part III explains why the Defendants' proffered Expert Report of Tony Hayes should be accorded no weight.

*Burke* Plaintiffs submit the rebuttal report of Dr. Lehr [redacted].[2] Dr. Lehr [redacted] For these and multiple other reasons, Dr. Lehr's methodology [redacted] Defendants' arguments go to the weight to be accorded Dr. Lehr's opinions at trial, not to the predominant class-wide commonality of his methodologies.

---

[1] *See* Visa and Mastercard Defendants' Memorandum of Law in Opposition to Plaintiffs' Motions for Class Certification and Appointment of Class Representatives and Class Counsel, filed February 18, 2020 ("Opp."), at 1-5.

[2] [redacted]

## ARGUMENT

### I. Common Issues Predominate as to Class-Wide Injury and Damages

Defendants' principal contention is that Plaintiffs cannot satisfy the Rule 23(b)(3) requirement that common issues predominate [redacted][3] Defendants confuse [redacted] Plaintiffs' burden, [redacted].[4] The Supreme Court has stated that the issue is whether [redacted][5] The D.C. Circuit agrees, stating [redacted]

3 [redacted]

4 [redacted]

5 [redacted]

[redacted][6] The Circuit reaffirmed the same standard in [redacted]

Thus, the issue is not whether [redacted] but whether [redacted][7]

Two legal precepts are particularly appropriate here: (1) [redacted] and (2) [redacted]

[redacted]

[6] [redacted]).

[7] [redacted]

[redacted] [redacted].[8] In deposition, Defendants' expert Dr. Hubbard [redacted][10] This is a dispute by an opposing expert [redacted]

[8] [redacted]

[9] [redacted]

[10] [redacted]

[redacted][11]

**A. Dr. Lehr's Methodology [redacted]**

Dr. Lehr's opinions [redacted] Fundamental economic principles, proven by numerous peer reviewed empirical studies, [redacted][12] [redacted] The courts have endorsed the underlying economic principle that firms [redacted]

---

[11] [redacted]

[12] [redacted]

[13] [redacted]

[redacted]

Defendants do not dispute the [redacted] Indeed, Dr. Hubbard agrees [redacted] Defendants merely observe that [redacted] But Defendants do not present actual evidence [redacted] Defendants attempt to [redacted][14]

**B.** [redacted]

Defendants assert that Dr. Lehr's opinions [redacted] However, Dr. Lehr's [redacted]

---

[redacted]

14 [redacted]

[redacted]

> [redacted]

[redacted].[16]

[redacted]

[redacted]

[15] [redacted]

[16] [redacted]

[redacted] . . . The more competitive the industry, [redacted] The court rejected defendants' contention [redacted]

**C. Dr. Lehr's [redacted]**

Defendants are fundamentally wrong that [redacted][17] [redacted]

[17] [redacted]

[redacted] the Seventh Circuit expressly rejected [redacted]

[redacted]

[redacted] As the Supreme Court explained in [redacted]

[redacted]

[redacted].[18]

"[A]ntitrust jurisprudence . . . [redacted][19] As the Supreme Court stated in the [redacted].[20] The uncontested record calls for the fullest application of the rule [redacted] There has not been [redacted]. The Supreme Court has consistently held that in antitrust cases, [redacted]

---

[18] [redacted]

[19] [redacted]

[20] [redacted]

[redacted] In this Circuit, [redacted]

[redacted][21] [redacted][22] are distinguishable. [redacted].[23] Dr. Lehr's [redacted] model [redacted][24] Defendants do not claim any [redacted]

---

[21] [redacted]

[22] [redacted]

[23] [redacted].

[24] [redacted]

[redacted][25] they do not claim that his [redacted][26] They rely instead on [redacted] The critical point is that the [redacted]

[redacted][27] [redacted]

[25] [redacted]

[26] [redacted]

[27] [redacted]

[redacted]

[redacted]

In [redacted], the defendants argued that [redacted] to begin with because [redacted] The plaintiffs could not rely on [redacted] Here, Defendants distort [redacted] stating that [redacted] *because* [redacted] [redacted] The full quotation states [redacted] The manner in which [redacted] are employed in Dr. Lehr's model [redacted] Dr. Lehr shows that [redacted] even though [redacted][28] [redacted] every class member [redacted] Without factual evidence that an [redacted] Defendants' arguments fade into mere speculation.

Defendants contend that Dr. Lehr's model [redacted] They claim that the [redacted] Again, Defendants misstate Dr. Lehr's model, [redacted]

---

[28] [redacted]

[redacted] The former are set by [redacted] the latter are [redacted] Plaintiffs do exactly what they should do under [redacted]

Defendants criticize Dr. Lehr for [redacted] Although [redacted] differs from [redacted] it is nevertheless a special, [redacted] Even cases involving [redacted] recognize the soundness of Dr. Lehr's economic theory of injury. [redacted] There is no requirement that an expert [redacted]

[redacted] To paraphrase the court, [redacted][29] Even if [redacted] that alone would not be sufficient to preclude class certification.[30]

**D. Dr. Lehr's Model is Capable of Class-Wide Proof of Injury and Damages and is Supported by Empirical and Econometric Analysis**

Dr. Lehr's analysis demonstrates [redacted] Dr. Lehr shows [redacted][31] First, [redacted][32] Second, [redacted] All of this is based exclusively on [redacted] that [redacted] that they [redacted]

---

[29] [redacted]

[30] [redacted]

[31] [redacted]

[32] [redacted]

[redacted] and that ATM's [redacted][33] all of which strongly support [redacted][34]

Rebutting [redacted] Dr. Lehr finds that empirical and econometric analysis reinforce and support [redacted]. First, he presents [redacted][35] Second, Dr. Lehr presents [redacted]

---

33 [redacted]

34 [redacted]

35 [redacted]

[redacted]

To estimate [redacted] Dr. Lehr [redacted] and, based on the economic theory and empirical research, concludes that [redacted] methodology to calculate the [redacted] is particularly appropriate since [redacted][36] Dr. Lehr estimates [redacted] Courts have approved similar uses of [redacted][37]

With regard to [redacted] Defendants contend that [redacted]

[36] [redacted]

[37] [redacted]

[redacted] For trial, additional [redacted] data can be subpoenaed to expand the [redacted]

Defendants argue the class [redacted] But this Circuit has not adopted [redacted] and recent D.C. district court opinions have declined [redacted] As shown by Dr. Lehr, [redacted]

[redacted][38] [redacted][39] [redacted][40] Defendants' also claim that it might be difficult [redacted]

**E. Empirical Analysis of [redacted]**

After the submission of Dr. Lehr's report, [redacted] Dr. Lehr analyzed the [redacted][41]

Dr. Lehr's analysis of the [redacted] rebuts [redacted] criticism that [redacted]

---

[38] [redacted].

[39] [redacted]

[40] [redacted]

[41] [redacted]

[redacted]

[redacted]

[redacted]

Defendants note that the [redacted]

[redacted] But that is irrelevant for the [redacted] The absence of [redacted] does not affect the empirical finding that [redacted] surcharges for cross-border transactions fully reflect the higher marginal, per-transaction cost. WL Reb. ¶ 17.

**F. Common Record Evidence Supports Class-Wide Injury**

Defendants and their experts totally ignore [redacted]

Defendants contemporaneously conceded the [redacted]

> [redacted][42]

[42] [redacted]

In 2017, MC noted [redacted][44] [redacted][45]

The record also supports Dr. Lehr's opinion that [redacted][46] [redacted][47] [redacted][48] [redacted][49] [redacted]

---

43 [redacted]

44 [redacted]

45 [redacted]

46 [redacted]

47 [redacted]

48 [redacted]

49 [redacted]

[redacted][50] While Defendants fear that elimination of the ban [redacted], they are not entitled to protection [redacted] "The antitrust laws were enacted for 'the protection of competition, not competitors.'" *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U. S. 328, 338 (1990).

The ATM Industry Association Position Paper on [redacted] originally published in 2006 and updated in 2016, [redacted][51] The ATMIA position has been repeated for a decade, is in the record [redacted] It directly contradicts [redacted]

---

[50] [redacted]

[51] [redacted]

### G. The ATM Industry [redacted]

[redacted][52]

As Dr. Lehr points out, the most critical factor [redacted][53] Dr. Hubbard criticizes Dr. Lehr for referring [redacted] However, it is [redacted] that constrains pricing to competitive levels. [redacted]

[redacted] But as Dr. Lehr shows: (aa1) [redacted] (2) [redacted]

---

[52] [redacted]

[53] [redacted]

[redacted] (3) [redacted] and (4) [redacted] Significantly, [redacted] are consistently [redacted] Thus, they do not have market power to set surcharges [redacted]

Dr. Hubbard speculates that [redacted] When Dr. Hubbard uses the term [redacted] he means nothing more substantial than the [redacted] But on deposition he was not able to [redacted] In fact, his speculation is no more than an unfounded guess that [redacted] which *might* make the theory harder." [redacted] he did not review any [redacted] and did not know how many there were. [redacted] His statement that [redacted] makes little sense. [redacted] As Dr. Lehr points out, [redacted] share common incentives to [redacted]

[redacted][54] [redacted] Moreover, the current [redacted] those arrangements would have been structured to take full advantage of the [redacted] Dr. Hubbard also states that [redacted] transactions are not in the class, and he does not explain why those that operate at [redacted]

**H. Dr. Hubbard's Analysis [redacted]d**

Dr. Hubbard makes the grandiose generalization that [redacted] despite even [redacted] admissions to the contrary. He only recites data, however, for [redacted] and speculates that there [redacted][55] Dr. Hubbard's actual [redacted] analysis is flawed and misleading. [redacted]

---

[54] [redacted]

[55] [redacted]

First, Defendants misstate [redacted][56] [redacted][57] [redacted][58] [redacted][59] [redacted]

---

[56] [redacted]

[57] [redacted]

[58] [redacted]

[59] [redacted]

[redacted] Ultimately, the weight to be accorded to Dr. Hubbard's observation that [redacted] involves a battle of experts for the jury to decide.[60]

Second, Dr. Hubbard recognizes [redacted] But he does not control for any of these other factors. [redacted] Absence of evidence is not evidence of absence.[61] In deposition, Dr. Hubbard admitted that he was not opining that [redacted] but only that Plaintiffs' experts [redacted][62] Variation in [redacted] is not an impediment to class certification [redacted][63]

---

[60] [redacted]

[61] Carl Sagan, THE DEMON-HAUNTED WORLD: SCIENCE AS A CANDLE IN THE DARK 213 (1997).

[62] [redacted]

[63] [redacted]

Third, Dr. Hubbard's method of [redacted] is misleading. [redacted] He combines [redacted] glossing over the reality that [redacted] As a result, his analysis can indicate, [redacted]

Fourth, Dr. Hubbard's choices of [redacted]

Despite its analytical flaws, Dr. Hubbard's [redacted] results confirm the [redacted]

Dr. Hubbard's [redacted] in his Exhibit 19 are also flawed.[64] [redacted][65] [redacted]

[redacted]

[64] [redacted]

[65] [redacted]

[redacted][66] Moreover, Dr. Hubbard concedes that he fails [redacted] Incongruously, he advances his [redacted] results to critique Plaintiffs' experts, but he disavows they have any evidentiary value when the vast majority of the results *indeed* corroborate Plaintiffs' experts.[67]

[redacted]

**I. Mechanisms Exist to [redacted]**

Defendants' categorical statement [redacted]

[66] [redacted]

[67] [redacted]

is not even supported by Dr. Hubbard, [redacted][68] [redacted] Dr. Lehr's methodology for estimating class-wide damages can be adjusted for a number of alternative jury findings, [redacted].[69]

**J. Expert Disputes** [redacted]

Using a common tactic, Defendants claim that the ATM industry is so complex that constructing a but-for world[70] necessarily entails individualized inquiry into how each and every industry participant would have responded to competition.[71] The Courts have rejected the tactic:

---

68 [redacted]

69 [redacted]

70 [redacted]

71 [redacted]

> Antitrust defendants . . . routinely argue that the complexity of their particular industry makes it impossible for common proofs to predominate . . . Indeed, courts have frequently found common impact in cases alleging price-fixing, despite the presence of individual negotiations, varied purchase methods and different amounts, prices, and types of products purchased.[72]

In this case, the D.C. Circuit endorsed the role of economic principles in crafting a but-for world that is provable at trial:

> To be certain, Plaintiffs also rely on certain economic assumptions about supply and demand: that other consumers besides the Plaintiffs are price conscious; that bank operators will respond to consumer demand for cards tied to low-cost networks; and that in the face of competitive pressure, ATM networks will reduce their network fees. But these sorts of assumptions are provable at trial. *See United Transp. Union v. I.C.C,* 891 F.2d 908, 913 n. 7 (D.C. Cir. 1989) (allegations "founded on economic principles," while "perhaps not as reliable as allegations based on the laws of physics, are at least more akin to demonstrable facts than are predictions based only on speculation."); . . . Indeed, allegations of economic harm "based on standard principles of 'supply and demand'" are "routinely credited by courts in a variety of contexts." *Adams v. Watson*, 10 F.3d 915, 923 (1st Cir. 1993).[73]

Expert disputes about the economic principles applicable in a but-for world are merits issues common to the class.[74] [redacted]

---

[72] *In re Bulk [EXTRUDED] Graphite Products Antitrust Litigation*, Civ. No. 02-6030 (WHW), 2006 U.S. Dist. LEXIS 16619, at *19 (D.N.J. Apr. 4, 2006) (citations omitted).

[73] *Osborn v. Visa Inc.*, 797 F.3d 1057, 1064 (D.C. Cir. 2015).

[74] *See In re Loestrin,* 2019 U.S. Dist. LEXIS 118308 at *14-15 ("It will be up to the jury to determine which party's theory [of the but-for world] wins the day."); s*ee also United States v. Microsoft Corp.*, 253 F.3d 34, 79 (D.C. Cir. 2001) (*en banc*) (finding that neither "plaintiffs nor the court can confidently reconstruct a product's hypothetical technological development in a world absent defendant's exclusionary conduct . . ."); *In re Elec. Books*, 2014 U.S. Dist. LEXIS 42537 at *82-83 ("It is unsurprising that Noll did not develop an opinion about many of the issues that Apple contends are important features of a but-for world. After all, the but-for world does not exist.").

[redacted][75]) [redacted][76] [redacted] Each of the key market participant groups has the requisite economic incentive to respond to a lessening of the restraint on price competition. [redacted] Consumers have incentives to seek ATM cards enabled to take advantage of lower surcharges. Issuing banks have incentives to compete for depositors by offering cards enabled for lower surcharged networks. And rival ATM networks have incentives to compete on price, actively promote their lower cost, [redacted] Dr. Hubbard speculates that [redacted]

---

[75] [redacted]

[76] [redacted]

[redacted]

But which expert's view of the but-for world is correct is a question common to the class as whole. [redacted] Current impediments to full and robust competition are a consequence of the anticompetitive NDRs that have existed for over two decades and not representative of what would occur in the but for world.[77]

**II.** [redacted]

Whether a two-sided market analysis is required, Opp. at 56-65, is a merits question and involves issues that are common to the class. [redacted][78] [redacted]

[redacted]

[77] *See In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, Civil Action No. 14-md-02503, 2017 U.S. Dist. LEXIS 170676, at *32 (D. Mass. Oct. 16, 2017) (discussing expert's contention that "he 'actual data' here is not 'representative of what would have occurred in the but-for world' of unrestrained competition").

[78] [redacted]

*Ohio* v. *American Express Co.*, 138 S. Ct. 2274 (2018) ("*Amex*") is distinguishable: (1) it did not involve class certification, (2) it was not a *per se* case in which anticompetitive effect is presumed,[79] and (3) the ATM and Amex platforms are fundamentally different. *Amex* is not a holding that a two-sided market analysis is required in every case involving a two-sided platform, or in a *per se* case involving horizontal price fixing of the prices on only one side of a platform. There, the Court stated that "[a] horizontal agreement between competitors is markedly different from a vertical agreement that incidentally affects one particular method of competition.".[80]

ATM networks do not meet the *Amex* definition of a two-sided platform--a business that "offers *different* products or services to two *different* groups."[81] [redacted] In *Amex*, the different customers were buyers (cardholders) and sellers (merchants), and the different services were extension of credit and rewards programs to buyers and guaranteed payment to sellers.[82] Amex is a closed-loop system that has complete control of the merchant fees and the cardholder rewards.

[redacted]

[79]See *Amex*, 138 S. Ct. at 2285 n. 7; *GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 43 (D.D.C. 1998) (stating that a *per se* "restraint is 'conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm [it has] caused or the business excuse or [its] use.'") (citations omitted).

[80] *Amex*, 138 S. Ct. at 2290 n. 10 (citing *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 599 (1972) ("*Topco* concluded that a horizontal agreement between competitors was unreasonable per se, even though the agreement did not extend to every competitor in the market."); *see also In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1157 n.7 (9th Cir. 2019) (for a price-fixing claim the court need only consider "the prices consumers paid compared to the prices that would have existed in a competitive market").

[81] *See Amex*, 138 S. Ct. at 2298 (Breyer, J., dissenting).

[82] "In *Amex*, the two sides of the market were American Express cardholders who used the cards for purchases from merchants and the merchants who honored the use of the American Express cards for purchases by those cardholders." *US Airways, Inc.* v. *Sabre Holdings Corp.*, 938 F.3d 43, 54 n.3 (2d Cir. 2019) ("*Sabre*").

[redacted][83] [redacted]

Defendants muddle the description of ATM customers as [redacted]

[redacted] Decisively, Rochet and Tirole, leading economists on two-sided platforms, cited in *Amex*, 138 S. Ct. at 2281, [redacted] concluded that credit card networks and ATM networks are "fundamentally different" and that ATM networks are "one-sided:

> In that respect, the card payment industry is fundamentally different from ATM (Automated Teller Machines) networks....... There is no counterpart to merchant resistance in ATM markets, which are one-sided markets (there is only one side in the market to attract). This one-sidedness has several consequences. First, a change in the interchange

[83] [redacted]

fee (the fee is paid by the customer's bank to the ATM owner in this case) does not affect another side of the market with which the customer enjoys network externalities.[84]

[redacted] But Rochet & Tirole wrote about ATM networks in general, [redacted] and their reasoning had nothing to do with who set the interchange, but whether [redacted]

The defining feature of a "two-sided market" is that "the platform can affect the volume of transactions by charging more to one side of the market and reducing the price paid by the other side by an equal amount."[85] Since cardholder demand determines volume of transactions, charging more to the cardholder in the ATM surcharge and less, by an equal amount, in the bank's foreign fees does not alter the cardholder's total cost and cannot affect cardholder demand or volume of

---

[84] Jean-Charles Rochet and Jean Tirole, *Cooperation among Competitors: Some Economics of Payment Card Associations*, 33 RAND J. ECON. 549, 551 (2002) (cited in WL Reb. ¶ 112). Dr. Hubbard failed to mention this conclusion in his report. GH ¶ 79.

[85] *Amex*, 138 S. Ct. at 2300 (Breyer J. dissenting) (quoting Rochet & Tirole, *Two-Sided*

*Markets: A Progress Report*, 37 RAND J. ECON. 645, 664–665 (2006).

transactions.[86] [redacted] Moreover, Visa and MC have not set their respective issuer and acquirer fees jointly. WL Reb. ¶¶ 107-08. [redacted][87] [redacted][88]

Amex is a differentiated product and argued that it competes by attracting higher spending cardholders with its more costly rewards programs which it supports by charging higher merchants' fees. *Amex*, 138 S. Ct. at 2282-83. Merchants choose Amex because they value the higher spending Amex cardholders. Its anti-steering provisions are arguably not anticompetitive, but necessary to protect Amex's unique competitive business model. There was no conclusive evidence that Amex's merchant fees reflect "an ability to charge above a competitive price." *Id.* at 2288.

[redacted]

---

[86] Justice Breyer's dissent in *Amex* states, "[i]n some cases, the fact that a business can be thought of as two-sided may be irrelevant," including because "nothing in the analysis of the practices [at issue] really hinges on the linkages between the demands of participating groups." *Amex*, 138 S. Ct at 2300 (quoting Evans & Schmalensee, *Markets With Two-Sided Platforms*, 1 ISSUES IN COMPETITION L. & POL'Y 667, 689 (2008)).

[87] [redacted]

[88] [redacted]

[redacted]

In *Amex*, the Court found that Amex had not stifled price competition, citing times when competition forced Amex to lower its fees and noting that merchant fees declined by more than half since the 1950's. 128 S. Ct. at 2290. [redacted][89] [redacted]

Defendants speculate that [redacted] The data, however, refute any linkage between [redacted]

[89] [redacted]

[redacted][90] [redacted][91] [redacted][92] [redacted][93] [redacted], Dr. Lehr shows that foreign fees and bank surcharge reimbursement policies are irrelevant to, and do not affect, his opinions regarding class-wide injury and class-wide damages, [redacted].

[90] [redacted]

[91] [redacted]

[92] [redacted]es

[redacted]

## III. The Report of Defendants' Lay Expert Tony Hayes Should be Accorded No Weight

Mr. Tony Hayes[94] is not an economist and does not offer an expert economic opinion. [redacted] He is not an expert in consumer behavior and has not published any academic articles, case studies, or empirical research concerning the ATM industry. TH Dep. 397:11-400:4. Before his retention in this case he performed consulting work for Visa and MC an estimated twenty times. [redacted]

Mr. Hayes did not personally conduct a review of the record but tasked his "team" to select evidence and reviewed only what they presented to him. [redacted] First he met with his team to develop his "story line" and only thereafter instructed the team to search for documents that would be "the appropriate sort of citations to include." [redacted] When shown record documents at his deposition that contradict his report, he stated he had never seen them before or had seen them only after his report was submitted. [redacted], [redacted] He did not rely on any data, scholarly articles or treatises, or any information obtained from market participants. [redacted] He did not discuss the "pertinent factors" specific to independent ATMs with "any independent deployers to substantiate" his views. [redacted]

[94] Expert Report of Tony Hayes filed in Civil Action No. 1:11-cv-01882-RJL, February 18, 2020. ("TH")

Mr. Hayes testified that the "totality" of his report is to help [redacted] He purports to give his own personal views as to the behavior of market participants in the actual world,[95] [redacted] He expressly disavows giving any opinion as to the central but-for world issue of "whether competition would be enhanced or degraded or remain the same in the but-for world" in the absence of the NDRs. [redacted]

[redacted][96] [redacted]

In essence, Mr. Hayes merely parrots Defendants' argument [redacted] He offers no more than unsupported speculation that will not assist the trier of fact. His role

---

95 [redacted]

96 [redacted]

"is more to argue the client's cause from the witness stand than to bring to the fact-finder specialized knowledge or expertise that would be helpful in resolving the issues of fact presented by the lawsuit." *In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 538 (S.D.N.Y. 2004). Experts are not permitted to "supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence." *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 527 (S.D.N.Y. 2001). Rule 702 ensures that expert witnesses will not testify about "lay matters which a jury is capable of understanding and deciding without the expert's help." *Andrews v. Metro North Commuter Railroad Co.*, 882 F.2d 705, 708 (2d Cir. 1989) (citations omitted). "Acting simply as a narrator of facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013). Mr. Hayes' personal view about the behavior of market participants in the actual world "does no more than counsel for [defendants] will do in argument, i.e., propound a particular interpretation of [market participants'] conduct." *LinkCo., Inc. v. Fujitsu, Ltd.*, No. 00 Civ. 7242 (SAS), 2002 WL 158551, at *2 (S.D.N.Y. July 16, 2002).

Despite his obvious role as a Defense "summation" witness, Mr. Hayes did agree with many of the propositions advanced by Plaintiffs' economic experts. [redacted]

Courts require expert testimony to be based upon reliable methods and not simply a subjective opinion. "Trained experts commonly extrapolate from existing data, but the court will not admit "opinion evidence which is connected to existing data only by the *ipse dixit* of the *expert*." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (emphasis added); *Evans v. Wash. Metro. Area Transit* Auth., 674 F. Supp. 2d 175, 178 (D.D.C. 2009). "[T]he expert cannot ask a court simply to take his "word for it," but "must explain how that experience leads to the conclusion reached . . . and how that experience is reliably applied to the facts." *Hosp. Auth. v. Momenta Pharm.*, 333 F.R.D. 390, 401 (M.D. Tenn. 2019).

It is clear that Mr. Hayes does not qualify as an expert to give opinions concerning the economics of the but-for world. [redacted] Even if Mr. Hayes were qualified as a lay witness under Federal Rule of Evidence 701, he is not qualified to make the giant leap from his actual world experiences into rendering conclusory, non-expert opinions ("expectations") as to the economics of competition in the but-for world. [redacted]

[redacted]

Even if the Court were to consider it, Mr. Hayes's report goes only to the merits dispute among experts as to the contours of the but-for world.

## IV. The *Burke* Plaintiffs are Adequate Class Representatives

Defendants claim that the *Burke* Plaintiffs lack sufficient "familiarity" or "understanding." Opp. at 82-83. Defendants selectively quote snippets from depositions taken out of context. For example, they say that Plaintiff Heiskell [redacted]. But when shown the complaint, she testified that it set forth her claims, was filed with the Court, and served to initiate a lawsuit on her behalf against Visa and Mastercard. [redacted] She also understood that she is a class representative with a duty to act in the best interests of the class. *Id*. at 26:5-26:9, 26:19-27:3.

The adequacy requirement "creates a low bar: '[o]nly a 'total lack of interest and unfamiliarity with [the] suit would be sufficient grounds to deny plaintiffs' motion [to certify the class].'" *Borum v. Brentwood Vill., LLC*, No. 16-1723, 2019 U.S. Dist. LEXIS 97427, at *27 (D.D.C. June 11, 2019). "Particularly in complex cases, 'the qualifications of class counsel are generally more important in determining adequacy than those of the class representatives.'" *Howard v. Liquidity Servs., Inc*., 322 F.R.D. 103, 138 (D.D.C. 2017) (citing *Harris v. Koenig*, 271 F.R.D. 383, 391 (D.D.C. 2010)). In *Howard*, the court stated, "[t]he adequacy requirement does not require class representatives to initiate legal proceedings, nor does it mandate that representatives have intricate knowledge of complex legal claims." *Id.* at 135 (citing *Thorpe v. District of Columbia*, 303 F.R.D. 120, 151 (D.D.C. 2014). *Howard* concluded, "[i]ndeed, '[c]ourts rarely deny class certification on the basis of the inadequacy of class representatives, doing so only in flagrant cases, where the putative class representatives display an alarming unfamiliarity with

the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case.'" *Id.* (citations omitted).

In deposition, each plaintiff understood in general, non-technical terms their roles as class representatives, what the lawsuit was about, that it was against Visa and Mastercard, and that it involved the ATM surcharges they paid.[97] Nothing more is required.

**V. The State Classes Should be Certified**

Defendants make only a perfunctory statement urging denial of certification of the state-wide classes. Opp. at 84. The California, Illinois, Massachusetts, and Michigan[98] classes should be certified because the state laws are substantively identical with federal antitrust law.[99] Mem. at 9. Moreover, California recognizes a presumption of class wide impact for antitrust price-fixing claims. *See, e.g.*, *In re Qualcomm*, 328 F.R.D. at 301; *In re TFT-LCD*, 267 F.R.D. at 600-01.

**VI. The 23(b)(2) Injunctive Class Should be Certified**

Defendants do not dispute (1) [redacted] nor that (2) Plaintiffs seek uniform, indivisible final injunctive relief enjoining the rules on behalf of the 23(b)(2) class. These two elements are all Plaintiffs must show. *See Bynum v. District of Columbia*, 214 F.R.D. 27, 41 (D.D.C. 2003).[100] Defendants do not dispute

---

97 [redacted]

98 [redacted]

99 [redacted]

100 [redacted]

that common issues predominate as to the *per se* illegality of the NDRs as horizontal price fixing agreements. Rule 23(b)(2) is satisfied where "[t]he relief Plaintiffs seek is 'generally applicable to the class' and is indivisible." *O.A. v. Trump*, 404 F. Supp. 3d 109, 157 (D.D.C. 2019).[101] [redacted][102] [redacted] Plaintiffs' experts opine that competition in the but-for world would result in [redacted] for all class members. [redacted] These results do not signal an intra-class conflict or "lack of cohesion." As the court stated in *Laumann v. National Hockey League*, 105 F. Supp. 3d 384, 402 (S.D.N.Y. 2015), "The restriction of consumer options is an *ipso facto* antitrust harm, and conversely, the creation of new options is a benefit to the market as a whole. This is true for all consumers — even consumers . . . who are not interested in new options."

The three cases Defendants cite do not aid them here. *Wal-Mart Stores, Inc. v. Dukes* supports certification, stating: "The key to the (b)(2) class is 'the *indivisible* nature of the injunctive or declaratory *remedy* warranted—the notion that the *conduct* is such that it can be enjoined or declared unlawful *only as to all of the class members or as to none of them*.'" 564

---

[101] [redacted]

[102] [redacted] and Cirrus-only cardholders *could likely* face higher surcharges." Opp. at 81 (emphasis added).

U.S. 338, 360-61 (2011) (citations omitted) (emphasis added). In *Blackman v. District of Columbia*, unlike here, "any remedy will necessarily be unique" to individual class members. 33 F.3d 1088, 1094 (D.C. Cir. 2011). *Richardson v. L'Oreal United States, Inc*. addresses the utterly different setting of certification of a non-opt-out *settlement* class releasing all class members' damages claims and providing only injunctive relief. 991 F. Supp. 2d 181, 203 (D.D.C. 2013).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully move the Court to certify the Class, appoint the *Burke* Plaintiffs as Class Representatives, and appoint Finkelstein Thompson LLP and Lovell Stewart Halebian Jacobson LLP as Class Counsel.

DATED: September 3, 2020

Respectfully submitted,

/s/ *Douglas G. Thompson*
Douglas G. Thompson (D.C. Bar # 172387)
dthompson@finkelsteinthompson.com
Robert O. Wilson (*pro hac vice*)
rwilson@finkelsteinthompson.com
FINKELSTEIN THOMPSON LLP
3201 New Mexico Avenue NW, Suite 395
Washington, D.C. 20016
Telephone: 202-337-8000
Facsimile: 202-337-8090

Christopher Lovell
clovell@lshllp.com
Gary S. Jacobson
gsjacobson@lshllp.com
Merrick Scott Rayle
mrayle@lshllp.com
LOVELL STEWART HALEBIAN
JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

*Interim Class Counsel for the*
*Burke Plaintiffs*