**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ATM COUNCIL, INC., *et al.*,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>VISA INC., *et al.*,<br><br>*Defendants*. | Civil Action No. 1:11-Cv-01803-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |
| LYNNE BARTRON, *et al.*,<br><br>*Plaintiffs*,<br>*v.*<br><br>VISA INC., *et al.*,<br><br>*Defendants*. | Civil Action No. 1:11-Cv-1831-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |
| PETER BURKE, *et al.*,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>VISA INC., *et al.*,<br><br>*Defendants*. | Civil Action No. 1:11-Cv-1882-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |

**JOINT SUBMISSION REGARDING CASE SCHEDULE**

In accordance with the parties' Joint Status Report (11-cv-01803, Dkt. No. 213), Plaintiffs The National ATM Council, Inc., *et al.*, Andrew Mackmin, *et al.*, and Peter Burke, *et*

*al.* (collectively "Plaintiffs") and Defendants[1] in the above-captioned cases respectfully make this joint submission regarding a case schedule for further proceedings.

The parties have met and conferred but have been unable to reach agreement regarding a case schedule. Plaintiffs' proposed schedule is attached hereto as Exhibit A. Defendants' proposed schedule is attached hereto as Exhibit B. A chart comparing the parties' proposed schedules is attached hereto as Exhibit C.

## PLAINTIFFS' POSITION

**The ATM Operators' and Mackmin Plaintiffs' Proposal**

### I. Case Schedule

The ATM Operator Class and Mackmin Plaintiffs propose the following schedule:

1. Defendants' supplemental data production due on or before January 8, 2024;

2. Plaintiffs' expert reports due on or before March 8, 2024;

3. Defendants' expert reports due May 7, 2024 (60 days after Plaintiffs' deadline to submit expert reports);

4. Plaintiffs' rebuttal expert reports due June 21, 2024, (45 days after service of Defendants' expert reports);

5. Expert discovery closes August 20, 2024 (60 days after service of Plaintiffs' rebuttal expert reports; Experts may be deposed only once, which depositions may be scheduled any time after submission of their report(s));

6. Summary Judgment/Daubert motions due October 4, 2024 (45 days after the close of expert discovery);

7. Summary Judgment/Daubert opposition briefs due 45 days after service of the opening briefs;

8. Summary Judgment/Daubert reply briefs due 30 days after service

[1] "Defendants" means Visa Inc., Visa U.S.A. Inc., Visa International Service Association, Plus System Inc., Mastercard Incorporated, and Mastercard International Incorporated d/b/a Mastercard Worldwide.

of the opposition briefs;

9. Decision on any MSJ/Daubert motions: No sooner than the close of the opt out period for the certified class in the case in which the motion(s) were filed.

10. Pretrial Statements due on or before 35 days after the court's ruling on Summary Judgment/Daubert motions.

11. Pretrial conference: 14 days after pretrial statement deadline.

The ATM Operator Class and Mackmin Plaintiffs intend to rely on the methodologies and analyses already submitted in support of their motions for class certification. This evidence has been thoroughly examined and critiqued by Defendants' experts. Accordingly, an allotment of 90 days for Defendants to prepare an opposing expert report is unreasonably lengthy and disproportionate to the requirements of this case.

Moreover, as stated in the parties' November 7, 2023 Joint Status Report (ECF 213), the parties withdrew their respective scheduling proposals previously submitted to the Court on September 3, 2021. It is unseemly now for Defendants to complain that Plaintiffs have departed from an agreed schedule in light of two years of unnecessary delay caused by Defendants' meritless Rule 23(f) appeal to the D.C. Circuit.

Regarding expert depositions, Defendants propose that no expert be deposed until after Plaintiffs submit rebuttal reports. This is not how expert depositions were staged at class certification, and Defendants' proposal would deprive Plaintiffs of testimony needed to develop rebuttal reports, including on issues as to which Plaintiffs bear the burden of proof. Defendants are nevertheless free to defer depositions of Plaintiffs' experts until after rebuttal reports are submitted, provided that does not result in any

expert being deposed more than once.

Finally, the ATM Operator Class and Mackmin Plaintiffs propose to remedy Defendants' concern about the timing of class notice and opt-outs (as stated below) by asking the Court not to rule on any summary judgment or *Daubert* motions until after the respective opt out periods end (if they have not already ended by the time briefing is complete on any summary judgment or *Daubert* motions). That ensures that these decades-old cases do not drag out indefinitely, and it tidily resolves the alleged problems, as demonstrated by the fact that it has been done in other class actions for this very purpose.[2]

## II. Supplemental Disclosures

The ATM Operator Class and Mackmin Plaintiffs seek data from Defendants solely related to the accrual of damages to the Class during the period after Defendants' initial data production, *i.e.*, 2018-2023, which Defendants have agreed to provide. The ATM Operators and Mackmin Plaintiffs, however, reject the notion that Defendants are entitled to reciprocal or "supplemental" discovery concerning a range of liability issues. Fact discovery has been closed for nearly four years, and the case has been pending for more than a decade. Defendants have provided no reason to believe that the passage of time has altered the extensive factual record already developed in this case in some

[2] *See, e.g.*, *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2020 WL 2836954, at *4 (D. Kan. June 1, 2020) (explaining that the one-way intervention rule "requires that class members receive notice and an opportunity to opt out of the class before the court issues a dispositive ruling. It doesn't prevent the parties from briefing summary judgment"; and on this basis, ordering notice plan in parallel to summary judgment briefing because, "[a]s plaintiffs explain, sufficient time remains for the court to decide summary judgment before the April 13, 2021 trial date but after class notice is complete and the opt-out period has expired."); *Sidibe v. Sutter Health*, 2021 WL 3848020, at *2 (N.D. Cal. Aug. 28, 2021) ("Moreover, the court did not issue the summary-judgment order until after the opt-out period to avoid any issues with one-way intervention.").

material respect. Defendants should be barred from propounding additional requests for production after fact discovery has closed.[3]

For the same reason, the ATM Operator Class and Mackmin Plaintiffs object to any further third-party fact discovery (including from settled Bank Defendants) by either Plaintiffs or Defendants. The parties served more than 20 third-party subpoenas and engaged in prolonged negotiations and motion practice to obtain third-party materials. Defendants have not justified reopening that process years after fact discovery has closed.

**Burke Plaintiffs' Position**

**I. Proposed Schedule**

Burke Plaintiffs agree with the schedule proposed by the Operator Plaintiffs and by the Mackmin Plaintiffs.

**II. Proposed Additional Discovery**

1. Burke Plaintiffs oppose Defendants' proposal for additional discovery of plaintiffs as both cumulative and unwarranted. Burke Named Plaintiffs have previously demonstrated their membership in the class by producing bank statements reflecting their individual surcharged ATM cash withdrawal transactions. Their updated bank statements are not relevant or material to their standing or any other issue on the merits.

2. Burke Plaintiffs agree with the Operator and Mackmin Plaintiffs and oppose the re-opening of fact-related discovery. Defendants request an unlimited re-opening of fact

[3] Defendants have requested: i) Any agreements with depository institutions/ATM issuers; Bank statements showing fees (or reimbursements) relating to ATM usage; and Receipts from ATM usage from the Consumer Plaintiffs; ii) Any agreements with processors, acquirers, merchants, networks; Documents sufficient to show net interchange for each ATM terminal over time; Documents sufficient to show routing instructions for each ATM terminal over time; Documents sufficient to show surcharge amounts for each ATM terminal over time from the ATM Operator Plaintiffs; iii) Updated rules; and Updated data on interchange and network fees from Third Parties; and iv) Updated data; and Updated contracts with ATM networks from the Settled Bank Defendants.

discovery that is not directly related to, and limited to, additional transactional data necessary to update damages calculations. Defendants' proposal for third party discovery covers every major issue in the case – liability, causation, and prospective relief -- yet nothing material to those issues has changed. The Defendants' ATM price-fixing rules remain in effect and their economic impact on competition remains ongoing. The only thing that has changed is that additional damaged transactions are occurring every day.

3. In contrast to Defendant's proposed broad re-opening of fact discovery, Burke Plaintiffs propose only limited updating of transactional data previously produced by Defendants and by Switch Commerce, an ATM processor, and then not for the purpose of augmenting their case on liability, causation or prospective relief, but solely for the purposes of bringing their damages calculations current. The Switch Commerce data is an integral part of the damage calculations as set forth in Burke's Class Certification Expert Report. *See, e.g.*, Lehr Class Certification Report at paras. 151-61. The data through June 2018 was previously produced prior to the close of fact discovery. An update is justified to bring the Burke Class damage estimates current. Without the update the Burke Class will be severely prejudiced.

**DEFENDANTS' POSITION**

Defendants have four disagreements with Plaintiffs' proposals above, as follows: (1) Defendants seek 90 days, rather than Plaintiffs' proposed 60 days, to submit their expert reports in response to all of the liability and damages reports submitted by Plaintiffs in all three cases, as Plaintiffs previously agreed; (2) Defendants propose that all expert depositions occur once, after all expert reports are served, as a matter of efficiency; (3) Defendants submit that summary judgment and *Daubert* briefing should occur the later of 60 days after the pertinent opt-out period or the close of expert discovery so they can know the complete make-up of the classes

prior to summary judgment; and (4) Defendants should be allowed to receive very limited, non-burdensome supplemental document discovery of Plaintiffs and third parties (essentially a "refresh" of post-2017 data, contracts and rules) in order to defend against Plaintiffs' post-2017 liability and damages claims, and given that such discovery is essential and would not delay the case schedule.

## I. Time for Defendants' Expert Reports

The parties previously agreed that a period of at least 90 days is warranted for Defendants to review and submit expert reports responding to Plaintiffs' expert reports. *See* 9/3/2021 Joint Submission Regarding Proposed Case Schedule (11-cv-01803, Dkt. No. 196) ("Joint Submission") at 2. At class certification, the three Plaintiff groups submitted four opening expert reports totaling over 250 pages and accompanied by over 50 megabytes of data analysis. There is no reason to expect that Plaintiffs' merits expert reports will be any narrower. Nor is there any legitimate reason for Plaintiffs to go back on their prior agreement.

The ATM Operator Class and Mackmin Plaintiffs suggest that they will no longer agree to 90 days for Defendants' expert reports given what they characterize as a "meritless" appeal of the class certification orders in these cases. But that appeal only delayed the proceedings because the D.C. Circuit agreed to take up the issue on an interlocutory basis. An appeal of an issue on which the D.C. Circuit has specifically granted review is an appropriate part of the litigation process, not a reason to upend the parties' prior agreement on a reasonable case schedule.

Moreover, while trying to squeeze Defendants on time contrary to their prior agreement, Plaintiffs are also now requesting *more* time than the parties previously agreed for Plaintiffs to prepare their merits expert reports—a total of over 4 months from resolution of the appeal,

including a full 60 days after the completion of supplemental productions. Putting aside the unfairness of proposing less time for Defendants and more time for themselves, this change suggests that Plaintiffs' merits expert submissions will be even more extensive than previously anticipated. It also belies the ATM Operator Class and Mackmin Plaintiffs' claim that their expert reports will take less time to respond to because they will merely "rely on the methodologies and analyses already submitted in support of [the] motions for class certification." Plaintiffs' request for more time for themselves reveals that their experts will be doing a significant amount of new work. Defendants are entitled to a reasonable amount of time to respond to the substantial amount of material that they expect to receive from three separate Plaintiff groups.[4]

## II. Efficient Coordination Across Cases

Defendants respectfully submit that the expert deposition period should occur after all expert reports are served, so that the deposing parties have the full panoply of reports available for efficient depositions across the cases. To this point, this Court has managed these cases in a coordinated fashion as a matter of efficiency, and there is no reason to deviate from that coordinated approach now.

## III. Class Notice, Summary Judgment, and *Daubert* Briefing

Defendants and the ATM Operator Plaintiffs previously reached agreement on a schedule for class notice, summary judgment, and *Daubert* briefing. *See* Joint Submission at 6. The justifications for that prior agreement continue to apply now. In particular, (a) the schedule should ensure that the class notice and opt out processes are complete before the parties file

---

[4] As Defendants previously stated, they may ask the Court for more than 90 days for good cause, depending on the volume of Plaintiffs' submissions. *See* Joint Submission at 2-3. At a minimum, however, Defendants should receive the time the parties previously agreed on. *Id.*

summary judgment motions, and (b) the parties should have 60 days after the close of expert discovery to file summary judgment and *Daubert* motions.

Completing the class notice and opt-out process before briefing and adjudication on the merits protects not only the rights of absent class members but also Defendants because "if the Court were to . . . rule in Defendants' favor, that ruling would not bind the class members who had not received notice and an opportunity to opt out of the lawsuit beforehand." *Darrington v. Assessment Recovery of Washington, LLC*, 2014 WL 3858363, at *4 (W.D. Wash. Aug. 5, 2014); *see also Gessele v. Jack in the Box, Inc*., 2012 WL 3686274, at *3 (D. Or. Aug. 24, 2012) ("Any prejudice to plaintiffs from a delay in obtaining a summary judgment ruling does not outweigh the prejudice to defendant if an early determination of the summary judgment motion was made prior to the conclusion of the opt-out period."); *accord Curtin v. United Airlines, Inc.*, 275 F.3d 88, 93 (D.C. Cir. 2001) (noting that "it is often more protective of the interests of defendants to begin with the issue of class certification, because only a merits decision made after certification will bind all members of the class"). Accordingly, courts may defer the filing of summary judgment motions until after the class has received notice and had an opportunity to opt out of the case. *See, e.g.*, *Darrington*, 2014 WL 3858363, at *1 (denying plaintiffs' motion for summary judgment "without prejudice to re-filing once the class has received notice and had an opportunity to opt out of this case").

The class notice and opt out process has not yet begun in these cases. Defendants believe that the schedule should ensure that those steps are complete before the parties file summary judgment motions. Indeed, it will be important for Defendants to know who is (and is not) part of each class in deciding what arguments to make against class members on the merits. Moreover, even assuming the class notice and opt out period are complete before the close of

expert discovery, Defendants believe that 60 (rather than 30) days thereafter is an appropriate window within which to file summary judgment and *Daubert* briefs, particularly since Defendants expect to bring different motions in each case.

## IV. Scope of Supplemental Discovery

Plaintiffs have requested that Defendants supplement their productions of transaction and fee data to cover the approximately 5 years since productions were made in these cases. Defendants have agreed to these requests.

However, Plaintiffs have thus far refused to acknowledge their equivalent obligations to supplement their own productions with information that is material to Defendants' defenses at trial. Plaintiffs further seek to bar Defendants (but not themselves) from seeking any supplemental discovery from third parties. Defendants have requested that Plaintiffs supplement their productions in discrete, narrow categories, namely: (a) for consumers, their agreements with banks, bank statements, and receipts from ATM usage and (b) for the ATM operators, their agreements related to their ATMs and data on the interchange, routing, and surcharging at their ATMs. Defendants contemplate similarly discrete requests to third-party ATM networks and the settling bank defendants, covering third-party network rules that could impact ATM operators' ability to differentially surcharge, updates to ATM network data and contracts relevant to demonstrating competition in the industry, and updates to the bank operator data that underlies the Mackmin plaintiffs' theory of class-wide injury.

Federal Rule of Civil Procedure 26(e) requires supplementation when the disclosing party learns that prior disclosures or document productions are incomplete or incorrect "in some material respect." "Material" for purposes of the rule means that there is an "objectively reasonable likelihood" that the additional information "could substantially affect or alter the

opposing party's discovery plan or trial preparation." *Tuft v. Indem. Ins. Co. of N. Am.*, 2021 WL 9036457, at *2 (D. Colo. Sept. 2, 2021) (internal quotation marks omitted); *see also, e.g.*, *EQT Gathering, LLC v. Marker*, 2015 WL 9165960, at *6 (S.D.W. Va. Dec. 16, 2015); *Gorzynski v. JetBlue Airways Corp.*, 2012 WL 712067, at *4 (W.D.N.Y. Mar. 5, 2012).

There is no question that the documents Defendants seek could alter their trial preparation. These documents go to the heart of primary defenses in these cases. For example, Defendants will show their challenged rules are pro-competitive because they guard against price-gouging and help constrain constantly increasing surcharges at ATMs throughout the country (which could have increased even more but-for Defendants' challenged rules). Defendants will also show that no Plaintiff was injured by the challenged rules because Plaintiffs would not have paid lower surcharges (as consumers) or surcharged differentially (as operators) in a but-for world. Defendants are entitled to documents showing the various relationships among networks, banks, processors, consumers, and other entities in the ATM industry, as well as ATM industry practices that are unrelated to the challenged rules, to establish these and other points to the present.

Although Plaintiffs unsurprisingly insist that nothing has changed in the last five years except their own entitlement to more damages, the whole purpose of discovery is to allow the parties to test those kinds of self-serving claims. As just one example, if Mackmin Plaintiffs intend (as they claim) to rely on their class certification methodology of using the interchange and surcharge rates of the settling bank defendant Wells Fargo to establish class-wide injury, then Defendants are entitled to test whether that injury theory holds up based on Wells Fargo's surcharge and interchange rates over the last five years.

Plaintiffs are seeking damages through the present, which is why they need a data refresh

from Defendants, and Plaintiffs seek prospective relief that necessarily implicates the state of the market as of the time of trial. Plaintiffs cannot plausibly maintain these positions while also claiming that Defendants need no supplemental discovery from Plaintiffs or third parties on market conditions existing since 2017. At a minimum, Defendants should have the ability to secure discovery to test the liability and damages theories that plaintiffs are pursuing for the post-2017 time period. While Defendants may wish to rely on newer documents from their own files and also plan to produce the data that Plaintiffs have sought, Defendants should also have the benefit of critical and more recent information in the files of Plaintiffs and third parties.

Importantly, the documents Defendants seek are discrete. Defendants are not seeking to reopen fact depositions. Plaintiffs have not identified any significant burdens associated with providing this information. Plaintiffs therefore should be required to provide this minimal information that Defendants have sought.

Accordingly, and as set forth in Exhibit B, Defendants' proposal regarding the case schedule for further proceedings is as follows:

**Parties to complete supplemental discovery (including the discrete categories identified by Defendants):** January 8, 2024

**Plaintiffs' expert reports:** March 8, 2024

**Defendants' expert reports:** June 6, 2024. (As noted, Defendants might seek additional time for their expert reports, but believe that it would be premature to do so before knowing the scope of Plaintiffs' expert reports.)

**Plaintiffs' rebuttal expert reports:** July 22, 2024

**Expert discovery period:** July 23, 2024 to September 23, 2024

**MSJ/*Daubert* opening brief deadline:** The later of 60 days after (a) the close of expert discovery or (b) the close of the opt out period in the case for which Defendants intend to file the motion(s)

**MSJ/*Daubert* opposition brief deadline:** 45 days after opening brief deadline

**MSJ/*Daubert* reply brief deadline:** 30 days after MSJ/*Daubert* opposition brief deadline

**Pretrial statements:** 35 days after resolution of all summary judgment and *Daubert* motions applicable to the case in which the pretrial statement is to be filed

**Pretrial conference:** 14 days after pretrial statement deadline

Dated: November 21, 2023

By: *__/s/* Jonathan L. Rubin________
Jonathan L. Rubin (D.C. Bar No. 353391)
MOGINRUBIN LLP
2101 L Street, N.W.
Suite 300
Washington, D.C. 20037
Tel: (202) 630-0616
Fax: (877) 247-8586
jrubin@moginrubin.com

Daniel J. Mogin (*pro hac vice*)
MOGINRUBIN LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 687-6611
Fax: (619) 687-6610
dmogin@moginrubin.com

*Counsel for Plaintiffs the National ATM Council, Inc.; ATMs of the South, Inc.; Business Resource Group, Inc.; Just ATMs USA, Inc.; Wash Water Solutions, Inc.; ATM Bankcard Services, Inc.; Selman Telecommunications Investment Group, LLC; Turnkey ATM Solutions, LLC; and Trinity Holdings Ltd, Inc.; 901 Financial Services LLC*

Dated: November 21, 2023

By: /s/ Steve W. Berman

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Ben M. Harrington (*pro hac vice*)
Benjamin J. Siegel (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3034
benh@hbsslaw.com
bens@hbsslaw.com

Adam B. Wolfson (*pro hac vice*)
Viola Trebicka (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
adamwolfson@quinnemanuel.com
violatrebicka@quinnemanuel.com

Steven A. Skalet
(D.C. Bar No. 359804)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Cbriskin@findjustice.com

*Counsel for Mackmin Consumer Class*

Dated: November 21, 2023

By: */s/* Douglas G. Thompson Jr.
Douglas G. Thompson (D.C. Bar # 172387)
dthompson@finkelsteinthompson.com
FINKELSTEIN THOMPSON LLP
2201 Wisconsin Ave, N.W.
Washington, D.C. 20001
Telephone: 202-337-8000
Facsimile: 202-337-8090

Christopher Lovell
clovell@lshllp.com
Merrick Scott Rayle
mrayle@lshllp.com
LOVELL STEWART HALEBIAN
JACOBSON LLP
500 Fifth Ave, Suite 2440
New York, NY 10110
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

*Counsel for Burke Consumer Class*

Dated: November 21, 2023

By: ___/s/ Kenneth A. Gallo________
Kenneth A. Gallo (D.C. Bar No. 371253)
kgallo@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Tel. (202) 223-7300
Fax. (202) 223-7420

*Counsel for Defendants Mastercard Incorporated and Mastercard International Incorporated*

Dated: November 21, 2023

By: ___/s/ Matthew A. Eisenstein__________
Matthew A. Eisenstein (D.C. Bar No. 476577)
matthew.eisenstein@arnoldporter.com
Rosemary Szanyi (D.C. Bar No. 997859)
rosemary.szanyi@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Tel. (202) 942-5000
Fax. (202) 942-5999

*Counsel for Defendants Visa Inc., Visa U.S.A. Inc., Visa International Service Association, and Plus System, Inc.*