**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ATM COUNCIL, INC., *et al.*,<br>*Plaintiffs*,<br>*v.*<br>VISA INC., *et al.*,<br>*Defendants*. | Civil Action No. 1:11-cv-01803-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |
| LYNNE BARTRON, *et al.*,<br>*Plaintiffs*,<br>*v.*<br>VISA INC., *et al.*,<br>*Defendants*. | Civil Action No. 1:11-cv-1831-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |
| PETER BURKE, *et al.*,<br>*Plaintiffs*,<br>*v.*<br>VISA INC., *et al.*,<br>*Defendants*. | Civil Action No. 1:11-cv-1882-RJL<br>Assign Date: 8/4/2015<br>Description: Antitrust – Class Action |

**DEFENDANTS' MOTION FOR**
**CLARIFICATION OF AMENDED SCHEDULING ORDER**

Defendants[1] respectfully seek relief from *Mackmin* and Operator Plaintiffs' efforts to block Defendants from obtaining discrete, supplemental information they need to defend against these three coordinated class actions seeking billions of dollars in damages. Defendants specifically seek clarification that all parties may seek and rely on updates to previously-produced data from third parties, including Wells Fargo.[2] Defendants are not seeking any new categories of information (just updates to prior productions) and are not asking for all prior fact discovery to be updated (only limited material). Given that Plaintiffs intend to use Defendants' data over the last five years through the present to seek damages from that period and seek prospective injunctive relief, depriving Defendants of discrete and critical data from this same period to respond to Plaintiffs' arguments on liability, causation, and damages would significantly prejudice Defendants and hamstring their ability to defend themselves fairly.

All parties acknowledge that some amount of supplemental discovery is needed given the roughly five years that have elapsed since productions were last made. Indeed, parties on both side have requested supplemental information from other parties in the case as well as from third parties. However, *Mackmin* and Operator Plaintiffs seek to prevent Defendants from obtaining updates to the Wells Fargo dataset that *Mackmin* Plaintiffs previously described as "undisputedly the best data available" and made the centerpiece of their empirical proof of class-wide injury. *Burke* Plaintiffs, who are themselves seeking supplemental discovery from a third party, do not oppose Defendants' request for and use of supplemental data from Wells Fargo.

---

[1] "Defendants" means Visa Inc., Visa U.S.A. Inc., Visa International Service Association, Plus System Inc., Mastercard Incorporated, and Mastercard International Incorporated d/b/a Mastercard Worldwide.

[2] "Wells Fargo" means, collectively, Wells Fargo & Company and Wells Fargo Bank, N.A.

The updated Wells Fargo data are critical to Defendants' primary defenses—which is precisely why Plaintiffs are trying to prevent Defendants from obtaining them. *Mackmin* and Operator Plaintiffs would limit the supplemental discovery to only those documents and data that will enable Plaintiffs to increase their own damages estimates, while opposing any reciprocal collection of discovery that could undermine their theory of causation and class-wide injury, demonstrate the pro-competitive benefits of Defendants' challenged rules, or otherwise support the defense. That one-sided approach is unfair and inconsistent with the Federal Rules. The production of updated data from Wells Fargo now, in advance of merits expert reports, will not prejudice Plaintiffs, will be of no burden whatsoever to Plaintiffs, and will not delay the schedule.

For these reasons, as further explained below, Defendants respectfully request that the Court grant their motion.

## BACKGROUND

### I. Relevant Procedural History

These three coordinated cases returned to this Court on October 6, 2023, following the D.C. Circuit's decision to review on an interlocutory basis, and ultimately affirm, the Court's class certification orders. *See* Mandate of USCA as to 205 Notice of Appeal to D.C. Circuit Court, ECF No. 212, Dkt. No. 11-cv-01803 (D.D.C. Oct. 10, 2023). Shortly thereafter, in recognition of the roughly five years that had elapsed since productions were made in these cases, all parties acknowledged the need for certain limited, supplemental discovery.

All three Plaintiff groups requested that Defendants supplement their production of transaction and fee data, to which Defendants agreed. *See* Joint Submission Regarding Case

Schedule, ECF No. 215, Dkt. No. 11-cv-01803 (D.D.C. Nov. 21, 2023) ("Joint Submission") at 4, 6, 10. *Burke* Plaintiffs also stated their intent to seek a "limited updating of transactional data previously produced" from a third-party processor, to which Defendants did not object. *Id.* at 6. Defendants similarly provided a list to Plaintiffs of the discrete categories of supplemental discovery that they proposed to seek from Plaintiffs and certain third parties—including settling defendants—that had previously made productions. Ex. 1, Email from R. Szanyi Email to Pls.' Counsel (Nov. 7, 2023). But Plaintiffs objected to all of Defendants' requests. Joint Submission at 4–6.

The parties referenced this disagreement in connection with their Joint Submission Regarding Case Schedule filed with the Court on November 21. In that submission, *Mackmin* and ATM Operator Plaintiffs stated that they "reject[ed] the notion that Defendants are entitled to . . . 'supplemental' discovery" and "object[ed] to any further third-party fact discovery (including from settled bank defendants) by either Plaintiffs or Defendants." *Id.* at 4–5. They therefore proposed that the Court only set a deadline for "Defendants' supplemental data production," without any broader allowance for supplemental discovery. *Id.* at 2.

In the same submission, Defendants defended the supplemental discovery they sought from both Plaintiffs and third parties, explaining that the supplemental information "go[es] to the heart of primary defenses in these cases." *Id.* at 11–12. Consistent with this position, Defendants asked the Court to more broadly set a deadline for the "[p]arties to complete supplemental discovery (including the discrete categories identified by Defendants)." *Id.* at 12.

The Court's December 11, 2023 Amended Scheduling Order set a deadline for the "[p]arties to complete supplemental discovery." Amended Scheduling Order, ECF No. 216, Dkt.

No. 11-cv-01803 (D.D.C. Dec. 11, 2023) ("Amended Scheduling Order") at 2. The Court cautioned, however, that "fact discovery in this case has already closed, and any requests for the production of additional categories of documents are untimely." *Id.* at n.2. The Court also advised the parties that any disagreements over which categories of documents were covered by the parties' duty to supplement under Federal Rule of Civil Procedure 26(e) should be presented by motion. *Id.*

Following the Court's Order, Defendants reiterated their intent to seek discrete supplemental discovery from third parties including settling defendants. Ex. 2, Email from R. Szanyi to Pls.' Counsel (Dec. 12, 2023).[3] *Mackmin* and Operator Plaintiffs have continued to object to Defendants' obtaining supplemental discovery from any third parties and specifically Wells Fargo, as detailed further below.

Pursuant to Local Civil Rule 7(m), on January 4 and 5, 2024, Defendants' counsel discussed this motion with Plaintiffs' counsel a final time. *Burke* Plaintiffs advised that they no longer oppose the relief sought. *Mackmin* Plaintiffs, however, continue to oppose. ATM Operator Plaintiffs' counsel did not respond to the inquiry as to their position, and thus Defendants understand that they continue to oppose as well.

[3] Defendants have reached agreement with each of the Plaintiff groups regarding the categories for their supplemental productions, although ATM Operator Plaintiffs have indicated that their productions may ultimately be limited by unspecified "undue burden." Ex. 3, Letter from J. Rubin to R. Szanyi (Jan. 3, 2024). Accordingly, although no productions have been made to date, there is no ripe dispute as to the scope of party discovery at this time. Defendants reserve the right to seek relief if Plaintiffs' productions are incomplete in some material respect.

## II. The Wells Fargo Data at Issue

During fact discovery, in response to *Mackmin* Plaintiffs' original discovery requests, then-defendant Wells Fargo produced data showing the surcharge and net interchange amounts for transactions at Wells Fargo ATMs. *See, e.g.*, Ex. 4, Pls.' First Req. for Produc. of Docs. to Wells Fargo Defs., No. 15. The produced data cover the time period of October 2007 through April 2017.

This Wells Fargo dataset became the centerpiece of *Mackmin* Plaintiffs' empirical proof of class-wide injury. At class certification, their expert Professor Dennis Carlton presented a regression analysis of the Wells Fargo data from 2010–2017, the results of which he found to be "consistent with the prediction that, in the long run, every one-cent reduction in net interchange is associated with a one-cent increase in surcharge." Expert Report of Dennis W. Carlton (Sept. 19, 2019), ECF No. 177, Dkt. No. 11-cv-01831 (D.D.C. Sept. 20, 2019) ("Carlton Expert Report") ¶¶ 82–83; *see also* Br. for Pls.-Appellees *Mackmin* Class, Dkt. No. 21-7110 (D.C. Cir. Mar. 28, 2022) ("*Mackmin* D.C. Cir. Br.") at 10 ("Professor Carlton's Wells Fargo regression yields a virtual one-to-one inverse relationship between net-interchange and surcharges."). Professor Carlton then relied on this finding of a supposedly one-to-one inverse relationship between changes in net interchange and changes in surcharge as a basis to develop an "estimate of the impact on the class" of reductions in net interchange that have occurred over time. Carlton Expert Report ¶ 108.

Professor Carlton and *Mackmin* Plaintiffs argue that the Wells Fargo data are uniquely significant because there are "***no other data sources*** that contain surcharges and net interchange for all networks for a bank other than Wells Fargo." Expert Reply Report of Dennis W. Carlton

(Sept. 3, 2020), ECF No. 217, Dkt. No. 11-cv-01831 (D.D.C. Sept. 4, 2020) ¶ 63 (emphasis added); *see also id.* ¶ 65 (stating that "the weighted average net interchange across all networks with transactions at a bank's ATMs" is "available for only Wells Fargo"); *Mackmin* Consumer Pls.' Reply Mem. in Supp. of Mot. for Class Certification and Appointment of Class Counsel, ECF No. 217, Dkt. No. 11-cv-01831 (D.D.C. Sept. 4, 2020) at 7–8, 12 (describing the Wells Fargo data as "the most reliable data" for assessing the relationship between net interchange and surcharge). As *Mackmin* Plaintiffs told the D.C. Circuit, they believe it is "***undisputedly the best data available***" and their expert should not be "requir[ed] . . . to use less pertinent data in his regression analysis." Opp. of *Mackmin* Class to Pet. of Defs. for Permission to Appeal Order Granting Class Certification Pursuant to Fed. R. Civ. P. 23(f), Dkt No. 21-8005 (D.C. Cir. Aug. 30, 2021) at 21 (emphasis altered); *see also, e.g.*, *Mackmin* D.C. Cir. Br. at 13 ("[T]he Wells Fargo data are the best available data").

Moreover, *Mackmin* Plaintiffs are using this supposedly uniquely high-quality dataset to attempt to prove injury class-wide, not just at Wells Fargo ATMs. Their position at class certification, which they claim will also be their position on the merits, is that "the Wells Fargo data are representative of how all banks responded to lower net-interchange with higher surcharges." *Mackmin* D.C. Cir. Br. at 13; *see also* Joint Submission at 3 (representing that, for their merits expert reports, "Mackmin Plaintiffs intend to rely on the methodologies and analyses already submitted in support of their motions for class certification"). Both this Court and the D.C. Circuit understood that the Wells Fargo dataset was central to the case, discussing it specifically in their opinions as an issue that should be litigated at the merits stage. *See* Mem. Op., ECF No. 192, Dkt. No. 11-cv-01803 (D.D.C. Aug. 4, 2021) at 13 (noting "Defendants take

issues with Prof. Carlton's use of Wells Fargo's increased ATM surcharges as representative of the ATM industry as a whole," but concluding that "this critique is better suited for adjudication . . . on the merits"); Mem. Op., Dkt No. 21-7109 (D.C. Cir. July 25, 2023) at 12 (affirming this conclusion).

**ARGUMENT**

As shown above, *Mackmin* Plaintiffs have long claimed that the Wells Fargo dataset is the only available data that can reliably prove or disprove class-wide injury in their case. However, the produced version of that data is now over six years out of date and missing more than a third of the relevant time-period. Accordingly, Defendants have sought an update of this data to cover the last six years.

*Mackmin* Plaintiffs apparently have no interest in seeing whether their primary piece of empirical evidence on injury withstands the test of time. They (along with Operator Plaintiffs) have informed Defendants' counsel that they believe collecting supplemental data from a third party would violate the Court's most recent and previous scheduling orders. Ex. 5, Emails between R. Szanyi and Pls.' Counsel (Dec. 19, 2023, 11:23 AM EST). Defendants understand that *Mackmin* Plaintiffs even wrote directly to Wells Fargo's counsel that providing a data refresh would be a violation of Court orders.

*Mackmin* and Operator Plaintiffs' one-sided standards for supplemental discovery are unjustified and inconsistent with the Federal Rules. Defendants recognize that fact discovery is closed. Defendants are not making any requests for additional categories of documents or pursuing any information that could have been obtained during the fact discovery period. The supplemental data from Wells Fargo is merely an update to data that Wells Fargo previously

produced pursuant to Plaintiffs' discovery requests. *See supra* at 5. This update was, by its nature, unavailable during fact discovery, because it covers the years since Wells Fargo's production in fact discovery. Nothing in the Court's Amended Scheduling Order (or prior orders) precludes parties from using the supplemental discovery period to seek this kind of supplemental discovery from a third party. Indeed, *Burke* Plaintiffs are in the process of obtaining a similar data update from a third party. *See* Joint Submission at 6. And all Plaintiffs have sought updated data from Defendants.

Even if some modification of the Amended Scheduling Order were necessary (and it is not), good cause exists to permit Defendants to receive and rely upon Wells Fargo's supplemental data. "The factors that courts consider when determining whether there is good cause to reopen discovery include '(1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allotted by the district court; and (6) the likelihood that discovery will lead to relevant evidence.'" *United States v. Sci. Applications Int'l Corp.*, 301 F.R.D. 1, 3 (D.D.C. 2013) (quoting *Childers v. Slater*, 197 F.R.D. 185, 188 (D.D.C. 2000)).

Other than *Mackmin* and Operator Plaintiffs' opposition, all of these factors favor Defendants. Trial is far from imminent, as merits expert discovery is just getting underway. The supplemental data will be produced and provided to all parties before either side's expert reports are due, so there is no risk of prejudice to Plaintiffs. And *Mackmin* Plaintiffs' own arguments have made these data centrally relevant; *Mackmin* Plaintiffs' case rests on the propositions that

the Wells Fargo data are the "best data available" and "representative of how all banks responded to lower net-interchange with higher surcharges." *See supra* at 5–6.

Further, Defendants have diligently pursued this supplemental discovery, which is the primary consideration under the good cause standard. *See, e.g.*, *Reid v. Washington Metro. Area Transit Auth.*, 2021 WL 10724633, at *1 (D.D.C. May 6, 2021). The updated data Defendants seek only came into existence after fact discovery closed and while the case was on appeal. *See supra* at 2, 5, 7; *see also Reid*, 2021 WL 10724633, at *1 (granting request to reopen discovery into an employee's termination and explaining that, because she "was not terminated until months after discovery ended, [the moving party] could not have obtained this information with diligence during discovery"). Once the cases returned to this Court, Defendants promptly sought Plaintiffs' cooperation in pursuing an update to the Wells Fargo data, and then pressed on over Plaintiffs' objections and their efforts to deter Wells Fargo's cooperation. *See supra* at 2–4, 7. Defendants first spoke with Wells Fargo's counsel regarding updating its data production on December 15, 2023, four days after entry of the Amended Scheduling Order, and Defendants have explained the need for Wells Fargo to provide the data expeditiously. Wells Fargo has engaged with Defendants' request but is not a party to this dispute.[4] Indeed, ATM Operator Plaintiffs—who are parties—have indicated that they are not likely to complete their data

[4] In conferring on this motion, *Mackmin* Plaintiffs' counsel incorrectly claimed that Defendants previously took the position that Wells Fargo is a "party" subject to the Court's deadline for the "[p]arties to complete supplemental discovery." Amended Scheduling Order at 2. To the contrary, as is clear from the parties' correspondence, Defendants have consistently distinguished between the obligations of the "parties" as opposed to information Defendants intended to seek from "third parties" or "settling defendants," which are entities Defendants specifically described as "non-parties." *See* Ex. 5, Emails between R. Szanyi and Pls.' Counsel (Dec. 14, 2023, 4:49 PM EST; Dec. 15, 2023, 12:27 PM EST; Dec. 18, 2023, 3:22 PM EST). There is no plausible room for confusion on this point.

productions by January 8. *See* Ex. 3, Letter from J. Rubin to R. Szanyi (Jan. 3, 2024) at 4. And it is far from clear that *Burke* Plaintiffs will receive their data update from a third party before January 8 either. *See* Joint Submission at 6.

The cases that *Mackmin* and Operator Plaintiffs have cited to Defendants as denying supplemental third-party discovery, *see* Ex. 5, Emails between R. Szanyi and Pls.' Counsel (Dec. 19, 2023; 11:23 AM EST), underscore the unjustified nature of their opposition here. In *Dag Enterprises, Inc. v. Exxon Mobil Corp.*, the court was willing to ***permit*** the plaintiffs to amend their expert reports to include new third-party information—even after *Daubert* motions had been filed—when the court believed that the information could not have been obtained during the discovery period. *See* 226 F.R.D. 95, 99–101, 104–05 (D.D.C. 2005). The court denied the request only after learning that—unlike here—the plaintiffs could have but failed to request the information during discovery. *See id.* at 107–08. Similarly, in *Murphy by Murphy v. Harpstead*, the court excluded third-party material produced after the close of expert discovery and dispositive motion briefing where the party seeking to use the material had made "no showing that any of the documents were created after the fact discovery period closed." 2019 WL 6650510, at *6 (D. Minn. Dec. 6, 2019). The opposite is the case here: expert discovery is just starting and Defendants are seeking updated data that came into existence after fact discovery closed.

There is no legal principle that would justify depriving Defendants of important, new information that can be timely incorporated into all parties' expert analyses.

## CONCLUSION

For the forgoing reasons, this Court should clarify that its scheduling orders permit parties to request prior to the supplemental discovery cutoff date, and subsequently rely upon, updates to previously-produced data from third parties, specifically including Wells Fargo.

Dated: January 5, 2024

Respectfully submitted,

By: ___*/s/* Matthew Eisenstein____________
Matthew A. Eisenstein (D.C. Bar No. 476577)
matthew.eisenstein@arnoldporter.com
Rosemary Szanyi (D.C. Bar No. 997859)
rosemary.szanyi@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Tel. (202) 942-5000
Fax. (202) 942-5999

*Counsel for Defendants Visa Inc., Visa U.S.A. Inc., Visa International Service Association, and Plus System, Inc.*

By: ___*/s/* Kenneth Gallo__________
Kenneth A. Gallo (D.C. Bar No. 371253)
kgallo@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Tel. (202) 223-7300
Fax. (202) 223-7420

*Counsel for Defendants Mastercard Incorporated and Mastercard International Incorporated*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2024, I caused a true and correct copy of the foregoing to be served on all counsel of record in the above-referenced action via the CM/ECF system, and via FTP on counsel in *National ATM Council, Inc., et al. v. Visa Inc., et al.*, 1:11-cv-01803-RJL (D.D.C.); *Lynne Barton, et al. v. Visa Inc., et al.*, 1:11-cv-01831-RJL (D.D.C.); and *Peter Burke, et al. v. Visa Inc., et al.*, 1:11-cv-01882-RJL (D.D.C.).

Dated: January 5, 2024

*/s/ Matthew A. Eisenstein*
Matthew A. Eisenstein