# Exhibit 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDREW MACKMIN, BARBARA INGLIS, AND SAM OSBORN,<br><br>Plaintiffs,<br><br>v.<br><br>VISA INC., VISA U.S.A. INC., VISA INTERNATIONAL SERVICE ASSOCIATION, and PLUS SYSTEM, INC.; and MASTERCARD INCORPORATED and MASTERCARD INTERNATIONAL INCORPORATED d/b/a MASTERCARD WORLDWIDE; BANK OF AMERICA, NATIONAL ASSOCIATION; NB HOLDINGS CORPORATION; BANK OF AMERICA CORPORATION; CHASE BANK USA, N.A. and JPMORGAN CHASE & CO.; JPMORGAN CHASE BANK, N.A.; and WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.<br><br>Defendants. | No. 1:11-cv-01831 |

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**
**TO WELLS FARGO DEFENDANTS**

Plaintiffs Andrew Mackmin, Barbara Inglis and Sam Osborn ("Mackmin Plaintiffs") request that Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. ("Wells Fargo Defendants") produce the following documents within thirty (30) days after the date of service hereof and in conformity with Fed. R. Civ. P. 34 and the Local Rules of this Court.

## DEFINITIONS

Where used in this set of requests for production, the terms identified below shall have the following definitions:

A. "All Documents" means every Document and every non-identical copy known to You and every such Document or writing which You can locate or discover by reasonably diligent efforts.

B. "ATM Access Fee" means any per-transaction fee charged to an ATM Cardholder by an ATM Operator for a cash disbursement at the time and place of the ATM Transaction.

C. "ATM Access Fee Rule" means any ATM Network rule, regulation, or policy that allows, prohibits, regulates, proscribes, constrains, or otherwise purports to impact in any way the ATM Access Fee that may be charged to an ATM Cardholder by any Bank ATM Operator or Independent ATM Operator.

D. "ATM Acquirer" is a financial institution that is a Bank ATM Operator, or a financial institution that is an ATM Sponsoring Bank for Independent ATM Operators, or both.

E. "ATM Card" means any payment card that allows a consumer to access or transact with an account maintained at an ATM Card Issuer through the use of an ATM.

F. "ATM Cardholder" is a consumer that has been issued an ATM Card that allows the consumer to access an account maintained by an ATM Card Issuer.

G. "ATM Card Issuer" is a financial institution that issues ATM Cards.

H. "ATM Interchange Fee" means the per-transaction fee paid by an ATM Card Issuer to an ATM Acquirer or Independent ATM Operator, in whole or in part, for ATM Transaction.

I. "ATM Network" refers to any entity operating a PIN debit or electronic funds transfer network that facilitates ATM Transactions by connecting ATMs to accounts maintained by ATM Cardholders at an ATM Card Issuer.

J. "ATM Transaction Processor" means any entity that processes or transmits ATM Transaction data or funds.

K. "ATM Fee" means any ATM Access Fee, ATM Interchange Fee, Foreign ATM Fee, Network Assessment, ATM Network Fee, ATM Switch Fee, or any other fee or charge assessed or collected in connection with an ATM Cash Withdrawal, including any fees assessed when an ATM Transaction is canceled.

L. "ATM ISO" is an independent service organization that is not a bank or other financial institution but is registered with an ATM Network in the business of operating independent ATMs.

M. "ATM Network Assessment" means any non-transactional fee charged by Your ATM Network to any independent ATM Operator, ATM Issuer Transaction Processor, ATM Sponsoring Bank, ATM ISO, or ATM technology provider in connection with the operation or interconnection of any independent ATM to Your network.

N. "ATM Network Fee" means any per-transaction fee paid by or on behalf of any ATM Operator to any ATM Network for an ATM Transaction.

O. "ATM Operator" means Bank ATM Operators and Independent ATM Operators.

P. "ATM Rules" means the rules, policies, procedures, mandates, operating regulations, or other requirements enacted or promulgated by an ATM Network relating to any aspect of the operation of ATMs connected to that ATM Network.

Q. "ATM Sponsoring Bank" means any bank that is a member of any ATM Network that sponsors the interconnection of any Independent ATM Operator or ATM ISO to any of Your ATM Networks.

R. "ATM Switch Fee" means the fee paid by an ATM Card Issuer, or an ATM Transaction Processor on the ATM Card Issuer's behalf, to an ATM Network for processing an ATM Transaction and not distributed, in whole or in part, to an ATM Acquirer or Independent ATM Operator as an ATM Interchange Fee.

S. "ATM Transaction" means any transaction initiated by an ATM Cardholder at an ATM.

T. "ATM Transaction Data" means all database entries or other documentation concerning any ATM Transaction processed on an ATM Network operated by You that is recorded, stored, or otherwise maintained by or for You, including Cardholder identifying information (anonymized), ATM Card Issuer's bank identification number, transaction date and time, ATM location and terminal identification number, ATM Acquirer identification, type and amount of transaction (e.g., Cash Withdrawal, balance inquiry, account transfer or deposit), ATM Fees assessed or paid, and amounts paid, received, or disbursed by You.

U. "Automated Teller Machine" or "ATM" is an automated terminal or vending device that provides automated cash-dispensing and other banking or financial services by connecting through an ATM Network to an account maintained by an ATM Card Issuer.

V. "Bank ATM Operator" is any financial institution that is a member of either or both the Visa Defendants' or the MasterCard Defendants' ATM Networks that owns and operates ATMs.

W. "Bug" means a service mark or logo belonging to an ATM Network appearing on a payment card indicating that the payment card is enabled to transact over the identified ATM Network.

X. “Cash Withdrawal” means an ATM transaction in which an ATM Cardholder withdraws cash.

Y. “Communication” and “Communications” are used in a comprehensive sense and shall mean and include every conceivable manner or means of disclosure, transfer or exchange of oral or written information (in the form of facts, ideas, inquiries or otherwise) between one or more Persons or entities including writings, Documents, inter- and intra-office memoranda, correspondence, meetings, conferences, conversations, and/or agreements, whether face-to-face, by telephone, by mail, by telecopier, by telex, by computer or otherwise.

Z. “Concerning” means relating to, referring to, in connection with, pertaining to, describing, discussing, analyzing, reflecting, summarizing, evidencing, embodying or constituting.

AA. “Differential Surcharging” means the imposition of ATM Access Fees that vary in amount depending upon the ATM Network over which the ATM Transaction is completed.

BB. “Document(s)” is used in the broadest possible sense and has the meaning set forth in Federal Rule of Civil Procedure 34 including any form of electronic mail/messages and/or “e-mail,” electronically stored telephone messages and/or “voice-mail,” any other electronic files, computer transmissions, databases, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing, archived and back-up tapes, and electromagnetically sensitive storage media such as floppy disks, hard disks and magnetic tapes.

CC. “Foreign ATM Fee” means a fee paid by an ATM Cardholder to an ATM Card Issuer for a Foreign ATM Transaction.

DD. “Foreign ATM Transaction” means any ATM Transaction that is not an On Us Transaction.

EE. "Including" is used merely to illustrate a request for certain types of documents or information, and it should not be construed as limiting the request in any way.

FF. "Independent ATM Operator" means an operator of ATMs that is not a bank and is not a member of either Visa or MasterCard.

GG. "On Us Transaction" is an ATM Transaction in which an individual network member bank is both the ATM Card Issuer and the ATM Acquirer for that transaction.

HH. "Person" shall refer to natural persons, firms, joint owners, associations, companies, partnerships, joint ventures, corporations, trusts, estates, agencies, departments or bureaus (governmental or private), and any other form of business, governmental or juridical Person or legal entity.

II. "You" or "Your" means the Wells Fargo Defendants, and any of their predecessors, successors, parents, subsidiaries, and any of their local, regional, national, executive and foreign offices, affiliates, divisions or branches thereof, any present or former partners, officers, directors, employees or agents including attorneys, accountants, advisors and all other Persons acting or purporting to act on their behalf.

## INSTRUCTIONS

1. These Requests call for the production of all responsive Documents in Your possession, custody or control without regard to the physical location of such Documents. To the extent the parties reach agreement on a protocol for the production of electronically-stored information ("ESI") or other materials ("ESI Protocol"), the terms of that agreement will control the production of whatever categories of Documents are covered by the ESI Protocol. To the extent the parties do not reach agreement on an ESI Protocol, the below Instructions shall apply. In any event, the following Instructions shall apply to the production of whatever categories of Documents are not covered by the ESI Protocol.

2. In producing Documents and other materials, You must furnish all Documents or things in Your possession, custody or control, regardless of whether such Documents or materials are possessed directly by You or Your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by Your attorneys or their agents, employees, representatives or investigators.

3. In producing Documents that are not covered by an agreed-upon ESI Protocol, You must produce the original of each Document requested together with all non-identical copies and drafts of that Document. If the original of any Document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original (to the extent this is known).

4. Pursuant to Federal Rule of Civil Procedure 34(b), Documents shall be produced as they are kept in the usual course of business and shall be organized and labeled to identify any file number, file name, or any other file identification system utilized by the responding party, as well as the location and custodian of such records.

5. Documents attached to each other should not be separated.

6. If any responsive Document was, but no longer is, in the possession of or subject to Your control, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, or (iv) has been otherwise disposed of, and in each instance explain the circumstances surrounding this, and state the date or approximate date of such disposition.

7. In the event that You object to any Document request on the ground of privilege or work product, a statement shall be provided as to each Document which includes:

a. the name of the author of the Document;

b. the name of the recipient of the Document;

c. the names of the Persons to whom copies were sent;

d. the job title of every individual named in (a), (b), and (c) above, to the extent such titles are not identified in Documents produced in response to Document Request No. 1;

e. the date the Document was created, sent, and received;

f. the custodian of the Document;

g. a brief description of the nature and subject matter of the Document; and

h. a statement of the privilege asserted and each and every fact or basis upon which a privilege is claimed or on which the Document is otherwise withheld.

8. Notwithstanding the assertion of any objection to production, if a Document contains non-objectionable or non-privileged matter, please produce that Document, redacting that portion for which the objection is asserted, provided that the identification requested in paragraphs (h) and (i) above are furnished.

9. The following requests are continuing in nature pursuant to Rule 26(e) of the Federal Rules of Civil Procedure so as to require the prompt production of supplemental or additional responsive Documents when You become aware of such, up to and including the time of trial.

10. Unless otherwise stated, the time period covered by these requests from October 12, 2007 to the present.

## DOCUMENT REQUESTS

**DOCUMENT REQUEST NO. 1:**

A single copy of each organizational chart (or other similar Document reflecting employee titles and responsibilities, reporting structure, and/or hierarchy), and additional charts to show significant changes in the interim between those dates, that was in effect at any time between April 1, 1996 and the date of this Request, for any of Your departments or business segments that have ever had any responsibility for operational or strategic decisions for (a) the issuance of ATM Cards; (b) assessment or payment of ATM Fees; (c) the deployment and operation of ATMs; or (d) agreements concerning Your ability to access, or the ability for ATM Cards issued by You to access, any ATM Network.

**DOCUMENT REQUEST NO. 2:**

For each month, from 1996 to the present, Documents sufficient to identify (a) the number of ATMs You owned or operated in the United States; (b) the number of ATMs owned or operated by other Bank ATM Operators in the United States; and (c) the number of ATMs owned or operated by Independent ATM Operators or ATM ISOs in the United States.

**DOCUMENT REQUEST NO. 3:**

All strategy and business planning Documents concerning (a) the assessment or collection of any ATM Access Fee in connection with any ATM Transaction processed through an ATM owned or operated by You; and/or (b) any changes to the amount of an ATM Access Fees assessed or collected in connection with any ATM Transaction processed through an ATM owned or operated by You.

**DOCUMENT REQUEST NO. 4:**

All strategy and business planning Documents concerning (a) the assessment or collection of any ATM Access Fee in connection with any ATM Transaction processed through

an ATM that is not owned or operated by You; and/or (b) any changes to the amount of an ATM Access Fees assessed or collected in connection with any ATM Transaction processed through an ATM that is not owned or operated by You.

**DOCUMENT REQUEST NO. 5:**

All strategy and business planning Documents concerning (a) the assessment or collection of any Foreign ATM Fee in connection with any ATM Transaction initiated using an ATM Card issued by You; and/or (b) any changes to the amount of a Foreign ATM Fee assessed or collected in connection with any ATM Transaction initiated using an ATM Card issued by You.

**DOCUMENT REQUEST NO. 6:**

All strategy and business planning Documents concerning (a) the assessment or collection of any Foreign ATM Fee in connection with any ATM Transaction initiated using an ATM Card that was not issued by You; and/or (b) any changes to the amount of a Foreign ATM Fee assessed or collected in connection with any ATM Transaction initiated using an ATM Card that was not issued by You.

**DOCUMENT REQUEST NO. 7:**

All strategy and business planning Documents concerning (a) the payment of an ATM Interchange Fee in connection with any ATM Transaction initiated using an ATM Card issued by You; and/or (b) any changes to the amount of an ATM Interchange Fee paid in connection with any ATM Transaction initiated using an ATM Card issued by You.

**DOCUMENT REQUEST NO. 8:**

All strategy and business planning Documents concerning (a) the payment of an ATM Interchange Fee in connection with any ATM Transaction initiated using an ATM Card that was

not issued by You; and/or (b) any changes to the amount of an ATM Interchange Fee paid in connection with any ATM Transaction initiated using an ATM Card issued that was not issued by You.

**DOCUMENT REQUEST NO. 9:**

All strategy and business planning Documents concerning (a) the payment of an ATM Switch Fee in connection with any ATM Transaction initiated using an ATM Card You issued; and/or (b) any changes to the amount of an ATM Switch Fees paid in connection with any ATM Transaction initiated using an ATM Card You issued.

**DOCUMENT REQUEST NO. 10:**

All strategy and business planning Documents concerning (a) the payment of an ATM Switch Fee in connection with any ATM Transaction initiated using an ATM Card You did not issue; and/or (b) any changes to the amount of an ATM Switch Fees paid in connection with any ATM Transaction initiated using an ATM Card You did not issue.

**DOCUMENT REQUEST NO. 11:**

All strategy and business planning Documents concerning (a) the payment of an ATM Network Fee in connection with any ATM Transaction processed through an ATM owned or operated by You; and/or (b) any changes to the amount of an ATM Network Fees paid in connection with any ATM Transaction processed through an ATM owned or operated by You.

**DOCUMENT REQUEST NO. 12:**

All strategy and business planning Documents concerning (a) the payment of an ATM Network Fee in connection with any ATM Transaction processed through an ATM that is not owned or operated by You; and/or (b) any changes to the amount of an ATM Network Fees paid

in connection with any ATM Transaction processed through an ATM that is not owned or operated by You.

**DOCUMENT REQUEST NO. 13:**

All Communications concerning Documents responsive to Request Nos. 3 – 12.

**DOCUMENT REQUEST NO. 14:**

A single copy of each version of the ATM Rules that (a) were in effect any time between January 1, 1995; and (b) applied to any ATM owned or operated by You.

**DOCUMENT REQUEST NO. 15:**

All ATM Transaction Data for ATM Transactions initiated through ATMs owned or operated by You between January 1, 1995 and the present.

**DOCUMENT REQUEST NO. 16:**

All ATM Transaction Data for On Us Transactions initiated through ATMs owned or operated by You between January 1, 1995 and the present.

**DOCUMENT REQUEST NO. 17:**

All ATM Transaction Data for ATM Transactions initiated by ATM Cards issued by You, for transactions between January 1, 1995 and the present, including those that were processed through ATMs that were not operated by You.

**DOCUMENT REQUEST NO. 18:**

All Documents concerning any agreements between You and any ATM Network concerning ATM Transactions or ATM Fees of any kind that were in effect any time between January 1, 1995 and the present.

**DOCUMENT REQUEST NO. 19:**

All Documents concerning any agreements between You and any ATM Acquirer concerning ATM Transactions or ATM Fees of any kind that were in effect any time between January 1, 1995 and the present.

**DOCUMENT REQUEST NO. 20:**

All reports, summaries, dashboards, or similar Documents concerning Your market share for ATM Transactions, the dollar volume of ATM Transactions processed through ATMs owned or operated by You, and/or the number of ATM Transactions processed through ATMs owned or operated by You.

**DOCUMENT REQUEST NO. 21:**

All reports, summaries, dashboards or similar Documents concerning market shares for ATM Transactions, the dollar volume of ATM Transactions processed through ATMs that are not owned or operated by You, and/or the number of ATM Transactions processed through ATMs that are not owned or operated by You.

**DOCUMENT REQUEST NO. 22:**

All reports, summaries, dashboards, or similar Documents concerning Your market share for ATM Transactions initiated by ATM Cards issued by You, the dollar volume of ATM Transactions initiated by ATM Cards issued by You, and/or the number of ATM Transactions initiated by ATM Cards issued by You.

**DOCUMENT REQUEST NO. 23:**

All reports, summaries, dashboards, or similar Documents concerning Your market share for ATM Transactions initiated by ATM Cards that were not issued by You, the dollar volume of

ATM Transactions initiated by ATM Cards that were not issued by You, and/or the number of ATM Transactions initiated by ATM Cards that were not issued by You.

**DOCUMENT REQUEST NO. 24:**

All strategy or business planning Documents created between January 1, 1995 and the present concerning changes or potential changes in Your business strategy as an ATM Acquirer made in response to proposed or actual changes to ATM Access Fee Rules or ATM Fees.

**DOCUMENT REQUEST NO. 25:**

All minutes of meetings of Your Board of Directors, or any committee thereof, conducted any time after January 1, 1995 during which ATM Access Fee Rules or ATM Fees were discussed.

**DOCUMENT REQUEST NO. 26**

All Documents concerning ATM Access Fee Rules that were prepared for or received by Your Board of Directors, or any committee thereof, after January 1, 1995.

**DOCUMENT REQUEST NO. 27:**

A single copy of every agreement You have had with ATM Cardholders concerning ATM Fees that was in effect at any time between January 1, 1995 and the present. (If you issued form agreements to ATM Cardholders in this time frame, then a single copy of each such form agreement.)

**DOCUMENT REQUEST NO. 28:**

All reports, summaries, dashboards, financial statements or similar Documents concerning Your revenue, gross profit, operating profit, net income, profit margin, costs, expenses, and any other measure of revenues, profits and costs associated with maintaining and operating the ATMs that are owned or operated by You.

**DOCUMENT REQUEST NO. 29:**

All reports, summaries, dashboards, financial statements or similar Documents concerning Your revenue, gross profit, operating profit, net income, profit margin, costs, expenses, and any other measure of revenues, profits and costs associated with Your issuance of ATM Cards as ATM Card Issuer.

**DOCUMENT REQUEST NO. 30:**

All Documents produced in response to any government inquiry or investigation concerning ATM Fees or competition between ATM Networks or any market concerning ATM Transactions.

**DOCUMENT REQUEST NO. 31:**

All Documents concerning Your ability as an ATM Acquirer to route or control the routing of ATM Transactions to particular ATM Networks for ATM Transactions initiated on ATMs operated by You, including routing agreements between You and any ATM Network.

**DOCUMENT REQUEST NO. 32:**

All Documents concerning Your ability as an ATM Card Issuer to route or control the routing of ATM Transactions to particular ATM Networks, including routing agreements between You and any ATM Network.

**DOCUMENT REQUEST NO. 33:**

All Documents from 1995 through the present concerning any ownership interest You have or had in any ATM Network.

**DOCUMENT REQUEST NO. 34:**

All Documents from 1995 through the present concerning any formal vote, opinion or position You took on any ATM Network’s Access Fee Rule or actual or proposed revision to any

ATM Network's Access Fee Rule, including Documents concerning the rationale for Your vote, opinion or position.

**DOCUMENT REQUEST NO. 35:**

All reports, strategy, and/or business planning Documents concerning (a) Your decision to permit or discontinue routing of transactions over any ATM Network; (b) decisions by other ATM Card Issuers to permit or discontinue routing of transactions over any ATM Network.

**DOCUMENT REQUEST NO. 36:**

All reports, strategy, and/or business planning Documents discussing the potential or actual commencement or discontinuance of operations by any ATM Network.

**DOCUMENT REQUEST NO. 37:**

All Communications concerning documents responsive to Request No. 36.

**DOCUMENT REQUEST NO. 38:**

All reports, strategy, and/or business planning Documents concerning government rules or regulations (for the United States and any other jurisdiction that regulates ATM Access Fees in any way) concerning ATM Fees or routing decisions for ATM Transactions.

**DOCUMENT REQUEST NO. 39:**

All Documents concerning Differential Surcharging by ATM Acquirers or Independent ATM Operators when routing ATM Transactions over ATM Networks, including both the assessment of any differential ATM Access Fees or technical ability to do so.

Dated this 24th day of April, 2017.

By: *_/s/ Steve W. Berman_*
Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Jennifer Fountain Connolly
(D.C. Bar No. 1019148)
HAGENS BERMAN SOBOL SHAPIRO LLP
1701 Pennsylvania Ave. NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 248-5403
jenniferc@hbsslaw.com

Stephen R. Neuwirth (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
stephenneuwirth@quinnemanuel.com

Adam B. Wolfson (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
adamwolfson@quinnemanuel.com

Lauren Weeman Misztal
(D.C. Bar No. 1015897)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
777 6th Street, NW, 11th Floor
Washington, D.C. 20001
Telephone: (202) 538-8000
laurenmisztal@quinnemanuel.com

Craig L. Briskin
(D.C. Bar No. 980841)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Cbriskin@Findjustice.com

*Interim Co-Lead Counsel for Direct Purchaser Consumer Plaintiffs*

## CERTIFICATE OF SERVICE

I, Jennifer Fountain Connolly, certify that on April 24, 2017, I served a copy of the foregoing document by electronic and/or United States mail (as indicated below) upon counsel of record at the addresses listed below.

Dated: April 24, 2017

/s/ Jennifer Fountain Connolly
Jennifer Fountain Connolly
(D.C. Bar No. 1019148)
HAGENS BERMAN SOBOL SHAPIRO LLP
1701 Pennsylvania Ave. NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 248-5403
jenniferc@hbsslaw.com

## Service List

**Via Electronic Mail Only**

Mark R. Merley
Matthew A. Eisenstein
Rosemary Szanyi
ARNOLD & PORTER KAY SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
mark.merley@apks.com
matthew.eisenstein@apks.com
rosemary.szanyi@aporter.com

*Counsel for Defendants VISA Inc., VISA U.S.A. Inc., VISA International Service Association, and Plus Systems, Inc.*

William F. Cavanaugh , Jr.
Daniel Seth Ruzumna
Sarah E. Zgliniec
PATTERSON BELKNAP WEBB & TYLER LLP

Ana-Maria Ignat
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006-1888
aignat@mofo.com

Michael B. Miller
Adam J. Hunt
Tiffani Figueroa
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019-9601
mbmiller@mofo.com

Mark P. Ladner
Adam J. Heintz
Jessica L. Kaufman
MORRISON & FOERSTER LLP
1290 Avenue of the Americas

1133 Avenue of the Americas, Suite 2200
New York, NY 10036-6710
wfcavanaugh@pbwt.com
druzumna@pbwt.com
sezgliniec@pbwt.com

*Counsel for Defendants Wells Fargo & Company and Wells Fargo Bank, N.A.*

New York, NY 10104
mladner@mofo.com
aheintz@mofo.com;
jkaufman@mofo.com

*Counsel for Defendants Bank of America, National Association, NB Holdings Corporation, and Bank of America Corporation*

**Via Electronic Mail and U.S. Mail**

Kenneth Anthony Gallo
Justin A. Anderson
Michelle S. Kallen
Zachary Alan Dietert
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
kgallo@paulweiss.com
janderson@paulweiss.com
mkallen@paulweiss.com
zdietert@paulweiss.com

Gary R. Carney
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
gcarney@paulweiss.com

*Counsel for Defendants MasterCard Incorporated and MasterCard International Incorporated d/b/a MasterCard Worldwide*

Peter Edward Greene
Boris Bershteyn
Tanisha Creed
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
peter.greene@skadden.com;
boris.bershteyn@skadden.com

*Counsel for Defendants Chase Bank USA, N.A., JPMorgan Chase & Co., and JPMorgan Chase Bank, N.A.*

Jonathan L. Rubin
Don A. Resnikoff
RUBIN PLLC
2101 L St., N.W. - Ste. 800
Washington, D.C. 20037
Telephone: (202) 415-0616
Fax: (877) 247-8586
jr@rubinpllc.com

Daniel Mogin
THE MOGIN LAW FIRM, P.C.
707 Broadway, Suite 1000
San Diego, CA 92101
Phone (619) 687-6611
Fax (619) 687-6610
dmogin@moginlaw.com

*Counsel for Plaintiffs the National ATM Council, Inc.; ATMs of the South, Inc.; Business Resource Group, Inc.; Cabe & Cato, Inc.; Just ATMs, Inc.; Wash Water Solutions, Inc.; ATM Bankcard Services, Inc.; Meiners Development Company of Lee's Summit, Missouri, LLC; Mills-Tel, Corp. d/b/a First American ATM; Selman Telecommunications Investment Group, LLC; Scot Garner d/b/a SJI; Turnkey ATM Solutions, LLC; Trinity Holdings Ltd, Inc.; and T&T Communications, Inc. and Randal N. Bro d/b/a T & B Investments*

Douglas G. Thompson
Michael G. McLellan
FINKELSTEIN THOMPSON LLP
James Place
1077 30th Street, N.W., Suite 150
Washington, D.C. 20007
Telephone: 202-337-8000
Facsimile: 202-337-8090
mmclellan@finkelsteinthompson.com
dthompson@finkelsteinthompson.com

Christopher Lovell
Gary S. Jacobson
Jody R. Krisiloff
LOVELL STEWART HALEBIAN
JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4677
clovell@lshllp.com
gsjacobson@lshllp.com
jkrisiloff@lshllp.com

*Interim Class Counsel for the Independent ATM Consumers*