IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL ATM COUNCIL, INC., et al.,

Plaintiffs,

vs. Civil Action No. 1:11-cv-1803

VISA, INC., et al.,

Defendants.
__________________________/

LYNNE BARTRON, et al.,

Plaintiffs,

vs. Civil Action No. 11-cv-1831

VISA, INC., et al.,

Defendants
__________________________/

PETER BURKE,

Plaintiff,

vs. Civil Action No. 11-cv-1882

VISA, INC., et al.,

Defendants.
__________________________/

TRANSCRIPT OF DISCOVERY HEARING
BEFORE THE HONORABLE MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE

Wednesday, May 22, 2024

1:04 p.m.

**APPEARANCES:**

| | |
|---|---|
| **For the Plaintiffs:** | **JONATHAN RUBIN**<br>MoginRubin, LLP<br>2101 L Street, NW, Suite 300<br>Washington, DC 20037 |
| | **MILA BARTOS**<br>Finkelstein Thompson, LLP<br>3201 New Mexico Avenue, NW<br>Suite 395<br>Washington, DC 20016 |
| **For Defendant Visa:** | **ROSEMARY SZANYI**<br>**MATTHEW EISENSTEIN**<br>Arnold & Porter, LLP<br>601 Massachusetts Ave, NW<br>Washington, DC 20001 |
| **For Defendant MasterCard:** | **MITCHELL WEBBER**<br>Paul, Weiss, Rifkind, Wharton & Garrison, LLP<br>2001 K Street, NW<br>Washington, DC 20006 |
| **Court Reporter:** | **JEFF HOOK**<br>Official Court Reporter<br>U.S. District Court<br>333 Constitution Avenue, NW<br>Washington, DC 20001 |

**P R O C E E D I N G S**

**DEPUTY CLERK:** Good afternoon, Your Honor. This is civil case number 11-1803, National ATM Council, Inc., et al., vs. Visa, Inc., et al.; civil case number 11-1831, Bartron, et al., vs. Visa, Inc., et al; and civil case number 11-1882, Burke v. Visa, Inc., et al. All matters are set for a discovery conference.

Parties, please introduce yourselves for the record, starting with plaintiffs.

**MR. RUBIN:** Good afternoon, Your Honor. Jonathan Rubin for the plaintiff National ATM Council and class representative.

**THE COURT:** Okay. Can we use short names today, the ATM operators?

**MR. RUBIN:** ATM operators.

**THE COURT:** Very good, thank you. Good afternoon.

**MS. BARTOS:** Good morning, Your Honor. Mila Bartos for the plaintiffs.

**THE COURT:** Okay, good afternoon.

**MS. SZANYI:** Good afternoon, Your Honor. Rosemary Szanyi on behalf of the Visa defendants.

**THE COURT:** Okay. And I'll just ask everyone to please speak into the microphone so that Mr. Hook has the opportunity to hear you properly for the record.

**MR. EISENSTEIN:** Hello, Your Honor. Matt

Eisenstein for the Visa defendants.

**THE COURT:** Good afternoon.

**MR. WEBBER:** Good afternoon, Your Honor. Mitch Webber for the MasterCard defendants.

**THE COURT:** Good afternoon, Mr. Webber. On behalf of the Visa defendants, who is going to be addressing the Court?

**MS. SZANYI:** I will, Your Honor.

**THE COURT:** All right, Ms. Szanyi. Thank you all for coming in. Last time we were here, we discussed the procedure for how I wanted to resolve the remaining discovery disputes that Judge Leon has referred to me. And I have received the parties' document filling out the template for a discovery dispute, so I appreciate you all doing that. And I believe, unless someone's going to tell me differently, that I have three motions before me today, and that we had resolved some of the previous ones.

But I have ECF number 217, which is defendants' motion for clarification of the amended scheduling order; ECF number 224, which is defendants' motion to compel the ATM operators to produce updated transactional data comparable to the original data reports; and ECF number 225, which is defendants' motion for leave to file under seal.

Does anyone have anything else that is pending in your view?

**MR. RUBIN:** Not from the plaintiffs, Your Honor.

**MS. SZANYI:** Not from defendants, Your Honor.

**THE COURT:** Very good, thank you. I'm not going to need argument on some of the disputes that are pending before me, so I'm going to rule -- I'm going to go ahead and rule on ECF 225, which is the defendants' motion for leave to file under seal. I'll just note that the defendants filed that motion on April 12th, 2024, and have sought to file under seal certain documents that the ATM operator plaintiffs have deemed sensitive business information, and have therefore designated highly confidential. My understanding is that when the defendants sought to confer, they did not have -- they did not hear back from the ATM operator plaintiffs.

So unless there's any objection, I intend to grant this motion.

**MR. RUBIN:** No objection, Your Honor.

**THE COURT:** Okay, thank you. So I will grant ECF number 225. With respect to ECF number 217, that is defendants' motion for a clarification of the amended scheduling order. This is the dispute in which defendants are seeking certain documents from Wells Fargo, which is a third party in this case -- or I believe it was a party, but it has since settled.

My understanding is that Wells Fargo has no

objection to producing this information; that the Burke parties have no opposition to the production of the information; the Mackmin plaintiffs' participation in this particular dispute is stayed; and at the last hearing, the ATM operator plaintiffs told me they were indifferent to the production of the information.

So, given all of that -- and I have not heard any material change to those various positions, I'm going to grant defendants' motion at ECF number 217 so that they might obtain that information from Wells Fargo. Any questions? Okay.

That leaves us with ECF 224, which is contested. This is the motion in which the defendants seek to compel the ATM operator plaintiffs to produce updated or supplemental transactional data comparable to the original data reports. I have reviewed the papers in connection with this dispute, and I'll hear from each party briefly; and I have some specific questions.

So Ms. Szanyi, do you want to address the Court first.

**MS. SZANYI:** Thank you, Your Honor. And again, this is Rosemary Szanyi on behalf of the Visa defendants. I understand the Court has reviewed the papers, so I will briefly touch on a few overarching points, and then I'm happy to answer any questions the Court may have. Just

first of all, I would note for the Court that this motion -- and both the motions that defendants filed, are directed towards ensuring tailored but fair supplemental discovery consistent with the Court's amended scheduling order. Defendants are narrowly seeking updates to the same data reports that ATM operators previously produced that merits experts will use to analyze issues of liability, causation and damages.

**THE COURT:** If the ATM operators' representation that there's no material difference in the updated data from the data they already produced, what relevance could that information have to your case?

**MS. SZANYI:** Well, two points, Your Honor. First of all, I would just note that I don't think that we are obligated to take a representation from counsel about the nature of their data. But even if that is true, if the data reflects that their business has not changed at all, that would actually be highly relevant for defendants' purposes and the analyses that our experts are doing. One thing that we noted in our papers is that the -- in our original motion, is that the average surcharges levels industry wide, for example, have risen over the last few years.

If what plaintiffs are representing is that their business practices -- as in the amount of income that they're receiving, including in the form of net interchange,

has remained the same but their ATM surcharges continue to rise, that would support precisely the argument the defendants have presented: That the rises in surcharges over time have nothing to do with the rules that plaintiffs are challenging, and everything to do with ATM operator business practices, and actually support the procompetitive justifications for defendants' rules.

**THE COURT:** If you're getting that sort of representation from counsel for the ATM operator plaintiffs, why not seek a stipulation or some other representation that you can actually use as evidence and bypass the production of the data?

**MS. SZANYI:** Well, Your Honor, I think we have not been offered a stipulation.

**THE COURT:** Have you asked for one?

**MS. SZANYI:** We have not asked for a stipulation, because for our purposes, we think that the relevant evidence would be the actual ATM operator-specific data. There's simply no way, frankly, that a generic representation that nothing has changed, at least as it's described here, would be sufficient to show what our experts would do -- which is what they analyze at class certification, which is to look at the transaction level to see if in the data, whatever -- irrespective of what one person who runs the business' belief or recollection of is

about their business, show in the data that there is no relationship between this net interchange and surcharging practices, as just one example of the analyses they would do.

**THE COURT:** Well, I mean, the stipulation doesn't have to be generic, it can be specific. Would that not accomplish your goal?

**MS. SZANYI:** I think I would have to understand -- it would have to be a very specific -- if the specific representation went to the point that our experts have made regarding the relationship between net interchange and surcharge over these years, I think we could consider that. But I would just have to know the details of what they could stipulate. Certainly not what was represented in the papers.

**THE COURT:** Okay.

**MS. SZANYI:** The other point I would make, Your Honor, is that the ATM operators' primary objection on relevance grounds, as I understand it, is that these data are immaterial, at least with respect to their case, and that is -- that's demonstrably wrong. All of the plaintiffs here, including the ATM operators, allege a relationship between net interchange levels -- which is income that operators -- ATM operators receive, and the surcharges that ATM operators charge consumers.

All of the plaintiffs, including ATM operators, allege that defendants' challenged rules caused net interchange to fall which in turn caused surcharges to rise -- the surcharges that ATM operators charge to rise. And in fact, you can find that allegation referenced in the first paragraph of the ATM operators' complaint. So examining that relationship, if any, between net interchange levels and surcharge levels is key to testing plaintiffs' theories of anti-competitive effects, causation and damages.

Finally, I would note that the -- there's -- while we have heard generalized objections on the grounds of burden, ATM operators have never explained, either to defendants or in their submission to the Court, specific detailed information about a burden that our requests are posing. We are only asking for updated versions of the very same data reports that they previously produced. And the --

**THE COURT:** Was a burdensome objection made to the underlying data?

**MS. SZANYI:** There were several requests. I don't believe it was made, at least as to all of them, Your Honor. But I can check, if you will indulge me for one moment?

**THE COURT:** Sure.

**MS. SZANYI:** As to requests 21 and 22 as well as 25, which we would submit cover all of the requests here, there was no burden objection.

**THE COURT:** The ATM operators say that should the Court order the production of supplemental surcharge data, that collection from only one of the -- one or a few of the operator class representatives should be sufficient. What's your response to that?

**MS. SZANYI:** We disagree, Your Honor. Each of these nine ATM operator plaintiffs -- although I understand two of them are related businesses, each of them are voluntary parties in this litigation seeking $800,000,000 in claim damages at this point. So we certainly think that it is proportionate that the defendants be entitled to full discovery from each of the ATM operator plaintiffs. All of the ATM operator plaintiffs were -- participated in the original round of discovery without objection. And our experience working -- and that's even more true when these -- when the ATM operator plaintiffs are purporting to represent a class. So we are using data obtained from these class representatives to defend against a class litigation.

But I would also just note that our experience working with this data is that there is variation in what was available for each plaintiff operator in the original productions, and some of it was data that our experts could use in some analyses but not others. And so at least one significant concern I would have is that the -- we would have no way going in whether -- knowing whether one

particular operator or another would have the data that we would need for analyses.

**THE COURT:** Are the ATM operators seeking damages up to the date of trial?

**MS. SZANYI:** They are, and they're also seeking --

**THE COURT:** All of them?

**MS. SZANYI:** All of them, and they're also seeking injunctive relief.

**THE COURT:** Okay. If I were to order the production of this information, what effect, if any, is it going to have on the discovery schedule and the case itself?

**MS. SZANYI:** Defendants are prepared to get started with merits expert discovery, and we don't think it would necessarily require significant, if any, delay. Obviously, we don't -- we have not had a representation from plaintiffs' counsel about the time that it would take to pull these reports. But as I noted, these are reports that we previously negotiated, and we know exactly the fields that we would be requesting. So I would not expect that to be a lengthy process.

And the way that the expert discovery is scheduled -- was originally scheduled in this case, it's staged, so there's a 90-day interval between -- even when the plaintiffs' experts reports would be produced and when our expert reports would be due. So the Court has -- Judge

Leon has entered an order staying the proceedings subject to resolution of this issue. But we would submit that if this is returned to -- once the discovery issues are resolved, we can return to the same schedule with the same intervals as before, and the need to produce these documents would not delay that.

**THE COURT:** Is there any possibility that the defendants, if they got access to this information, would seek to reopen any particular fact discovery?

**MS. SZANYI:** We certainly have no intention of doing so. And again, this is data we're familiar with, so I have no expectation that that would be required.

**THE COURT:** All right, thank you.

**MS. SZANYI:** Thank you, Your Honor.

**THE COURT:** Mr. Rubin.

**MR. RUBIN:** Thank you, Your Honor. Jonathan Rubin representing the plaintiffs ATM operators. So I'd like to make four points: One about whether there's been a change since the close of fact discovery; the burden; the relevance to a material issue in the case; and the delay that would be caused.

With respect to change, I think there's some word games going on here. When we say no change, what we mean is that there's been no change in the pattern of the ATM operators setting of their surcharges. For the Court's

information, the surcharges are in essence the ATM operators retail prices, it's what they charge to consumers. Those surcharges are under a restraint imposed by the defendants, and those surcharges must be equal regardless of the network that processes the transaction at the terminal. It means that if there's a change in a surcharge by an ATM operator, they have to change all their surcharges. It was as if you went to a restaurant, and every item on the menu had to have the same price.

That's important for a couple of reasons. First of all, there can be no variation in the level of surcharges with regard to each other. They must all rise and fall at the same time. It's our allegation that this is anti-competitive, this is the heart of the case, and it restrains the behavior of the ATM operators to price the way they want to in an open market. Because of the restraint, there is very, very limited information -- even if it were relevant to some claim in the ATM operators' case, there's very little information that can be gleaned from the record of surcharges under these restraints.

So when we say there's been no change, we voluntarily -- our position was that fact discovery is closed, and therefore the discovery that they were seeking was not available to defendants. But we voluntarily produced that information that was easily available to our

nine class representatives, provided it to them. With that information, that is sufficient to show that the pattern has not changed, there hasn't been any deviation from the network rules that restrained the surcharges.

So when we say no change, it doesn't mean that, with inflation and other matters, there has been no change in a literal sense. There has been no change in the pattern revealed as between the costs incurred by the ATM operators and the surcharges that they charge.

**THE COURT:** Well, if this issue is the very heart of the case, why --

**MR. RUBIN:** That's just it --

**THE COURT:** I'm sorry?

**MR. RUBIN:** I'm sorry, that's just it, Your Honor, this has nothing to do with the case, and I'll explain why.

**THE COURT:** Okay. Well, let me finish my sentence, please.

**MR. RUBIN:** I'm sorry, Your Honor. Please do.

**THE COURT:** If the issue is -- if that is the issue at the very heart of the case, why are the defendants required to take counsel's representation as opposed to testing and reviewing the data themselves?

**MR. RUBIN:** Well, it was never our intention -- and we don't expect that they -- counsel's representation will substitute for discovery in the case. Our point was

that we have already produced data from the period in question, which is since 2018 when fact discovery closed -- or the last time this data was produced shortly before the close of fact discovery, for the defendants to examine that data to see that there has been no change in the pattern. So the discovery that we've already produced is sufficient for them to confirm that the pattern of surcharging has remained the same throughout the violation period from the beginning of the case.

But more to the point, Your Honor, the surcharges by the ATM operators have absolutely nothing to do with this case. And if you don't mind me saying so, the proposition that the defendants need to analyze these restrained surcharges in order to defend the case that the ATM operators are bringing to them is purely nonsense. It's nonsense because, first of all, the defendants are not entitled to claim pass-through, meaning that they have a defense which is that even though you allege that we overcharged you, you are passing this through to your customers. Under federal antitrust jurisprudence, a pass-through defense is not permitted. It means that the retail prices that the ATM operators, as victims of the overcharge, are irrelevant.

The important -- the key to the case here, Judge, are the fees that the networks are charging to the ATM

operators, not the fees the ATM operators are charging to their customers.

**THE COURT:** Well, if it's nonsense, why did you produce all of the underlying data before the close of discovery?

**MR. RUBIN:** They asked for it, and they insisted upon it, and it was -- and it was fact discovery, and we felt an obligation to do it.

**THE COURT:** Okay. So, I mean, it's hard for me to accept the representation -- that's a pretty strong statement to call opposing counsel's position nonsense -- those aren't my words -- but when there was no objection, let alone a robust objection, made to producing the initial tranche of the information.

**MR. RUBIN:** I'm not sure that there was no objection, Your Honor. I don't have the documents before me. I'm happy to confirm that at another time with the Court.

**THE COURT:** Well, at a minimum, at a minimum, the ATM operators did not take the position that it was not -- that they were not going to produce the information such that defendants had to come and file a motion to compel at that time.

**MR. RUBIN:** We did not require the defendants to compel, that is correct, Your Honor.

**THE COURT:** Was there an objection made to these specific RFPs based on relevance?

**MR. RUBIN:** That I don't recall from memory, Judge, and I did not review the initial -- we're going back now quite a few years.

**THE COURT:** I get it, but you're asking me to rule that it's not relevant, and I would assume that you would know whether or not you made a relevance objection to those specific requests --

**MR. RUBIN:** Well, I mean --

**THE COURT:** -- when they were propounded.

**MR. RUBIN:** I mean, I believe we did, but I don't want to represent to the Court something that I'm not sure of, Your Honor.

**THE COURT:** Okay, I appreciate that.

**MR. RUBIN:** But more importantly is that there is no issue that this data can illuminate with respect to a defense to the overcharges to the ATM operators. What the ATM operators charge their customers is beside the point and it has no bearing. Now, it may be relevant to the defense of the case by the consumer classes who are claiming an increase in surcharges over the violation period, but it's not relevant to our case which is focused on network fees that are charged to the ATM operators.

And I would say, Judge, that the -- so this

conversation assumes that there is an entitlement to this discovery, just to make sure that point has been made. We don't believe there is, because they can demonstrate no need for an update because they can demonstrate no change to the pattern of surcharging. Yes, surcharges have gone up, but that alone is not sufficient to cast any doubt on the usefulness or whatever they want to do with the surcharging data that they already have.

**THE COURT:** How can they show that without any real access to the data or even a sample of the data?

**MR. RUBIN:** Well, we gave them what we had and what the ATM operators could easily access. We believe that's sufficient for them to verify. I mean, it's even hard for me to imagine, given the restraint on the surcharges, how exactly -- what exactly they're looking for. The surcharges can either go up and down in lockstep because of the restraint. So they have gone up, to which we say what defense, what issue in the case does that relate to. And there is none. This is about an overcharge that the networks are charging to the ATM operators, it's not about what the ATM operators are charging to their customers.

**THE COURT:** What is the ATM operators' response to defendants' argument that this is relevant to plaintiffs' damages case, and that plaintiffs are seeking damages up to the time of trial and so they should be producing current

data?

**MR. RUBIN:** There's no relationship between the -- we're claiming that there is a competitive level of overcharges and an anti-competitive level. Because of the operation of the rule economically, it's allowing the networks to impose an anti-competitive level of overcharges. Our damages would remain the same regardless of the surcharges. That's the effect of the absence of any possibility the defendants have to plead a pass-through or any kind of offset. There is no pass-through or offset.

Our damages are entirely a matter of the difference between the competitive fees that the networks have charged the ATM operators, and the anti-competitive overcharges that the networks have charged the operators. That has no effect or bearing or is not affected by whatever the surcharge level is that the ATM operators charge their customers. That's a completely different market, and it's not -- I have trouble even -- I used the word nonsense, because I have trouble even conceiving of how you would fit that into an acceptable defense. This is an overcharge case for network fees, and it's not a case about surcharges. We're not -- so that's basically the relevance.

And the materiality argument has to do with that they haven't demonstrated any kind of need for doing this four years after the close of fact discovery. And the data

they have is sufficient for whatever purposes they think it might show.

If I could move on to the burden, Your Honor. It was not intentional that we sort of waited to the end of the period before Your Honor wanted the submission jointly. Unfortunately, I did not give defense counsel a lot of time. It was not intentional, we were waiting for the data from our vendor, who does the IT and the hosting and the data collection, to give us the actual time and costs involved for the first time that they wanted this surcharge information. That did not come, so it was not included in the submission, because apparently IT vendors are not particularly good at preparing a forensic review of the costs. We have got it now as of last night, and of course we are happy to submit a declaration in this regard.

**THE COURT:** Have you shared it with the defendants?

**MR. RUBIN:** We just got it last night. I'm happy to share it with defendants.

**THE COURT:** I mean, they didn't get it. You were all sitting here before I took the bench, so why don't you share it with them now.

**MR. RUBIN:** Well, I have the one copy. If I could announce it into the record, and then I'm happy to give them my one copy of what I have.

**THE COURT:** Yes.

**MR. RUBIN:** We have a readout from our vendor. The time that it took to do this collection on this piece was from February 28th, 2018 to June 30th, 2018, approximately four months. It required -- each one of the ATM operators has their own processors. Some of them have the same processor. But each processor maintains their data differently. The reason it took four months, among other things, is because it required a conference with defendants. They were allowed to access the data. They chose which fields they wanted, and they were permitted to download.

We have -- this is not about hiding any information, Judge, this is entirely about burden. And the sum of charges that this one vendor charged us was $37,259.77. This is the first and last page of the readout from the vendors --

**THE COURT:** This was the cost back in --

**MR. RUBIN:** This is the cost of the original collection of the surcharge data, yes.

**THE COURT:** But you did not make a burdensome objection at that time?

**MR. RUBIN:** Well, we didn't -- Your Honor, I think at this time, this is probably a year or more after the initial requests were produced. In the process of litigating and trying to accommodate opposing counsel, we

engaged in as much discovery as we thought was necessary. We did what we -- you know, I don't think we should be punished now for disclosing, you know, material that we did not understand why they wanted it, but they wanted it and we gave it to them.

**THE COURT:** Well, it's not a punishment. Objections, under the Federal Rules, are there for a reason. And when you don't make objections, they're waived. And so that's what I'm trying to get at, is whether relevance and burdensome objections were made to this information. If they were, I might feel a little bit more convinced today.

**MR. RUBIN:** Well, Judge, I don't want to represent that they weren't made any more than I want to represent that they were made. And I would say -- and we're talking now about the burden now four years after the close of fact discovery, and we've taken the case off of the calendar. Counsel said that we don't want to, you know, interfere with the amended scheduling order, but here we are now in May when we should have been way down that order. That order was suspended, as you know.

So it's already cost us several months of delay. And I can see here that it's going to be another four months of delay before we can finish the process, if it was anything like the last process.

**THE COURT:** Well, we're here talking about

discovery requests. Does anyone actually have them, and the objections that were served?

**MR. RUBIN:** I don't with me, Your Honor.

**THE COURT:** Okay. Ms. Szanyi, I'll -- I want to give Mr. Rubin a chance to finish. My template, that I have asked the parties to fill out, makes it very clear that the text of the requests and the text of objections are very important to my resolution of these disputes.

**MR. RUBIN:** With respect, Your Honor, I interpreted that to mean the objections that were made at the time of this renewed request, not the objections that were made in 2016 or whenever the initial requests were made.

**THE COURT:** I understand.

**MR. RUBIN:** I would just close, Your Honor, with we are now 12 years into this case. We don't think approximately $40,000 and four months is a de minimis burden. We don't feel that defendants have made a case that surcharging data of this kind is necessary or relevant to defend the ATM operators' case. And we would strongly prefer not to delay and have to -- and there's also nine clients who have businesses to run. They are small businesses, they don't have a lot of personnel. It's very burdensome -- it's disruptive for them to have a third party go in and have their credentials for what is essentially the

heart of their business for the purposes of pulling data down. We would ask that the request be denied.

**THE COURT:** Thank you. What are your clients' view on negotiating a specific stipulation to back up the representations that you've made regarding the data?

**MR. RUBIN:** I have not discussed that with them, but I feel I could represent to the Court that the clients would be amenable to any resolution of this particular dispute that would help to keep the case on track and to lower their burden. We're happy to share any information. Again, Judge, we have nothing to hide. There's nothing in the surcharging data that is -- there's no reason that we have to keep it from the defendant. We're happy to share with them whatever information -- as I think we've already demonstrated with our voluntary productions in this last round, we're happy to share with them whatever information they want.

It is strictly just overly burdensome in comparison to what they get out of it, which is a bunch of data that we cannot see any connection to any defense or issue in the case, because it has to do with their surcharges to the public and not the overcharges from the networks. So we're happy to work with the defendants to get them what they need. What we're not happy to do is to spend another $40,000, four months and allowing disruption to the

nine class representatives.

**THE COURT:** Thank you very much.

**MR. RUBIN:** Thank you.

**THE COURT:** Ms. Szanyi.

**MS. SZANYI:** Thank you, Your Honor. I'd like to just briefly respond, both to provide the information the Court had requested, and to address a few claims that were made that I don't believe are supported in the record. With respect to the objections that were made to the original requests for production, those are an exhibit to our original motion to compel. They are at docket number 224-1. I would direct the Court's attention to request numbers 21, 22 and 25 which requests --

**THE COURT:** I'm sorry?

**MS. SZANYI:** 21, 22 and 25 which requests the fees and interchange data that would, in combination, constitute net interchange fees as well as the surcharge fees data, all of which were requested there. And ATM operator plaintiffs did not make a relevance objection to any of those requests.

**THE COURT:** Okay. Notwithstanding that, what's your response to Mr. Rubin's argument that it has nothing to do with your case?

**MS. SZANYI:** That's simply not correct, Your Honor. This has nothing to do with the pass-through defense, that's --

**THE COURT:** Actually, I'm sorry, before you continue, was there a burdensome objection made at that time?

**MS. SZANYI:** No.

**THE COURT:** Okay.

**MS. SZANYI:** This has nothing to do with a pass-through defense. As I stated originally, and just to make perfectly clear, the key issues with respect to the ATM operator case go to antitrust liability and causation. And you can see this in the operator plaintiffs' complaint. Their allegation of an anti-competitive -- of anti-competitive effects, one of the effects is that the challenged rules allegedly reduce net interchange which in turn cause the surcharges imposed on consumers to rise. You can see that at their complaint at paragraph one, paragraph 77 and paragraphs 83 to 84. Those paragraphs are all in the section titled anti-competitive effects. And they refer in those -- in the complaint, surcharges are referred to as access fees. But for clarity, that's just another term for a surcharge.

So plaintiffs' theory is that an anti-competitive effect of the challenged rules is this increase in surcharges. Defendants' theory is that in fact the rules are procompetitive, and that they restrain excessive surcharging that has nothing to do with the net interchange

that ATM operators receive. That is a key highly disputed issue in this case. It goes directly to causation and liability, and it goes through the present. And again, plaintiffs are seeking injunctive relief, so the procompetitive justifications for the rule in the current environment are critical to the defense, and all of that is directly relevant to the ATM operators' case.

Again, I understood ATM operator plaintiffs to say that their representation about nothing changing has to do with the pattern of surcharges. To be frank, I was not a hundred percent sure what plaintiffs' counsel's representing about the pattern of surcharging. But either way, this issue of whether or not net interchange is related to surcharges is a key highly litigated issue that defendants should not be expected to accept a representation on, it is at the core of the case. And as plaintiffs acknowledge, the heart of this case is this challenge to the rules that govern the way that ATM operators can surcharge.

It's also simply not correct that we've received information or data from the ATM operators from more recent years that would allow us to test this theory. Just at the most basic level, there's at least one ATM operator plaintiff who has produced no information since 2018. So that ATM operator plainly has not provided enough information. Other ATM operator plaintiffs have produced no

surcharge data. Other ATM operator plaintiffs have produced no interchange data. So what we have found is that none of the data is granular enough for us to actually meaningfully analyze the relationship. And it's clear that we do not have anything that would allow us to test a pattern of surcharging in that interchange.

**THE COURT:** In an ideal world, what fact or facts would prove up the defense that defendants are setting forth on this issue?

**MS. SZANYI:** I can't give you a single thing, because --

**THE COURT:** I mean -- and let me just clarify, with respect to the delta between the time that's elapsed since the last tranche of information or data was produced.

**MS. SZANYI:** There are several ways that the data could be very relevant and support defendants' case. I would give you two key examples. One is, as I noted, industry-wide surcharge levels have increased. Plaintiffs' theory of anti-competitive effects is that we should see that as related to an increase in net interchange -- I'm sorry, a decrease in the net interchange that ATM operators received. So increases in surcharges should be caused by decreases in net interchange.

We believe that the data will actually show that net interchange has not changed in that way. And in fact,

the surcharge increases reflect ATM operator business practices that are part of the justification for having this rule in the first place, and have nothing to do with net interchange. So that would be one example of the way that we think this data would bear out defendants' defenses.

**THE COURT:** If in the first instance the ATM operators are willing to have a discussion about providing specific stipulations that would provide that trend or would supply the underlying factual predicate that defendants are seeking to establish -- or at least for that period of time, from the last time the data was produced to now, why is that not sufficient?

**MS. SZANYI:** Your Honor, because this is -- because it is -- we have a procompetitive justification for this rule, and it is core to our defense to be able to show this; not simply to accept -- well, we haven't received a representation -- to be clear, we've never received a representation of what I just described, as in I've never heard operator plaintiffs --

**THE COURT:** No, he's saying they're open to having a discussion and you get specific factual stipulations. Those are, as you know, just as -- carry just as much weight as proving facts through documents or testimony. Some would argue, in front of a jury, it might have more weight. That's not for me to say. But what I'm saying is I haven't

yet heard any material reason why that wouldn't be at least an avenue to explore.

**MS. SZANYI:** So I can't -- I think that my -- the challenge I'm having in articulating it is only because I don't have the specific stipulation. My strong skepticism here is that what I'm actually describing is the core of their anti-competitive theory. So what we would be asking them to stipulate to is there was no anti-competitive effect of the rule for the last -- over the last certain number of years.

**THE COURT:** That's a legal proposition. That's a legal proposition. I'm talking about the facts of what the data shows from the last four years.

**MS. SZANYI:** I do not understand plaintiffs to be offering to stipulate to that core litigation position, which has been at the heart of our -- it was the heart of what we litigated at class certification. I certainly did not receive a stipulation in that regard then. And I am reluctant --

**THE COURT:** But you're getting an offer to have that discussion now. And so that's what I'm trying to understand is, if you can articulate right now -- and, you know, I understand that I'm springing this on you, so that's fine. But I don't understand why the data itself is necessary if you get a factual stipulation essentially, if

you're able to negotiate. I know he hasn't offered it. He's saying he's open to that discussion. I'm not saying I'm going to order it. I'm just trying to understand why that would not be sufficient.

Why do you need the underlying data if you can get a stipulation that says what you need the data to say?

**MS. SZANYI:** And again, in the purely hypothetical, I can see why that makes sense. I do not see how we could get that granular of a stipulation on the core issue that we -- and we are entitled to prove up at trial. But maybe it may just be that we're talking past each other a little. We're certainly open to an offer to confer on any issues with a specific plaintiff. You know, if what you're saying is if there's a specific plaintiff who says: It would be really hard for me to pull this data, but I am looking at the file and I can represent to you what the numbers state, you know, we have been -- have made clear that we are open to conferring if there are individual obstacles. And that's exactly what we did in the original process. So we're not trying to be difficult on that front.

But in terms of proving up our case on a core issue that we know the defendants dispute -- sorry, the plaintiffs dispute, because they've disputed it all along, I don't think that we're required to just accept what plaintiffs might say in a phone call after a hearing.

**THE COURT:** Well, I agree with that. I certainly agree with that, and I don't think you're required to rely on representations of counsel. That said, if you had a stipulation that was a fully admissible stipulation that was specific -- you know, whether it's through a declaration or otherwise that's admissible and that's competent admissible evidence to that issue.

**MS. SZANYI:** Yes, I -- and again, I don't see a stipulation like that that would be anything short of essentially conceding that there is not an anti-competitive effect. But if there were a stipulation that there was no anti-competitive effect, I see your point that that would be admissible, yes. And just finally, very briefly on the burden issue. We had not received until just now the representations regarding the cost, the time and expense, and so I may be able to -- I might have been able to provide a little more detail on this if I'd seen more detail.

But at a minimum, I'm confident that the process of going back and just updating the fields that we've already identified and the reports that we've already identified in these processor portals is going to be much quicker and less costly than it was originally. So those numbers would both be lower, and certainly we would submit proportional in this case. Defendants, as I've noted, have agreed to update their update productions, which is

certainly a costly process for each of the defendants to do, to update all of their transaction data for the last five years. And that's because this is a significant case. And we think it is entirely appropriate for the plaintiffs here to also take -- to devote the resources it requires to make sure that the record is complete on this issue.

**THE COURT:** Okay, thank you. Mr. Rubin, I have just one question -- well, I might have more. But I do have one on my mind right now, which is the estimate of the 37,000 that you provided, that was what in 2018 it cost to pull and provide this data to defendants.

Do you have or have you undertaken to assess the specific burden to basically update or supplement as of today the data that was produced back in '18?

**MR. RUBIN:** Well, Your Honor, you can use the word supplement, but really what it means is do it again, because there is nothing remaining from the original exercise. So it means that we have to, again, gather the credentials, go into the database, identify the fields that they want, get the vendor in to do the downloading, the hosting and the delivery. And it's all the same process. Now, it was 10 years of data back then, it's four years of data now. That may have an effect.

They've done it before, so they may be more familiar with it, if they remember from what they did in

2018. We're not claiming that it will be another $40,000 and another four months, but perhaps it will be another $20,000 and another two months. That's still --

**THE COURT:** But you don't have any specific representation of that burden right now?

**MR. RUBIN:** I only know what it cost for us to do it last time.

**THE COURT:** Okay. But you haven't undertaken to assess what the specific burden to pull this supplemental data would be as of today?

**MR. RUBIN:** We have not, Your Honor.

**THE COURT:** Okay.

**MR. RUBIN:** And if I may just briefly rebut the --

**THE COURT:** Very briefly, sir.

**MR. RUBIN:** Thank you, Your Honor. It sounds like it's being represented to you that there's an allegation in the complaint that the level of net interchange to the ATM operators affects the price -- the surcharges, and that's the key to the case somehow. I think counsel is misstating what the allegations are. The allegations are that the restraint in the complaint that requires all surcharges to be the same among all rival networks has the effect of tying the hands of the ATM operators so that when they do set prices, they set prices that are higher than they would have otherwise been in a but for world where the anti-competitive

restraint is not imposed on them. That's a lot different than saying that our case is about some causation between net interchange and surcharge amounts.

Our case is about an overcharge that we are getting that is enabled by the restraint. In other words, they would not be able to overcharge us the way they're overcharging us if the restraint was not in place, because we could respond in the market and say: Oh, you're going to come with a Visa card, it will be this much more. We can't do that because of the restraint. That's the relationship of the surcharging. The record of surcharge changes has nothing to do with that particular dynamic one way or the other.

And finally, I would just say that with respect to the stipulation, when we say no change, we mean that the ATM operators have not changed their business practices in any material respect with respect to pricing or anything else compared to the 10 years of data that they already have. So there's nothing new to be gained from the data that they are seeking. We're happy to stipulate to that. We're happy to submit declarations or whatever counsel wants.

**THE COURT:** Well, I think that actually doesn't help you on the stipulation front.

**MR. RUBIN:** Well, we're happy to work that out, Judge. The facts are the facts. We're not afraid of them.

Our interest is to get the case back on the calendar and move it along, of course.

**THE COURT:** One thing I will assure you all is that anything I order is not going to reopen discovery or expand it, if I can help it -- and I'm sure Judge Leon would feel the same way. But this certainly would not be the first case in which your view of what the heart of the case is and their view of what the heart of the case is are diametrically opposed.

I'm going to take a brief recess. Thank you.

(Recess taken at 1:56 p.m.)

(Back on the record at 2:21 p.m.)

**MR. RUBIN:** Your Honor?

**THE COURT:** Yes.

**MR. RUBIN:** Sorry for the interruption. If I may have 10 seconds to put on the record the objection that was made in 2017. It's on page two of document 224-1: "The ATM operator plaintiffs also reserve all objections to any requests that would impose an undue burden or expense."

**THE COURT:** That was a general objection made?

**MR. RUBIN:** That was a general objection, yes.

**THE COURT:** Okay. I have before me ECF No. 224. Defendants seek to compel the ATM operators to produce updated transactional data comparable to their original data reports. I will grant the motion. The RFPs at issue are

seven, eight, 21, 22 and 25. The defendants seek supplemental data from the time of the original production through the present. In other words, this is not a request for all of the underlying data, but rather a tranche of data that is an update from the time of the original productions, I believe, in 2018 or 2019. Federal Rule of Civil Procedure 26(e) provides, in relevant part, that a party must supplement a discovery disclosure or response, quote, if the party learns that in some material respect the disclosure or response is incomplete or incorrect.

Moreover, Wright & Miller clarifies at section 2049.1, third edition, 2023, "The supplementation of disclosures and discovery responses after the close of discovery is consistent with the spirit behind the discovery rules, which is to promote liberal discovery in an effort to narrow the issues for trial and prevent unfair surprise." I'll also cite to ECF No. 216, which is Judge Leon's order, in which the Court notes that parties have an ongoing obligation to supplement discovery disclosures and responses under Federal Rule of Civil Procedure 26(e).

The ATM operators now argue that they should not be required to produce the supplemental information for two principle reasons. First, they argue that the information is in no way relevant to the defense of this case. However, no objection based on relevance was ever made to these

requests, and quite the opposite, the ATM operators undertook expense and time to produce that data during fact discovery. When questioned today, I heard no material reason why the ATM operators produced that data in the first instance other than that they were generally cooperating in discovery.

Although that's commendable, there's no question in the Court's view that if the information were truly as irrelevant and so far afield of the defense of this case that the -- as the ATM operators now claim, such an objection would have been made in the first instance to the production of this information during fact discovery. And as is clear from the record and was reiterated today, no motion to compel was ever filed because the ATM operators produced this information. The substantive objections made at this stage, particularly in light of the fact that plaintiffs are seeking damages through the present, ring hollow in light of the production of this data in the first instance, and the lack of any relevance objection ever made to that underlying data during fact discovery.

The ATM operators also argue that producing the supplemental data would be unduly burdensome. I will note, Mr. Rubin has just clarified that a general objection to the burdensomeness as to all requests for production was made, but no specific objection on burdensome was ever made to

these particular requests. Despite the strenuous objections made today that producing this data would be unduly burdensome, the ATM operators have made no effort to quantify for the Court what the actual burden would be in producing the supplemental data; nor is there any representation made or even -- there may have been an effort made to ascertain what that burden would have been, but I have no record of what the specific burden would be, and so I cannot sustain that objection. And not only in light of the fact that it was wasn't originally made to these particular requests, but also because there's no record of what that burden would be to produce the supplemental data today.

The Court did consider and explored whether the parties could discuss and come to particular stipulations that would satisfy defendants' -- the information the defendants are seeking. But frankly, after thorough exploration of that proposition, the parties' view on what an appropriate stipulation could be that would supplant the need for the production of the supplemental data are so diametrically opposed that such an exercise, in the Court's view, would neither be fruitful -- would likely neither be fruitful nor worth the time and effort.

It's the Court's view that this case needs to move apace, and so I'm going to grant the motion. And I believe

that resolves all of the motions that have been referred to me by Judge Leon.

Is there anything further at this time?

**MR. RUBIN:** Not from plaintiffs.

**THE COURT:** Thank you.

**MS. SZANYI:** Not from defendants, Your Honor.

**THE COURT:** Okay, thank you. I appreciate all the parties robust argument, and the time and effort they put into getting me the information I needed to rule on these issues. Hold on, my boss is telling me I need to do something. Just a moment.

(Discussion off the record)

**THE COURT:** I do want to actually -- I thought about timing of production. Like I said, I do think this case needs to move apace, and I'm sure Judge Leon feels the same way. But do you all have a next date before him at this time?

**MR. RUBIN:** Your Honor, we don't. We have an order that specifies that after the resolution of the present motions that were resolved today, the parties would have 14 days to jointly submit their proposal for the timing for the remainder of the case.

**THE COURT:** Well, what I would order you all to do is to confer to try to get -- to give the ATM operators obviously enough time to produce the information, but get on

a schedule to move this apace. If you all cannot agree on the timing of the data, then I'd like you to please e-mail my chambers and I will set a timeline for you.

**MR. RUBIN:** Thank you, Your Honor.

**MS. SZANYI:** Thank you, Your Honor.

**THE COURT:** Okay, thank you. You're all excused.

(Proceedings adjourned at 2:28 p.m.)

**C E R T I F I C A T E**

I, **Jeff M. Hook, Official Court Reporter,** certify that the foregoing is a true and correct transcript of the record of proceedings in the above-entitled matter.

May 28, 2024
**DATE**

[signature]
**Jeff M. Hook**

**DEPUTY CLERK:** [1] 3/2
**MR. EISENSTEIN:** [1] 3/25
**MR. RUBIN:** [41] 3/10 3/15 5/1 5/17 13/16 15/12 15/14 15/18 15/23 17/6 17/15 17/24 18/3 18/10 18/12 18/16 19/11 20/2 21/18 21/23 22/2 22/18 22/22 23/12 24/3 24/9 24/15 25/6 26/3 34/15 35/6 35/11 35/13 35/15 36/24 37/13 37/15 37/21 41/4 41/18 42/4
**MR. WEBBER:** [1] 4/3
**MS. BARTOS:** [1] 3/17
**MS. SZANYI:** [31] 3/20 4/8 5/2 6/21 7/13 8/13 8/16 9/8 9/17 10/19 10/23 11/6 12/5 12/7 12/12 13/10 13/14 26/5 26/15 26/23 27/4 27/6 29/10 29/15 30/13 31/3 31/14 32/7 33/8 41/6 42/5
**THE COURT:** [74]

**$**

**$20,000 [1]** 35/3
**$37,259.77 [1]** 22/15
**$40,000 [3]** 24/17 25/25 35/1
**$800,000,000 [1]** 11/9

**'**

**'18 [1]** 34/14

**1**

**10 [3]** 34/21 36/18 37/16
**11-1803 [1]** 3/3
**11-1831 [1]** 3/4
**11-1882 [1]** 3/6
**11-cv-1831 [1]** 1/11
**11-cv-1882 [1]** 1/16
**12 [1]** 24/16
**12th [1]** 5/8
**14 [1]** 41/21
**1803 [2]** 1/6 3/3
**1831 [2]** 1/11 3/4
**1882 [2]** 1/16 3/6
**1:04 [1]** 1/25
**1:11-cv-1803 [1]** 1/6
**1:56 p.m [1]** 37/11

**2**

**20001 [2]** 2/11 2/25
**20006 [1]** 2/15
**2001 [1]** 2/14
**20016 [1]** 2/7
**20037 [1]** 2/3
**2016 [1]** 24/12
**2017 [1]** 37/17
**2018 [7]** 16/2 22/4 22/4 28/23 34/10 35/1 38/6
**2019 [1]** 38/6
**2023 [1]** 38/12
**2024 [2]** 1/24 5/8
**2049.1 [1]** 38/12
**21 [4]** 10/23 26/12 26/15 38/1
**2101 [1]** 2/3
**216 [1]** 38/17
**217 [3]** 4/18 5/19 6/9
**22 [5]** 1/24 10/23 26/13 26/15 38/1
**224 [3]** 4/20 6/12 37/22
**224-1 [2]** 26/11 37/17
**225 [3]** 4/22 5/6 5/19
**25 [4]** 10/24 26/13 26/15 38/1
**26 [2]** 38/7 38/20
**28th [1]** 22/4
**2:21 p.m [1]** 37/12
**2:28 p.m [1]** 42/7

**3**

**300 [1]** 2/3
**30th [1]** 22/4
**3201 [1]** 2/6
**333 [1]** 2/24
**37,000 [1]** 34/10
**395 [1]** 2/6

**6**

**601 [1]** 2/10

**7**

**77 [1]** 27/16

**8**

**83 [1]** 27/16
**84 [1]** 27/16

**9**

**90-day [1]** 12/23

**A**

**able [5]** 30/15 32/1 33/16 33/16 36/6
**above [1]** 43/5
**above-entitled [1]** 43/5
**absence [1]** 20/8
**absolutely [1]** 16/11
**accept [4]** 17/10 28/15 30/16 32/24
**acceptable [1]** 20/20
**access [5]** 13/8 19/10 19/12 22/10 27/19
**accommodate [1]** 22/25
**accomplish [1]** 9/7
**acknowledge [1]** 28/16
**Action [3]** 1/5 1/11 1/16
**actual [3]** 8/18 21/9 40/4
**actually [10]** 7/18 8/6 8/11 24/1 27/1 29/3 29/24 31/6 36/22 41/13
**address [2]** 6/19 26/7
**addressing [1]** 4/6
**adjourned [1]** 42/7
**admissible [4]** 33/4 33/6 33/6 33/13
**affected [1]** 20/15
**affects [1]** 35/18
**afield [1]** 39/9
**afraid [1]** 36/25
**afternoon [8]** 3/2 3/10 3/16 3/19 3/20 4/2 4/3 4/5
**again [9]** 6/21 13/11 25/11 28/3 28/8 32/7 33/8 34/16 34/18
**against [1]** 11/18
**agree [3]** 33/1 33/2 42/1
**agreed [1]** 33/25
**ahead [1]** 5/5
**al [10]** 1/3 1/6 1/9 1/12 1/17 3/4 3/4 3/5 3/5 3/6
**allegation [4]** 10/5 14/13 27/11 35/16
**allegations [2]** 35/20 35/20
**allege [3]** 9/22 10/2 16/18
**allegedly [1]** 27/13
**allow [2]** 28/21 29/5
**allowed [1]** 22/10
**allowing [2]** 20/5 25/25
**alone [2]** 17/13 19/6
**along [2]** 32/23 37/2
**although [2]** 11/7 39/7
**amenable [1]** 25/8
**amended [4]** 4/19 5/20 7/4 23/18
**among [2]** 22/8 35/22
**amount [1]** 7/24
**amounts [1]** 36/3
**analyses [4]** 7/19 9/3 11/23 12/2
**analyze [4]** 7/7 8/22 16/13 29/4
**announce [1]** 21/24
**anti [15]** 10/9 14/14 20/4 20/6 20/13 27/11 27/12 27/17 27/21 29/19 31/7 31/8 33/10 33/12 35/25
**anti-competitive [15]** 10/9 14/14 20/4 20/6 20/13 27/11 27/12 27/17 27/21 29/19 31/7 31/8 33/10 33/12 35/25

**A**

**antitrust [2]** 16/20 27/9
**apace [3]** 40/25 41/15 42/1
**apparently [1]** 21/12
**APPEARANCES [1]** 2/1
**appreciate [3]** 4/14 18/15 41/7
**appropriate [2]** 34/4 40/19
**approximately [2]** 22/5 24/17
**April [1]** 5/8
**April 12th [1]** 5/8
**argue [4]** 30/24 38/21 38/23 39/21
**argument [6]** 5/4 8/2 19/23 20/23 26/21 41/8
**Arnold [1]** 2/10
**articulate [1]** 31/22
**articulating [1]** 31/4
**ascertain [1]** 40/7
**assess [2]** 34/12 35/9
**assume [1]** 18/7
**assumes [1]** 19/1
**assure [1]** 37/3
**ATM [81]**
**attention [1]** 26/12
**available [3]** 11/21 14/24 14/25
**Ave [1]** 2/10
**avenue [3]** 2/6 2/24 31/2
**average [1]** 7/21

**B**

**back [9]** 5/13 18/4 22/17 25/4 33/19 34/14 34/22 37/1 37/12
**BARTOS [2]** 2/5 3/18
**BARTRON [2]** 1/9 3/5
**based [2]** 18/2 38/25
**basic [1]** 28/22
**basically [2]** 20/22 34/13
**bear [1]** 30/5
**bearing [2]** 18/20 20/15
**beginning [1]** 16/9
**behalf [3]** 3/21 4/5 6/22
**behavior [1]** 14/15
**behind [1]** 38/14
**belief [1]** 8/25
**bench [1]** 21/21
**beside [1]** 18/19
**bit [1]** 23/11
**boss [1]** 41/10
**both [3]** 7/2 26/6 33/23
**brief [1]** 37/10
**briefly [6]** 6/17 6/24 26/6 33/13 35/13 35/14
**briefly rebut [1]** 35/13
**bringing [1]** 16/15
**bunch [1]** 25/19
**burden [18]** 10/12 10/14 10/25 13/19 21/3 22/13 23/15 24/18 25/10 33/14 34/13 35/5 35/9 37/19 40/4 40/7 40/8 40/12
**burdensome [9]** 10/17 22/20 23/10 24/24 25/18 27/2 39/22 39/25 40/3
**burdensomeness [1]** 39/24
**BURKE [3]** 1/14 3/6 6/1
**business [8]** 5/10 7/17 7/24 8/6 9/1 25/1 30/1 36/16
**business' [1]** 8/25
**businesses [3]** 11/8 24/22 24/23
**bypass [1]** 8/11

**C**

**calendar [2]** 23/16 37/1
**call [2]** 17/11 32/25
**can [24]** 3/13 8/11 9/6 10/5 10/21 13/4 14/11 14/19 18/17 19/3 19/4 19/9 19/16 23/22 23/23 27/10 27/15 28/18 31/22 32/5 32/8 32/16 34/15 37/5
**card [1]** 36/9
**carry [1]** 30/22
**case [53]**
**cast [1]** 19/6
**causation [5]** 7/7 10/9 27/9 28/2 36/2
**cause [1]** 27/14
**caused [4]** 10/2 10/3 13/21 29/22
**certain [3]** 5/9 5/22 31/9
**certainly [9]** 9/14 11/10 13/10 31/17 32/12 33/1 33/23 34/1 37/6
**certification [2]** 8/23 31/17
**certify [1]** 43/4
**challenge [2]** 28/17 31/4
**challenged [3]** 10/2 27/13 27/22
**challenging [1]** 8/5
**chambers [1]** 42/3
**chance [1]** 24/5
**change [14]** 6/8 13/18 13/22 13/23 13/24 14/6 14/7 14/21 15/5 15/6 15/7 16/5 19/4 36/15
**changed [5]** 7/17 8/20 15/3 29/25 36/16
**changes [1]** 36/11
**changing [1]** 28/9
**charge [6]** 9/25 10/4 14/2 15/9 18/19 20/16
**charged [4]** 18/24 20/13 20/14 22/14
**charges [1]** 22/14
**charging [4]** 16/25 17/1 19/20 19/21
**check [1]** 10/21
**chose [1]** 22/10
**cite [1]** 38/17
**civil [8]** 1/5 1/11 1/16 3/3 3/4 3/5 38/6 38/20
**claim [4]** 11/10 14/18 16/17 39/10
**claiming [3]** 18/21 20/3 35/1
**claims [1]** 26/7
**clarification [2]** 4/19 5/20
**clarified [1]** 39/23
**clarifies [1]** 38/11
**clarify [1]** 29/12
**clarity [1]** 27/19
**class [9]** 3/11 8/22 11/4 11/17 11/18 11/18 15/1 26/1 31/17
**classes [1]** 18/21
**clear [6]** 24/6 27/8 29/4 30/17 32/17 39/13
**clients [2]** 24/22 25/7
**clients' [1]** 25/3
**close [7]** 13/19 16/4 17/4 20/25 23/15 24/15 38/13
**closed [2]** 14/23 16/2
**collection [4]** 11/3 21/9 22/3 22/19
**COLUMBIA [1]** 1/1
**combination [1]** 26/16
**coming [1]** 4/10
**commendable [1]** 39/7
**comparable [3]** 4/22 6/15 37/24
**compared [1]** 36/18
**comparison [1]** 25/19
**compel [7]** 4/20 6/13 17/22 17/25 26/11 37/23 39/14

**C**

**competent [1]** 33/6
**competitive [17]** 10/9 14/14 20/3 20/4 20/6 20/12 20/13 27/11 27/12 27/17 27/21 29/19 31/7 31/8 33/10 33/12 35/25
**complaint [6]** 10/6 27/10 27/15 27/18 35/17 35/21
**complete [1]** 34/6
**completely [1]** 20/17
**conceding [1]** 33/10
**conceiving [1]** 20/19
**concern [1]** 11/24
**confer [3]** 5/12 32/12 41/24
**conference [2]** 3/7 22/9
**conferring [1]** 32/18
**confident [1]** 33/18
**confidential [1]** 5/11
**confirm [2]** 16/7 17/17
**connection [2]** 6/16 25/20
**consider [2]** 9/12 40/14
**consistent [2]** 7/4 38/14
**constitute [1]** 26/16
**Constitution [1]** 2/24
**consumer [1]** 18/21
**consumers [3]** 9/25 14/2 27/14
**contested [1]** 6/12
**continue [2]** 8/1 27/2
**conversation [1]** 19/1
**convinced [1]** 23/11
**cooperating [1]** 39/5
**copy [2]** 21/23 21/25
**core [6]** 28/16 30/15 31/6 31/15 32/9 32/21
**cost [6]** 22/17 22/18 23/21 33/15 34/10 35/6
**costly [2]** 33/22 34/1
**costs [3]** 15/8 21/9 21/14
**COUNCIL [3]** 1/3 3/3 3/11
**counsel [9]** 7/15 8/9 12/16 21/6 22/25 23/17 33/3 35/19 36/21
**counsel's [4]** 15/21 15/24 17/11 28/11
**couple [1]** 14/10
**course [2]** 21/14 37/2
**COURT [20]** 1/1 2/23 2/23 2/24 4/7 6/19 6/23 6/25 7/1 10/13 11/2 12/25 17/18 18/13 25/7 26/7 38/18 40/4 40/14 43/3
**Court's [6]** 7/4 13/25 26/12 39/8 40/21 40/24
**cover [1]** 10/24
**credentials [2]** 24/25 34/18
**critical [1]** 28/6
**current [2]** 19/25 28/5
**customers [5]** 16/20 17/2 18/19 19/21 20/17
**cv [3]** 1/6 1/11 1/16

**D**

**damages [9]** 7/8 10/9 11/10 12/3 19/24 19/24 20/7 20/11 39/17
**data [82]**
**database [1]** 34/19
**date [3]** 12/4 41/16 43/10
**day [1]** 12/23
**days [1]** 41/21
**DC [5]** 2/3 2/7 2/11 2/15 2/25
**de [1]** 24/17
**declaration [2]** 21/15 33/5
**declarations [1]** 36/21
**decrease [1]** 29/21
**decreases [1]** 29/23
**deemed [1]** 5/10
**defend [3]** 11/18 16/14 24/20
**defendant [3]** 2/9 2/13 25/13
**defendants [45]**
**defendants' [14]** 4/18 4/20 4/23 5/6 5/20 6/9 7/18 8/7 10/2 19/23 27/23 29/16 30/5 40/16
**defense [15]** 16/18 16/21 18/18 18/20 19/18 20/20 21/6 25/20 26/25 27/7 28/6 29/8 30/15 38/24 39/9
**defenses [1]** 30/5
**delay [6]** 12/14 13/6 13/20 23/21 23/23 24/21
**delivery [1]** 34/21
**delta [1]** 29/13
**demonstrably [1]** 9/21
**demonstrate [2]** 19/3 19/4
**demonstrated [2]** 20/24 25/15
**denied [1]** 25/2
**described [2]** 8/21 30/18
**describing [1]** 31/6
**designated [1]** 5/11
**Despite [1]** 40/1
**detail [2]** 33/17 33/17
**detailed [1]** 10/14
**details [1]** 9/13
**deviation [1]** 15/3
**devote [1]** 34/5
**diametrically [2]** 37/9 40/21
**difference [2]** 7/10 20/12
**different [2]** 20/17 36/1
**differently [2]** 4/16 22/8
**difficult [1]** 32/20
**direct [1]** 26/12
**directed [1]** 7/2
**directly [2]** 28/2 28/7
**disagree [1]** 11/6
**disclosing [1]** 23/3
**disclosure [2]** 38/8 38/9
**disclosures [2]** 38/13 38/19
**discovery [37]** 1/21 3/7 4/12 4/14 7/3 11/12 11/14 12/11 12/13 12/21 13/3 13/9 13/19 14/22 14/23 15/25 16/2 16/4 16/6 17/5 17/7 19/2 20/25 23/1 23/16 24/1 37/4 38/8 38/13 38/14 38/14 38/15 38/19 39/3 39/6 39/12 39/20
**discuss [1]** 40/15
**discussed [2]** 4/10 25/6
**discussion [5]** 30/7 30/21 31/21 32/2 41/12
**dispute [7]** 4/14 5/21 6/4 6/17 25/9 32/22 32/23
**disputed [2]** 28/1 32/23
**disputes [3]** 4/12 5/4 24/8
**disruption [1]** 25/25
**disruptive [1]** 24/24
**DISTRICT [3]** 1/1 1/1 2/24
**docket [1]** 26/11
**document [2]** 4/13 37/17
**documents [5]** 5/9 5/22 13/5 17/16 30/23
**done [1]** 34/24
**doubt [1]** 19/6
**down [3]** 19/16 23/19 25/2
**download [1]** 22/11
**downloading [1]** 34/20
**due [1]** 12/25
**during [3]** 39/2 39/12

**D**

**during... [1]** 39/20
**dynamic [1]** 36/12

**E**

**e-mail [1]** 42/2
**easily [2]** 14/25 19/12
**ECF [10]** 4/18 4/20 4/22 5/6 5/18 5/19 6/9 6/12 37/22 38/17
**economically [1]** 20/5
**edition [1]** 38/12
**effect [9]** 12/10 20/8 20/15 27/22 31/8 33/11 33/12 34/23 35/22
**effects [5]** 10/9 27/12 27/12 27/17 29/19
**effort [5]** 38/15 40/3 40/6 40/23 41/8
**eight [1]** 38/1
**EISENSTEIN [2]** 2/9 4/1
**either [3]** 10/12 19/16 28/12
**elapsed [1]** 29/13
**else [2]** 4/24 36/17
**enabled [1]** 36/5
**end [1]** 21/4
**engaged [1]** 23/1
**enough [3]** 28/24 29/3 41/25
**ensuring [1]** 7/3
**entered [1]** 13/1
**entirely [3]** 20/11 22/13 34/4
**entitled [4]** 11/11 16/17 32/10 43/5
**entitlement [1]** 19/1
**environment [1]** 28/6
**equal [1]** 14/4
**essence [1]** 14/1
**essentially [3]** 24/25 31/25 33/10
**establish [1]** 30/10
**estimate [1]** 34/9
**et [10]** 1/3 1/6 1/9 1/12 1/17 3/3 3/4 3/5 3/5 3/6
**even [10]** 7/16 11/15 12/23 14/17 16/18 19/10 19/13 20/18 20/19 40/6
**everyone [1]** 3/22
**evidence [3]** 8/11 8/18 33/7
**exactly [4]** 12/18 19/15 19/15 32/19
**examine [1]** 16/4
**examining [1]** 10/7
**example [3]** 7/22 9/3 30/4
**examples [1]** 29/17
**excessive [1]** 27/24
**excused [1]** 42/6
**exercise [2]** 34/17 40/21
**exhibit [1]** 26/10
**expand [1]** 37/5
**expect [2]** 12/19 15/24
**expectation [1]** 13/12
**expected [1]** 28/15
**expense [3]** 33/15 37/19 39/2
**experience [2]** 11/15 11/19
**experience working [1]** 11/15
**expert [3]** 12/13 12/21 12/25
**experts [6]** 7/7 7/19 8/21 9/10 11/22 12/24
**explain [1]** 15/15
**explained [1]** 10/12
**exploration [1]** 40/18
**explore [1]** 31/2
**explored [1]** 40/14

**F**

**fact [17]** 10/5 13/9 13/19 14/22 16/2 16/4 17/7 20/25 23/15 27/23 29/7 29/25 39/2 39/12 39/16 39/20 40/10
**facts [5]** 29/7 30/23 31/12 36/25 36/25
**factual [3]** 30/9 30/21 31/25
**fair [1]** 7/3
**fall [2]** 10/3 14/12
**familiar [2]** 13/11 34/25
**far [1]** 39/9
**Fargo [3]** 5/22 5/25 6/10
**February [1]** 22/4
**February 28th [1]** 22/4
**federal [4]** 16/20 23/7 38/6 38/20
**feel [4]** 23/11 24/18 25/7 37/6
**feels [1]** 41/15
**fees [9]** 16/25 17/1 18/23 20/12 20/21 26/15 26/17 26/17 27/19
**felt [1]** 17/8
**few [5]** 6/24 7/22 11/3 18/5 26/7
**fields [4]** 12/18 22/11 33/19 34/19
**file [5]** 4/23 5/7 5/9 17/22 32/16
**filed [3]** 5/8 7/2 39/14
**fill [1]** 24/6
**filling [1]** 4/13
**finally [3]** 10/10 33/13 36/14
**find [1]** 10/5
**fine [1]** 31/24
**finish [3]** 15/16 23/23 24/5
**Finkelstein [1]** 2/5
**first [15]** 6/20 7/1 7/13 10/6 14/10 16/16 21/10 22/15 30/3 30/6 37/7 38/23 39/4 39/11 39/18
**fit [1]** 20/19
**five [1]** 34/2
**focused [1]** 18/23
**foregoing [1]** 43/4
**forensic [1]** 21/13
**form [1]** 7/25
**forth [1]** 29/8
**found [1]** 29/2
**four [11]** 13/18 20/25 22/5 22/8 23/15 23/22 24/17 25/25 31/13 34/22 35/2
**frank [1]** 28/10
**frankly [2]** 8/19 40/17
**front [3]** 30/24 32/20 36/23
**fruitful [2]** 40/22 40/23
**full [1]** 11/11
**fully [1]** 33/4
**further [1]** 41/3

**G**

**gained [1]** 36/19
**games [1]** 13/23
**Garrison [1]** 2/14
**gather [1]** 34/18
**gave [2]** 19/11 23/5
**general [3]** 37/20 37/21 39/23
**generalized [1]** 10/11
**generally [1]** 39/5
**generic [2]** 8/19 9/6
**given [2]** 6/7 19/14
**gleaned [1]** 14/19
**goal [1]** 9/7
**goes [2]** 28/2 28/3
**good [12]** 3/2 3/10 3/16 3/16 3/17 3/19 3/20 4/2 4/3 4/5 5/3 21/13
**govern [1]** 28/18
**grant [5]** 5/15 5/18 6/9 37/25 40/25
**granular [2]** 29/3 32/9
**grounds [2]** 9/19 10/11

**H**

**hands [1]** 35/23
**happy [13]** 6/25 17/17 21/15 21/18 21/24 25/10 25/13 25/16 25/23 25/24 36/20 36/20 36/24
**hard [3]** 17/9 19/14 32/15
**hear [3]** 3/24 5/13 6/17
**heard [5]** 6/7 10/11 30/19 31/1 39/3
**hearing [3]** 1/21 6/4 32/25
**heart [9]** 14/14 15/10 15/20 25/1 28/17 31/16 31/16 37/7 37/8
**Hello [1]** 3/25
**help [3]** 25/9 36/23 37/5
**hide [1]** 25/11
**hiding [1]** 22/12
**higher [1]** 35/24
**highly [4]** 5/11 7/18 28/1 28/14
**Hold [1]** 41/10
**hollow [1]** 39/18
**Honor [41]** 3/2 3/10 3/17 3/20 3/25 4/3 4/8 5/1 5/2 5/17 6/21 7/13 8/13 9/18 10/20 11/6 13/14 13/16 15/14 15/18 16/10 17/16 17/25 18/14 21/3 21/5 22/22 24/3 24/9 24/15 26/5 26/24 30/13 34/15 35/11 35/15 37/13 41/6 41/18 42/4 42/5
**HONORABLE [1]** 1/21
**HOOK [4]** 2/23 3/23 43/3 43/10
**hosting [2]** 21/8 34/20
**hundred [1]** 28/11
**hypothetical [1]** 32/8

**I**

**ideal [1]** 29/7
**identified [2]** 33/20 33/21
**identify [1]** 34/19
**illuminate [1]** 18/17
**imagine [1]** 19/14
**immaterial [1]** 9/20
**important [3]** 14/10 16/24 24/8
**importantly [1]** 18/16
**impose [2]** 20/6 37/19
**imposed [3]** 14/3 27/14 36/1
**INC [8]** 1/3 1/6 1/12 1/17 3/3 3/4 3/5 3/6
**included [1]** 21/11
**including [3]** 7/25 9/22 10/1
**income [2]** 7/24 9/23
**incomplete [1]** 38/10
**incorrect [1]** 38/10
**increase [3]** 18/22 27/22 29/20
**increased [1]** 29/18
**increases [2]** 29/22 30/1
**incurred [1]** 15/8
**indifferent [1]** 6/5
**individual [1]** 32/18
**indulge [1]** 10/21
**industry [2]** 7/21 29/18
**industry-wide [1]** 29/18
**inflation [1]** 15/6
**information [35]** 5/10 6/1 6/3 6/6 6/10 7/12 10/14 12/10 13/8 14/1 14/17 14/19 14/25 15/2 17/14 17/21 21/11 22/13 23/10 25/10 25/14 25/16 26/6 28/20 28/23 28/25 29/14 38/22 38/23 39/8 39/12 39/15 40/16 41/9 41/25
**initial [4]** 17/13 18/4 22/24 24/12
**injunctive [2]** 12/8 28/4
**insisted [1]** 17/6
**instance [4]** 30/6 39/5 39/11 39/19
**intend [1]** 5/15
**intention [2]** 13/10 15/23
**intentional [2]** 21/4 21/7
**interchange [20]** 7/25 9/2 9/11 9/23 10/3 10/7 26/16 26/17 27/13 27/25 28/13 29/2 29/6 29/20 29/21 29/23 29/25 30/4 35/17 36/3
**interest [1]** 37/1
**interfere [1]** 23/17
**interpreted [1]** 24/10
**interruption [1]** 37/15
**interval [1]** 12/23
**intervals [1]** 13/4
**into [6]** 3/23 20/20 21/24 24/16 34/19 41/9
**introduce [1]** 3/8
**involved [1]** 21/9
**irrelevant [2]** 16/23 39/9
**irrespective [1]** 8/24
**issue [18]** 13/2 13/20 15/10 15/19 15/20 18/17 19/18 25/21 28/2 28/13 28/14 29/9 32/10 32/22 33/7 33/14 34/6 37/25
**issues [6]** 7/7 13/3 27/8 32/13 38/16 41/10
**item [1]** 14/8

**J**

**JEFF [3]** 2/23 43/3 43/10
**jointly [2]** 21/5 41/21
**JONATHAN [3]** 2/2 3/10 13/16
**JUDGE [14]** 1/22 4/12 12/25 16/24 18/4 18/25 22/13 23/12 25/11 36/25 37/5 38/17 41/2 41/15
**June [1]** 22/4
**June 30th [1]** 22/4
**jurisprudence [1]** 16/20
**jury [1]** 30/24
**justification [2]** 30/2 30/14
**justifications [2]** 8/7 28/5

**K**

**keep [2]** 25/9 25/13
**key [7]** 10/8 16/24 27/8 28/1 28/14 29/17 35/19
**kind [3]** 20/10 20/24 24/19
**knowing [1]** 11/25

**L**

**lack [1]** 39/19
**last [16]** 4/10 6/4 7/22 16/3 21/14 21/18 22/15 23/24 25/15 29/14 30/11 31/9 31/9 31/13 34/2 35/7
**learns [1]** 38/9
**least [7]** 8/20 9/20 10/20 11/23 28/22 30/10 31/1
**leave [2]** 4/23 5/6
**leaves [1]** 6/12
**legal [2]** 31/11 31/12
**lengthy [1]** 12/20
**Leon [5]** 4/12 13/1 37/5 41/2 41/15
**Leon's [1]** 38/17
**less [1]** 33/22
**level [8]** 8/23 14/11 20/3 20/4 20/6 20/16 28/22 35/17
**levels [5]** 7/21 9/23 10/8

**L**

**levels... [2]** 10/8 29/18
**liability [3]** 7/7 27/9 28/3
**liberal [1]** 38/15
**light [3]** 39/16 39/18 40/9
**likely [1]** 40/22
**limited [1]** 14/17
**literal [1]** 15/7
**litigated [2]** 28/14 31/17
**litigating [1]** 22/25
**litigation [3]** 11/9 11/18 31/15
**little [4]** 14/19 23/11 32/12 33/17
**LLP [4]** 2/2 2/5 2/10 2/14
**lockstep [1]** 19/16
**look [1]** 8/23
**looking [2]** 19/15 32/16
**lot [3]** 21/6 24/23 36/1
**lower [2]** 25/10 33/23
**LYNNE [1]** 1/9

**M**

**Mackmin [1]** 6/3
**MAGISTRATE [1]** 1/22
**mail [1]** 42/2
**maintains [1]** 22/7
**makes [2]** 24/6 32/8
**market [3]** 14/16 20/17 36/8
**Massachusetts [1]** 2/10
**MasterCard [2]** 2/13 4/4
**material [8]** 6/8 7/10 13/20 23/3 31/1 36/17 38/9 39/3
**materiality [1]** 20/23
**Matt [1]** 3/25
**matter [2]** 20/11 43/5
**matters [2]** 3/6 15/6
**MATTHEW [1]** 2/9
**may [11]** 1/24 6/25 18/20 23/18 32/11 33/16 34/23 34/24 35/13 37/15 40/6
**maybe [1]** 32/11
**mean [11]** 9/5 13/23 15/5 17/9 18/10 18/12 19/13 21/20 24/10 29/12 36/15
**meaning [1]** 16/17
**meaningfully [1]** 29/3
**means [4]** 14/5 16/21 34/16 34/18
**memory [1]** 18/3
**menu [1]** 14/8
**merits [2]** 7/6 12/13
**Mexico [1]** 2/6
**microphone [1]** 3/23
**might [7]** 6/10 21/2 23/11 30/24 32/25 33/16 34/8
**MILA [2]** 2/5 3/17
**Miller [1]** 38/11
**mind [2]** 16/12 34/9
**minimis [1]** 24/17
**minimum [3]** 17/19 17/19 33/18
**misstating [1]** 35/19
**Mitch [1]** 4/3
**MITCHELL [1]** 2/13
**MoginRubin [1]** 2/2
**moment [2]** 10/21 41/11
**months [8]** 22/5 22/8 23/21 23/22 24/17 25/25 35/2 35/3
**more [13]** 11/15 16/10 18/16 22/23 23/11 23/13 28/20 30/24 33/17 33/17 34/8 34/24 36/9
**Moreover [1]** 38/11
**morning [1]** 3/17
**most [1]** 28/22
**motion [16]** 4/19 4/20 4/23 5/6 5/8 5/16 5/20 6/9 6/13 7/1 7/21 17/22 26/11 37/25 39/14 40/25
**motions [4]** 4/16 7/2 41/1 41/20
**move [5]** 21/3 37/2 40/24 41/15 42/1
**MOXILA [1]** 1/21
**Mr. [7]** 3/23 4/5 13/15 24/5 26/21 34/7 39/23
**Mr. Hook [1]** 3/23
**Mr. Rubin [4]** 13/15 24/5 34/7 39/23
**Mr. Rubin's [1]** 26/21
**Mr. Webber [1]** 4/5
**Ms. [4]** 4/9 6/19 24/4 26/4
**Ms. Szanyi [4]** 4/9 6/19 24/4 26/4
**much [5]** 23/1 26/2 30/22 33/21 36/9
**must [3]** 14/4 14/12 38/7

**N**

**names [1]** 3/13
**narrow [1]** 38/16
**narrowly [1]** 7/5
**NATIONAL [3]** 1/3 3/3 3/11
**nature [1]** 7/16
**necessarily [1]** 12/14
**necessary [3]** 23/1 24/19 31/25
**need [11]** 5/4 12/2 13/5 16/13 19/3 20/24 25/24 32/5 32/6 40/20 41/10
**needed [1]** 41/9
**needs [2]** 40/24 41/15
**negotiate [1]** 32/1
**negotiated [1]** 12/18
**negotiating [1]** 25/4
**neither [2]** 40/22 40/22
**net [17]** 7/25 9/2 9/11 9/23 10/2 10/7 26/17 27/13 27/25 28/13 29/20 29/21 29/23 29/25 30/3 35/17 36/3
**network [4]** 14/4 15/4 18/23 20/21
**networks [7]** 16/25 19/20 20/6 20/12 20/14 25/23 35/22
**new [2]** 2/6 36/19
**next [1]** 41/16
**night [2]** 21/14 21/18
**nine [4]** 11/7 15/1 24/21 26/1
**No. [1]** 37/22
**No. 224 [1]** 37/22
**none [2]** 19/19 29/2
**nonsense [5]** 16/15 16/16 17/3 17/11 20/18
**nor [2]** 40/5 40/23
**note [6]** 5/7 7/1 7/14 10/10 11/19 39/22
**noted [4]** 7/20 12/17 29/17 33/24
**notes [1]** 38/18
**Notwithstanding [1]** 26/20
**number [11]** 3/3 3/4 3/6 4/18 4/20 4/22 5/19 5/19 6/9 26/11 31/9
**numbers [3]** 26/12 32/17 33/23
**NW [5]** 2/3 2/6 2/10 2/14 2/24

**O**

**objection [24]** 5/15 5/17 6/1 9/18 10/17 10/25 11/14 17/12 17/13 17/16 18/1 18/8 22/21 26/19 27/2 37/16 37/20 37/21 38/25 39/11 39/19 39/23 39/25 40/9
**objections [12]** 10/11 23/7 23/8 23/10 24/2 24/7 24/10 24/11 26/9 37/18

## O

**objections... [2]** 39/15 40/1
**obligated [1]** 7/15
**obligation [2]** 17/8 38/19
**obstacles [1]** 32/19
**obtain [1]** 6/10
**obtained [1]** 11/17
**obviously [2]** 12/15 41/25
**off [2]** 23/16 41/12
**offer [2]** 31/20 32/12
**offered [2]** 8/14 32/1
**offering [1]** 31/15
**Official [2]** 2/23 43/3
**offset [2]** 20/10 20/10
**once [1]** 13/3
**one [23]** 7/19 8/15 8/24 9/3 10/21 11/3 11/3 11/23 11/25 13/18 21/23 21/25 22/5 22/14 27/12 27/15 28/22 29/17 30/4 34/8 34/9 36/12 37/3
**ones [1]** 4/17
**ongoing [1]** 38/18
**only [5]** 10/15 11/3 31/4 35/6 40/9
**open [5]** 14/16 30/20 32/2 32/12 32/18
**operation [1]** 20/5
**operator [26]** 5/9 5/14 6/5 6/14 8/5 8/9 8/18 11/4 11/7 11/12 11/13 11/16 11/21 12/1 14/6 26/18 27/9 27/10 28/8 28/22 28/24 28/25 29/1 30/1 30/19 37/18
**operator-specific [1]** 8/18
**operators [51]**
**operators' [7]** 7/9 9/18 10/6 14/18 19/22 24/20 28/7
**opportunity [1]** 3/24
**opposed [3]** 15/21 37/9 40/21
**opposing [2]** 17/11 22/25
**opposite [1]** 39/1
**opposition [1]** 6/2
**order [15]** 4/19 5/21 7/4 11/2 12/9 13/1 16/14 23/18 23/19 23/19 32/3 37/4 38/17 41/19 41/23
**original [13]** 4/22 6/15 7/20 11/14 11/21 22/18 26/9 26/11 32/19 34/17 37/24 38/2 38/5
**originally [4]** 12/22 27/7 33/22 40/10
**others [1]** 11/23
**otherwise [2]** 33/6 35/25
**out [5]** 4/13 24/6 25/19 30/5 36/24
**over [5]** 7/22 8/4 9/12 18/22 31/9
**overarching [1]** 6/24
**overcharge [5]** 16/23 19/19 20/20 36/4 36/6
**overcharged [1]** 16/19
**overcharges [5]** 18/18 20/4 20/6 20/14 25/22
**overcharging [1]** 36/7
**overly [1]** 25/18
**own [1]** 22/6

## P

**p.m [4]** 1/25 37/11 37/12 42/7
**page [2]** 22/15 37/17
**papers [4]** 6/16 6/23 7/20 9/15
**paragraph [3]** 10/6 27/15 27/15
**paragraphs [2]** 27/16 27/16
**part [2]** 30/2 38/7
**participated [1]** 11/13
**participation [1]** 6/3
**particular [8]** 6/4 12/1 13/9 25/8 36/12 40/1 40/11 40/15
**particularly [2]** 21/13 39/16
**parties [8]** 3/8 6/2 11/9 24/6 38/18 40/15 41/8 41/20
**parties' [2]** 4/13 40/18
**party [6]** 5/23 5/23 6/17 24/24 38/7 38/9
**pass [6]** 16/17 16/21 20/9 20/10 26/24 27/7
**pass-through [6]** 16/17 16/21 20/9 20/10 26/24 27/7
**passing [1]** 16/19
**past [1]** 32/11
**pattern [9]** 13/24 15/2 15/7 16/5 16/7 19/5 28/10 28/12 29/5
**Paul [1]** 2/13
**pending [2]** 4/24 5/4
**percent [1]** 28/11
**perfectly [1]** 27/8
**perhaps [1]** 35/2
**period [5]** 16/1 16/8 18/22 21/5 30/10
**permitted [2]** 16/21 22/11
**person [1]** 8/25
**personnel [1]** 24/23
**PETER [1]** 1/14
**phone [1]** 32/25
**piece [1]** 22/3
**place [2]** 30/3 36/7
**plainly [1]** 28/24
**plaintiff [6]** 1/15 3/11 11/21 28/23 32/13 32/14
**plaintiffs [35]** 1/4 1/10 2/2 3/9 3/18 5/1 5/10 5/14 6/5 6/14 7/23 8/4 8/9 9/21 10/1 11/7 11/12 11/13 11/16 13/17 19/24 26/18 28/4 28/8 28/16 28/25 29/1 30/19 31/14 32/23 32/25 34/4 37/18 39/17 41/4
**plaintiffs' [9]** 6/3 10/8 12/16 12/24 19/23 27/10 27/21 28/11 29/18
**plead [1]** 20/9
**please [5]** 3/8 3/23 15/17 15/18 42/2
**point [8]** 9/10 9/17 11/10 15/25 16/10 18/19 19/2 33/12
**points [3]** 6/24 7/13 13/18
**portals [1]** 33/21
**Porter [1]** 2/10
**posing [1]** 10/15
**position [4]** 14/22 17/11 17/20 31/15
**positions [1]** 6/8
**possibility [2]** 13/7 20/9
**practices [5]** 7/24 8/6 9/3 30/2 36/16
**precisely [1]** 8/2
**predicate [1]** 30/9
**prefer [1]** 24/21
**prepared [1]** 12/12
**preparing [1]** 21/13
**present [4]** 28/3 38/3 39/17 41/20
**presented [1]** 8/3
**pretty [1]** 17/10
**prevent [1]** 38/16
**previous [1]** 4/17
**previously [3]** 7/6 10/16 12/18

**P**

**price [3]** 14/9 14/15 35/18
**prices [4]** 14/2 16/22 35/24 35/24
**pricing [1]** 36/17
**primary [1]** 9/18
**principle [1]** 38/23
**probably [1]** 22/23
**procedure [3]** 4/11 38/6 38/20
**proceedings [3]** 13/1 42/7 43/5
**process [8]** 12/20 22/24 23/23 23/24 32/20 33/18 34/1 34/21
**processes [1]** 14/5
**processor [3]** 22/7 22/7 33/21
**processors [1]** 22/6
**procompetitive [4]** 8/6 27/24 28/5 30/14
**produce [10]** 4/21 6/14 13/5 17/4 17/21 37/23 38/22 39/2 40/12 41/25
**produced [17]** 7/6 7/11 10/16 12/24 14/25 16/1 16/3 16/6 22/24 28/23 28/25 29/1 29/14 30/11 34/14 39/4 39/15
**producing [6]** 6/1 17/13 19/25 39/21 40/2 40/5
**production [12]** 6/2 6/6 8/11 11/2 12/10 26/10 38/2 39/12 39/18 39/24 40/20 41/14
**productions [4]** 11/22 25/15 33/25 38/5
**promote [1]** 38/15
**properly [1]** 3/24
**proportional [1]** 33/24
**proportionate [1]** 11/11
**proposal [1]** 41/21
**proposition [4]** 16/12 31/11 31/12 40/18
**propounded [1]** 18/11
**prove [2]** 29/8 32/10
**provide [4]** 26/6 30/8 33/16 34/11
**provided [3]** 15/1 28/24 34/10
**provides [1]** 38/7
**providing [1]** 30/7
**proving [2]** 30/23 32/21
**public [1]** 25/22
**pull [4]** 12/17 32/15 34/11 35/9
**pulling [1]** 25/1
**punished [1]** 23/3
**punishment [1]** 23/6
**purely [2]** 16/15 32/7
**purporting [1]** 11/16
**purposes [4]** 7/18 8/17 21/1 25/1
**put [2]** 37/16 41/8

**Q**

**quantify [1]** 40/4
**quicker [1]** 33/22
**quite [2]** 18/5 39/1
**quote [1]** 38/8

**R**

**rather [1]** 38/4
**readout [2]** 22/2 22/15
**real [1]** 19/10
**really [2]** 32/15 34/16
**reason [5]** 22/8 23/7 25/12 31/1 39/4
**reasons [2]** 14/10 38/23
**rebut [1]** 35/13
**recall [1]** 18/3
**receive [3]** 9/24 28/1 31/18
**received [6]** 4/13 28/19 29/22 30/16 30/17 33/14
**receiving [1]** 7/25
**recent [1]** 28/20
**recess [2]** 37/10 37/11
**recollection [1]** 8/25
**record [14]** 3/9 3/24 14/19 21/24 26/8 34/6 36/11 37/12 37/16 39/13 40/8 40/11 41/12 43/5
**reduce [1]** 27/13
**refer [1]** 27/17
**referenced [1]** 10/5
**referred [3]** 4/12 27/18 41/1
**reflect [1]** 30/1
**reflects [1]** 7/17
**regard [3]** 14/12 21/15 31/18
**regarding [3]** 9/11 25/5 33/15
**regardless [2]** 14/4 20/7
**reiterated [1]** 39/13
**relate [1]** 19/18
**related [3]** 11/8 28/13 29/20
**relationship [7]** 9/2 9/11 9/22 10/7 20/2 29/4 36/10
**relevance [10]** 7/11 9/19 13/19 18/2 18/8 20/22 23/9 26/19 38/25 39/19
**relevant [12]** 7/18 8/17 14/18 18/7 18/20 18/23 19/23 24/19 28/7 29/16 38/7 38/24
**relief [2]** 12/8 28/4
**reluctant [1]** 31/19
**rely [1]** 33/2
**remain [1]** 20/7
**remainder [1]** 41/22
**remained [2]** 8/1 16/8
**remaining [2]** 4/11 34/17
**remember [1]** 34/25
**renewed [1]** 24/11
**reopen [2]** 13/9 37/4
**Reporter [3]** 2/23 2/23 43/3
**reports [10]** 4/22 6/16 7/6 10/16 12/17 12/17 12/24 12/25 33/20 37/25
**represent [6]** 11/17 18/13 23/12 23/13 25/7 32/16
**representation [16]** 7/9 7/15 8/9 8/10 8/20 9/10 12/15 15/21 15/24 17/10 28/9 28/15 30/17 30/18 35/5 40/6
**representations [3]** 25/5 33/3 33/15
**representative [1]** 3/12
**representatives [4]** 11/4 11/18 15/1 26/1
**represented [2]** 9/14 35/16
**representing [3]** 7/23 13/17 28/11
**request [4]** 24/11 25/2 26/12 38/3
**requested [2]** 26/7 26/18
**requesting [1]** 12/19
**requests [18]** 10/14 10/19 10/23 10/24 18/9 22/24 24/1 24/7 24/12 26/10 26/13 26/15 26/19 37/19 39/1 39/24 40/1 40/11
**require [2]** 12/14 17/24
**required [7]** 13/12 15/21 22/5 22/9 32/24 33/2 38/22
**requires [2]**

**R**

**requires... [2]** 34/5 35/21
**reserve [1]** 37/18
**resolution [4]** 13/2 24/8 25/8 41/19
**resolve [1]** 4/11
**resolved [3]** 4/17 13/3 41/20
**resolves [1]** 41/1
**resources [1]** 34/5
**respect [12]** 5/19 9/20 13/22 18/17 24/9 26/9 27/8 29/13 36/14 36/17 36/17 38/9
**respond [2]** 26/6 36/8
**response [5]** 11/5 19/22 26/21 38/8 38/10
**responses [2]** 38/13 38/19
**restaurant [1]** 14/8
**restrain [1]** 27/24
**restrained [2]** 15/4 16/13
**restrains [1]** 14/15
**restraint [9]** 14/3 14/16 19/14 19/17 35/21 36/1 36/5 36/7 36/10
**restraints [1]** 14/20
**retail [2]** 14/2 16/22
**return [1]** 13/4
**returned [1]** 13/3
**revealed [1]** 15/8
**review [2]** 18/4 21/13
**reviewed [2]** 6/16 6/23
**reviewing [1]** 15/22
**RFPs [2]** 18/2 37/25
**Rifkind [1]** 2/13
**right [5]** 4/9 13/13 31/22 34/9 35/5
**ring [1]** 39/17
**rise [5]** 8/2 10/4 10/4 14/12 27/14
**risen [1]** 7/22
**rises [1]** 8/3
**rival [1]** 35/22
**robust [2]** 17/13 41/8
**ROSEMARY [3]** 2/9 3/20 6/22
**round [2]** 11/14 25/16
**RUBIN [7]** 2/2 3/11 13/15 13/16 24/5 34/7 39/23
**Rubin's [1]** 26/21
**rule [11]** 5/5 5/6 18/6 20/5 28/5 30/3 30/15 31/9 38/6 38/20 41/9
**rules [10]** 8/4 8/7 10/2 15/4 23/7 27/13 27/22 27/23 28/17 38/15
**run [1]** 24/22
**runs [1]** 8/25

**S**

**same [14]** 7/5 8/1 10/16 13/4 13/4 14/9 14/13 16/8 20/7 22/7 34/21 35/22 37/6 41/16
**sample [1]** 19/10
**satisfy [1]** 40/16
**saying [7]** 16/12 30/20 30/25 32/2 32/2 32/14 36/2
**schedule [3]** 12/11 13/4 42/1
**scheduled [2]** 12/22 12/22
**scheduling [4]** 4/19 5/21 7/4 23/18
**seal [3]** 4/23 5/7 5/9
**seconds [1]** 37/16
**section [2]** 27/17 38/11
**seek [5]** 6/13 8/10 13/9 37/23 38/1
**seeking [13]** 5/22 7/5 11/9 12/3 12/5 12/7 14/23 19/24 28/4 30/10 36/20 39/17 40/17
**sense [2]** 15/7 32/8
**sensitive [1]** 5/10
**sentence [1]** 15/17
**served [1]** 24/2
**set [4]** 3/7 35/23 35/24 42/3
**setting [2]** 13/25 29/8
**settled [1]** 5/24
**seven [1]** 38/1
**several [3]** 10/19 23/21 29/15
**share [5]** 21/19 21/22 25/10 25/13 25/16
**shared [1]** 21/16
**short [2]** 3/13 33/9
**shortly [1]** 16/3
**show [7]** 8/21 9/1 15/2 19/9 21/2 29/24 30/15
**shows [1]** 31/13
**significant [3]** 11/24 12/14 34/3
**simply [4]** 8/19 26/23 28/19 30/16
**single [1]** 29/10
**sitting [1]** 21/21
**skepticism [1]** 31/5
**small [1]** 24/22
**somehow [1]** 35/19
**someone's [1]** 4/15
**sorry [8]** 15/13 15/14 15/18 26/14 27/1 29/21 32/22 37/15
**sort [2]** 8/8 21/4
**sought [2]** 5/8 5/12
**sounds [1]** 35/15
**speak [1]** 3/23
**specific [20]** 6/18 8/18 9/6 9/9 9/9 10/13 18/2 18/9 25/4 30/8 30/21 31/5 32/13 32/14 33/5 34/13 35/4 35/9 39/25 40/8
**specifies [1]** 41/19
**spend [1]** 25/24
**spirit [1]** 38/14
**springing [1]** 31/23
**stage [1]** 39/16
**staged [1]** 12/23
**started [1]** 12/13
**starting [1]** 3/9
**state [1]** 32/17
**stated [1]** 27/7
**statement [1]** 17/11
**STATES [2]** 1/1 1/22
**stayed [1]** 6/4
**staying [1]** 13/1
**still [1]** 35/3
**stipulate [4]** 9/14 31/8 31/15 36/20
**stipulation [17]** 8/10 8/14 8/16 9/5 25/4 31/5 31/18 31/25 32/6 32/9 33/4 33/4 33/9 33/11 36/15 36/23 40/19
**stipulations [3]** 30/8 30/21 40/15
**Street [2]** 2/3 2/14
**strenuous [1]** 40/1
**strictly [1]** 25/18
**strong [2]** 17/10 31/5
**strongly [1]** 24/20
**subject [1]** 13/1
**submission [3]** 10/13 21/5 21/12
**submit [6]** 10/24 13/2 21/15 33/23 36/21 41/21
**substantive [1]** 39/15
**substitute [1]** 15/25
**sufficient [9]** 8/21 11/4 15/2 16/6 19/6 19/13 21/1

**S**

**sufficient... [2]** 30/12 32/4
**Suite [2]** 2/3 2/6
**sum [1]** 22/14
**supplant [1]** 40/19
**supplement [4]** 34/13 34/16 38/8 38/19
**supplemental [10]** 6/15 7/3 11/2 35/9 38/2 38/22 39/22 40/5 40/12 40/20
**supplementation [1]** 38/12
**supply [1]** 30/9
**support [3]** 8/2 8/6 29/16
**supported [1]** 26/8
**surcharge [15]** 9/12 10/8 11/2 14/6 20/16 21/10 22/19 26/17 27/20 28/18 29/1 29/18 30/1 36/3 36/11
**surcharges [32]** 7/21 8/1 8/3 9/24 10/3 10/4 13/25 14/1 14/3 14/4 14/7 14/11 14/20 15/4 15/9 16/10 16/14 18/22 19/5 19/15 19/16 20/8 20/21 25/22 27/14 27/18 27/23 28/10 28/14 29/22 35/18 35/21
**surcharging [10]** 9/2 16/7 19/5 19/7 24/19 25/12 27/25 28/12 29/6 36/11
**sure [8]** 10/22 17/15 18/13 19/2 28/11 34/6 37/5 41/15
**surprise [1]** 38/16
**suspended [1]** 23/20
**sustain [1]** 40/9
**SZANYI [7]** 2/9 3/21 4/9 6/19 6/22 24/4 26/4

**T**

**tailored [1]** 7/3
**talking [4]** 23/14 23/25 31/12 32/11
**telling [1]** 41/10
**template [2]** 4/14 24/5
**term [1]** 27/19
**terminal [1]** 14/5
**terms [1]** 32/21
**test [2]** 28/21 29/5
**testimony [1]** 30/23
**testing [2]** 10/8 15/22
**that we [1]** 32/10
**theories [1]** 10/9
**theory [5]** 27/21 27/23 28/21 29/19 31/7
**therefore [2]** 5/11 14/23
**third [3]** 5/23 24/24 38/12
**Thompson [1]** 2/5
**thorough [1]** 40/17
**though [1]** 16/18
**thought [2]** 23/1 41/13
**three [1]** 4/16
**throughout [1]** 16/8
**timeline [1]** 42/3
**timing [3]** 41/14 41/21 42/2
**titled [1]** 27/17
**today [10]** 3/13 4/16 23/11 34/14 35/10 39/3 39/13 40/2 40/13 41/20
**told [1]** 6/5
**took [3]** 21/21 22/3 22/8
**touch [1]** 6/24
**towards [1]** 7/3
**track [1]** 25/9
**tranche [3]** 17/14 29/14 38/4
**transaction [3]** 8/23 14/5 34/2
**transactional [3]** 4/21 6/15 37/24
**transcript [2]** 1/21 43/4
**trend [1]** 30/8
**trial [4]** 12/4 19/25 32/10 38/16
**trouble [2]** 20/18 20/19
**true [3]** 7/16 11/15 43/4
**truly [1]** 39/8
**try [1]** 41/24
**trying [5]** 22/25 23/9 31/21 32/3 32/20
**turn [2]** 10/3 27/14
**two [6]** 7/13 11/8 29/17 35/3 37/17 38/22
**tying [1]** 35/22

**U**

**U.S [1]** 2/24
**under [8]** 4/23 5/7 5/9 14/3 14/20 16/20 23/7 38/20
**underlying [6]** 10/18 17/4 30/9 32/5 38/4 39/20
**understood [1]** 28/8
**undertaken [2]** 34/12 35/8
**undertook [1]** 39/2
**undue [1]** 37/19
**unduly [2]** 39/22 40/2
**unfair [1]** 38/16
**Unfortunately [1]** 21/6
**UNITED [2]** 1/1 1/22
**unless [2]** 4/15 5/15
**up [9]** 12/4 19/5 19/16 19/17 19/24 25/4 29/8 32/10 32/21
**UPADHYAYA [1]** 1/21
**update [6]** 19/4 33/25 33/25 34/2 34/13 38/5
**updated [5]** 4/21 6/14 7/10 10/15 37/24
**updates [1]** 7/5
**updating [1]** 33/19
**upon [1]** 17/7
**use [5]** 3/13 7/7 8/11 11/23 34/15
**used [1]** 20/18
**usefulness [1]** 19/7
**using [1]** 11/17

**V**

**variation [2]** 11/20 14/11
**various [1]** 6/8
**vendor [4]** 21/8 22/2 22/14 34/20
**vendors [2]** 21/12 22/16
**verify [1]** 19/13
**versions [1]** 10/15
**victims [1]** 16/22
**view [8]** 4/25 25/4 37/7 37/8 39/8 40/18 40/22 40/24
**violation [2]** 16/8 18/22
**VISA [12]** 1/6 1/12 1/17 2/9 3/4 3/5 3/6 3/21 4/1 4/6 6/22 36/9
**voluntarily [2]** 14/22 14/24
**voluntary [2]** 11/9 25/15

**W**

**waited [1]** 21/4
**waiting [1]** 21/7
**waived [1]** 23/8
**wants [1]** 36/21
**was not [1]** 17/20
**Washington [5]** 2/3 2/7 2/11 2/15 2/25
**way [14]** 8/19 11/25 12/21 14/15 23/19 28/12 28/18 29/25 30/4 36/6 36/12 37/6 38/24 41/16
**ways [1]** 29/15
**WEBBER [3]** 2/13 4/4 4/5
**Wednesday [1]** 1/24
**weight [2]** 30/22 30/24
**Weiss [1]** 2/13
**Wells [3]** 5/22 5/25 6/10

**W**

**weren't [1]** 23/13
**Wharton [1]** 2/13
**what's [2]** 11/4 26/20
**whenever [1]** 24/12
**wide [2]** 7/21 29/18
**willing [1]** 30/7
**without [2]** 11/14 19/9
**word [3]** 13/22 20/18 34/15
**words [3]** 17/12 36/5 38/3
**work [2]** 25/23 36/24
**working [2]** 11/15 11/20
**world [2]** 29/7 35/25
**worth [1]** 40/23
**Wright [1]** 38/11
**wrong [1]** 9/21

**Y**

**year [1]** 22/23
**years [13]** 7/22 9/12 18/5 20/25 23/15 24/16 28/21 31/10 31/13 34/3 34/22 34/22 36/18