**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PETER BURKE, *et al.*, | |
| Plaintiffs, | |
| v. | Case No.  1:11-cv-01882 (RJL) |
| VISA INC., *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS ACTION
AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS**

# TABLE OF CONTENTS

Introduction And Summary ................................................................................................ 1

   A.    Overview of Settlement and Alleged Antitrust Claims. ................................................. 3

   B.    Initial Dismissal of Claims by District Court ............................................................... 4
       1.    Reversal Of Dismissal by the Circuit ....................................................................... 4
       2.    Grant, but Then Dismissal of *Certiorari* by the Supreme Court ............................ 4

   C.    Discovery ........................................................................................................................ 5

   D.    Grant of Class Certification. ........................................................................................... 6

   E.    Grant of Interlocutory Appeal, and Affirmance of Class Certification by the Circuit. .. 6

   F.    Supreme Court Denies *Certiorari* ............................................................................... 6

   G.    The *Mackmin* Case Settles After This Circuit's Affirmance of Class Certification. ....... 7

   H.    The Parties Complete Discovery and Exchange Final Merits Reports by Nine Separate Experts. . 7

   I.    The Parties Mediate and Agree, Prior to the Beginning of Merits Expert Depositions, to Settle. .... 8

   J.    Highlights of the Settlement Agreement ........................................................................ 9
       1.    Cash Payment to Settlement Fund and Release of Claims ......................................... 9
       2.    Stipulated Settlement Classes .................................................................................... 9
          a.    Nationwide Class ................................................................................................... 9
          b.    Statewide Settlement Classes .............................................................................. 10
       3.    Option to Terminate ................................................................................................. 10

   K.    The Proposed Class Notice Plan .................................................................................. 10

Argument ........................................................................................................................... 13

   A.    The Court Should Preliminarily Approve the *Burke* Class Action Settlement. ........... 13

   B.    The Settlement Satisfies the Relevant Fairness Factors ............................................... 14
       1.    Arms-Length Negotiations and Mediation ............................................................... 15
       2.    The Settlement is Well Within the Range of What May be Found to be Reasonable at the Final Approval Stage ................................................................................................................... 16
       3.    The Stage of the Litigation ....................................................................................... 18
       4.    The Reaction of the Class. ........................................................................................ 18
       5.    The Opinion of Experienced Counsel ...................................................................... 19

   C.    Rule 23(e) is Satisfied. ................................................................................................. 19

   D.    Rules 23(a) and (b) are Satisfied. ................................................................................. 21

   E.    The Court Should Appoint Finkelstein Thompson LLP and Lovell Stewart Halebian Jacobson LLP as Settlement Class Co-Lead Counsel. ................................................................. 22

   F.    The Court Should Approve the *Burke* Proposed Class Notice Plan and Case Schedule. ............. 22

   G.    Proposed Notice, Claims and Final Approval Schedule ............................................... 25

Conclusion ................................................................................................................ 26

## TABLE OF AUTHORITIES

**Cases**

*Abraha v. Colonial Parking, Inc.*,
2020 WL 4432250, (D.D.C. July 31, 2020)........................................................ 15, 19

*Barton v. Visa Inc.*,
No. 11-cv-1831 ....................................................................................................... 4

*Bynum v. Dist. of Columbia*,
412 F.Supp.2d 73, 81 (D.D.C. 2006) .................................................................... 20

*Cohen v. Warner Chilcott Pub. Ltd. Co.*,
522 F.Supp.2d 105 (D.D.C. 2007) ................................................................... 15, 16

*In re Domestic Airline Travel Antitrust Litig.*,
322 F.Supp.3d 64 (D.D.C. 2018) ...................................................................... 22, 23

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, and "ERISA" Litig.*,
4 F.Supp.3d 94 (D.D.C. 2013) .......................................................................... 14-17

*Freeport Partners, L.L.C. v. Allbritton*,
2006 WL 627140, at *8 (D.D.C. Mar. 13, 2006) .................................................. 14

*In re Ampicillin Antitrust Litig.*,
82 F.R.D. 652 (D.D.C. 1979), 526 F.Supp. 494 (D.D.C. 1981)......................... 2, 14

*In re Baan Co. Secs. Litig.*,
284 F.Supp.2d 62 (D.D.C. 2003). .......................................................................... 15

*In re Newbridge Networks Sec. Litig.*,
1998 WL 765724, (D.D.C. Oct. 22, 1998).............................................................. 18

*In re Nifedipine Antitrust Litigation*,
335 F.Supp.2d 6, 14 (D.D.C. 2004) (Leon, J), Civil Case No. 03-MS-223, MDL No. 1515,
    (D.D.C. 2011) ( ........................................................................................ 2, 20, 21

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2011 WL 7575004, (N.D. Cal. Dec. 27, 2011) ...................................................... 20

*In re Urethane Antitrust Litig.*,
2016 WL 4060156, (D.Kan. July 29, 2016)............................................................ 20

*In re Vitamin C Antitrust Litig.*,
2012 WL 5289514, (E.D.N.Y. Oct. 23, 2012) ....................................................... 18

*In re Vitamins Antitrust Litig.*,
2000 WL 1737867, (D.D.C. Mar. 31, 2000), 305 F.Supp.2d 100, 104 (D.D.C. 2004)........... 15, 20

*In re Zynga Inc. Secs. Litig.*,
2015 WL 6471171, (N.D. Cal. Oct. 27, 2015).......................................................... 16

*Little v. Wash. Metro. Area Transit Auth.*,
 313 F.Supp.3d 27, 39 (D.D.C. 2018) ..................................................................... 21

*Mackmin v. Visa, Inc.*,
Case No. 11-cv-01831 (D.D.C. 2021), (D.D.C. 2024) ........................................ 7, 18

*Mayfield v. Barr,*
985 F.2d 1090, 1092 (D.C. Cir. 1993).........................................................................14
*National ATM Council, Inc. v. Visa Inc.,*
No. 11-cv-1803, 2023 WL 4743013 (D.C. Cir. July 25, 2023), No. 21-7109, 2023 WL 6319404,
  (D.C. Cir. Sept. 27, 2023), 144 S.Ct. 1381 (2024).......................................2, 4, 16
*Osborn v. Visa Inc.,*
797 F.3d 1057 (D.C. Cir. 2015).....................................................................................4
*Pigford v. Glickman,*
206 F.3d 1212, 1215 (D.C. Cir. 2000)..........................................................................14
*Radosti v. Envision EMI, LLC,*
717 F.Supp.2d 37 (D.D.C. 2010) ...........................................................................15, 16
*Richardson v. L'Oréal USA, Inc.,*
951 F.Supp.2d 104 (D.D.C. 2013) ..........................................................................14, 17
*Shaffer, et al. v. The George Washington Univ., et al.,*
Civil Case No. 20-1145 (D.D.C.) (RJL), (filed Dec. 12, 2023)...................................18
*Stephens v. US Airways Grp., Inc.,*
102 F.Supp.3d 222 (D.D.C. 2015) ...............................................................................18
*Thomas v. Albright,*
139 F.3d 227 (D.C. Cir. 1998)......................................................................................21
*Trombley v. National City Bank,*
826 F.Supp.2d, 179, 195 (D.D.C. 2011) ......................................................................18
*United States v. Dist. of Columbia,*
933 F.Supp. 42, (D.D.C. 1996) ....................................................................................14
*United States v. MTU Amer. Inc.,*
105 F.Supp.3d 60, 63 (D.D.C. 2015) ...........................................................................14
*Visa Inc. v. Nat'l ATM Council, Inc.,*
144 S. Ct. 1381, 218 L. Ed. 2d 443 (2024).................................................................16
*Visa Inc. v. Osborn,*
580 U.S. 993 (2016).......................................................................................................4
*Vista Healthplan v. Bristol-Myers Squibb Co., Inc.,*
266 F.Supp.2d 44, (D.D.C. 2003) ..........................................................................14, 17
*Vista Healthplan v. Warner Holdings Co. III, Ltd.,*
246 F.R.D. 349 (D.D.C. 2007).....................................................................................14
*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
396 F.3d 96  (2d Cir. 2005) ..........................................................................................23

**Statutes**

Sherman Act, 15 U.S.C. § 1.............................................................................................4

**Rules**

Fed R. Civ. P. 23(b)(3) .......................................................................................... 9, 10

Fed. R. Civ. P. 23(a) ............................................................................................. 9, 10

Fed. R. Civ. P. 23(b)(2) .......................................................................................... 9, 10

Fed. R. Civ. P. 23(c)(2)(B) ........................................................ . . . 13, 22, 23, 24

Fed. R. Civ. P. 23(e)(2)(A – D) ................................................................... ..19, 20

Fed. R. Civ. P. 23(c)(1)(B) ................................................................................. ..22

## Introduction And Summary

Plaintiffs Peter Burke, Marin Heiskell, Kent Harrison and Bryan Byrnes ("Plaintiffs"), by and through Court-appointed co-lead counsel[1], on their own behalf and on behalf of all others similarly situated, respectfully submit this memorandum in support of their Motion for preliminary approval of a settlement ("Settlement") with the Visa and Mastercard Defendants (collectively, the "Defendants").[2] As part of the proposed Settlement, Visa and Mastercard have agreed to provide cash consideration totaling $167,500,000 to a Settlement Fund. The proposed Settlement, if finally approved, will resolve all of Plaintiffs' claims and bring to a close the (currently) almost fourteen years of vigorously contested litigation.

This litigation began with the filing of a class action complaint in 2011 and its initial dismissal, with prejudice. The litigation subsequently has included two successful (for Plaintiffs) trips to the Circuit, one reversing the initial dismissal and the other affirming this Court's grant of class certification, and one (successful for Plaintiffs) trip to the United States Supreme Court dismissing a grant of *certiorari*. Following extensive fact and expert discovery, earlier this year the parties exchanged final merits expert reports from nine separate experts.

After all the foregoing, the settlement was negotiated, strictly at arms-length, by the parties during a four-month mediation process supervised by one of the nation's leading mediators (the Honorable Layn Phillips (ret.)). The $167,500,000 Settlement amount represents between 9.76% of Plaintiffs' economist's high estimate and 20.35% of his low estimate of the

---

[1] On January 27, 2017, the Court appointed Plaintiffs' counsel, Finkelstein Thompson LLP and Lovell Stewart Halebian Jacobson LLP, as Co-Lead Counsel. ECF 60. On January 27, 2017, the Court appointed Co-Lead Counsel as Class Counsel for the certified Class. Id.

[2] The Visa Defendants are Visa Inc.; Visa U.S.A. Inc.; Visa International Service Association; and Plus System, Inc. The Mastercard Defendants are Mastercard Incorporated and Mastercard International Incorporated. The Settlement Agreement is attached as Ex. A to the Declaration of Christopher Lovell and Douglas Thompson ("JT.Atty. Decl.").

single non-trebled damages suffered by Class members.[3] In Co-Lead Counsel's judgment, this constitutes an excellent result in light of the risks of continued prosecution.

Such risks include whether the Defendants' challenged conduct (a) was anticompetitive or procompetitive, and (b) constituted an antitrust violation. If so, did the *Burke* Class members suffer antitrust injury from such alleged violation? If so, are the damages asserted by the *Burke* Class members recoverable by the *Burke* Class *or* by the alleged unnamed co-conspirators? These alleged co-conspirators are the independent automatic teller machine operator ("IATM") plaintiffs suing in the companion case of *NAC, et al. v. Visa, et al.*, Civil Action No. 1:11-cv-1803-RJL (D.D.C.). Among many other issues, it is an open question in this Circuit whether a claim predicated on a "co-conspirator" exception to the *Illinois Brick* direct-purchaser rule, causes antitrust injury to the plaintiff dealing only with the co-conspirator. *In re Nifedipine Antitrust Litigation,* 335 F.Supp.2d 6, 14 (D.D.C. 2004) (Leon, J) (declining to decide the co-conspirator exception). If the *Burke* Plaintiffs' claims survived, Defendants would have argued during trial to the trier of fact that either *Burke* or the IATM Operators may have a claim, but both cannot and/or that the amounts of any damages to the *Burke* Class members were speculative and uncertain.

Accordingly, Plaintiffs respectfully request that this Court issue an order: (1) granting preliminary approval to the Settlement; (2) provisionally certifying the proposed Settlement Class; (3) instructing that notice of the Settlement be disseminated to the proposed Settlement Class; (4) approving the proposed manner and form of notice; (5) appointing plaintiffs Peter Burke, Kent Harrison, Marin P. Heiskell and Bryan Byrnes as lead plaintiffs and class

---

[3] *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (the reasonableness of settlements in antitrust claims are compared to single damages);

representatives for the purpose of disseminating notice; (6) appointing Finkelstein Thompson

LLP and Lovell Stewart Halebian Jacobson LLP as Settlement Class Co-Lead Counsel; (7)

authorizing retention of A.B. Data, Ltd. as Settlement Administrator; and (8) scheduling a final

approval hearing to determine whether the Settlement is fair, reasonable, and adequate under

Rule 23(e)(2) and whether the proposed Settlement Class should be certified (the "Final Fairness

Hearing").

### A. Overview of Settlement and Alleged Antitrust Claims.

*Burke* Plaintiffs and Defendants have executed a Settlement Agreement that provides that

Defendants will pay a total of $167.5 million in cash to a Settlement Fund. The Net Settlement

Fund, including accrued interest and minus Court-approved costs and fees, including expert fees,

Settlement Administrator fees and attorneys' fees, will be used to pay valid claims for monetary

damages submitted by eligible class members. Payments will be distributed to the Settlement

Class members *pro rata* in accordance with each claiming Settlement Class member's number of

qualifying transactions. The proposed Settlement will resolve all of the *Burke* Class's claims

against the Defendants and bring to an end fourteen years of hard-fought litigation (including

two trips to the Court of Appeals and one trip to the U.S. Supreme Court) by providing

reasonable compensation to claiming Class members.  See Section I. J. below.

Class Plaintiffs have alleged that Defendants Visa and Mastercard participated in an

unlawful conspiracy to restrain trade, pursuant to which such Defendants and their co-

conspirators  agreed to so-called Non-Discrimination Rules that restrained competition in the

setting of surcharges by independently owned, non-bank ATMs and caused higher surcharge

prices to be paid as ATM Access Fees (as defined herein) by Settlement Class members in

violation of the Sherman Act, 15 U.S.C. § l, et seq. as well as certain state antitrust, restraint of trade, consumer protection, and unfair competition laws.

### B. Initial Dismissal of Claims by District Court.

This action is now fourteen years old. The first *Burke* complaint, styled *Stoumbos v. Visa, Inc. et al.*, was filed on October 24, 2011. (Dkt. No. 1) The *Stoumbos* case was consolidated with what became the *Mackmin* case (*Barton v. Visa Inc.*, No. 11-cv-1831) ("*Mackmin*") and the IATM Operator case (*National ATM Council, Inc. v. Visa Inc.*, No. 11-cv-1803). ("NAC"). On February 13, 2013, Judge Jackson granted Defendants' motion to dismiss all three consolidated complaints. (Dkt. No. 26, 27) Following denial of motions for leave to amend (Dkt. No. 36, 37), plaintiffs in the consolidated cases appealed.

#### 1. Reversal Of Dismissal by the Circuit

On August 4, 2015, the D.C. Circuit Court of Appeals reversed the dismissal of the cases and on October 23, 2015, remanded to the District Court. See *Osborn v. Visa Inc.*, 797 F.3d 1057 (D.C. Cir. 2015); (Dkt. No. 42.). On August 4, 2015, the case was reassigned to Judge Richard J. Leon. (Dkt. No. 40.)

#### 2. Grant, but Then Dismissal of *Certiorari* by the Supreme Court

Defendants successfully petitioned for a *writ of certiorari* to the Supreme Court. See *Visa Inc. v. Osborn*, 580 U.S. 993 (2016) (Mem.). Subsequently, the Supreme Court granted Plaintiffs' motion to dismiss the appeal on the ground that the original writ had been improvidently granted. *Id.* Between July 21, 2016, and November 26, 2017, the consolidated cases were stayed during the pendency of the Supreme Court review.

### C. Discovery

On January 18, 2017, the Court appointed Finkelstein Thompson LLP and Lovell Stewart Halebian Jacobson LLP as Co-Lead Counsel for the *Burke* Class. (Dkt. No. 60.)  On June 12, 2019, the current four named *Burke* Class Plaintiffs intervened, substituted for Plaintiff Stoumbos as class representatives, and filed a Fourth Amended Complaint. (Dkt. Nos. 101 and 102.)

Once the stay was lifted, an extensive period of discovery commenced. *Burke* Plaintiffs' discovery efforts included interrogatories and document requests to Defendants for written documents, communications, and ATM transactional databases; subpoenas to third parties for documents and transactional data, and review of discovery materials obtained and produced by other plaintiff groups. Meet and confers and negotiations over the scope and completeness of document and data productions required numerous telephonic and written communications. *Burke* Co-Lead Counsel attended multiple meet and confer sessions with Defendants' counsel and regularly attended the Court's periodic discovery management conferences. See, e.g., Minute Orders dated 3/21/2018, 6/22/2018 and 7/17/2018. Defendants and 12 subpoenaed third parties collectively produced over 600,000 documents.  Plaintiffs also received and their experts analyzed over two terabytes of transactional data contained in nearly 10,000 files from Defendants, from other payment networks, from IATM operators and processors, and from Wells Fargo bank. In all, Plaintiffs analyzed nearly 9 billion rows of data at the record level, nearly 6 billion of which were produced by Visa and Mastercard.  JT.Atty. Decl. ¶¶ 10.

Over the course of several years, *Burke* Class Co-Lead Counsel supervised and directed outside economic consulting and data experts in collecting, inputting and analyzing the transactional data which took many months to complete. Id.

*Burke* Counsel participated in 54 fact and 30(b)(6) depositions, including the depositions of two Defendant class certification experts, two *NAC* class certification experts, one *Mackmin* class certification expert, and defended the depositions of the *Burke* named class representatives and of *Burke* class certification expert Dr. William Lehr.  Id. ¶ 11.

### D.   Grant of Class Certification.

On September 20, 2019, *Burke* Plaintiffs filed their motion for class certification and served Dr. Lehr's supporting expert report. (Dkt. No. 111.) Defendants filed their consolidated opposition to the class certification motions on February 2, 2020 supported by two expert reports. (Dkt. No. 128.) On August 4, 2021, the Court granted the motions for class certification of all three of the consolidated cases. (Dkt. Nos. 155, 158.)

### E.   Grant of Interlocutory Appeal, and Affirmance of Class Certification by the Circuit.

Defendants petitioned for permission to file an interlocutory appeal from the class certification orders pursuant to Fed. R. Civ. P. 23(f), which the D.C. Circuit Court of Appeals granted on October 1, 2021. Dkt. No. 165. On Appeal, the D.C. Circuit affirmed all three class certifications in a judgment dated July 25, 2023. *Nat. ATM Council, Inc. v. Visa Inc.*, 2023 WL 4743013 (D.C. Cir. July 25, 2023)

### F.   Supreme Court Denies *Certiorari*.

The Defendants petitioned the Supreme Court for *certiorari*, which was denied on April 15, 2024.  *Nat. ATM Council, Inc. v. Visa Inc.*, 144 S.Ct. 1381 (2024).  Since at least the denial of *certiorari* by the U.S. Supreme Court, Co-Lead Counsel have also been Court appointed Co-

Lead Counsel for the certified Class and continue to be Co-Lead Counsel for the settlement Class.

### G.  The *Mackmin* Case Settles After This Circuit's Affirmance of Class Certification.

After the petition for *certiorari* was denied, the *Mackmin* Plaintiffs reached an agreement with the Defendants to settle the *Mackmin* claims. See Motion For Preliminary Approval, *Mackmin v. Visa, Inc.*, Case No. 11-cv-01831, Docket No. 288, Filed 05/29/2024. As is related below, *Burke* Plaintiffs explored settlement with Defendants but were unable to make any progress until after the parties had exchanged nine merits expert reports, and an extended mediation process had occurred.

### H.  The Parties Complete Discovery and Exchange Final Merits Reports by Nine Separate Experts.

In 2024, the Defendants made additional productions of ATM transaction data to update their prior data productions from 2017 to year-end 2023. Based on the additional six years of ATM transaction data, Dr. Lehr refined and increased his estimates of class wide damages. Pursuant to the Court's scheduling order, by May 19, 2025, the plaintiffs completed the exchange of trial expert merits reports by serving Dr. Lehr's rebuttal report and two additional expert rebuttal reports to respond to specific data analyses, consumer behavior, marketing, and other opinions and contentions raised in Defendants' six lengthy opposition expert reports. Defendants' expert reports challenged  material aspects of the Class's claims, including, without limitation, direct challenges to Plaintiffs' contentions (a) that Defendants' operating rules are price fixing agreements, (b) that such rules have no pro-competitive justification, (c) that Defendants engaged in a conspiracy, (d) that the foregoing proximately caused injury and damages to *Burke*

Class members, (e) the amount of any such injury and damages, and (f) numerous other contentions. In total, *Burke* prepared and served four merits expert reports, including three rebuttal reports. Depositions of the parties' experts were scheduled to begin during July 2025. JT.Atty. Decl. ¶¶ 16.

## I.    The Parties Mediate and Agree, Prior to the Beginning of Merits Expert Depositions, to Settle.

The *Burke* $167.5 million Settlement was negotiated at arms-length during a four-month mediation process before one of the most credentialed, and in-demand, private mediators, former United States Attorney and Federal District Judge Layn Phillips (Ret.). See Judge Phillips CV, JT.Atty. Decl. Ex. B.  *Burke* Co-Lead Counsel and Defendants' counsel had engaged in preliminary settlement discussions during the history of the case without progress. After the April 2024 Supreme Court denial of *certiorari* and after the *Burke* Plaintiffs' September 2024 service of Dr. Lehr's detailed opening merits report on behalf of the *Burke* Plaintiffs, *Burke* and Defendants renewed settlement discussions. By January 2025 the parties agreed to mediate. After all mediation briefing and the Mediator's pre-mediation conferences with the parties had ended, the *Burke* Plaintiffs and Defendants mediated in person on July 10, 2025 at Judge Phillips' offices.

In preparation for the mediation, the parties exchanged various position papers presenting each party's arguments and responses. The parties also responded to numerous issues and questions posed by the mediator. By the time the mediation began, *Burke* Plaintiffs had made three written submissions and engaged in hours of communications with the mediator and his assistants concerning the strengths and weaknesses of Plaintiffs' claims and Defendants'

defenses. By August 22, 2025, the Parties had executed the formal Settlement Agreement calling

for $167,500,000 to be paid by Defendants. See JT.Atty. Decl. Ex. A.

### J.  Highlights of the Settlement Agreement

#### 1.  Cash Payment to Settlement Fund and Release of Claims

The Settlement Agreement provides that "within twenty-one (21) business days following

entry of the Preliminary Approval Order… Defendants shall cause the payment of

$167,500,000.00 to be wired to the Escrow Agent as follows: (i) the Visa Defendants shall cause

the payment of 53% of the Settlement Amount (i.e., $88,775,000.00) to be transferred to the

Escrow Agent, and (ii) the Mastercard Defendants shall cause the payment of 47% of the

Settlement Amount (i.e., $78,725,000.00) to be transferred to the Escrow Agent, in accordance

with Visa Defendants' and the Mastercard Defendants' agreement among themselves regarding

their respective shares" for the Settlement Fund. JT.Atty. Decl., Ex. A, § XII (b). The Defendants

will also assist in the settlement administration process. JT.Atty. Ex. A, § X (a). In exchange for

this consideration, the claims will be dismissed with prejudice, and members of the proposed

Settlement Class will release the Defendants from any and all claims that were or could have

been alleged in this Action. See JT.Atty. Decl. Ex A, §§ II (gg, hh), IX.

#### 2.  Stipulated Settlement Classes

The Settlement stipulates to certification of a Nationwide Settlement Class and four

statewide Settlement Classes, which are substantively identical to the litigation classes

previously certified by the Court. Section III(a) of the Settlement Agreement provides:

#### a.  Nationwide Class

The Parties hereby stipulate solely for settlement purposes that the requirements of Fed.
R. Civ. P. 23(a), Fed. R. Civ. P. 23(b)(2), and Fed R. Civ. P. 23(b)(3) are satisfied and,

subject to Court approval, the following Nationwide Settlement Class shall be certified as to Visa Defendants and Mastercard Defendants solely for settlement purposes: 'All persons in the United States who, between October 24, 2007, and the date of the Preliminary Approval Order, were charged an Access Fee for a domestic cash withdrawal transaction at an Independent ATM and who were not fully reimbursed by their bank. A domestic cash withdrawal transaction is a transaction to withdraw cash from a customer's deposit account using an ATM or pin-debit card at an Independent ATM terminal located within the United States, including its Territories. It does not include any credit card transaction or any transaction involving a cash advance or prepaid card.' Excluded from the Class are Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action, and the members of his/her immediate family and judicial staff, and any juror assigned to this action. The Settlement Class shall not include members or putative members of the Class that timely and validly elect to be excluded from the Settlement Class.

JT.Atty. Decl., Ex. A, III(a). Section III(b) of the Settlement Agreement provides:

### b. Statewide Settlement Classes

The Parties hereby stipulate solely for settlement purposes that the requirements of Fed. R. Civ. P. 23(a), Fed. R. Civ. P. 23(b)(2), and Fed R. Civ. P. 23(b)(3) are satisfied and, subject to Court approval, the following Statewide Settlement Classes shall be certified as to Visa Defendants and Mastercard Defendants solely for settlement purposes: four separate statewide classes for injunctive relief and damages pursuant to the laws of the states of California, Illinois, Massachusetts, and Michigan, each defined identically to the Nationwide Class except that each statewide class is limited to persons who were charged an Access Fee at an Independent ATM located in the respective state.

JT.Atty. Decl., Ex. A, III(b).

### 3. Option to Terminate

The Settlement Agreement further provides that Visa or Mastercard may terminate the Settlement if 6,000,000 potential members of the Settlement Classes timely and validly exclude themselves. JT.Atty. Decl., Ex. A, § XV(b).

### K. The Proposed Class Notice Plan

The proposed Settlement Administrator, A.B. Data, Ltd., has designed a comprehensive notice plan that includes proposed class notices and a sample claim form. See attached Pang Decl., and Ex. C (Short-Form Notice), D (Long-Form Notice), E (Digital Ads), and F (Claim Form). The notice plan closely tracks the previous notice plans that A.B. Data designed and implemented, and the Court approved, in connection with two prior *Mackmin* settlements, first with the Bank of America, Chase and Wells Fargo defendants and more recently with Visa and Mastercard. A.B. Data's proposed plan provides notice by a combination of direct email notice, digital media, social media, and national print and earned media to efficiently reach members of the proposed Settlement Class. Pang Decl. ¶¶ 6-42.

For direct notice, A.B. Data will prepare and send notice via email to potential members of the Settlement Class, whose information, including email addresses, has been collected by A.B. Data during the course of the two previous *Mackmin* notice and claims processes. Pang Decl., ¶¶ 6-9. The email addresses will only be used for authorized purposes of notice to the proposed Settlement Class and shall otherwise be kept strictly confidential. The direct email Short-Form Notice is attached to the Pang Declaration. See ¶ 11, Ex. C. The more detailed long-form notice will be available for download on the case-specific website ("Long-Form Notice"). *Id.*, ¶ 12, Ex. D.

The notice plan also includes targeted digital banner and newsfeed ads to be placed on websites and applications across multiple devices, including desktop, tablet, and mobile devices. The digital and social media campaign includes a variety of campaign optimization techniques such as banner ads in Spanish on websites specifically serving Spanish speakers. *Id.*, ¶¶ 23-37. Examples of the digital ads that will be used to target members of the Settlement Class are attached to the Settlement Administrator's declaration. Pang Decl. Ex. E. The digital and social

11

media ad campaign will run for 60 days to ensure ample time to deliver the targeted impressions and drive potential members of the proposed Settlement Class to the case website. *Id.*, ¶ 28. Internet advertising allows potential Class Members to click on a banner advertisement ("banner ad") and instantly be directed to the case-specific website to obtain additional information about their rights. Social media provides an opportunity to seamlessly share ads and information with their family, friends, community, and related social networks. Impressions served to social-media users can be highly targeted, specifically reaching those who have expressed an interest in information relevant to the case.

All digital and social media ads will include images appropriate for this case and an embedded link to the case-specific website to increase the ad visibility and click-through rate. Banner and newsfeed ads will be placed in premium positions, so they are easily seen when viewers first open the website page or application. Sample banner ads are attached to the Pang Decl. as Exhibit E.

To reach members of the proposed Settlement Class, as well as those who may be infrequent users of digital and social media, the Short-Form Notice will be published in *People* magazine. Id., ¶ 38. A.B. Data also will disseminate a news release via *PR Newswire's* US1 Newsline distribution list to announce the Settlement. The news release will be translated and published to *PR Newswire's* U.S. Hispanic media contacts and Hispanic news websites. News about the Settlement will also be sent via Twitter to the followers of *PR Newswire* and A.B. Data. *Id.*, ¶¶ 39-40.

A.B. Data will establish a case-specific toll-free telephone number and will use the same kind of case-specific website that was used for the Bank Defendant settlements. Id., ¶¶ 41-42. Both will be used to communicate with potential members of the proposed Settlement Class and

assist them in understanding the terms of the Settlement and their rights. The case website will serve particularly important purposes. The Long-Form Notice, which contains a detailed summary of the terms of the Settlement, will be posted prominently. The website will also provide, among other things, a summary of the case, relevant documents, important dates, and any pertinent updates concerning the litigation or the settlement process. Id., ¶ 42.

As explained in the notice documents, members of the proposed Settlement Class will be able to submit their claims on the case website, which, we expect will be the primary way claims are made. Id., ¶¶ 42, 44. The proposed Claim Form is attached as Ex. F to the Pang declaration. Id., ¶44. A portion of the settlement funds will be used toward notice and administration costs. JT.Atty. Decl., Ex. A § XII (e)(ii).

Settlement funds will be distributed *pro rata* based on the number of qualifying surcharge transactions shown on valid claim forms submitted by eligible claimants. Pang ¶ 44. Digital payment options, such as PayPal or a virtual debit card, will provide Settlement Class Members with convenient access to their settlement funds while greatly reducing the transaction costs associated with mailing paper checks to millions of claimants. *Id*., ¶49. Claimants also will have the option to request and receive a paper check. *Id.*

The class notice forms are plain and easy to understand and contain all of the information required by Rule 23(c)(2)(B). The notice plan is the best practicable in the circumstances, and experience from the notice plans used for the two prior *Mackmin* settlements demonstrates that it can be successfully implemented. Pang ¶¶ 3, 51.

### Argument

### A.  The Court Should Preliminarily Approve the *Burke* Class Action Settlement.

The *Burke* Settlement satisfies the fairness standard and all other Rule 23 requirements for preliminary approval of a settlement class for the purpose of disseminating notice to the class. *See, e.g., Pigford v. Glickman*, 206 F.3d 1212, 1215 (D.C. Cir. 2000); *United States v. Dist. of Columbia*, 933 F.Supp. 42, 46-47 (D.D.C. 1996). The preliminary fairness question asks whether the settlement is "sufficiently within the range of reasonableness so that notice of the propose[d] settlement[s] should be given." *Vista Healthplan v. Bristol-Myers Squibb Co., Inc.*, 266 F.Supp.2d 44, 44 (D.D.C. 2003); see *also Richardson v. L'Oréal USA, Inc.*, 951 F.Supp.2d 104, 106 (D.D.C. 2013); *In re Ampicillin Antitrust Litig.*, 526 F.Supp. 494, 496 (D.D.C. 1981).

The D.C. Circuit favors settlements to avoid the costs, delays, and risks of continued litigation. *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, and "ERISA" Litig.*, 4 F.Supp.3d 94, 102, 105 (D.D.C. 2013) (noting the "long-standing judicial attitude favoring class action settlements" (quoting *Vista Healthplan v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 357 (D.D.C. 2007)); and that even "if plaintiffs had succeeded at trial—which likely would have involved a costly "battle of the experts"—an appeal likely would have followed, further delaying any recovery for the class members."); *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993); *United States v. MTU Amer. Inc.*, 105 F.Supp.3d 60, 63 (D.D.C. 2015); *Freeport Partners, L.L.C. v. Allbritton*, 2006 WL 627140, at *8 (D.D.C. Mar. 13, 2006).

**B.  The Settlement Satisfies the Relevant Fairness Factors.**

At the final approval stage, Courts in this Circuit have employed five factors to evaluate the fairness of a proposed class settlement: (1) the arms-length nature of the negotiations; (2) the terms of the settlement in relation to the strength of the case; (3) the stage of the litigation; (4) the reaction of the class; and (5) the opinion of experienced counsel. *Fed. Nat'l Mortg.*, 4 F.Supp.3d 94 at 102 (Leon, J.) ("The Court must consider the particular facts and circumstances

14

of the case, but generally courts in our Circuit have considered the following factors in making this determination: (a) whether the settlement is the result of arms-length negotiations; (b) the terms of the settlement in relation to the strength of [plaintiffs'] case; (c) the stage of the litigation proceedings at the time of settlement; (d) the reaction of the class; and (e) the opinion of experienced counsel.") (citation and internal quotation omitted); *e.g., Abraha v. Colonial Parking, Inc.*, 2020 WL 4432250, at *7 (D.D.C. July 31, 2020); *Radosti v. Envision EMI, LLC*, 717 F.Supp.2d 37, 54 (D.D.C. 2010) (citing *In re Vitamins Antitrust Litig.*, 305 F.Supp.2d 100, 104 (D.D.C. 2004)("*Vitamins II")*); *In re Baan Co. Secs. Litig.*, 284 F.Supp.2d 62, 64 (D.D.C. 2003).

### 1. Arms-Length Negotiations and Mediation

In granting approval to a class settlement several years ago, this Court stated that "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Fed. Nat'l Mortg.*, 4 F.Supp.3d 94 at 102 (Leon, J.) (quoting *Vitamins II*, 305 F.Supp.2d at 104) (quoting Manual for Complex Litigation (Third), § 30.42 (1995)). The Court further stated that "[t]he opinion of experienced counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Id.* at 107 (internal quotation marks and citation omitted); *accord Cohen v. Warner Chilcott Pub. Ltd. Co.*, 522 F.Supp.2d 105, 121 (D.D.C. 2007). Here, *Burke* Co-Lead Counsel and Defendants' counsel are highly skilled and experienced antitrust class action lawyers. Only after all fact and class certification discovery was complete and the parties had exchanged their merits expert reports, did the parties engage in meaningful settlement discussions. The negotiations were aided by former federal district court judge Hon. Layn Phillips, who assisted the parties in a successful mediation.

15

Leading up to the mediation, *Burke* Co-Lead Counsel were well-informed of the relevant facts through the extensive discovery and frequent consultations with several top economic and data experts. *Burke* Counsel were knowledgeable of the liability and damages legal issues and the strengths and weaknesses of each parties' positions on those issues as a result of the briefing of two appeals that ended in the denial of petitions for *certiorari* to the Supreme Court. Co-Lead Counsel have decades of combined experience litigating complex antitrust and commodities cases and have negotiated settlements in a wide range of cases. This Court has stated that "[t]he opinion of experienced counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Fed. Nat'l Mortg.*, 4 F.Supp.3d at 107 (Leon, J.); *see also Radosti*, 717 F.Supp.2d at 56; *Cohen*, 522 F.Supp.2d at 121. The arms-length nature of the settlement mediation, preceded by the exchange of several mediation position statements and conducted by one of the nation's top mediators, strongly supports preliminary approval. See *In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (use of mediator "support[ed] the conclusion that the Plaintiff was appropriately informed in negotiating a settlement").

### 2.  The Settlement is Well Within the Range of What May be Found to be Reasonable at the Final Approval Stage.

The *Burke* Plaintiffs pleaded sufficiently cogent fact allegations and, later, developed sufficient evidence, and sufficiently cogent legal support to sustain (ultimately) both the legal validity of the claims here and to carry their evidentiary burdens of proof on each and every element of class certification. *Nat'l ATM Council, Inc. v. Visa Inc.,* No. 21-7109, 2023 WL 6319404, at *1 (D.C. Cir. Sept. 27, 2023) *cert denied by Visa Inc. v. Nat'l ATM Council, Inc.,* 144 S. Ct. 1381, 218 L. Ed. 2d 443 (2024). The *Burke* case, while cogently presented and organized,

is nonetheless subject to considerable risk due to unsettled issues of fact and law, any one of which could have derailed the case and resulted in no recovery whatsoever. Such outcome could have occurred at the summary judgment stage, at trial, post-trial, or on appeal. The Settlement value of $167.5 million is, at a minimum, within the range of what may be found at the final approval stage, to be a reasonable settlement of the *Burke* claims.

*Burke* expert Dr. Lehr presented low, middle and high damages estimates: $823.23 million; $1.364 billion; and $1.716 billion. See JT.Atty. Decl. ¶ 19. The $167.5 million cash settlement with the Defendants represents 20.35% of Dr. Lehr's low class damage estimate ($823.23 million), and 9.76% of Dr. Lehr's high damage estimate ($1.716 billion). *Id.*, ¶ 19. Co-Lead Counsel will argue at the final approval hearing that the proposed Settlement provides a very reasonable and beneficial outcome for the Class, especially in light of the relative strengths of the claims and the risks of continued prosecution of such claims. *See Fed. Nat'l Mortg.,* 4 F.Supp.3d at 104 (Leon, J) (the "touchstone of the inquiry" into the reasonableness of the settlement will be "an evaluation of the terms of the **settlement** in relation to the strength of the plaintiffs' claims in *this* particular case.") (italics in original and emphasis supplied) (approving as reasonable a settlement in an amount that constituted 4-8% of the estimated damages).

At this stage, however, the relevant question is whether the proposed settlement is within a range which may be found at the final approval hearing to be reasonable. *Richardson,* 951 F.Supp.2d at 106; *Vista Healthplan v. Bristol-Myers Squibb,* 266 F.Supp.2d at 44 (D.D.C. 2003). *Burke* Plaintiffs respectfully submit that the proposed $167.5 million settlement clearly falls within that range.[4]

---

[4] "Courts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; but an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk

17

### 3. The Stage of the Litigation

At the time the Settlement was negotiated, fact discovery was complete, trial expert reports from nine expert witnesses had been exchanged, and depositions of the experts were about to start. The *Burke* Class had been certified for litigation under Rules 23(a) and (b) and had been victorious on two appeals. However, summary judgment, pre-trial motions, a trial, post-trial motions, and potential appeals to the Circuit and perhaps the Supreme Court were all on the horizon and serious risks were posed at each stage.

Assured and speedy payment of a nine figure settlement amount is of considerable value to the Class given the known and unknown risks of delayed recovery, and possibly no recovery at all, that lie strewn along the path of continued litigation. See *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012); *Stephens v. US Airways Grp., Inc.*, 102 F.Supp.3d 222, 227 (D.D.C. 2015); *Trombley v. National City Bank*, 826 F.Supp.2d, 179, 195 (D.D.C. 2011).

### 4. The Reaction of the Class.

The reaction of the *Burke* Class to the Settlement will be presented to the Court after the notice period in connection with the hearing for final approval.

---

that no recovery at all will be won, seems to be within the targeted range of reasonableness." *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 22, 1998) (settlement of $4.3 million, with interest earned, constituted gross settlement fund, from which taxes, costs, and attorneys' fees and expenses would be deducted, leaving net settlement fund to be distributed to class members); *Mackmin v. Visa* Dkt. No. 252, Oct. 12, 2021 (The Court finds that it is "likely to approve the Settlement as fair, reasonable, and adequate pursuant to Rule 23(e)(2), subject to further consideration at a hearing (the "Fairness Hearing")"); *Shaffer, et al. v. The George Washington Univ., et al.*, Civil Case No. 20-1145 (D.D.C.) (RJL), Dkt. No. 67, ¶¶4 (filed Dec. 12, 2023) (preliminary approval order conditionally certifying settlement class pursuant to Rule 23(b)(3), finding, *inter alia*, settlement agreement, providing for payment of $5.4 million, "[t]he Court finds that, subject to the Final Approval Hearing, the Settlement Agreement is fair, reasonable, and adequate, within the range of possible approval, and in the best interests of the Settlement Class"), 2024 WL 3280061, at *2 (granting final approval) (Leon, J.).

### 5.  The Opinion of Experienced Counsel.

*Burke* Co-Lead Counsel are experienced antitrust and class action attorneys. They have successfully navigated the Class through two appeals by Defendants to the D.C. Circuit and two *certiorari* petitions to the Supreme Court. Their opinion is that the Settlement is a reasonable result for the Class.

### C.  Rule 23(e) is Satisfied.

Rule 23 (e) contains special requirements for certification of a settlement class. Rule 23(e)(1)(B) provides for preliminary approval and notice to a settlement class, upon a "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2)." Rule 23(e)(2) contains a list of considerations as to whether a proposed class settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2)(A – D):

> whether (A) "the class representatives and class counsel have adequately represented the class"; (B) "the proposal was negotiated at arm's length"; (C) "the relief provided for the class is adequate"; and (D) "the proposal treats class members equitably relative to each other."

These Rule 23(e)(2) considerations are similar to the five factors discussed above and used in this Circuit. *See, e.g., Abraha,* 2020 WL 4432250, at *7. The considerations of adequate representation, arms-length negotiations, and adequacy of relief have already been addressed above. With regard to the treatment of class members equitably, the claim plan calls for distribution of timely and valid claims on a *pro rata* basis based on the number of approved IATM transactions submitted by claimants.

Rule 23(e)(2)(C) also lists additional considerations:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

19

Fed. R. Civ. P. 23(e)(2)(C)(i-iv).

As developed earlier, the *Burke* Class would incur substantial additional costs if it were to continue to litigate actively, including costs of expert work, data and vendor work, and other litigation costs. The delays involved in going through the expert depositions, summary judgment briefing, pre-trial and trial work, and appeals, may be expected to be very substantial given the 14-year history of the case and Defendants' consistent assertion of all rights that they have.

The effectiveness of the proposed method of distributing relief to the class, including the method of processing class-member claims, are discussed in the sections relating to the notice plan. The filing and processing of claims will take place online through the settlement website and, alternatively, by mailing paper claim forms. Pang Decl. ¶ 44-45. *Burke* Plaintiffs propose to treat class members equitably relative to one another by distributing the settlement funds *pro rata* based on the number of approved IATM transactions submitted by claimants. See Pang Decl., ¶ 44. See *In re Vitamins Antitrust Litig.*, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000)); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *4 (N.D. Cal. Dec. 27, 2011).

As to attorneys' fees, the proposed Short-Form and Long-Form Notices (Pang Decl. Ex. C, D) state that counsel will request up to 30% of the common settlement fund for payment of attorneys' fees. *See, e.g., In re Nifedipine Antitrust Litigation,* Civil Case No. 03-MS-223, MDL No. 1515, (D.D.C.) Dkt. No. 333 (filed Jan. 31, 2011) (Leon, J) (order awarding 33% to class counsel); *Bynum v. Dist. of Columbia*, 412 F.Supp.2d 73, 81 (D.D.C. 2006) (awarding 1/3 (33.3%) of settlement funds in attorneys' fees); *see also In re Urethane Antitrust Litig.*, 2016 WL 4060156, at *6-8 (D.Kan. July 29, 2016) (awarding 33.33% fee from common fund).  In addition, Co-Lead Counsel will seek reimbursement of litigation costs, including expert fees that counsel has advanced and other litigation expenses. Co-Lead Counsel will file a motion for

attorneys' fees, costs, and service awards, specifying the amount requested, which will be posted on the case website, so that members of the proposed Settlement Class can review and respond if they wish to do so.

Plaintiffs also plan to request service awards for the class representatives of up to $17,500 per award. "Courts routinely compensate named plaintiffs for the services provided and the risks incurred during class action litigation." See *Little v. Wash. Metro. Area Transit Auth.*, 313 F.Supp.3d 27, 39 (D.D.C. 2018); *In re Nifedipine Antitrust Litigation,* Civil Case No. 03-MS-223, MDL No. 1515, (D.D.C.) Dkt. No. 333 (filed Jan. 31, 2011) (Leon, J) ($60,000 award for each class representative). Plaintiffs will request the service awards in a motion for attorneys' fees, costs, and service awards.

### D.  Rules 23(a) and (b) are Satisfied.

Rule 23(e) also requires the Court to determine whether it is likely to certify the settlement class under Rule 23 "for purposes of judgment on the proposal." See Fed. R. Civ. P. 23(e)(1)(B)(ii); *see also Thomas v. Albright*, 139 F.3d 227, 234 (D.C. Cir. 1998). Here, the Court has already certified the *Burke* Class for litigation purposes under Rules 23(a) and 23(b). See Dkt. Nos. 155, 158.)  Thus, this Court has already determined that the *Burke* Class meets all of the requirements of Rule 23(a) - numerosity, commonality, typicality, and adequacy of representation - as well as the 23(b)(2) and 23(b)(3) requirements. See Dkt. Nos. 155, 158.  And the Court's class certification order has been upheld in full on appeal. There have been no material changes in the relevant facts or law, or the *Burke* class definition, to warrant revisiting the prior class certification decision.

### E.  The Court Should Appoint Finkelstein Thompson LLP and Lovell Stewart Halebian Jacobson LLP as Settlement Class Co-Lead Counsel.

Rule 23(c)(1)(B) states that "[a]n order that certifies a class action . . . must appoint class counsel under Rule 23(g)." The Court has already appointed Finkelstein Thompson LLP and Lovell Stewart Halebian Jacobson LLP as Co-Lead Counsel for the certified *Burke* litigation class and held that they satisfied Rule 23(g)(1)(A).[5] Dkt. No. 158. The same two co-lead firms have successfully litigated the case to this juncture and have negotiated a beneficial settlement for the class. They should continue as co-lead counsel for the purpose of guiding the *Burke* Settlement Class through class notice and final approval.

### F.  The Court Should Approve the *Burke* Proposed Class Notice Plan and Case Schedule.

The *Burke* notice plan is multifaceted, combining publication with direct notice by email, Fed R. Civ. P. 23(c)(2)(B). Millions will be reached by publication in digital and print media. In *In re Domestic Airline Travel Antitrust Litig.*, 322 F.Supp.3d 64, 68-72 (D.D.C. 2018), the court endorsed a notice plan that combined publication notice with notice by email. This Court approved the two prior *Mackmin* notice plans that used combined email and multi-media publication notice. As in *Domestic Airline*, the use of direct email is the best notice practicable "considering that the e-email notifications will be supplemented by publication through print and media outlets and numerous websites, databases and online services." *Domestic Airline*, 322 F.Supp.3d at 72.

---

[5] Rule 23(g)(1)(A) states that "[i]n appointing class counsel, the court (i) must consider: [1] the work counsel has done in identifying or investigating potential claims in the action; [2] counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; [3] counsel's knowledge of the applicable law; and [4] the resources that counsel will commit to representing the class."

The *Burke* Settlement Class Notice Plan is described in Section VI above and in the attached declaration of proposed Claims Administrator A.B. Data. See Pang Decl. For a settlement class, notice must be directed "in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e)(1)(B). The notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B). A settlement class notice is required to "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  See *Domestic Airline*, 322 F.Supp.3d at 68 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114-15 (2d Cir. 2005)).

*Burke* Plaintiffs propose a multifaceted notice program designed by proposed Claims Administrator A.B. Data, who also designed and administered two prior *Mackmin* ATM settlement notice plans. See Pang Decl., attached. The *Burke* plan uses a multi-media approach to reach the widest possible audience. A.B. Data will send the Short-Form Notice by direct email to potential Settlement Class members, Pang Decl., ¶¶ 6-11, Ex. C.[6]  The Short-Form Notice direct email will contain a clickable link to the case website, which will include the more detailed Long-Form Notice. *Id.*, ¶ 14, Ex. D. A.B. Data will also use digital and social media specifically targeted to reach members of the Settlement Class and estimated to generate approximately 300 million impressions over a 60-day period to drive potential class members to the website. *Id.*, ¶¶ 23-37. The print advertising will use *People* magazine to place the Short-Form Notice which reaches over 14 million consumers, many of whom may be elderly or may not frequently use

---

[6] A.B. Data will use best practices when emailing the Short-Form Notice to avoid SPAM and junk filters and to maximize deliverability. Pang Decl., ¶ 14.

social media. A.B. Data will also disseminate a news release via *PR Newswire* to news desks of print, broadcast, and digital websites in the U.S. *Id.*, ¶ 38-40.

A.B. Data will maintain the website (NonBankATMSurchargeSettlement.com) and provide a toll-free phone number for inquiries. See *id.*, ¶¶ 41-42. Class members will be able to file claims directly on the website, and view answers to frequently asked questions, important case documents, and contact information. Pang. ¶ 42, Ex. F (Claim Form). A.B. Data describes the functions of the website as follows:

> The website address will appear on the notices and be hyperlinked from the banner and social media ads and Email Notice. The website will provide, among other things, a downloadable version of the Long-Form Notice, a detailed summary of the Settlement's terms, functionality for Class Members to submit their claims online, all relevant documents, important dates, and any pertinent updates concerning the litigation or Settlement process. The website is secure, with a "https" designation. Pang ¶ 42.

Based on the proposed Notice Plan, A.B. Data estimates that "[t]he measured paid media components without direct notice are estimated to reach[7] approximately 82.6% of the target audience with an average frequency[8] of 1.6. Pang ¶ 51. A.B. Data states that "[t]he "proposed notice plan provides a reach similar to those approved by other courts and within the range recommended and considered reasonable by the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. Pang Decl.¶ 51 n.9.[9]

---

[7] Reach is the estimated percentage of a target audience reached through a specific media vehicle or combination of media vehicles.

[8] Frequency is the estimated average number of opportunities an audience member has to see the notice.

[9] The *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* states: "The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class.  It is reasonable to reach between 70-95%."

The proposed Short-Form and Long-Form Notices comply with the Rule 23(c)(2)(B) requirement that the class notice must include required content in "plain, easily understood language." The notices are plain and easy to understand and cover the required content, including the following information: (1) "the nature of the action" (2) the definition of the proposed Settlement Class (3) "the class claims, issues, or defenses", (4) "that a class member may enter an appearance through an attorney if the member so desires" (5) "that the court will exclude from the class any member who requests exclusion"  and (6) "the time and manner for requesting exclusion."  See Pang ¶ 11-12, Exs. C and D.

A.B. Data already maintains a confidential database of over 100 million email addresses previously used for class notice and/or obtained during the prior *Mackmin* settlements. To facilitate the best practicable notice, A.B. Data proposes to test the current database for continued validity and deliverability and expects to use nearly 70 million of the addresses for direct email notice. Pang ¶¶ 7-9.  To protect the privacy of the address holders, Burke Co-Lead Counsel hereby seeks this Court's approval to serve A.B. Data with a Rule 45 subpoena and instructions to use the email addresses solely for the purpose of class notice, not to disclose the addresses or the address holders to any other person or for any other purpose, and to designate the information as "highly confidential" under the terms of the protective order in these coordinated actions. A.B. Data and all parties to the *Mackmin* action have stated they have no objection to this procedure. See JT.Atty. Decl. ¶ 23; Pang ¶7.

### G.  Proposed Notice, Claims and Final Approval Schedule

*Burke* Plaintiffs propose a schedule for the dissemination of class notice; submission of claims; motions for attorneys' fees, costs, and service awards; objections and requests for exclusion; and the final approval motion and hearing that contemplates a total time of 180 days

from the entry of a preliminary approval order to the close of the claim filing period, with a final

approval hearing to be set by the Court as early as 163 days after preliminary approval. See

Schedule below and attached Proposed Order.

| Class Notice and case website to begin. | 28 days after entry of preliminary approval order |
| Claims period to begin | 28 days after entry of preliminary approval order |
| Deadline for motion for attorneys' fees, costs, expenses, and service awards | 105 days after entry of preliminary approval order |
| Deadline for objections and requests for exclusion from the class | 119 days after entry of preliminary approval order |
| First day for motion for final approval | At least 14 days after objection deadline (at least 133 days after entry of preliminary approval order) |
| Final Approval and Fee and Expense Hearing | At least 30 days after final approval motion, as set by the Court (at least 163 days after entry of preliminary approval order) |
| Deadline for filing claims | 180 days after entry of preliminary approval order |

### Conclusion

*Burke* Plaintiffs respectfully request that the Court grant the attached proposed Order,

which (1) preliminarily approves the proposed class action Settlement with the Defendants; (2)

provisionally certifies the proposed Settlement Class for purposes of notice; (3) appoints

Finkelstein Thompson LLP and Lovell Stewart Halebian Jacobson LLP as Co-Lead Settlement

26

Class counsel; (4) directs notice to the proposed Settlement Class in the manner and form of notice proposed by Plaintiffs; (5) appoints *Burke* named plaintiffs as representatives for the proposed Settlement Class for the purposes of disseminating notice; (6) authorizes retention of A.B. Data, Ltd. as the Settlement Administrator; (7) authorizes *Burke* Plaintiffs to serve a Rule 45 subpoena directing A.B. Data, solely for the purpose of notice to the *Burke* Settlement Class, to use email addresses it obtained in connection with the administration of prior settlements in the coordinated *Mackmin* action,  not to disclose the addresses or the address holders to any other person or for any other purpose, and to designate the addresses as "highly confidential" under the terms of the protective order in these coordinated actions. and (8) approves *Burke* plaintiffs proposed schedule leading to a final hearing to determine whether the proposed Settlement is fair, reasonable, and adequate under Rule 23(e)(2) and whether the Settlement Class should be certified.

DATED: 12/18/2025                              Respectfully submitted,


FINKELSTEIN THOMPSON LLP                       LOVELL STEWART HALEBIAN
                                               JACOBSON LLP

By: /s/ Douglas G. Thompson                    By: /s/ Christopher Lovell
Douglas G. Thompson (D.C. Bar # 172387)        Christopher Lovell (*pro hac vice*)
FINKELSTEIN THOMPSON LLP                        Merrick Scott Rayle (*pro hac vice*)
2201Wisconsin Ave, N.W.                        LOVELL STEWART HALEBIAN
Washington, D.C. 20001                         JACOBSON LLP
Telephone: 202-337-8000                        500 Fifth Ave, Suite 2440
Facsimile: 202-337-8090                        New York, NY 10110
dthompson@finkelsteinthompson.com              Telephone: (212) 608-1900
                                               Facsimile: (212) 719-4677
                                               clovell@lshllp.com
                                               mrayle@lshllp.com


27