**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| PETER BURKE, *et al.*,<br><br>*Plaintiffs*,<br>*v.*<br><br>VISA INC., *et al.*,<br><br>*Defendants* | Civil Action No. 1:11-cv-1882-RJL<br><br>**DECLARATION OF ELAINE PANG IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |

I, Elaine Pang, hereby declare as follows:

1. I am the Vice President of Media with A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data"). *Burke* Plaintiffs Co-Lead Class Counsel has retained A.B. Data as the Claims Administrator in connection with the above-captioned action (the "Action"). I submit this Declaration at the request of Class Counsel.

2. This Declaration is based upon my personal knowledge and information provided by Class Counsel, my associates, and A.B. Data staff members. My curriculum vitae is attached as **Exhibit A**.

3. A.B. Data has been appointed as notice, claims, and/or settlement administrator in hundreds of class actions and has designed, implemented, and coordinated some of the largest and most complex class action notice and administration plans in the country. Our work includes notification, claims processing, and distribution plans in all types of class actions, including consumer, antitrust, securities, ERISA, insurance, and government agency cases. In addition, our team has administered the settlements with the Bank Defendants (Bank of America, Chase, and Wells Fargo) and Visa and Mastercard in

the consolidated case, *Mackmin v. Visa Inc.,* No. 1:11-cv-01831 (D.D.C.), with similar class members. A profile of A.B. Data's background and capabilities, including representative case and client lists, is included as **Exhibit B**. At the request of Co-Lead Class Counsel, I prepared a proposed Notice Plan for the *Burke* Class Settlement with Visa Inc., Visa U.S.A. Inc., Visa International Service Association, Plus System, Inc. ("Visa"), and Mastercard Incorporated and Mastercard International Incorporated d/b/a Mastercard Worldwide ("Mastercard") that is substantially similar to the successful notice plan used to provide notice of the previous *Mackmin* settlements and again uses methods and tools that are of a type reasonably relied upon in the fields of media, advertising, and communications.

4. This Declaration will describe the proposed *Burke* Notice Plan and how it meets Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and due process requirements.

5. The objective of the proposed Notice Plan is to provide the best practicable notice, under the circumstances, of the proposed Settlement to potential Class Members. The Nationwide Class is defined as:

> All persons in the United States who, between October 24, 2007, and the date of the District Court Order granting preliminary approval to this Settlement, were charged an Access Fee for a domestic cash withdrawal transaction at an Independent ATM ("IATM") during the relevant Class Period and who were not fully reimbursed by their bank. A domestic cash withdrawal transaction is a transaction to withdraw cash from a customer's deposit account using an ATM or pin-debit card at an IATM terminal located within the United States, including its Territories; it does not include any credit card transaction or any transaction involving a cash advance or prepaid card.

Statewide Classes for California, Illinois, Massachusetts, and Michigan are identically defined.

6. The proposed Notice Plan includes direct email notification, as well as publication through paid and earned media. A dedicated case-specific website, www.NonBankATMSurchargeSettlement.com, and a toll-free telephone line will complement the proposed Notice Plan and serve as a resource for Class Members to get more information.

| Form of Notice | Proposed Notice Plan Overview |
|---|---|
| Direct Notice | • 100 million email addresses (*Mackmin* settlements)<br>• 303,285 email addresses (claims in *Mackmin* settlements) |
| Paid Media: Digital & Social Media | Estimated minimum of 308.6 million gross impressions across Google Display Network, YouTube, Facebook, Instagram, X, TikTok, and Search |
| Paid Media: Print | *People* Magazine |
| Earned Media | Press Release: US1 National and Multicultural newswires |

**DIRECT NOTICE**

7. To facilitate direct email notice, A.B. Data currently maintains a database of approximately 100 million potential Class Member email addresses, obtained in the course of administering the settlement with the bank defendants in *Mackmin v. Visa Inc.,* No. 1:11-cv-01831 (D.D.C.). A.B. Data acknowledges receipt of notice from *Burke* Plaintiffs Co-Lead Counsel that they intend to serve A.B. Data with a subpoena for the email addresses. In lieu of physical production of the addresses, A.B. Data will comply with the subpoena by using such email addresses solely in connection with administration of the

*Burke* Class Settlement for the purposes of class notice and claims administration and shall not disclose the addresses or the identities of the address holders to any other person or for any other purpose, and shall designate the information as "highly confidential" under the terms of the protective order in these coordinated actions. A.B. Data also maintains a database of approximately 303,285 potential Class Member email addresses associated with claims submitted in the settlements in that matter. The *Burke* Class, like the *Mackmin* Class, also involves persons who have shown a propensity to make cash withdrawals from ATMs. Therefore, many *Burke* Class Member email addresses are likely stored in the lists derived from the prior *Mackmin* settlements. The proposed Notice Plan will provide direct notice by email using the addresses currently in its database, as described above.

8. A.B. Data will ensure that all data is handled with the appropriate safeguards and protocols in place to protect the privacy of each potential Class Member. A.B. Data will share its internal data security protocols and procedures with the parties, and we have affirmatively agreed to treat any data provided as high security data subject to multiple layers of encryption.

9. The data will be electronically processed to consolidate duplicate records, and the unique potential Class Member names and contact information are being stored in our secure notice database for purposes of providing notice. Prior to sending the email notices, A.B. Data will test whether the addresses are still valid and deliverable addresses. It is estimated that this process will reduce the number of direct email notices sent to approximately 69,861,484.

10. Email notice is the most practicable form of direct notice here, as mailed notice to potential Class Members would incur millions or tens of millions of dollars in print and postage costs and, thus, would be cost prohibitive.

11. Direct notice will be provided via a Short-Form Notice, attached as **Exhibit C**, that will be formatted as an email ("Email Notice") and sent to potential Class Member email addresses.

12. A Long-Form Notice, attached as **Exhibit D**, will be posted on the case-specific website in English and Spanish.

13. The Short-Form Notice and Long-Form Notice include summary information about the proposed Settlement, including: that this is a class action; the Class definition; an engaging headline written in plain language ("Withdrew Cash from a Non-Bank ATM and were Assessed a Surcharge? You Could Get Money From a $167.5 Million Settlement"); that the Class alleges antitrust violations related to surcharges at independent (not a bank) ATMs; that Class Members may appear through an attorney; that Class Members can ask to be excluded, or, if they remain in the Class, may object to the Settlement terms; that Class Members must file a claim to be eligible to get a payment; the deadlines to submit a claim, request exclusion, and object; and the binding effect of a Class judgment.

14. Prior to emailing, A.B. Data will perform several tasks to maximize deliverability. These tasks include running the list of recipient email addresses through a deliverability analysis to ensure the email addresses are valid and working with our email service providers to develop sending strategies to achieve optimal deliverability. A.B. Data

will also incorporate best practices, such as excluding words or phrases known to trigger SPAM or junk filters, not including email attachments, and sending the emails in tranches over a period of time. The Email Notice will also include an embedded link to the case-specific website so Class Members can easily access frequently asked questions, important dates and deadlines, and other relevant documents and information about the case.

**TARGET AUDIENCE**

15. A.B. Data uses methodology and measurement tools used in the media planning and advertising industry to design and measure the adequacy of a paid media plan to reach a particular audience.

16. To design the paid media portion of the proposed Notice Plan, A.B. Data used syndicated, accredited research to select an equivalent demographic profile, known as a target audience, that best represents potential Class Members; reviewed the target audience's demographics and media consumption habits; analyzed, measured, and selected media vehicles that effectively and efficiently reach the target audience; and built the overall recommended paid media plan using recognized media measurement tools to quantify and ensure adequacy of the notice.

17. To develop the target audience profile and review its demographics and media habits, A.B. Data examined 2025 Spring MRI-Simmons[1] syndicated data. MRI-

[1] MRI Simmons Survey of the American Consumer is the country's largest, most comprehensive, and most reliable consumer and media and product/service usage database. Data from the Survey of the American Consumer, conducted continuously since 1979, is used in the majority of media and marketing plans written in the United States. The firm's multidimensional database is the largest and most reliable source for integrated media planning. About 450 U.S. advertising agencies, including 90 of the top 100, subscribe to MRI Simmons Research, along with A.B. Data and more than 200 national marketers. MRI Simmons offers *(footnote continued)*

Simmons is a nationally accredited media and marketing research firm that provides syndicated data on audience size, composition, and other relevant factors pertaining to major media, including broadcast, magazines, newspapers, and outdoor advertising. MRI-Simmons provides a single source of major media, products, services, and in-depth consumer demographic and lifestyle/psychographic characteristics.

18. Using MRI-Simmons, A.B. Data reviewed demographics and media consumption habits of adults who used an ATM/cash machine in the last 12 months ("ATM Users"). This target audience has the following characteristics:

| **Demographics** | **ATM Users** |
|---|---|
| Men | 50.7% |
| Women | 49.3% |
| Median Age | 47.6 |
| Adults 25 Years of Age and Older | 89.6% |
| Attended/Graduated College | 64.7% |
| Homeowners | 67.7% |
| Median Household Income | $99,702 |
| Household Income of $50K or More | 78.2% |
| Working Full-Time | 52.6% |
| Spanish or Hispanic Origin | 16.9% |

19. Based on MRI-Simmons demographic data, adults aged 25 and older ("Adults 25+") were identified as the broadly inclusive target audience for media delivery.

---

the most detailed and representative picture of U.S. demographics and lifestyles, including information on usage of nearly 6,000 product and service brands across 550 categories, the magazines and newspapers audiences read, the websites they look at, the television programs they watch, and the radio stations they listen to.

It ensures the paid media will adequately reach the target audience, and therefore, individuals who may have used an independent ATM.

20. To identify the best media vehicles to deliver the message to the target audience, A.B. Data reviewed MRI-Simmons' media-quintile profiles. These profiles measure the degree to which an audience uses media relative to the general population. This analysis showed that, in the past 30 days, ATM Users consumed media as follows:

| Media | ATM Users Usage |
|---|---|
| Internet | Above Average Users |
| Magazines | Moderate Readers |
| Newspapers | Moderate Readers |
| Radio/Audio | Above Average Listeners |
| Television | Moderate Viewers |

21. Utilizing the target audience's demographic information and media consumption habits, A.B. Data determined the appropriate media vehicles to provide notice to Class Members. A mix of digital, social, and print advertising was selected based on cost efficiency, audience reach, and editorial content compatibility. More than 86.2% of the target audience used social media in the past 30 days, over 97% accessed the Internet, and more than 86.1% read a magazine, either in print or digital format, within the past six months.

## PAID MEDIA

22. To effectively reach Class Members, A.B. Data recommends using a paid media plan that includes digital, social media, and print advertising.

***Digital and Social Media***

23. Digital and social media are included in the proposed Notice Plan to reach potential Class Members. A.B. Data recommends cross-platform advertising across various websites, blogs, forums, and social media applications to maximize effectiveness.

24. Internet advertising allows the viewer to click on a banner advertisement ("banner ad") and instantly be directed to the case-specific website to obtain additional information about their rights.

25. Social media provides an opportunity for potential Class Members to seamlessly share ads and information with their family, friends, community, and related social networks. Impressions served to social media users can be highly targeted, specifically reaching those who have expressed an interest in information relevant to the case.

26. All digital and social media ads will include images appropriate for this case and an embedded link to the case-specific website to increase the ad visibility and click-through rate. Banner and newsfeed ads will be placed in premium positions so they are easily seen when viewers first open the website page or application. Sample banner ads are attached as **Exhibit E**.

27. A case-specific Facebook page will also be created as a landing page for the links in the Facebook and Instagram newsfeed ads. News articles related to the lawsuit will be shared on the Facebook page to provide information and build credibility with users.

28. At least 308.6 million gross impressions[2] will be delivered on digital networks and social media across multiple devices, including desktop/laptop, tablet, and mobile, enabling maximum exposure and delivering the reach required to satisfy due process. Advertising will run across a variety of websites for 60 days to allow ample time to deliver the targeted impressions and drive Class Members to the website.

29. The banner ads will be translated into Spanish and appear on websites specifically serving the Hispanic community. Over 88.2% of ATM users who speak Spanish prefer to use Spanish at home.

30. The proposed digital and social media ad campaign is flexible and will be adjusted as necessary to provide sufficient notice coverage. Thus, the number of impressions ultimately served will depend on how many Class Members are successfully sent direct notice by email and will be adjusted accordingly to provide sufficient reach.

31. A.B. Data's digital media experts utilize Comscore[3] to select networks and social media platforms popular with ATM Users. Based on this analysis, digital and social media advertisements will appear on:

a. Google Display Networks - Places digital ads on websites, blogs, and other properties within its own network and over 2 million other websites across the Internet.

---

[2] Gross (targeted) impressions are the duplicated sum of audiences of all media vehicles containing the notice.

[3] Comscore is a global internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and internet data usage. Comscore maintains a proprietary database of more than 2 million consumers who have given Comscore permission to monitor their browsing and transaction behavior, including online and offline purchasing.

b. YouTube - Online video sharing and social media platform that has over 239 million users in the United States. Over 54.5% of the target audience used YouTube in the past 30 days.

c. Facebook - Free, global social networking website that helps people communicate with friends, family, and coworkers. Over 62.2% of the target audience used Facebook in the past 30 days.

d. Instagram - Photo and video sharing social networking application with highly engaged users who click on posts and ads. Over 45.5% of the target audience used Instagram in the past 30 days.

e. TikTok – A popular social media platform centered around short-form videos. Over 28.2% of the audience used TikTok in the past 30 days.

f. X - Social media platform that allows users to share short text messages, images, and video updates. Over 15.8% of the audience used X in the past 30 days.

32. Digital impressions will be highly targeted, specifically delivered to the social media feeds of potential Class Members using their known contact information and digital users who have expressed an interest in information relevant to the subject of this case, such as information about ATM cash withdrawals.

33. Targeted digital and social media advertising will also be employed to programmatically reach users. Tactics may include:

| **Strategy** | **Rationale** |
|---|---|
| Mobile In-App | Target individuals while they are using relevant mobile applications. Mobile applications could include financial apps, news apps, social networking apps, shopping apps, game apps, weather apps, exercise apps, entertainment apps, and sports apps. |
| Mobile Websites | Target phones and tablets of users who are browsing mobile websites that are contextually relevant. |
| Contextual/Channel | Target individuals who visit websites with relevant content and context, such as news outlets or financial information sites. |
| Behavioral | Target users based on their previous online browsing activity (*e.g.*, if a user views or searches content related to ATM fees, a data profile with that information is created and targeted ads are served to them). Also, target users who have previously visited the settlement website. |
| Predictive (Look-Alike) Modeling | Use "look-alike" modeling to target ads to user IDs whose owners have strong similarities to users who have previously "clicked through" to the case-specific website or known Class Members. |

34. Digital advertising will be optimized to adjust for audiences and demographic groups that are most responsive and engaged and maximize exposure across websites that are best driving potential Class Members to the case-specific website.

35. Where possible, an ad verification tool will be used to audit the digital media advertising to reduce 'bot' (or non-human) fraud, prevent ads being served in environments with inappropriate content, and improve ad viewability.

36. To make it easier for potential Class Members to locate the case-specific website, sponsored search listings will be purchased on Google, the most visited search engine, and/or other search engine partners. When a person uses a specific target phrase and/or keyword in a search engine to search for information, the link to the case-specific website may appear on the search result pages.

37. A.B. Data employs a fully staffed digital buying team to manage all digital and social media programs in-house for the greatest control and oversight. A.B. Data's digital media team is certified in Google Ads Display, Google Ads Search, Google Analytics, Facebook, The Interactive Advertising Bureau ("IAB")[4] Digital Media Buying & Planning, IAB Digital Media Sales, and Hootsuite Social Marketing.

***<u>Print Media</u>***

38. To reach older Class Members and other light digital and social media users, the Short-Form Notice will be published once in *People* magazine. *People* is a trusted source for celebrity and entertainment news; human-interest stories; and beauty, food, and style trends. As of 2025, the weekly publication maintains a total print circulation[5] of 2,200,000 copies, including both subscriber distributions and newsstand sales. The estimated total readership[6] within our target audience is 14,400,000, inclusive of pass-along readers.

[4] The IAB is an American advertising business organization that develops industry standards, conducts research, and provides legal support for the online advertising industry.
[5] The number of copies that are sold, which includes both single-copy sales and subscriptions.
[6] The estimated number of people who actually read a copy, which is always higher than circulation because multiple people can read a single copy.

## EARNED MEDIA

39. In addition to the direct notice and paid media, A.B. Data will distribute a news release via *PR Newswire*'s US1 and Multicultural Newslines to help the case gain more attention from the media and potential Class Members. The press release will reach traditional general market, Hispanic, Asian, and other ethnic-focused media outlets (television, radio, newspapers, magazines), news websites, and journalists nationwide. A news release serves a valuable role, as it provides additional exposure to the notice information beyond paid media.

40. A.B. Data will also share information about the case with its followers on X.

## TOLL-FREE TELEPHONE NUMBER

41. A.B. Data will establish and maintain a case-specific toll-free telephone number to address potential Class Member inquiries. The toll-free telephone number will be equipped with an automated interactive voice response system that presents callers with a series of choices to hear prerecorded information. If callers need further help, they have the option to speak with a live operator during business hours. After business hours, callers may leave a voicemail message, and their call will be returned. The toll-free telephone number will be prominently displayed on the notices and the case-specific website.

## WEBSITE

42. As noted above, A.B. Data will establish and maintain the case-specific website, www.NonBankATMSurchargeSettlement.com. The website address will appear on the notices and be hyperlinked from the banner and social media ads and Email Notice.

The website will provide, among other things, a downloadable version of the Long-Form Notice, a detailed summary of the Settlement's terms, functionality for Class Members to submit their claims online, all relevant documents, important dates, and any pertinent updates concerning the litigation or Settlement process. The website is secure, with an "https" designation.

## EXCLUSION PROCESSING

43. The Long-Form Notice includes specific instructions on how to request exclusion. A.B. Data will receive, process, and report all exclusion requests and promptly circulate copies to Class Counsel.

## CLAIMS AND DISTRIBUTION

44. To receive monetary compensation from the *Burke* Settlement with Visa and Mastercard, *Burke* Class Members must submit new, timely, and valid claims for each transaction for which a surcharge was paid at independent, non-bank-owned ATMs. Claims for surcharges at bank-owned ATMs submitted in the prior *Mackmin* ATM settlements will not be accepted. Class Members will be permitted to submit claims online through a secure website or by mail. Attached as **Exhibit F** is the proposed Claim Form. The Net Settlement Fund will be distributed proportionally (or *pro rata*) to claimants who submit valid and timely claims based on the number of qualifying surcharged transactions that are submitted. A.B. Data will process each claim in accordance with the Court-approved Plan of Allocation and/or relevant Court orders.

45. A.B. Data has a strategic partnership with ClaimScore LLC ("ClaimScore"), a legal technology firm specializing in fraud detection for class action settlements.

Settlements similar to this one – with low barriers for unknown parties to receive a settlement payment – are ripe targets for fraudulent actors and commonly involve large-scale technological fraud ("programmatic fraud"). As a result, A.B. Data recommends utilizing this partnership to help administer this Settlement. ClaimScore's proprietary software will be integrated into the claims process; it uses complex data analysis, advanced pattern recognition, and synthetic identity detection to identify fraudulent or duplicate claims, without excluding legitimate claimants. This software was designed to emulate the way human experts assess complex data, considering the totality of circumstances instead of evaluating individual data points in isolation. Claims are evaluated against over 65 validation points, deductions are applied when a claim fails steps within each point, and the deductions' cumulative effect determines if a claim is rejected or approved. This technology enhances A.B. Data's ability to proactively identify and address fraudulent activity, while maintaining fairness and due process for Settlement Class Members. A profile of ClaimScore's background and capabilities is attached as **Exhibit G.**

46. Suspicious Claims may be rejected or subject to additional scrutiny, such as requests for additional documentation and other proprietary measures, to allow such claimants to prove their claims are legitimate. Suspicious claimants who do not provide the requested additional documentation or information or fail to otherwise prove their Claims' legitimacy, will not receive a payment from the Net Settlement Fund.

47. If a Claim is determined to be defective, A.B Data will send a deficiency notification to the claimant, via letter or email, that describes why the Claim is deficient and including, where applicable, what is necessary to cure the deficiency. The deficiency

notification will also advise claimants how much time they have to submit the appropriate information and/or documentary evidence to complete/cure their Claim. If claimants do not cure the deficiency in their Claim, their Claim will be recommended for rejection (in whole or in part). The deficiency notification will also advise claimants of their right to contest A.B. Data's administrative determination with respect to their Claim.

48. After the Claims (and responses to deficiency notifications) are fully processed, quality assurance reviews performed, and final administrative determinations made as to which Claims are valid, A.B. Data will distribute the Net Settlement Fund proceeds to authorized claimants upon Court approval.

49. Settlement payments will be digitally sent to each eligible claimant using the email address they provide on their submitted Claim Form. At the time of distribution, each eligible claimant will be provided with a number of digital options to instantaneously receive their payment, such as a virtual debit card, PayPal, or other ecommerce platforms. Given the large size of the Class and the expected payment amounts, a digital distribution is recommended to reduce administrative costs and provide convenience and efficiency for claimants (who will be able to receive their funds without having to deposit a check or visit a bank). Class Members can also request a traditional paper check payment by mail.

## ESTIMATED ADMINISTRATIVE COSTS

50. A.B. Data estimates total administrative costs to provide notice, process claims, and distribute funds to eligible claimants, as described above, to be approximately $3 million. These costs include out-of-pocket expenses, such as media placements, postage,

professional fees associated with disseminating notice, processing claims, fraud review, and effectuating payment to eligible claimants.

## CONCLUSION

51. It is my opinion that the proposed Notice Plan uses a strategic and contemporary method to deploy notice to Class Members and is adequate and reasonable to effectively reach Class Members. This comprehensive multi-channel approach, including direct notice, paid media (digital, social media, print advertising), and earned media, satisfies the requirements of Rule 23. The measured paid media components without direct notice are estimated to reach[7] approximately 82.6% of the target audience with an average frequency[8] of 1.6. The proposed Notice Plan provides a reach similar to those approved by other courts and is within the range recommended and considered reasonable by the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*.[9] This proposed Notice Plan conforms to the standards employed by A.B. Data in notification plans designed to reach potential class members of settlement groups or classes that are national in scope. In my opinion, the proposed Notice Plan is the best practicable approach to reach Class Members and fully complies with Rule 23 of the Federal Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing is true and correct.

---

[7] Reach is the estimated percentage of a target audience reached through a specific media vehicle or combination of media vehicles.

[8] Frequency is the estimated average number of opportunities an audience member has to see the notice.

[9] The *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* states: "The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70-95%."

Executed this 8th day of December 2025.

______________________________

Elaine Pang

# EXHIBIT A

Case No. 1:11-cv-01882 (RJL).

Elaine Pang is Vice President of Media with A.B. Data's Class Action Administration division and has over eighteen years of expertise in development of legal notice plans. She has directed a wide range of notice programs involving media planning, media buying, research, creative design process, and data analysis, resulting in the implementation of effective and efficient programs to reach potential class members. Ms. Pang has been involved in some of the largest and most complex legal notification plans in both domestic and international regions. Her programs satisfy due process requirements, as well as all applicable state and federal laws, and they adhere to the guidelines set forth in the *Manual for Complex Litigation, Fourth Edition* and by the Federal Judicial Center (FJC), as well as applicable state laws.

Ms. Pang is also a certified professional in IAB Digital Media Buying & Planning, IAB Media Sales, Hootsuite Social Marketing, Google Digital Sales, Google Analytics, Google AdWords, and Market Motive Internet Marketing Fundamentals. She also served as an IAB exam committee member, a group of 12-14 industry experts who work to ensure that certification exams stay current with the industry's changing ecosystem by developing exam questions, reviewing exam content, and advising on the passing score of the exam. She holds a Bachelor of Science in marketing from The Pennsylvania State University and earned her MBA from Strayer University.

Prior to her professional experience in the class action notice and claims administration industry, Elaine established a strong portfolio working with many top brands including Marriott, General Mills, Air Wick, Jet-Dry, Comedy Central, Madison Square Garden, Radio City Music Hall, and Geox.

## CASE EXPERIENCE

Ms. Pang has been instrumental in her involvement with developing, implementing, and analyzing media measurements across domestic and international multichannel platforms for notice programs. A partial listing of her case work is provided below.

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Ray v. NCAA* | 1:23-cv-00425 | United States District Court for the Eastern District of California |
| *National ATM Council, Inc., et al. v. Visa, Inc., et al.* | 1:11-cv-01803-RJL | United States District Court for the District of Columbia |
| *State of Utah, et al. v. Google LLC, et al.* | 3:21-cv-05227-JD | United States District Court for the Northern District of California |
| *Hubbard v. Google* | 5:19-cv-07016 | United States District Court for the Northern District of California |

Case No. 1:11-cv-01882 (RJL).

DATA

| | | |
|---|---|---|
| *Dennis, et al. v. The Andersons, Inc., et al.* | 1:20-cv-04090 | United States District Court for the Northern District of Illinois |
| *Othart Dairy Farms, LLC v. Dairy Farmers of America, Inc., et al.* | 22-cv-00251- SMD-DLM | United States District Court for the District of New Mexico |
| *DZ Reserve, et al. v. Meta Platforms, Inc.* | 3:18-cv-04978 | United States District Court for the Northern District of California |
| *In re Generic Pharmaceuticals Pricing Antitrust Litigation* | 2:16-MD-02724 | United States District Court for the Eastern District of Pennsylvania |
| *Jien v. Perdue Farms* | 1:19-cv-002521 | United States District Court for the District of Maryland |
| *Frasco v. Flo Health Inc.* | 3:21-cv-00757 | United States District Court for the Northern District of California |
| *Ruffin v. CVS Pharmacy, Inc.* | 23-CV-01660-BO-RN | United States District Court for the Eastern District of North Carolina Southern Division |
| *Borozny, et al. v. RTX Corp., Pratt & Whitney Division, et al.* | 3:21-cv-1657-SVN | U.S. District Court for the District of Connecticut |
| *Leventhal v. Bayside Cemetery and Congregation Shaare Zedek* | Index No. 100530/11 | Supreme Court of the State of New York |
| *Oliver v. Am. Express Co.* | 19-CV-566 | U.S. District Court for the Eastern District of New York |
| *In re Turkey Antitrust Litigation* | 1:19-cv-08318 | United States District Court for the Northern District of Illinois |
| *In re California Bail Bond Antitrust Litigation* | 4:19-CV-00717-JST | United States District Court for the Northern District of California |
| *Russo, et al. v. Walgreen Co.* | 1:17-cv-02246 | United States District Court for the Northern District of Illinois |
| *In re Platinum and Palladium Antitrust Litigation* | 1:14-cv-9391 (GHW) | U.S. District Court for the Southern District of New York |
| *In re: National Prescription Opiate Litigation* | 1:17-md-2804 | United States District Court for the Northern District of Ohio |
| *Mackmin, et al. v. Visa Inc., et al.* | 1:11-cv-01831 (RJL) | United States District Court for the District of Columbia |
| *In re Effexor XR Antitrust Litigation* | 3:11-cv-05479 | United States District Court for the District of New Jersey |
| *In re: McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation* | 3:21-md-02996-CRB (SK) | United States District Court for the Northern District of California |
| *Government Employees Health Association v. Actelion Pharmaceuticals Ltd., et al.* | GLR-18-3560 | United States District Court for the District of Maryland |

Case No. 1:11-cv-01882 (RJL).

DATA

| | | |
|---|---|---|
| *San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. Johnson & Johnson* | 1:23-cv-00903 | United States District Court for the District of New Mexico |
| *In re Google Assistant Privacy Litigation* | 19-cv-04286-BLF | United States District Court for the Northern District of California |
| *KPH Healthcare Services, Inc. v. Mylan N.V* | 2:20-cv-02065- DDC-TJJ | U.S. District Court for the District of Kansas |
| *Nix v. The Chemours Co. FC, LLC* | 7:17-cv-00189 | U.S. District Court for the Eastern District of North Carolina Southern Division |
| *Fund Liquidation Holdings LLC. et al. v. UBS AG et al.* | 15-cv-5844 | U.S. District Court for the Southern District of New York |
| *In re: Evanston Northwestern Healthcare Corp. Antitrust Litigation* | 1:07-cv-04446 | U.S. District Court for the Northern District of Illinois |
| *Sullen, et al. v. Vivint, Inc.* | 01-CV-2023-903893 | Circuit Court of Jefferson County, Alabama, Birmingham Division |
| *Jeffrey Koenig, et al. v. VIZIO, Inc.* | BC 702266 | Superior Court of California, County of Los Angeles |
| *Bultemeyer v. CenturyLink Inc.* | 2:14-cv-02530-SPL | United States District Court for the District of Arizona |
| *In re Cattle and Beef Antitrust Litigation, et al. (In re DPP Beef Litigation)* | 20-cv-01319 JRT-HB | United States District Court for the District of Minnesota |
| *Sheet Metal Workers Local No. 20 Welfare and Benefit Fund, et al. v. CVS Pharmacy, Inc., et al.* | 16-046 WES and 16-447 WES | United States District Court for the District of Rhode Island |
| *Daniel Berman, et al. v. Freedom Financial Network, LLC, et al.* | 18-cv-01060-YGR | United States District Court for the Northern District of California |
| *Hoffman v. City of Los Angeles* | BC672326 | Superior Court of the State of California, County of Los Angeles |
| *In Re: Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation* | 2:13-md-02445-MSG | United States District Court for the Eastern District of Pennsylvania |
| *Stacy Dorcas v. Aterian, Inc.* | CIVSB2222117 | Superior Court of the State of California for the County of San Bernardino |
| *In re Term Commodities Cotton Futures Litigation* | 12-cv-5126 | U.S. District Court for the Southern District of New York |
| *Lincoln Adventures, LLC, et al. v. Those Certain Underwriters at Lloyd's, London Members of Syndicates, et al.* | 2:08-cv-00235-CCC-JAD | U.S. District Court for the District of New Jersey |
| *Sonterra Capital Master Fund Ltd., et al. v. Barclays Bank PLC, et al.* | 15-cv-3538 | U.S. District Court for the Southern District of New York |
| *In re Xyrem (Sodium Oxybate) Antitrust Litigation* | 20-md-02966-RS | U.S. District Court for the Northern District of California |
| *In re Zetia (Ezetimibe) Antitrust Litigation* | 2:18-md-2836 | U.S. District Court for the Eastern District of Virginia Norfolk Division |

Case No. 1:11-cv-01882 (RJL).

| | | |
|---|---|---|
| *In re Bank of Nova Scotia Spoofing Litigation* | 3:20-cv-11059 (MAS) (LHG) | U.S. District Court for the District of New Jersey |
| *Solomon vs. Sprint Corporation* | 1:19-cv-05272-MKV | U.S. District Court for the Southern District of New York |
| *In re European Government Bonds Antitrust Litigation* | 1:19-cv-02601 | U.S. District Court for the Southern District of New York |
| *In re Broiler Chicken Antitrust Litigation* | 1:16-cv-08637 | U.S. District Court for the Northern District of Illinois |
| *In re: Broiler Chicken Antitrust Litigation (End-User Consumer Action)* | 1:16-cv-08637 | U.S. District Court for the Northern District of Illinois |
| *In re: Broiler Chicken Antitrust Litigation – Commercial & Institutional Indirect Purchaser Plaintiff Actions* | 1:16-cv-08637 | U.S. District Court for the Northern District of Illinois |
| *Budicak, Inc. et al. v. Lansing Trade Group, LLC et al.* | 2:19-cv-02449 | U.S. District Court for the District of Kansas |
| *In re HIV Antitrust Litigation* | 3:19-cv-02573-EMC | U.S. District Court for the Northern District of California |
| *In re Namenda Indirect Purchaser Antitrust Litigation* | 1:15-cv-6549 | U.S. District Court for the Southern District of New York |
| *In re Pork Antitrust Litigation* | No. 0:18-cv-01776-JRT-HB | U.S. District Court District of Minnesota |
| *In re Pork Antitrust Litigation (Indirect Purchaser Actions)* | No. 0:18-cv-01776-JRT-HB | U.S. District Court District of Minnesota |
| *Laydon v. Mizuho Bank, Ltd., et al.* | 12-cv-3419 | U.S. District Court for the Southern District of New York |
| *In re Opana ER Antitrust Litigation* | 1:14-cv-10150 | U.S. District Court for the Northern District of Illinois |
| *Christopher Julian, et al. v. TTE Technology, Inc.* | 3:20-CV-02857-EMC | U.S. District Court Northern District of California |
| *In re Flint Water Cases* | 5:16-cv-10444-JEL-EAS | NA |
| *Automobile Antitrust Cases I and II* | JCCP Nos. 4298 and 4303, Master File No. 19-md-02878 | Superior Court of the State of California for the County of San Francisco |
| *Smith v. FirstEnergy Corp., et al.* | 2:20-cv-3755 | U.S. District Court for the Southern District of Ohio |
| *Fund Liquidation Holdings LLC. V. Citibank, N.A., et al.* | 1:16-cv-5263 (AKH) | U.S. District Court for the Southern District of New York |
| *In re: Generic Pharmaceuticals Pricing Antitrust Litigation* | 2:16-MD-02724 | U.S. District Court for the Eastern District of Pennsylvania |
| *Sullivan, et al. v. Barclays plc, et al.* | 13-cv-2811 (PKC) | U.S. District Court for the Southern District of New York |
| *Dennis, et al. v JP Morgan Chase & Co., et al.* | 16-cv-06496 (LAK) | U.S. District Court for the Southern District of New York |
| *Staley, et al. v. Gilead Sciences, Inc., et al.* | 3:19-cv-02573-EMC | U.S. District Court for the Northern District of California |
| *In Re Ranbaxy Generic Drug Application Antitrust Litigation* | 19-md-02878 | U.S. District Court for the District of Massachusetts |

| | | |
|---|---|---|
| *In re Capacitors Antitrust Lawsuit* | 3:17-md-02801-JD | U.S. District Court for the Northern District of California |
| *In Re: Johnson & Johnson Sunscreen Marketing, Sales Practices and Products Liability Litigation* | 3015 | U.S. District Court for the Southern District of Florida |
| *In re Citrus Canker Litigation* | 03-8255 CA 13 | Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida |
| *Hill-Green v. Experian Information Solutions, Inc.* | 3:19-cv-00708 | U.S. District Court for the Eastern District of Virginia |
| *Benson Githieya v. Global Tel Link Corp.* | 1:15-CV-00986-AT | U.S. District Court for the Northern District of Georgia |
| *Bowen v. UPMC Settlement* | GD-21-002075 | Allegheny Cty. Ct. Com. Pl. |
| *The Roman Catholic Diocese of Rockville Centre, New York* | 20-12345 | U.S. District Court for the Southern District of New York |
| *The Roman Catholic Church for the Archdiocese of New Orleans* | 20-10846 | U.S. Bankruptcy Court, Eastern District of Louisiana |
| *In re Roundup Products Liability Litigation* | 3:16-md-02741-VC | U.S. District Court for the Northern District of California |
| *In re Boy Scouts of America and Delaware BSA, LLC* | 20-10343 | U.S. Bankruptcy Court for the District of Delaware |
| *Krueger v. Wyeth Inc, et al.* | 3:03-cv-02496-JAH-MDD | U.S. District Court for the Southern District of California |
| *Hamm v. Sharp Electronics Corporation* | 5:19-cv-00488 | U.S. District Court for the Middle District of Florida |
| *In Re: PG&E Corporation* | 19-30088 | U.S. District Court for the Northern District of California |
| *In re Chinese-Manufactured Drywall Products Liability Litigation* | 2:09-md-02047 | U.S. District Court for the Eastern District of Louisiana |
| *Colorado Attorney General CenturyLink Settlement* | | |
| *The Hospital Authority of Metropolitan Government of Nashville and Davidson County v. Momenta Pharmaceuticals, Inc.* | 15-CV-01100 | U.S. District Court for the Middle District of Tennessee |
| *Freeman v. Grain Processing Corporation* | 13–0723 | Supreme Court of Iowa |
| *Culler v. Multi-State Lottery Association* | LACL136787 | Iowa District Court for Polk County |
| *In re LIBOR-Based Financial Instrument Antitrust Litigation* | 11-MD-2262 | U.S. District Court for the Southern District of New York |
| *In re Domestic Airline Travel Antitrust Litigation* | 2656 | U.S. District Court for the District of Columbia |
| *MSPA Claims 1, LLC v. IDS Property Casualty Insurance Company* | 1:16-CV-21040 | U.S. District Court for the Southern District of Florida |
| *Speaks v. U.S. Tobacco Cooperative, Inc.* | 5:12-CV-729-D | U.S. District Court for the Eastern District of North Carolina |
| *Jabbari v. Wells Fargo & Co.* | 3:15-cv-02159 | U.S. District Court for the Southern District of California |
| *United Desert Charities, et al. v. Sloan Valve Company, et al.* | 12-CV-06878 | U.S. District Court for the Central District of California |
| *In re: Volkswagen "Clean Diesel" MDL* | 15-MD-2672-CRB | U.S. District Court for the Northern District of California |

| | | |
|---|---|---|
| *In re: Automotive Parts Antitrust Litigation* | 12-md-02311 | U.S. District Court for the Eastern District of Michigan |
| *In re Municipal Derivatives Antitrust Litigation* | MDL No. 1950, No. 08-02516 | U.S. District Court for the Southern District of New York |
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in Gulf of Mexico* | MDL 2179 | U.S. District Court for the Eastern District of Louisiana |
| *Muscarella v. Commonwealth of Pennsylvania* | 10 F.R. 2011 | Commonwealth Court of Pennsylvania |
| *Precision Associates Inc. v. Panalpina World Transport, et al.* | 8-cv-00042 | U.S. District Court for the Eastern District of New York |
| *Mirakay, et al. v. Dakota Growers Pasta Co. Inc., et al.* | 3:13-cv-04429 | U.S. District Court for the District of New Jersey |
| *Imran Chaudhri v. Osram Sylvania Inc.* | 2:11-cv-05504 | U.S. District Court for the District of New Jersey |
| *Trammell v. Barbara's Bakery Inc.* | 12-cv-02664 | U.S. District Court for the Northern District of California |
| *Independent Foreclosure Review* | | Department of Justice |
| *In Re: TFT-LCD (Flat Panel) Antitrust Litigation* | MDL No. 1827 | U.S. District Court, Northern District of California, San Francisco Division |
| *In re: Sony Gaming Networks and Customer Data Security Breach Litigation* | 11-MD-2258 | U.S. District Court for the Southern District of California |
| *Koyle v. Level 3 Communications, Inc.* | 01-0286-S-BLW | U.S. District Court for the District of Idaho |
| *In Re: Korean Air Lines Co., Ltd. Antitrust Litigation* | 07-01891 | U.S. District Court for the Central District of California |
| *In re: DRAM Antitrust Litigation* | MDL No. 1486 | U.S. District Court for the Northern District of California |
| *In re: Transpacific Passenger Air Transportation Antitrust Litigation* | 07-CV-5634-CRB, MDL 1913 | U.S. District Court for the Northern District of California |
| *In re M3Power Razor System Marketing & Sales Practices Litigation* | 05-cv-11177 | U.S. District Court for the District of Massachusetts |
| *In re: NYC Bus Tour Antitrust Litigation* | 13-cv-0711 | U.S. District Court for the Southern District of New York |
| *In re: Electronic Books Antitrust Litigation* | 1:11-md-02293 | U.S. District Court for the Southern District of New York |
| *Scharfstein v. BP West Coast Products LLC* | 1112-17046 | State of Oregon Circuit Court for Multnomah County |
| *Vioxx Products Liability Litigation* | MDL No. 1657 | U.S. District Court for the Eastern District of Louisiana |
| *Glaberson v. Comcast Corp.* | 2:03-cv-06604-JP | U.S. District Court for the Eastern District of Pennsylvania |
| *Dolmage v. Province of Ontario* | CV-09-376927CP00 | Ontario Superior Court of Justice |
| *Blessing v. Sirius XM Radio, Inc.* | 09-CV-10035 HB | U.S. District Court for the Southern District of New York. |
| *Cipro Cases I and II* | No. 4154 and No. 4220 | Superior Court of California |
| *In re National Football League Players' Concussion Injury Litigation* | MDL No. 2323 | U.S. District Court for the Eastern District of Pennsylvania |

DATA

| | | |
|---|---|---|
| *Hanley v. Fifth Third Bank* | 1:2012cv01612 | U.S. District Court for the Northern District of Illinois |
| *Roos v. Honeywell Int'l, Inc.* | 04-0436205 | Superior Court of California |
| *United Desert Charities, et al. v. Sloan Valve Company, et al.* | CV12-06878 | U.S. District Court, Central District of California |
| *In re Toyota Motor Corp. Unintended Acceleration Mktg, Sales Practs., & Prods. Litig.* | 10-ml-2151 | U.S. District Court for the Central District of California |
| *Abbott v. Lennox Industries Inc.* | 16-2011-CA-010656 | 4th Jud. Cir. Ct., Dade Cty. Fla. |
| *In re: Metoprolol Succinate End-Payor Antitrust Litigation* | 06-cv-71 | U.S. District Court for the District of Delaware |
| *In re Imprelis® Herbicide Marketing, Sales Practices and Products Liability Litigation* | MDL 2284 | U.S. District Court for the Eastern District of Pennsylvania |
| *Smajlaj, et al. v. Campbell Soup Company, et al.* | 10-cv-01332-JBS-AMD | U.S. District Court for the District of New Jersey |
| *Kramer v. B2Mobile, LLC* | 10-cv-02722 | U.S. District Court for the Northern District of California |
| *Donovan v. Philip Morris USA, Inc.* | 06-CA-12234 | U.S. District Court for the District of Massachusetts |
| *In re National Arbitration Forum Trade Practices Litigation* | MDL No. 10-2122 | U.S. District Court for the District of Minnesota |
| *In re: Pharmaceutical Industry Average Wholesale Price Litigation* | No. 01-CV-12257-PBS, MDL No. 1456 | U.S. District Court for the District of Massachusetts |
| *Nelson v. Mead Johnson & Company, LLC* | 09-cv-61625-JIC | U.S. District Court for the Southern District of Florida |
| *Lee v. Carter-Reed Company, L.L.C.* | UNN-L-3969-04 | Superior Court of New Jersey, Union County |
| *FTC Iovate Settlement* | | Federal Trade Commission |
| *FTC LeanSpa Settlement* | | Federal Trade Commission |
| *FTC Walgreens Settlement* | | Federal Trade Commission |
| *Glazer v. Whirlpool Corp.* | No. 1:08-WP-65000, MDL 2001 | U.S. District Court for the Northern District of Ohio |
| *Behrend v. Comcast Corp.* | 03-6604 | U.S. District Court for the Eastern District of Pennsylvania |
| *Commonwealth of Massachusetts v. Fremont Investment & Loan* | 07-4373-BLS | Commonwealth of Massachusetts |
| *Dolmage v. Province of Ontario* | CV-09-376927 | Ontario Superior Court of Justice |
| *In re Lawn Mower Engine Horsepower Marketing and Sales Practices Litigation* | MDL No. 1999, 2:08-md-01999 | U.S. District Court for the Eastern District of Wisconsin |
| *Craft, et al. v. Philip Morris Companies, Inc., et al.* | 002-00406-02 | Missouri Circuit Court, Twenty-Second Judicial Circuit |
| *In Re: Pre-Filled Propane Tank Marketing and Sales Practices Litigation* | MDL No. 2086 | U.S. District Court for the Western District of Missouri |
| *In re BP Propane Indirect Purchaser Antitrust Litigation* | 06-CV-3841 | U.S. District Court for the Northern District of Illinois |
| *In re Vytorin/Zetia Marketing, Sales Practices, and Products Liability Litigation* | 08-285(DMC) | U.S. District Court for the District of New Jersey |
| *In re Bluetooth Headset Product Liability Litigation* | 07-ML-1822, MDL 1822 | U.S. District Court for the Central District of California |

DATA

| | | |
|---|---|---|
| *The Authors Guild, Inc., et al. v. Google Inc.* | 05 CV 8136-DC | U.S. District Court for the Southern District of New York |
| *Larry Bowens, et al. v. 7-Eleven, Inc., The Southland Corporation, MDK Corporation, and ENSR Corporation* | 20D03-0209-CT-48 | Elkhart Superior Court No. 3 |
| *Sadowski v. General Motors Corp.* | HG03093843 | Superior Court of the State of California for the County of Alameda |
| *Cox, et al. v. Shell Oil Company* | 18,844 | Chancery Court for Obion County, at Union City, Tennessee |
| *Wilson v. Airborne, Inc., et al.* | EDC V07-770 VAP (OPx) | U.S. District Court for the Central District of California |
| *Galanti v. Goodyear Tire & Rubber Company* | 03-209 | U.S. District Court for the District of New Jersey |
| *In re Toys "R" Us Antitrust Litigation* | CV-97-5750, MDL No. 1211 | U.S. District Court for the Eastern District of New York |
| *In re W.R. Grace & Co.* | 01-01139 | U.S. Bankruptcy Court for the District of Delaware |
| *Cobell v. Salazar* | 96-01285 | U.S. District Court for the District of Columbia |
| *Dryer v. National Football League* | 9-02182 | U.S. District Court for the District of Minnesota |
| *In re Black Farmers Discrimination Litig.* | 08-511 | U.S. District Court for the District of Columbia |
| *Keepseagle v. Vilsack* | 99-03119 | U.S. District Court for the District of Columbia |
| *In re Energy Future Holdings Corp.* | 14-10979 | U.S. Bankruptcy Court for the District of Delaware |
| *In re Garlock Sealing Technologies LLC* | 10-31607 | U.S. Bankruptcy Court for the Western District of North Carolina |
| *In re SCBA Liquidation, Inc., f/k/a Second Chance Body Armor, Inc.* | 04-12515 | U.S. Bankruptcy Court for the Western District of Michigan |
| *In re Enfamil LIPIL Mktg. & Sales Practs. Litig.* | MDL No. 2222 | U.S. District Court for the Southern District of Florida |

**ARTICLE**

Shannon Wheatman & Elaine Pang, *Reality Check: The State of Media and Its Usage in Class Notice, in A Practitioner's Guide to Class Actions, 3rd Ed.* 849 - 858 (Marcy Greer ed., 2021)

# EXHIBIT B

Class
Action
Administration

DATA

# CAPABILITIES

## About A.B. Data

Founded in 1981, **A.B. Data has earned a reputation** for expertly managing the complexities of class action administration in consumer, antitrust, securities, Securities and Exchange Commission (SEC) enforcement actions, and ERISA, Attorneys General, employment, civil rights, insurance, environmental, wage and hour, and other class action cases. **A.B. Data's work in all aspects of class action administration** has been perfected by decades of experience in hundreds of class action cases involving billions of dollars in total settlements. Dedicated professionals deliver **A.B. Data's all-inclusive services,** working in partnership with its clients to administer their class action cases effectively, efficiently, and affordably, regardless of size or scope.

**A.B. Data offers unmatched resources and capacity** and is capable of expertly administering any class action notice, settlement, and/or fund administration. Whether notifying millions of class members in the United States or throughout the world, processing millions of claims, distributing payments digitally via A.B. Data's Digital PayPortal℠, or printing and distributing millions of checks, **A.B. Data matches its talent and technology** to the specific needs of its clients, delivering unparalleled service on time and on budget without ever compromising quality.

## Location, Ownership Structure

**A.B. Data is an independently owned**, more than 40-year-old, Milwaukee, Wisconsin-based company that prides itself on its vast expertise and industry-leading innovations. We like to remind our clients and partners that we're not just a class action administration company, but a group of experienced, dedicated professionals who believe that relationships are just as important as the accurate and timely management of class action administrations. In other words, we are people who do business with people.

## Services

**Every A.B. Data client is deserving of the best job we can put forward**. A.B. Data makes class action administration easy for our clients with clarity, convenience, and efficiency. Our priority is to navigate the intricacies of our clients' matters and deliver successful results by using our solid expertise, advanced technology, and top-quality products and services. We pay attention to the details and get it right the first time.

We aim to provide our clients the full experience of a truly collaborative working relationship. It is why we believe much of our success originates from our philosophy of "people doing business with people."

# Services

## All Digital — From Notice to Distribution

**A.B. Data is uniquely positioned to design, implement, and maintain notice and settlement administration programs** using an innovative, "all-digital" approach that replaces the more traditional and less efficient methods of administration, such as newspaper ads, mailed notices, and paper checks. Many of our recent proposed notice plans and claim programs utilize the latest technologies such as microtargeted digital ads for notice, streamlined online claims, and distributing settlement funds electronically using a digital paywall. These methods provide significant cost savings, are consistent with the amendments to Rule 23 that are now in effect, and importantly provide much-needed alignment of class action notice and administration with current consumer behaviors.

## Pre-Settlement Consultation

**The pre-settlement consultation is a collaborative session** designed to help A.B. Data clients prepare a stronger case. Our support teams simplify the task of sorting through a maze of documents during investigation and discovery, streamlining the process and preserving fund assets. From there, we assist with fully interactive media packages for court presentations and settlement negotiations. A.B. Data works closely with our clients, offering expert testimony on documents, processing, class and notice manageability, and proposed plans of allocation.

## Media Services

**A.B. Data continues to earn our reputation** as the early innovator in integrating advanced micro-targeting techniques, including contextual targeting, behavioral targeting, and predictive modeling. Coupled with inventive digital media strategies to drive claims, case-specific banner ad development, class member research, and comScore analysis services, our multi-tiered media programs are designed to cost-effectively deliver notice to potential class members and increase claims rates.

## Notice Administration

**In A.B. Data, clients have a comprehensive resource** with a depth of experience in direct notice. Our compliance and understanding of Rule 23 of the Federal Rules of Civil Procedure are crucial in meeting the "plain language" legal requirements for any campaign. From our sophisticated digital media capabilities and extensive global experience with class member research, our experts create notice documents that are easily understandable and cost-efficient to produce. We consult with our clients to deliver notice documents from multi-page, mailed, or emailed notice packets to concise postcards that establish the most influential and cost-effective means of communicating with potential claimants.

## Claims Processing

**A.B. Data continues to bring game-changing technologies** to improve the speed and precision in claims processing. Our robust system for online claims submissions allows us to meticulously verify data and documentation, preserve and authenticate claims, and calculate and verify settlement amounts. In addition, our data network infrastructure includes on-site data storage, backup, contingency plans, and security for electronic and hard copy claim filings. It is all part of a total commitment to be the most innovative and comprehensive resource in the industry. At A.B. Data, we take pride in having the in-house capacity to process millions of pages, as well as the organizational integrity to treat every claim as if it were the only one.

## Contact Center

**A.B. Data's Contact Center is comprised of a full staff** that is trained on and equipped with online and telecommunication systems to monitor and connect with class members. Associates routinely monitor class member communication for all class action administrations, including antitrust, consumer, and securities.

Utilizing monitoring software, associates watch multiple social media channels simultaneously, allowing for instantaneous routing of inquiries and interaction with claimants. Detailed and concise analytical reports outlining Contact Center activities are always provided.

Our Contact Center and case websites are capable of handling millions of class member engagements, as recently displayed in a campaign which garnered over 1.2 million website visits in two months and had more than 72,500 Facebook engagements. Facebook comments and threads are monitored and claimants are guided to the website for more information. Google AdWords and display advertising have also brought hundreds of thousands of visitors to various case websites.

A.B. Data's Contact Center also has Spanish language associates in-house and we can accommodate any language, given proper lead time. Traditional call center facilities are also available, if needed.

## Case Websites

**We offer a state-of-the-art technology platform** that supports every step of our class action administration process. Our expert marketing professionals design customized case-specific websites that provide potential class members easy access to case information, critical documents, important deadlines, as well as the capability to file claim forms and register for future mailings about the case. Claimants can use the website to elect to receive their settlement payments by mail or by one of several digital payment options, all accessible by mobile devices.

## Settlement Fund Distribution

**From complete escrow services to establishment of qualified settlement funds**, check printing and mailing, electronic cash or stock distribution and tax services, A.B. Data has always provided a full-service solution to Settlement Fund Distribution. Our IT team has decades of experience in developing and implementing fast, secure databases and claims administration systems that ensure class members receive the correct amount in their settlement disbursement. Today's digital capabilities allow even greater convenience for class members. In certain instances, claimants can now elect to

instantaneously receive settlement payments through popular digital-payment options, such as PayPal, Amazon, and virtual debit cards.

## A.B. Data's Leadership

**A.B. Data's administration team** is composed of the following key executives, who collectively have decades of experience settling and administering class actions:

**Bruce A. Arbit, Co-Managing Director** and one of the founders of the A.B. Data Group, serves as Chairman of the Board and oversees the day-to-day operations of the A.B. Data Group of companies, employing almost 400 people in the United States and Israel. Mr. Arbit is also Chairman of the Board of Integrated Mail Industries, Ltd. and has served as a member of the Board of Directors of University National Bank and State Financial Bank. He is the past Chairman of Asset Development Group, Inc., Home Source One, and American Deposit Management and is a member of the National Direct Marketing Association, the Direct Marketing Fundraising Association, and the American Association of Political Consultants. He was named 1996 Direct Marketer of the Year by the Wisconsin Direct Marketing Association.

A.B. Data's work in class action litigation support began with the Court selecting A.B. Data to oversee the restitution effort in the now-famous Swiss Banks Class Action Case, the International Commission on Holocaust Era Insurance Claims, and every other Holocaust Era Asset Restitution program, in which it was the company's job to identify, contact, and inform survivors of the Holocaust. A.B. Data delivered by reaching out to millions of people in 109 countries who spoke more than 30 languages. Since those days, Mr. Arbit has guided the class action division through phenomenal growth and success. Today, A.B. Data manages hundreds of administrations annually that distributes billions of dollars to class members.

**Thomas R. Glenn, President**, Mr. Glenn's management of A.B. Data's Class Action Administration Company includes designing and implementing notice plans and settlement administration programs for antitrust, securities, and Securities and Exchange Commission settlements and SEC disgorgement fund distributions, as well as consumer, employment, insurance, and civil rights class actions. Mr. Glenn previously served as Executive Vice President at Rust Consulting and has more than 30 years of executive leadership experience.

**Eric Miller, Senior Vice President**, as a key member of A.B. Data's Class Action Administration Leadership Team, oversees the Case Management Department and supervises the operations and procedures of all of A.B. Data's class action administration cases. Mr. Miller is recognized in the class action administration industry as an expert on securities, SEC, consumer, product recall, product liability, general antitrust, pharmaceutical antitrust, and futures contract settlements, to name a few settlement types. Prior to joining A.B. Data, Mr. Miller served as the Client Service Director for Rust Consulting, responsible there for its securities practice area. He has more than 20 years of operations, project management, quality assurance, and training experience in the class action administration industry. In addition, Mr. Miller manages A.B. Data's office in Palm Beach Gardens, Florida.

**Justin Parks, Senior Vice President**, is a member of A.B. Data's Class Action Administration Leadership Team. Mr. Parks brings extensive experience in client relations to A.B. Data's business development team. Mr. Parks has over 15 years of experience in the legal settlement administration services industry and has successfully managed and consulted on notice plans and other administrative aspects in hundreds of cases. Mr. Parks is uniquely experienced in Data Privacy matters, having consulted with clients on numerous matters stemming from data breaches as well as violations of the Illinois Biometric Information Privacy Act (BIPA), including some of the first ever Biometric Privacy related settlements in history. Mr. Parks' knowledge and understanding of the class action industry, as well as his client relationship skills, expand A.B. Data's capacity to achieve its business development and marketing goals effectively.

**Elaine Pang, Vice President, Media**, oversees the Media Department and is responsible for the direction, development, and implementation of media notice plans for A.B. Data's clients. Ms. Pang brings more than 15 years of experience in developing and implementing multifaceted digital and traditional media for high profile complex legal notice programs. She uses her experience in class actions and advertising to provide the best practicable notice plans for large scale campaigns across domestic and international regions, and she leverages her expertise to better understand the evolving media landscape and utilize cutting-edge technology and measurement tools. Prior to entering the class action industry, Ms. Pang worked with many leading reputable brands, including General Mills, Air Wick, Jet-Dry, Comedy Central, Madison Square Garden, Radio City Music Hall, and Geox. She earned her MBA from Strayer University and holds a BS in Marketing from Pennsylvania State University. Ms. Pang's credentials include Hootsuite Social Marketing Certification, Google Adwords and Analytics Certification, and IAB Digital Media Buying and Planning Certification.

**Paul Sauberer, Vice President of Quality**, is responsible for overseeing quality assurance and process management, working diligently to mitigate risk, ensure exceptional quality control, and develop seamless calculation programming. Mr. Sauberer brings more than 20 years of experience as a quality assurance specialist with a leading claims-processing company where he developed extensive knowledge in securities class action administration. He is recognized as the class action administration industry's leading expert on claims and settlement administrations of futures contracts class actions.

**Steve Straub, Vice President, Operations**, started with A.B. Data in 2012 as a Claims Administrator. He moved through the ranks within the company where he spent the past five years as Senior Project Manager managing many of the complex commodities cases such as *In re LIBOR-Based Financial Instruments Antitrust Litigation*, *In re London Silver Fixing, Ltd. Antitrust Litigation*, and *Laydon v. Mizuho Bank, Ltd., et al*. Mr. Straub's performance in these roles over the past ten years, along with his comprehensive knowledge of company and industry practices and first-person experience leading the project management team, has proven him an invaluable member of the A.B. Data team.

In his role as Vice President of Operations, his responsibilities include developing efficiencies within the operations center, which includes mailroom, call center, and claims processing areas. His areas of expertise include business process development, strategic/tactical operations planning and implementation, risk analysis, budgeting, business expansion, growth planning and implementation, cost reduction, and profit, change, and project management. Mr. Straub is well-versed in the administration of securities, consumer, and antitrust class action settlements. He earned his Juris Doctor degree from Seton Hall University School of Law in Newark, New Jersey.

**Jack Ewashko, Director of Client Services**, brings twenty years of industry and brokerage experience to his role with A.B. Data. He is an accomplished client manager adept at facilitating proactive communications between internal and outside parties to ensure accurate and timely deliverables. Mr. Ewashko previously held positions at two claim administration firms where he

oversaw the securities administration teams and actively managed numerous high-profile matters, including the $2.3 billion foreign exchange litigation. He notably served as Vice President, FX and Futures Operations at Millennium Management, a prominent global alternative investment management firm. As he progressed through trading, analytic, management, and consultancy roles at major banks and brokerage firms, Mr. Ewashko gained hands-on experience with vanilla and exotic securities products, including FX, commodities, mutual funds, derivatives, OTC, futures, options, credit, debt, and equities products. In the financial sector, he also worked closely with compliance and legal teams to ensure accuracy and conformity with all relevant rules and regulations regarding the marketing and sale of products, as well as the execution and processing of trades. He has held Series 4, Series 6, Series 7, and Series 63 licenses, and has been a member of the Futures Industry Association (FIA) and Financial Industry Regulatory Authority (FINRA). Mr. Ewashko earned his Bachelor of Business Administration from Long Island University, Brooklyn, New York.

**Brian Devery, Director of Client Services**, brings more than a decade of experience in class action administration and project management, as well as over two decades of experience as an attorney (ret.). Mr. Devery currently focuses on consumer, antitrust, employment, and other non-securities based administrations. In addition to driving project administration, he is focused on the implementation of process improvement, streamlining, and automation. Mr. Devery is admitted to practice law in State and Federal Courts of New York with his Juris Doctorate earned from the Maurice A. Deane School of Law at Hofstra University, Hempstead, New York.

**Adam Walter, PMP, Director of Client Services**, has nearly fifteen years of experience managing the administration of securities class action settlements and SEC disgorgements totaling more than $4 billion. He has managed settlement programs in engagements involving some of the largest securities class action settlements and is a key contributor to the development of administration strategies that meet the evolving needs of our clients. His responsibilities include developing case administration strategies to ensure that all client and court requirements and objectives are met, overseeing daily operations of case administrations, ensuring execution of client deliverables, providing case-related legal and administration support to class counsel, overseeing notice dissemination programs, implementing complex claims-processing and allocation methodologies, establishing quality assurance and quality control procedures, and managing distribution of settlement funds. Mr. Walter holds a bachelor's degree in business administration from Florida Atlantic University, Boca Raton, Florida. He also has been an active member of the Project Management Institute since 2010 and is PMP®-certified.

**Eric Nordskog, Director of Client Services**, started with A.B. Data in 2012 on the operations team, managing dozens of team leads and claims administrators in the administration of legal cases and actions. In 2017, Mr. Nordskog was promoted to Project Manager, due in part to his proven ability to add consistency and efficiency to the e-claim filing process with new streamlined processes and audit practices. Today, as Senior Project Manager, he directs many of A.B. Data's securities, insurance, and consumer cases. He regularly oversees the administration of large insurance cases, such as two recent Cigna Insurance matters that involved complex calculations and over one million class members each. He is also the primary hiring and training manager for new project managers and coordinators. Mr. Nordskog earned his Juris Doctor degree from Marquette University Law School, Milwaukee, in 2001.

**Eric Schultz, MCSE, Information Technology Manager and Security Team Chairperson**, has been with A.B. Data for more than 19 years, and is currently responsible for overseeing all information technology areas for all A.B. Data divisions across the United States and abroad, including network infrastructure and architecture, IT operations, data security, disaster recovery, and all physical, logical, data, and information systems security reviews and audits required by our clients or otherwise. As a Microsoft Certified Systems Engineer (MCSE) with more than 25 years of experience in information

Case No. 1:11-cv-01882 (RJL).

technology systems and solutions, Mr. Schultz has developed specializations in network security, infrastructure, design/architecture, telephony, and high-availability network systems.

## Secure Environment

**A.B. Data's facilities provide the highest level of security** and customization of security procedures, including:

- A Secure Sockets Layer server
- Video monitoring
- Limited physical access to production facilities
- Lockdown mode when checks are printed
- Background checks of key employees completed prior to hire
- Frequency of police patrol – every two hours, with response time of five or fewer minutes
- Disaster recovery plan available upon request

## Data Security

**A.B. Data is committed to protecting the confidentiality, integrity, and availability of personal identifying information** and other information it collects from our clients, investors, and class members and requires that its employees, subcontractors, consultants, service providers, and other persons and entities it retains to assist in distributions do the same. A.B. Data has developed an Information Security Policy, a suite of policies and procedures intended to cover all information security issues and bases for A.B. Data, and all of its divisions, departments, employees, vendors, and clients. A.B. Data has also recently taken the necessary, affirmative steps toward compliance with the EU's General Data Protection Regulation and the California Consumer Privacy Act.

A.B. Data has a number of high-profile clients, including the Securities and Exchange Commission (SEC), the United States Department of Justice, the Attorneys General of nearly all 50 states, other agencies of the United States government, and the Government of Israel, as well as direct banking and payment services companies with some of the most recognized brands in United States financial services and some of the largest credit card issuers in the world.

We are therefore frequently subjected to physical, logical, data, and information systems security reviews and audits. We have been compliant with our clients' security standards and have also been determined to be compliant with ISO/IEC 27001/2 and Payment Card Industry (PCI) data-security standards, the Gramm-Leach-Bliley Act (GLB) of 1999, the National Association of Insurance Commissioners (NAIC) Regulations, the Health Insurance Portability and Accountability Act (HIPAA) of 1996, and the Health Information Technology for Economic and Clinical Health Act (HITECH).

The Government of Israel has determined that A.B. Data is compliant with its rigorous security standards in connection with its work on Project HEART (Holocaust Era Asset Restitution Taskforce).

A.B. Data's fund distribution team has been audited by EisnerAmper LLP and was found compliant with class action industry standards and within 99% accuracy. EisnerAmper LLP is a full-service advisory and accounting firm and is ranked the 15th-largest accounting firm in the United States.

In addition, as part of PCI compliance requirements, A.B. Data has multiple network scans and audits from third-party companies, such as SecurityMetrics and 403 Labs, and is determined to be compliant with each of them.

## Fraud Prevention and Detection

**A.B. Data is at the forefront of class action fraud prevention.**

A.B. Data maintains and utilizes comprehensive proprietary databases and procedures to detect fraud and prevent payment of allegedly fraudulent claims.

We review and analyze various filing patterns across all existing cases and claims. Potential fraudulent filers are reported to our clients as well as to the appropriate governmental agencies where applicable.

## Representative Class Action Engagements

**A.B. Data and/or its team members have successfully administered** hundreds of class actions, including many major cases. Listed below are just some of the most representative or recent engagements.

### Consumer & Antitrust Cases

- *In re EpiPen Marketing, Sales Practices and Antitrust Litigation*
- *In re Broiler Chicken Antitrust Litigation - Commercial (Indirect)*
- *In re Broiler Chicken Antitrust Litigation – Indirect*
- *In re Broiler Chicken Antitrust Litigation – Direct*
- *In re Pork Antitrust Litigation – Directs*
- *In re Pork Antitrust Litigation – Indirects*
- *Peter Staley, et al. v. Gilead Sciences, Inc., et al.*
- *In re: Opana ER Antitrust Litigation*
- *In re Ranbaxy Generic Drug Application Antitrust Litigation*
- *In re Valeant Pharmaceuticals Int'l, Inc. Third-Party Payor Litigation*
- *Staley, et al., v. Gilead Sciences*
- *In Re: Generic Pharmaceuticals Pricing Antitrust Litigation – Direct Purchasers*
- *Beef Direct Purchaser Antitrust Litigation*
- *BCBSM, Inc. v. Vyera Pharmaceuticals, et al.* (Daraprim)
- *In re Automobile Antitrust Cases I and II*
- *Olean Wholesale Grocery Cooperative, Inc., et al. v. Agri Stats, Inc., et al.* (Turkey)

- *Integrated Orthopedics, Inc., et al. v. UnitedHealth Group, et al.*
- *In Re: Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*
- *Vista Healthplan, Inc., et al. v. Cephalon, Inc., et al.* (Provigil)
- *Jeffrey Koenig, et al. v. Vizio, Inc.*
- *Wit, et al. v. United Behavioral Health*
- *Weiss, et al. v. SunPower Corporation*
- *Smith, et al. v. FirstEnergy Corp., et al.*
- *Resendez, et al. v. Precision Castparts Corp. and PCC Structurals, Inc.*
- *Julian, et al. v. TTE Technology, Inc., dba TCL North America*
- *Eugenio and Rosa Contreras v. Nationstar Mortgage LLC*
- *Phil Shin, et al. v. Plantronics, Inc.*
- *In re: Qualcomm Antitrust Litigation*
- *In re Resistors Antitrust Litigation*
- *The Hospital Authority of Metropolitan Government of Nashville and Davidson County, Tennessee v. Momenta Pharmaceuticals, Inc. and Sandoz Inc.* ("Lovenox Antitrust Matter")
- *William Kivett, et al. v. Flagstar Bank, FSB, and DOES 1-100, inclusive*
- *Adelphia, Inc. v. Heritage-Crystal Clean, Inc.*
- *LLE One, LLC, et al. v. Facebook, Inc.*
- *Bach Enterprises, Inc., et al. v. Advanced Disposal Services South, Inc., et al.*
- *JWG Inc., et al. v. Advanced Disposal Services Jacksonville, L.L.C., et al.*
- *State of Washington v. Motel 6 Operating L.P. and G6 Hospitality LLC*
- *In re GSE Bonds Antitrust Litigation*
- *Wave Lengths Hair Salons of Florida, Inc., et al. v. CBL & Associates Properties, Inc., et al.*
- *In re Loestrin 24 FE Antitrust Litigation*
- *Office of the Attorney General, Department of Legal Affairs, State of Florida v. Pultegroup, Inc. and Pulte Home Company, LLC*
- *In re Cigna-American Specialties Health Administration Fee Litigation*
- *In re: Intuniv Antitrust Litigation*
- *High Street, et al. v. Cigna Corporation, et al.*
- *Gordon Fair, et al. v. The Archdiocese of San Francisco, San Mateo, and Marin County*
- *Bizzarro, et al. v. Ocean County Department of Corrections, et al.*
- *Meeker, et al. v. Bullseye Glass Co.*
- *MSPA Claims 1, LLC v. Ocean Harbor Casualty Insurance Company*
- *Tennille v. Western Union Company - Arizona*
- *Garner, et al. v. Atherotech Holdings, Inc.* and *Garner, et al. v. Behrman Brothers IV, LLC, et al.*
- *Robinson, et al. v. Escallate, LLC*
- *Josefina Valle and Wilfredo Valle, et al. v. Popular Community Bank f/k/a Banco Popular North America*
- *Vision Construction Ent., Inc. v. Waste Pro USA, Inc. and Waste Pro USA, Inc. and Waste Pro of Florida, Inc.*
- *Plumley v. Erickson Retirement Communities, et al.*
- *In re London Silver Fixing, Ltd. Antitrust Litigation*
- *Ploss v. Kraft Foods Group, Inc. and Mondelēz Global LLC*
- *In re Mexican Government Bonds Antitrust Litigation*
- *In re Ready-Mixed Concrete Antitrust Litigation*
- *In re: Marine Hose Antitrust Litigation*
- *Iowa Ready Mixed Concrete Antitrust Litigation*
- *In re Potash Antitrust Litigation (II)*
- *In re Evanston Northwestern Healthcare Corp. Antitrust Litigation*
- *In re Polyurethane Foam Antitrust Litigation*

- *In re LIBOR-Based Financial Instruments Antitrust Litigation*
- *In re Lorazepam and Clorazepate Antitrust Litigation*
- *In re Cardizem CD Antitrust Litigation*
- *Vista Healthplan, Inc., and Ramona Sakiestewa v. Bristol-Myers Squibb Co., and American BioScience, Inc.*
- *In re Lupron Marketing and Sales Practices Litigation*
- *In re Terazosin Hydrochloride Antitrust Litigation*
- *In re Warfarin Sodium Antitrust Litigation*
- *Rosemarie Ryan House, et al. v. GlaxoSmithKline PLC and SmithKline Beecham Corporation*
- *Carpenters and Joiners Welfare Fund, et al. v. SmithKline Beecham*
- *New Mexico United Food and Commercial Workers Union's and Employers' Health and Welfare Trust Fund, et al. v. Purdue Pharma L.P.*
- *In Re Pharmaceutical Industry Average Wholesale Price Litigation*
- *Alma Simonet, et al. v. SmithKline Beecham Corporation, d/b/a GlaxoSmithKline*
- *In re Relafen Antitrust Litigation*
- *In Re Remeron Direct Purchaser Antitrust Litigation*
- *In re TriCor Indirect Purchasers Antitrust Litigation*
- *Nichols, et al., v. SmithKline Beecham Corporation*
- *In re: DDAVP Indirect Purchaser Antitrust Litigation*

## Securities Cases

- *Plymouth County Retirement Association v. Spectrum Brands Holdings, Inc., et al.*
- *Tung, et al. v. Dycom Industries, Inc., et al.*
- *Boutchard., et al. v. Gandhi, et al.* ("Tower/e-Minis")
- *MAZ Partners LP v. First Choice Healthcare Solutions, Inc.*
- *SEB Investment Management AB, et al. v. Symantec Corporation, et al.*
- *In re Impinj, Inc. Securities Litigation*
- *In re Netshoes Securities Litigation*
- *Yellowdog Partners, LP, et al. v. Curo Group Holdings Corp., et al.*
- *In re Brightview Holdings, Inc. Securities Litigation*
- *In re Obalon Therapeutics, Inc. Securities Litigation*
- *In re Willis Towers Watson PLC Proxy Litigation*
- *In re Blue Apron Holdings, Inc. Securities Litigation*
- *In re: Qudian Inc. Securities Litigation*
- *Plymouth County Contributory Retirement System v. Adamas Pharmaceuticals, et al.*
- *In re Perrigo Company PLC Securities Litigation*
- *Enriquez, et al. v. Nabriva Therapeutics PLC, et al.*
- *Teamsters Local 456 Pension Fund, et al. v. Universal Health Services, Inc., et al.*
- *Olenik, et al. v. Earthstone Energy, Inc.*
- *Shenk v. Mallinckrodt plc, et al.*
- *In re The Allstate Corp. Securities Litigation*
- *Christopher Vataj v. William D. Johnson, et al.* (PG&E Securities II)
- *Kirkland v. WideOpenWest, Inc.*
- *Oklahoma Police Pension and Retirement System v. Sterling Bancorp, Inc.*
- *In re Uxin Limited Securities Litigation*
- *City of Hallandale Beach Police Officers' & Firefighters' Personnel Retirement Trust v. Ergen, et al.* (Echostar)
- *Lewis v. YRC Worldwide Inc., et al.*
- *Tomaszewski v. Trevena, Inc., et al.*

Case No. 1:11-cv-01882 (RJL).

- *In re Restoration Robotics, Inc. Securities Litigation*
- *Public Employees' Retirement Systems of Mississippi, et al. v. Treehouse Foods, Inc., et al.*
- *Ronald L. Jackson v. Microchip Technology, Inc., et al.*
- *In re Micro Focus International plc Securities Litigation*
- *In re Dynagas LNG Partners LP Securities Litigation*
- *Weiss, et al. v. Burke, et al.* (Nutraceutical)
- *Yaron v. Intersect ENT, Inc., et al.*
- *Utah Retirement Systems v. Healthcare Services Group, Inc., et al.*
- *In re PPDAI Group Inc. Securities Litigation*
- *In re: Evoqua Water Technologies Corp. Securities Litigation*
- *In re Aqua Metals, Inc. Securities Litigation*
- *St. Lucie County Fire District Firefighters' Pension Trust Fund v. Southwestern Energy Company*
- *In re CPI Card Group Inc. Securities Litigation*
- *Arkansas Teacher Retirement System, et al. v. Alon USA Energy, Inc., et al.*
- *In re TAL Education Group Securities Litigation*
- *GCI Liberty Stockholder Litigation*
- *In re SciPlay Corporation Securities Litigation*
- *In re Allergan Generic Drug Pricing Securities Litigation*
- *In re Vivint Solar, Inc. Securities Litigation*
- *In re YayYo Securities Litigation*
- *In re JPMorgan Treasury Futures Spoofing Litigation*
- *Searles, et al. v. Crestview Partners, LP, et al.* (Capital Bank)
- *In re Lyft, Inc. Securities Litigation*
- *In re Aegean Marine Petroleum Network, Inc. Securities Litigation*
- *In re JPMorgan Precious Metals Spoofing Litigation*
- *In re Pivotal Software, Inc. Securities Litigation*
- *Longo, et al. v. OSI Systems, Inc., et al.*
- *In re Homefed Corporation Stockholder Litigation*
- *Pierrelouis v. Gogo Inc., et al.*
- *Pope v. Navient Corporation, et al.*
- *In re Merit Medical Systems, Inc. Securities Litigation*
- *In re Frontier Communications Corporation Stockholder Litigation*
- *Holwill v. AbbVie Inc.*
- *Budicak, Inc., et al. v. Lansing Trade Group, LLC, et al.* (SRW Wheat Futures)
- *Yannes, et al. v. SCWorx Corporation*
- *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*
- *In re Myriad Genetics, Inc. Securities Litigation*
- *In re Chicago Bridge & Iron Co. N.V. Securities Litigation*
- *The Arbitrage Fund, et al. v. William Petty, et al.* (Exactech)
- *In re Columbia Pipeline Group, Inc. Merger Litigation*
- *Martinek v. AmTrust Financial Services, Inc.*
- *City of Pittsburgh Comprehensive Municipal Pension Trust Fund, et al. v. Benefitfocus, Inc., et al.*
- *In re: Evoqua Water Technologies Corp. Securities Litigation*
- *Laydon v. Mizuho Bank, Ltd., et al.*
- *Lomingkit, et al. v. Apollo Education Group, Inc., et al.*
- *In re Caraco Pharmaceutical Laboratories, Ltd. Shareholder Litigation*
- *Norfolk County Retirement System, et al. v. Community Health Systems, Inc., et al.*
- *Chester County Employees' Retirement Fund v. KCG Holdings, Inc., et al.*
- *Oklahoma Law Enforcement Retirement System, et al. v. Adeptus Health Inc., et al.*
- *Di Donato v. Insys Therapeutics, Inc., et al.*

Case No. 1:11-cv-01882 (RJL).

- *Lundgren-Wiedinmyer, et al. v. LJM Partners, Ltd, et al.*
- *Martin, et al. v. Altisource Residential Corporation, et al.*
- *Stephen Appel, et al. v. Apollo Management, et al.*
- *In re Medley Capital Corporation Stockholder Litigation*
- *Forman, et al. v. Meridian BioScience, Inc., et al.*
- *Public Employees' Retirement System of Mississippi, et al. v. Endo International PLC, et al.*
- *In Re Flowers Foods, Inc. Securities Litigation*
- *Jiangchen, et al. v. Rentech, Inc., et al.*
- *In re Liberty Tax, Inc. Stockholder Litigation*
- *In re RH, Inc. Securities Litigation*
- *Lazan v. Quantum Corporation, et al.*
- *Nabhan v. Quantum Corporation, et al.*
- *Edmund Murphy III, et al. v. JBS S.A.*
- *Public Employees' Retirement System of Mississippi, et al. v. Sprouts Farmers Market, Inc., et al.*
- *In re Starz Stockholder Litigation*
- *Judith Godinez, et al. v. Alere Inc., et al.*
- *Rahman and Giovagnoli, et al. v. GlobalSCAPE, Inc., et al.*
- *Arthur Kaye, et al. v. ImmunoCellular Therapeutics, Ltd., et al.*
- *In re CPI Card Group Inc. Securities Litigation*
- *Daniel Aude, et al. v. Kobe Steel, Ltd., et al.*
- *In re Quality Systems, Inc. Securities Litigation*
- *Cooper, et al. v. Thoratec Corporation, et al.*
- *Washtenaw County Employees' Retirement System, et al. v. Walgreen Co., et al.*
- *Elkin v. Walter Investment Management Corp., et al.*
- *In Re CytRx Corporation Securities Litigation*
- *Ranjit Singh, et al. v. 21Vianet Group, Inc., et al.*
- *In re PTC Therapeutics, Inc. Securities Litigation*
- *Securities and Exchange Commission v. Mark A. Jones*
- *In re Sequans Communications S.A. Securities Litigation*
- *In re Henry Schein, Inc. Securities Litigation*
- *Ronge, et al. v. Camping World Holdings, Inc., et al.*
- *Oklahoma Firefighters Pension & Retirement System v. Lexmark International, Inc.*
- *Christakis Vrakas, et al. v. United States Steel Corporation, et al.*
- *Emerson et al. v. Mutual Fund Series Trust, et al.* ("Catalyst")
- *In re Fannie Mae 2008 Securities Litigation*
- *In re Anadarko Petroleum Corporation Class Action Litigation*
- *Ge Dandong, et al., v. Pinnacle Performance Limited, et al.*
- *In Re: Rough Rice Commodity Litigation*
- *Xuechen Yang v. Focus Media Holding Limited et al.*
- *In re Massey Energy Co. Securities Litigation*
- *In re Swisher Hygiene, Inc.*
- *The City of Providence vs. Aeropostale, Inc., et al.*
- *In re Metrologic Instruments, Inc. Shareholders Litigation*
- *Public Pension Fund Group v. KV Pharmaceutical Company et al.*
- *Pension Trust Fund for Operating Engineers, et al. v. Assisted Living Concepts, Inc., et al.*
- *In re Lehman Brothers Equity/Debt Securities Litigation*
- *In re: Platinum and Palladium Commodities Litigation* (Platinum/Palladium Physical Action)
- *In re: Platinum and Palladium Commodities Litigation* (Platinum/Palladium Futures Action)
- *In re General Electric Co. Securities Litigation*
- *In re CNX Gas Corporation Shareholders Litigation*

Case No. 1:11-cv-01882 (RJL).

- *Oscar S. Wyatt, Jr. et al. v. El Paso Corporation, et al.*
- *In re Par Pharmaceutical Securities Litigation*
- *In re Par Pharmaceutical Companies, Inc. Shareholders Litigation*
- *In re Delphi Financial Group Shareholders Litigation*
- *In re SLM Corporation Securities Litigation*
- *In re Del Monte Foods Company Shareholder Litigation*
- *Leslie Niederklein v. PCS Edventures!.com, Inc. and Anthony A. Maher*
- *In re Beckman Coulter, Inc. Securities Litigation*
- *Michael Rubin v. MF Global, Ltd., et al.*
- *Allen Zametkin v. Fidelity Management & Research Company, et al.*
- *In re BP Prudhoe Bay Royalty Trust Securities Litigation*
- *Police and Fire Retirement System of the City of Detroit et al. v. SafeNet, Inc., et al.*
- *In re Limelight Networks, Inc. Securities Litigation*
- *In re Gilead Sciences Securities Litigation*
- *In re ACS Shareholder Litigation, Consolidated C.A. No. 4940-VCP*
- *Lance Provo v. China Organic Agriculture, Inc., et al.*
- *In re LDK Solar Securities Litigation*

## Labor & Employment Cases

- *Verizon OFCCP Settlement*
- *Alvarez, et al. v. GEO Secure Services, LLC*
- *Sartena v. Meltwater FLSA*
- *Carmen Alvarez, et al. v. Chipotle Mexican Grill, Inc., et al.*
- *Turner, et al. v. Chipotle Mexican Grill, Inc.*
- *Long, et al. v. Southeastern Pennsylvania Transportation Authority*
- *Matheson, et al. v. TD Bank, N.A.*
- *Ludwig, et al. v. General Dynamics Information Technology, Inc., et al.*
- *Bedel, et al. v. Liberty Mutual Group Inc.*
- *Irene Parry, et al. v. Farmers Insurance Exchange, et al.*
- *Maldonado v. The GEO Group, Inc.*
- *Alderman and Maxey v. ADT, LLC*
- *Albaceet v. Dick's Sporting Goods*
- *Rodriguez v. The Procter & Gamble Company*
- *Adekunle, et al. v. Big Bang Enterprises, Inc. d/b/a The Revenue Optimization Companies*
- *Gorski, et al. v. Wireless Vision, LLC*
- *Lopez, et al. v. New York Community Bank, et al.*
- *Hamilton, et al. v. The Vail Corporation, et al.*
- *Eisenman v. The Ayco Company L.P.*
- *Matheson v. TD Bank, N.A.*
- *Simon v. R.W. Express LLC, d/b/a Go Airlink NYC*
- *Perez v. Mexican Hospitality Operator LLC, d/b/a Cosme*
- *Shanahan v. KeyBank, N.A.*
- *Loftin v. SunTrust Bank*
- *Alvarez v. GEO Secure Services, LLC*
- *Weisgarber v. North American Dental Group, LLC*
- *Talisa Borders, et al. v. Wal-mart Stores, Inc.*
- *Reale v. McClain Sonics Inc., et al.*
- *Larita Finisterre and Songhai Woodard, et al. v. Global Contact Services, LLC*
- *Adebisi Bello v. The Parc at Joliet*

Case No. 1:11-cv-01882 (RJL).

- *Garcia, et al. v. Vertical Screen, Inc.*
- *Brook Lemma and Matthieu Hubert, et al. v. 103W77 Partners LLC, et al.* ("Dovetail Settlement")
- *American Federation of Government Employees, Local 1145 v. Federal Bureau of Prisons, U.S. Penitentiary, Atlanta, Georgia*
- *Lisa Ferguson, Octavia Brown, et al. v. Matthew G. Whitaker, Acting AG, DOJ Bureau of Prisons ("USP Victorville")*
- *American Federation of Government Employees, Local 2001 v. Federal Bureau of Prisons, Federal Correctional Institution, Fort Dix, New Jersey*
- *American Federation of Government Employees, Local 506 v. U.S. Department of Justice, Federal Bureau of Prisons, U.S. Penitentiary Coleman II, Coleman, Florida*
- *Vargas v. Sterling Engineering*
- *Rosenbohm v. Verizon*
- *Alex Morgan, et al. v. United States Soccer Federation, Inc.*
- *Iskander Rasulev v. Good Care Agency, Inc.*
- *Kyndl Buzas, et al., v. Phillips 66 Company and DOES 1 through 10*
- *American Federation of Government Employees, Local 408 v. U.S. Dept. of Justice, Federal Bureau of Prisons, Federal Correctional Complex, Butner, NC*
- *In re 2014 Avon Products, Inc. ERISA Litigation*
- *In re Eastman Kodak ERISA Litigation*
- *Taronica White, et al. v. Attorney General Loretta Lynch, Department of Justice*
- *Lisa Ferguson, et al. v. Acting Attorney General Matthew Whitaker, Department of Justice*
- *Melissa Compere v. Nusret Miami, LLC, et al.*
- *Abelar v. American Residential Services, L.L.C., Central District of California*
- *Flores, et al. v. Eagle Diner Corp., et al., Eastern District of Pennsylvania*
- *Michael Furman v. Godiva Chocolatier, Inc., 15th Judicial Circuit, Palm Beach County, Florida*
- *Finisterre et. al v. Global Contact Services, LLC, New York State Supreme Court, Kings County*
- *McGuire v. Intelident Solutions, LLC, et al., Middle District of Florida, Tampa Division*
- *Duran De Rodriguez, et al. v. Five Star Home Health Care Agency, Inc. et al., Eastern District of New York*

## Data Breach/BIPA Cases

- *Hunter v. J.S.T. Corp. BIPA Settlement*
- *Atkinson, et al. v. Minted, Inc.*
- *Rosenbach, et al. v. Six Flags Entertainment Corporation and Great America LLC*
- *Pratz, et al. v. MOD Super Fast Pizza, LLC*
- *The State of Indiana v. Equifax Data Breach Settlement*
- *In re: Vizio, Inc. Consumer Privacy Litigation*
- *In re: Google, Inc. Street View Electronic Communications Litigation*
- *Devin Briggs and Bobby Watson, et al. v. Rhinoag, Inc.* ("Briggs Biometric Settlement")
- *Trost v. Pretium Packaging L.L.C.*
- *In re: Barr, et al. v. Drizly, LLC f/k/a Drizly, Inc., et al.*

## Telephone Consumer Protection Act (TCPA) Cases

- *Perrong, et al. v. Orbit Energy & Power, LLC*
- *Baldwin, et al. v. Miracle-Ear, Inc.*
- *Floyd and Fabricant, et al. v. First Data Merchant Services LLC, et al.*
- *Hoffman, et al. v. Hearing Help Express, Inc., et al.*
- *Lowe and Kaiser, et al. v. CVS Pharmacy, Inc., et al.*
- *Johansen v. HomeAdvisor, Inc., et al.*

- *Charvat, et al. v. National Holdings Corporation*
- *Hopkins, et al. v. Modernize, Inc.*
- *Diana Mey vs. Frontier Communications Corporation*
- *Matthew Donaca v. Dish Network, L.L.C.*
- *Matthew Benzion and Theodore Glaser v. Vivint, Inc.*
- *John Lofton v. Verizon Wireless (VAW) LLC, et al.*
- *Lori Shamblin v. Obama for America, et al.*
- *Ellman v. Security Networks*

## For More Information

For more detailed information regarding A.B. Data's experience, services, or personnel, please see our website at **www.abdataclassaction.com**.

Case No. 1:11-cv-01882 (RJL).

# EXHIBIT C

# Withdrew Cash from a Non-Bank ATM and were Assessed a Surcharge?
# You Could Get Money From a $167.5 Million Settlement.

Records show you could be affected by a proposed $167.5 million Settlement in a class action lawsuit with Visa Inc., Visa U.S.A. Inc., Visa International Service Association, Plus System, Inc. ("Visa"), and Mastercard Incorporated and Mastercard International Incorporated d/b/a Mastercard Worldwide ("Mastercard"). The lawsuit claims Visa and Mastercard violated antitrust laws when they created operating rules that prohibited independent automated teller machine ("IATM") operators from charging different ATM surcharges (also called access fees). IATM operators were not allowed to "discount" or charge cardholders a lower access fee if transactions could be processed on competing networks that cost less than the Visa or Mastercard networks. Therefore, cardholders paid higher access fees to use IATMs than they should have. Visa and Mastercard deny the claims in the lawsuit and that they did anything wrong.

**What are the related lawsuits?**

This notice is about the case known as *Burke v. Visa Inc.*, No. 1:11-cv-01882 in the United States District Court for the District of Columbia. You may have received notices about two other related (or parallel) lawsuits in the same court called *Mackmin v. Visa Inc.*, No. 1:11-cv-01831 and *National ATM Council v. Visa Inc.*, No. 1:11-cv-01803 that are proceeding at the same time. Each case involves different groups with similar claims. The choices class members make in this case will not affect their rights in the other related lawsuits.

**Am I included?**

Generally, you are included in the Nationwide Class if you are in the United States, were charged a surcharge (or access fee) to withdraw cash from your deposit account using an ATM or pin-debit card at an independent ATM located in the United States (including its territories) between October 24, 2007, and [Date of Preliminary Approval], and were not fully reimbursed by your bank. You may also be part of the Statewide Classes for California, Illinois, Massachusetts, and Michigan. You may be able to get money from this Settlement. Visit the website, www.NonbankATMSurchargeSettlement.com, for more information and the full class definition.

**What does the Settlement provide?**

Visa will pay $88,775,000 and Mastercard will pay $78,725,000 into a Settlement Fund. After deductions for attorneys' fees, litigation costs, and other expenses; notice and administration costs; and service awards, the Settlement Fund will be distributed proportionally (or *pro rata*) to each valid claimant.

**How can I get payment?**

Submit a claim form online or by mail postmarked by [**Month 00, 202X**].

**What are my rights?**

Even if you do nothing, you will be bound by the Court's decisions. If you want to keep your right to sue Visa and Mastercard yourself, you must exclude yourself by [**Month 00, 2025**]. If you do not exclude yourself, you may object to the Settlement by [**Month 00, 2025**]. Details on how to request exclusion or object are available at www.NonbankATMSurchargeSettlement.com.

The Court will hold a hearing on [**Month 00, 2025**], to consider whether to approve the Settlement, a request for attorneys' fees of up to 30% of the Settlement Fund, reimbursement of costs and expenses, and service awards up to $17,500 for each of the class representatives. You or your own lawyer may appear and speak at the hearing at your own expense.

**For more information: 1-800-000-0000 www.NonbankATMSurchargeSettlement.com**

***Para recibir una notificación en español, llama al o visita nuestro sitio web.***

# EXHIBIT D

NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

# Withdrew Cash from a Non-Bank ATM and were Assessed a Surcharge?

## You Could Get Money From a $167.5 Million Settlement.

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- There is a proposed Settlement in a class action lawsuit that says Visa Inc., Visa U.S.A. Inc., Visa International Service Association, Plus System, Inc. ("Visa") and Mastercard Incorporated and Mastercard International Incorporated d/b/a Mastercard Worldwide ("Mastercard") network operating rules violated antitrust laws by prohibiting independent automated teller machine ("IATM") operators from charging differential ATM surcharges (also called access fees). IATM operators were not allowed to "discount" or charge cardholders a lower access fee if transactions could be processed on competing networks that cost less than the Visa or Mastercard networks. Therefore, cardholders paid higher access fees to use IATMs than they should have. Visa and Mastercard deny they did anything wrong.
- Generally, you are included in the Settlement as part of the Nationwide Class if you are in the United States, were charged a surcharge (or access fee) to withdraw cash from your deposit account using an ATM or pin-debit card at an independent ATM (an ATM not owned by a bank or financial institution) located in the United States (including its territories). You may also be included as part of the Statewide Classes for California, Illinois, Massachusetts, and Michigan. You may be able to get money from this Settlement if your cash withdrawal transactions were made between October 24, 2007, and [Date of Preliminary Approval], and were not fully reimbursed by your bank.
- The $167.5 million Settlement Fund will pay (1) attorneys' fees, costs, and expenses; (2) notice and administration costs; (3) taxes and tax expenses; (4) service awards to the class representatives; and (5) money to eligible Class Members.
- Please carefully read this Notice and the Settlement Agreement available at www.NonbankATMSurchargeSettlement.com. Your legal rights may be affected whether you act or do not act.

| YOUR LEGAL RIGHTS AND OPTIONS | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM FORM** | You must submit a valid claim form to get a payment in this Settlement. | **[Month 00, 2026]** |
| **EXCLUDE YOURSELF** | This is the only option that allows you to sue Visa or Mastercard on your own, or as part of any other lawsuit, for the claims in this case. If you exclude yourself, you will not be eligible to get a payment from the Settlement. | **[Month 00, 2026]** |

| YOUR LEGAL RIGHTS AND OPTIONS | | DEADLINE |
|---|---|---|
| | You can exclude yourself from the Settlement by mailing a letter to the Claims Administrator saying you want to opt out. | |
| **OBJECT** | You can write the Court about why you like or do not like the Settlement. | **[Month 00, 2026]** |
| **ATTEND A HEARING** | You can also ask to speak to the Court at the hearing about the fairness of the Settlement, with or without your own attorney. | **[Month 00, 2026]** |
| **DO NOTHING** | If you do nothing, you will not get any money from this Settlement. You will also give up your legal right to sue Visa and Mastercard for the claims in this case. | No Deadline |

- These rights and options—and the deadlines to exercise them—are explained in this Notice.
- The Court in charge of this case still has to decide whether to approve the Settlement.
- Payments will only be made if the Court approves the Settlement and after any appeals, if any, are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** .......... **5**

1. Why is there a notice? .......... 5
2. What is this lawsuit about? .......... 5
3. What is an Independent ATM or IATM? .......... 5
4. Why is this a class action? .......... 6
5. Why is there a Settlement? .......... 6
6. What are the other related lawsuits? Why did I get other notices? .......... 6

**WHO IS IN THE SETTLEMENT?** .......... **7**

7. Who is included in the Settlement? .......... 7
8. Who is not included? .......... 7

**THE SETTLEMENT BENEFITS** .......... **7**

9. What does the Settlement provide? .......... 7
10. How much money can I get from the Settlement? .......... 8
11. What am I giving up to stay in the Settlement? .......... 8

**HOW TO GET A PAYMENT—MAKING A CLAIM** .......... **8**

12. How can I get a payment? .......... 8
13. When will I get my payment? .......... 8
14. What happens if my contact information changes? .......... 9
15. What happens if some of the money remains after distribution? .......... 9

**THE LAWYERS REPRESENTING YOU** .......... **9**

16. Do I have a lawyer in the case? .......... 9
17. How will the lawyers be paid? .......... 10

**EXCLUDING YOURSELF FROM THE SETTLEMENT** .......... **10**

18. How do I exclude myself from the Settlement? .......... 10
19. If I exclude myself, can I still get a payment? .......... 10
20. If I don't exclude myself, can I sue Visa and Mastercard for the same thing later? .......... 11
21. What happens if I exclude myself? .......... 11
22. If I exclude myself, am I still represented by Class Lead Counsel? .......... 11

**OBJECTING TO THE SETTLEMENT** .......... **11**

23. How do I tell the Court that I do not like the Settlement? .......... 11
24. If I object to the Settlement, can I still file a claim? .......... 12
25. What's the difference between excluding yourself and objecting? .......... 12

**DOING NOTHING** ..... **12**
26. What happens if I do nothing at all? ..... 12
**THE COURT'S FAIRNESS HEARING** ..... **12**
27. When and where will the Court decide whether to approve the Settlement? ..... 12
28. Do I have to come to the Fairness Hearing? ..... 13
29. May I speak at the hearing? ..... 13
**GETTING MORE INFORMATION** ..... **13**
30. How do I get more information? ..... 13

# BASIC INFORMATION

## 1. Why is there a notice?

A Court authorized this Notice because you have a right to know about a proposed Settlement, and your rights and options, before the Court decides whether to approve the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights. Your legal rights are affected whether you act or not.

Judge Richard J. Leon, of the United States District Court for the District of Columbia, is currently overseeing this case. This lawsuit is called *Burke v. Visa Inc.*, No. 1:11-cv-01882. The people who filed the class action case are called the Plaintiffs. The Defendants in the lawsuit are Visa and Mastercard.

## 2. What is this lawsuit about?

The lawsuit says that certain network operating rules in the Visa and Mastercard agreements with IATM operators violated federal and state antitrust laws. The laws include the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.*, and California, Illinois, Massachusetts, and Michigan state antitrust laws.

When cardholders use an ATM that is not associated with their bank, they must pay a surcharge or "access fee" to withdraw money from their bank accounts. Networks, owned by companies such as Visa and Mastercard, facilitate these transactions and connect the ATM to the cardholder's bank.

The Visa and Mastercard operating rules prohibit IATM operators from charging different ATM access fees or "discounting" (charging cardholders a lower access fee) if transactions could be processed on competing networks that cost less than the Visa or Mastercard networks. Plaintiffs claim that the operating rules are price fixing, and cardholders paid higher access fees to use independent ATMs than they should have.

Visa and Mastercard deny these claims and that they did anything wrong.

This Notice is only a summary. More detail is provided in the Settlement Agreement, available at www.NonbankATMSurchargeSettlement.com.

## 3. What is an Independent ATM or IATM?

An Independent ATM (or "IATM") is an automated teller machine that is not owned by Visa, Mastercard, or any bank or other financial institution.

**4. Why is this a class action?**

In a class action, one or more people called "class representatives" (in this case, Peter Burke, Kent Harrison, Marin P. Heiskell, and Brian Byrnes) sue on behalf of people who have similar claims. All of these people are a "class" or "class members." One court and one case resolve the issues for all class members, except for those people who exclude themselves from the class.

**5. Why is there a Settlement?**

By agreeing to the Settlement, both sides avoid the costs and uncertainty of a trial, and Class Members receive the benefits described in this Notice. The Court has not decided in favor of the Plaintiffs or Visa and Mastercard. Instead, both sides have voluntarily participated in a formal mediation and have agreed to a Settlement. The proposed Settlement does not mean that any law was broken or that Visa or Mastercard did anything wrong. Class Co-Lead Counsel and the class representatives believe that the Settlement is best for all Class Members.

**6. What are the other related lawsuits? Why did I get other notices?**

There are three related (or parallel) lawsuits that were filed in October 2011. They each involve different classes with similar claims and are proceeding at the same time. You may receive notices about these other cases.

This Notice is about a proposed Settlement in the case called *Burke v. Visa Inc.*, No. 1:11-cv-01882. This case involves individuals who were charged unreimbursed access fees to withdraw cash at independent ATMs. There is now a proposed Settlement with Visa and Mastercard. **This Notice is about the proposed Settlement in this case**.

Another related case is called *Mackmin v. Visa Inc.*, No. 1:11-cv-01831. This case involves individuals and entities who were charged unreimbursed access fees to withdraw cash at bank-operated ATMs. You may have received previous notices about settlements in this case that were with certain banks ("first settlements") and/or with Visa and Mastercard ("second settlement"). The first settlements were approved on August 22, 2022, and totaled $67 million. The second settlement was approved on June 20, 2025, and totaled $197.5 million. You may have filed a claim and/or received a payment from these settlements.

The last related case is known as *National ATM Council v. Visa Inc.*, No. 1:11-cv-01803. It involves entities or businesses that own and/or operate independent ATMs.

**You may be included in more than one class, so it is important to read this Notice and any other notices you receive carefully, so you can understand your rights and options**. The choices you make to act on your rights in this case (*Burke v. Visa Inc.*) will not affect your rights in the other related lawsuits.

# WHO IS IN THE SETTLEMENT?

**7. Who is included in the Settlement?**

You are included in the Settlement as part of the Nationwide Class if you are a person who was charged an access fee for a domestic cash withdrawal transaction at an Independent ATM ("IATM") in the United States between October 24, 2007, and [Date of Preliminary Approval], and were not fully reimbursed by your bank.

A domestic cash withdrawal transaction is a transaction to withdraw cash from a customer's deposit account using an ATM or pin-debit card at an IATM terminal located within the United States, including its territories. It does not include any credit card transaction or any transaction involving a cash advance or prepaid card.

You may also be included in the Settlement as part of one or more of the Statewide Classes if you were in California, Illinois, Massachusetts, and/or Michigan when you were charged an access fee for a domestic cash withdrawal transaction at an IATM between October 24, 2007, and [Date of Preliminary Approval], and were not fully reimbursed by your bank.

**8. Who is not included?**

The Class does **not** include:

- Visa and Mastercard;
- Visa and Mastercard's officers, directors, and employees;
- Any entity in which Visa or Mastercard have a controlling interest;
- Visa's and Mastercard's affiliates, legal representatives, heirs, or assigns;
- Federal, state, or local government entities;
- Any judicial officer presiding over this case, their staff, and any member of their immediate family;
- Any juror assigned to this case; and
- Anyone that excludes themselves from the Settlement (*see* Question 18).

# THE SETTLEMENT BENEFITS

**9. What does the Settlement provide?**

If the Settlement is approved, Visa and Mastercard will collectively pay $167,500,000—Visa ($88,775,000.00) and Mastercard ($78,725,000.00)—into a Settlement Fund. After deductions for attorneys' fees, litigation costs, and other expenses; taxes and tax expenses; up to $3 million in notice and administration costs; and service awards, the Net Settlement Fund will be distributed to Class Members who submit valid claims.

The Settlement Agreement, available at www.NonbankATMSurchargeSettlement.com, has more information.

**10. How much money can I get from the Settlement?**

Each valid claim will be eligible to receive a *pro rata* (or proportional) share of the Net Settlement Fund, based on the number of qualifying surcharged transactions that are submitted. Because the amount of each payment depends on the number of approved transactions, nobody can know in advance how much the payment will be.

**11. What am I giving up to stay in the Settlement?**

Unless you exclude yourself, you will remain in the Settlement. You will give up your right to separately sue Visa and Mastercard about the claims in this lawsuit. All of the Court's decisions and judgments will bind you.

The Settlement Agreement describes the specific claims you will give up (or "release"), so read it carefully. The Settlement Agreement is available at www.NonbankATMSurchargeSettlement.com. If you have questions, you may contact the Claims Administrator by writing to XXXXXXXXX, c/o A.B. Data, Ltd., P.O. Box 0000, Milwaukee, WI 53217, emailing info@NonbankATMSurchargeSettlement.com, or calling the toll-free number 1-800-000-0000.

## HOW TO GET A PAYMENT—MAKING A CLAIM

**12. How can I get a payment?**

To ask for a payment, you must complete and submit a Claim Form. You can get a Claim Form at www.NonbankATMSurchargeSettlement.com or by calling 1-800-000-000.

You must submit your Claim Form online at www.NonbankATMSurchargeSettlement.com or by mail, received no later than **Month 00, 2025**. Claims submitted by mail should be sent to:

XXXXXXXXXXXX
c/o A.B. Data, Ltd.
P.O. Box 0000
Milwaukee, WI 53217

**13. When will I get my payment?**

The Court is scheduled to hold a hearing on [Month 00, 2025], to decide whether to approve the Settlement. The hearing may be held electronically or moved to a different date or time without additional notice, so it is a good idea to check www.NonbankATMSurchargeSettlement.com for additional information. If the Court approves the Settlement, that decision may be appealed. It is hard to estimate how long it might take for any appeals to be resolved. If the Settlement is approved and no appeals are filed, the Claims Administrator anticipates that payments will be sent out within

six months. Settlement payments will be digitally sent to you via email. Please make sure you provide a current, valid email address on the Claim Form. When you receive the email notifying you about your payment, you will be provided with a number of digital payment options to select from, such as PayPal or a virtual debit card. For many people, this is the easiest and quickest option to receive money. You will also have the opportunity to request that a check be mailed to you by the Claims Administrator. Please be patient. Updates will be posted on the website, www.NonbankATMSurchargeSettlement.com.

**14. What happens if my contact information changes?**

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Claims Administrator of your updated information. Notify the Claims Administrator of any changes to your mailing address or email address by writing:

XXXXXXXXXXXX
c/o A.B. Data, Ltd.
P.O. Box 0000
Milwaukee, WI 53217
info@NonbankATMSurchargeSettlement.com

**15. What happens if some of the money remains after distribution?**

If there is any money remaining after all claims are processed, those funds will be paid to a non-profit organization or "next best" recipient as approved by the Court. No remaining funds will be returned to Visa or Mastercard.

## THE LAWYERS REPRESENTING YOU

**16. Do I have a lawyer in the case?**

Yes. The Court has appointed lawyers at the following law firms to represent you and the other Class Members as "Class Co-Lead Counsel:"

| | |
|---|---|
| Douglas G. Thompson<br>**Finkelstein Thompson LLP**<br>2201 Wisconsin Ave. NW<br>Suite 200<br>Washington, DC 20007 | Christopher Lovell<br>**Lovell Stewart Halebian Jacobson LLP**<br>500 Fifth Avenue<br>Suite 2440<br>New York, NY 10110 |

You will not be charged for these lawyers. If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense.

### 17. How will the lawyers be paid?

You do not have to pay Class Co-Lead Counsel. Class Co-Lead Counsel have not been paid anything to date for their work on this case. Class Co-Lead Counsel will ask the Court for attorneys' fees of up to 30% of the Settlement Fund, plus reimbursement of costs and expenses. Class Co-Lead Counsel will also ask the Court for service awards up to $17,500 for each class representative for their work on behalf of the Nationwide and Statewide Classes.

Any attorneys' fees and expenses and service awards approved by the Court will be paid out of the Settlement Fund.

When Class Co-Lead Counsel's motion for fees, expenses, and class representative service awards is filed, it will be available at www.NonbankATMSurchargeSettlement.com.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from the Settlement, and you want to keep your right to sue or continue to sue Visa or Mastercard on your own about the claims in this case, then you must take steps to get out of the Settlement. This is called excluding yourself—or "opting out."

### 18. How do I exclude myself from the Settlement?

You may exclude yourself by mailing a letter to the Claims Administrator (at the address below) with the following information:

- A statement that you are a Class Member and want to be excluded from the Settlement in *Burke v. Visa Inc.*, No. 1:11-cv-01882;
- Your full name, address, and telephone number;
- Your email address (if any); and
- Your signature.

You must mail your letter, so it is received no later than **[Month 00, 2025]**, to:

XXXXXXXXXXXX
ATTN: EXCLUSIONS
P.O. Box 173001
Milwaukee, WI 53217

### 19. If I exclude myself, can I still get a payment?

No. If you exclude yourself, you will not be eligible to receive a payment from the Settlement with Visa and Mastercard.

### 20. If I don't exclude myself, can I sue Visa and Mastercard for the same thing later?

No. Unless you opt out, you give up the right to sue Visa and Mastercard for the claims this Settlement resolves.

### 21. What happens if I exclude myself?

If you exclude yourself, you will not have any rights as a Class Member under the Settlement with Visa and Mastercard; you will not receive any payment as part of the Settlement; you will not be bound by any further orders or judgments in this case; and you will keep the right, if any, to sue Visa and Mastercard about the claims alleged in the case, at your own expense.

### 22. If I exclude myself, am I still represented by Class Co-Lead Counsel?

No. Class Co-Lead Counsel represents the members of the Class. If you exclude yourself from the Class, you are not represented by Class Co-Lead Counsel.

## OBJECTING TO THE SETTLEMENT

### 23. How do I tell the Court that I do not like the Settlement?

You have a right to object to or comment on any part of the proposed Settlement and/or the request for attorneys' fees, costs, and expenses, and service awards. The Court will consider your views. You can't ask the Court to order a different Settlement; the Court can only approve or reject the Settlement. If the Court does not approve the Settlement, no Settlement payments will be made, and the lawsuit against Visa and Mastercard will continue. If that is what you want to happen, you must object.

To comment on or object, you must mail a letter with the following information:

- The name and case number of this lawsuit, *Burke v. Visa Inc.*, No. 1:11-cv-01882;
- Your full name, address, and telephone number;
- Your email address (if any);
- An explanation of why you believe you are a Class Member;
- A statement saying you object to the Settlement in this case;
- A statement whether the objection applies only to you, to a specific subset of the Nationwide and/or Statewide Class(es), or to the all the Class(es);
- The reasons you object;
- Any documents and/or supporting evidence;
- A statement of whether you (or your lawyer) intend to appear and speak at the Final Fairness Hearing;
- Your lawyer's signature (if you have one); and
- Your signature.

You must mail your objection to (or file it with) the Court at the following address, postmarked by [**MONTH 00, 2025**]:

| **Court** |
|---|
| Court Clerk<br>United States District Court for the District of Columbia<br>333 Constitution Avenue NW<br>Washington, DC 20001 |

**24. If I object to the Settlement, can I still file a claim?**

Yes. You may file a claim even if you object to, or comment on, the Settlement.

**25. What's the difference between excluding yourself and objecting?**

Objecting is simply telling the Court that you do not like something about the Settlement. You can object to the Settlement when you disagree with some aspect of the Settlement and think the Court should not approve it. An objection, like a comment, allows your views to be heard in Court.

Excluding yourself is telling the Court that you do not want to be a part of the Settlement and do not want the Settlement to apply to you. If you exclude yourself, you cannot receive a payment from the Settlement. If you exclude yourself, you will also have no right to object to the Settlement and appear at the Final Fairness Hearing, because the case no longer affects you.

## DOING NOTHING

**26. What happens if I do nothing at all?**

If you do nothing, you will stay a Class Member and will not be able to sue Visa or Mastercard for the claims in this lawsuit. You will be bound by the Court's decisions. If the Court approves the Settlement, you will not get any money.

To ask for a payment, you must complete and submit a Claim Form by [**Month 00, 2025**] (*see* Question 12).

## THE COURT'S FAIRNESS HEARING

**27. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at [**X:00 x.m.**] on [**Month 00, 2025**], at the U.S. District Court for the District of Columbia, 333 Constitution Avenue N.W., Courtroom 18, Washington,

D.C. 20001. The hearing may be moved to a different date or time without additional notice, so be sure to check www.NonbankATMSurchargeSettlement.com for updates.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them and may listen to people who have asked to speak at the hearing. The Court may also decide whether to award attorneys' fees, costs, and expenses and service awards for the class representatives. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

### 28. Do I have to come to the Fairness Hearing?

No. Class Co-Lead Counsel will answer any questions the Court may have. You may attend at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

### 29. May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter stating that it is your "Notice of Intention to Appear in *Burke v. Visa Inc.*, No. 1:11-cv-01882." Be sure to include your full legal name, address, telephone number, and signature. Your Notice of Intention to Appear must be postmarked no later than [**Month 00, 2025**], and must be sent to the Court's address listed in Question 23.

## GETTING MORE INFORMATION

### 30. How do I get more information?

This Notice is only a summary. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement, view other case documents, and get additional information and updates by visiting www.NonbankATMSurchargeSettlement.com. If you have questions, you also may contact the Claims Administrator by writing to XXXXXXXXX, c/o A.B. Data, Ltd., P.O. Box 0000, Milwaukee, WI 53217, emailing info@NonbankATMSurchargeSettlement.com, or calling the toll-free number 1-800-000-0000.

All of the case documents that have been filed publicly in this case are also available online through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.dcd.uscourts.gov. You may also obtain case documents by visiting the office of the Clerk of the Court for the United States District Court for the District of Columbia, 333 Constitution Avenue N.W., Washington, D.C. 20001, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding court-observed holidays.

# EXHIBIT E

Case No. 1:11-cv-01882 (RJL).



# EXHIBIT F

# NON-BANK ATM SURCHARGE SETTLEMENT

## CLAIM FORM

### INSTRUCTIONS

Generally, you are included in the Settlement as part of the Nationwide Class if you are in the United States, were charged a surcharge (or access fee) to withdraw cash from your deposit account using an ATM or pin-debit card at an independent ATM located in the United States (including its territories) between October 24, 2007, and **[DATE OF PRELIMINARY APPROVAL]**, and were not fully reimbursed by your bank. You may also be included as part of the Statewide Classes for California, Illinois, Massachusetts, and Michigan.

- An Independent ATM (or "IATM") is an automated teller machine that is not owned by Visa, Mastercard, or any bank or other financial institution. A domestic cash withdrawal transaction is a transaction to withdraw cash from a customer's deposit account using an ATM or pin-debit card at an IATM terminal located within the United States, including its territories. It does not include any credit card transaction or any transaction involving a cash advance or prepaid card.

**To ask for a payment from the Settlement, you must fill out and submit your Claim Form online at www.NonbankATMSurchargeSettlement.com or by mail no later than [Month 00, 2025].**

**Settlement payments will be sent to you digitally via email.** Please provide a current, valid email address and mobile phone number on your Claim Form. If the email address or mobile phone number you provided becomes invalid for any reason, it is your responsibility to provide accurate contact information to the Claims Administrator to get your payment.

When you receive the email and/or mobile phone text notifying you about your Settlement payment, you will be provided with a number of digital payment options, such as PayPal or a virtual debit card, to immediately receive your Settlement payment. At that time, you will also have the option to ask for a paper check.

The information you provide on this Claim Form will be used solely by the Court-approved Claims Administrator to administer the Settlement and will not be provided to any third party or sold for marketing purposes.

You do not need to provide any documentation at this time. However, the Claims Administrator may ask you for additional documentation or proof that supports your claim.

**NOTICE ID NUMBER (IF YOU RECEIVED AN EMAIL NOTICE)**

**NAME***

*FIRST NAME LAST NAME*

**STREET ADDRESS*** **APT**

**CITY*** **STATE*** **ZIP***

**MOBILE PHONE NUMBER***

XXX-XXX-XXXX

**EMAIL ADDRESS*** **VERIFY EMAIL ADDRESS***

To get a payment, you **must** provide a current, valid email address and/or mobile phone number on this Claim Form. If the email address or mobile phone number you provide becomes invalid for any reason, it is your responsibility to give the Claims Administrator your updated email address and mobile phone number. Otherwise, you may not get paid.

**ADDITIONAL INFORMATION (REQUIRED)**

**WERE YOU CHARGED AN UNREIMBURSED SURCHARGE (OR ACCESS FEE) TO WITHDRAW CASH FROM AN INDEPENDENT ATM IN THE UNITED STATES (OR ITS TERRITORIES) BETWEEN OCTOBER 24, 2007, AND [DATE OF PRELIMINARY APPROVAL]?***

- ○ **YES**
- ○ **NO**

**[IF YES] WERE ANY OF THESE SURCHARGED INDEPENDENT ATM TRANSACTIONS CONDUCTED WITH AN ATM OR PIN-DEBIT CARD BUT NOT WITH A CREDIT OR GIFT CARD?***

- ○ **YES**
- ○ **NO**

**[IF YES] ESTIMATE THE NUMBER OF TIMES BETWEEN OCTOBER 24, 2007, AND MONTH 00, 2025, THAT YOU PAID AN UNREIMBURSED SURCHARGE TO WITHDRAW CASH FROM AN INDEPENDENT ATM IN THE UNITED STATES USING AN ATM OR PIN-DEBIT CARD.***

- **[4 DIGIT INTEGER]**

**[DROP DOWN]**
**"AS STATED BELOW, THIS CLAIM FORM IS SUBMITTED UNDER PENALTY OF PERJURY, AND THE CLAIMS ADMINISTRATOR HAS THE RIGHT TO ASK YOU TO PROVIDE BANK STATEMENTS OR OTHER DOCUMENTS TO SUPPORT YOUR CLAIM."**

*Denotes required field

**CERTIFICATION**

By signing below, I certify, under penalty of perjury, that the information included on this claim form is accurate and complete to the best of my knowledge, information, and belief. If I am submitting this claim on behalf of a claimant, I certify that I am authorized to submit this claim form on the individual's behalf. I am, or the individual on whose behalf I am submitting this claim is, a Class Member. I did not submit a request to exclude myself from, or "opt out of," the Settlement with Visa and Mastercard. I agree (and consent) to be communicated with electronically via email and/or mobile phone text (message & data rates may apply). I agree to provide additional information about this claim if the Claims Administrator asks me to do so.

| SIGNATURE | DATE |
| --- | --- |
| | *mm/dd/yyyy* |

# EXHIBIT G

claimscore

# ClaimScore LLC

CORPORATE RESUME & COMPANY PROFILE

August 2025

claimscore

## About Us

Founded in 2022, ClaimScore is the only independent, purpose-built anti-fraud solution for class action settlements. ClaimScore leverages a hybrid fraud detection methodology that combines a 65+ point expert-system AI algorithm with neural network machine learning, real-time pattern recognition, and third-party data enrichment. Our system was designed specifically to meet the evidentiary, procedural, and transparency standards required in state and federal courts, and has been used in more than 30 large-scale settlements involving both direct and indirect notice. These include matters with aggregate class payments exceeding $100 million and some of the largest data privacy cases in recent years.

Every claim is reviewed individually, beginning with a score of 1,000. Scores are reduced when a claim fails one or more validation criteria, each of which is tagged with a unique deduction code. Claims scoring 700 or above are marked as “approved”; if additional documentation is required for human review, they are marked as “pending.” Claims falling below 700 are recommended for rejection, supported by a fully transparent explanation of which criteria were not met. This structure ensures that no claim is rejected based on a single factor—only the cumulative pattern of risk informs the outcome. To ensure fairness and scalability, ClaimScore’s machine learning model is used to adjust the weighting of each criterion based on real-world fraud patterns, providing up to 35 quintillion scoring combinations.

Unlike legacy approaches that rely on static, surface-level single point of failure criteria (aka “group and slash” methodologies), ClaimScore’s scoring system emulates human expert reasoning: assessing the totality of risk signals and eliminating claims that exhibit multiple, cross-referenced indicia of fraud. This allows ClaimScore to identify advanced submission fraud—including synthetic identities, coordinated attack behavior, and phone-farm spoofing—that traditional systems routinely miss. In several cases where ClaimScore was brought in after administrator review, we identified and eliminated 35–83% of claims that had previously been validated.

ClaimScore’s anti-fraud platform is built on scalable, proprietary cloud infrastructure, has reviewed over 150,000,000 claims, and has prevented hundreds of millions of dollars from being stolen by fraudulent actors. Our internal testing and third-party validation place our system’s accuracy between 99.987% and 99.996%. The ClaimScore team includes class action attorneys, former administrators, data analysts, and engineers with more than 40 years of combined experience, united by a singular goal: to protect the settlement from fraud and return value to the class.

claimscore

## Relevant Court Appointments: Oracle America Settlement

Chief Judge Richard Seeborg of the Northern District of California, San Francisco Division named ClaimScore to the administration team for the ***Michael Katz-Lacabe, et al. v. Oracle America Inc.*** case (Case No. 3:22-cv-04792), to conduct the fraud analysis of the claims submitted in the case. ClaimScore's role in the case was to provide bank-level, data-driven, backend analysis of the claims to determine which claims are fraudulent and which claims are valid.

## Relevant Court Appointments: Apple Siri Settlement

Chief Judge Jeffrey S. White of the Northern District of California appointed ClaimScore to the administration team in the ***Lopez v. Apple, Inc.*** case (4:19-cv-04577-JSW). ClaimScore was tasked with conducting a comprehensive fraud analysis of the claims submitted, leveraging expert system AI and pattern recognition technology to assess the validity of claims.

## Relevant Court Appointments: AT&T Data Breach Settlement

In ***In Re AT&T Inc. Customer Data Security Breach Litigation MDL*** case (Case No. 3:24-md-03114-E), ClaimScore was appointed by Judge Ada E. Brown to provide data-driven fraud detection in a highly sensitive consumer data case. ClaimScore's role will focus on identifying synthetic identities, automated submissions, and coordinated fraud attempts at scale. Our analysis will support the administrator's obligation to protect the settlement against fraudulent dilution and ensure a fair allocation to genuine class members.

## Recent Judgement Mensions: Grande Cosmetics Settlement

Chief Judge Marie Bumb of the United States District Court for the District of New Jersey noted that ClaimScore's data-driven approach and proprietary scoring system deployed in the ***Nixon v. Grande Cosmetics, LLC*** case (Case No. 1:22-cv-06639) provides "adequate safeguards to mitigate the risk of fraudulent claims" in consumer class actions.

## Case Portfolio

Here is a selection of the cases ClaimScore was recently deployed in:

**CASE NAME:** Nixon v. Grande Cosmetics, LLC
**CASE NUMBER:** 1:22-cv-06639
**COURT:** United States District Court for the District of New Jersey

---

claimscore

**CASE NAME:** Danielle Skarpnes v. Elixir Cosmetics OPCO LLC
**CASE NUMBER:** CU23-04638
**COURT:** Superior Court of California, County of Solano

---

**CASE NAME:** Perez v. Rash Curtis & Associates
**CASE NUMBER:** 4:16-cv-03396-YGR
**COURT:** United States District Court for the District of Northern California

---

**CASE NAME:** Lipsky, et al. v. American Behavioral Research Institute, LLC, d/b/a Relaxium
**CASE NUMBER:** 50-2023-CA-011526-XXXX-MB
**COURT:** Palm Beach County Cir. Court Florida

---

**CASE NAME:** Wyland v. Woopla
**CASE NUMBER:** 2023-CI-00356
**COURT:** Commonwealth of Kentucky Henderson County Cir.

---

**CASE NAME:** Whiting v. Yellow Social Interactive Ltd.
**CASE NUMBER:** 2023-CI-00358
**COURT:** Commonwealth of Kentucky Henderson County Cir. Court

---

**CASE NAME:** Rosenfeld et al. v. AC2T, Inc.
**CASE NUMBER:** 506882/2023
**COURT:** Supreme Court of New York, County of Kings

---

**CASE NAME:** O'Malley, et al. v. FloSports, Inc.
**CASE NUMBER:** 3:22-cv-04920-JSC
**COURT:** United States District Court for the District of Northern California

---

**CASE NAME:** Jimenez v. Artsana USA, Inc.
**CASE NUMBER:** 7:21-cv-07933-VB
**COURT:** United States District Court, Southern District of New York

---

**CASE NAME:** Guerrero v. Merritt Healthcare Holdings, LLC
**CASE NUMBER:** 3:23-cv-00389
**COURT:** District Court for the District of Connecticut

---

**CASE NAME:** Canadian Diamonds Class Action
**CASE #1:** Michelle Fairhurst and Marc Kazimirski v. De Beers Canada Inc., et al.
**CASE #1 NUMBER:** S-071269
**COURT #1:** Supreme Court of British Columbia

---

**CASE #2:** Kirk Brant v De Beers Canada Inc., et al.
**CASE #2 NUMBER:** 1399/10 CP
**COURT #2:** London Superior Court of Justice

---

**CASE #3:** Andrea Sanderson v. De Beers Canada Inc, et al.
**CASE #3 NUMBER:** 500-06-000571-113
**COURT #3:** Superior Court of Quebec

---

**CASE #4:** Daniel Ammazzini & Olson Goldsmiths Inc. v. Anglo American PLCetal.
**CASE #4 NUMBER:** File No. 877
**COURT #4:** Saskatchewan Court

---

**CASE NAME:** Rave v. Infinity Healthcare Inc.
**CASE NUMBER:** 2019CV003073
**COURT:** Circuit Court for Milwaukee County, Wisconsin

---

**CASE NAME:** Gunaratna v. Dr. Dennis Gross Skincare, LLC
**CASE NUMBER:** 1:23-CV-01967-ER
**COURT:** United States District Court for the Southern District of New York

---

**CASE NAME:** Haylee Woodard v. Lilly Lashes, LLC
**CASE NUMBER:** 22STCV18692
**COURT:** Superior Court of California, Los Angeles County

---

**CASE NAME:** Katz-Lacabe et al v. Oracle America, Inc.
**CASE NUMBER:** 3:22-cv-04792-RS
**COURT:** United States District Court for the Northern District of California

---

**CASE NAME:** In re Broiler Chicken Antitrust Litigation
**CASE NUMBER:** 16-cv-08637
**COURT:** United States District Court for the Northern District of Illinois

---

**CASE NAME:** Brooks v. Thomson Reuters Corp.
**CASE NUMBER:** 3:21-cv-01418
**COURT:** United States District Court for the Northern District of California

---

**CASE NAME:** Mackmin et al. v. Visa Inc. et al.
**CASE NUMBER:** 1:11-cv-01831 (RJL)
**COURT:** United States District Court for the District of Columbia

---

**CASE NAME:** Hasemann, et al. v. Gerber Products Co., et al.
**CASE NUMBER:** 1:15-cv-02995-EK-RER (E.D.N.Y.)
**COURT:** United States District Court for the Eastern District of New York

---

**CASE NAME:** Manemeit v. Gerber Products Co.
**CASE NUMBER:** 2:17-cv-00093-EK-RER (E.D.N.Y.)
**COURT:** United States District Court for the Eastern District of New York

---

Case No. 1:11-cv-01882 (RJL).

**CASE NAME:** Lopez v. Apple, Inc.
**CASE NUMBER:** 4:19-cv-04577-JSW
**COURT:** United States District Court for the Northern District of California

---

**CASE NAME:** Bush v. Rust-Oleum Corporation, et al.
**CASE NUMBER:** 3:20-cv-03268
**COURT:** United States District Court for the Northern District of California

---

**CASE NAME:** DeCostanzo v. GlaxoSmithKline PLC, et al.
**CASE NUMBER:** 2:2021cv04869
**COURT:** United States District Court for the Eastern District of New York

---

**CASE NAME:** Doe, et al. v. MarinHealth Medical Center, et al.
**CASE NUMBER:** CV-000-2218
**COURT:** Superior Court of the State of California, County of Marin

---

**CASE NAME:** In re Effexor XR Antitrust Litigation
**CASE NUMBER:** 3:11-cv-05479 (D.N.J.)
**COURT:** United States District Court for the District of New Jersey

---

**CASE NAME:** Jien et al. v. Perdue Farms, Inc. et al.
**CASE NUMBER:** 1:2019cv02521
**COURT:** United States District Court for the District of Maryland

---

**CASE NAME:** Onadia v. City of New York, et al.
**CASE NUMBER:** 300940/2010
**COURT:** Supreme Court of the State of New York, County of Bronx

---

**CASE NAME:** In re Group Health Plan Litigation
**CASE NUMBER:** 23-cv-00267 (JWB/DJF)
**COURT:** United States District Court for the District of Minnesota

---

**CASE NAME:** In re Pork Antitrust Litigation (Indirect Purchaser Actions)
**CASE NUMBER:** 0:18-cv-01776 (D. Minn.)
**COURT:** United States District Court for the District of Minnesota

---

**CASE NAME:** Borozny, et al. v. RTX Corp., Pratt & Whitney Division, et al.
**CASE NUMBER:** 3:21-cv-1657-SVN
**COURT:** United States District Court for the District of Connecticut

---

**CASE NAME:** Jeffries, et al. v. West Virginia American Water Company
**CASE NUMBER:** CC-20-2017-C-765
**COURT:** Circuit Court of Kanawha County, West Virginia

---

**CASE NAME:** Pompilio, et al. v. Boar's Head Provisions Co. Inc.
**CASE NUMBER:** 7:24-cv-08220-PMH
**COURT:** United States District Court for the Southern District of New York

---

**CASE NAME:** Celeste Brown and Ross Finesmith v. AllCare Plus Pharmacy LLC
**CASE NUMBER:** 2484CV02366
**COURT:** Superior Court of Suffolk County, Commonwealth of Massachusetts

---

**CASE NAME:** Kessler, et al. v. The Quaker Oats Company
**CASE NUMBER:** 7:24-cv-00526-KMK
**COURT:** United States District Court for the Southern District of New York

---

**CASE NAME:** In Re AT&T Inc. Customer Data Security Breach Litigation MDL
**CASE NUMBER:** 3:24-md-03114-E
**COURT:** United States District Court for the Northern District of Texas

---

**CASE NAME:** Hubbard, et al. v. Google LLC, et al.
**CASE NUMBER:** 19-cv-07016-SVK
**COURT:** United States District Court for the Northern District of California

---

## Collaborative Partners

Here is a selection of the attorney and administrators we have worked collaboratively with:

**Claims Administrators:**
A.B. Data
Angeion Group
Digital Settlement
Fidexis
AisnerAmper
American Legal Claims Services
CPT Group
Atticus Administration
Epiq Global
Simpluris
Verita Global

**Law Firms:**
Bursor Fisher P.A.
Gibson Dunn & Crutcher LLP
Clarkson Law Firm P.C.
Troutman Pepper Locke LLP
Kirkland & Ellis LLP

Case No. 1:11-cv-01882 (RJL).

Siskinds Law Firm
CFM Lawyers LLP
Hagens Berman Sobol Shapiro LLP
Camp Fiorante Matthews Mogerman LLP
Milstein Jackson Fairchild & Wade, LLP

**Financial Institutions/Payment Providers:**
Digital Disbursements (a Western Alliance Bank Company)

## Corporate Mission

Create technology that solves the rampant issue of fraudulent claims in the class action industry by delivering efficient, transparent and cost-effective results in the name of class member fairness.

## Brand Promise

Our software solution delivers the most accurate and impartial results, exceeding class member, court and attorney expectations.

## Leadership Team

**Donald A. Beshada**, Esq., Founder & CEO (don@claimscore.ai)
**Bryan Heller**, Co-Founder & COO (bryan@claimscore.ai)

## Contact Information

**ADDRESS:** ClaimScore LLC, 108 Wanaque Avenue, Pompton Lakes, NJ 07442
**EMAIL:** contact@claimscore.ai
**WEBSITE:** https://www.claimscore.ai
**LINKEDIN:** https://www.linkedin.com/company/claimscore