**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PETER BURKE, *et al.*,
Plaintiffs,

v.

VISA INC., *et al.*,
Defendants.

Case No. 1:11-cv-01882 (RJL)

**[CORRECTED] JOINT DECLARATION OF CO-LEAD COUNSEL IN SUPPORT OFMOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS**

1. I, Christopher Lovell, am an attorney duly licensed to practice before the courts of the State of New York, and I am admitted *pro hac vice* in this action. I am the Managing partner of the law firm of Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart"). I, Douglas G. Thompson Jr., am an attorney duly licensed to practice before the courts of the District of Columbia and this Court. I am the Co-Managing partner of the law firm of Finkelstein Thompson LLP ("Finkelstein Thompson"). Our firms are counsel of record for the *Burke* Plaintiffs ("Plaintiffs"). The Court appointed us as Co-Lead Counsel in this Action. *Burke v. Visa Inc.*, 2021 WL 4712058 (D.D.C. Sept. 7, 2021).

2. We submit this Joint Declaration in Support of the above-captioned *Burke* Motion for Preliminary Approval of Settlement and To Direct Notice to the

Settlement Class.[1] Together we have full knowledge of the matters stated herein based upon the sources and documents listed.

3. The *Burke* Class brought suit for monetary damages and injunctive relief arising from alleged overcharges in access fees ("surcharges") paid by consumers to make cash withdrawals at independently owned non- bank ATMs ("IATMs"). The *Burke* Class alleged that Visa and Mastercard network operating rules, known as ATM Access Fee Rules ("AAFRs"), constitute illegal price fixing by blocking IATMs from competitive, differential discount pricing of access fees to encourage consumers to use ATM cards enabled for lower-cost, rival payment networks. The *Burke* Class further alleged that, protected from the natural forces of unrestrained price competition by the AAFRs, Defendants increased their per transaction network fees to ATM operators by three or more times the network fees charged by rival networks, causing IATM operators to recover these costs by charging higher surcharges to IATM customers.

4. The *Burke* Plaintiffs, via Class Counsel, have aggressively pursued Plaintiffs' claims since the first *Burke* complaint, styled *Stoumbos v. Visa, Inc. et al.*, was filed on October 24, 2011 (Dkt. No. 1), and was amended on December 1, 2011 (Dkt. No. 3). The *Stoumbos* case was consolidated with what became the

---

[1] The Visa and Mastercard defendants are Visa Inc.; Visa U.S.A. Inc.; Visa International Service Association; Plus System, Inc.; Mastercard Incorporated and Mastercard International Incorporated.

*Mackmin* case (*Barton v. Visa Inc.*, No. 11-cv-1831) ("*Mackmin*") and the IATM Operator case (*National ATM Council, Inc. v. Visa Inc.*, No. 11-cv-1803) ("*NAC*").[2] On February 13, 2013, the Honorable Amy Berman Jackson granted Defendants). Defendants' motion to dismiss all three consolidated complaints. (Dkt. No. 26, 27.) Following denial of motions for leave to amend (Dkt. No. 36, 37.), plaintiffs in the consolidated cases appealed.

5. On August 4, 2015, the D.C. Circuit Court of Appeals reversed the dismissal of the cases and on October 23, 2015, remanded to the District Court. See *Osborn v. Visa Inc.*, 797 F.3d 1057 (D.C. Cir. 2015); (Dkt. No. 42.) On August 4, 2015, the matter was reassigned to Judge Richard J. Leon. (Dkt. No. 40.)

6. Defendants successfully petitioned for a *writ of certiorari* to the Supreme Court to review the D.C. Circuit decision. However, after reviewing Defendants' appeal brief to the Supreme Court, all plaintiffs jointly moved to dismiss the writ as improvidently granted, and the Supreme Court agreed, dismissing the appeal. *See Visa Inc. v. Osborn*, 580 U.S. 993 (2016) (Mem.).

---

[2] The three related actions before this Court are : *National ATM Council, Inc., et. al. v. Visa Inc., et al*, 1:11-cv-01803 (D. D.C.) ("*NAC*"); *Mackmin, et. al. v. Visa Inc., et al*, 1:11-cv-01831 (D.D.C.) ("*Mackmin*"); and *Burke, et. al. v. Visa Inc., et al*, 1:11-cv-01882 (D. D.C.) ("*Burke*"). The *Burke* Plaintiffs' theory of antitrust harm is virtually identical to that of the recently settled *Mackmin* class of consumers who paid surcharges at bank-owned ATMs ("BATMs"). *See Mackmin*, 1:11-cv-01831 (D.D.C.), Dkt. No. 261 (order granting final approval of settlements with Bank Defendants); Dkt. No. 304 (order granting final approval of settlement with Network

7. Between July 21, 2016, and November 26, 2017, the consolidated cases were stayed during the pendency of the Supreme Court review.

8. On January 18, 2017, the Court appointed Finkelstein Thompson and Lovell Stewart as Co-Lead Counsel for the *Burke* Class. (Dkt. No. 60.) On June 12, 2019, the current four named *Burke* Class Plaintiffs intervened, substituted for Plaintiff Stoumbos as class representatives, and filed a Fourth Amended Complaint. (Dkt. Nos. 101 and 102.)

9. Once the stay was lifted, an extensive period of discovery commenced. *Burke* Plaintiffs' discovery efforts included interrogatories and document requests to Defendants for written documents and communications and ATM transactional databases, subpoenas to third parties for documents and transactional data, and review of discovery materials obtained and produced by other plaintiff groups. *Burke* Co-Lead Counsel also pressed subpoenaed non-parties over the scope and completeness of document and data productions, which required numerous telephonic and written communications. *Burke* Co-Lead Counsel attended multiple meet and confer sessions with Defendants' counsel, and an attorney representing one of the *Burke* Co-Lead Counsel firms regularly attended the Court's periodic discovery management conferences. See, e.g., Minute Orders dated 3/21/2018, 6/22/2018 and 7/17/2018.

10. Defendants and twelve subpoenaed third parties collectively produced over 600,000 documents. *Burke* Plaintiffs also received, and their experts analyzed, over two terabytes of transactional data contained in nearly 10,000 files from Defendants, from other payment networks, from IATM operators and processors, and from Wells Fargo bank. In all, *Burke* Plaintiffs' experts analyzed nearly 9 billion rows of data at the record level, nearly 6 billion of which were produced by Visa and Mastercard. *Burke* Co-Lead Counsel supervised and directed outside economic consulting and data experts in collecting, inputting and analyzing the transactional data which took many months to complete at a cost of millions of dollars.

11. *Burke* Co-Lead Counsel also took, participated in, or reviewed 54 fact and 30(b)(6) depositions including depositions of Defendants' employees, subpoenaed third parties and experts, as well as depositions of two Defendant class certification experts, two *NAC* class certification experts and one *Mackmin* class certification expert, and defended the depositions of the *Burke* named class representatives and *Burke's* retained economist, Dr. William Lehr, who served as class certification expert and merits expert. In all, six class certification experts were deposed and produced documents.

12. Upon completing the class discovery, Plaintiffs moved on September 20, 2019, for class certification (Dkt. Nos. 111, 114), which included multiple

rounds of briefing (including a sur-reply and sur-reply opposition). *See* Dkt. Nos. 147, 148. By Order of August 4, 2021, as amended by Order of September 7, 2021, this Court issued an Order and Memorandum Opinion certifying a nationwide *Burke* class under Fed. R. Civ. P., Rules 23(b)(2) and 23(b)(3), and four statewide classes for the states of California, Illinois, Massachusetts and Michigan. Dkt. Nos. 154, 155.[3]

13. On October 1, 2021, the D.C. Circuit Court of Appeals granted Visa and Mastercard's petition for permission to file an interlocutory appeal from the class certification orders pursuant to Fed. R. Civ. P., Rule 23(f). (Dkt. No. 166.) Plaintiffs, through Co-lead Counsel, briefed and argued the appeal in conjunction with the other plaintiff parties. The D.C. Circuit affirmed class certification by Judgment dated July 25, 2023 (Dkt. Nos. 173, 173-1) and denied Defendants' petition for rehearing *en banc*; and the Defendants petitioned the Supreme Court for *certiorari*, which was denied on April 15, 2024.

14. After this Court granted class certification and the appellate court affirmed the decision, Dr. Lehr submitted his merits trial report on September 20,

[3] The Amended Order also "certified as four separate state class actions for injunctive relief and damages pursuant to the laws of the states of California, Illinois, Massachusetts, and Michigan for purposes of litigation and trial" and the Court therein appointed Douglas G. Thompson Jr., of the firm Finkelstein Thompson LLP, and Christopher Lovell, of the firm Lovell Stewart Halebian Jacobson LLP, as Co-Lead Counsel for the litigation class on August 25, 2021. (Dkt. No. 158.) By separate Orders, the Court also granted the class certification motions of the two related putative classes with claims against Visa and Mastercard.

2024. Defendants submitted six opposition expert reports that totaled over 1200 pages of text (not including over 200 separately numbered exhibits) on December 19, 2024.

15. The four Class Representatives— Peter Burke, Kent Harrison, Marin P. Heiskell and Bryan Byrnes—have also vigorously represented the Settlement Class in this litigation.[4] Each prepared extensively for and had his or her deposition taken in the case. Each also actively participated in responding to discovery and cooperated extensively with Co-Lead Counsel throughout the course of this prolonged litigation.

16. Pursuant to the Court's scheduling order, on May 19, 2025, the *Burke* Plaintiffs completed the exchange of trial expert merits reports by serving Dr. Lehr's rebuttal report. In addition, Plaintiffs' Co-Lead Counsel retained two new, additional rebuttal experts, Dr. Joseph Doyle and Dr. Ronald Goldstein, whose rebuttal merits reports were also filed on May 19 and respond to specific data analyses, consumer behavior and marketing issues raised in Defendants' expert rebuttal reports. In total, *Burke* prepared and exchanged four expert merits reports. Depositions of the parties' experts began shortly after the *Burke* mediation session

---

[4] On June 12, 2019, this Court entered a Stipulation and Order Authorizing the Intervention and Substitution of Class Representatives, wherein Mary Stoumbos was substituted by Peter Burke, Kent Harrison, Marin P. Heiskell and Bryan Byrnes as named plaintiffs and proposed class representatives. Dkt. No. 101.

in July 2025 and are now completed. In view of the Settlement, *Burke* Plaintiffs agreed with Defendants that *Burke* experts would not be deposed, and *Burke* counsel would not participate in the non-settling parties' expert depositions except as observers. The agreement is without prejudice in the event the Settlement is not finally approved, and litigation of the *Burke* claims renews for any reason.

17. **Settlement Negotiations and Mediation.** The *Burke* $167.5 million Settlement was negotiated at arms-length during a more than four month process before one of the most credentialed, and in-demand, private mediators, former United States Attorney and Federal District Judge Layn Phillips. See Judge Phillips bio, Ex. B. *Burke* Co-Lead Counsel and Defendants' counsel had engaged in preliminary settlement discussions during the history of the case without progress. After the April 2024 Supreme Court denial of *certiorari* and September 2024 service of the *Burke* opening merits report, *Burke* and Defendants renewed the settlement discussions, and by January 2025 the parties agreed to mediate with Judge Phillips.

18. In preparation for the mediation, the parties exchanged many position papers presenting each party's arguments and responses, including to issues and questions posed by the mediator. By the time the mediation began, *Burke* Plaintiffs made three written submissions and engaged in hours of communications with the mediator and his assistants concerning the strengths and weaknesses of Plaintiffs'

claims and Defendants' defenses. Such communications continued during an in-person mediation on July 10. Thereafter, the parties negotiated a formal Settlement Agreement and executed it on August 22, 2025. See Exhibit A.

19. In his rebuttal merits report, *Burke* expert Dr. Lehr presented low, middle and high damages estimates: $823.23 million; $1.364 billion; and $1.716 billion.[5] The $167.5 million cash settlement by the Defendants represents 20.35% of Dr. Lehr's most conservative low damage estimate ($823.23 million), and 9.76% of Dr. Lehr's high damage estimate ($1.716 billion).

20. In these circumstances, *Burke* Co-Lead Counsel believe that the proposed Settlement provides a recovery that, at the preliminary approval stage, is "clearly within what may, at the final approval stage, be found to be within the range of reasonableness."[6]

21. **The Proposed Settlement Class**. The proposed Settlement Class is identical to the definition of the Class certified by this Court:

> "All persons in the United States who, between October 24, 2007, and the date of the Preliminary Approval Order, were charged an Access Fee for a domestic cash withdrawal transaction at an Independent ATM and who were

---

[5] See Lehr Rebuttal Report updated and corrected damages Sec. 2.10.7, Table 4.ix_pp_sf (designated confidential and served but not filed).

[6] See Expert Report of Dr. William Lehr, Ph.D., in Support of *Burke* Plaintiffs on the Merits, dated September 20, 2024 ("Lehr Merits Rep."), ¶¶ 9, 67-78 (served but not filed). The methodology for Dr. Lehr's models is fully described in the Lehr Merits Rep.

> not fully reimbursed by their bank. A domestic cash withdrawal transaction is a transaction to withdraw cash from a customer's deposit account using an ATM or pin-debit card at an Independent ATM terminal located within the United States, including its Territories. It does not include any credit card transaction or any transaction involving a cash advance or prepaid card. Excluded from the [Settlement] Class are Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action, and the members of his/her immediate family and judicial staff, and any juror assigned to this action. The Settlement Class shall not include members or putative members of the Class that timely and validly elect to be excluded from the Settlement Class. The Settlement Class shall not include members or putative members of the Class that timely and validly elect to be excluded from the Settlement Class.

Ex. A at § III(a).

22. According to data relating to the large number of ATM transactions previously provided by Plaintiffs' economic expert, Dr. William Lehr, Ph.D., it can be reasonably inferred that the Settlement Class is likely to include many millions

of individuals and entities. See Dkt. No. 111-61 [Expert Report of Dr. William Lehr, Ph.D., In Support of Burke Plaintiffs' Motion for Class Certification, dated Sep. 20, 2019][under seal] (e.g. §8.1 at ¶ 138 (finding Visa's AIM data through 2017 alone, before it was updated through December 2023, shows "513 million transaction observations for cash withdrawal transactions at 1.8 million U.S.-based ATM terminals.").

23. **Proposed Subpoena in Aid of Class Notice.** To facilitate class notice via direct email, Co-Lead Class Counsel proposes to serve upon the proposed claims administrator, A. B. Data, a subpoena in the form attached as Exhibit C for the use of email addresses already in its possession as a result of prior *Mackmin* class notice programs. All parties to the *Mackmin* action have been notified of this procedure and have stated no objection.

24. We declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 17th day of December, 2025, at New York, New York.

/s/_Christopher Lovell____
Christopher Lovell

Executed this 17th day of December, 2025, at Arlington, Virginia.

/s/_Douglas G. Thompson, Jr._
Douglas G. Thompson, Jr.

Case No. 1:11-cv-01882 (RJL).

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PETER BURKE, *et al.*,<br>Plaintiffs,<br><br>v.<br><br>VISA INC., *et al.*,<br>Defendants. | Case No. 1:11-cv-01882 (RJL) |

**STIPULATION AND AGREEMENT OF SETTLEMENT BETWEEN**
**BURKE PLAINTIFFS AND VISA AND MASTERCARD DEFENDANTS**

**TABLE OF CONTENTS**
**Contents**


**I. RECITALS** .....3

**II. DEFINITIONS** .....6

**III. SETTLEMENT CLASS CERTIFICATION** .....12

**IV. GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT AGREEMENT** .....14

**V. FINAL JUDGMENT AND ORDER OF DISMISSAL AGAINST VISA DEFENDANTS AND MASTERCARD DEFENDANTS** .....14

**VI. PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING** .....17

**VII. EFFECTIVE DATE OF SETTLEMENT** .....20

**VIII. CLAIMS ADMINISTRATOR** .....21

**IX. SCOPE AND EFFECT OF SETTLEMENT** .....21

**X. COOPERATION** .....22

**XI. FEE AND EXPENSE APPLICATION** .....23

**XII. THE SETTLEMENT FUND** .....25

**XIII. ADMINISTRATION OF THE SETTLEMENT** .....27

**XIV. TAXES** .....29

**XV. TERMINATION OF SETTLEMENT** .....31

**XVI. MISCELLANEOUS** .....33

## I. RECITALS

This Stipulation and Agreement of Settlement ("Settlement Agreement") is made and entered into on August 22, 2025 ("Execution Date"), between Class Plaintiffs (as defined herein), for themselves individually and on behalf of each Settlement Class Member in the Action (each, as defined herein), Visa Defendants (as defined herein), and Mastercard Defendants (as defined herein), by and through Class Lead Counsel, Visa Defendants' Counsel, and Mastercard Defendants' Counsel (each, as defined herein). This Settlement Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein), with respect to the Released Parties (as defined herein), upon and subject to the terms and conditions herein.

WHEREAS, on June 12, 2019, Burke Class Plaintiffs ("Plaintiffs" or "Class Plaintiffs") filed a Fourth Amended Class Action Complaint ("FAC" or "Complaint") in a civil class action captioned *Burke v. Visa Inc. et al*, 11-cv-01882-RJL-MAU, currently pending in the United States District Court for the District of Columbia, and alleged, among other things, that Defendants violated federal and state antitrust laws and caused injury and monetary damages to the Class;

WHEREAS, by order of August 4, 2021, as amended by order of September 7, 2021, and on the motion of the Class Plaintiffs, the Court certified classes under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3);

WHEREAS, Class Plaintiffs are prosecuting the Action on their own behalf and on behalf of certified Rule 23(b)(2) and 23(b)(3) classes against Visa Defendants and Mastercard Defendants (collectively referred to as "Defendants," as defined herein);

WHEREAS, Class Plaintiffs have alleged, among other things, that Defendants, Visa and Mastercard, participated in an unlawful conspiracy to restrain trade, pursuant to which Visa

Defendants and Mastercard Defendants and their alleged co- conspirators, as well as unnamed co-conspirators, agreed, among other things, to so-called Non-Discrimination Rules that allegedly restrained competition in the setting of surcharges by independently owned, non-bank ATMs and caused higher surcharge prices to be paid as ATM Access Fees (as defined herein) for cash withdrawal transactions by the Settlement Class (as defined herein), in violation of the Sherman Act, 15 U.S.C. § l, *et seq.* as well as certain state antitrust, restraint of trade, consumer protection, and unfair competition laws;

WHEREAS, Class Plaintiffs have contended that they are entitled to actual damages, treble damages, and injunctive relief for loss or damage, and threatened loss or damage, as a result of violations of the laws as alleged in the FAC, arising from Defendants' alleged conduct;

WHEREAS, Visa Defendants and Mastercard Defendants have denied and continue to deny each and all of the claims made by Class Plaintiffs in the Action and all liability against them arising out of any of the conduct, statements, acts, or omissions that were alleged, or that could have been alleged, in the Action;

WHEREAS, Class Plaintiffs, for themselves individually and on behalf of each Settlement Class Member, Visa Defendants, and Mastercard Defendants, agree that neither this Settlement Agreement nor any statement made in negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Visa Defendants or Mastercard Defendants or of the truth of any of the claims or allegations alleged in the Action;

WHEREAS, Class Plaintiffs, Visa Defendants and Mastercard Defendants have engaged in extensive discovery regarding the facts pertaining to Class Plaintiffs' claims and Visa Defendants' and Mastercard Defendants' defenses;

WHEREAS, Class Lead Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Action, the legal and factual defenses thereto, and the applicable law, that: (1) it is in the best interests of the Settlement Classes to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein, including the value of the Settlement Amount (as defined herein) to be paid by Visa Defendants and Mastercard Defendants under this Settlement Agreement, are obtained for the Settlement Classes; and (2) the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate and in the best interests of the Settlement Classes;

WHEREAS, Visa Defendants and Mastercard Defendants, while each continuing to deny that they are liable for any of the claims asserted against them in the Action, have nevertheless agreed to enter into this Settlement Agreement to avoid the further risk, expense, inconvenience, and distraction of burdensome and protracted litigation, and thereby to put fully to rest this controversy, to avoid the risks inherent in complex litigation, and to obtain complete dismissal of the FAC as to Visa Defendants and Mastercard Defendants and a release of claims as set forth herein; and

WHEREAS, this Settlement Agreement is the product of arm's-length negotiations between Class Lead Counsel and Visa Defendants' Counsel and Mastercard Defendants' Counsel under the guidance and oversight of former U.S. District Judge Layn Phillips as Mediator, and this Settlement Agreement embodies all of the terms and conditions of the settlement agreed upon between Visa Defendants and Mastercard Defendants and Class Plaintiffs, both for themselves individually and on behalf of the Settlement Classes;

NOW, THEREFORE, in consideration of the covenants, terms, and releases in this Settlement Agreement, it is agreed, by and among Class Plaintiffs (for themselves individually and on behalf of the Settlement Classes and each member thereof) and Visa Defendants and Mastercard Defendants, by and through Class Lead Counsel and Visa Defendants' Counsel and Mastercard Defendants' Counsel, that, subject to the approval of the Court (as defined herein), the Action be settled, compromised, and dismissed with prejudice as to Visa Defendants and Mastercard Defendants and the other Released Parties (as defined herein), without costs, except as stated herein, and releases be extended, as set forth in this Settlement Agreement.

## II. DEFINITIONS

As used in this Settlement Agreement, the following capitalized terms have the meanings specified below:

(a) "Action" means *Peter Burke, et al. v. Visa Inc., et al.*, Case No. 1:11-cv-01882 (RJL), which is currently pending in the United States District Court for the District of Columbia.

(b) "ATM" means an automated teller machine, which allows Cardholders to complete an ATM Transaction.

(c) "ATM Access Fee" means the fee assessed by an ATM operator to a Cardholder for completing a Foreign ATM Transaction.

(d) "ATM Card" means an access device, usually a card, enabling the holder, among other things, to conduct an ATM Transaction.

(e) "ATM Transaction" means any actual or attempted use of an ATM, including to withdraw cash, deposit funds, transfer funds, or check account balances.

(f) "Authorized Claimant" means any Settlement Class Member who will be entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Distribution approved by the Court.

(g) "Bank" means any bank, credit union, or other financial institution, including its affiliates, subsidiaries, agents, representatives, employees, officers, and directors.

(h) "Cardholder" means any Person that owns, possesses, or controls an ATM Card.

(i) "Claims Administrator" means the third party to be retained by Class Lead Counsel and approved by the Court to manage and administer the process by which each Settlement Class Member is notified of the Settlement Agreement and paid from the Net Settlement Fund.

(j) "Class Lead Counsel" means Lovell Stewart Halebian Jacobson LLP and Finkelstein Thompson LLP.

(k) "Class Notice" means the proposed form of, method for, and the date of dissemination of notice of the Settlement Agreement to the Settlement Classes.

(l) "Class Plaintiffs" means any person who was named as a plaintiff during this Action.

(m) "Court" means the United States District Court for the District of Columbia.

(n) "Defendants" means Visa Inc.; Visa U.S.A Inc.; Visa International Service Association; Plus System, Inc.; Mastercard Incorporated; Mastercard International Incorporated d/b/a Mastercard Worldwide; and any other Person or Persons who are named as defendants in the Action at any time up to and including the date a Preliminary Approval Order is entered.

(o) "Effective Date of Settlement" has the meaning given to it in Paragraph VII.

(p) "Escrow Agent" means U.S. Bank.

(q) "Execution Date" means the date of the execution of this Settlement Agreement by counsel for all Parties thereto.

(r) “Fairness Hearing” means the hearing to be held by the Court to determine whether the settlement set forth in this Settlement Agreement shall receive final approval pursuant to Fed. R. Civ. P. 23.

(s) “Fee and Expense Application” has the meaning given to it in Paragraph XI.

(t) “Fee and Expense Approval” has the meaning given to it in Paragraph XI.

(u) “Final Approval Order” has the meaning given to it in Paragraph V.

(v) “Final Judgment and Order of Dismissal” has the meaning given to it in Paragraph V.

(w) “Foreign ATM Transaction” means an ATM Transaction in which the Cardholder uses an ATM that is owned or operated by an entity different from the entity that issued the ATM Card used for that ATM Transaction.

(x) “Independent ATM” means an automated teller machine that is not owned by Visa, Mastercard or any of their member Banks.

(y) “Mastercard Defendants” means Mastercard Incorporated and Mastercard International Incorporated d/b/a Mastercard Worldwide.

(z) “Mastercard Defendants’ Counsel” means Paul, Weiss, Rifkind, Wharton & Garrison LLP.

(aa) “Mediator” means former U.S. District Judge Layn R. Phillips.

(bb) “Net Settlement Fund” has the meaning given to it in Paragraph XII.

(cc) “Parties” means, collectively, Class Plaintiffs (on behalf of themselves and the Settlement Classes) and Visa Defendants and Mastercard Defendants.

(dd) “Person” means an individual or entity, and his, her, or its spouses, heirs, predecessors, successors, representatives, or assignees.

(ee) "Plan of Distribution" means a plan or formula of allocation of the Net Settlement Fund whereby the Settlement Fund shall be distributed to Settlement Class Members after payment of expenses of notice and administration of the settlement, Taxes, and tax expenses, and such attorneys' fees, costs, service awards, interest, and other expenses as may be awarded by the Court.

(ff) "Preliminary Approval Order" means an order of the Court that preliminarily approves the settlement set forth in this Settlement Agreement and that approves the form of Class Notice and preliminarily approves a proposed Plan of Distribution.

(gg) "Released Claims" means, in consideration of payment of the Settlement Amount into the Settlement Fund as specified in Paragraph XII of this Settlement Agreement, and for other valuable consideration, any and all manner of claims, causes of action, cross-claims, counterclaims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, damages, or other payment of money, or for injunctive, declaratory or other equitable relief, whenever incurred and liabilities of any nature whatsoever (including joint and several) that have or could have been alleged in the Action by the Releasing Parties against the Released Parties to the fullest extent permitted by law, including all potential, unasserted, and "Unknown Claims," as defined below, from the beginning of time and continuing into the future without end. It is expressly agreed for purposes of clarity that any claims arising out of the factual predicates of the Action, including with respect to the rules, fees, and/or conduct at issue, are claims that have or could have been alleged in the Action by the Releasing Parties against the Released Parties.

(hh) "Released Party" or "Released Parties" means Visa Inc.; Visa U.S.A. Inc.; Visa International Service Association; Plus System, Inc.; Mastercard Incorporated; and Mastercard International Incorporated d/b/a Mastercard Worldwide, and each entity's past, present, and future, direct and indirect parents (including holding companies), subsidiaries, affiliates, associates (all as defined in Securities and Exchange Commission Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934, as amended), divisions, predecessors, successors, assigns, and members (including, without limitation, all past, present, and future financial institutions authorized or licensed to issue or acquire Visa- or Mastercard-branded ATM Cards and transactions), and each of their respective officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, advisors, members, and assigns.

(ii) "Releasing Parties" means, individually and collectively, Class Plaintiffs and each Settlement Class Member, on behalf of themselves and any of their respective past, present or future officers, directors, stockholders, agents, employees, legal or other representatives, partners, associates, trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, purchasers, predecessors, successors and assigns, whether or not they object to the settlement set forth in this Settlement Agreement, and whether or not they make a claim for payment from the Net Settlement Fund.

(jj) "Request for Exclusion" has the meaning given to it in Paragraph VI.

(kk) "FAC" or "Complaint" means the Fourth Amended Class Action Complaint filed with the Court in the Action on June 12, 2019.

(ll) "Settlement Agreement" means this Stipulation and Agreement of Settlement.

(mm) "Settlement Amount" means the sum of One Hundred Sixty-Seven Million Five Hundred Thousand Dollars ($167,500,000.00), payable in lawful tender of the United States.

(nn) "Nationwide Settlement Class" has the meaning given to it in Paragraph III(a).

(oo) "Settlement Classes" means the Nationwide Settlement Class and the Statewide Settlement Classes, collectively.

(pp) "Statewide Settlement Classes" has the meaning given to it in Paragraph III(b).

(qq) "Settlement Class Member" means a Person who is a member of one or more of the Settlement Classes and has not timely and validly excluded himself, herself, or itself in accordance with the procedures to be established by the Court.

(rr) "Settlement Fund" means the escrow account established pursuant to Paragraph XII of this Settlement Agreement, including all monies (including interest earned) held therein in accordance with the terms of this Settlement Agreement.

(ss) "Taxes" has the meaning given to it in Paragraph XIV.

(tt) "Unknown Claims" means any and all Released Claims against the Released Parties that any of the Releasing Parties does not know or suspect to exist in his, her, or its favor as of the Effective Date of Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that by operation of the Final Judgment and Order of Dismissal, upon the Effective Date of Settlement, Releasing Parties shall have expressly waived, and each Settlement Class Member shall be deemed to have waived, and by operation of the Final Judgment and Order of Dismissal shall have expressly waived, the provisions, rights and benefits of Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

and any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542.

Any of the Releasing Parties may hereafter discover facts other than or different from those that he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims. Nevertheless, Class Plaintiffs shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member, upon the Effective Date of Settlement, shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever settled and released, any and all Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Class Plaintiffs acknowledge, and Settlement Class Members shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

(uu) "Visa Defendants" means Visa Inc., Visa U.S.A. Inc., Visa International Service Association, and Plus System, Inc.

(vv) "Visa Defendants' Counsel" means Arnold & Porter Kaye Scholer LLP.

## III. SETTLEMENT CLASS CERTIFICATION

(a) The Parties hereby stipulate solely for settlement purposes that the requirements of Fed. R. Civ. P. 23(a), Fed. R. Civ. P. 23(b)(2), and Fed R. Civ. P. 23(b)(3) are satisfied and, subject to Court approval, the following Nationwide Settlement Class shall be certified as to Visa Defendants and Mastercard Defendants solely for settlement purposes: "All persons in the United States who, between October 24, 2007, and the date of the Preliminary Approval Order, were charged an Access Fee for a domestic cash withdrawal transaction at an Independent ATM and who were not fully reimbursed by their bank. A domestic cash

withdrawal transaction is a transaction to withdraw cash from a customer's deposit account using an ATM or pin-debit card at an Independent ATM terminal located within the United States, including its Territories. It does not include any credit card transaction or any transaction involving a cash advance or prepaid card." Excluded from the Class are Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action, and the members of his/her immediate family and judicial staff, and any juror assigned to this action. The Settlement Class shall not include members or putative members of the Class that timely and validly elect to be excluded from the Settlement Class.

(b) The Parties hereby stipulate solely for settlement purposes that the requirements of Fed. R. Civ. P. 23(a), Fed. R. Civ. P. 23(b)(2), and Fed R. Civ. P. 23(b)(3) are satisfied and, subject to Court approval, the following Statewide Settlement Classes shall be certified as to Visa Defendants and Mastercard Defendants solely for settlement purposes: four separate statewide classes for injunctive relief and damages pursuant to the laws of the states of California, Illinois, Massachusetts, and Michigan, each defined identically to the Nationwide Class except that each statewide class is limited to persons who were charged an Access Fee at an Independent ATM located in the respective state.

(c) The Parties' agreement as to certification of the Settlement Classes is solely for purposes of effectuating a settlement and for no other purpose. Visa Defendants and Mastercard Defendants retain all of their objections, arguments, and defenses with respect to class certification, and reserve all rights to contest class certification, if the settlement set forth

in this Settlement Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the settlement set forth in this Settlement Agreement otherwise fails to close. The Parties acknowledge that there has been no stipulation to any class or certification of any class for any purpose other than effectuating the settlement, and that if the settlement set forth in this Settlement Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the settlement set forth in this Settlement Agreement otherwise fails to close, this agreement as to certification of the Settlement Classes becomes null and void *ab initio*, and this Settlement Agreement or any other settlement-related statement may not be cited regarding certification of the Settlement Classes, or in support of an argument for certifying a class for any purpose related to this proceeding.

## IV. GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT AGREEMENT

The Parties agree to cooperate with one another in good faith to effectuate and implement the terms and conditions of this Settlement Agreement and to exercise their reasonable best efforts to accomplish the terms of this Settlement Agreement. This includes Visa Defendants and Mastercard Defendants serving notice on those entities required to receive notice pursuant to 28 U.S.C. § 1715.

## V. FINAL JUDGMENT AND ORDER OF DISMISSAL AGAINST VISA DEFENDANTS AND MASTERCARD DEFENDANTS

(a) Class Plaintiffs shall seek a Final Approval Order and a Final Judgment and Order of Dismissal against Visa Defendants and Mastercard Defendants, the proposed text of which Class Plaintiffs and Visa Defendants and Mastercard Defendants shall agree upon. The Final Approval

Order and Final Judgment and Order of Dismissal submitted for Court approval will include, at a minimum, terms:

i. certifying the Settlement Classes pursuant to Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3) solely for the purpose of the settlement;

ii. as to the Action, approving fully and finally this settlement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

iii. finding that the notice given to Settlement Class Members constitutes the best notice practicable under the circumstances and complies in all respects with the valid, due, and sufficient notice requirements of Federal Rule of Civil Procedure 23, and meets the requirements of due process;

iv. as to Released Parties, directing that the Action be dismissed with prejudice and, except as provided for in this Settlement Agreement, without costs;

v. discharging and releasing the Released Parties from the Released Claims, regardless of whether any Releasing Party executes and delivers a proof of claim, and without respect to any rights afforded under California Civil Code § 1542 and/or any other similar, comparable, or equivalent laws;

vi. permanently barring and enjoining Class Plaintiffs or any Settlement Class Member from (A) instituting or prosecuting any other action against any of the Released Parties as to any of the Released Claims, or (B) assisting any third party in commencing or maintaining any suit against any Released Party related in any way to any of the Released Claims;

vii. reserving exclusive jurisdiction over the settlement and this Settlement Agreement, including all future proceedings concerning the administration, interpretation, consummation, and enforcement of this settlement and this Settlement Agreement, to the Court; and

viii. determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to the Released Parties shall be final and entered forthwith.

(b) The Final Judgment and Order of Dismissal shall become final when (i) the Court has entered a final order certifying the Settlement Classes for settlement purposes and approving this Settlement Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to the Released Parties against all Settlement Class Members and without costs other than those provided for in this Settlement Agreement, and (ii) the time for appeal from the Court's approval of this Settlement Agreement and entry of a final judgment as to the Released Parties described in (i) hereof has expired or, if appealed, approval of this Settlement Agreement and the final judgment as to the Released Parties have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.

(c) As of the Execution Date, Class Plaintiffs, Settlement Class Members, Visa Defendants, and Mastercard Defendants shall be bound by the Settlement Agreement's terms and this Settlement Agreement shall not be rescinded except in accordance with the terms of this Settlement Agreement.

## VI. PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING

(a) As soon as reasonably possible following the Execution Date, Class Lead Counsel shall submit to the Court, and Visa Defendants and Mastercard Defendants shall support, a motion requesting entry of a Preliminary Approval Order. That motion shall:

i. seek preliminary certification of the Settlement Classes solely for settlement purposes, pursuant to Fed. R. Civ. P. 23(a), Fed R. Civ. P. 23(b)(2), and Fed. R. Civ. P. 23(b)(3);

ii. request preliminary approval of the settlement set forth in this Settlement Agreement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23;

iii. seek the appointment of Class Plaintiffs as representatives of the Settlement Classes, and Class Lead Counsel as counsel for the Settlement Classes under Fed. R. Civ. P. 23(g);

iv. request authorization to disseminate notice of the settlement and final judgment contemplated by this Settlement Agreement to all potential Settlement Class Members. The motion shall include: (1) a proposed form of, method for, and date of dissemination of notice; and (2) a proposed Preliminary Approval Order. Notice of the settlement shall be as provided in the motion and as approved by the Court, with all expenses paid from the Settlement Fund, subject to the provisions of this Settlement Agreement. The motion shall recite and ask the Court to find that the method of the notice of settlement to all Settlement Class Members who can be identified upon reasonable effort constitutes valid, due, and sufficient notice to the Settlement Classes, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23 and due process. The Claims Administrator will also establish and maintain a dedicated

settlement website, from which each Settlement Class Member can view and download relevant documents;

v. seek appointment of the Claims Administrator;

vi. seek appointment of U.S. Bank as Escrow Agent;

vii. request that the Court, pending final determination of whether the Settlement Agreement should be approved, stay all proceedings in the Action against Visa Defendants and Mastercard Defendants until the Court renders a final decision on approval of the settlement set forth in this Settlement Agreement;

viii. request that the Court, pending final determination of whether the Settlement Agreement should be approved, temporarily enjoin each Class Plaintiff and each Settlement Class Member, whether directly, representatively, or in any other capacity, from prosecuting in any forum any Released Claim against any of the Released Parties; and

ix. attach a proposed form of order, the proposed text of which Class Lead Counsel shall provide to Visa Defendants and Mastercard Defendants at least five (5) business days prior to the submission to the Court of the motion requesting entry of a Preliminary Approval Order. Class Lead Counsel will consider in good faith any suggestions from Visa Defendants and Mastercard Defendants regarding the proposed form of order. The form of order will include such provisions as are typical in such orders, including: (1) setting a date for the Fairness Hearing; (2) a provision indicating that, if final approval of the settlement is not obtained, the settlement is null and void, and the Parties will revert to their positions *ex ante* (as of the Execution Date) without prejudice to their rights, claims, or defenses; (3) stating the substantial litigation risks that the Settlement Classes faced in the Action; (4) stating the procedures, which shall be consistent with Paragraph VI(d), for

Persons falling within the definitions of one or more of the Settlement Classes to exclude themselves from the Settlement Classes; (5) requiring that all members of the Settlement Classes be bound by all final determinations in the Action concerning the settlement, whether favorable or unfavorable to the members of the Settlement Classes; and (6) stating that Visa Defendants and Mastercard Defendants have denied and continue to deny each and all of the claims made by Class Plaintiffs in the Action and have denied and continue to deny liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action.

(b) Class Notice shall apprise each Settlement Class Member of his, her, or its right to exclude themselves from, or object to, the settlement.

(c) Visa Defendants and Mastercard Defendants shall be responsible for providing all notices required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

(d) Any Person falling within the definitions of one or more of the Settlement Classes may request to be excluded from the Settlement Classes ("Request for Exclusion") in accordance with procedures approved by the Court (which, at a minimum, will require a signed writing or substantially similar submission from each individual or entity requesting exclusion that clearly states (i) the individual's or entity's identity with particularity and (ii) his/her/its decision to request exclusion from the Settlement Classes in this Action). Within five (5) business days after the end of the period to request exclusion from the Settlement Class, Class Lead Counsel will cause copies of all Requests for Exclusion from the Settlement Classes to be provided to counsel for Visa Defendants and Mastercard Defendants. With respect to any potential Settlement Class Member who requests exclusion from the Settlement Classes, Visa Defendants and Mastercard Defendants reserve all of their legal rights and defenses, including, but not limited to, any defenses relating to

whether the excluded Settlement Class Member is a member of one or more of the Settlement Classes and/or has standing to bring any claim.

(e) The Parties to this Settlement Agreement contemplate and agree that, prior to final approval of the settlement, Class Plaintiffs will request a Court hearing at which the Court will consider the final approval of this Settlement Agreement.

## VII. EFFECTIVE DATE OF SETTLEMENT

(a) The "Effective Date of Settlement" shall be the date when all of the following events shall have occurred and shall be conditioned on the occurrence of all of the following events:

i. the Settlement Amount has been contributed to the Settlement Fund pursuant to this Settlement Agreement;

ii. entry of the Preliminary Approval Order;

iii. final approval by the Court of the settlement set forth in this Settlement Agreement, following Class Notice and the Fairness Hearing;

iv. no Party has exercised his, her, or its rights to terminate this Settlement Agreement pursuant to Paragraph XV, and all periods for any Party to exercise such rights have expired; and

v. entry by the Court of a Final Judgment and Order of Dismissal, and the Final Judgment and Order of Dismissal becomes final pursuant to Paragraph V(b).

(b) Notwithstanding any other provision herein, any proceeding or order, or motion for reconsideration, appeal, petition for a writ of certiorari or its equivalent, pertaining solely to the Plan of Distribution or Fee and Expense Application, or both, shall not in any way delay or preclude the Effective Date of Settlement.

## VIII. CLAIMS ADMINISTRATOR

(a) Pursuant to the Preliminary Approval Order, and subject to Court approval, Class Lead Counsel shall engage a qualified Claims Administrator. The Claims Administrator will assist with the settlement claims process as set forth herein.

(b) The Claims Administrator shall effectuate the notice plan approved by the Court in the Preliminary Approval Order, shall administer and calculate the claims, and shall oversee distribution of the Net Settlement Fund in accordance with the Plan of Distribution.

(c) The Claims Administrator also shall assist in the development of the Plan of Distribution and the resolution of any disputes that may be raised by Settlement Class Members regarding the amount that they are owed under the Plan of Distribution.

## IX. SCOPE AND EFFECT OF SETTLEMENT

(a) The obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition of: (i) the Action against Visa Defendants and Mastercard Defendants; and (ii) any and all Released Claims as against all Released Parties.

(b) Upon the Effective Date of Settlement, each of the Releasing Parties: (i) shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal, shall have fully, finally, and forever waived, released, relinquished, and discharged (1) all Released Claims against the Released Parties, and (2) any rights to the protections afforded under California Civil Code § 1542 and/or any other similar, comparable, or equivalent laws; (ii) shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties; (iii) agrees and covenants not to sue, whether directly, representatively, or in any other capacity, any of the Released Parties on the basis of any Released Claims or to assist any third party in commencing or maintaining any suit against any of the Released Parties related in any way to any Released Claims; and (iv) represents and acknowledges that, as of the date of Preliminary Approval, any

and all competitive issues that were, or could have been, asserted in this litigation have been addressed.

(c) The releases provided in this Settlement Agreement shall become effective immediately upon occurrence of the Effective Date of Settlement without the need for any further action, notice, condition, or event.

(d) The Parties shall seek entry by the Court of an order, in the Final Judgment and Order of Dismissal or otherwise, to the extent not prohibited by law, barring claims by any Person against the Released Parties for contribution or indemnification (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment or otherwise.

(e) In the event that this Settlement Agreement is terminated pursuant to Paragraph XV, or any condition for the final approval of this Settlement Agreement is not satisfied, the release and covenant not to sue provisions of this Paragraph shall be null and void and unenforceable.

## X. COOPERATION

(a) Visa Defendants and Mastercard Defendants will, to the extent permitted by law, work in good faith to furnish information reasonably available to them to assist in the identification of potential Settlement Class Members. Visa Defendants and Mastercard Defendants further agree to employ reasonable and good faith efforts to cooperate with Class Plaintiffs to ensure the timely production of this information, as well as to determine the specific information to be provided and the format of that information. Any confidentiality or security concerns Visa Defendants and Mastercard Defendants may have in connection with providing such information will be addressed by Class Plaintiffs in good faith, including by allowing Visa Defendants and Mastercard Defendants to condition their provision of the information upon their approval of the data security and privacy practices of the Claims Administrator handling their information. In turn, Visa Defendants and Mastercard Defendants will respond in good faith to reasonable inquiries or

requests from the Claims Administrator or Class Plaintiffs that may arise in connection with the notice, claims, or distribution process. Visa Defendants and Mastercard Defendants agree to employ reasonable and good faith efforts to cooperate with the Claims Administrator and other third party service providers with respect to notice, claims processing, and claims distribution by providing information concerning their capacity to facilitate those third party service providers' efforts to provide notice. To the extent any disagreements arise as to the information Visa Defendants and Mastercard Defendants agree to provide under this Paragraph, the Parties will first attempt to meet and confer in good faith to reach a resolution. If, following a good faith meet and confer process, the Parties cannot reach a resolution, the Parties agree they will submit the dispute to the Court for resolution in accordance with applicable law. Nothing in this Paragraph, identifying cooperation that Visa Defendants and Mastercard Defendants shall provide to the Claims Administrator, is intended to cause Visa Defendants or Mastercard Defendants to assume the role or responsibilities of the Claims Administrator. Similarly, nothing in this Paragraph is intended to waive any party's rights to seek to impose or oppose any additional obligations with respect to notice, claims, or distribution of the Settlement Amount.

(b) Except as expressly provided herein, no further discovery shall be allowed to be directed by Class Lead Counsel, Class Plaintiffs, or Settlement Class Members to Visa Defendants or Mastercard Defendants, including any discovery regarding the merits of the Action or in connection with processing claims.

## XI. FEE AND EXPENSE APPLICATION

(a) Class Lead Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for distribution to them from the Settlement Fund of (1) an award of attorneys' fees; plus (2) reimbursement of expenses paid by Class Lead Counsel in connection with prosecuting the Action; plus (3) any interest earned in the escrow account on such attorneys'

fees and expenses (until paid) at the same rate and for the same periods as earned by the Settlement Fund, as appropriate, and as may be awarded by the Court (the "Fee and Expense Award").

(b) The Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund to an account designated by Class Lead Counsel within thirty (30) days after the granting of the Fee and Expense Award. The Fee and Expense Award may be disbursed during the pendency of any appeals that may be taken from the Court's judgment approving this Settlement Agreement or the Fee and Expense Award, or both.

(c) Class Lead Counsel shall determine themselves the amount of attorneys' fees and expenses to be paid to each Class Lead Counsel firm themselves in a manner that they believe in good faith reflects the respective contributions of such counsel to the prosecution and settlement of this Action.

(d) In the event that the order making the Fee and Expense Award is reversed or modified, then each Class Lead Counsel firm shall, within ten (10) business days from receiving notice from Visa Defendants' or Mastercard Defendants' Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund the Fee and Expense Award or any portion thereof previously paid to it plus interest thereon at the same rate as earned by the account into which the balance of the Settlement Fund is deposited.

(e) The procedure for, and the allowance or disallowance by the Court of, the application by Class Lead Counsel for attorneys' fees, costs, and expenses to be paid out of the Settlement Fund are not part of this Settlement Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceeding relating to the Fee and Expense Application, the pendency of any such

application, or any appeal from any such order shall not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the judgment approving the settlement.

(f) Class Lead Counsel may request service awards for the Class Plaintiffs, to be drawn exclusively from the Settlement Fund. Defendants shall not object to a request for service awards in an amount equal to or less than $15,000 for each Class Plaintiff.

**XII. THE SETTLEMENT FUND**

(a) The Settlement Fund shall be established as an escrow account at U.S. Bank and administered by the Escrow Agent, subject to the continuing jurisdiction of the Court. The Settlement Fund shall be administered pursuant to this Settlement Agreement and subject to the Court's continuing supervision and control. No monies shall be paid from the Settlement Fund without the specific authorization of Class Lead Counsel, based on prior approval by the Court. Class Lead Counsel will form an appropriate escrow agreement in conformance with this Settlement Agreement.

(b) Within twenty-one (21) business days following entry of the Preliminary Approval Order, provided that within two (2) days following entry of the Preliminary Approval Order, Class Lead Counsel shall provide Visa Defendants and Mastercard Defendants with such information as Visa Defendants or Mastercard Defendants may require to complete the necessary wire transfers, Defendants shall cause the payment of $167,500,000.00 to be wired to the Escrow Agent as follows: (i) the Visa Defendants shall cause the payment of 53% of the Settlement Amount (*i.e.*, $88,775,000.00) to be transferred to the Escrow Agent, and (ii) the Mastercard Defendants shall cause the payment of 47% of the Settlement Amount (*i.e.*, $78,725,000.00) to be transferred to the Escrow Agent, in accordance with Visa Defendants' and the Mastercard Defendants' agreement among themselves regarding their respective shares. These funds, together with any interest earned thereon, shall constitute the Settlement Fund. In the event that Class Lead Counsel does

not provide Visa Defendants and Mastercard Defendants with the information required to complete the wire transfer within the prescribed time, Visa Defendants' and Mastercard Defendants' payment obligations under this Paragraph shall be deferred by an amount of time equivalent to Class Lead Counsel's delay in providing such information.

(c) In all events, the Released Parties shall have no liability, obligation, or responsibility for the costs or provision of notice, including, but not limited to, the identification of potential Settlement Class Members, beyond those set forth in Paragraphs X(a) and XII(b) above, and Paragraph XII(e)(ii) below; for the solicitation, review, or evaluation of proofs of claim; for the administration of the settlement or disbursement of the Settlement Fund; or for any other costs, including any attorneys' fees and expenses or any taxes or tax-related costs relating to the Action, any Released Claim, or the Settlement Fund. The Settlement Fund shall be invested exclusively in accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a United States Treasury Fund or a bank account that is either: (i) fully insured by the Federal Deposit Insurance Corporation; or (ii) secured by instruments backed by the full faith and credit of the United States Government. The proceeds of these accounts shall be reinvested in similar instruments at their then-current market rates as they mature. Visa Defendants and Mastercard Defendants shall have no responsibility or liability for any losses incurred by the Settlement Fund.

(d) All funds held by the Escrow Agent shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Settlement Agreement and the Plan of Distribution approved by the Court.

(e) The Settlement Fund shall be applied as follows:

(i) to pay the Fee and Expense Award, if and to the extent allowed by the Court;

(ii) to use, if approved by the Court, up to $3,000,000.00 of the Settlement Amount for payment of any Court-approved costs and expenses in connection with providing Class Notice and the administration of the settlement, including, without limitation, identifying potential Settlement Class Members; soliciting, reviewing, and evaluating proofs of claim or release forms, or both; and administering the settlement and disbursing the Settlement Fund. If necessary, additional amounts can be used for notice and administration expenses upon the further written agreement of the Parties and approval by the Court, and Visa Defendants and Mastercard Defendants agree to exercise good faith regarding any additional amounts and not to object to reasonable requests to the Court for such additional amounts; in the event Visa Defendants or Mastercard Defendants decline to agree to a request for additional amounts, Class Plaintiffs shall be permitted to apply directly to the Court for approval without Visa Defendants' or Mastercard Defendants' written agreement to the amounts requested (and Visa Defendants and Mastercard Defendants reserve their rights to oppose such an application);

(iii) to pay the Taxes and tax expenses described in Paragraph XIV herein;

(iv) to pay any Court approved Class Plaintiff service awards;

(v) to pay any other Court-approved fees and expenses; and

(vi) to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Settlement Class Members as allowed by the Court.

## XIII. ADMINISTRATION OF THE SETTLEMENT

(a) The Claims Administrator shall process this settlement based upon the orders of the Court and this Settlement Agreement, and, after entry of relevant order(s) of the Court, distribute the Net Settlement Fund in accordance with such order(s) and this Settlement Agreement.

(b) Except for their obligation to fund the settlement or cause it to be funded as detailed in this Settlement Agreement, Visa Defendants and Mastercard Defendants shall have no liability, obligation, or responsibility for the administration of the settlement or disbursement of the Net Settlement Fund.

(c) The Net Settlement Fund shall be distributed by the Claims Administrator to, or for the account of, Settlement Class Member claimants, as the case may be, only after the Effective Date of Settlement.

(d) Class Plaintiffs and Settlement Class Members shall look solely to the Settlement Fund as full, final and complete satisfaction of all Released Claims. Except as set forth in Paragraph XII(b), Visa Defendants and Mastercard Defendants shall have no obligation under this Settlement Agreement or the settlement to pay or cause to be paid any amount of money, and Visa Defendants and Mastercard Defendants shall have no obligation to pay or reimburse any fees, expenses, costs, liability, losses, Taxes, or damages whatsoever alleged or incurred by Class Plaintiffs, by any Settlement Class Member, or by any Releasing Parties, including, but not limited to, by their attorneys, experts, advisors, agents, or representatives, with respect to the Action and Released Claims. Class Plaintiffs and Settlement Class Members acknowledge that as of the Effective Date of Settlement, the releases given herein shall become effective immediately by operation of the Final Judgment and Order of Dismissal and shall be permanent, absolute, and unconditional.

(e) Any funds that remain in the Net Settlement Fund after distribution of the Net Settlement Fund in accordance with the Plan of Distribution shall not revert to Visa Defendants or Mastercard Defendants. Class Plaintiffs shall apply directly to the Court authorizing the distribution of those remaining funds.

## XIV. TAXES

(a) The Parties agree that the Settlement Fund is intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulations § 1.468B-l, and agree not to take any position for tax purposes inconsistent therewith. In addition, Class Lead Counsel shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treasury Regulation § 1.468B-1(j)(2)) to treat the Settlement Fund as coming into existence on the earliest permitted date. Such relation-back election shall be made in compliance with the procedures and requirements contained in such regulations. The Settlement Fund, less any amounts incurred for notice, administration, and/or Taxes (as defined below), plus any accrued interest thereon, shall be immediately returned to Visa Defendants and Mastercard Defendants, as provided in Paragraph XV, if the settlement does not become effective for any reason, including by reason of a termination of this Settlement Agreement pursuant to Paragraph XV.

(b) For purposes of 26 U.S.C. § 468B and the Treasury regulations promulgated thereunder, Class Lead Counsel shall be designated as the "administrator" of the Settlement Fund as contemplated and defined in Treasury Regulation § l.468B-2(k)(3). Class Lead Counsel shall timely and properly file, or cause to be filed, all income, informational, and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulations § l.468B-2(k)). Such returns shall be consistent with this Paragraph XIV and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. Class Lead Counsel agrees to timely provide a copy of the election statement contemplated in Treasury Regulation § 1.468B-1(j)(2)) to the Visa Defendants and Mastercard Defendants, and a copy of all filed original

and amended income tax return(s) (including extensions) of the Settlement Fund for the taxable year(s) during which the Settlement Fund is in existence.

(c) All: (i) taxes or other similar imposts or charges (including any estimated taxes, interest, penalties, or additions to tax) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" within the meaning of Treasury Regulations § 1.468B-1 (or any relevant equivalent for state tax purposes); and (ii) other taxes or tax expenses imposed on or in connection with the Settlement Fund (collectively, "Taxes"), shall promptly be paid out of the Settlement Fund by the Escrow Agent without prior order from the Court. The Escrow Agent shall also be obligated to, and shall be responsible for, withholding from distribution to Settlement Class Members any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes. The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph XIV. In addition, the Parties agree to provide each other with prompt notice of any challenges to the tax treatment of the Settlement Fund as a qualified settlement fund for tax purposes, and agree to cooperate with each other to sustain the tax treatment of the Settlement Fund as a qualified settlement fund and as contemplated by this agreement.

(d) Neither the Parties nor their counsel shall have any responsibility for or liability whatsoever with respect to: (i) any act, omission, or determination of the Escrow Agent, Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement Fund or otherwise; (ii) the Plan of Distribution; (iii) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund;

(iv) any losses suffered by, or fluctuations in the value of, the Settlement Fund; or (v) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns. The Escrow Agent shall indemnify and hold harmless the Parties, using monies from the Settlement Fund, from and against any claims, liabilities, or losses relating to the matters addressed in the preceding sentence.

**XV. TERMINATION OF SETTLEMENT**

(a) Class Plaintiffs, through Class Lead Counsel, Visa Defendants, through Visa Defendants' Counsel, and Mastercard Defendants, through Mastercard Defendants' Counsel, shall, in each of their separate discretions, have the right to terminate the settlement set forth in this Settlement Agreement by providing written notice of their election to do so to all other Parties hereto within thirty (30) days of the date on which the following occurs: (1) if the Court, in a final order, declines to enter the Preliminary Approval Order, the Final Approval Order, or the Final Judgment and Order of Dismissal (denying it in its entirety or in any material respect), or (2) if the Court enters the Final Approval Order and the Final Judgment and Order of Dismissal and appellate review is sought and, on such review, the Final Approval Order or the Final Judgment and Order of Dismissal is finally vacated, modified, or reversed; provided, however, that the Parties agree to act in good faith to secure final approval of this settlement, and to attempt to address in good faith concerns regarding the settlement identified by the Court or any court of appeal. Notwithstanding this Paragraph, the Court's determination as to the Fee and Expense Application or any plan of distribution, or both, or any determination on appeal from any such orders, shall not provide grounds for termination of this Settlement Agreement or settlement.

(b) Visa Defendants or Mastercard Defendants may also terminate this Settlement Agreement if 6,000,000 potential members of the Settlement Class, who but for their exclusion would likely have been eligible to receive a distribution from the Settlement Fund, timely and

validly exclude themselves from the Settlement Classes pursuant to the procedures approved by the Court. Any application to terminate under this Paragraph must be made in writing within ten (10) days following the deadline for Persons to exclude themselves from the Settlement Class.

(c) Except as otherwise provided herein, in the event the Settlement Agreement is terminated in accordance herewith, is vacated, or is not approved, or in the event the Effective Date of Settlement fails to occur for any reason, then the Parties to this Settlement Agreement shall be deemed to have reverted to their respective status in the Action as of the Execution Date, and, except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement and any related orders had not been entered (subject to seeking whatever revisions to the pretrial schedule as may be necessary to protect the rights of the Parties), and any portion of the Settlement Fund previously paid by or on behalf of Visa Defendants or Mastercard Defendants, together with any interest earned thereon (and, if applicable, re-payment of any Fee and Expense Award referred to in Paragraph XI above), less Taxes due, if any, with respect to such income, and less costs of administration and notice actually incurred and paid or payable, shall be returned to the Defendant by or for whom the payment was made within ten (10) business days from the date of the event causing such termination. At the request of Visa Defendants' Counsel or Mastercard Defendants' Counsel, the Escrow Agent shall apply for any tax refund owed on the Settlement Fund and pay the proceeds to Visa Defendants and Mastercard Defendants.

(d) Visa Defendants, Visa Defendants' Counsel, Mastercard Defendants, and Mastercard Defendants' Counsel represent that they will not direct Visa Defendants' employees or agents, Mastercard Defendants' employees or agents, or any other persons, to submit or encourage others to submit requests for exclusion from the Settlement Class.

## XVI. MISCELLANEOUS

(a) The Parties to this Settlement Agreement intend the settlement to be a final and complete resolution of all disputes asserted or that could be asserted by Class Plaintiffs or any Settlement Class Member against the Released Parties with respect to the Action and the Released Claims. Accordingly, Class Plaintiffs and Visa Defendants and Mastercard Defendants agree not to assert in any judicial proceeding that the Action was brought by Class Plaintiffs or defended by Visa Defendants or Mastercard Defendants in bad faith or without a reasonable basis. The Parties further agree not to assert in any judicial proceeding that any Party violated Fed. R. Civ. P. 11. The Parties agree that the amount paid and the other terms of the settlement were negotiated at arm's-length in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel and the Mediator.

(b) The Settlement Amount to be paid by Visa Defendants and Mastercard Defendants pursuant to this Settlement Agreement shall be treated as strictly confidential until such time as a motion requesting entry of the Preliminary Approval Order has been filed with the Court, unless Visa Defendants or Mastercard Defendants have an independent obligation to disclose the Settlement Amount or disclosure is jointly agreed to by Visa Defendants, Mastercard Defendants, and Class Plaintiffs before filing a motion requesting entry of the Preliminary Approval Order.

(c) The terms and provisions of the Stipulated Protective Order, filed on January 20, 2017, and approved by the Court on January 30, 2017, shall survive and continue in effect through and after any final adjudication of the Action.

(d) Nothing in this Settlement Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection,

or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

(e) The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

(f) The administration and consummation of the settlement as embodied in this Settlement Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders relating to the Fee and Expense Application and the Plan of Distribution, and enforcing the terms of this Settlement Agreement.

(g) For the purpose of construing or interpreting this Settlement Agreement, Class Plaintiffs and Visa Defendants and Mastercard Defendants agree that it is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

(h) This Settlement Agreement shall constitute the entire agreement between Class Plaintiffs and Visa Defendants and Mastercard Defendants pertaining to the settlement of the Action against Visa Defendants and Mastercard Defendants and supersedes any and all prior and contemporaneous undertakings of Class Plaintiffs and Visa Defendants and Mastercard Defendants in connection therewith. All terms of this Settlement Agreement are contractual and not mere recitals. The terms of this Settlement Agreement are and shall be binding upon each of the Parties hereto, their heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, and upon all other Persons claiming any interest in the subject matter hereto through any of the Parties hereto including any Settlement Class Members.

(i) The terms of this Settlement Agreement are not severable, but are interdependent and have been agreed to only as a whole by Class Plaintiffs (for themselves individually and on behalf of each Settlement Class Member in the Action), Visa Defendants, and Mastercard Defendants.

(j) This Settlement Agreement may be modified or amended only by a writing executed by Class Plaintiffs, through Class Lead Counsel, Visa Defendants, through Visa Defendants' Counsel, and Mastercard Defendants, through Mastercard Defendants' Counsel, subject (if after preliminary or final approval by the Court) to approval by the Court. Amendments and modifications may be made without notice to the Settlement Classes unless notice is required by law or by the Court.

(k) Nothing in this Settlement Agreement constitutes an admission by any Released Party as to the veracity or merits of any allegations or claims made in the Action, the validity of any defenses that could be asserted by Visa Defendants or Mastercard Defendants, or the appropriateness of certification of any class other than the Settlement Classes under Fed. R. Civ. P. 23 solely for settlement purposes. This Settlement Agreement is without prejudice to the rights of Visa Defendants and Mastercard Defendants to either (i) challenge the Court's certification of any class, including the Settlement Classes, in the Action should the Settlement Agreement not be approved or implemented for any reason; or (ii) oppose any certification or request for certification in any other proposed or certified class action; or both.

(l) All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of New York without regard to its choice-of-law principles.

(m) Visa Defendants, Mastercard Defendants, Class Plaintiffs, their respective counsel, and the Settlement Class Members hereby irrevocably submit to the exclusive jurisdiction of the

United States District Court for the District of Columbia, for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.

(n) The Parties acknowledge that this Settlement Agreement makes no determination as to which Settlement Class Members are entitled to distribution from the Settlement Fund, or as to the formula for determining the amounts to be distributed.

(o) Any proposed plan of distribution is not a necessary term of this Settlement Agreement and it is not a condition of this Settlement Agreement that any particular plan of distribution be approved. The Plan of Distribution is a matter separate and apart from the settlement between the Parties and any decision by the Court concerning a particular plan of distribution shall not affect the validity or finality of the proposed settlement, including the scope of the release.

(p) This Settlement Agreement may be executed in counterparts by Class Plaintiffs, Visa Defendants, and Mastercard Defendants, and a facsimile or PDF signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

(q) Class Plaintiffs, Visa Defendants, and Mastercard Defendants acknowledge that they have been represented by counsel and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so. Therefore, Class Plaintiffs, Visa Defendants, Mastercard Defendants, and their respective counsel agree that they will not seek to set aside any part of this Settlement Agreement on the grounds of mistake. Moreover, Class Plaintiffs, Visa Defendants, Mastercard Defendants, and their respective counsel understand, agree, and expressly assume the risk that any fact may turn out hereinafter to

be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that this Settlement Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

(r) Each of the undersigned attorneys represents that he/she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement, subject to Court approval; and the undersigned Class Lead Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Class Plaintiffs. Each of the undersigned attorneys shall use his/her best efforts to effectuate this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the date first herein written above.

***On behalf of Class Plaintiffs and the Settlement Class:***

CHRISTOPHER LOVELL
**LOVELL STEWART HALEBIAN JACOBSON LLP**
500 5TH Avenue
Suite 2440
New York, NY 10110
Telephone: (212) 608-1900
Facsimile: (212) 719-4677
clovell@lshllp.com

DOUGLAS G. THOMPSON
**FINKELSTEIN THOMPSON LLP**
3201 New Mexico Avenue NW
Suite 395
Washington, DC 20016
Telephone: (202) 337-8000

***On behalf of Visa Defendants:***

MATTHEW A. EISENSTEIN
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
matthew.eisenstein@arnoldporter.com

***On behalf of Mastercard Defendants:***

KENNETH A. GALLO
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kgallo@paulweiss.com

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the date first herein written above.

***On behalf of Class Plaintiffs and the Settlement Class:***

_______________________________

CHRISTOPHER LOVELL
**LOVELL STEWART HALEBIAN JACOBSON LLP**
500 5TH Avenue
Suite 2440
New York, NY 10110
Telephone: (212) 608-1900
Facsimile: (212) 719-4677
clovell@lshllp.com

/s Douglas G Thompson Jr
DOUGLAS G. THOMPSON
**FINKELSTEIN THOMPSON LLP** 2201 Wisconsin Avenue NW
Suite 200
Washington, DC 20001
Telephone: (202) 337-8000
dthompson@finkelsteinthompson.com

***On behalf of Visa Defendants:***

_______________________________

MATTHEW A. EISENSTEIN
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
matthew.eisenstein@arnoldporter.com

***On behalf of Mastercard Defendants:***

_______________________________

KENNETH A. GALLO
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kgallo@paulweiss.com

Case 1:11-cv-01882-RJL-MAU Document 195-2 Filed 08/05/25 Page 49 of 84

Case No. 1:11-cv-01882 (RJL).

# EXHIBIT B

Phillips ADR

(949) 760-5280
PHILLIPSADR.COM
2101 EAST COAST HWY, STE 250
CORONA DEL MAR, CA 92625

# LAYN PHILLIPS

CEO / MEDIATOR / ARBITRATOR

Layn R. Phillips, founder of Phillips ADR Enterprises (PADRE), is both a former United States Attorney and a former United States District Judge.



LAYN PHILLIPS
lphillips@phillipsadr.com
To book: (949) 760-5288
Direct: (949) 760-5296

Judge Phillips joined the United States Attorney's office in Los Angeles in 1980 as an Assistant United States Attorney, serving as a federal prosecutor in the Central District of California for four years. During the Reagan administration, he returned to his home state of Oklahoma, where, at age 31, he was nominated to serve as a United States Attorney.

At age 34, he again was nominated by President Reagan to serve as a United States District Judge in Oklahoma City. During his tenure on the bench, he presided over more than 140 federal trials in Oklahoma, New Mexico, and Texas. He also sat by designation on the United States Court of Appeals for the Tenth Circuit in Denver, Colorado, where he participated in numerous panel decisions and published multiple opinions.

In 1991, he resigned from the federal bench and joined Irell & Manella, where for 23 years he specialized in complex civil litigation, internal investigations, and alternative dispute resolution. For his years of commitment to public service, he was named as one of the 10 Outstanding Young Americans by the U.S. Junior Chamber of Commerce. As a result of his trial work, Judge Phillips was elected into the American College of Trial Lawyers. He has the dual honor of being named by LawDragon as one of the "Leading Judges in America" and as one of the "Leading Litigation Attorneys in America." In Augus t 2016, Judge Phillips was named as one of the top seven mediators in the United States of American by Chambers and Partners (http://www.chambersandpartners.com/12788/79/editorial/5/1).

Judge Phillips received both his B.S. and J.D. from the University of Tulsa. He also completed two years of an LLM program at Georgetown University Law Center in the field of antitrust and economic regulation of industry.

Judge Phillips has also been inducted into the University of Tulsa Athletic Hall of Fame. He was a four-year letter winner in tennis, serving as the captain of the men's varsity team and winning the NCAA Missouri Valley Conference Championship at #1 singles.

Judge Phillips has a passion for travel and has visited every continent. He currently resides in Laguna Beach, California with his wife, Kathryn. He has three grown children Amanda, Parker and Graham and a granddaughter, Stella and a grandson, Owen Layn.

Case 1:11-cv-01882-RJL-MAU Document 195-2 Filed 08/15/25 Page 41 of 74

Case No. 1:11-cv-01882 (RJL).

# EXHIBIT C

Case No. 1:11-cv-01882 (RJL).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| Peter Burke, et al., *Plaintiff* | ) | |
| v. | ) | Civil Action No. 1:11-cv-01882-RJL |
| Visa, Inc. et al. *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: A.B. Data, Ltd., c/o Bruce A. Arbit, Registered Agent, 600 A.B. Data Drive, Milwaukee, WI. 53217-4931; Mark Cowen, Project Manager, A.B. Data, Ltd., 600 A.B. Data, Drive, Milwaukee, WI 53217-4931

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Exhibit A

| Place: | Date and Time: |
|---|---|
| 600 A.B. Data Drive, Milwaukee, WI 53217-4931 | 11/28/2025 |

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 11/25/2025

*CLERK OF COURT*

_______________________
*Signature of Clerk or Deputy Clerk*

OR

Merrick S. Rayle
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Peter Burke, who issues or requests this subpoena, are:

Merrick S. Rayle, Lovell Stewart Halebian Jacobson, LLP, 500 5th Ave., Suite 2440, New York, NY 10110, 415.533.5316; Douglas G. Thompson, Finkelstein Thompson LLP, 2201 Wisconsin Ave, N.W. Washington, D.C. 20001, 202.337.8000

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Case No. 1:11-cv-01882 (RJL).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:11-cv-01882-RJL

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ________________

on *(date)* ________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ________________

________________ on *(date)* ________ ; or

❒ I returned the subpoena unexecuted because: ________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ________ .

My fees are $ ________ for travel and $ ________ for services, for a total of $ 0 .

I declare under penalty of perjury that this information is true.

Date: ________

________________
*Server's signature*

________________
*Printed name and title*

________________
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT A**

**INSTRUCTIONS**

The records sought through this Subpoena, including copies or reproductions, excerpts, summaries, or other documents or media (*e.g.,* electronic, video, or audio) that excerpt, contain, or otherwise reveal the substance of (other than in general terms) Highly Confidential Information, are to be treated as "Highly Confidential Information" as defined in the Protective Order entered in this Action (Case No. 1:11-cv-01882-RJL-MAU, DKT 61) dated January 30, 2017, and previously provided to and signed by A.B. Data, Ltd upon its engagement as Claims Administrator in this Action. (A copy of the Protective Order (DKT 85, Case No. 1:11-cv-01803-RJL-MAU, DKT 61) as signed by A.B. Data is attached hereto.)

In lieu of production of the requested records A.B. Data may use such email addresses solely in connection with administration of the *Burke* Class Settlement for the purposes of class notice and claims administration and shall not disclose the addresses or the identities of the address holders to any other person or for any other purpose, and shall designate the information as "highly confidential" under the terms of the protective order in this action.

**MATERIALS REQUESTED**

All potential *Burke* Settlement Class Member email addresses, whether stored electronically or otherwise, previously obtained or used by A.B. Data to facilitate direct settlement class notice and claims administration in connection with the two prior class settlement notice programs in *Mackmin, et al., v. Visa Inc., et al.*, Case No. 1:11-cv-01831(RJL).

FILED

JAN 3 0 2017

Clark, U.S. District & Bankruptcy
Courts for the District of Columbia

**ATTACHMENT**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

NATIONAL ATM COUNCIL, INC., *et al.*,

Plaintiffs,

v.

No. l:l l-cv-01803-RJL

ANDREW MACKMIN, *et al.*,

Plaintiffs,

**v.**

No. l:l l-cv-01831-RJL

MARY STOUMBOS,

Plaintiff,

v.

VISA INC., *et al.*

No. 1:11-cv-01882-RJL

**STIPULATED PROTECTIVE ORDER**

In order to protect private and confidential business and trade secret information consistent with the public's right of access to the Court's records and processes, and pursuant to Fed. R. Civ. P. 26(c) and Fed. R. Evid. 502(d), the undersigned parties to the captioned actions,

by and through counsel, agree and stipulate to this Protective Order, which binds all counsel in this action:

## I. <u>Types of Materials Which May Be Designated Confidential or Highly Confidential</u>

1. Any documents, answers to interrogatories, responses to requests for admission, deposition testimony, transcripts of and exhibits used during depositions and court proceedings, and any other material or information, produced pursuant to Fed. R. Civ. P. 26(a)(l)(A)(ii) or in response to discovery requests in this litigation, including any such material initially produced in another litigation (hereinafter, collectively, "Discovery Materials"), may be designated by a producing party or non-party as "Confidential" or "Highly Confidential" **in** accordance with this Protective Order.

2. "Confidential Information" shall include any Discovery Material which is not in the public domain and contains any private,[1] trade secret or other confidential financial, research, development, or commercial information.

3. "Highly Confidential Information" shall include any Confidential Information which is so competitively sensitive that it is entitled to extraordinary protections.

4. Any copies or reproductions, excerpts, summaries, or other documents or media (*e.g.*, electronic, video, or audio) that excerpt, contain, or otherwise reveal the substance of (other than in general terms) Confidential Information or Highly Confidential Information shall also be treated as Confidential Information or Highly Confidential Information pursuant to this Order.

[1] Private information includes, but is not limited to, social security numbers, dates of birth, and financial account numbers.

II. **Designation of Discovery Materials as Confidential or Highly Confidential**

5. Each party or non-party that designates Discovery Materials as Confidential or Highly Confidential Information shall take care to limit any such designations to material that qualifies under the standards set forth in this Order.

6. Any Discovery Materials that are to be designated "Confidential" or "Highly Confidential" may be so designated by the producing party or non-party by (i) providing copies of the documents, material, or information so designated that are stamped with the legend "CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER", "HIGHLY CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER", or "HIGHLY CONFIDENTIAL -- OUTSIDE COUNSEL EYES ONLY"; or (ii) at the time of their production or as soon thereafter as practicable, furnishing a separate written notice to the undersigned counsel for the party receiving such Discovery Materials specifically identifying the documents or materials as "Confidential" or "Highly Confidential," so long as the producing party supplies substitute copies (bearing the same bates numbers as the original copies, where practicable) of any such documents bearing the designations set forth in Paragraph 6(i) within 5 business days or as many days as the parties shall agree.

7. Any Discovery Material initially designated as Confidential or Highly Confidential in prior litigation, which subsequently lost its designation pursuant to a court order, or was publicly filed in the prior litigation, shall be treated in this action consistent with its final status in the prior litigation. In order to assist the receiving party in identifying formerly Confidential or Highly Confidential materials that either subsequently lost their designation or were publicly filed, when a producing party re-produces a discrete set of Discovery Materials from a prior litigation, the producing party will identify, by name,

matter number, and jurisdiction, the matter(s) in which the Discovery Materials were produced. To the extent a

producing party makes documents available for inspection and copying at the producing party's or counsel's location prior to confidentiality designation of the documents, such materials shall be treated as Highly Confidential until such time as they are produced and assigned confidentiality designations in accordance with this Order.

8. Any deposition testimony concerning a Confidential or Highly Confidential document produced by a non-party will be marked by the court reporter or videographer as Confidential or Highly Confidential on the deposition transcript or video recording.

9. Deposition testimony and the transcripts and video recordings thereof for depositions conducted during pretrial discovery in this litigation shall be treated as Highly Confidential for a period of 40 days, or for as many days as the parties shall agree, after receipt of such deposition transcript and/or video recordings to allow time for the deponent or counsel for that deponent, or any party or non-party or its counsel, to notify all parties of any Highly Confidential Information or Confidential Information contained therein. Such Highly Confidential or Confidential Information shall be designated by page and line number, and discs or other storage media shall be labeled in accordance with the provisions of this Order.

I 0. A copy of this Order shall be included with each subpoena served on non-parties, and the subpoena shall state that this Order shall apply to all documents or other information produced in response to the subpoena.

11. In any instance where a producing party asserts a higher level of protection to Discovery Material after its initial production, the higher protection level shall apply to the materials only as of the time of their redesignation. Persons who obtain access to such

materials prior to their redesignation shal1, from the time of notice to them of the materials' redesignation, restrict their review or use of those materials in accordance with the higher protection level.

**III. Inadvertent Production**

12. If Confidential Information or Highly Confidential Information is disclosed to any person other than in the manner authorized by this Order, the party responsible for the disclosure shall, immediately upon learning of such disclosure, inform the producing party or non-party of all pertinent facts relating to such disclosure and shall make every effort to retrieve the designated material and to prevent the occurrence of any further disclosure unauthorized by this Order.

13. Inadvertent production of or failure to designate any information as Confidential or Highly Confidential shall not be deemed a waiver of the producing party's or non-party's claim of confidentiality as to such information, and the producing party or non-party may thereafter designate such information as Confidential or Highly Confidential as appropriate.

14. Pursuant to Fed. R. Evid. 502(d), inadvertent production of any document produced pursuant to Fed. R. Civ. P. 26(a)(l)(A)(ii) or in response to discovery requests in this action by any party or non-party, that a party or non-party later claims should have been withheld on grounds of a privilege, including the work product doctrine (collectively referred to hereinafter as an "Inadvertently Produced Privileged Document"), will not be deemed to waive any privilege or work product protection. The provisions of Federal Rule of Evidence 502(b) are inapplicable to Inadvertently Produced Privileged Documents under this Order. A party or non- party may request the return of any document ("Notice of Recal l") that it inadvertently produced by identifying the Inadvertently Produced Privileged Document and stating the basis for withholding such document from production (i.e. attorney-client privilege, attorney work product, etc.) within 10 business days of discovery

of the inadvertent production. The procedure for handling Inadvertently Produced Privileged Documents shall be as follows:

(a) The producing party shall include privilege log entries for the Inadvertently Produced Privileged Document(s) as part of its production of privilege log(s) to the receiving party at a date agreed upon by the parties. If the Notice of Recall is issued after the initial production of privilege logs, the producing party shall provide a privilege log for the recalled documents to the receiving party within 5 business days of the Notice of Recall. If the recall involves redaction of the Inadvertently Produced Privileged Document(s), the redacted version of the document shall be provided simultaneously with the privilege log.

(b) The privilege log shall comply with Fed. R. Civ. P. 26(6)(5).

(c) Upon receipt of the Notice of Recall, the receiving party must decide whether to challenge the Notice of Recall within 7 business days or wait until receipt of the final privilege logs to make any privilege challenges. If the receiving party does not challenge the Notice of Recall within 7 business days and chooses to wait until receipt of the final privilege logs to make any privilege challenges, it must destroy the recalled document(s) within 10 business days of receipt of the Notice of Recall and refrain from reviewing the same for any purpose. All electronic copies shall likewise be deleted or otherwise be permanently removed from any database(s) within 10 business days of receipt of the Notice of Recall.

(d) If the receiving party challenges the privilege claim within 7 business days after receiving the Notice of Recall, it may sequester up to two hard copies of a recalled document. The sequestered documents may not be used for any purpose other than to challenge the Notice of Recall until resolution of the challenge. All other hard copies of an Inadvertently Produced Privileged Document must be

destroyed, and electronic copies

of the document (including those maintained on a database) rendered unviewable, within 10 business days of receipt of the Notice of Recall.

(e) If the receiving party challenges the privilege claim within 7 business days after receiving the Notice of Recall, it shall request a meet and confer to discuss the appropriateness of the privilege claim(s). The parties shall thereafter meet and confer within 10 business days, or as soon thereafter as agreed upon by the parties.

(f) If, after compliance with the foregoing steps (a) through (e), the receiving party concludes that it disputes the validity of the claim of privilege of a recalled document, it may file a motion to challenge the privilege claim. The parties agree that any sequestered Inadvertently Produced Privileged Documents subject to the motion may be submitted to the Court for *in camera* review. Unless otherwise agreed by the parties or ordered by the Court, all such motions shall be made on notice, with briefing schedule and page limits agreed by the parties or set by the Court. If the receiving party does not file a motion within 10 days after conclusion of the meet and confer, the receiving party must certify destruction of the recalled document, including all sequestered copies, no later than 3 business days after the expiration of the 10-day period.

(g) Unless the receiving party's motion to compel is successful or the privilege claim is withdrawn, there may be no use of a recalled document for any purpose other than resolving claims of privilege.

(h) If the recall of a document is made during the taking of a

deposition or shortly before the occurrence of a deposition, the examining counsel and defending counsel shall meet and confer in good faith at the earliest possible opportunity to determine appropriate steps under the circumstances, consistent with this Protective

Order. In the event the claim of privilege is withdrawn or the Court determines the document to be not subject to a valid claim of privilege, if examining counsel and defending counsel do not agree otherwise, the Court shall determine any appropriate remedy, including whether and to what extent a reopening of the deposition may be necessary.

(i) To the extent previously-produced documents were inadvertently produced and retracted in any prior litigation, the inadvertent reproduction of such documents in this case shall not be deemed a waiver of privilege.

## IV. Permissible Uses of Discovery Material

15. All persons obtaining access to Discovery Material produced in connection with this action shall use it only for the purpose of this litigation and not for any other purpose. However, this provision shall not apply to any Discovery Material subsequent to its becoming part of the public record in this action or in prior litigation. Nothing in this Order shall limit or restrict a party's rights, if any, to use its own Discovery Material or any information obtained independent of discovery in this action in any manner that the party deems appropriate.

16. Nothing herein shall impose any restrictions on the use or disclosure by a party or witness of documents, material, or information obtained by such party or witness independently of the discovery proceedings in this action, whether or not such documents, material, or information are also obtained through discovery proceedings in this action.

17. Confidential Information may be disclosed only to the following persons:

(a) The Court;

(b) Outside counsel for any party, including associated personnel necessary to assist outside counsel in the action, such as litigation assistants, paralegals, and secretarial or other clerical personnel;

(c) Consultants, experts, or litigation support services, including outside copying services, court reporters, or companies engaged in the business of supporting computerized or electronic litigation discovery or trial preparation, retained by a party for the purpose of assisting that party in this action, provided that any retained consultant or expert is not, at the time Discovery Material is disclosed, a defendant in this action or an employee of a defendant in these actions (nor known to the engaging party to have accepted an offer to become an employee of a defendant in these actions).

(d) Associated personnel of any person within categories (a) through (c) for whom access to Confidential Information is necessary to assist such persons in the action, including any Court personnel assisting the Court, secretarial or other clerical personnel, stenographers or other persons involved in taking or transcribing or videotaping of testimony in this action, and principals and employees of the firm with which consultants or experts are associated;

(e) Any other person as to whom the party or non-party producing the Confidential Information has consented to disclosure in advance and in writing, on notice to each party hereto;

(f) During their depositions, witnesses in the action to whom the disclosure is reasonably necessary, consistent with the provisions of paragraphs 21 and 23 below;

(g) In house-counsel, legal assistants, and other legal staff for each of the parties. Parties that do not employ in-house counsel may each designate, and identify to the other parties, one officer, director, or employee in the place of in-

house counsel pursuant to this provision. No party shall disclose Confidential Information to a designated non-legal staff person pursuant to this paragraph until: (I) the proposed

recipient has executed a confidentiality agreement in accordance with the procedures set forth in paragraph 21, and (2) notice of the designation and intended disclosure has been provided to all parties without objection for at least 7 business days. The Court *will* entertain any objection to the disclosure of Confidential Information pursuant to this paragraph that is made within 7 business days of receipt of notice of the intended disclosure.

18. Highly Confidential Information may be disclosed only to any persons falling within categories (a) through (e) in paragraph 17 above.

19. Notwithstanding the provisions in paragraphs 17 and 18 above, Confidential and Highly Confidential Information may be disclosed to any employee of the party or non-party producing such information.

20. Without limiting any other disclosure permitted under this Order, counsel for a party may disclose (i) Highly Confidential Information to any witness at a deposition or (ii) Confidential or Highly Confidential Information to a witness outside a deposition, provided counsel has obtained consent of counsel for the producing party or non-party. Such consent shall not be unreasonably withheld. However, counsel need not obtain consent if (i) the person is an author or recipient of the Confidential or Highly Confidential Information; or (ii) the person is a former employee of the producing party or non-party and is known to have prior knowledge of the specific document containing the Confidential or Highly Confidential Information to be disclosed; or (iii) the person is a former employee of the producing party or non-party and is reasonably likely to have had prior knowledge of the subject matter referenced in the Confidential or Highly Confidential Information to be disclosed.

21. Persons described in paragraph 17(b) (and their associated personnel) shall be deemed bound by the terms of this Order upon its entry by the Court. A party disclosing Confidential Information or Highly Confidential Information to a person described in paragraph 17(c) (and associated personnel), 17(e), or 17(f) must first: (i) advise the recipient that the information is Confidential or Highly Confidential Information and may only be used in connection with this or related litigation; (ii) provide the recipient with a copy of this Order; and

(iii) attempt to obtain the recipient's execution of a confidentiality agreement in accordance with the procedures set forth in paragraph 23.

22. Nothing in this Order shall prevent any counsel from advising his or her client concerning this litigation and, in the course of providing such advice, from referring to or disclosing generally Confidential or Highly Confidential Information, so long as he or she does not disclose its specific contents.

23. Subject to the terms of this Order and the Federal Rules of Civil Procedure, any party may use Confidential fnformation in the course of a deposition or hearing provided that, prior to any examination of a witness with respect to such Confidential Information, the witness and court reporter(s) are furnished with a copy of this Order, and are shown a confidentiality agreement stating the following:

> "I, [name, position of employment], hereby acknowledge and agree that I am about to receive confidential information. I certify my understanding that such information is to be provided to me pursuant to the terms and restrictions of the Court's Protective Order of [date entered] in this matter. I have been given a copy of and have read this Order and agree to be bound by its terms."

Counsel for each party representing a deposition witness shall have responsibility for supplying this Order to that witness before the deposition and attempting to obtain their execution of the confidentiality agreement. Witnesses not represented by a party's counsel shall be provided with

a copy of this Order at the start of the examination, and shall be advised on the record that he or she is subject to sanctions for violating the terms of this Order. If a witness refuses to execute a copy of the confidentiality agreement, the admonition in the immediately preceding sentence shall serve as a substitute for the execution of the confidentiality agreement, and shall be sufficient to allow for examination of the witness as to Confidential Information.

## V. <u>Challenges to Confidential or High1y Confidential Designations</u>

24. A receiving party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

25. If any party disagrees with the designation by the producing party or non-party of any Discovery Material as Confidential or Highly Confidential Information, then the parties to the dispute, after providing notice to all parties in this action, will first promptly meet and confer in an attempt to resolve the dispute before presenting the dispute to the Cou11. All items objected to shall continue to be treated as Confidential or Highly Confidential pending resolution of the parties' dispute. If the dispute can be resolved, all parties shall promptly be informed of the resolution. If the dispute cannot be resolved informally, the disputing party may move the Court for a redesignation of the Discovery Material. Until the Court rules on the motion, the material shall be treated consistent with its existing designation.

26. The producing party or non-party bears the burden of persuading the Court that the information is in fact Confidential or Highly Confidential within the definition(s) of those term(s) set forth above. In the event the final ruling is that the challenged material is not Confidential or Highly Confidential, the producing party shall, at its

expense, reproduce copies of all materials with their designations removed or revised within 30 days of such ruling.

Case 1:11-cv-01883-RJL-MAU Document 199-2 Filed 08/05/25 Page 80 of 87

27. Entering into, agreeing to, and/or complying with the terms of this Order shall not: (a) operate as an admission by any party that any particular documents, material, or information contain or reflect currently valuable financial, trade secrets, or proprietary or commercial information; or (b) prejudice in any way the right of a party at any time: (i) to seek a determination by the Court of whether any particular document, item of material, or piece of information should be subject to the terms of this Order; (ii) to seek relief on appropriate notice from any provision(s) of this Order, either generally or as to any particular document, item of material, or piece of information; (iii) to object to any discovery request, including the right to assert that no discovery shall be had of certain documents or information; (iv) to seek a higher level of protection than provided for by this Order; or (v) to seek documents or other information from any source.

## VI. Efforts by Non-Parties to Obtain Confidential Information

28. If any party has obtained Confidential or Highly Confidential Information under the terms of this Order and receives a subpoena or other compulsory process commanding the production of such Confidential or Highly Confidential Information, such party shall notify the producing party or non-party no later than 7 business days following receipt of the subpoena (but in no event later than 7 business days prior to compliance with the subpoena), including in such notice the date set for the production of such subpoenaed information, so that the producing party may file a motion for a protective order or to quash the subpoena. In the event the producing party files such a motion, the subpoenaed party shall not produce any Confidential or Highly Confidential Information in response to the subpoena without the prior written consent of the producing party or non-party unless in response to an order of a court of competent jurisdiction, or unless a failure to produce

such Confidential or Highly Confidential Information would, in the judgment of the subpoenaed party, constitute a violation of any law, rule or regulation.

Case 1:11-cv-01883-RJL-MAU Document 1957-2 Filed 08/05/25 Page 82 of 87

29. The parties will not object to the producing party or non-patty having a reasonable opportunity to appear in the litigation or process commanding disclosure of such Confidential or Highly Confidential Information for the sole purpose of seeking to prevent or restrict disclosure thereof.

**VII. Procedures Concerning Third-Partv Materials**

30. To the extent a paity to this action is required to produce Discovery Materials that were initially produced in a prior litigation, or which otherwise contain information supplied by a non-party to this action, or which are covered by a nondisclosure agreement pursuant to which consent to production must be obtained ("Third-Party Materials"), and notice must be given prior to production in this action of such Third-Party Materials, the producing party should initiate the steps necessary to comply with any pre-production notice requirements imposed by any protective order in a prior litigation and/or any other notice obligations ("Third-Party Notice Requirements"). Upon satisfaction of its Third-Party Notice Requirements and resolution of any objections to the production of the Third Party Materials in this action, the producing party shall promptly produce such Third-Party Materials. The Parties reserve all rights to invoke this Court's jurisdiction in this litigation to resolve any issues relating to third parties' rights in the production of these Discovery Materials.

31. In the event a producing party inadvertently produces Third-Party Materials without first complying with any Third-Party Notice Requirements ("Inadvertently Produced Third-Party Materials"), the producing patty may request the return of the Inadvertently Produced Third-Party Materials, and the possessing parties shall within 5 business days return or destroy such Inadvertently Produced Third-Party Materials, except that, in the

Case 1:11-cv-01882-RJL-MAU Document 199-2 Filed 08/05/25 Page 83 of 87

event a possessing patty expects to move for an order allowing continued retention and use of the recalled Inadvertently Produced Third-Party Materials, the possessing party may retain one copy of such

materials, solely for use in connection with such a motion. Promptly after discovering its production of Inadvertently Produced Third-Party Materials, the producing party shall comply with any applicable Third-Party Notice Requirements.

## VIII. Redactions and Filing Under Seal

32. All Confidential or Highly Confidential Information filed with the Court shall be redacted or filed under seal pursuant to LCvR 5.1(h) & 5.4(t). Where possible, only confidential portions of filings with the Court shall be filed under seal.

33. The parties shall take all necessary steps to ensure that discussions of Confidential or Highly Confidential Information during court proceedings are so designated and redacted from publicly filed transcripts of those proceedings.

## IX. Use of Confidentia) or Highly Confidential Information at Trial

34. In the event that a receiving party intends to use another party's Confidential Information or Highly Confidential Information in any trial, hearing, or proceeding in these actions, and there is any dispute as to whether such material continues to be Confidential or Highly Confidential, the parties will meet and confer to resolve such dispute. Pursuant to the procedure in paragraph 25 of this Order, the parties shal1 confer and attempt to agree before any trial, hearing, or proceeding in these actions on the procedures under which a receiving party may introduce into evidence or otherwise use at such trial or hearing another party's Confidential or Highly Confidential Information. Upon reaching agreement, the parties shall submit the terms of such agreement to the Court for its consideration. Absent agreement, the Court shall be asked to issue an order governing the use of such Confidential and Highly Confidential Information at trial, hearing, or proceeding upon reasonable notice to all parties who have produced such information.

35. The parties shall confer and attempt to agree before any trial, hearing, or proceeding in these actions on the procedures under which a receiving party may introduce into evidence or otherwise use at such trial or hearing a non-party's Confidential or Highly Confidential Information. Upon reaching agreement, the parties shall give notice of the terms of such agreement to each non-party producing any Confidential or Highly Confidential Information which may be used or introduced at such trial, hearing, or proceeding, and shall submit the terms of such agreement to the Court for its consideration. Absent agreement, the Court shall be asked to issue an order governing the use of such Confidential and Highly Confidential Information at trial, hearing, or proceeding, upon reasonable notice to all non- parties who have produced such information.

## X. <u>Procedures upon Termination of Action</u>

36. After the running of any applicable time to appeal the final order entered in this litigation, any producing party or non-party may request that a party return or destroy any Discovery Material the producing party or non-party has provided (other than outside counsel's copies of documents filed with the Court and outside counsel's file copies of papers prepared in connection with this matter), which request shall be honored. If the possessing party elects to destroy the Discovery Material rather than return it, the possessing party shall provide the producing patiy written certification that the destruction has been completed. Nothing in this provision shall limit the rights, if any, of any party or non-party to object to and seek a ruling of the Court concerning a parties' retention of any Discovery Material. To the extent any person retains copies of certain documents pursuant to the terms of this paragraph, such information shall continue to be subject to the

protections provided by this Order. In addition, all restrictions in this Order regarding the use by any person of information or knowledge obtained from

Discovery Materials shall continue even after such Discovery Materials are returned or destroyed.

**XI. Miscellaneous**

37. This Order shall not affect the right of any party or non-party to oppose production of Discovery Material on any ground permitted by the Federal Rules of Civil Procedure, including any applicable privilege. Moreover, the Order shall not affect the scope of discovery by any party that is not otherwise proper under the Federal Rules of Civil Procedure.

38. Nothing in this Order shall prejudice the right of any party or non-party to move the Court to broaden or restrict the rights of access to and use of particular Discovery Material, or to seek modifications of this Order upon due notice to all other parties and affected non- parties.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: January 20, 2017 [SIGNATURE PAGES OMITTED]